Pages 1 - 18

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Howard R. Lloyd, Magistrate Judge

Mformation Technologies, Inc.,    )   No. C08-04990 JW
                                  )
                                  )
                                  )
         Plaintiff,               )
     vs.                          )
                                  )
Research in Motion Limited, et    )
al,                               )
                                  )
         Defendant.               )
                                  )

San Jose, California
Tuesday, April 26, 2011

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING**

**APPEARANCES:**

For Plaintiff:

                    Foley & Lardner, LLP
                    11250 El Camino Real
                    Suite 200
                    San Diego, CA  92130
              **BY:  SHAWN EDWARD MCDONALD
                    AMARDEEP LAL THAKUR
                    ATTORNEYS AT LAW**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Transcribed By:       Stacy Wegner
                      Transcriber
                      smwtyping@yahoo.com
                      (859) 539-2802

**APPEARANCES:**    **(Continued)**

For Defendant:

           Kirkland & Ellis, LLP
           300 North LaSalle
           Chicago, IL  60654
    **BY:**  **LINDA S. DEBRUIN**
          **ATTORNEY AT LAW**

3

Tuesday, April 26, 2011                           11:08 a.m.

THE COURT:  Mformation Technologies versus Research in Motion.

MS. DEBRUIN:  Good morning, Your Honor.  Linda DeBruin on behalf of Research in Motion.  I'm joined today by my clients Barbara Parvis and Anthony Kim, who are in-house counsel at Research in Motion.

THE COURT:  Are they hiding out back there?

MS. DEBRUIN:  They are.

THE COURT:  Oh, there they are.  Okay.

MR. THAKUR:  Good morning, Your Honor.  My name is Amar Thakur.  I'm with -- with Foley & Lardner representing Mformation Technologies.  I'm joined by my partner Shawn McDonald.

And most importantly, Your Honor, I'm joined by the inventor and the CTO of Mformation, Dr. Kushwaha, and he's here not just to actually observe, but to be able to answer any questions this Court may actually have because the key dispute really relates to the deposition of -- that was taken of his in December and February.

THE COURT:  Hello, Ms. DeBruin.  Hello, Mr. Thakur.

There's a whole bunch of stuff in this -- involved in this motion that is allegedly confidential and is -- is in documents, which I believe I've ordered to be sealed.

Is there any reason I need to clear the courtroom -- well, no, I guess I don't need to clear the courtroom because everyone here is involved in the case.

MR. THAKUR: Do you have any objection to Dr. Kushwaha staying for the rest of (inaudible)?

MS. DEBRUIN: I have no objection. Do you have any objection to Ms. Parvis --

THE COURT: Well, I would --

MS. DEBRUIN: -- and Mr. Kim?

THE COURT: -- let them stay anyway.

MR. THAKUR: No.

THE COURT: I mean, they're players in the game.

Is there any reason why I need to seal the transcript?

MS. DEBRUIN: We don't have any reason, Your Honor.

MR. THAKUR: Your Honor, at this time we don't have any reason, but if it -- if it becomes apparent, we'll -- we'll request that at that time.

THE COURT: Okay. Fine. So -- and even if I sealed it, you would still have access to it. And -- and I -- I'm -- I'm very much opposed to sealing transcripts, unless there's some really strong reason to do it because we're supposed to be open to the public. All right.

So this is the Defendant's motion to strike and for sanctions. It has to do with the deposition of the inventor

of the 917 Patent, Dr. Kushwaha, who I've just been told is in the courtroom and is sitting out there.

Dr. Kushwaha testified as a 30(b)(6) witness that all elements of claim 1 of the 917 Patent were present in a prototype demonstrated to prospective investors in July of the year 2000.  That is testimony, which I'm told at least, is consistent with the Plaintiff's earlier responses to various interrogatories.

After that deposition, the Defendant, in effect, has an aha moment and realizes that the July 2000 public disclosure, as testified to by Dr. Kushwaha, is more than 12 months before the application for the patent was filed, and therefore, says the Defendant, the patent is invalid.

**MS. DEBRUIN**:  That's correct, Your Honor.

**THE COURT**:  All right.  Then Dr. Kushwaha submits a deposition correction sheet, which we -- are we calling it an errata sheet?

**MS. DEBRUIN**:  Yes, we are, Your Honor.

**THE COURT**:  Which says that the -- the July 2000 demonstration was of a nonfunctional, or at least not a fully functional prototype, and that he was referring, in fact, to a meeting with potential investors in September of '01, which is less than 12 months before the patent was filed -- application was filed, and therefore, the patent is not invalid.

