United States District Court
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6         FOR THE NORTHERN DISTRICT OF CALIFORNIA

7             SAN FRANCISCO DIVISION

8   Mformation Techs., Inc.,                    NO. C 08-04990 JW

9              Plaintiff,              **ORDER RE. MOTIONS FOR SUMMARY**
        v.                             **JUDGMENT**
10

11  Research in Motion Ltd., et al.,

12              Defendants.
                                      /

13                    **I.  INTRODUCTION**

14         Mformation Technologies, Inc. ("Plaintiff") brings this action against Defendants Research

15  in Motion Limited and Research in Motion Corporation (collectively, "Defendants") alleging

16  infringement of U.S. Patent No. 6,970,917 ("the '917 Patent").  The '917 Patent pertains to a

17  method, system and computer program for remote control and management of wireless devices.

18  Plaintiff alleges that Defendants infringe the '917 Patent by importing, marketing, manufacturing,

19  using and selling the BlackBerry Enterprise Server ("BES") software product.  Defendants deny

20  infringement and allege that the '917 Patent is invalid.  After a series of amendments and motions,[1]

21  the patent claims that remain at issue are independent Claim 1 of the '917 Patent, as well as

22  dependent Claims 4-6, 21-25 and 27, all of which depend from Claim 1.

23

24

25         [1]  On August 31, 2009, Plaintiff filed its Third Amended Complaint for Patent Infringement.
    (Docket Item No. 71.)  On September 15, 2009, Defendants filed their Answer and Counterclaims to
26  the Third Amended Complaint.  (Docket Item No. 76.)  Defendants counterclaimed for declaratory
    relief as to: (1) non-infringement; (2) invalidity; and (3) unenforceability due to inequitable conduct.
27  (See id.)  On September 30, 2009, Plaintiff filed its Answer to the Counterclaims.  (Docket Item No.
    84.)  On November 18, 2010 the Court issued an Order pursuant to an earlier motion for summary
28  judgment by Defendants with respect to Claims 7, 8 and 26.  (See Docket Item No. 355.)

United States District Court
For the Northern District of California

1    Presently before the Court are Plaintiff's Motions for Summary Judgment on various

2  affirmative defenses asserted by Defendants,[2] and Defendants' Motions for Summary Judgment on

3  some of their affirmative defenses.[3]  The Court conducted a hearing on September 26, 2011.  Based

4  on the papers submitted to date and oral argument, the Court GRANTS Plaintiff's Laches Motion;

5  DENIES Plaintiff's Anticipation Motion; GRANTS Plaintiff's Inequitable Conduct Motion;

6  GRANTS in part and DENIES in part Plaintiff's Indefiniteness Motion; DENIES Plaintiff's Public

7  Use Motion; GRANTS Defendants' Damages Motion; GRANTS in part and DENIES in part

8  Defendants' Noninfringement Motion; DENIES Defendants' Equivalents Motion; DENIES

9  Defendants' Invalidity Motion; and DENIES Defendants' Claim Priority Motion.

10                          **II.  STANDARDS**

11    The standard for summary judgment does not change in a patent case.  Conroy v. Reebok

12  Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994).  Summary judgment is proper when the moving

13  party shows that there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a).  The

14  purpose of summary judgment "is to isolate and dispose of factually unsupported claims or

15  defenses."  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).  The moving party "always bears the

16  initial responsibility of informing the district court of the basis for its motion, and identifying the

17

18    [2] (Plaintiff's Motion for Summary Judgment of No Laches, hereafter, "Laches Motion,"
19  Docket Item No. 542; Plaintiff's Motion for Summary Judgment of No Anticipation Under 35
   U.S.C. 102, hereafter, "Anticipation Motion," Docket Item No. 547; Plaintiff's Motion for Summary
20  Judgment of No Inequitable Conduct, hereafter, "Inequitable Conduct Motion," Docket Item No.
   555; Plaintiff's Motion for Summary Judgment of No Indefiniteness, No Lack of Written
21  Description, and No Lack of Enablement Under 35 U.S.C. 112, hereafter, "Indefiniteness Motion,"
   Docket Item No. 557; Plaintiff's Motion for Summary Judgment that U.S. Patent No. 6,970,917 is
22  Not Invalid Due to Public Use, hereafter, "Public Use Motion," Docket Item No. 562.)

23    [3] (Defendants' Motion for Partial Summary Judgment to Limit Pre-Suit Damages, hereafter,
   "Damages Motion," Docket Item No. 544; Defendants' Motion for Summary Judgment of
24  Noninfringement of U.S. Patent No. 6,970,917, hereafter, "Noninfringement Motion," Docket Item
   No. 549; Defendants' Motion for Summary Judgment of Noninfringement of U.S. Patent No.
25  6,970,917 Under the Doctrine of Equivalents, hereafter, "Equivalents Motion," Docket Item No.
   552; Defendants' Motion for Summary Judgment That Claims 1, 4-6, 21-25, and 27 of U.S. Patent
26  No. 6,970,917 are Invalid Under 35 U.S.C. § 112, hereafter, "Invalidity Motion," Docket Item No.
   559; Defendants' Motion for Summary Judgment that U.S. Pat. No. 6,970,917 is Not Entitled to
27  Claim Priority to U.S. Prov. Pat. Appl. 60/251,034 and that Claim 1 of the '917 Patent is Invalid
   Under 35 U.S.C. § 102,  hereafter, "Claim Priority Motion," Docket Item No. 565.)

28                               2

evidence which it believes demonstrates the absence of a genuine issue of material fact." <u>Id.</u> at 323. If the moving party meets its initial burden, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006) (citing <u>Celotex</u>, 477 U.S. at 324).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. <u>See, e.g.</u>, <u>Masson v. New Yorker Magazine, Inc.</u>, 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. <u>T.W. Elec. Serv. v. Pac. Elec. Contractors</u>, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. <u>Anderson</u>, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).

Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. <u>See</u> <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1028-29 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact." <u>Id.</u> at 1031. However, when the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. <u>Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two</u>, 249 F.3d 1132, 1135 (9th Cir. 2001).

### III.  DISCUSSION

**A.     Laches**

As an affirmative defense, Defendants assert that the lawsuit against them is barred by the doctrine of laches. Plaintiff moves for summary judgment to eliminate the defense of laches on the

ground that based on undisputed evidence with respect to the timing of the filing of this lawsuit, Defendants cannot prove laches as a matter of law.  In addition, Plaintiff contends that there is no evidence that the timing of this lawsuit caused Defendants to suffer damages.  (Laches Motion at 4-6.)  Defendants respond that summary judgment should be denied because: (1) after the '917 Patent was issued, Plaintiff allowed nearly three years to pass before filing this lawsuit; and (2) there is a genuine factual dispute over whether Defendants suffered damages based on the lapse of time between the issuance of the patent and this suit.[4]

Under the doctrine of laches, a patent infringement action may be dismissed if the defendant proves by a preponderance of evidence that: (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant"; and (2) "the delay operated to the prejudice or injury of the defendant."  A.C. Aukerman Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1032 (Fed. Cir. 1992). "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances."  Id.  "The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit. However, the period does not begin prior to the issuance of the patent."  Id.  If a patentee "delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity," then a "presumption of laches arises."  Id. at 1028.

Although "a determination of what period of time constitutes an 'unreasonable' or 'inexcusable' delay is a question of fact specific to each case," courts have "typically found a period of delay 'unreasonable' only when it substantially exceeded [four years]."  IXYS Corp. v. Advanced Power Tech., Inc., 321 F. Supp. 2d 1156, 1163 (N.D. Cal. 2004).  A delay of three or four years has been deemed "unreasonable only when that delay was accompanied by extraneous improper tactics or misleading conduct by the plaintiff."  Id. (citing Federal Circuit cases).

---

[4]  (RIM's Opposition to Mformation's Motion for Summary Judgment of No Laches at 2-19, hereafter, "Laches Opp'n," Docket Item No. 587.)

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Here, the record shows that the '917 Patent was issued on November 29, 2005.  Thus, the earliest possible date on which a claim of unreasonable delay could be based is November 29, 2005, the date on which the Patent was issued.  A.C. Aukerman Co., 960 F.2d at 1032.  Plaintiff filed this lawsuit on October 31, 2008.  Accordingly, the time period upon which Defendants must rely to prove unreasonable delay is two years and eleven months.  Because this time period is less than six years long, the presumption of laches does not attach.  Id. at 1028.  Furthermore, courts typically find a period of delay "unreasonable" only when it "substantially exceed[s]" four years.  IXYS Corp., 321 F. Supp. 2d at 1163.  Although there are patent infringement cases finding " unreasonable delay" based on a time period of fewer than three years, in such cases the courts place an additional burden on the defendant to prove that the delay was "accompanied by extraneous improper tactics or misleading conduct" by the plaintiff.  Id.

