**FOLEY & LARDNER LLP**
3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA 92130-2677
TEL.: (858) 847-6700
FAX: (858) 792-6773
AMARDEEP (AMAR) L. THAKUR, CA BAR NO. 194025
ATHAKUR@FOLEY.COM
SHAWN E. MCDONALD, CA BAR NO. 237580
SEMCDONALD@FOLEY.COM
JUSTIN E. GRAY (*PRO HAC VICE*)
JEGRAY@FOLEY.COM

**FOLEY & LARDNER LLP**
150 E. GILMAN STREET
MADISON, WI 53703
TEL: (608) 257.5035
FAX: (608) 258.4258
ALLEN A. ARNTSEN (*PRO HAC VICE*)
AARNTSEN@FOLEY.COM

**FOLEY & LARDNER LLP**
321 N. CLARK ST., SUITE 2800
CHICAGO, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
Lisa M. Noller (*PRO HAC VICE*)
LNOLLER@FOLEY.COM

ATTORNEYS FOR PLAINTIFF AND COUNTERCLAIM DEFENDANT
MFORMATION TECHNOLOGIES. INC.

**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
Linda S. DeBruin
(Admitted to this Court on September 27, 1991)
LINDA.DEBRUIN@KIRKLAND.COM
Christopher R. Liro, *Pro Hac Vice*
CHRISTOPHER.LIRO@KIRKLAND.COM
Tiffany P. Cunningham, *Pro Hac Vice*
TIFFANY.CUNNINGHAM@KIRKLAND.COM
Aaron D. Charfoos, *Pro Hac Vice*
AARON.CHARFOOS@KIRKLAND.COM
Meredith Zinanni, *Pro Hac Vice*
MEREDITH.ZINANNI@KIRKLAND.COM
Maria A. Maras, *Pro Hac Vice*
MARIA.MARAS@KIRKLAND.COM

**KIRKLAND & ELLIS LLP**
950 Page Mill Road
Palo Alto, CA  94304
Tel.: (650) 859-7000
Fax:  (650) 859-7500
Marc H. Cohen (CA Bar No. 168773)
MARC.COHEN@KIRKLAND.COM

ATTORNEYS FOR DEFENDANTS AND COUNTERCLAIM PLAINTIFFS
RESEARCH IN MOTION LIMITED AND RESEARCH IN MOTION CORPORATION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MFORMATION TECHNOLOGIES, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> RESEARCH IN MOTION LIMITED, a Canadian corporation, <br><br> AND <br><br> RESEARCH IN MOTION CORPORATION, a Delaware corporation, <br><br> Defendants and Counterclaim Plaintiffs. <br> ———————————————— <br> AND RELATED COUNTERCLAIMS | CASE NO. 5:08-04990-JW <br><br> **[CORRECTED] JOINT PRELIMINARY PRETRIAL STATEMENT** <br><br> **Hearing Date:  January 30, 2012** <br> **Hearing Time:  11:00 a.m.** <br><br> **Courtroom 9, 19th Floor** <br><br> **Honorable James Ware** <br> **United States District Judge** |

4826-9247-4126.1

1

Plaintiff and Counterclaim Defendant Mformation Technologies, Inc. ("Mformation")

2

and Defendants and Counterclaim Plaintiffs Research In Motion Limited and Research In

3

Motion Corporation (collectively "RIM") hereby submit this Joint Preliminary Pretrial

4

Statement.

5

## STATEMENT OF THE CASE

6

## BACKGROUND

7

Mformation filed its initial Complaint against RIM on October 31, 2008, asserting U.S.

8

Patent Nos. 6,970,917 ("the '917 Patent") and 7,343,408 ("the '408 Patent").  Mformation filed

9

its Third Amended Complaint on August 31, 2009, to which RIM answered and filed its

10

Counterclaims on September 15, 2009.  On September 30, 2009, Mformation filed its Answer to

11

RIM's Counterclaims.

12

On November 19-20, 2009, the Court held a tutorial and hearing to construe disputed

13

claim terms.  On February 25, 2010, the Court issued its First Claim Construction Order.  In an

14

order dated April 14, 2010, the Court stayed all discovery on the '408 Patent.  (Dkt. No. 141.)

15

On April 14, 2010 and September 20, 2010, RIM filed four motions for summary

16

judgment related to infringement, validity, and willfulness issues for the '917 Patent.  The Court

17

heard oral argument on these four motions on October 25, 2010.  The Court ruled on those

18

motions in a November 18, 2010 Order.  (Dkt. No. 355.)  The Court granted RIM's motions for

19

summary judgment of invalidity and of non-infringement of the method claims to the extent any

20

steps of the method claims occur only outside the United States.  The Court denied RIM's

21

motions for summary judgment of no willful infringement and of non-infringement, but limited

22

Mformation's infringement contentions.  (*Id.*)

23

The parties exchanged updated contentions on January 28, 2011, pursuant to this Court's

24

Order dated December 29, 2010, granting the parties' unopposed motions to amend.  (Dkt. No.

25

377.)  The parties exchanged burden of proof expert reports on March 4, 2011 and rebuttal expert

26

reports on March 25, 2011.  The parties exchanged additional supplemental and rebuttal expert

27

reports by the parties' damages and inequitable conduct experts.

28

The '408 Patent and claims 7, 8 and 26 of the '917 Patent were dismissed with prejudice from this case on April 8, 2011.  (Dkt. 450.)  As a result, the remaining asserted claims of the '917 Patent are claims 1, 4-6, 21-25 and 27.

On July 11, 2011, Mformation and RIM each filed five motions for summary judgment. Mformation's motions related to laches, anticipation, inequitable conduct, 35 U.S.C. § 112, and public use.  RIM's motions related to pre-suit damages, noninfringement, the doctrine of equivalents, indefiniteness, and public use.  The Court heard oral argument on certain motions on September 26, 2011, and took the remaining motions under submission without oral argument. (Dkt. 682.)   The Court ruled on those motions in a December 19, 2011 Order.  (Dkt. No. 691.) The Court granted Mformation's motions relating to laches and inequitable conduct and RIM's motion relating to pre-suit damages.  (*Id.*)  The Court granted in part and denied in part Mformation's motion relating to 35 U.S.C. § 112 and RIM's motion relating to noninfringement. (*Id.*)  The Court denied Mformation's motions relating to anticipation and public use and RIM's motions relating to the doctrine of equivalents, indefiniteness, and public use.  (*Id.*)

## ISSUES FOR JANUARY 30, 2012 CONFERENCE

### 1.    Statements of the Parties

#### Mformation's Statement

The only thing this Court should do at the upcoming Preliminary Pretrial Conference is schedule a jury trial.

This case was filed on October 31, 2008 and has already been pending for 39 months. The parties have previously filed numerous joint case management and/or preliminary pre-trial conference statements on February 23, 2009 (Dkt. No. 40), September 11, 2009 (Dkt. No. 75), April 2, 2010 (Dkt. No. 132), October 15, 2010 (Dkt. No. 349), November 30, 2010 (Dkt. No. 358), and April 1, 2011 (Dkt. No. 428).   On April 1, 2011, Mformation and RIM *jointly* requested that the Court set a trial date for this case, which the Court did on April 7, 2011 (Dkt. No. 447) for September 20, 2011, but then took off calendar on June 2, 2011, presumably in light of the pending summary judgment motions.  (Dkt. No. 513.)

