Linda S. DeBruin
(Admitted to this Court on September 27, 1991)
Christopher R. Liro (*pro hac vice*)
Tiffany P. Cunningham (*pro hac vice*)
Aaron D. Charfoos (*pro hac vice*)
Meredith Zinanni (*pro hac vice*)
Maria A. Maras (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email: linda.debruin@kirkland.com
Email: christopher.liro@kirkland.com
Email: tiffany.cunningham@kirkland.com
Email: aaron.charfoos@kirkland.com
Email: meredith.zinanni@kirkland.com
Email: maria.maras@kirkland.com

Marc H. Cohen (CA Bar No. 168773)
KIRKLAND & ELLIS LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:      (650) 859-7000
Facsimile:      (650) 859-7500
Email: marc.cohen@kirkland.com

*Attorneys for Defendants and Counterclaim Plaintiffs*
RESEARCH IN MOTION LIMITED and
RESEARCH IN MOTION CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MFORMATION TECHNOLOGIES, INC., a Delaware corporation, <br><br> Plaintiff and Counterclaim Defendant, <br><br> v. <br><br> RESEARCH IN MOTION LIMITED, a Canadian corporation <br><br> AND <br><br> RESEARCH IN MOTION CORPORATION, a Delaware corporation, <br><br> Defendants and Counterclaim Plaintiffs. | Case No. 5:08-CV-04990-JW <br><br> Jury Trial Demanded <br><br> **RIM'S NOTICE OF MOTION AND MOTION TO BIFURCATE TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42(B)** <br><br> **HEARING REQUESTED** <br><br> Date/Time: March 5, 2012 @ 9:00 AM <br> Courtroom: 5, 17th Floor (San Francisco, CA) <br> Judge: The Honorable James Ware <br><br> **DOCUMENT FILED UNDER SEAL** |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................2

II.     BACKGROUND ...................................................................................................3

III.    LEGAL STANDARD FOR BIFURCATION ........................................................4

IV.     THE COURT SHOULD BIFURCATE THE TRIAL IN THIS CASE....................5

    A.      Bifurcating Trial Would Reduce The Risk Of Jury Confusion. ...................6

    B.      Bifurcating Trial Would Promote Convenience And Judicial Economy.......7

    C.      The Issues Are Separable. ............................................................................7

        1.      Damages...........................................................................................7

        2.      Willfulness and Indirect Infringement .............................................8

    D.      Bifurcating Trial Would Avoid Prejudice....................................................9

V.      CONCLUSION....................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Astrazeneca AB v. Apotex Corp.*,
    No. 01-cv-9351, 2010 WL 2541180 (S.D.N.Y. June 9, 2010) ................................ 9

*Bates v. United Parcel Serv.*,
    204 F.R.D. 440 (N.D. Cal. 2001) ................................ 6

*Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*,
    No. 08-343-SLR, 2009 WL 2705932 (D. Del. Aug. 26, 2009) ........................ 7, 10

*Enzo Life Scis., Inc. v. Digene Corp.*,
    No. 02-212-JJF, 2003 WL 21402512 (D. Del. June 10, 2003) ........................ 5

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
    820 F.2d 1209 (Fed. Cir. 1987) ................................ 4

*Global–Tech Appliances, Inc. v. SEB S.A.*,
    131 S. Ct. 2060 (2011) ................................ 8

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
    897 F.2d 508 (Fed. Cir. 1990) ................................ 8

*In re Seagate*,
    497 F.3d 1360 (Fed. Cir. 2007) ................................ 8

*Lab. Skin Care, Inc. v. Ltd. Brands, Inc.*,
    757 F. Supp. 2d 431 (D. Del. 2010) ................................ 4, 5, 9

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
    No. JKB-09-2657, 2011 WL 1045630 (D. Md. Mar. 17, 2011) ........................ 9, 10

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
    180 F.R.D. 254 (D.N.J. 1997) ................................ 6, 7

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    No, 08-542-SLR, 2009 WL 2742750 (D. Del. Aug. 26, 2009) ........................ 5

*Sanyo Energy (USA) Corp. v. BYD Co.*,
    No. 02-cv-1900B (AJB), 2004 WL 5501173 (S.D. Cal. Nov. 30, 2004) ........................ 10

*Smith v. Alyeska Pipeline Serv. Co.*,
    538 F. Supp. 977 (D. Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984) ........................ 7

