Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES WARE

MFORMATION TECHNOLOGIES, INC., a    )
Delaware corporation,               )
                                    )
  Plaintiff/Counterclaim Defendant, )
                                    )
  VS.                               ) No. C 08-04990 JW
                                    )
RESEARCH IN MOTION Limited, a       )
Canadian corporation,               )
                                    )
  AND                               )
                                    )
RESEARCH IN MOTION CORPORATION, a   )
Delaware corporation,               )
                                    )
  Defendants/                       ) San Francisco, California
  Counterclaim Plaintiffs.          ) Monday
_____) March 12, 2012


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:        FOLEY & LARDNER
                          3579 Valley Centre Drive, Suite 300
                          San Diego, California  92130
                  BY:  **AMAR L. THAKUR, ESQUIRE**
                       **JUSTIN E. GRAY, ESQUIRE**

**For Defendants:**       KIRKLAND & ELLIS LLP
                          950 Page Mill Road
                          Palo Alto, California  94304
                  BY:  **MARC H. COHEN, ESQUIRE**

(Appearances continued on next page)

**Reported By:**     *Katherine Powell Sullivan, CSR #5812*
                   *Official Reporter - U.S. District Court*

APPEARANCES (CONTINUED):


For Defendants:          KIRKLAND & ELLIS LLP
                         300 North LaSalle
                         Chicago, Illinois  60654
                    BY:  **LINDA S. DeBRUIN, ESQUIRE**
                         **MEREDITH ZINANNI, ESQUIRE**
                         **MICHAEL DALEY KARSON, ESQUIRE**

P R O C E E D I N G S

MARCH 12, 2012                                          9:24 A.M.

THE CLERK:  Calling case C 08-4990, Mformation Technologies versus Research In Motion Limited.

Counsel, please approach and state your name for the record.

MR. THAKUR:  Amar Thakur and Justin Gray for Mformation Technologies, Inc.

MR. COHEN:  Good morning, Your Honor.  Mark Cohen. With me today is Linda DeBruin, whom you've met, Meredith Zinanni, Mike Karson.  And then from Research In Motion we have Barbara Parvis, Tony Kim, and Frank Geng.

We did hand up some materials, but I notice we have additional people here.  And I have extra materials if you would like --

THE COURT:  Give them to the clerk.  She will make sure they are distributed in a way that might assist the Court.

THE CLERK:  They only need the two.

MR. COHEN:  Ms. DeBruin will be handling the argument today.

MR. THAKUR:  Your Honor, do you have a preference from which side you hear from first?

THE COURT:  Well, it's always my preference to hear first from the owner of the patent with respect to language of

the claim itself.

**MR. THAKUR:**  Your Honor, brought a handful of slides that hopefully help us go through our argument.

So, first of all, let's talk about where we stand today.  What is the issue?  The issue is interpretation of the claim term "establishing a connection between the wireless device and the server."

Clearly, based upon preceding language the issue is that the server establish the connection.  Not an issue in dispute.

All communications have to be done pursuant to using a communication protocol.  And that was part of the discussion this court already entertained when entertaining RIM's motion for summary judgment of non- --

**THE COURT:**  I'm sorry, I missed that middle party.

**MR. THAKUR:**  I'm sorry.

RIM had previously filed a motion for summary judgment of non-infringement.  And the Court interpreted, at that point, the fact that the UDP protocol, which is a communication protocol, could not be excluded as a matter of law.

And the point I would make, Your Honor, is that a communication protocol has to be used.  And to send data there are various different communication protocols, such as UDP and TCP.  And so we were just saying the -- the only additional

language that we added was that the server establishes a connection, but it does so using a communication protocol. Just to clarify that there are more than -- there's more than one way of establishing the connection.

THE COURT:  All right.  Now, is there a difference between -- because these are protocols.  I'm not totally familiar with them.  Is there a difference between the establishing of connection step and the transmission step?

MR. THAKUR:  Of course there is, Your Honor.

THE COURT:  And are the protocols all exclusively establishing a connection step and not the transmission step?

MR. THAKUR:  Correct.  Because you select a protocol, or whatever protocol you selected it would be the analogous of whether you decide to send via FedEx or UPS.  The transmission is not relevant to the sending portion, establishing the connection portion.

The communication protocol is basically determining, if you will, the analogy of which vendor is going to be used to send out the data.

THE COURT:  So using that analogy, then, the choice of vendors --

MR. THAKUR:  Correct.

THE COURT:  -- does it connect?

MR. THAKUR:  The question, yes, is yes.  Once you have chosen the vendor, you know which way it's going to go.

**THE COURT:** Yes.  But has it connected?

**MR. THAKUR:** No.  That's -- Your Honor, you've actually hit the key point.  The issue is not establishing the connection and transmitting.  Those are two different steps.  But the connection does not need to occur before -- establishing the connection does not need to occur before transmission can begin.

There are three steps.  Your Honor, if you want to, perhaps, take a look at Claim 1.  The purpose is to deliver the command.