And this has to do with Dr. Kushwaha's testimony that he reviewed the Probys, P-R-O-B-Y-S, prototype source code, which was used for the July 2000 demonstration, and that source code shows him that the -- it was not a fully featured prototype as of July 2000.

**MS. DEBRUIN:** Your Honor, if I could make one correction? You had commented that Dr. Kushwaha said that he had a meeting with investors in September of 2001. He does say that he didn't reduce to practice now until 2001 September, but he doesn't dispute that he had the meeting with investors in July of 2000.

**THE COURT:** Oh, okay. Fine. I thought there was another meeting in September of '01, but that's a minor detail. The point is that's when he says it was reduced to practice.

**MS. DEBRUIN:** Correct, Your Honor.

**THE COURT:** Okay. The Defendant now moves to strike the errata sheet. And under the authority of the *Hamilton Brothers Lumber* case, I kind of think that these changes are contradictory and not corrective, and I am inclined to strike the errata sheet.

That does not, I suppose, prevent Dr. Kushwaha from testifying at trial to whatever he cares to testify to, but I just don't see these as corrections.

**MR. THAKUR:** Your Honor, on -- on the face, it

would appear that's the case.

What I -- what I think is important to understand is that actually in April of 2000, which is before the first deposition, he did, in fact, testify that there is this Probys source code, and that in this source code a -- a version -- a threshold condition and wireless registration were not present.

So actually, I would say, Your Honor, there is -- it's not -- there's a scenario where he actually first testified in April that -- that the Probys source code did not include this registration and threshold condition.

So in December 9 when he gave his second testimony, and he -- it was -- it was actually more of a confusing scenario because -- I was present at that deposition, and numerous questions that were asked earlier in the day said, "Did you mark this?  Did you demonstrate this?"  And so it was pretty apparent that -- that Dr. Kushwaha was getting confused by the difference between apparent and demonstration and depiction and what implementation.

And -- and I guess I -- I -- Your Honor, I -- I agree.  The law would seem to presume that the errata sheet should be struck.  So in that case, if I was reading it, I would be inclined to agree with you.

I would ask sort of two things.  One, clearly there was prior contradictory testimony.

Two, there's been plenty of time to look at the code. There's several months of discovery. And now as we head to trial where there's 15 months -- 15 hours each -- to each party, you know, would it be in the best interest of the jury to actually hear this confusing testimony when there is this uncontroverted source code present to demonstrate it?

**THE COURT**: Well, you -- you -- you can do whatever you need to do to explain the testimony to show prior testimony that's consistent with the errata sheet. I don't care one way or the other. I'm just saying I think the errata sheet is contradictory to his testimony on the deposition that he first gave as a 30(b)(6) witness, and -- and I'm going to strike it.

Now, that brings us -- leads us to the really more interesting question, which is that the Defendant wants me to order or to recommend that Judge Ware order that the Plaintiff may not rely on the Probys source code because of its -- this would be Defendant's characterization -- suspiciously late production.

All irrelevant source code should have been produced by September of '09. And indeed, in that September '09 timeframe the Plaintiff represented that it had produced all relevant source code, but in fact, it hadn't produced the Probys. And that wasn't actually produced until February of twenty-eleven -- 2011. "Twenty-eleven" sounds funny. 2011.

And after the definition -- after the deposition of Dr. Kushwaha that triggered this disagreement over the new invalidity defense.

So it was this Probys source code, I'm told, that was what was in the prototype, or what operated the prototype, as of July of 2000.

The Defendant says Plaintiff was hiding the ball with this Probys source code and should be penalized by not letting the Plaintiff use it at trial.

Am I characterizing it correctly?

**MS. DEBRUIN:**  That's correct, Your Honor.  And you make a good point.  You've been told that this source code is the prototype source code that was demonstrated in July. We've been told the same thing, but it's by no means certain. And indeed, in the papers you've read about an interrogatory response that Plaintiffs gave in November of 2009 where they said they had found some 2000 -- year 2000 source code.

Well, they've put us to fault saying that we didn't investigate that source code, but indeed we did, Your Honor. And there's a letter that's Exhibit M to the Plaintiff's opposition where we ask them, "What is that source code that you found?"

And what the Plaintiffs responded is that that source code that they've been unable to confirm, whether that source code -- and they now say this is the Probys source

code -- whether that source code identified in response to RIM's interrogatory number six corresponds to any of the source code versions that we were looking for, including this prototype.