In recognition of this additional burden, Defendants proffer two kinds of evidence: (1) evidence suggesting that Plaintiff's employees "had already developed suspicions" that it had a "potential claim of infringement" against Defendants prior to receiving its Patent; and (2) evidence that Defendants' product was "widely sold and promoted."  (Laches Opp'n at 3-6.)

As to the first of Defendants' contentions, the evidence proffered by Defendants consists of internal emails sent from certain employees of Plaintiff to other employees of Plaintiff.  (See Laches Opp'n, Exs. 2-8.)  These emails, Defendants contend, "conclusively demonstrate" Plaintiff's "familiarity" with Defendants' product and thus show that Plaintiff had knowledge of its patent infringement claims as of November 29, 2005, the date when the '917 Patent was issued.  (Id. at 3-4.)  However, viewed in the light most favorable to Defendants, these internal emails only show that employees of Plaintiff were familiar with Defendants' product and that those employees suspected that Plaintiff had a potential infringement claim.  The emails do not constitute evidence of "extraneous improper tactics or misleading conduct" by Plaintiff, and thus do not support Defendants' contention that Plaintiff's delay of two years and eleven months in filing this lawsuit was unreasonable.  IXYS Corp., 321 F. Supp. 2d at 1163.

5

United States District Court

For the Northern District of California

As to the second of Defendants' contentions, the evidence proffered by Defendants shows only that Defendants "widely marketed and sold" their product throughout the United States.  (See Laches Opp'n at 5-6; Id., Exs. 9-10, 13.)  Again, viewed in the light most favorable to Defendants, this evidence only speaks to whether employees of Plaintiff were familiar with Defendants' product. As discussed above, however, the mere fact that employees of Plaintiff would have been familiar with Defendants' product does not constitute evidence of "extraneous improper tactics or misleading conduct" by Plaintiff of the kind that would be necessary to support Defendants' contention that Plaintiff's delay in filing this lawsuit was unreasonable.  IXYS Corp., 321 F. Supp. 2d at 1163.

The cases that Defendants rely upon in support of their contention that courts have "held that three-year delays were unreasonable under circumstances analogous to those [in this case]" are inapposite.  (Laches Opp'n at 7.)  In Odetics, Inc. v. Storage Technology Corp.,[5] the court found that the "laches period began to run" in 1988, and observed that, because "[m]ore than six years passed between 1988 and the institution of this suit," a presumption of laches had arisen.  Id. at 920-21.  By contrast, in this case the period of delay was less than three years long, meaning that the presumption of laches does not arise.

In Wafer Shave, Inc. v. Gillette Co.,[6] the court found that the plaintiff's delay in initiating the lawsuit was unreasonable, given the plaintiff's misleading conduct, namely, the fact that the plaintiff had threatened to sue the defendant before "lull[ing]" the defendant into "believing that the threat had been abandoned."  Id. at 128-29.  By contrast, in this case Defendants present no evidence of misleading conduct on the part of Plaintiff.

Finally, in Rosemount, Inc. v. Beckman Instruments, Inc.,[7] the Federal Circuit upheld a district court's finding that a plaintiff was not entitled to damages for infringement for a certain product, because the plaintiff knew of the defendant's sales of that product during an earlier trial

---

[5]  919 F. Supp. 911 (E.D. Va. 1996).

[6]  857 F. Supp. 112 (D. Mass. 1993).

[7]  727 F.2d 1540 (Fed. Cir. 1984).

between the two parties, but failed to include that product as an accused product at that trial. Id. at 1542. By contrast, in this case there was no earlier trial between the two parties at which it would have been possible for Plaintiff to accuse the product at issue of infringement.

Accordingly, the Court GRANTS Plaintiff's Motion of Summary Judgment with respect to the defense of laches.[8]

**B.   Anticipation**

As an affirmative defense, Defendants contend that Claim 1 of the '917 Patent is invalid as anticipated. Plaintiff contends that it is entitled to summary judgment with respect to the defense of anticipation, because none of the cited prior art references satisfy the legal requirements for anticipation. In deciding whether prior art anticipates a patent claim, the Court must examine the scope of the cited reference in light of the scope of the patent claim as construed by the Court.

**1.   The Scope of Claim 1**

Claim 1 provides:

A method for remotely managing a wireless device over a wireless network comprising a server and the wireless device, the wireless network operable to communicatively connect the server and the wireless device, the method comprising the steps of:

transmitting registration information relating to the wireless device from the wireless device to the server;

verifying the registration information at the server; and

without a request from the wireless device, performing the steps of:
establishing a mailbox for the wireless device at the server,
placing a command for the wireless device in the mailbox at the server,
delivering the command from the mailbox at the server to the wireless device by establishing a connection between the wireless device and the server, transmitting the contents of the mailbox from

---

[8] In general, if a plaintiff objects to a defendant's affirmative defense, it is proper for that plaintiff to bring a motion to strike the affirmative defense. See, e.g., United States v. Union Gas Co., 743 F. Supp. 1144, 1150 (E.D. Pa. 1990) (explaining that a motion to strike is the "primary procedure" for objecting to "an insufficient affirmative defense"). However, courts have also held that it is permissible for a plaintiff to move for summary judgment on affirmative defenses. See, e.g., Wimbush v. Wyeth, 619 F.3d 632, 638 (6th Cir. 2010) (stating that "summary judgment is available on affirmative defenses").

United States District Court
For the Northern District of California

1    the server to the wireless device, and accepting the contents of the
     mailbox at the wireless device, and
2    executing the command at the wireless device;

3        wherein the connection is established based on a threshold condition.

4    ('917 Patent, Col. 7:22-44.)

5        On November 20, 2009, the Court held a hearing in accordance with <u>Markman v. Westview</u>

6    <u>Instruments, Inc.</u>[9] to construe the language of Claim 1.  On February 25, 2010, the Court issued its

7    First Claim Construction Order.  (hereafter, "<u>Markman</u>," Docket Item No. 127.)  In summary, the

8    Court gave the following construction to the words and phrases in Claim 1:

| Disputed Claim Language in Claim 1 | Court's Construction |
|---|---|
| "remotely managing a wireless device over a wireless network" | "using the server that is physically separate from the wireless device to wirelessly control the functionality of the wireless device" |
| "server" | "a device or computer in a network that is dedicated to providing resources to the wireless device" |
| "establishing a mailbox for the wireless device at the server" | "creating an address in memory of the server that can store information intended for delivery to the wireless device" |
| "placing a command for the wireless device in the mailbox at the server" | "storing at the server in the mailbox associated with the wireless device a code or signal that is intended to cause the wireless device to take or cease an action with respect to its functionality and other data for use by the wireless device" |
| "transmitting the contents of the mailbox from the server to the wireless device" | "wirelessly sending from the server to the wireless device the contents of the mailbox" |
| "establishing a connection between the wireless device and the server . . . wherein the connection is established based on a threshold condition" | "establishing a connection between the wireless device and the server based on a predefined state of the server or the wireless device other than solely the elapsing of time" |

    In addition to the words and phrases that have been construed by the Court, Plaintiff

contends that the references do not anticipate Claim 1 because none of the cited references disclose,

---

9    517 U.S. 370 (1996).

8

United States District Court

For the Northern District of California

*inter alia*, the limitation "without a request from the wireless device, performing the steps of."  In its Claim Construction Order, the Court did not construe this limitation.  Therefore, before addressing the anticipation Motion, the Court proceeds to construe this additional limitation.

> **2.     Construction of "without a request from the wireless device, performing the steps of"**

On August 31, 2011, the Court ordered the parties to submit additional briefing setting forth their proposed definitions of the subject limitation.  (Docket Item No. 645.)  On September 7, 2011, the parties submitted their proposed constructions.[10]  The parties' supplemental briefing focuses on the meaning of the phrase: **"without a request**."  (See Plaintiff's Request Brief at 3; Defendants' Request Brief at 4.)

The limitation "without a request from the wireless device, performing the steps of" is a Preamble to enumerated steps.  Some of the enumerated steps are disclosed as being performed "without a request" from the wireless device "at the server" or "from the server."[11]  Some of the enumerated steps implicitly disclose that the server performs the step.[12]  Other enumerated steps expressly disclose that the step is performed "at the wireless device."[13]  However, because the

---

[10]  (Mformation Technologies, Inc.'s Claim Construction Brief For "Without a Request From the Wireless Device," hereafter, "Plaintiff's Request Brief," Docket Item No. 660; RIM's Brief Regarding Construction of "Without a Request From the Wireless Device," hereafter, "Defendants' Request Brief," Docket Item No. 661.)

[11]  For example, "establishing a mailbox for the wireless device **at the server**; placing a command for the wireless device in the mailbox **at the server;** transmitting the contents of the mailbox **from the server** to the wireless device."

[12]  For example, "delivering the command from the mailbox at the server to the wireless device by establishing a connection between the wireless device and the server, wherein the connection is established based on a threshold condition."  A person of ordinary skill would understand the phrase "mailbox at the server" as a description of the location of the mailbox, and would understand by implication that the server performs the delivering step and the "establishing a connection" step.