This Court has now ruled on all the pending summary judgment motions, including 9 summary judgment motions filed by RIM throughout this case, and has substantially narrowed the issues for trial. Now, after RIM has once again lost its case-dispositive motions, it asks this Court for permission to take a third bite at the apple and file additional meritless motions which procedurally make absolutely no sense and will complicate and inevitably delay the resolution of this case. Recognizing the untimeliness of its motions, RIM attempts to characterize its motions as something that will simplify trial when in it is clear the motions will have the opposite effect.

Mformation respectfully requests this Court to allow for justice in this case that has been pending for over three years, schedule a trial date, and deny RIM's request for endless motion practice.

RIM's Statement

In addition to setting a date for trial, there are several threshold issues RIM is asking this Court to resolve at this preliminary pre-trial conference. RIM renews its request for sanctions against Mformation for certain discovery conduct, seeks leave to file three motions, and offers a proposal about the most efficient way to schedule this trial. Resolution of these issues will streamline the issues for trial, reducing the burden on this Court and the jury.

Contrary to Mformation's assertions, RIM's motions will not delay the resolution of this case. RIM is prepared to file each of these motions shortly following the preliminary pre-trial conference, and no later than February 6, 2012. Under the schedule set by the local rules, briefing on these issues would thus be completed and the motions ready for hearing no later than Monday, February 27, 2012. Additionally, as described below, each of RIM's requests is meritorious and timely. The issue of sanctions is not new, but rather is an open issue from Magistrate Judge Lloyd's order on an earlier RIM motion (Dkt. 389). RIM asks this Court to decide this open issue prior to trial in this matter because the relief RIM requests potentially impacts the evidence to be presented in this case. The Daubert and summary judgment motions RIM seeks leave to file relate to issues that have arisen since the earlier deadlines for Daubert and summary judgment motions passed. These motions have the potential to substantially

streamline trial. RIM's request for claim construction of one term and proposal to bifurcate trial respond to issues raised by this Court and, again, potentially simplify this case for the jury.

Granting RIM's requests would not prevent this Court from setting a trial date for this matter. RIM believes that if the trial date is set for a reasonable time after the preliminary pre-trial conference on January 30, 2012—as would be necessary in any event to allow adequate time for the parties to prepare their pre-trial disclosures, pre-trial conference statement, motions in limine and jury instructions—these issues could be resolved without impacting that trial date.

> **2.    Additional Motion Practice**
>
> > A.    RIM's Motion to Preclude and For Sanctions
>
> RIM's Position

RIM renews its Motion to Preclude Reliance on Newly Produced Source Code and For Discovery Sanctions (Dkt. 389), in light of Magistrate Judge Lloyd's Order on the motion and this Court's comments on the issue at the September 26, 2011 summary judgment hearing. (Dkt. 575; Dkt. 690)  As explained in RIM's motion, in Mformation's initial interrogatory response and in its next seven supplemental interrogatory responses, Mformation maintained that Dr. Rakesh Kushwaha reduced claim 1 of the '917 Patent to practice no later than June 2000. On December 9, 2010, Dr. Kushwaha testified (as Mformation's Fed. R. Civ. P. 30(b)(6) corporate witness) consistent with those responses, testifying that Mformation publicly demonstrated a prototype that implemented and performed all steps of the method recited in Claim 1 on July 24, 2000. After RIM disclosed that Dr. Kushwaha's 30(b)(6) testimony had invalidated the claims of the '917 Patent, Mformation served an errata sheet to Dr. Kushwaha's deposition and amended interrogatory responses. Mformation now argued—two years after discovery began and weeks before the parties exchanged expert reports—that none of the claims of the '917 Patent had been reduced to practice until September 2001 and that the July 24, 2000 public demonstration did not perform all steps of Claim 1. Mformation's argument relied on source code that Mformation had failed to produce throughout the litigation, and did not make available to RIM until February 8, 2011, more than a year after Mformation confirmed that "all of the Mformation source code for the relevant time period" had been produced.

1    RIM moved to strike Dr. Kushwaha's errata sheet, to preclude Mformation from relying

2  on the newly-produced source code, and for sanctions against Mformation.  (Dkt. 389.)

3  Magistrate Judge Lloyd granted RIM's motion to strike the errata sheet, finding that Dr.

4  Kushwaha "did not equivocate or express confusion in providing the Fed. R. Civ. P. 30(b)(6)

5  deposition testimony in question."  (Dkt. No. 575 at 2.)  With regard to RIM's request to

6  preclude and for sanctions, Magistrate Judge Lloyd found that Mformation "has no satisfactory

7  explanation why the source code was produced only this year; and, the record indicates that RIM

8  requested full production of plaintiff's source code no less than 10 times before Kushwaha was

9  deposed in December 2010."  (*Id.* at 3.)  Magistrate Judge Lloyd did not preclude or sanction

10  Mformation at that time, but stated that RIM might seek evidentiary sanctions from the presiding

11  judge.  (*Id.* at 4.)

12    During the September 26, 2011 hearing on the motions for summary judgment regarding

13  RIM's public use invalidity defense, this Court noted that RIM's counsel asked Dr. Kushwaha a

14  "perfectly legitimate question" and that counsel for Mformation should have "properly prepared

15  [Dr. Kushwaha] . . .."  (Dkt. 690 at 74:10-13 and 75:1-4.)  This Court left the door open for "a

16  well-made motion for sanctions for all of the trouble that [counsel for RIM] went through."  (*Id.*

17  at 73:1-4.)

18    RIM now renews its motion to preclude and for sanctions.  The facts and evidence set

19  forth in RIM's briefing on that motion, along with Magistrate Judge Lloyd's specific findings on

20  the matter, establish that RIM is entitled to an Order precluding Mformation from relying on the

21  late-produced source code as a discovery sanction.  RIM will be prepared to discuss this issue

22  further at the pretrial conference to address any questions the Court may have and provide any

23  further information the Court may desire on the issue.  Given Mformation's conduct with respect

24  to this source code, and as discussed with the Court at the end of the September 26, 2011 hearing

25  (Dkt. 690 at 124:9–125:3), RIM also believes Mformation should be required to provide a

26  limited amount of additional discovery regarding Mformation's July 2000 demonstration and

27  what other materials related to the source code should have been but were not produced by

28  Mformation.  Specifically, RIM would like to serve requests for admission, a notice of

Case No. 5:08-cv-04990-JW          5    [CORRECTED] JOINT PRELIMINARY PRETRIAL STATEMENT

1   deposition to Mformation pursuant to Fed. R. Civ. P. 30(b)(6), and requests for production

2   relating to the July 2000 demonstration, the Mformation computers on which the source code has

3   resided and the steps Mformation took to preserve any potentially relevant data on those

4   computers.  RIM is prepared to serve this discovery immediately.