*Southco, Inc. v. Fivetech Tech. Inc.*,
    No. 2:10-cv-1060-MAM (E.D. Pa.) ................................ 9

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    No. 8:01-CV-1504-MJG (D. Md. 2009) ................................ 9

*Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc.*,
    No. SA CV 00-549-DOCEEX, 2001 WL 501354 (C.D. Cal. May 4, 2001) ........................ 5

1

**OTHER AUTHORITIES**

2

Charles Allen Wright & Arthur R. Miller,
  Federal Practice and Procedure § 2388 (3d ed. 2010) ............................................................. 5

3

**RULES**

4

Fed. R. Civ. P. 42(b) ....................................................................................................................... 4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 5, 2012 at 9:00 AM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James Ware at the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, the Court will hear Research In Motion Limited's and Research In Motion Corporation's (hereinafter known as "RIM") Motion to Bifurcate Trial Pursuant to Federal Rule of Civil Procedure 42(b). This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the accompanying declaration of Meredith Zinanni; the Reply papers; all pleadings and papers filed in this action; and upon such evidence and argument that may properly be presented at or before the hearing on this matter.

## STATEMENT OF RELIEF REQUESTED

RIM respectfully requests that this Court grant RIM's motion pursuant to Federal Rule of Civil Procedure 42(b) and bifurcate trial, with (1) direct infringement and invalidity issues addressed in the first phase of the trial, and (2) if necessary, indirect infringement, willfulness and damages addressed in a second phase of the trial, with all issues being tried consecutively before the same jury.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

At trial, direct infringement and invalidity will be hotly contested issues.  These issues turn entirely on objective technical evidence, such as how RIM's accused products operate and the scope and content of the prior art.  This presents a number of complex issues for a jury to decide, and as this Court acknowledged at the September 26, 2011 hearing on the parties' summary judgment motions, "given the nature of this case, it would be incredible to get it done in five days."  (Dkt. 690 at 123.)  Because of these complexities, this Court invited the parties to consider ways in which to "split the case up into something that could be done in a shorter period of time," leaving other issues for later.  (*Id.* at 123-24.)  Accordingly, RIM moves to bifurcate the trial into two phases before a single jury:  (1) a first phase, during which direct infringement and invalidity issues will be resolved, and (2) if necessary, a second phase before the same jury to determine the issues of indirect infringement, willfulness and damages.  Bifurcation will expedite and economize trial by focusing the jury on the technical evidence, reducing the volume of information the jury is asked to consider at any given time, and possibly eliminating the need for trial on multiple issues.  Because the same jury would hear both phases of the case, RIM's approach will not cause delay or prejudice Mformation in any way.

Bifurcation also is necessary to avoid prejudice to RIM.  Throughout this litigation, Mformation has tried to introduce into the technical aspects of the case the story of early interactions between RIM and Mformation, including internal RIM emails.  These emails have no bearing on any issue in the case, especially any technical issue, but contain language that Mformation has tried to use to make RIM look bad.  RIM expects that Mformation will attempt to distract the jury from the objective technical evidence with this story and these emails, all of which occurred years before Mformation's patent even issued.  These emails have no bearing on whether use of RIM's products infringe Mformation's remaining asserted claims or whether the prior art discloses each and every element of those claims.  RIM's concern about prejudice is not academic—Mformation already has repeatedly presented these emails to the Court in an inflammatory manner in briefs solely about claim construction and invalidity issues.  (*See, e.g.,* Dkts. 100 and 169.)  Bifurcation is necessary to

1  eliminate prejudice to RIM by ensuring that the jury decides the technical issues without the

2  distraction of a story line that has no relevance to those issues.

3  **II.    BACKGROUND**

4          This case is in an advanced stage—both fact and expert discovery have closed, and this Court

5  has ruled on the parties' summary judgment motions.  As a result of the Court's prior rulings, only

6  method claims of U.S. Patent No. 6,970,917 (the "'917 Patent") remain in the case, and

7  Mformation's direct infringement allegations against RIM have been resolved in RIM's favor.

8          This Court stated during the September 26, 2011 hearing on the parties' summary judgment

9  motions that, "given the nature of this case, it would be incredible to get it done in five days."  The

10  Court then asked the parties to consider ways in which to "split the case up into something that could

11  be done in a shorter period of time," leaving some issues for later.  (Dkt. 690 at 123-24.)