**THE COURT:** Wait.  Let's get a clear answer to my question.

**MR. THAKUR:** Sorry.

**THE COURT:** So when you've selected the protocol --

**MR. THAKUR:** Correct.

**THE COURT:** -- have you connected?

**MR. THAKUR:** Not necessarily.

**THE COURT:** "No" would be the answer I hear.

**MR. THAKUR:** Yes.

**THE COURT:** When you say "not necessarily," in other words, you can select a protocol and connect?

**MR. THAKUR:** Correct.  Because there's certain protocols that you would select the protocol, and pursuant to the protocol you would communicate with the device and, if you will, complete the connection step.

THE COURT:  All right.  And that is not transmission?

MR. THAKUR:  That is not transmission.  Transmission is the command itself.

THE COURT:  All right.  And so there are protocols where you can connect to the wireless device, and there are protocols where you do not connect to the protocol device.

MR. THAKUR:  You're establishing the connection.  Eventually you will have to connect.

THE COURT:  So establishing a connection in some instances is different from connecting.

MR. THAKUR:  Correct.

Your Honor, I'm going to slip to a slide I think really helps.

Here's the issue.  We have to deliver the command.  The command -- there are three steps to it.  There is establishing the connection.  The second part is then, again, transferring the data.  And the third step is accepting.

And one potential embodiment is obviously establishing is finished, transferring is finished, and then accepting occurs.  But, clearly, there is no requirement, whatsoever, that those steps -- not only that they be performed in order, but that one step be completed before the other.

So if I could just summarize for Your Honor, this is what is the biggest point, if you will, of today's argument.  The point of today's argument is not actually our proposed

construction; it's actually the deficiency in RIM's proposed construction by adding a limitation.

What RIM is saying, with reference to Claim 1, is that the claim steps must be performed in order.  But that is confusing.  It's not the fact that the steps must be performed in order.  They're importing the limitation.  The establishing the connection must be complete before starting the -- before starting the transmitting of the content.

So what they're saying is the only potential claim -- the claim can only operate in the way it's depicted up above.  The establishing must be completed; transferring must be completed; and accepting will then follow.

THE COURT:  So let me understand this.

You agree that transferring and accepting are in an order.  You cannot accept until you transfer.

MR. THAKUR:  Your Honor, actually, the issue before the Court --

THE COURT:  No, no.  I'm asking that question.

MR. THAKUR:  Yes.  I'm sorry.

THE COURT:  Is that correct?

MR. THAKUR:  The answer is, A, it can occur concurrently, or A following B.  So you could have establishing --

THE COURT:  Let me test the concurring.

MR. THAKUR:  Right.

**THE COURT:** Before you can accept, something has to be transmitted.

**MR. THAKUR:** Correct. But --

**THE COURT:** But that the entire transmission doesn't have to be complete before the accepting start step can be performed.

**MR. THAKUR:** That is absolutely correct.

**THE COURT:** All right. But your argument is that unlike those two sub-steps, with respect to establishing a connection it does not have to start prior to the commencement of the transmission step.

**MR. THAKUR:** Your Honor, you are hitting the issue spot on.

**THE COURT:** I'm asking a question.

**MR. THAKUR:** The issue is absolutely yes, it has to start. It does not have to finish.

**THE COURT:** So the establishing step has to commence before the transferring step commences.

**MR. THAKUR:** Before or concurrently with.

**THE COURT:** So the establishing step can start, and the transmitting step can start simultaneously.

**MR. THAKUR:** Correct.

**THE COURT:** Where does the specification tell me that?

**MR. THAKUR:** Your Honor, so, the specification says

these steps must occur.

From the claim itself, if I may point you to where the Claim 1 is, it says, "delivering the command from the mailbox at the server to the wireless device by establishing a connection."

Clearly, the word there is "establishing." It doesn't say, establish a connection would then do Y.

What I'm arguing, Your Honor, is if the Court wanted -- if Mformation wanted to limit the claim to step A being followed by step B, but more importantly step A, establishing, being completed before step B can begin, which is transmitting, it would have said so. It would have said, complete the connection and then transmit. The claims did not say that.

THE COURT: Now, the inventors used the word "establishing" earlier, in establishing a mailbox.

MR. THAKUR: Correct.

THE COURT: Does it have the same meaning?

MR. THAKUR: It has the same meaning, correct.

THE COURT: So that, is establishing a mailbox something that is ongoing? Or does it happen, and once it happens it doesn't happen again?

MR. THAKUR: Well, once the step is complete, it's completed.

THE COURT: All right. And with respect to the

delivering step, though, that is a dynamic process; and it has a different meaning, doesn't it?

MR. THAKUR:  Absolutely.  I mean, the delivering process is the process of taking the command from the mailbox and delivering it to the device for acceptance.  And that requires three sub-steps, and were clearly written as three sub-steps.

But nowhere in the claim did it say that sub-step has to be completed before sub-step 2 can begin, that has to be completed before sub-step 3 can begin.

THE COURT:  The point that I'm asking your clarification is, why should I construe it as simultaneous?

MR. THAKUR:  The beginning of.

THE COURT:  I know.  But why -- how can I get to an understanding of the inventor conceiving of that sub-step or writing that that sub-step can start simultaneously with the transmitting sub-step?

MR. THAKUR:  Because the patent claim, the '917 claim -- and I can cite to the column -- refers to various communication protocols.  And different communication protocols deal with those steps being performed in a different order. And even within the protocols, some alternatives exist where within a particular protocol the step will be -- the connection will be established then transmission will begin.