So Your Honor, it's nowhere clear what this is. It's certainly clear that it wasn't produced until 2011.

THE COURT:  Fine.  But that really doesn't go to the question of whether or not I should preclude them from using it.

You may well be able to show it wasn't what was in the July 2000 demonstration, and that's fine.  But it doesn't address the question that I'm trying to deal with, which is whether they should be penalized for its late production, right?

MS. DEBRUIN:  It does, Your Honor, in that we've asked for this source code repeatedly, and we've followed up. They've challenged our efforts to follow up saying, "We told you we got some 2000 code in November, and you didn't go see it."

Well, we asked them what it was, and at that time, Your Honor, they didn't even know what it was.

THE COURT:  And therefore what?

MS. DEBRUIN:  And therefore, this source code raises more questions than it answers.  It's not determinative, as Mr. Thakur says.

THE COURT:  Well, then there -- maybe there are answers that you need to try to get.

MS. DEBRUIN:  Your Honor, we proceeded through two years of discovery based on not having this source code.  We proceeded through two years of discovery based on their representations that they reduced this invention to practice no later than June of 2000.

Now, weeks before expert reports were due they suddenly realize that they had a problem with the invalidity of the patent and they changed their story.  They shouldn't be permitted to do that, and they should be obligated --

THE COURT:  Well --

MS. DEBRUIN:  -- to remain --

THE COURT:  Well, that depends on what degree of prejudice you're suffering.

MS. DEBRUIN:  We suffered great prejudice, Your Honor.  We chose what depositions to take.  We chose what discovery to request, based on what Mformation was telling us.  They were telling us from the very beginning, and they told us through seven different interrogatory responses that they had reduced to practice in July of 2000.

Mformation, in their response brief, talks about -- and Mr. Thakur mentioned today -- some testimony that Mr. Kushwaha gave in April.  Even now they're confusing an earlier prototype with the prototype we're talking about

here.  Repeatedly, during the two years of discovery they told the same story.  They shouldn't be permitted now to change.

All of our discovery, all of our depositions, all of the questions we ask at deposition, all of the discovery we sought was based on what they were telling us in interrogatory responses.  What they were telling us in 30(b)(6) depositions.

THE COURT:  All of which you can use at the time of trial.

MS. DEBRUIN:  All of which we can use at the time of trial, but if they had said what they're saying now, as they should have, earlier in discovery, we would have taken completely different discovery.

We're prejudiced, Your Honor, because we can't undo what was done, and they should be forced to live with what they did.

THE COURT:  Well, does the Probys source code practice every element of claim 1?

MS. DEBRUIN:  Your Honor, I do not know.  We have not investigated, because we frankly don't know what that source code is.  When we asked them before --

THE COURT:  Well, you may not know what it was used for, but you have it.

MS. DEBRUIN:  We have it.

THE COURT:  And you presumably could make that assessment of whether it practiced every element of claim 1.

MS. DEBRUIN:  We could make that assessment.  We have not tried to make that assessment.

THE COURT:  Oh, you don't want to know?

MS. DEBRUIN:  It's not that we don't want to know, Your Honor.  We gathered the documents so that we could determine what it is that they were now producing that they hadn't produced before.

THE COURT:  Well, is -- is discovery closed?  I've forgotten.

MS. DEBRUIN:  Discovery closes on the 13th.

MR. THAKUR:  13th of May.

THE COURT:  Oh, yeah, close of all discovery.

MR. THAKUR:  And Your Honor, we're amenable to any extension of discovery.  We've offered Dr. Kushwaha for additional testimony.  We've agreed to supplemental expert reports.  If there's any prejudice to the time, we're more than amenable to give them time to correct that.

MS. DEBRUIN:  Your Honor, we spent two years living under what we were told were the facts.  That they had reduced this to practice in June of 2000.  All of our discovery was focused on that.  We can't remedy that in a couple weeks.

THE COURT:  Well, what do you say about that?

**MR. THAKUR**:  Your Honor, I -- first of all, let me start by saying we made a mistake.  I want to acknowledge that we made a mistake, and I want to say -- but I think it's very important to understand how that mistake occurred.

In November of 2009 we collected the Probys code. The Probys -- the prototypes were being done on peoples' laptops, so we got the Probys code from one individual's laptop and produced it.

It was later that we determined that there was a more robust Probys code belonging to Mr. -- another -- a different engineer who was working on it.  We -- the client gave it to us, so there can be no mistake that the client didn't do anything wrong, but at our law firm we had in our hands in November of 2009.