[13]  For example, "accepting the contents of the mailbox **at the wireless device**; and executing the command **at the wireless device**."

United States District Court

For the Northern District of California

1    Preamble "without a request" applies to each enumerated step, the language must be construed in a

2    manner that would allow each step to be performed "without a request" from the wireless device.[14]

3          Pertinent to the construction of the phrase "without a request from the wireless device," the

4    written description discusses two types of devices:

5                A pull device is a device that must request data before the data is transmitted
     to the device. A push device is a device to which data is transmitted without the device
6    requesting the data, but which will nevertheless accept the data. In an embodiment in
     which remotely managed device **502** is a pull device, the management agent running
7    on device **502** will occasionally connect to management server **508** and request the
     commands in mailbox **512**. In an embodiment in which remotely managed device **502**
8    is a push device, management server **508** will occasionally connect to remotely
     managed device **502** and transmit the commands in mailbox **512** to management agent
9    **504**.

10   ('917 Patent, Col. 6:39-50.)

11         Based on the claim language and the written description, the Court finds that a person of

12   ordinary skill in the art would understand that in using the phrase "without a request from the

13   wireless device," the inventors were referring to functions that are performed as a "push" function.

14         Accordingly, as used in Claim 1 of the '917 Patent, the Court construes "without a request

15   from the wireless device, performing the steps of" to mean:

16         **Performing an enumerated step without the transmission from the wireless device of a**
           **code, signal or any other form of request that initiates the commencement of the**
17         **performance of the step**.

18         **3.      Anticipation**

19         Having now construed the language of Claim 1, the Court proceeds to consider Plaintiff's

20   Motion for Summary Judgment that Defendants have insufficient evidence to sustain the defense of

21   anticipation.

22

23

     _____

24         [14] The Court notes that two of the steps (accepting the contents of the mailbox at the wireless
     device, and executing the command at the wireless device) are performed "at" the wireless device.
25   If the wireless device is the device that performs the step, it is potentially ambiguous to provide that
     steps are done "at the [wireless] device" "without a request from the wireless device." As construed
26   by the Court, a "request" is directed by one device to another and ordinarily is not used to disclose a
     process in which the act that is being requested is performed by the device that is making the
27   request. The Court reserves this matter for later consideration.

28                                                        10

United States District Court

For the Northern District of California

1    An invention claimed in a patent is anticipated under § 102(b) if "the invention was patented

2  or described in a printed publication . . . more than one year prior to the date of the application."

3  Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000).

4  A determination that a patent is invalid as being anticipated requires a finding that "each and every

5  limitation is found either expressly or inherently in a single prior art reference." Celeritas Techs.,

6  Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998). "Under the principles of

7  inherency, if the prior art necessarily functions in accordance with, or includes, the claimed

8  limitations, it anticipates." See In re Cruciferous Sprout Litig., 301 F.3d 1343, 1349 (Fed. Cir.

9  2002) (citation omitted). When there is no genuine issue of material fact, a court may resolve a

10  question of anticipation on summary judgment. PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d

11  1299, 1301 (Fed. Cir. 2008) (affirming grant of summary judgment of anticipation under § 102(b));

12  Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368, 1381 (Fed. Cir. 2001). Since an

13  issued patent is presumed to be valid, a party challenging the patent must prove anticipation by clear

14  and convincing evidence. WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed. Cir.

15  1999).

16    Here, Defendants base their anticipation defense on four separate prior art references: (1)

17  Unicenter; (2) the Howard Patent; (3) Mobitex; and (4) RemoteWare. (Anticipation Motion at 2-4.)

18  Plaintiff does not contend that any of the four alleged prior art references are not, in fact, prior art

19  under § 102(b). However, Plaintiff contends that the evidence is undisputed that none of the

20  references disclose all of the limitations of Claim 1.

21    In reply to Plaintiff's Motion, as to each of the prior art references Defendants primarily rely

22  on the testimony of their expert, Dr. Anthony Acampora, and other documentary evidence as raising

23  a genuine factual dispute over the scope of the prior art. Having examined the proffered evidence,

24  and without intending to comment on the credibility of Dr. Acampora's multiple opinions, rather

25

26

27

28                                          11

than recite its analysis of each limitation as applied to each reference,[15] the Court summarily finds that these opinions and documentary evidence create a genuine factual dispute as to whether Claim 1 is invalid as anticipated by each of the four references.

Accordingly, the Court DENIES Plaintiff's Anticipation Motion.

## C.    Inequitable Conduct Motion

As affirmative defenses, Defendants allege that in prosecuting the '917 Patent, Plaintiffs or their counsel Michael Schwartz ("Schwartz") engaged in inequitable conduct by intentionally failing to disclose the following information to the U.S. Patent and Trademark Office ("PTO"): (1) Schwartz failed to disclose a material reference ("Parkinson") to the PTO; (2) Plaintiff failed to identify Gurinder Johar ("Johar") as an inventor of the '917 Patent; and (3) Schwartz failed to disclose two other material references ("Dimech" and "Geiger") to the PTO.

To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO.  Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011).  "In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it."  Id.  "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'  Indeed, the evidence 'must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances.'  Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."  Id. at 1290-91 (citations omitted) (emphasis in original).

With respect to each of these alleged failures, Plaintiff moves for summary judgment on the ground that there is insufficient evidence that it or Schwartz withheld material information from the PTO or that either of them had a specific intent to deceive the PTO.  (Inequitable Conduct Motion at 11-23.)  The Court considers the evidence with respect to each of these grounds in turn.

---

[15] The Court observes that a genuine dispute over a single limitation would suffice to require denial of the Motion.

12

United States District Court

For the Northern District of California

**1.      The Parkinson Reference**

Plaintiff proffers evidence that Schwartz believed that he had disclosed the Parkinson reference to the PTO because he specifically disclosed it in the provisional patent application on which the '917 Patent application was based.[16]   The Parkinson reference was disclosed (by patent number and title) as one of eight "References" in a table in the provisional patent application.   (Id., Ex. P at 4.)   Thus, Plaintiff provides evidence which permits the reasonable inference that Schwartz believed with good faith that he had disclosed the Parkinson reference to the PTO.

Accordingly, the evidence is insufficient to require a finding of deceitful intent on the part of Schwartz, which means that intent to deceive cannot be found.   Therasense, 649 F.3d at 1290-91.

**2.      Identification of Johar**

With respect to Plaintiff's alleged failure to identify Johar as one of the inventors of the '917 Patent, Plaintiff proffers the following evidence to establish that there was no deceitful intent: (1) Johar himself never indicated to anyone at Mformation that he believed he should be named as an inventor on the '917 Patent;[17] and (2) the named inventors of the '917 Patent provided a copy of the draft application for the Patent to Johar, asking him to review it and inviting him to "add more stuff" to it before it was sent to the PTO.   (Id., Ex. J at UBA0006763.)   The evidence shows that Johar did not indicate to the named inventors that he too should have been named as an inventor.   (Id., Ex. I at 236:24-237:22.)   Thus, Plaintiff provides evidence which permits the reasonable inference that Plaintiff did not believe that Johar should be regarded as an inventor of the '917 Patent.

Accordingly, the evidence is insufficient to require a finding of deceitful intent on the part of Plaintiff as to its failure to identify Johar as a named inventor, which means that intent to deceive cannot be found.   Therasense, 649 F.3d at 1290-91.

---

[16]   (See Inequitable Conduct Motion, Ex. O at 143:1-144:7.)

[17]   (Inequitable Conduct Motion, Ex. I at 253:3-13.)

United States District Court

For the Northern District of California

**3.       The Dimech and Geiger References**

In support of its contention that Schwartz acted with deceitful intent, Defendants contend that he "knew of [the Dimech and Geiger references] during prosecution of the '917 application and failed to disclose them" to the PTO.  (Inequitable Opp'n at 24.)  In particular, Defendants contend that: (1) Schwartz was prosecuting both the '917 Patent and a second application, the '408 application, which was a "continuation-in-part of the '917 application," at the same time; and (2) Schwartz disclosed the Dimech and Geiger references as ones "of particular relevance" to the '408 application, but failed to disclose them during prosecution of the '917 application, even though he "both knew of the similarities between the '408 and '917 applications and was aware of the specific teachings in Dimech and Geiger regarding limitations that appear in both the '408 and '917 applications."  (Id. at 25.)  Thus, Defendants contend that the "most reasonable inference" to be drawn is that Schwartz: (1) knew that the Dimech and Geiger references were material to the '917 Patent, and (2) acted with intent to deceive the PTO by failing to disclose them.  (Id.)