5           Mformation's response to RIM's request ignores the fact that under Federal Rule of Civil

6   Procedure 37(c)(1), Mformation's failure to produce the prototype source code until weeks

7   before the exchange of expert reports is ***automatically*** precluded unless ***Mformation*** can prove

8   that its failure to produce the source code is either substantially justified or harmless.  *See Yeti by*

9   *Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1006 (9th Cir. 2001).  The explanation

10  Mformation offers below establishes neither of those exceptions.  In particular, Mformation fails

11  to address the fact that from March 2009 through January 2011, Mformation asserted a June

12  2000 reduction to practice date—despite Mformation having in its possession throughout the

13  pendency of this case, and its counsel having possession since at least November 2009, of the

14  prototype source code that Mformation now claims establishes that date is incorrect.

15          Mformation's Position

16          Magistrate Judge Lloyd denied RIM's motion to preclude Mformation from relying on

17  the prototype source code at issue, which speaks the truth, but yet RIM returns to this Court and

18  asks it to suppress the prototype source code and knowingly become an instrumentality of

19  injustice.

20          As explained in the briefing before Magistrate Judge Lloyd (Dkt. No. 425), Mformation

21  timely provided all of its prototype source code to counsel at the outset of this case.  Mformation

22  clearly did no wrong, and any suppression of the prototype source code would do Mformation a

23  great injustice.

24          At issue is Mformation's counsel's conduct.  Mformation's counsel received all the

25  prototype source code by November 3, 2009 so that it could be made available to RIM.

26  Mformation's counsel instructed that the prototype source code be loaded on the source code

27  inspection computer in its San Francisco office on January 20, 2010 and received confirmation

28  that it had been done.  The fact that the prototype source code had inadvertently not been loaded

1   on the source code computer was first discovered on January 28, 2011.  Five business days later,

2   on February 4, 2011, Mformation's counsel promptly made that prototype source code available

3   for inspection by RIM.  Two business days later, RIM and its technical expert then inspected the

4   prototype source code over an entire two day period spanning February 8-9, 2011.

5          The close of fact discovery was May 13, 2011, 93 days after RIM inspected the prototype

6   source code.  This gave RIM ample time (over three months) to propound any additional

7   discovery (depositions, requests to admit, interrogatories, or otherwise) it thought was necessary.

8   But instead RIM took the exact opposite approach, cancelling the depositions of Mformation's

9   programmers of the prototype source code, Gabe Beltramino and Saran Sahni.  Clearly, RIM

10  wanted to turn a blind eye to the prototype source code.  Magistrate Judge Lloyd noted this

11  during the oral argument on this issue, directly asking RIM "you don't want to know?", when

12  referring to whether the prototype source code practiced every element of claim 1 of the '917

13  Patent.  (Dkt. No. 492 at 13:5.)

14         RIM argues that Mformation's delay was not justified or harmless.  But RIM ignores the

15  fact that Mformation's counsel had every reason to believe that the prototype source code was

16  loaded and that, after RIM inspected the prototype source code, 93 days of fact discovery

17  remained which alleviated any alleged harm to RIM.

18         What makes RIM's request at this time even more shocking is that Mformation offered

19  last year after the close of discovery to give RIM the deposition it now seeks, but RIM declined

20  Mformation's offer.  Though Magistrate Judge Lloyd issued his order regarding RIM's motion

21  on July 20, 2011, at no point during summary judgment briefing did RIM ask this Court to

22  reconsider the issue.  Only after RIM lost its case dispositive motions did RIM raise this for

23  reconsideration.  This Court should deny RIM's request and schedule a trial date.

24         B.    Motion Under Daubert to Exclude the Opinions of Dr. Vijay Madisetti
                 Regarding Secondary Considerations Of Non-Obviousness.

25  RIM's Position

26

27  RIM seeks leave to file a *Daubert* motion to exclude the opinions of Mformation's

28  invalidity expert, Dr. Vijay Madisetti, on secondary considerations of non-obviousness.  Dr.

1   Madisetti did not even attempt to establish the required nexus between such considerations and

2   the asserted claims of the '917 Patent in either his expert report or his deposition. *See* Fed. R.

3   Evid. 701 and 702. This additional *Daubert* motion has the potential to narrow the issues for trial

4   and conserve the parties' and the Court's resources.

5       Mformation must prove a nexus between its secondary considerations of non-obviousness

6   and the claims of the patent. *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311–1312

7   (Fed.Cir. 2006) ("Evidence of commercial success, or other considerations, is only significant if

8   there is a nexus between the claimed invention and the commercial success"); *Media Techs.*

9   *Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010). Because Mformation

10  has not demonstrated the appropriate nexus between any of its proposed secondary considerations

11  and the '917 Patent, any testimony on this topic is irrelevant to the question of secondary

12  considerations of nonobviousness.

13      Pursuant to this Court's case schedule, the deadline to file *Daubert* motions was March

14  28, 2011. However, Dr. Madisetti's deposition on validity issues did not occur until May 13,

15  2011. During that deposition, Dr. Madisetti admitted that he had not performed the analysis

16  required to establish a nexus between the secondary considerations and the asserted claims of the

17  '917 Patent. For example, in his report, Dr. Madisetti cites twelve awards given to Mformation

18  products as evidence of "industry respect," without any analysis showing that the basis for the

19  awards was coextensive with the '917 Patent. At deposition, he admitted that he: (1) had not

20  researched whether those awards were given for the '917 Patent; (2) had not read the press

21  releases regarding those awards; and (3) could not say how much of the value of Mformation

22  products was attributable to the '917 Patent. (5/13/11 Madisetti Dep. at 265:2-10; 265:23-25;

23  266:5-8; 267:11-19.) As another example, Dr. Madisetti based his secondary considerations

24  opinion in part on representations from counsel that the '917 Patent "forms the core of

25  [Mformation's] products." (*Id.* at 274: 19-21.) But Dr. Madisetti did nothing himself to confirm

26  counsel's representations, and those representations do not establish the required nexus. Dr.

27  Madisetti never used or even saw Mformation's products, did not review any Mformation

28  manuals, and did not speak to anyone about Mformation's products or what features outside the

1    patent claims were included in those products. (*Id.* at 282:5-283:5.) RIM was not aware that Dr.

2    Madisetti did not perform a sufficient analysis—and in some instances had solely based his

3    opinions on representations from Mformation's counsel—until this May 13, 2011, deposition and

4    therefore RIM could not have filed this motion by the March 2011 deadline.