12          At trial, the jury will be asked to decide whether use of a RIM BlackBerry smartphone in

13  conjunction with a BlackBerry Enterprise Server ("BES") practices each and every step of

14  Mformation's ten remaining asserted claims.  The answer to this question turns entirely on the

15  meaning of the asserted claims and objective technical evidence of how RIM's products work.

16  Similarly, the jury will be asked to decide whether the prior art discloses each and every step of

17  Mformation's claims.  The answer to this question again turns on the meaning of the asserted claims

18  and technical evidence—this time evidence about the prior art.  RIM's technical expert has identified

19  four anticipatory prior art references and more than thirty prior art references that, in combination

20  with the anticipatory references, render the claims of the '917 Patent obvious.

21          RIM anticipates that Mformation will attempt to distract the jury from the technical evidence

22  by focusing on an irrelevant story line involving interactions between RIM and Mformation that

23  occurred in 2001 and 2002—more than three years before the '917 Patent issued.  For example, in

24  his expert report, Mformation's damages expert quotes extensively from emails around the parties'

25  2001 and 2002 interactions.   (*See* Dkt. 655, Ex. D (3/4/11 Weinstein Rpt.) at 40-42; 55-56.)

26  Mformation's expert relies on one email to assert that █████████████████████████████

27  █████████████████████████████████████████   (*Id*. at 56 (quoting RIM-

28  MF0767659).)  From another email, Mformation's damages expert highlights the following internal

conversation between two RIM employees: ███████████████████████████

████████   and the recipient's reply: ████████████████████████████

(*Id.* at 41-42 (quoting RIM-MF0166244).)   Mformation's damages expert goes so far as to highlight

an email where RIM's co-CEO calls Mformation's management ███████████████   (*Id.* at 41

(quoting RIM-MF0161312-313).)   None of these emails provides any guidance to a jury deciding

technical questions about whether the use of RIM's products practices, or the prior art discloses,

each and every step of the asserted claims of the '917 Patent.  *First,* these emails were sent more

than three years before the '917 Patent even issued.  There were no claims or claim steps of the '917

Patent at that time, and thus these emails do nothing to assist the jury in comparing the claim steps to

the use of RIM's products or to the prior art.  *Second,* these emails relate to Mformation's **product**.

They make no reference to any patent or patent application, but rather reference generally

Mformation's "business," "technology," or "[software] agent."   (*See* Dkt. 655, Ex. D (3/4/11

Weinstein Rpt.) at 40-42; 55-56.)   Because they relate to Mformation's product and not the '917

Patent (which did not even exist then)*,* again, these emails do not provide any assistance to a jury

deciding technical questions.  They should not be used to distract the jury from the key technical

issues it will be asked to decide.

## III.   LEGAL STANDARD FOR BIFURCATION

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid

prejudice, or to expedite and economize, the court may order a separate trial of one or more separate

issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).

The Court "has broad discretion in separating issues and claims for trial as part of its wide

discretion in trial management."  *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed.

Cir. 1987) (affirming district court's decision to bifurcate a patent trial).   "When exercising this

broad discretion, courts should consider whether bifurcation will avoid prejudice, conserve judicial

resources, and enhance juror comprehension of the issues presented in the case."  *Lab. Skin Care,*

*Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 441 (D. Del. 2010) (citation omitted) (bifurcating

patent trial into a liability phase and a damages and willfulness phase).  The court's discretion should

be guided foremost by the consideration of "which procedure is more likely to result in a just and

expeditious final disposition of the litigation."  See 9A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (3d ed. 2010).

Patent cases are especially well suited for bifurcation.  *See Enzo Life Scis., Inc. v. Digene Corp.*, No. 02-212-JJF, 2003 WL 21402512, at *5 (D. Del. June 10, 2003) (noting that "in the context of patent cases, experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.").  Some courts have even concluded that bifurcation is almost a necessity for patent cases.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, No, 08-542-SLR, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009) ("I have determined that bifurcation is appropriate, if not necessary, in all but exceptional patent cases."); *see also Yamaha Hatsudoki Kabushiki Kaisha v. Bombardier Inc.*, No. SA CV 00-549-DOCEEX, 2001 WL 501354, at *3 (C.D. Cal. May 4, 2001) (while bifurcation is not routine in other types of cases, it is "common in patent litigation.").