Other protocols will start the transmission process

and will start -- the delivery process by starting a connection process --

**THE COURT:** What you're inviting me to do is turn to those with skill in the art and take from what is written in the specification a protocol where the establishing a connection step is performed simultaneously with the transmission step.

**MR. THAKUR:** The answer, Your Honor -- the ideal answer is to not really address the issue of whether it must be simultaneously, but address the issue of whether -- Your Honor, I think what I'm saying is, you're trying to explain fully whether step A must be performed, B must be performed, and A and B must start at the same time.

But the issue before the Court is not whether steps A and B must start at the same time. The issue before the Court is whether step A must be completed before step B can begin.

**THE COURT:** That's your characterization, but I'm not limiting myself to that. In other words, I understand that point.

In fact, I think that, as I've expressed myself in previous opinions, even if you have an order of steps, and that is something that is necessary to the performance of the method, the earlier step must commence before what is ordered to be in the patent, the second step, can commence; but that the first step doesn't have to be completed before the second

step is completed.

But now you're actually addressing the commencement part, as I understand it.  If you want to accept the Court's understanding that the first step has to commence before the second step commences, even if the step is -- first step isn't completed before the second step commences, then I'm done.

Are you willing to accept that?  I thought you were asking me to construe the second step as starting simultaneously.

**MR. THAKUR:**  Your Honor, we believe it can start simultaneously.

**THE COURT:**  That's what I'm searching for.  So what I would have to educate myself is, one skilled in the art reading the specification would see a protocol where it can start simultaneously.  The order is not important because then there is no order.

**MR. THAKUR:**  Right.

**THE COURT:**  They are both performed at the same time.

**MR. THAKUR:**  They can start at the same time.

**THE COURT:**  To say "they can start at the same time" means there is no order.  They are both number one.

**MR. THAKUR:**  Right.

Your Honor, there is nothing, when you have one, two, three steps, that says you cannot have two items that start at the same time.

THE COURT:  I understand that.  What I'm asking is whether or not your position is, one skilled in the art reading this patent would find that there is no order between the establishing step and the transmitting step, that they aren't in any particular order.

MR. THAKUR:  Your Honor, I'm saying -- the interpretation you're asking is much broader.  I'm not saying they are not in any order.  I'm not saying accepting can occur before transmission.

THE COURT:  No, I'm talking about these two sub-steps --

MR. THAKUR:  Even in those two steps.  I'm not arguing that transmitting can begin before establishing can begin.  But I --

THE COURT:  I didn't talk about the transmitting step with respect to this order.  I'm talking about between establishing and transmitting.  Those are the only two sub-steps we are concerned about.

MR. THAKUR:  Right.  And I would say, Your Honor, unless the spec limits it to a particular embodiment, where it says A and B must begin at different times, I believe this court does not need to go there because the issue before the hearing today is not whether A needs to begin before B begins.

THE COURT:  All right.  Now, so there has to be something -- since we agreed earlier that the transmitting step

and the accepting step do have an order, what is it that removes -- that's how I got to this question.

MR. THAKUR:  Right.

THE COURT:  What is it that removes this other sub-step from an order that is evident from the second and the third steps?

MR. THAKUR:  What I think removes it is you can have the -- in a real sense of the world, you can take the command first and start moving it into the pipeline and package it with a protocol that sends the delivery later.

If you will, maybe I can use a real-world analogy. I've got a gift to give.  I start the gift down the pipeline. But the final decision whether I'm going to put it into a FedEx envelope or a UPS envelope is done later, or can be done essentially as part of that step.

THE COURT:  So what does the inventor mean here by "connection"?

MR. THAKUR:  What the inventor means by a connection, Your Honor, is exactly what I would like to turn to.

So here is what we proposed, which is basically communication between -- the server uses a communication protocol to communicate with a wireless device.

Your Honor, what RIM has done is proposed to you essentially entirely based on extrinsic evidence.  They have one citation to intrinsic evidence, which relates to

distribution of software, which is the final software pursuant to CD-ROMs or communication links. That's the actual delivering the software, not the user of the software.

So there is no intrinsic evidence that they rely on for communication. What they rely on for a communication link is extrinsic evidence entirely.

First, they say -- they talk about a prior court construction: Construing connection is establishing the ability to communicate. They use a handful of definitions, Your Honor: A line of communication between two points. A means of channel. A means of communication.

Your Honor, I want to be absolutely clear, we would accept every single one of those definitions that RIM has proposed as secondary, based on technically extrinsic evidence.

What they do, however, is take that alternative construction proposal and convert it into a physical link. Remember the physical link is relating to the delivery of the software. Has nothing to do with the mobile device management.

**THE COURT:** I appreciate that advocacy causes you to go this way, but I want to hear from the specification because this is claim construction. RIM's out of the picture.

**MR. THAKUR:** Right.

**THE COURT:** We're back at the point where the patent is being issued.

**MR. THAKUR:** Correct.

**THE COURT:** And I want to know what one of skill in the art would understand "connection" to be at that point. What does -- what is a connection?