We -- the two lead lawyers in this case sent the code to an associate in Silicon Valley on January -- January 20th of 2010 saying, "Please load this code."

Two days later that associate sent an email to their -- to RIM saying, "The code has been loaded."

What happened, Your Honor, is literally over a year goes by and they don't inspect the code, and so no discovery occurs that this little extra code wasn't loaded.

I will admit I'm not able to determine whether it was the associate's error in loading the code or whether it was the IT person's.  I acknowledge that mistake was made,

and for that, I'm genuinely sorry.

But what I will say is they went and looked at the code one year later on February of -- of Jan -- excuse me -- January 12th, 2011.

THE COURT:  Did they have any reason to look at it any sooner?

MR. THAKUR:  Yes.  Because they knew that they -- they were looking for the Probys code because we had told them that the Probys --

THE COURT:  They were looking for what?

MR. THAKUR:  They were looking at the Probys code because we had produced an earlier version of the Probys code.  And so -- and we -- and what I'm saying is they -- they went to look at the code following Dr. Kushwaha's testimony with respect to the code.

What happened was, Your Honor, in December Dr. Kushwaha testified that the Probys code tells the truth, and the truth would be in this code.  So following that, they go do an inspection of the Probys code, and they say, "The code that Dr. Kushwaha is referring to is not loaded."

They send us a letter on January 28th.  Seven days later we put that code on.  On -- two day -- four days later they actually spent two days looking at that code and printed 174 pages.

There was three months left for discovery.  That

very next day I spoke with Ms. DeBruin.  I said, "Look, I'm sorry this wasn't loaded.  I really am sorry.  If there's anything we can do -- do you want Dr. Kushwaha for more time?  Do you need some time for expert reports?  Do you need anything to make sure that this code is fully inspected?"

"But at the same time, you hiding this code from the Court is taking -- essentially telling the jury -- laying down the groundwork for the -- a falsehood to become essentially established in this case."  In my honest opinion, Your Honor, that falsehood would be a miscarriage of justice.

And what this -- what RIM is asking for is for this Court to become the instrumentality of that miscarriage of justice, because this case is about Dr. Kushwaha's invention and when he reduced it and how he has suffered 10 years of injury, and that cannot be ignored.

And the summary judgment of non-infringement and willfulness was denied.  We're headed to trial.  And if there's any remedy in terms of prejudice, I am more than willing to make up for it, but to injure the client for what he did not do wrong would be a miscarriage of justice, Your Honor.

MS. DEBRUIN:  Your Honor, I'm --

THE COURT:  You get the last word.

MS. DEBRUIN:  I need to respond.

THE COURT:  I'm giving you the last word.

**MS. DEBRUIN**:  Thank you, Your Honor.

What counsel just said is factually incorrect. First of all, in 2009 there was no production of any Probys code.  Counsel made reference to an earlier version of the Probys code and a later version of the Probys code.  There was no Probys code produced at all.

They did make reference in a November 2009 interrogatory response that hey -- they had found some code that was dated in 2000, and we had been after them and after them to get us the prototype source code.  So they said this in this interrogatory response.

Ms. -- Ms. Bibby, on behalf of Mformation, said that, "All of the information source code for the relevant time period is available for inspection."  She said that in an email to one of my colleagues in January 22nd of 2010.

My colleague followed up and said, "Well, tell us, what is this source code that you've put on the source code computer?"  And this is, as I referenced before, Your Honor, Exhibit M to Mformation's opposition brief.

In a January 27th, 2010, email Ms. Bibby responds that -- "Well, Mformation's analysis of its early source code continues.  At this point, it is unable to confirm whether the source code identified in response to RIM's interrogatory six corresponds to any of the source code versions listed in RIM's September 9th, 2009, letter."

Accordingly, we had no reason, Your Honor, to go look at the source code again, because if Mformation didn't know what was there, we certainly weren't going to be able to determine what it was.

We have been prejudiced, and we will be prejudiced, if Mformation is now at the close of discovery permitted to use this source code that they didn't produce until after the named inventor determined, along with his counsel, that his patent was invalid unless he changed his testimony and changed all of their interrogatory responses that they've been given from the very beginning of this case.

**THE COURT:**  Okay.  Is the matter submitted?

**MS. DEBRUIN:**  Thank you, Your Honor.

**THE COURT:**  You're welcome.

(Proceedings adjourned at 11:28 a.m.)

**CERTIFICATE OF TRANSCRIBER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____  5/5/11

Signature of Transcriber      Date