In response, Plaintiff contends that it would be reasonable to infer that Schwartz either "simply never considered Dimech and Geiger to be material to the '917 patent," or else that he "never made an affirmative decision not to disclose" those references during prosecution of the '917 Patent, and that it is therefore not the case that the evidence "requires" a finding of deceitful intent.[18] In support of this contention, Plaintiff proffers the following evidence: (1) the '408 patent and '917 Patent are directed to different technologies, and for that reason were assigned to "different art units" within the PTO for examination;[19] and (2) although the Dimech and Geiger references were

---

[18]  (Mformation Technologies, Inc.'s Reply Memorandum in Support of its Motion for Summary Judgment of No Inequitable Conduct at 15, Docket Item No. 620.)

[19]  (Compare Inequitable Conduct Motion, Ex. F at RIM-MF1753321 (noting that the '408 Patent was assigned to "Art Unit 2145") with id., Ex. D at RIM-MF1753159 (noting that the patent application from which the '917 Patent was issued was assigned to "Art Unit 2142").)

14

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  disclosed in prosecution of the '408 Patent, the examiner for that patent did not address those

2  references, did not rely on either, and allowed the patent to issue over the references.[20]

3       Upon review, the Court finds that Defendants do not meet their burden of showing that

4  Schwartz: (1) knew that the Dimech and Geiger references were material; and (2) made a deliberate

5  decision to withhold them.  The evidence presented by Plaintiff permits the reasonable inference that

6  Schwartz did not consider the Dimech and Geiger references to be material to the '917 Patent.  But

7  if that reasonable inference is drawn, it necessarily leads to the conclusion that Schwartz did not act

8  with the requisite deceitful intent when he failed to disclose the Dimech and Geiger references to the

9  PTO in the prosecution of the '917 Patent.  Thus, Defendants have not shown that the evidence

10 "requires" a finding of deceitful intent, which means that intent to deceive cannot be found.

11 Therasense, 649 F.3d at 1290-91.

12      Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment against

13 Defendants on the affirmative defense of inequitable conduct on the ground that based on the

14 undisputed evidence, Defendants cannot prove inequitable conduct as a matter of law.

15 **D.    Indefiniteness Motion**

16      As an affirmative defense, Defendants contend that all of the Claims of the '917 Patent are

17 invalid because (1) the phrases "the contents of the mailbox" and "enabling/disabling" are indefinite;

18 (2) the phrase "enabling/disabling" lacks written description and is not enabled, rendering claims 5,

19 21 and 22 invalid; (3) the term "mailbox" is indefinite, and the step of "establishing a mailbox" and

20 the term "mailbox" lack written description and are not enabled; and (4) Claim 4 of the '917 Patent

21 contains contradictory elements making it nonsensical, which renders it invalid.[21]

22      Plaintiff moves for summary judgment that Claims 1, 4, 5, 6, 21-25, and 27 of the '917

23 Patent are definite, contain sufficient written description and are enabled, on the grounds that: (1)

24

25      [20]  (See id., Ex. F. at RIM-MF1753237-3317.)

26      [21]  (RIM's Opposition to Mformation's Motion for Summary Judgment of No Indefiniteness,
   No Lack of Written Description, and No Lack of Enablement Under 35 U.S.C. § 112 at 3-13,
27  hereafter, "Indefiniteness Opp'n," Docket Item No. 593.)

28

each of the three claim terms Defendants contend are indefinite are "amenable to construction," and the Court has in fact already construed two of them, meaning that the claims are not indefinite as a matter of law; and (2) as a matter of law, Defendants cannot prove that the contested terms are not enabled or lack written description.  (Indefiniteness Motion at 3-11.)

### 1.    Standards

"A patent is presumed valid, and the burden of establishing invalidity as to any claim of a patent rests upon the party asserting such invalidity.  Clear and convincing evidence is required to invalidate a patent."  Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1015 (Fed. Cir. 2006).  Whether a claim is sufficiently definite to satisfy the statutory requirements of patent law is a question of law.  See id.  "If a claim is amenable to construction, 'even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree,' the claim is not indefinite."  Id. at 1016 (citation omitted).

Title 35 U.S.C. § 111 provides that an application for a patent must include a "specification" which complies with the requirements of § 112.  Section 112 requires, *inter alia*, the specification to conclude with the recitation of one or more claims:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112.

In addition, § 112 requires that the specification satisfy three separate, but related, requirements: (1) it must contain a "written description" of the invention; (2) it must enable a person of skill in the art to make and use the invention; and (3) if the inventor contemplates one, it must set forth the best mode for carrying out the invention:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112; see also Univ. of Rochester v. G. D. Searle & Co., 358 F.3d 916, 921 (Fed. Cir. 2004).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Although the three requirements are related, the "written description" requirement is distinct

2  and independent from the "enablement" and "best mode requirement."  Univ. of Rochester, 358 F.3d

3  at 922.  There have been cases in which the courts have held that a specification met the written

4  description requirement, but nevertheless found that the description was not "enabling."  Id. (citing

5  In re Alton, 76 F.3d 1168, 1172 (Fed. Cir. 1996)).  Similarly, there have been cases holding a

6  specification "enabling" of the invention as disclosed, but holding that it did not contain an adequate

7  "written description" of other parts of the invention.  Id.

8    The written description must "clearly allow persons of ordinary skill in the art to recognize

9  that [the inventor] invented what is claimed."  Ariad Pharm., Inc. v. Eli Lilly and Co., 598 F.3d

10  1336, 1351 (Fed. Cir. 2010) (citation omitted).  "In other words, the test for sufficiency is whether

11  the disclosure of the application relied upon reasonably conveys to those skilled in the art that the

12  inventor had possession of the claimed subject matter as of the filing date."  Id. (citations omitted).

13  Whether the written description requirement is met is a question of fact.  See Martek Biosciences

14  Corp. v. Nutrinova, Inc., 579 F.3d 1363, 1369-70 (Fed. Cir. 2009).

15    To be enabling, "the specification of a patent must teach those skilled in the art how to make

16  and use the full scope of the claimed invention without 'undue experimentation.'"  Genentech, Inc.

17  v. Novo Nordisk A/S, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (citations omitted).  Whether the

18  enablement requirement is met is a mixed question of law and fact.  See id.

19    **2.    Whether "The Contents of the Mailbox" and "Enabling/Disabling" Are Indefinite**

20
21    Here, the Court finds that both of these phrases are amenable to construction, which means

22  that they do not render the claims indefinite.  Aero Prods., 466 F.3d at 1016.  First, as to "the

23  contents of the mailbox," the Court construed "transmitting the contents of the mailbox from the

24  server to the wireless device" in its Claim Construction Order.  (See Markman at 16-17.)  In the

25  course of construing that term, the Court explained that "contents," in this context, means, for

26  example, a "new program," as opposed to a "command to store a new program."  (Id. at 16.)

27  Second, as to the phrase "enabling/disabling," the Court finds that it may be construed to mean

28

"enabling *or* disabling," as discussed below.  Thus, because the phrases are amenable to construction, they therefore are not indefinite.

Accordingly, the Court GRANTS Plaintiff's Motion as to the non-indefiniteness of the phrases "the contents of the mailbox" and "enabling/disabling."

**3.      Whether "Enabling/Disabling" Meets the Written Description and Enablement Requirements**

Defendants contend that the phrase "enabling/disabling" lacks written description and is not enabled.  (Indefiniteness Opp'n at 6-7.)  In support of this contention, Defendants offer testimony from their expert, Dr. Acampora, that one of ordinary skill in the art would not understand what this phrase means, and that there is no way to practice the claimed phrase.[22]  Plaintiff contends that, when the phrase appears in Claim 21, the patent reads "wherein the command comprises enabling/disabling access of the wireless device to the server," and contends that it "would make little sense" for the phrase to mean "enabling and disabling," given this context, as "it makes little sense for a command to both enable and disable access of the wireless device to the server at the same time."  (Indefiniteness Motion at 8.)  Thus, Plaintiff contends that it is "abundantly clear" that a person of ordinary skill in the art would recognize, given this context, that "enabling/disabling" means "enabling or disabling."  (Id.)  In support of this contention, Plaintiff offers evidence from its expert, Dr. Vijay Madisetti ("Madisetti"), who testifies that a person of ordinary skill in the art would interpret enabling/disabling to mean "enabling or disabling."[23]  Madisetti further testifies that because one of the described commands includes "enabling/disabling access to the server," a person of ordinary skill in the art would know that the phrase has to mean "enabling or disabling," because performing both tasks at once would not make sense.  (Id.)

---

[22]  (Indefiniteness Motion, Ex. A, Expert Report of Dr. Anthony Acampora Regarding the Invalidity of U.S. Patent No. 6,970,917 at ¶¶ 594, 596, hereafter, "Acampora Report," Docket Item No. 558-1.)

[23]  (See Declaration of Amar L. Thakur in Support of Mformation Technologies, Inc.'s Opposition to RIM's Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112, Ex. C, Expert Report of Vijay Madisetti, Ph.D., Regarding Validity of Patent No. 6,970,917 at ¶ 364, Docket Item No. 589-3.)