5         Mformation's reliance on Federal Rule of Civil Procedure 26(b)(4)(c)(iii) in opposition to

6    RIM's request is misplaced. Contrary to Mformation's assertion, that rule does not make it

7    "undisputed that experts can rely on assumptions provided by counsel in forming opinions." It

8    merely states that if an expert relies upon an assumption provided by counsel, communications

9    about that assumption are discoverable. Reliance on an assumption still must meet the

10   requirement of Federal Rule of Evidence 702(b) that the testimony be based on sufficient facts or

11   data. Dr. Madisetti's reliance on counsel's bare assertions does not satisfy the requirements of

12   Rule 702(b), and thus RIM seeks leave to file a *Daubert* motion about this issue.

13        Mformation's Position

14        Pursuant to this Court's case schedule, the deadline to file *Daubert* motions was March

15   28, 2011. Both RIM and Mformation timely filed *Daubert* motions. (Dkt. Nos. 416, 419.) If

16   RIM believed that additional *Daubert* motions were necessary given Dr. Madisetti's May 13,

17   2011 deposition, it should have asked this Court for leave to file its additional *Daubert* motion at

18   that time, sometime prior to the Court's September 26, 2011 hearing on pending motions, or even

19   after the Court initially set the trial date for September 20, 2011. RIM never made any such

20   request. Instead, RIM waited over seven months after the deposition to raise this issue and only

21   does so now for the purpose of delaying resolution of this case. Further, RIM's requested motion

22   completely lacks merit. It is undisputed that experts can rely on assumptions provided by counsel

23   in forming opinions. *See, e.g.*, Fed. R. Civ. P. 26(b)(4)(c)(iii). Dr. Madisetti expressly tied his

24   discussion of secondary considerations of non-obviousness to the '917 Patent in his expert report

25   and also opined that there are no acceptable non-infringing alternatives to the '917 Patent. (*See,*

26   *e.g.*, 3/25/11 Madisetti Report at ¶¶ 365-372.) RIM's proposed *Daubert* motion relies almost

27   entirely on Rule 702(b) with respect to "sufficient facts or data", the foundation of which will be

28   established at trial. RIM can then easily raise this issue during trial if Mformation does not

1    establish the foundation for the documents on which Dr. Madisetti relies.  In summary, while

2    RIM's requested motion is not only very untimely and completely meritless, any issues raised

3    therein can be easily and quickly dealt with by the Court at trial.

4                    C.    Claim Construction for the term "Establishing a Connection Between the
                           Wireless Device and the Server."

5

6            RIM's Position

7            In the parties' previous Joint Preliminary Pre-Trial Conference Statement, RIM identified

8    the potential need for additional claim construction, but the Court at that time denied RIM's

9    request as premature.  (D.I. 358 at 6; D.I. 359 at 2.)  Mformation's present assertion that no

10   further claim terms may be construed is incorrect, as the Court previously expressly stated that

11   "Should new claim construction issues arise from the Court's ruling on the parties' anticipated

12   dispositive Motions after merits discovery, the parties may file a motion requesting further

13   construction."  (D.I. 359 at 2.)  Now that the Court has ruled on the parties' dispositive motions,

14   RIM asks that the Court construe only one additional claim phrase, "establishing a connection

15   between the wireless device and the server."

16           The Court previously noted at the October 25, 2010 summary judgment hearing that this

17   phrase may need to be construed, stating "[t]he part of [Mformation's] side of this motion that

18   caught my attention was whether or not I needed to go back and define 'connection'" and "it does

19   seem to [the Court] that part of your motion requires that I construe that term."  (Oct. 25, 2010

20   Summ. J. Hr'g Tr. at 44:13–15, 46:6–7.)  Although the Court did not construe the term at that

21   time, the merits discovery following the Court's initial summary judgment ruling, and in

22   particular the reports and depositions of the parties' technical experts, have revealed that

23   construction of this phrase will assist in further narrowing the disputes for the jury at trial.  For

24   example, when asked whether a particular aspect of RIM's products met the claim limitation of

25   "establishing a connection between the wireless device and the server," Mformation's technical

26   expert, Dr. Vijay Madisetti, repeatedly testified that although it was a connection, it was "not the

27   connection of the patent."  (*See, e.g.*, May 2, 2011 Madisetti Dep. at 198:9–203:17.)  RIM's

28   expert witness disagrees.  The experts' disagreement on this issue centers on the legal issue of

4826-9247-4126.1

1    what is meant by the phrase "establishing a connection between the wireless device and the

2    server," rather than any factual dispute concerning how RIM's products operate.  Furthermore,

3    Dr. Madisetti's testimony begs the question as to what "the connection of the patent" is.  To

4    resolve this dispute, RIM proposes that the Court receive briefing from the parties concerning

5    construction of the claim phrase "establishing a connection between the wireless device and the

6    server" and issue an order construing that term.

7            Moreover, the Court should resolve this legal issue before proceeding to trial.  With its

8    suggestion that—at trial—it need only "show that at least one . . . connection[] satisfies the claim

9    step recited in the '917 Patent claims," Mformation ignores the point that it is not proper for the

10   jury to decide the legal issue of what the claim phrase "establishing a connection between the

11   wireless device and the server" means.  This is not the factual issue of whether a "connection"

12   does or does not include certain protocols, but relates to the legal issue of the meaning of the

13   broader term "establishing a connection between the wireless device and the server."  That is the

14   sole province of this Court and the outcome of this legal dispute would narrow the issues for trial.

15           Mformation's Position

16           RIM shows no hesitation to misstate the record.  Although RIM generically reserved its

17   right to assert additional claim construction arguments in a prior case management statement

18   (Dkt. No. 358 at 6), at no point prior to this Joint Preliminary Pretrial Statement did RIM ever

19   assert that the claim phrase "establishing a connection between the wireless device and the

20   server" required construction.  For example, in RIM's Patent L.R. 4-2 disclosures, it expressly

21   and unambiguously stated that it was not seeking construction of the claim term "connection."  In

22   this Court's November 18, 2010 Summary Judgment Order, the Court expressly declined "to

23   exclude communication via UDP as a matter of claim construction" and found that "there is a

24   triable issue of fact over whether the communication between the server and the BlackBerry

25   handheld device over a cellular network using UDP is a 'connection' within the meaning of the

26   claims."  (Dkt. No. 355.)  RIM never moved for reconsideration of the Court's Order, never

27   asked for claim construction of the term "connection" in all of 2011, and never mentioned any

28

1   issue concerning "connection" in any of its five summary judgment briefs filed last year in light

2   of the expert reports and deposition testimony.

3       Having lost its case-dispositive motions, all RIM is trying to do here is ask this Court to

4   reverse itself on an issue the Court has already determined is triable, and improperly turn factual

5   issues of infringement into legal issues of claim construction.  RIM cites to this Court's statement

6   at oral argument that "[t]he part of [Mformation's] side of this motion that caught my attention

7   was whether or not I needed to go back and define 'connection'" and "it does seem to [the Court]

8   that part of your motion requires that I construe that term."  (Oct. 25, 2010 Summ. J. Hr'g Tr. at

9   44:13–15, 46:6–7.)   But that specifically relates to Mformation's motion that there was no triable

10  issue of fact in its favor and the Court denied that motion.  The Court's statement did not refer to

11  any infringement issue raised by RIM when the Court specifically denied RIM's motion on

12  noninfringement, including any issue concerning "connection", over 14 months ago.

13      RIM also improperly relies on Dr. Madisetti's testimony to create a claim construction

14  issue, when it is clear that patent claims using the term "comprising" are infringed by accused

15  instrumentality even though the accused instrumentality may have additional items, or in this case

16  perform additional steps, not present in the patent claims.  *Moleculon Research Corp. v. CBS,*

17  *Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986) ("comprising" opens a method claim to the inclusion

18  of steps in addition to those stated in the claim).  Indeed, even if it is shown at trial that RIM's

19  accused products establish multiple connections, all that Mformation is required to do is show

20  that at least one of those connections satisfies the claim step recited in the '917 Patent claims.