## IV.    THE COURT SHOULD BIFURCATE THE TRIAL IN THIS CASE

Bifurcation is warranted in this case because it will economize and expedite trial and minimize the risk of jury confusion.  *See Lab. Skin Care*, 757 F. Supp. 2d at 441 (bifurcating liability issues from damages and willfulness was warranted where "[j]udicial resources may be conserved through bifurcation, as liability may not be found, or even if found it may simplify the subsequent damages and willfulness trial.  The burden on the jury, and risk of juror confusion, will also be reduced by trying these issues separately.").  The number of issues to be decided in this case—and the volume of information related to those issues—is quite large and potentially overwhelming to a jury.  Bifurcating the trial will simplify the issues for trial and reduce the likelihood of juror confusion by limiting the number of issues presented to the jury at a time.  It may also limit the total number of issues the jury is asked to decide by rendering a trial on non-technical issues unnecessary, which would conserve judicial resources.  Bifurcation is also warranted because it will avoid prejudice to RIM.  The jury should not be misled into deciding the technical issues on the basis of emails and testimony about interactions between RIM and Mformation that occurred in 2001 and 2002, years before the '917 Patent issued.  These interactions, and Mformation's subjective characterization of them, simply have no bearing on whether the use of RIM's accused products

1    practice each step of Mformation's claims as construed by the Court, or whether those claims are

2    invalid in light of the prior art.

3         "Factors to be considered when determining whether to bifurcate a trial include: avoiding

4    prejudice, separability of the issues, convenience, judicial economy, and reducing risk of confusion."

5    *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001).  RIM will address each of these

6    factors below.

7         **A.**     **Bifurcating Trial Would Reduce The Risk Of Jury Confusion.**

8         This case presents numerous complex issues for the jury to decide.  Direct infringement and

9    invalidity will require the jury to understand and decide how RIM's accused products and the prior

10   art systems operate, based on technical documentation and expert testimony.  Indirect infringement

11   and willfulness allegations, on the other hand, raise state of mind issues that have no bearing on

12   direct infringement and invalidity, and may include consideration of subjective evidence.  Damages

13   further will require the jury to resolve numerous other complex questions.  Lumping all of these

14   issues together in a single trial will present the jury with a needlessly complicated evidentiary record,

15   imposing on the jury the unmanageable task of determining which of the voluminous pieces of

16   evidence presented to it is relevant (and, in turn, not relevant) to which issue.

17        Bifurcation will greatly alleviate these problems.  Bifurcating trial between direct

18   infringement and invalidity (the technical issues), on the one hand, and indirect infringement,

19   willfulness and damages (the non-technical issues), on the other hand, will allow the jury to focus on

20   a much more manageable subset of evidence at a time.  Bifurcation will also ensure that the jury

21   does not decide technical issues on the basis of subjective evidence, such as casual remarks in

22   emails.  In sum, bifurcation will reduce the otherwise serious risk of jury confusion in this case.  *See,*

23   *e.g., Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 258 (D.N.J. 1997)

24   (granting bifurcation under similar circumstances because "the jury will likely be required to process

25   volumes of exhibits, including diagrams, drawings, documents, models, as well as trial testimony, on

26   the issue of liability alone.  This task would surely be overwhelming to even the most sophisticated

27   jurors.  As such, the complexity of the liability issues as well as the resulting potential threat of

28   prejudice due to jury confusion, present a controversy ripe for bifurcation.").

1

**B.      Bifurcating Trial Would Promote Convenience And Judicial Economy.**

2

Bifurcation will also likely conserve judicial resources and save substantial litigation

3

expenses.  If the asserted claims of the '917 Patent are held to be invalid, or if there is no finding of

4

direct infringement in the first phase of the trial, a lengthy and complicated second phase will be

5

avoided.   Given the substantial non-infringement and invalidity defenses that RIM has raised,

6

Mformation's claims are likely to be defeated during the first phase.

7

**C.      The Issues Are Separable.**

8

The issues of indirect infringement, damages and willfulness are all separable from the

9

technical issues of direct infringement and invalidity.