**MR. THAKUR:** A means of communication. A method of communication.

**THE COURT:** So that if you broadcast, and there is no receipt, you have established a connection within that sense of the word?

**MR. THAKUR:** That step, correct, yes.

The step of connection just means the ability of communicating. Because in -- in the world of wireless you have push contact and pull contact. Push you just send the information.

**THE COURT:** You send it.

**MR. THAKUR:** Right.

**THE COURT:** And is there a connection when it is sent?

**MR. THAKUR:** Yes. That step has been established because the connection -- no, excuse me. Yes. I want to be precise.

The establishing the connection involves the idea of identifying the recipient, and either in a push connection sending the package in a way that once it gets to the recipient the recipient will know, I can accept it.

**THE COURT:** So that's a broadcast?

MR. THAKUR:  Well, see, the problem is in the communication world "broadcast" actually refers sending stuff that goes to multiple people, instead of unicast.

THE COURT:  But it is a broadcast.

MR. THAKUR:  It's -- the broadcast can be to one person.  It can be a unicast, where I am sending the information just to you --

THE COURT:  Let's use unicast.

MR. THAKUR:  Right.

THE COURT:  So a unicast, that is broadcasting to a single recipient.

MR. THAKUR:  Right.

THE COURT:  You would actually define that as establishing a connection with that single recipient?

MR. THAKUR:  Absolutely, correct.

THE COURT:  Why?

MR. THAKUR:  Because the tools for the recipient in a push environment, which is one of the alternative embodiments in the patent claim, you can take the information that I am sending.  I want to put the information in so that the recipient -- it can only go to one recipient.

THE COURT:  What if the recipient is off?

MR. THAKUR:  It won't get there.

THE COURT:  Has there been a connection if it's off?

MR. THAKUR:  No, because the connection won't be --

establishing the connection will have begun, but the connection will not have been established.

That's why it's so important to understand.  The step can begin, but the step does not have to finish in particular order.

THE COURT:  Well, but when is the step complete?

MR. THAKUR:  The step is complete when that connection is established, which is when the device knows that, I'm now getting the transmission.

THE COURT:  I'm finally kind of getting there.  So you would have "establishing a connection" construed to not require an actual connection?

MR. THAKUR:  I would require the connection not be completed.  The steps to the connection, the first part of the connection is sending the -- identifying the person you're going to send it to, and starting the packaging of a communication protocol to send it.

THE COURT:  I didn't get a yes or no.  Let me try it again.

Would you have the Court define "establishing a connection" in a way does not require an actual connection?

MR. THAKUR:  Correct, but before the steps are completed.

THE COURT:  Very well.

MR. THAKUR:  Your Honor, I would like to save a

couple of minutes before I -- just for a rebuttal.

THE COURT:  You have.  I've interrupted you.

MR. THAKUR:  No, no, no.  I think -- I think I've essentially gotten to my argument, which is, in fact, this court has already given me what I, frankly, think I came here to ask for, which is that the step A need not be completed before step B begins.

THE COURT:  I haven't given you that.

MR. THAKUR:  No.

THE COURT:  I've given you a chance to argue that.

MR. THAKUR:  I would say if it just simply is whether the steps have to be performed in order, Your Honor, I believe that's something this court does not need to address.  That's what I was going to say.

One last point I want to make, Your Honor, is a lot of reliance by opposing counsel on what arguments I made during claim construction on a prior hearing.  And I just want to again emphasize, those points that I made during prior oral argument are in regards to a threshold condition.  They talked about steps being performed in the order.

Two points on that one.  I never said step A has to be completed before step B begins.

THE COURT:  Don't worry.

MR. THAKUR:  Thank you.

THE COURT:  Counsel.

**MS. DeBRUIN:** Good morning, Your Honor. Linda DeBruin on behalf of Research In Motion.

We're looking at the claim language "establishing a connection between the wireless device and the server." I underlined that language in the claim.

I would like to, first, talk about RIM's construction. RIM's construction tracks the claim language and is supported by the intrinsic and extrinsic evidence. I would like to take it piece by piece.

First, "establishing." The Court has already construed what establishing meant, and has talked about establishing meaning to bring into existence or set up. We've adopted the term "set up."

Next slide, please.

Even Mr. Thakur, at the last claim construction hearing, when he was talking about establishing a connection, said a pipe is set up. He used the setup language.

There shouldn't be any dispute about "establishing" meaning that. What we need to talk about is what is being set up. A connection is being set up.

That is not hiring the vendor or deciding what vendor to use, in Mr. Thakur's terms.

**THE COURT:** Why?

**MS. DeBRUIN:** That was done by the company that built the system. Whoever built the system that's being used decided

what protocol to use.

A protocol is just how you're going to do things, how things are going to work, how the steps are going to go.

A protocol is not something that you select on the fly in the system.  Instead, what is set up here is a connection.  And Mr. Thakur, once again, just as he did previously, referred to that as a pipe.

What you have to do in establishing the connection is build the pipe.  You're going to build the thing over which you are communicating.

**THE COURT:**  Why?  I mean, it just seems to me that limits the word -- if I used 20th century technology, and used a telephone, when I pick up the phone and I get a dial tone and I dial a number, have I established a connection?