Based on the conflicting expert testimony, the Court finds that there is a genuine issue of material fact as to whether one of ordinary skill in the art would find that the phrase "enabling/disabling" has adequate written description.  Therefore, summary judgment is inappropriate as to this issue.

Accordingly, the Court DENIES Plaintiff's Motion as to whether the phrase "enabling/disabling" meets the written description and enablement requirements.

### 4.      Whether the Term "Mailbox" Is Indefinite

Here, the Court finds that this phrase is amenable to construction, which means that it does not render the claims indefinite.  <u>Aero Prods.</u>, 466 F.3d at 1016.  In its Claim Construction Order, the Court construed several phrases pertaining to the "mailbox," including, *inter alia*, "establishing a mailbox for the wireless device at the server."  (<u>See</u> <u>Markman</u> at 12-13.)  In the course of construing that phrase, the Court found that, in the field of electronics, the word "mailbox" is "commonly used to refer to a storage location for information intended for a particular addressee."  (<u>Id.</u> at 12.)  The Court construed the phrase to mean "creating an address in memory of the server that can store information intended for delivery to the wireless device."  (<u>Id.</u> at 13.)  In arriving at this construction, the Court necessarily found that the term "mailbox" was amenable to construction.

Accordingly, the Court GRANTS Plaintiff's Motion as to the non-indefiniteness of the term "mailbox."

### 5.      Whether the Step of "Establishing a Mailbox" and the Term "Mailbox" Meet the Written Description and Enablement Requirements

Defendants contend that the step of "establishing a mailbox" and the term "mailbox" lack written description and are not enabled.  (Indefiniteness Opp'n at 9-10.)  In support of this contention, Defendants offer testimony from their expert that one of ordinary skill in the art would not understand either this step or this term, and would be unable to practice them.  (Acampora Report ¶¶ 580-85.)  In response, Plaintiff contends that Defendants' own expert has stated that one of skill in the art "would understand that there are a limitless number of ways to implement these

United States District Court

For the Northern District of California

1    elements," and contends that this means that one of ordinary skill in the art would not "need undue

2    experimentation" to implement them.  (Indefiniteness Motion at 10.)

3         Upon review, the Court finds that there is a genuine issue of material fact as to whether one

4    of ordinary skill would know how to implement these elements in the manner claimed in the '917

5    Patent.  In particular, the Court finds that the testimony from Dr. Acampora, on which both sides

6    rely, states that one of skill in the art "would understand that there are many known algorithms that

7    might be applied to accomplish" the step at issue, and further states that one of skill in the art "would

8    not know whether the claim covers one of these, several of these, or all of these, or whether the

9    patentees had some new algorithm in mind."  (Acampora Report ¶ 580.)  Based on this evidence,

10   which is the only evidence presented as to this issue, the Court finds that it is unclear, as a matter of

11   fact, whether the written description and enablement requirements are met here.  Accordingly,

12   summary judgment is inappropriate as to this issue.

13        Accordingly, the Court DENIES Plaintiff's Motion as to whether the step of "establishing a

14   mailbox" and the term "mailbox" meet the written description and enablement requirements.

15        **6.    Whether Claim 4 of the '917 Patent Is "Impossible and Nonsensical"**

16        Defendants contend that Claim 4 of the '917 Patent is "impossible and nonsensical," because

17   it requires that the connection between the server and wireless device be "established based on both

18   solely the elapsing of time and other than solely the elapsing of time."  (Indefiniteness Opp'n at 11.)

19        Upon review, the Court finds that Claim 4 is not "impossible and nonsensical."  In its claim

20   construction, the Court construed the phrase "establishing a connection between the wireless device

21   and the server . . . wherein the connection is established based on a threshold condition."  The Court

22   found that this phrase means a connection "between the wireless device and the server based on a

23   predefined state of the server or the wireless device other than solely the elapsing of time."  (See

24   Markman at 19.)  Thus, the Court only found that conditions that are based "solely" on the "elapsing

25   of time" could not be used to establish a connection between the wireless device and the server.

26   From this, it follows that, for example, conditions that are based on *both* a predefined state of the

27

28                                                20

United States District Court

For the Northern District of California

1    server and the elapsing of time are included under the Court's construal of Claim 4.  Because Claim

2    4 may comprise such possible conditions, it is not "impossible and nonsensical."

3        Accordingly, Plaintiff's Motion is GRANTED as to whether Claim 4 of the '917 Patent is

4    invalid due to containing contradictory elements.[24]

5    **E.    Public Use Motion and Claim Priority Motion**

6        As an affirmative defense, Defendants contend that the '917 Patent is invalid because

7    Plaintiff publicly demonstrated and used a prototype that implemented and performed every step of

8    Claim 1 of the '917 Patent at a demonstration on July 24, 2000, more than one year before the '536

9    Application was filed on August 10, 2001.  In conjunction with this contention, Defendants contend

10   that Plaintiff is not entitled to claim priority to Provisional Patent Application 60/251,034 ("the '034

11   Provisional Application"), filed on December 5, 2000.[25]  (Claim Priority Motion at 1, 6, 12.)  The

12   parties have made cross-motions for summary judgment on these issues.

13       "A person shall be entitled to a patent unless . . . the invention was patented or described in a

14   printed publication in this or a foreign country or in public use or on sale in this country, more than

15   one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b).

16   "Public use includes 'any [public] use of [the claimed] invention by a person other than the inventor

17   who is under no limitation, restriction or obligation of secrecy to the inventor.'"  Motionless

18   Keyboard Co. v. Microsoft Corp., 486 F.3d 1376, 1384 (Fed Cir 2007) (quoting In re Smith, 714

19   F.2d 1127, 1134 (Fed. Cir. 1983)).  "When the asserted basis of invalidity is prior public use, the

20   party with the burden of proof must show that 'the subject of the barring activity met each of the

21   limitations of the claim, and thus was an embodiment of the claimed invention.'"  Juicy Whip, Inc.

22   v. Orange Bang, Inc., 292 F.3d 728, 737 (Fed. Cir. 2002) (quoting Scaltech Inc. v. Retec/Tetra,

23

24       [24]  In light of the Court's disposition of this Motion, the Court DENIES Defendants' Motion
     for Summary Judgment that Claims 1, 4-6, 21-25, and 27 of U.S. Patent No. 6,970,917 are Invalid
25   Under 35 U.S.C. § 112.  (See Docket Item No. 559.)

26       [25]  Because the Court concludes that neither party is entitled to summary judgment on the
     issue of public use, the Court does not reach whether Plaintiff is entitled to claim priority to the '034
27   Provisional Application.

28

L.L.C., 178 F.3d 1378, 1383 (Fed. Cir. 1999)).  Because a patent carries a statutory presumption of validity, a party challenging the validity of a patent on the basis of prior use must show by clear and convincing evidence that the invention was in public use more than one year prior to filing the application.  Am. Seating Co. v. USSC Group, Inc., 514 F.3d 1262, 1267 (Fed. Cir. 2008). "Generally, oral testimony of prior public use must be corroborated in order to invalidate a patent." Juicy Whip, 292 F.3d at 737-38.

Here, the Court finds that summary judgment is inappropriate because there is a factual dispute as to whether the invention was in public use before August 10, 2000, one year prior to the filing of the '534 Application.  Defendants rely exclusively on statements from the deposition of Dr. Rakesh Kushwaha[26] to the effect that the July 24, 2000 demonstration included each step and limitation of Claim 1 of the '917 Patent.  (Claim Priority Motion at 12-13.)  However, by itself this uncorroborated deposition testimony is insufficient to establish invalidity due to public use.  Juicy Whip, 292 F.3d at 737-38; Finnigan Corp. v. Int'l Trade Com'n, 180 F.3d 1354, 1367 (Fed. Cir. 1999).  Moreover, Dr. Kushwaha later gave conflicting deposition testimony that the prototype demonstrated on July 24, 2000 did not implement the "wireless registration" or "threshold condition" limitations of Claim 1.[27]  These statements were corroborated by testimony from Harish Magam, Plaintiff's Director of Engineering.  (Id., Ex. G at 1.)  The Court finds that Dr. Kushwaha's conflicting testimony regarding the July 24, 2000 demonstration raises a disputed issue of material fact that precludes summary judgment.

Defendants' reliance on Radobenko v. Automated Equipment Corp. for the proposition that Dr. Kushwaha's later conflicting testimony cannot raise a disputed issue of fact is misplaced.  520

---

[26]  Dr. Kushwaha is a co-founder and Chief Technology Officer of Plaintiff.  (See Declaration of Rakesh Kushwaha, Ph.D., in Support of Mformation Technologies, Inc.'s Opposition to RIM's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,970,917 at ¶1, Docket Item No. 600.)