21      In summary, this Court resolved the issue of "connection" in its November 18, 2010

22  Order and Mformation accepts that Order.  RIM's efforts to ask this Court to reverse itself in

23  additional claim construction is nothing more than an effort to deny Mformation justice by

24  engaging in endless motion practice.

25          D.    Motion for Summary Judgment of Noninfringement regarding Wi-Fi
                  operation of the accused products and one of the accused "threshold
26                conditions"

27      RIM's Position

28

4826-9247-4126.1

1    On December 19, 2011, the Court provided the parties with a new claim construction in

2    the Court's order deciding the parties' motions for summary judgment.  Specifically, the Court

3    construed the claim phrase "without a request from the wireless device, performing the steps of"

4    to mean "performing an enumerated step without the transmission from the wireless device of a

5    code, signal or any other form of request that initiates the commencement of the performance of

6    the step."  (D.I. 691 at 10.)  In light of this construction, RIM respectfully seeks leave to file an

7    additional motion for partial summary judgment of noninfringement. Notwithstanding

8    Mformation's assertion that the Court already addressed this issue, obviously neither RIM nor the

9    Court could have addressed the impacts of the Court's December 19, 2011 construction before

10   the fact.

11   The undisputed facts show that (1) communications between a BlackBerry handheld

12   device and a BES or the RIM Relay over a Wi-Fi network and (2) certain alleged "threshold

13   conditions" relied on by Mformation do not meet the required "without a request" limitation as

14   construed by the Court.  RIM did not previously move on these grounds because it did not have

15   the benefit of the Court's claim construction regarding the phrase "without a request from the

16   wireless device, performing the steps of."  RIM's motion, if granted, would substantially narrow

17   the disputes for trial.

18   While the Court previously found that "a fact issue exists over whether the non-default

19   Wi-Fi connection is established with or without a request from the wireless device," (D.I. 355 at

20   14), that ruling was issued before the parties had exchanged expert reports, before the parties had

21   taken depositions of the technical experts, and before this Court construed the claim phrase

22   "without a request from the wireless device, performing the steps of."  Now, after the factual

23   record is complete, expert discovery has concluded, and the Court construed this phrase in a

24   manner that provides a narrowed scope of the asserted claims, this issue is ripe for summary

25   judgment.

26   In light of the undisputed evidence from both parties, Mformation cannot bear its burden

27   of proving that Wi-Fi operation of a BlackBerry handheld device and a BlackBerry handheld

28   device reporting its availability on a network involve "performing an enumerated step ***without*** the

transmission from the wireless device of a code, signal or any other form of request that initiates the commencement of the performance of the step." (D.I. 691 at 10 (emphasis added).)  The jury's time and attention at trial will be better focused on the parties' genuine factual disputes, instead of technical issues over which there is no genuine issue of material fact: (1) Wi-Fi operation of a BlackBerry handheld device and (2) a BlackBerry handheld device reporting its availability on a network both require performing an enumerated step *with* "the transmission from the wireless device of a code, signal or any other form of request that initiates the commencement of the performance of the step."

Mformation's Position

RIM already specifically moved for summary judgment that the use of its products does not infringe the '917 Patent when using the optional Wi-Fi mode as no connection is established "without a request from the wireless device."  This Court denied RIM's noninfringement motion 14 months ago, finding that "a fact issue exists over whether the non-default Wi-Fi connection is established with or without a request from the wireless device." (Dkt. No. 355 at 14.)  Since that time, Mformation's infringement arguments have not changed one iota regarding this point.  Indeed, Dr. Madisetti's expert report and deposition testimony comports with Mformation's earlier infringement contentions on this point.  RIM has not identified, and cannot identify, any such substantive change.

RIM attempts to tie its argument to an assertion that the Court's claim construction of "without a request from the wireless device" of December 19, 2011 changes the infringement analysis.  It is ultimately Mformation's burden to show that the way RIM's accused products use a Wi-Fi connection infringes the '917 Patent claims as construed by the Court, and Mformation is confident it will have no trouble doing so at trial.

RIM's factual assertions as "undisputed facts" are absurd on their face.  RIM argues that WiFi operaion of a BlackBerry handheld device and the device reporting its availability on a network both perform an enumerated step with "transmission from the wireless device of a code, signal or any other form of request that initiates the commencement of the performance of the step."  But that is absurd.  It is Mformation's burden to establish that these claim steps are

1   performed without such a transmission and Mformation has no doubt that it will be able to do so.

2   This Court should not indulge RIM with another fact-based summary judgment motion after

3   having already ruled on 9 of RIM's summary judgment motions.

4   **3.      Modification to the Protective Order**

5          The parties jointly wish to modify the Protective Order governing this case (Dkt. 51).

6   The parties seek to change one sentence of Paragraph 5 of the Protective Order as follows:

7          <u>Current language</u>: No person who is currently involved in the drafting, filing or

8   prosecution of new or currently pending patent applications, or re-examination or reissues on

9   behalf of a Party to this litigation, or any Related Entity, may have access to Protected

10  Information.

11         <u>Proposed replacement language</u>: No person who is currently involved in the drafting,

12  filing, prosecution, re-examination or reissue of a patent application or patent owned by a Party

13  to this litigation, or owned by any Related Entity, may have access to Protected Information.

14  **4.      Trial Scheduling**

15  <u>Mformation's Position</u>

16  Mformation requests that this Court set a trial date for this case, and states as follows:

17         A.      The lead attorney who will try this case will attend this hearing.

18         B.      Both Mformation and RIM have demanded a jury trial.

19         C.      Mformation anticipates that the jury trial will last approximately 5 days.

20         D.      Mformation expects that the time at trial will be split evenly between

21                 Mformation and RIM.

22         Mformation requests a trial date, subject to the Court's schedule, for March 2012, with

23  the Final Pretrial Conference to occur 14 days before trial commences.  Mformation believes it

24  will be ready for trial by this date subject to the Court's schedule.

25         Regarding RIM's proposal for a total of 10 days for trial below, Mformation notes that

26  RIM has consistently asserted in each of the six Joint Conference Management Statements that

27  the entire case could be heard by a jury in 5 days.  (*See* Dkt. No. 428 at 2 ("[t]he parties

28  anticipate that the jury trial will last approximately 5 days"); Dkt. No. 358 at 3 ("[b]oth

1  Mformation and RIM have demanded a jury trial, and anticipate that trial will last approximately

2  5 days"); Dkt. No. 349 at 7 (same); Dkt. No. 132 (same); Dkt. No. 75 at 8 (same); Dkt. No. 40 at

3  9 (same).)  RIM does not even attempt to set forth what has changed in this case from the date of

4  the parties' last joint statement (April 1, 2011) to now that requires doubling the proposed

5  number of days for trial.  This Court previously set a 5-day trial on April 7, 2011 and it should do

6  so again.  (Dkt. No. 447.)