10

**1.      Damages**

11

Liability and damages are easily separable in patent trials.  *See Princeton Biochemicals*, 180

12

F.R.D. at 256 ("In the normal case separate trial of issues is seldom required, but in a patent

13

infringement suit considerations exist which suggest that efficient judicial administration would be

14

served by separate trials on the issues of liability and damages.") (citing *Smith v. Alyeska Pipeline*

15

*Serv. Co.*, 538 F. Supp. 977, 982-83 (D. Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984)).

16

Bifurcating liability and damages helps to alleviate the otherwise extraordinary burden juries face in

17

patent trials:

18

19

20

> [J]uries are tasked with resolving complex technical issues regarding infringement
> and invalidity . . . .   Absent bifurcation, jurors then are expected to understand the
> commercial complexities of the relevant market (or, even more impenetrable, the
> commercial complexities of the hypothetical market) in order to determine the
> economic consequences of their liability decisions.

21

*Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, No. 08-343-SLR, 2009 WL

22

2705932, at *1 (D. Del. Aug. 26, 2009) (bifurcating damages and willfulness for trial).

23

For example, in calculating reasonable royalties, just one of many issues that must be

24

tackled, the jury must consider numerous legal and factual issues not relevant to the determination of

25

liability.  Specifically, the commercial and financial evidence relevant to damages is distinct from

26

the type of technical evidence relevant to the issues of direct infringement and invalidity.  There is

27

no good reason to overwhelm the jury with both technical and non-technical evidence all at once, in

28

a single-phase trial.  And there certainly is no basis for Mformation to distract the jury with emails

1   used in Mformation's damages expert's report that have no nexus to the technical issues the jury will

2   have to decide.  Accordingly, damages should be bifurcated and determined in a second phase of

3   trial.

4               2.        **Willfulness and Indirect Infringement**

5           Willfulness is properly considered during the damages phase because it is solely a damages

6   issue.  Specifically, willfulness only relates to whether a patentee is potentially entitled to enhanced

7   damages.  *In re Seagate*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) ("Because patent infringement is a

8   strict liability offense, the nature of the offense is only relevant in determining whether enhanced

9   damages are warranted.").  The issue of willfulness requires evidence regarding RIM's knowledge of

10  the '917 Patent and RIM's intent, and does not require technical evidence.  *See Gustafson, Inc. v.*

11  *Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990) ("Whether an act is 'willful'

12  is by definition a question of the actor's intent … a party cannot be found to have 'willfully'

13  infringed a patent of which the party had no knowledge.").  Accordingly, willfulness is properly

14  separable from the technical portion of the case.

15          Indirect infringement should similarly be determined in the second trial (if necessary).  The

16  inquiry into indirect infringement requires evidence on some of the same issues presented by

17  willfulness—RIM's knowledge of the patent and RIM's intent.  *See Global–Tech Appliances, Inc. v.*

18  *SEB S.A.*, 131 S. Ct. 2060, 2065-68 (2011) (induced infringement requires "at least some intent" and

19  "knowledge of the existence of the patent that is infringed").   Notably, no significant technical

20  evidence would be needed to resolve the further issue of whether RIM is liable for indirect

21  infringement.  Thus, indirect infringement is also separable from the technical portion of the case.

22  Because of the significant overlap between the issues and evidence for willfulness and indirect

23  infringement, and because neither issue requires technical evidence, these issues are properly tried

24  together in a second, non-technical trial.

25          Given the overlap in state of mind evidence required for both willfulness and indirect

26  infringement, other courts have ordered that they be tried in a second phase of a bifurcated trial.  For

27  example, in *Star Scientific*, the court deferred trial of inducement until the separate willfulness and

28  damages phase in order "to prevent the jury from hearing evidence of [defendant's] specific intent to

1   infringe." Ex. 1, 7/7/09 Star Scientific's Renewed Motion for Judgment as a Matter of Law, Dkt.

2   1095, at 1-2, *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, No. 8:01-CV-1504-MJG (D. Md.

3   2009) (plaintiff explaining court's rationale that had been expressed in a sealed hearing); *see also*

4   Ex. 2, 12/8/11 Order, Dkt. 162, *Southco, Inc. v. Fivetech Tech. Inc.*, No. 2:10-cv-1060-MAM (E.D.

5   Pa.) (granting defendant's motion to bifurcate, staying discovery and trial of induced infringement,

6   damages, willfulness, tortious interference and unfair competition until the issues of patent

7   infringement, trademark infringement, and patent validity were resolved).