**MS. DeBRUIN:**  Once the person at the other end has answered, once that telephone is picked up, yes, you have, Your Honor.

In fact, that's the example --

**THE COURT:**  That's why I'm bothered by what is required for establishing a connection.  Your client would have me construe it to say establishing a connection is only complete when the connection is complete.

**MS. DeBRUIN:**  Establishing connection is complete when you have set up the connection, when you have set up the pipe, when you have set up, in the terms we used in the

claim -- in our proposed language, the communication link.

THE COURT:  Well, my communication link is set up in the telephonic world when a telephone number is assigned to a particular device.

MS. DeBRUIN:  No, it isn't, Your Honor.

THE COURT:  It's not?

MS. DeBRUIN:  Because you need to have your communication link between your phone -- if you're calling our office -- I guess it would usually happen the other way around; we would be calling your office.  But if I'm calling your office, then the connection is not set up between us until I call your office and your office answers.  Then we have a connection.

And the purpose for that connection is so that we can communicate over it.  The connection, establishing a connection, is not the communication.  The purpose of it is to set it up something so that we may communicate.

THE COURT:  But aren't we -- haven't we set up a connection when I buy a phone, you buy a phone, and we subscribe to a service?

MS. DeBRUIN:  No, we haven't, because there's no connection between my phone and your phone.

THE COURT:  But that's what -- I asked that, and maybe I didn't hear your answer.

MS. DeBRUIN:  Okay.

**THE COURT:**  Your client would have me construe "establishing a connection" is only complete when the connection has been completed.

**MS. DeBRUIN:**  When you buy your phone --

**THE COURT:**  Yes or no to that?

**MS. DeBRUIN:**  It would be complete when the connection is completed, yes.  You would have established the connection when you have the thing established over which you're going to communication.

And you're buying a phone --

**THE COURT:**  You have said it two different ways for me, and I'm trying to make sure I understand what you are saying that sounds different to me, and that is, to set up a telephonic connection doesn't necessarily require a connection; it just requires the ability to connect.

But if I were to make a phone call using that system, I could say, well, I haven't connected, you know.  But what does it mean to establish a connection?  Could be euphemistically referred to as my dialing.  It could be subscribing to the system so that we could communicate.

There's a continuum of things that could be used by one who would wish to use words to describe this process, this method.  So our job is to figure out what this inventor, these inventors, were meaning when they talked about delivering it. And they say one of the sub-steps is establishing a connection.

Was there any other place in the patent -- this might be one way to approach it -- where we could define this sub-step because it doesn't exclude -- include something that's already disclosed?

**MS. DeBRUIN:** Yes, Your Honor.  A couple of places.

One, if you look at the language that I have up on the screen, on slide 7, in the patent it describes, upon the connection being established, the commands are transmitted.  In other words, after the connection is established, the commands are transmitted.  You have to establish a connection before you transmit the commands.

And Mformation has argued that the patent describes a broad definition of wireless networks and protocols.

Your Honor, that misses the point.  That language shows up in the preamble of Claim 1.  That language about wireless networks and the protocols that could be used with them is not in the step that we're looking at here of establishing a connection between the wireless device and the server.

Now, Mformation, when they first filed their patent application back in August of 2001, they had that broad language about wireless networks in there.  They also had an original Claim 1.

And I've included in the handout the various pieces from the prosecution history that I'm going to refer to.  But

in that first version that they had of Claim 1, it didn't require establishing a connection.  All that it required was delivering the command from the mailbox to the device.

Now, they were not entitled to that claim, the Patent Office determined.  And the Patent Office made them add certain language.  They had them amend twice to get a claim that was allowed.

First, they had to add language requiring that it be without a request from the wireless device.  And then they had to add language that showed that you had these three sub-steps for the delivering step.

What Mformation is trying to do -- I've put on the board, at slide 14, an orange circle.  That's the scope of a wireless network and the protocols that could be used within it, as described in the '917 patent specification.  That's what they wrote in August of 2001.

But that's not the scope of Claim 1.  That's the mistake here, Your Honor.  Mformation says that you have to make, somehow, this claim term of establishing a connection match that orange circle, match that scope of this term in the patent.

But Claim 1, even as originally filed, had a more narrow scope than that.  And its scope got narrower as Mformation had to make amendments to it.

What we need to focus on here, Your Honor, is what

does "establishing a connection between the wireless device and the server" mean?

Mformation wants to equate that with communicating. Now, Mformation's construction is not supported by even the claim language.  Mformation's construction doesn't even deal with establishing.  Mformation is basically saying that establishing a connection between the wireless device and the server means to communicate.

Where in Mformation's construction is there anything about setting up anything?  We all agree that establishing means to set up.  But there's nothing in Mformation's construction that deals with that.  Instead, they refer to using a communication protocol.  That happens in any system, any wired system, any wireless system.  That's how you communicate.  That's just the -- how -- the steps we're going to follow.

That adds no meaning to that claim, Your Honor.  And what they've done is they basically made a -- they basically are saying "establishing a connection" must mean simply communicating.

**THE COURT:**  Let me -- you're doing a good job here and I hesitate to interrupt, but I need to have you go to this push protocol.

Do you agree that the push protocol can be read by those skilled in the art as covered by this claim?