[27]  (Declaration of Amar L. Thakur in Support of Mformation Technologies, Inc.'s Opposition to RIM's Motion for Summary Judgment that U.S. Pat. No. 6,970, 917 is Not Entitled to Claim Priority to U.S. Prov. Pat.. Appl. 60/251, 034 and that Claim 1 of the '917 Patent is Invalid under 35 U.S.C. § 102, Ex. E at 198:21-199:7, Docket Item No. 591.)

F.2d 540 (9th Cir. 1975).  In that case, the plaintiff filed an affidavit that flatly contradicted his previous deposition testimony in an attempt to defeat a motion for summary judgment.  Id. at 544.  The Ninth Circuit rejected the affidavit on the ground that it was "convinced that the issues of fact created by [Plaintiff] are not issues which this [c]ourt could reasonably characterize as genuine; rather, they are sham issues which should not subject the defendants to the burden of a trial."  Id.  The court noted that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  Id. (citation omitted).  In Kennedy v. Allied Mut. Ins. Co., the Ninth Circuit clarified its holding in Radobenko by stating that "before applying the Radobenko sanction, the district court must make a factual determination that the contradiction was actually a 'sham.'"  952 F.2d 262, 267 (9th Cir. 1991).  In this case, Dr. Kushwaha provided the deposition testimony challenged by Defendants months prior to the filing of these Motions.  Moreover, in making changes to his prior testimony, Dr. Kushwaha explained that the questions asked at the previous session of his deposition "were confusing" and that he felt that he needed to clarify his answers.[28]  Based on this evidence, the Court does not find that the contradictory testimony provided by Dr. Kushwaha "was actually a sham" that cannot raise a disputed issue of fact.

In light of the evidence presented, the Court finds that there is a triable issue of fact over whether Plaintiff publicly demonstrated the invention claimed in the '917 Patent before August 10, 2000.  Accordingly, the Court DENIES the Public Use Motion and the Claim Priority Motion.

**F.    Damages Motion**

Defendants move for summary judgment limiting Plaintiff's damages to those that accrued after October 27, 2008.  (Damages Motion at 2-8.)  The parties agree that Plaintiff did not inform

---

[28]  (Declaration of Amar L. Thakur in Support of Mformation Technologies, Inc.'s Notice of Motion and Motion for Summary Judgment that U.S. Patent No. 6,970,917 is Not Invalid Due to Public Use, Ex. D at 201-202, Docket Item No. 563.)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Defendants prior to filing suit that Defendants were infringing the '917 Patent.[29]  Defendants

2    contend that Plaintiff may not seek damages for any infringement before that date because of their

3    failure to provide notice.  (Damages Motion at 4.)  Plaintiff responds that because only method

4    claims are at issue in this litigation, the notice provisions of 35 U.S.C. § 287(a) do not apply and it is

5    entitled to damages from the date the '917 patent was issued.  (Damages Opp'n at 1.)  Because the

6    parties agree that notice was not provided before October 27, 2008, the Court finds that there are no

7    issues of material fact in dispute in regard to Defendants' Damages Motion.  Thus, the issue before

8    the Court in determining the damages period is whether, as a matter of law, the notice requirements

9    of § 287(a) apply to Plaintiff's claims.

10        Title 35 U.S.C. § 287(a) limits liability for patent infringement by requiring a patentee to

11   give notice to the public of the patent by marking the patented product with the word "patent" along

12   with the patent number.  See, e.g., Devices for Med., Inc. v. Boehl, 822 F.2d 1062, 1063 (Fed. Cir.

13   1987).  If the patented product is not labeled as such, damages are recoverable only for the period

14   after the infringer was "notified of the infringement."[30]  35 U.S.C. § 287(a).  The marking

15   requirements of § 287(a) do not apply to patents containing only method claims.  Bandag, Inc. v.

16   Gerrard Tire Co., 704 F.2d 1578, 1581 (Fed. Cir. 1983).  Thus, where a patent containing only

17   method claims is at issue, a defendant may be liable for the entire period of infringement, even if it

18   lacked any notice of its alleged infringement.  Id.

19

20

21

22        [29]  (Damages Motion, Ex. 2, Deposition of Rakesh Kushwaha at 279:2-279:8, Docket Item
     No. 545-2 (acknowledging that Plaintiff did not provide Defendants with actual notice prior to filing
23   of lawsuit); Mformation Technologies, Inc.'s Opposition to RIM's Motion for Partial Summary
     Judgment to Limit Pre-Suit Damages at 1-4, hereafter, "Damages Opp'n," Docket Item No. 581
24   (acknowledging that Plaintiff did not begin marking product until October 27, 2008).)

25        [30]  The notice required under § 287(a) "must be an affirmative act on the part of the patentee
     which informs the defendant of his infringement."  Amsted Indus. Inc. v. Buckeye Steel Castings
26   Co., 24 F.3d 178, 187 (Fed. Cir. 1994).  "Actual notice requires the affirmative communication of a
     specific charge of infringement by a specific accused product or device."  Id.  As discussed above,
27   the parties agree that no such affirmative communication was made by Plaintiff to Defendants before
     Plaintiff filed suit.

28

United States District Court

For the Northern District of California

In <u>Hanson v. Alpine Valley Ski Area</u>,[31] the Federal Circuit expanded the realm of cases to which marking requirements do not apply, holding that even if a patent contains both apparatus and method claims, § 287(a) does not apply if only method claims have been asserted against the defendant.  This holding was re-affirmed in <u>Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.</u>,[32] where the Federal Circuit reviewed a case involving a plaintiff who had asserted only method claims against an alleged infringer.  The court found that because the facts in <u>Crown Packaging</u> were "identical" to those in <u>Hanson</u>, it was "bound" to conclude that § 287(a) did not apply where no apparatus claim had been asserted.  559 F.3d at 1316-17.

By contrast, in <u>American Medical Systems, Inc. v. Medical Engineering Corp.</u>,[33] the Federal Circuit made clear that where a patent contains both apparatus and method claims, and both have been asserted against a defendant, a plaintiff may seek pre-notice damages for infringement of the method claim only if the corresponding apparatus has been marked.[34]  Thus, if a plaintiff chooses to assert both apparatus and method claims under a patent, damages prior to actual notice are available only if the apparatuses have been marked.  <u>Id.</u>

Here, Plaintiff asserted both the apparatus and the method claims of the '917 patent against Defendants.[35]  Plaintiff also concedes that it could have marked the apparatuses claimed under the '917 Patent with the patent numbers for the method claims.[36]  Plaintiff contends, however, that since

---

[31]  718 F.2d 1075, 1083 (Fed. Cir. 1983).

[32]  559 F.3d 1308 (Fed. Cir. 2009).

[33]  6 F.3d 1523 (Fed. Cir. 1993).

[34]  <u>See</u> <u>Am. Med. Sys.</u>, 6 F.3d at 1538-39 ("[T]o the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of [§ 287(a)].").

[35]  (<u>See</u> Damages Motion, Ex. 1, Mformation Technologies, Inc.'s Disclosure of Asserted Claims and Infringement Contentions, Docket Item No. 545-1.)

[36]  (<u>See</u> Damages Motion, Ex. 3, Mformation Technologies, Inc.'s Responses to Research in Motion Limited's and Research in Motion Corporation's First Set of Requests for Admission (Nos. 1-25) at 2-3, Docket Item No. 545-3.)

1   the Court has already held all of its apparatus claims invalid, and only the method claims remain at

2   issue, the marking requirements of § 287(a) should not apply.  (Damages Opp'n at 4-5.)  Plaintiff

3   contends that under Hanson and Crown Packaging, the relevant inquiry should be whether both

4   apparatus and method claims are found infringed, and not which claims are initially asserted in

5   litigation.  (Id.)  However, the Court finds that Crown Packaging precludes this line of argument.

6       The Crown Packaging court made clear that in finding § 287(a) inapplicable to the facts at

7   bar, it was not overruling or limiting American Medical.  559 F.3d at 1316.  In explaining why

8   marking was required in one circumstance and not the other, the court explained that "[i]n this case

9   and Hanson, the patentee *only* asserted method claims despite the fact that the patent contained both

10  method and apparatus claims.  In American Medical, in contrast, '*both* apparatus and method claims

11  of [the patent] were asserted.'"  Id. at 1317 (citation omitted) (emphases added).  Thus, in Crown

12  Packaging the Federal Circuit clearly stated that the applicability of § 287(a) turns on which claims

13  were asserted.  Therefore, as Plaintiff asserted both apparatus claims and method claims in this

14  litigation, the Court finds that the marking requirements of § 287(a) are applicable.

15      Accordingly, the Court finds that Plaintiff was required to mark its products to claim pre-suit

16  damages.  There being no dispute that Plaintiff did not do so prior to October 27, 2008, the Court

17  GRANTS Defendants' Damages Motion.

18  **G.   Noninfringement Motion**

19      In their Noninfringement Motion, Defendants contend that Plaintiff cannot establish that

20  Defendants directly or indirectly infringe any asserted claim of the '917 Patent.  (Noninfringement

21  Motion at 1-2.)  The Court considers Defendants' Motion with respect to direct infringement and

22  indirect infringement separately.