7          Regarding RIM's proposal for bifurcation, RIM's gamesmanship seemingly has no

8  bounds.  Mformation notes that at the very beginning of this case, both Mformation and RIM

9  asserted that "[t]he parties do not believe that bifurcation of the issues is appropriate in this

10  case."  (Dkt. No. 40 at 9.)  Throughout this entire case and the numerous joint statements

11  presented to the Court, RIM has not once indicated that it believes bifurcation of any issue is

12  appropriate, let alone bifurcation in the nonsensical way RIM proposes.  While RIM cites to the

13  Court's inquiry to "split the case up into something that could be done in a shorter period of

14  time" (Dkt. No. 690 at 123-24) in support of its proposal, RIM instead doubles the amount of

15  work for this Court by proposing two separate trials of roughly one week each.  RIM should not

16  be granted leave to file a motion for bifurcation and create needless work for Mformation and

17  this Court.

18          RIM could not be more wrong in its assertion that there would be little overlap of

19  evidence between the two trials.  For example, RIM's voluminous instructional manuals relate to

20  both third-party direct infringement as well as induced infringement, as this Court recognized in

21  its December 19, 2011 Summary Judgment Order, when it explained that "Plaintiff has

22  introduced evidence that Defendants intended to induce third parties to infringe the '917 Patent,

23  including various technical documents that appear to contain instructions to consumers of BES

24  with regard to the wireless registration and management of wireless devices."  (Dkt. No. 691 at

25  32.)  Further, evidence concerning the lack of substantial noninfringing use overlaps with

26  documents concerning RIM's intent to infringe the '917 Patent.  Mformation also believes the

27  damages portion of the trial will be extremely straightforward and will take less than 1 day (less

28  time than to empanel a separate jury).

1   This case can and should be completed in a single 5-day trial, as has been consistently

2   proposed by the parties since the very outset of this case and what this Court previously ordered

3   on April 7, 2011.

4       <u>RIM's Position</u>

5       RIM intends to file a motion to bifurcate trial of this matter for the reasons described

6   below.  Mformation's citation of the parties' statement about bifurcation in the original joint case

7   management statement, filed before discovery even commenced, is unpersuasive.  Through

8   discovery and motion practice in this case, it has become apparent that bifurcation is warranted

9   in this case.  Additionally, RIM is responding to this Court's invitation during the September 26,

10  2011 hearing on the parties' summary judgment motions to think of ways in which to "split the

11  case up into something that could be done in a shorter period of time."  (Dkt. 690 at 123-24.)

12  RIM agrees with the Court that due to the number and complexity of issues in this matter, it

13  makes sense to bifurcate this case.  See Fed. R. Civ. P. 42(b) ("For convenience, to avoid

14  prejudice, or to expedite and economize, the court may order a separate trial of one or more

15  separate issues, claims, crossclaims, counterclaims, or third-party claims.")  RIM proposes that

16  the case be bifurcated in the following manner: trying the issues of direct infringement by third

17  parties, contributory infringement, and invalidity in a first trial, and, if necessary, trying the

18  issues of induced infringement, willfulness, and damages in a second trial.  RIM proposes that

19  the second trial, if necessary, begin immediately upon conclusion of the first trial and be tried to

20  the same jury as the first trial.

21      RIM proposes this division of issues both to streamline the issues and to avoid the

22  duplication of evidence.  See *Henderson v. Peterson*, No. C 07-2838, 2011 WL 2838169 (N.D.

23  Cal. July 15, 2011) (citing *Arthur Young & Co. v. U.S. Dist. Ct. (Kaufman)*, 549 F.2d 686, 697

24  (9th Cir. 1979)) ("[B]ifurcation of a trial into liability and damages phases may be appropriate

25  where doing so would be economical and efficient, and where there is little overlap in the

26  evidence that would be presented at each phase.")  All technical issues related to the patent,

27  RIM's accused products, and the prior art would be decided in the first trial, limiting the volume

28  of information presented to the jury and focusing them on the technical issues in this case.  If a

1    second trial were then necessary, the parties would present evidence related to the non-technical

2    issues to the same jury, *i.e.*, the history between the parties, notice to RIM, RIM's intent, and

3    damages issues.

4           RIM proposes that the issue of induced infringement be tried with willfulness in a second

5    trial due to the overlap of the evidence required by these two issues.  The inquiry into both

6    inducement and willful infringement requires evidence regarding RIM's knowledge of the '917

7    Patent and RIM's intent.  See *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065,

8    2068 (2011) (induced infringement requires "at least some intent" and "knowledge of the

9    existence of the patent that is infringed"); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897

10   F.2d 508, 510-11 (Fed. Cir. 1990) ("Whether an act is 'willful' is by definition a question of the

11   actor's intent … a party cannot be found to have 'willfully' infringed a patent of which the party

12   had no knowledge.").  Moving these issues to a possible second trial also avoids the possibility

13   of prejudicing the jury deciding the technical issues.  See Fed. R. Civ. P. 42(b) (bifurcation may

14   be ordered to avoid prejudice).  Mformation has repeatedly referenced certain emails by RIM's

15   co-CEOs in motions regarding purely technical issues—emails unrelated to the issues to be

16   decided.  (*See, e.g.*, Dkt. 100 (citing emails in reply claim construction brief); Dkt. 169 (citing

17   emails in opposition to RIM's motion for summary judgment of invalidity under §§ 101 and/or

18   112).)  Bifurcating this case in the manner RIM proposes avoids prejudicing the jury hearing the

19   technical issues with information about the parties unrelated to those issues.

20          RIM proposes that a schedule be set for the case that allows adequate time for the

21   additional discovery and motion practice requested.  RIM anticipates that if the trial were

22   bifurcated as RIM proposes, a trial on the technical issues would last approximately 6 days and a

23   trial (if necessary) on the remaining issues would last approximately 4 days.  RIM expects that

24   the time at trial would be split evenly between RIM and Mformation.

25          Mformation's reliance on statements about the anticipated duration of trial made prior to

26   the close of discovery and resolution of numerous outstanding motions is misplaced.  Only now,

27   knowing the number of issues to be decided at trial, can RIM accurately estimate how long it

28   anticipates it will take to present all the evidence relevant to the numerous issues to be decided.

At the time of the prior joint pre-trial conference statement, the parties had yet to file their summary judgment motions.  RIM anticipated that resolution of those motions would significantly narrow the number of issues for trial, such that a trial could be completed in five days.  RIM now recognizes, however, that more time will be needed to fully and fairly present the evidence.

RIM proposes the following schedule:

- The additional discovery RIM requests will be completed by March 30, 2012.

- RIM will file its additional *Daubert*, claim construction, and summary judgment motions by Monday, February 6.  Briefing on these motions will follow the local rules, such that the motions will be fully briefed and ready for hearing no later than Monday, February 27, 2012.

- Trial to be set following resolution of the outstanding motions at the Court's convenience, with the final pre-trial conference statement, motions *in limine*, and proposed jury instructions to be filed at least 60 days before trial commences, and the final pretrial conference to occur 30 days before trial commences.

## THE PARTIES' CONTENTIONS

## MFORMATION'S CONTENTIONS

1.      Mformation contends that RIM's BlackBerry Enterprise Server, versions 4.x and 5.x, BlackBerry Professional Software, and BlackBerry handheld devices, to the extent such devices are used with one of the foregoing products, infringe one or more claims of the '917 Patent, through inducement and/or contributory infringement.

2.      Mformation contends that RIM's infringement of the '917 Patent is either literal or through the doctrine of equivalents.