8   **D.    Bifurcating Trial Would Avoid Prejudice.**

9   Bifurcation of the technical issues of direct infringement and invalidity from the non-

10   technical issues of indirect infringement and damages (including willfulness) will not prejudice any

11   party. There will be no prejudice to Mformation because RIM is not requesting two separate juries,

12   nor is RIM requesting that the second phase of trial, if it proves necessary, be delayed. Instead, the

13   second phase could begin immediately after the first phase is completed, avoiding all possible

14   prejudice to Mformation.

15   On the other hand, RIM would face significant prejudice if trial is not bifurcated.[1] Courts

16   have recognized that accusations of bad behavior, such as those surrounding Mformation's

17   willfulness and indirect infringement allegations, can taint the liability portion of a trial. *See Mike's*

18   *Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. JKB-09-2657, 2011 WL 1045630, at *5 (D.

19   Md. Mar. 17, 2011) ("[A] jury that has been exposed to evidence and arguments that Defendants

20   behaved badly may be less objective in deciding the issue of infringement."). There is a substantial

21   body of case law holding that willful infringement is more appropriately determined after liability

22   has been established, to avoid even the possibility of prejudice to a defendant. *See, e.g., Lab. Skin*

23   *Care*, 757 F. Supp. 2d at 441 (bifurcating liability issues from damages and willfulness);

24   *Astrazeneca AB v. Apotex Corp.*, No. 01-cv-9351, 2010 WL 2541180, at *1 (S.D.N.Y. June 9, 2010)

25   ("The Court bifurcated the case, considering separately (i) liability and (ii) damages and

26   _____

27   [1] RIM intends to file at the appropriate time a motion *in limine* to exclude the emails Mformation is misusing, as they do not have any legitimate use in these proceedings and can serve only to confuse and mislead the jury.

28

willfulness."); *Dutch Branch*, 2009 WL 2705932, at *1 ("Plaintiff challenges my decision to bifurcate damages and willfulness for purposes of discovery and trial.  I have determined that bifurcation is appropriate, if not necessary, in all but exceptional patent cases."); *Sanyo Energy (USA) Corp. v. BYD Co.*, No. 02-cv-1900B (AJB), 2004 WL 5501173, at *1 (S.D. Cal. Nov. 30, 2004) (considering a "motion to separate the issues of damages and willfulness from the liability phase of trial" and ordering "the issue of willfulness [to] be heard separately from the first phase of this bifurcated trial.").

Here, in connection with its willfulness and indirect infringement allegations, Mformation likely will ask the jury to inquire into the states of mind of various RIM employees and will present the jury with emails and other communications sent by these employees.   RIM would be significantly prejudiced if Mformation were permitted to taint the jury's determination of the technical issues of direct infringement and invalidity by distracting the jury with a story line about the parties' 2001 and 2002 interactions and "state of mind" evidence, which have no bearing on the technical issues the jury must decide.

Mformation plans to rely upon emails that Mformation characterizes as showing that RIM found Mformation's software to be "exciting."  While that evidence cannot be relevant to whether the prior art invalidates the claims of the '917 Patent or whether use of RIM's products practices each step of those claims, it would be difficult—if not impossible—for a jury to divorce this evidence from the technical evidence if presented with everything at the same time.  None of that evidence is remotely relevant to the technical issues, and none of that evidence should go before the jury unless and until the jury finds that a third party's use of RIM's accused products directly infringes one or more valid claims.  Issues of intent are irrelevant for direct infringement and invalidity, and are highly inflammatory.  The Court should not permit Mformation to confuse and distract the jury with evidence that is irrelevant to these threshold liability determinations.  *Mike's Train House*, 2011 WL 1045630, at *5 (bifurcating damages and postponing willfulness and inducement until the second phase of trial).

Furthermore, RIM's concern about prejudice is not academic.  Mformation already has repeatedly presented emails regarding the parties' interactions to the Court in an inflammatory

manner, despite their irrelevancy to the issue at hand.  For example, Mformation referenced certain emails by RIM's co-CEOs in its Reply Claim Construction brief (Dkt. 100) and in its Opposition to RIM's Motion for Summary Judgment of Invalidity under §§ 101 and/or 112 (Dkt. 169).  Both of these motions presented purely technical issues regarding the meaning of the patent, yet Mformation cited emails from RIM employees that pre-date the issuance of the '917 Patent **by more than three years**.  Bifurcation would prevent Mformation from making similar obfuscations at trial, focusing the jury on the real issues to be decided and avoiding prejudice to RIM.