**MS. DeBRUIN:**  It could be if you use -- if you use a system in which a connection is established, let's say a TCP connection.

**THE COURT:**  Well, let me just -- because that "if" bothers me because it seems to me that by putting a condition on it you're saying no, it can't be used, you need some other conditions before push protocol can be used.

And so that's why I'm not sure I would agree with you, because one of the things I understand from this patent is that a push protocol was contemplated; that you don't get a request, you just push out to the wireless device.  Now --

**MS. DeBRUIN:**  And I see what you're saying, Your Honor.  Let's go back to the slide with the circle.

**THE COURT:**  Well, but I haven't asked me question yet.

**MS. DeBRUIN:**  I'm sorry.

**THE COURT:**  So if you agree that a push protocol can be used, in what sense, as you understand the push protocol, would the establishing a connection sub-step be performed?

**MS. DeBRUIN:**  If there is a connection established between the entity -- let's say the server -- and the device before the information that's to be sent or pushed is transmitted.

A push protocol doesn't really -- by saying the push protocol --

**THE COURT:**  So the push protocol, as you would have the Court understand it, is not the transfer -- is the transmission step.  And the establishing step is not a part of the push protocol.

**MS. DeBRUIN:**  Well, it's also the setting up the connection.  And I have a slide -- actually, let's forget the circle slide and let's go to the slide that -- correct.

(Slide displayed.)

**MS. DeBRUIN:**  What Mformation is doing -- and you raised an interesting point, Your Honor -- Mformation is basically attempting to read out the step of establishing a connection from this patent claim.

And I'm going to explain to you why.  And this is a really important point.

Mformation, when it submitted its patent -- as you know, you're talking about push -- they first sought to have patent claims that covered pull and that covered push.  They wanted both.  But the Patent Office said, you're not entitled to those claims that cover pull.

Patent Office looked to a reference called Lo Vasco.  And what Lo Vasco taught was the device establishing a connection, and then the server transmitting over that connection.

That's not push, Your Honor.  That's pull.  The device is setting up the connection, and then the server is

using that connection to transmit.

That's not covered by Claim 1 because Claim 1 requires that the server, not the device, and it requires that by the language, and without a request from the wireless device performing the following steps. And those steps include, after the final amendment of Claim 1, they include establishing a connection.

Now, what mischief is Mformation trying to do? Think about that situation, the situation that Mformation was told they weren't permitted to have, which is the device setting up a connection, and then the server and device communicating using that connection.

We put that type of arrangement in front of Mformation's expert, Dr. Madisetti. So the device, establishing a connection. But he simply said, oh, that connection, that's not what we're thinking about. That's not what Claim 1 is talking about. Not that connection.

The problem with what he did is this. Let's look at our device. Establishing a connection with the server. What Mformation wants to say is when that server uses that pipe that's now set up between that device and the server, when that server uses a communication protocol to communicate with the wireless device, which we have just shown up on slide 22, Mformation says, oh, well, there, that server is setting up a connection.

That's what Mformation's claim language says.  It says that the server using a communication protocol to communicate with the wireless device is establishing a connection.  And they want to say that even if you're doing that over an already established connection.

That's exactly what the Patent Office said Mformation was not entitled to have.  And that is the reason, Your Honor, that Mformation's construction is not correct.

Now, RIM's construction, RIM's construction reflects the patent claim.  It's true to the patent claim.  It indicates that we established, we set up something.  It describes what is being set up.  There's various ways that's been described.

Mformation's counsel has referred to that as a communication link.  There's a treatise from Dr. Tannenbaum, a well-known computer science professor, where he refers to it as a tube.  We chose the language from the patent that talked about a communication link being transmission media.

But whatever you call it, it's something that's going to be set up in order to communicate over.  It's not just selecting a protocol.  As I said, that protocol was selected when the system was designed, not during the operation of the system.

And you talked with Mr. Thakur about order.  Order matters here.  Order matters because, first, from a matter of logic, if you're going to use something to communicate over,

you have to set it up before you communicate.

The specification said that. "Upon connection being established, the commands that were stored in the mailbox are transmitted." First you connect, then you transmit.

Dr. Kushwaha, the named inventor of the '917 Patent, said the same thing in his deposition. He said, "You establish the connection based on a threshold condition, and after, after you establish the connection, you send the command.

That's what the claim language of Claim 1 requires, Your Honor. Mformation wasn't entitled to just a claim that had just the delivering step. But that's basically what they're trying to revert to here now. But they weren't entitled to that. They had to do that without a request from the wireless device, and they had to perform these three specific sub-steps. One being the one we're talking about here, establishing a connection.

THE COURT: Well, let's assume I follow that. What is the timing requirement? In other words, this all can happen in a sequence, or it can all happen at once, or it can all happen asynchronistically.

What is it that tells me that one has to occur before the other, other than the admission of the inventor here? Because that's extraneous information.

MS. DeBRUIN: I understand. And what we mainly relied on for that point, Your Honor, is the language from

specification:  "Upon the connection being established, the commands that were stored in the mailbox are transmitted."

That's what it means to establish a connection.  You establish a connection, and then after that happens, only after that connection is established, are the commands transmitted.  That's what the patent says.  And that's the only thing that the patent says.