23

24

25

26

27

28

United States District Court

For the Northern District of California

### 1.      Direct Infringement

Defendants contend that Plaintiff cannot establish direct infringement of the '917 Patent on the following grounds: (1) Plaintiff has no evidence that Defendants used the accused software products in the manner that Plaintiff contends infringes the '917 Patent; and (2) Plaintiff has no evidence that Defendants performed the "establishing a mailbox" and "placing a command for the wireless devices in the mailbox at the server" steps of Claim 1 within the United States because each of the data structures used by Defendants that allegedly constitute such a "mailbox" resides on servers outside of the United States.  (Noninfringement Motion at 10-12.)  Plaintiff responds that: (1) Defendants admit that their employees activate and manage BlackBerry devices using BES software in the United States; and (2) Defendants operate several BES servers in the United States.[37]

Direct infringement of a method claim requires a single party to perform every step of the claim.  BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378-79 (Fed. Cir. 2007).  "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit."  ACCO Brands, Inc. v. ABA Locks Mfrs. Co., 501 F.3d 1307, 1313 (Fed. Cir. 2007).  "[A] party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)."  Ricoh Co. v. Quanta Computer Inc., 550 F.3d 1325, 1335 (Fed. Cir. 2008).  Instead, a plaintiff must show that the defendant actually carried out the instructions.  Id.  In addition, the territorial reach of § 271(a) is limited, and is only actionable against patent infringement that occurs within the United States.  NTP, Inc. v. Research In Motion, Ltd., 418 F.3d 1282, 1313-18 (Fed. Cir. 2005).  In the context of a method claim, the method is not "used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country."  Id. at 1318.

Here, the Court finds that Defendants are entitled to summary judgment on the issue of direct infringement.  First, Defendants cannot be liable for direct infringement based solely on the sale of

---

[37]   (Mformation Technologies, Inc.'s Memorandum in Opposition to RIM's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,970,917 at 23-25, hereafter, "Noninfringement Opp'n," Docket Item No. 598.)

United States District Court

For the Northern District of California

BES software that allegedly practices the method claimed in the '917 Patent.  <u>Ricoh</u>, 550 F.3d. at 1335.  Instead, Plaintiff must show that Defendants actually used the BES software within the United States in a way that directly infringes the patent-in-suit, i.e., in a way that practiced each step of the patented method within the United States.  <u>Id.</u>  The Court finds that, based on the undisputed facts, Plaintiff cannot establish that Defendants performed either the "establishing a mailbox" or "placing a command for the wireless device in the mailbox at the server" within the United States.  In its infringement contentions, Plaintiff contends that the following structures constitute a "mailbox" within the meaning of the '917 Patent: (1) the "ITAdminQueue table of the BlackBerry Configuration Database"; (2) the "User Config Table in the BES"; and (3) individual entries in the ITAdminQueue and BlackBerry Configuration Database.[38]  It is undisputed that the ITAdminQueue Table and User Config Table are located within the BlackBerry Configuration Database component of the BES system.  (<u>Id.</u>, Ex. 4 at 131:13-25.)  The evidence before the Court from both parties establishes that the BlackBerry Configuration Database component of Defendants' BES systems is located outside the United States.  (<u>Id.</u>, Ex. 11 at 100:4-11.)  Therefore, because the only alleged "mailbox" resides outside the United States, Defendants do not practice the "establishing a mailbox" or "placing a command for the wireless device in the mailbox at the server" steps of Claim 1 within the United States.

Plaintiff's reliance on the testimony of Keith Bilinsky, Defendants' Rule 30(b)(6) deponent, is insufficient to raise a disputed issue of material fact.  Significantly, Bilinsky testified that all of Defendants' database servers used to support BES-managed devices in the United States are located in Ontario, Canada.[39]  Plaintiff's contention that certain database servers exist within the United States appears to be based solely on Bilinsky's testimony that "[i]t's possible on, with development

---

[38]   (Declaration of Meredith Zinanni in Support of RIM's Notice of Motion and Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,970,917, Ex. 1 at 14-26, Docket Item No. 550.)

[39]   (Declaration of Shawn E. McDonald in Support of Mformation Technologies, Inc.'s Opposition to RIM's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,970,917, Ex. BB at 95:15-96:9, 97:20-25, 100:4-11, Docket Item No. 601.)

efforts, that there may be something there"—presumably meaning that it is possible that a fully-functional BES server could be established in the United States for development efforts.  (See id. at 95:25-96:4.)  However, given Bilinsky's testimony that, at present, Defendants' BlackBerry Configuration Databases are all located outside the United States, this testimony does not establish a disputed issue as to whether the database servers currently used by Defendants are located within the United States.

Accordingly, the Court GRANTS Defendants' Noninfringement Motion with regard to Plaintiff's direct infringement theory.

## 2. Indirect Infringement

Defendants contend that they are entitled to summary judgment on Plaintiff's claims of indirect infringement on the following grounds: (1) Plaintiff does not have adequate evidence to establish that a third party actually used Defendants' products in a manner that infringes the '917 Patent; (2) Defendants cannot be liable for contributory infringement because Defendants' products lack substantial noninfringing uses; and (3) Plaintiff cannot establish that Defendants had knowledge or intent to induce infringement of the '917 Patent.  (Noninfringement Motion at 13, 20-21.)  Plaintiff responds that: (1) Plaintiff has submitted evidence of infringement by multiple third parties—including ISEC7, Informed Medical Communications, EveryNetwork, Inc. and Foley & Lardner LLP—in the form of a declaration by Rakesh Kushwaha and declarations from the third parties regarding their standard use of Defendants' BES software; (2) the specific features of Defendants' products that Plaintiff alleges are infringing do not have substantial noninfringing uses; and (3) Defendants had specific intent to infringe the patent because they were aware of the '917 Patent as a result of meetings in July 2001 and February 2004 and provided users of BES with instructions on how to practice the infringing method.  (Noninfringement Opp'n at 3-22.)

There are two forms of indirect infringement: induced infringement and contributory infringement.  Induced infringement is addressed by § 271(b), which states: "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent

United States District Court

For the Northern District of California

infringement." Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011). Knowledge can be established through proof of wilful blindness by the defendant, which requires the following: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Id. at 2070.

Liability for contributory infringement is addressed in § 271(c), which states:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). "Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1327 (Fed. Cir. 2009). As with induced infringement, contributory infringement requires that the defendant have knowledge of the existence of the patent that is infringed. Global-Tech, 131 S.Ct. at 2068. In addition, the plaintiff bears the burden of proving that the accused products have no substantial non-infringing uses. Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1363 (Fed. Cir. 2006). "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, aberrant, or experimental." Vita-Mix, 581 F.3d at 1327. A party may not evade liability as a contributory infringer by embedding an infringing device within "a larger product with some additional, separable feature before importing and selling it." Ricoh Co., Ltd. v. Quanta Computer Inc., 550 F.3d 1325, 1337 (Fed. Cir. 2008). Under either theory of indirect infringement, the plaintiff must prove "that some party amongst the accused actors has committed the entire act of direct infringement." BMC Res., 498 F.3d at 1379 (citation omitted).

Here, the Court finds that Defendants are not entitled to summary judgment on the issue of indirect infringement. First, Defendants are not entitled to summary judgment on the ground that Plaintiff cannot establish infringement by a third party. Plaintiff submits a declaration from Dr.

United States District Court

For the Northern District of California

1  Kushwaha stating that he personally observed two third parties, ISEC7 and Informed Medical

2  Communications, Inc., use BES software to perform each step of the '917 Patent.[40]  Defendants'

3  contention that such evidence cannot create an issue of fact because those third parties were not

4  "without authority" as required by § 271(a) due to Dr. Kushwaha's position as co-founder and

5  officer of Plaintiff is misguided.[41]  Dr. Kushwaha states that he did not instruct the individuals in the

6  manner in which they should perform any action and asked only to observe their standard practices

7  with regard to Defendants' BES software.  (Kushwaha Noninfringement Decl. ¶¶ 4, 6, 7.)  In

8  addition, Plaintiff has submitted declarations from two other third parties stating that they use BES

9  to wirelessly register wireless devices and send commands to those devices.[42]  This evidence is

10  sufficient to raise a material issue of fact as to whether these third parties performed each step of the

11  patented claims.

12        Second, Defendants are not entitled to summary judgment on the ground that the BES

13  software has substantial noninfringing uses and that Plaintiff therefore cannot prevail on a

14  contributory infringement theory.  Defendants contend that BES software can be used to perform

15  tasks other than those that are alleged to constitute infringement of the '917 patent, e.g., sending and

16  receiving email, placing telephone calls and managing dates.  (Noninfringement Motion at 18.)