3.      Mformation contends that RIM's infringement of the '917 Patent was and is willful.

4.      Mformation contends that RIM's non-infringement theories are limited to those set forth in the Expert Report of Anthony Acampora, Ph.D., dated March 25, 2011.

5.      Mformation contends that every asserted claim of the '917 Patent is valid and enforceable.

4826-9247-4126.1

6.     Mformation contends that RIM's invalidity theories are limited to those set forth in the Expert Report of Anthony Acampora, Ph.D., dated March 4, 2011, are further limited by the Court's Order dated December 19, 2011, and may be limited by a ruling of the Court on Mformation's Motion to Exclude Portions of the March 4, 2011 Expert Report of Defendants' Expert, Dr. Anthony Acampora, filed on March 28, 2011 (Dkt. No. 419).

7.     Mformation contends that it is entitled to damages in amount to be proven at trial for RIM's infringement of the '917 Patent under 35 U.S.C. § 284.

8.     Mformation contends that RIM's rebuttal theories regarding damages are limited to those set forth in the Expert Report of Julie Davis dated March 25, 2011, the Supplemental Rebuttal Expert Report of Julie Davis dated May 13, 2011, and the Second Supplemental Rebuttal Expert Report of Julie Davis dated August 3, 2011, and are further limited by the Court's Order dated December 19, 2011.

9.     Mformation contends that it is entitled to treble damages for RIM's willful infringement of the '917 Patent under 35 U.S.C. § 284.

10.     Mformation contends that it is entitled to its costs and expenses of this action and reasonable attorneys' fees pursuant to a finding that this is an exceptional case under 35 U.S.C. § 285.

11.     Mformation contends that it is entitled to injunctive relief enjoining RIM from further infringing the '917 Patent.

12.     Mformation contends that it is entitled to judgment in its favor dismissing with prejudice the Counterclaims of RIM and denying RIM all the relief requested in RIM's Couterclaims.

13.     Mformation contends that it is entitled to any other relief as the Court may determine to be just and proper.

14.     Mformation contends it is entitled to judgment dismissing with prejudice RIM's unenforceability defense and counterclaims.

15.     Mformation contends it is entitled to judgment dismissing with prejudice RIM's laches defense.

16.     Mformation contends it is entitled to judgment dismissing with prejudice RIM's indefiniteness defense and counterclaim.

**RIM'S CONTENTIONS**

1.     RIM contends that Mformation's infringement contentions accuse only the operation of BlackBerry Enterprise Server versions 4.x and 5.x; BlackBerry Professional Software; and BlackBerry handheld devices, to the extent such devices are used with one of the foregoing products, of infringing claims 1, 4-6, 21-25 and 27 of the '917 Patent.  In response to RIM's Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,970,917 (Docket No. 297) and in the March 4, 2011 Expert Report of Vijay Madisetti, Ph.D., Mformation failed to argue or cite to any evidence to support its contention that BES version 3.6 infringes the '917 Patent.

2.     RIM contends that Mformation's infringement theories are limited to those set forth in the Expert Report of Vijay Madisetti, Ph.D. dated March 4, 2011, and are further limited by the Court's Orders dated November 18, 2010 and December 19, 2011.

3.     RIM contends that Mformation's damages theories are limited to those set forth in the Expert Reports of Roy Weinstein dated March 4, 2011, April 24, 2011, and August 16, 2011. RIM contends that Mformation's damages theories are further limited by the Court's Order dated December 19, 2011, and may be limited by a ruling of the Court on RIM's Notice of Motion and Motion under Daubert to Exclude the Opinions of Mr. Roy Weinstein, filed on March 28, 2011 (Dkt. No. 416).

4.     RIM contends that Mformation's rebuttal theories regarding invalidity of the '917 Patent are limited to those set forth in the Expert Report of Vijay Madisetti, Ph.D. dated March 25, 2011, and are further limited by the Court's Order dated December 19, 2011.

5.     RIM contends that no person directly infringes any asserted claim of the '917 Patent, and Mformation cannot meet its burden of proving by a preponderance of the evidence that any person does or has directly infringed any asserted claim of the '917 Patent.

6.     RIM contends that no one entity performs, or controls or directs the performance of, all the steps of any asserted claim of the '917 Patent, and Mformation cannot meet its burden

of proving by a preponderance of the evidence that any one entity performs, or controls or directs the performance of, all the steps of any asserted claim of the '917 Patent.

7.     RIM contends that it does not and has not contributed to the infringement of any asserted claim of the '917 Patent, and Mformation cannot meet its burden of proving by a preponderance of the evidence that RIM does or has contributed to the infringement of any asserted claim of the '917 Patent.

8.     RIM contends that it does not and has not induced infringement of any asserted claim of the '917 Patent, and Mformation cannot meet its burden of proving by a preponderance of the evidence that RIM does or has induced infringement of any asserted claim of the '917 Patent.

9.     RIM contends that it does not and has not willfully infringed any asserted claim of the '917 Patent, and Mformation cannot meet its burden of proving by clear and convincing evidence that RIM does or has willfully infringed any asserted claim of the '917 Patent.  RIM contends that it cannot be liable as a willful infringer based upon either pre-suit or post-suit activity, and Mformation should be precluded from making such allegations.

10.     RIM contends that each of the asserted claims of the '917 Patent is invalid as anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103 based upon at least the following prior art references or prior art systems:

- U.S. Patent No. 6,636,489 to Fingerhut, entitled Wireless Management System and a Method for an Automated Over-the-Air Managing Process for Wireless Communication Device.

- U.S. Patent No. 5,734,820 to Howard, *et. al.*, entitled Security Apparatus and Method for a Data Communications System.

- U.S. Patent No. 6,088,457 to Parkinson, *et. al.*, entitled Method and Apparatus for Over the Air Programming a Communication Device.

- The XcelleNet RemoteWare and CONNECT: Manage products.

- The Computer Associates Unicenter and Unicenter TNG products.

- The IBM Tivoli product.

- The Mobitex Network and RIM's products.

11.     RIM contends that each of the asserted claims of the '917 Patent is invalid under the on-sale and/or public use bar of 35 U.S.C. § 102(b).

12.     RIM contends that each of the asserted claims of the '917 Patent is invalid as obvious under 35 U.S.C. § 103 based upon the preceding references, public use of the alleged invention, and at least the prior art references and prior art systems cited in RIM's Second Amended Invalidity Contentions.

13.     RIM further contends that the '917 Patent is invalid under 35 U.S.C. §§ 102(f), 116 and 256, because Gurinder Johar was not joined as a joint inventor of the '917 Patent.  See generally, January 22, 2010, Deposition of Gurinder Johar; M1405276; and M66820.  Mr. Johar was not joined on the '917 Patent with deceptive intent by the named inventors.

14.     Each of the asserted claims is invalid under 35 U.S.C. § 112 as not enabled and/or lacking a written description in the specification of the '917 Patent for the "mailbox," "the contents of the mailbox," and/or "transmitting the contents of the mailbox" claim limitations as those terms have been construed.  In particular, and to the extent that the claim construction permits a single "mailbox" to hold commands for multiple devices, the asserted claims and the specification of the '917 Patent do not describe how to select and transmit a command(s) intended for delivery to only a single device from the mailbox that also contains commands for other devices.