## V.     CONCLUSION

Bifurcation is warranted in this case to economize and expedite trial, minimize juror confusion and avoid prejudice to RIM.  Accordingly, RIM respectfully requests that this Court grant its motion to bifurcate the trial and proceed with the issues of direct infringement and invalidity in the first stage, and if necessary, with indirect infringement and damages (including willfulness allegations) in a second phase.

1    DATED:  January 27, 2012                    KIRKLAND & ELLIS LLP
2                                                Respectfully submitted,
3                                                */s/ Meredith Zinanni*
4
5                                                Linda S. DeBruin
                                                 (Admitted to this Court on September 27, 1991)
6                                                Christopher R. Liro (*pro hac vice*)
                                                 Tiffany P. Cunningham (*pro hac vice*)
                                                 Aaron D. Charfoos (*pro hac vice*)
7                                                Meredith Zinanni (*pro hac vice*)
                                                 Maria A. Maras (*pro hac vice*)
8                                                KIRKLAND & ELLIS LLP
                                                 300 North LaSalle
9                                                Chicago, Illinois  60654
                                                 Telephone:    (312) 862-2000
10                                               Facsimile:    (312) 862-2200
                                                 Email: linda.debruin@kirkland.com
11                                               Email: christopher.liro@kirkland.com
                                                 Email: tiffany.cunningham@kirkland.com
12                                               Email: aaron.charfoos@kirkland.com
                                                 Email: meredith.zinanni@kirkland.com
13                                               Email: maria.maras@kirkland.com
14                                               Marc H. Cohen (CA Bar No. 168773)
                                                 KIRKLAND & ELLIS LLP
15                                               950 Page Mill Road
                                                 Palo Alto, CA 94304
16                                               Telephone:    (650) 859-7000
                                                 Facsimile:    (650) 859-7500
17                                               Email: marc.cohen@kirkland.com
18                                               *Attorneys for Defendants and Counterclaim*
                                                 *Plaintiffs Research In Motion Limited and*
19                                               *Research In Motion Corporation*
20
21
22
23
24
25
26
27
28

1

## **CERTIFICATE OF SERVICE**

2

        I hereby certify on this 27th day of January, 2012 that a copy of the foregoing was filed

3

electronically through the Court's CM/ECF system, with notice of case activity automatically

4

generated and sent electronically to all parties.

5
        DATED:  January 27, 2012                    KIRKLAND & ELLIS LLP
                                                    Respectfully submitted,
6

7                                                   _/s/ Read Wellman_____
                                                    Read Wellman
8                                                   Intellectual Property Legal Assistant

9                                                   Linda S. DeBruin
                                                    (Admitted to this Court on September 27, 1991)
10                                                  Christopher R. Liro (*pro hac vice*)
                                                    Tiffany P. Cunningham (*pro hac vice*)
11                                                  Aaron D. Charfoos (*pro hac vice*)
                                                    Meredith Zinanni (*pro hac vice*)
12                                                  Maria A. Maras (*pro hac vice*)
                                                    KIRKLAND & ELLIS LLP
13                                                  300 North LaSalle
                                                    Chicago, Illinois  60654
14                                                  Telephone:     (312) 862-2000
                                                    Facsimile:     (312) 862-2200
15                                                  Email: linda.debruin@kirkland.com
                                                    Email: christopher.liro@kirkland.com
16                                                  Email: tiffany.cunningham@kirkland.com
                                                    Email: aaron.charfoos@kirkland.com
17                                                  Email: meredith.zinanni@kirkland.com
                                                    Email: maria.maras@kirkland.com
18
                                                    Marc H. Cohen (CA Bar No. 168773)
19                                                  KIRKLAND & ELLIS LLP
                                                    950 Page Mill Road
20                                                  Palo Alto, CA 94304
                                                    Telephone:     (650) 859-7000
21                                                  Facsimile:     (650) 859-7500
                                                    Email: marc.cohen@kirkland.com
22
                                                    *Attorneys for Defendants and Counterclaim*
23                                                  *Plaintiffs Research In Motion Limited and*
                                                    *Research In Motion Corporation*
24

25

26

27

28