There's no other embodiment described in the patent.  The patent doesn't describe any embodiment in which you transmit before you connect, or you connect and transmit at the same time.  This is all that the patent describes.  And this is the logical way to interpret the patent claim.

You're setting up something over which you wish to communicate.  You set up the connection, and then you use it to transmit.

THE COURT:  I'm still not sure I understand your argument with respect to the push process.

Now, maybe your argument is, push doesn't work for this invention.  But I was waiting for you to explain how you reconcile this language with the push protocol, as I understand the push protocol.

Maybe I don't understand the push protocol, but it did seem to me that when I looked at it, especially since it's mentioned in the specification, I had to give to the inventors that this could be used in that kind of protocol.

**MS. DeBRUIN:** And it could be, Your Honor, but my answer is that not -- just saying push doesn't say whether the claim would cover that protocol or not. And here's why. You could push without establishing connection.

The broadcast example that you gave, where you just send something out, you don't know whether it's going to get there or not -- maybe it does, maybe it don't -- that would be pushing information without a connection being established.

In fact, that's what RIM does. RIM sends out information. And it doesn't know whether a device is going to be able to receive that or not. It doesn't know whether the device is on. It doesn't know whether the device is somewhere that it can reach, that signal can reach it. But it sends it. And it has other ways of making sure that the communication is reliable. But it doesn't set up a connection.

Alternatively, you could have a push arrangement where the first thing you do is the server would establish a connection with the device, and then it pushes information to the device. That would all be done without a request from the wireless device.

But what Claim 1 requires -- so to read Claim 1 in an infringement analysis on any kind of protocol, you have to look for a step of establishing a connection and then a step of transmitting. If you don't have the step of establishing a connection, then Claim 1 doesn't apply.

**THE COURT:** Now, let me ask -- I see our time is up, but -- can we turn off the red light because we are way out of time here anyway.

What I wonder about is the construction that I was discussing with your opponent a moment ago, as to whether or not in steps just in general, if you say that steps have to be performed in an order, does that necessarily mean that step 1 has to be completed before step 2 commences?  Or are the steps in an order, if step 1 commences, and step 2 commences after step 1 has commenced, without necessity of step 1 having to be completed?

**MS. DeBRUIN:** It's hard to say in the abstract, Your Honor.  I would say in the case here you need to establish a connection before you use it to communicate over.  And the language from the specification says that.

**THE COURT:** Well, does the transmitting step require that you transmit over the connection that has been established?

**MS. DeBRUIN:** It requires that you transmit using that connection.

**THE COURT:** Where does it say that?  Where does it say that?

**MS. DeBRUIN:** It says, upon connection being established the commands that were stored in the mailbox --

**THE COURT:** That's from the specification.  The claim

says nothing about that "upon"; does it?

MS. DeBRUIN:  That's assumed, Your Honor --

THE COURT:  Right.

MS. DeBRUIN:  -- from establishing a connection.

THE COURT:  The claim language itself doesn't require that whatever we're calling a connection be used for the -- it says, transmitting the content.  It doesn't say using the connection that has been established.

Now, maybe one skilled in the art would read it that way, but that's not the claim language.  Right?

MS. DeBRUIN:  One skilled in the art would understand that that language requires a connection to be set up.

Now, we're not saying that an actual physical connection is being set up and the information is going to flow over that physical connection; but, rather, that we establish a connection and then information is going to flow between us using that connection.

THE COURT:  But that's -- again, both sides, it seems to me -- this may be one of those instances where I need the trial, and I need to say to the jury, I haven't come up with a definition of this term yet; or just keep it to myself and give them that definition after I've heard more.  Because I'm having difficulty, at this point, in giving a good definition because I need to learn more.

Maybe I need to have a separate proceeding, where I

have a better tutorial on the various technologies and how they operate.  Someone told me there is such a thing as a connectionless connection.  I don't understand that at all.

MS. DeBRUIN:  Your Honor, we certainly would be willing to do -- I think it would be useful to have this term construed before trial.  And we could make our expert available.  I'm sure that Mformation could make their expert available.  We could put on a tutorial and talk about this in more detail.

THE COURT:  It does seem to me -- let me have your opponent back.

What I would have you address -- and I can anticipate your answer but I want to hear it on this record, of the threshold conditions.

The threshold conditions, I've already construed that.  But does that factor into whether or not the establishing step is something that is a protocol that is infrastructure oriented?  Or is that -- those threshold conditions something that are very dynamic, that happen as part of the delivering step; and, therefore, the establishing step is a dynamic process as opposed to something that is based on some protocol that is already there?

MR. THAKUR:  Your Honor, what I would suggest is -- I think you've clearly grasped -- in my opinion, you've clearly grasped the issue that establishing and transmitting must occur

in some sort of order, whether they begin at the same time or whether A must occur.  The word there is "establishing a connection."  And in fact, even in RIM's slide 7 --

THE COURT:  You didn't answer my question.

MR. THAKUR:  Okay.  I guess what I'm saying is, the last step, the establishing begins, the transmitting can begin, but the connection is established.  So the completion is based upon a threshold condition.

THE COURT:  All right.  Now, just a moment.

MR. THAKUR:  Sorry.