17  Defendants also contend that the specific BES device management functions targeted by Plaintiff

18  can be performed in ways that do not involve wireless control, such as by using a wired connection

19  to activate a handheld device or issue IT administration commands.  (Id.)  However, Defendants

20  misstate the inquiry for determining whether a product has substantial noninfringing uses.  In cases

21  where the alleged method is embodied in a larger product, the Court must examine whether the

22

23        [40]  (Declaration of Rakesh Kushwaha, Ph.D., in Support of Mformation Technologies, Inc.'s
     Opposition to RIM's Motion for Summary Judgment of Noninfringement of U.S. Patent No.
24     6,970,917 at ¶¶ 3-7, hereafter, "Kushwaha Noninfringement Decl.," Docket Item No. 600.)

25        [41]  (RIM's Reply in Support of its Motion for Summary Judgment of Noninfringement of
     U.S. Patent No. 6,970,917 at 5-6, Docket Item No. 624.)

26        [42]  (Declaration of Shawn E. McDonald in Support of Mformation Technologies, Inc.'s
     Opposition to RIM's Motion for Summary Judgment of Noninfringement of U.S. Patent No.
27     6,970,917, Exs. G, H, hereafter, "McDonald Decl.," Docket Item No. 601.)

28                                                  31

United States District Court

For the Northern District of California

particular components that allegedly practice the patented method have substantial non-infringing

uses, and not the entire product as a whole.  See Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1330-31

(Fed. Cir. 2010).  Here, Plaintiff has presented evidence that the wireless use of the Enterprise

Activation component of Defendants' BES software directly infringes the '917 Patent.  As a result,

summary judgment on the ground of substantial noninfringing uses is inappropriate.

Third, Defendants are not entitled to summary judgment on the ground that Plaintiff cannot

establish Defendants' knowledge and specific intent to induce infringement of the '917 Patent.

Plaintiff has submitted evidence that certain employees of Defendants had knowledge of the '917

Patent as early as July 2001 as part of a series of disclosures made while Plaintiff was pursuing a

potential partnership and licence agreement with Defendants.  (McDonald Decl., Ex. I ¶¶ 2-4.)

Plaintiff has also introduced evidence that an employee of Defendants was present at a working

group meeting in 2004 at which Dr. Kushwaha disclosed the '917 Patent application.  (Id., Ex. J.)

This is sufficient to raise a triable issue of fact with respect to Defendants' knowledge of the '917

Patent.  In addition, Plaintiff has introduced evidence that Defendants intended to induce third

parties to infringe the '917 Patent, including various technical documents that appear to contain

instructions to consumers of BES with regard to the wireless registration and management of

wireless devices.  (Id., Exs. S, T.)  Taking this evidence together, the Court finds that there is a

triable issue of material fact with regard to Defendants' knowledge and intent to induce infringement

of the '917 Patent.

Accordingly, the Court DENIES Defendants' Noninfringement Motion with regard to

Plaintiff's indirect infringement theory.

## H.       Equivalents Motion

In their Equivalents Motion, Defendants contend that they are entitled to summary judgment

on Plaintiff's theory of infringement under the doctrine of equivalents on the following grounds:

(1) Plaintiff's infringement contentions regarding the doctrine of equivalents are conclusory and do

not identify differences between the claimed method and the allegedly infringing process or explain

why those differences are insubstantial; and (2) Plaintiff does not have sufficient evidence to

United States District Court

For the Northern District of California

1    establish that any differences between the claimed method and Defendants' product are

2    insubstantial.  (Anticipation Motion at 7-8.)  Plaintiff responds that: (1) its infringement contentions

3    adequately set out a "function/way/result" analysis for each of the limitations of the '917 Patent and

4    the allegedly infringing product; and (2) its infringement contentions present sufficient evidence to

5    establish that Defendants infringe the '917 Patent both literally and under the doctrine of

6    equivalents.[43]

7         Even where an accused device does not literally infringe, a patentee may prove infringement

8    under the doctrine of equivalents.  See Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352,

9    1364 (Fed. Cir. 2000).  The doctrine of equivalents prevents a defendant from avoiding infringement

10   by making an insubstantial change to the claimed invention.  See Festo Corp. v. Shoketsu Kinzoku

11   Kabushiki Co., 535 U.S. 722, 730-32 (2002); Lear Siegler, Inc. v. Sealy Mattress Co., 873 F.2d

12   1422, 1425 (Fed. Cir. 1989).  Under the doctrine of equivalents, a patentee must show that the

13   allegedly infringing device and claimed limitation perform "substantially the same function in

14   substantially the same way to obtain the same result."  Warner-Jenkinson Co. v. Hilton Davis Chem.

15   Co., 520 U.S. 17, 38 (1997) (citation omitted).  To oppose a defendant's motion for summary

16   judgment of non-infringement under the doctrine of equivalents, the plaintiff has the burden of

17   producing "particularized testimony and linking argument on a limitation-by-limitation basis that

18   create[s] a genuine issue of material fact as to equivalents."  AquaTex Indus., Inc. v. Techniche

19   Solutions, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007).

20        Here, the Court finds that Defendants are not entitled to summary judgment on the issue of

21   noninfringement under the doctrine of equivalents.  Plaintiff's infringement contentions set forth, for

22   each limitation of the '917 Patent, a "function/way/result" analysis that compares each step of the

23

24

25
_____

26        [43]  (Mformation Technologies, Inc.'s Memorandum in Opposition to RIM's Motion for
     Summary Judgment of Noninfringement Under the Doctrine of Equivalents at 3, 7-15, Docket Item
27   No. 583.)

28                                                    33

'917 Patent to particular features of Defendants' BES software.[44]  This is supported by a similarly detailed analysis by Plaintiff's expert, who opines that Defendants' products literally infringe the '917 Patent or, if the products do not literally infringe, infringe under the doctrine of equivalents because any differences are insubstantial.  (See id., Ex. B.)  Plaintiff's expert relies upon a combination of deposition and documentary evidence that allegedly establishes Defendants' infringement.  (Id.)  This is sufficient to raise a triable issue of fact as to whether Defendants' products infringe the '917 Patent either literally or under the doctrine of equivalents.

Accordingly, the Court DENIES Defendants' Motion for Summary Judgment of noninfringement under the doctrine of equivalents.

## V. CONCLUSION

The Court GRANTS in part and DENIES in part the parties' various Motions as follows:

(1)    Plaintiff's Laches Motion is granted;

(2)    Plaintiff's Anticipation Motion is denied;

(3)    Plaintiff's Inequitable Conduct Motion is granted;

(4)    Plaintiff's Indefiniteness Motion is granted in part and denied in part;

(5)    Plaintiff's Public Use Motion is denied;

(6)    Defendants' Damages Motion is granted;

(7)    Defendants' Noninfringement Motion is granted in part and denied in part;

(8)    Defendants' Equivalents Motion is denied;

(9)    Defendants' Invalidity Motion is denied; and

(10)    Defendants' Claim Priority Motion is denied.

The Court sets a Preliminary Pretrial Conference for **January 30, 2012 at 11 a.m.** to allow the parties sufficient time to assess the status of the case in light of this Order.  On or before **January 20, 2012**, the parties shall file a Joint Preliminary Pretrial Statement.  The Joint Statement

---

[44]  (Declaration of Amar L. Thakur in Support of Mformation Technologies, Inc.'s Opposition to RIM's Motion for Summary Judgment of Noninfringement Under the Doctrine of Equivalents, Ex. A, Docket Item No. 584.)

United States District Court

For the Northern District of California

shall include, among other things, a proposed schedule as to how the case should proceed and an

update on any settlement efforts.

Dated:  December 19, 2011

_____
JAMES WARE
United States District Chief Judge

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Aaron D. Charfoos acharfoos@kirkland.com
   Allen A. Arntsen aarntsen@foley.com
3  Amardeep Lal Thakur athakur@foley.com
   Christopher R. Liro christopher.liro@kirkland.com
4  Eugene Goryunov egoryunov@kirkland.com
   Jessica Christine Kaiser jessica.kaiser@kirkland.com
5  Justin E. Gray jegray@foley.com
   Linda S. DeBruin ldebruin@kirkland.com
6  Lisa Marie Noller lnoller@foley.com
   Marc Howard Cohen marc.cohen@kirkland.com
7  Maria A. Maras maria.maras@kirkland.com
   Meredith Zinanni meredith.zinanni@kirkland.com
8  Michael Anthony Parks mparks@thompsoncoburn.com
   Michael Daley Karson michael.karson@kirkland.com
9  Michael S Feldberg michael.feldberg@allenovery.com
   Shawn Edward McDonald SEMcDonald@foley.com
10 Tiffany Patrice Cunningham tiffany.cunningham@kirkland.com

11
   **Dated:  December 19, 2011**                    **Richard W. Wieking, Clerk**
12

13                                                  **By:    /s/ JW Chambers          **
                                                        **Susan Imbriani**
14                                                      **Courtroom Deputy**

15

16

17

18

19

20

21

22

23

24

25

26

27

28