15.     Each of the asserted claims is invalid under 35 U.S.C. § 112 because it is not enabled and/or lacks a written description of how to implement and/or establish a mailbox for the wireless device at the server.

16.     Claims 5, 21, and 22 are invalid under 35 U.S.C. § 112 as not enabled, lacking a written description, and/or failing to disclose the best mode in the specification of the '917 Patent because the phrase "enabling/disabling" may be interpreted as "enabling and disabling", "enabling or disabling", or "enabling and/or disabling" and the specification of the '917 Patent does not disclose which interpretation was preferred by the inventors and how that preference could be implemented.

17.     RIM further states that the '917 Patent is not entitled to claim priority to U.S. Provisional App. No. 60/251,034 ("the '034 Application") because the specification of the '034 Application does not adequately support and enable the subject matter claimed in the '917 Patent at least with regard to "without a request from the wireless device . . . establishing a mailbox for the wireless device at the server" and "establishing a connection between the wireless device and the server . . . wherein the connection is established based on a threshold condition" limitations in Claim 1.  See generally, December 9, 2010 Deposition of Rakesh Kushwaha.

18.     RIM contends that Mformation's claims for relief are barred by 28 U.S.C. § 1498 to the extent that RIM's actions accused of infringement are for the United States Government and are with the authorization or consent of the United States Government.

19.     RIM contends that there can be no damages for any infringement prior to October 27, 2008 based on the Court's order dated December 19, 2011.

20.     RIM contends that Mformation is not entitled to any damages or costs, and cannot prove its claim for damages by a preponderance of the evidence.

21.     RIM contends that Mformation is not entitled to enhanced damages under 35 U.S.C. § 284.

22.     RIM contends that 35 U.S.C. § 288 bars any award of costs to Mformation.

23.     RIM contends that Mformation is not entitled to injunctive relief.

24.     RIM contends that this is an exceptional case entitling RIM to an award of attorneys' fees and costs (and consultants' fees and costs) incurred in connection with this action pursuant to 35 U.S.C. § 285.

25.     RIM contends that it is entitled to such other and further relief as the Court deems just and proper.

## DISPUTED ISSUES

1.     Whether RIM induces infringement of any asserted claim of the '917 Patent under 35 U.S.C. § 271(b).

2.     Whether RIM contributorily infringes any asserted claim of the '917 Patent under 35 U.S.C. § 271(c).

3.      Whether the asserted claims of the '917 Patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

4.      Whether RIM's purported infringement is willful, such that Mformation may receive enhanced damages pursuant to 35 U.S.C. § 284.

5.      Whether Mformation is entitled to damages to compensate for RIM's purported infringement, and if so, the dollar amount of pre-verdict and post-verdict damages up to the time of judgment.

6.      Whether Mformation is entitled to injunctive relief.

7.      Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 entitling either party to an award of attorneys' and consultants' fees and costs.

<u>**UNDISPUTED ISSUES**</u>

1.      Mformation is not seeking damages for RIM's sales that are made to the U.S. Government in this action.

<u>**OUTSTANDING DISCOVERY**</u>

Discovery closed on May 13, 2011, subject to three stipulations extending the discovery period for limited purposes.  (Dkt. No. 485; Dkt. No. 538; Dkt. No. 539.)  However, RIM agrees to provide updated financial information sufficient to show: (1) U.S. BlackBerry handheld unit sales and revenue; (2) U.S. split between BES and BIS; and (3) U.S. software revenue for BES and CAL.  RIM agrees to provide Mformation updated financial information within 30 days of the Joint Preliminary Pretrial Conference and 30 days prior to trial.

<u>**COURT'S ORDER ON PENDING *DAUBERT* MOTIONS**</u>

Each party filed a motion under *Daubert* to exclude opinions of an expert:

1. RIM's Notice of Motion and Motion under *Daubert* to Exclude the Opinions of Mr. Roy Weinstein, filed on March 28, 2011 (Dkt. No. 416).

2. Mformation's Motion to Exclude Portions of the March 4, 2011 Expert Report of Defendants' Expert, Dr. Anthony Acampora, filed on March 28, 2011 (Dkt. No. 419).

1    These motions were scheduled for oral argument on September 12, 2011.  The Court

2  continued the hearing date to September 26, 2011.  (Dkt. No. 611.)  The Court then took these

3  motions under submission without oral argument on September 21, 2011.  (Dkt. No. 682.)

4                **ANTICIPATED MOTION PRACTICE BEFORE TRIAL**

5    In addition to the motions RIM seeks leave to file, as described above, both parties

6  anticipate filing motions *in limine*.

7                            **SETTLEMENT**

8    The case has been referred to Magistrate Judge Laporte for settlement purposes.  The

9  parties participated in settlement conferences on July 2, 2010, December 16, 2010, and May 5,

10  2011.  Magistrate Judge Laporte scheduled a further settlement conference for September 1,

11  2011, but vacated the settlement conference after a joint request by the parties to defer further

12  settlement conferences until receiving a ruling on the summary judgment motions pending at that

13  time.  Magistrate Judge Laporte instructed the parties to notify her once the ruling on the

14  summary judgment motions issued in order to schedule a further settlement conference.  The

15  parties shall contact Magistrate Judge Laporte following the Court's hearing on January 30, 2012

16  to schedule a further settlement conference.

17    By his signature below, and pursuant to General Order No. 45, Section X(B) regarding

18  signatures, counsel for Mformation attests that counsel for RIM, whose electronic signature is

19  provided, has concurred in this filing.

20

21    Dated:  January 23, 2012                FOLEY & LARDNER LLP

22

23                                   By:     */s/ Amar L. Thakur*
                                            Amar L. Thakur
24                                          Shawn E. McDonald
                                            Allen A. Arntsen
25                                          Lisa M. Noller
                                            Justin E. Gray
26                                          Attorneys for
                                            Mformation Technologies, Inc.
27

28

Case No. 5:08-cv-04990-JW            26      [CORRECTED] JOINT PRELIMINARY PRETRIAL STATEMENT

Dated:  January 23, 2012                          KIRKLAND & ELLIS LLP


                                                  By:    /s/ Linda S. DeBruin
                                                         Linda S. DeBruin
                                                         Marc H. Cohen (CA Bar No. 168773)
                                                         Christopher R. Liro
                                                         Tiffany P. Cunningham
                                                         Aaron D. Charfoos
                                                         Maria A. Maras
                                                         Meredith Zinanni
                                                         Attorneys for
                                                         Research In Motion Limited and
                                                         Research In Motion Corporation

4826-9247-4126.1

1

## CERTIFICATE OF SERVICE

2
    I hereby certify on this 23rd day of January, 2012 that a copy of the foregoing was filed electronically through the Court's CM/ECF system, with notice of case activity automatically
3
generated and sent electronically to all parties.

4

5
    Dated:  January 23, 2012                    FOLEY & LARDNER LLP

6

7
                                       By:    */s/ Amar L. Thakur*
                                             Amar L. Thakur

8
                                             Attorney for
                                             Mformation Technologies, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4826-9247-4126.1