THE COURT:  So tell me your best argument as to the relationship of the wherein step would be establishing.

MR. THAKUR:  The establishing can begin at some point.  At some point in the establishing step, there has to be a threshold condition that has been checked.  This court had actually construed that.  The --

THE COURT:  Just a moment.

So you don't believe the threshold conditions have anything to do with the commencement of the establishing?

MR. THAKUR:  With the commencement, correct, because commencement occurs up above.  It is the completion.

Your Honor, this is the keyword there: establishing.  And then the last step is where the connection is established.  And I would argue that that almost reaffirms what I've been arguing all along.  The step A can begin.  Step A is only

completed when that occurs, the threshold condition is satisfied.

THE COURT:  So I would have to read the threshold conditions as not conditions which are satisfied when we are establishing a connection.  And somehow the inventor contemplates that those threshold conditions come into existence during the process of establishing a connection, without disclosing when that is or how we know it, but completed at the point where the connection is established.

MR. THAKUR:  Correct.  The threshold condition evaluation can begin when the connection is being established.  And, again, slide 7, RIM's counsel says "upon being established."  It doesn't say "upon establishment."

THE COURT:  But what tells the world when those threshold conditions are evaluated?

MR. THAKUR:  Because those threshold conditions can be evaluated -- all of this is occurring, as we said, at the -- without a request from the wireless device.

So the software package would start the process of evaluating the threshold condition.  But the connection cannot be established until the threshold condition is met.

THE COURT:  But we're adding to the claim, at that point.  In other words, we're adding to this method --

MR. THAKUR:  Correct.

THE COURT:  -- some process of the threshold

conditions coming into existence, which perhaps did exist before the established step.

MR. THAKUR:  Correct.

THE COURT:  And then some evaluation of that before the connection is established.

MR. THAKUR:  Correct.  So this must be completed before it can -- the threshold condition must be evaluated before the connection can be completed, not before it can begin.

THE COURT:  Well, let me think about all of this.  I really appreciate the effort that has gone into this process.

What is your reaction to the Court's notion that maybe this is extrinsic evidence that the Court can take in a separate hearing from the various experts?

You've provided me with the technical advisor, so might be listening with a learned ear by my side.  I think I might benefit from that.

MR. THAKUR:  Your Honor, we're in our fourth year.  We're a small company.  The resources they have -- their methodology to date has been, If you fail, try, try again.

The answer is, Your Honor, you have a technical expert.  The patent says push technology.  You have the briefing of the parties.  You've heard oral argument.  You have two opposing experts say the same thing.

THE COURT:  Where is your expert located?

MR. THAKUR:  Your Honor, he's located in Atlanta.  He teaches at Georgia Tech.

THE COURT:  Is there a time when you know when he will be out here in advance of the trial?

MR. THAKUR:  I don't know.  I don't --

THE COURT:  Where is your technical expert located?

MS. DeBRUIN:  He's in San Diego, Your Honor.

THE COURT:  Why don't you meet and confer and see whether, without undue expense, there's a time and place -- and get my staff involved -- where that might happen.  Do you have a trial date?

MR. THAKUR:  We do, Your Honor.

THE COURT:  What's your trial date?

MR. THAKUR:  June 19th.

THE COURT:  June 19th.  So it would surprise me if you don't contemplate having your expert at your disposal between now and June 19th.  And so I'm suggesting maybe we could take advantage of that.  And if you knew about it well enough ahead of time, we could clear our calendar.  Maybe we could take advantage of a time when it wouldn't be an extraordinary expense to your client.

But if you tell me no, we can't make that arrangement, I'll take that into consideration, as well.  Your argument is, it's clear and you shouldn't need that.

MR. THAKUR:  Honestly, yes, it is clear, Your Honor.

This is our third claim construction.  And how many summary judgment motions, Your Honor -- I would take a picture of my client -- actually, use RIM's slide 13, and take a look where they show a picture of my client.

This is really important, Your Honor.  If you switch over to the slide.

THE COURT:  This has your --

MR. THAKUR:  This is their slides, Your Honor.

There's a step where they show a picture of my client.  I want to say this.  Your Honor, if you want to see a picture of someone exhausted, that's a picture of someone exhausted.

(Slide displayed.)

THE COURT:  I would say that's determined.

MR. THAKUR:  All I would -- yes.

In any case, Your Honor, yes, we will do what this court asks of us.  But we implore this court, implore this court, to issue a ruling.

THE COURT:  Where is your client located?

MR. THAKUR:  In New Jersey, Your Honor.

THE COURT:  They chose this venue?

MR. THAKUR:  Your Honor, they did choose this venue. We think it's a good venue.  So at least we thought it was a good venue.  I say that in jest.  We still belief it's a good venue.

Katherine Powell Sullivan, CSR, RPR, CRR
Official Reporter - U.S. District Court
(415) 794-6659

THE COURT:  Thank you, all.  The matter is submitted.

Just one moment.

(Pause)

THE COURT:  Thank you.  The matter is submitted.

MS. DeBRUIN:  Thank you, Your Honor.

THE CLERK:  All rise.

(At 10:19 a.m. the proceedings were adjourned.)

- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, March 13, 2012


s/b Katherine Powell Sullivan
_____

Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter