1  Amar L. Thakur (CA Bar No. 194025)
   Shawn E. McDonald (CA Bar No. 237580)
2  Justin E. Gray (*pro hac vice*)
   FOLEY & LARDNER LLP
3  3579 Valley Centre Drive Suite 300
   San Diego, California 92130
4  Telephone:    (858) 847-6700
   Facsimile:    (858) 792-6773
5  Email: athakur@foley.com
   Email: semcdonald@foley.com
6  Email: jegray@foley.com

7  *Attorneys for Plaintiff and Counterclaim Defendant*
   MFORMATION TECHNOLOGIES, INC.
8
   Linda S. DeBruin
9  (Admitted to this Court on September 27, 1991)
   Aaron D. Charfoos (*pro hac vice*)
10 Meredith Zinanni (*pro hac vice*)
   Maria A. Maras (*pro hac vice*)
11 KIRKLAND & ELLIS LLP
   300 North LaSalle
12 Chicago, Illinois  60654
   Telephone:    (312) 862-2000
13 Facsimile:    (312) 862-2200
   Email: linda.debruin@kirkland.com
14 Email: aaron.charfoos@kirkland.com
   Email: meredith.zinanni@kirkland.com
15 Email: maria.maras@kirkland.com

16 Marc H. Cohen (CA Bar No. 168773)
   KIRKLAND & ELLIS LLP
17 950 Page Mill Road
   Palo Alto, CA 94304
18 Telephone:    (650) 859-7000
   Facsimile:    (650) 859-7500
19 Email: marc.cohen@kirkland.com

20 *Attorneys for Defendants and Counterclaim Plaintiffs*
   RESEARCH IN MOTION LIMITED and
21 RESEARCH IN MOTION CORPORATION

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MFORMATION TECHNOLOGIES, INC., a Delaware corporation, | Case No.  5:08-CV-04990-JW |
| *Plaintiff and Counterclaim Defendant,* | **JOINT PRETRIAL CONFERENCE STATEMENT** |
| v. | |
| RESEARCH IN MOTION LIMITED, a Canadian corporation | Final Pretrial Conference |
| | Date:         June 4, 2012 |
| | Time:         10:00 a.m. |
| | Courtroom:  9, 19th Floor |
| AND | Judge:        Honorable James Ware |
| RESEARCH IN MOTION CORPORATION, a Delaware corporation, | |
| *Defendants and Counterclaim Plaintiffs.* | |

Plaintiff and Counterclaim Defendant Mformation Technologies, Inc. ("Mformation") and Defendants and Counterclaim Plaintiffs Research In Motion Limited and Research In Motion Corporation (collectively, "RIM") submit this Joint Pretrial Conference Statement pursuant to the Preliminary Pretrial Conference Scheduling Order (Dkt. 700).

## I.       Brief Description Of The Substance Of Claims And Defenses Remaining

This is an action by Mformation against RIM for patent infringement.  Mformation alleges that RIM is liable for indirect infringement based on its customers' use of RIM's BlackBerry Enterprise Server ("BES") versions 4.0 and later, in combination with RIM's BlackBerry handheld devices and Client Access Licenses, to directly infringe claims 1, 4-6, 21-25, and 27 (the "Asserted Claims") of Mformation's U.S. Patent No. 6,970,917 ("the '917 Patent"), entitled

"System and Method for Remote Control and Management of Wireless Devices."

RIM denies that: (1) use of RIM's accused products infringes any of the Asserted Claims of the '917 Patent; (2) anyone directly infringes or has directly infringed any of the Asserted Claims of the '917 Patent; (3) any one entity performs, or controls or directs the performance of, all the steps of any of the Asserted Claims of the '917 Patent; (4) RIM contributes or has contributed to the infringement of any of the Asserted Claims of the '917 Patent; or (5) RIM induces or has induced infringement of any of the Asserted Claims of the '917 Patent.  RIM also contends that Mformation cannot meet its burden of proving the contrary by a preponderance of the evidence.  RIM further seeks a declaratory judgment that the accused BES versions 4.0 and later, in combination with RIM's BlackBerry handheld devices and Client Access Licenses, do not infringe any of the Asserted Claims of the '917 Patent.

Mformation alleges that RIM's infringement is willful.  RIM denies that any alleged infringement is or was willful and contends that Mformation cannot meet its burden of proving by clear and convincing evidence that RIM does or has willfully infringed any of the Asserted Claims of the '917 Patent.

RIM alleges that the Asserted Claims of the '917 Patent are invalid under 35 U.S.C. §§ 102, 103, and 112.  RIM also alleges that the Asserted Claims of the '917 Patent are invalid under 35 U.S.C. § 102(f) for failure to name Gurinder Johar as a joint inventor of the '917 Patent. RIM further seeks a declaratory judgment that the Asserted Claims are invalid.  Mformation denies that the Asserted Claims of the '917 Patent are invalid, and contends RIM cannot meet its burden of proving by clear and convincing evidence that the Asserted Claims are invalid.

**II.  A Detailed Statement Of All The Relief Claimed, Particularly Itemizing All Elements Of Damages Claimed As Well As Witnesses, Documents Or Other Evidentiary Material To Be Presented Concerning The Amount Of Those Damages**

**A.  <u>Mformation</u>**

1.  Mformation seeks injunctive relief in the form of a permanent injunction barring RIM's sale of the accused BES software and barring RIM's continued contributory infringement and inducement of infringement of the '917 Patent until the expiration of the '917 Patent.

2.      Mformation also seeks damages for RIM's past infringement of the '917 Patent. Mformation seeks damages in an amount not less than a reasonable royalty.  A detailed statement of the damages included through January 2012, as well as documents and other evidence supporting Mformation's damages claim, is set forth in the Expert Reports of Roy Weinstein. Upon receiving further updated financial information regarding sales of the accused products from RIM, Mformation intends to supplement these Reports to include damages figures that reflect RIM's infringement through the end of trial.  Mformation may additionally rely on the fact witnesses identified in this Statement, deposition designations identified in this Statement, demonstrative exhibits to be presented at trial, and trial exhibits.

3.      Mformation seeks enhanced damages based on willful infringement.

4.      Mformation asks that this be adjudged an exceptional case and that it be awarded its costs and attorneys' fees.  Mformation also seeks pre-judgment interest.

**B.    RIM**

5.      RIM seeks a declaratory judgment that RIM does not induce or contribute to, and has not induced or contributed to, the infringement of any of the Asserted Claims of the '917 Patent.

6.      RIM seeks a declaratory judgment that the Asserted Claims of the '917 Patent are invalid under 35 U.S.C. §§ 102, 103, and 112.

7.      RIM seeks a declaratory judgment that the Asserted Claims of the '917 Patent are invalid under 35 U.S.C. § 102(f) for improperly failing to name Gurinder Johar as an inventor.

8.      RIM contends that Mformation is not entitled to any damages or costs, and cannot prove its claim for damages by a preponderance of the evidence.

9.      Mformation may not recover damages for any alleged infringement occurring prior to, or based on activities occurring before, October 27, 2008 based on the Court's order dated December 19, 2011.  (Dkt. 691 at 26.)

10.     Mformation may not recover damages based on total revenue or profitability of RIM's accused products based on the Court's Order dated March 29, 2012.  (Dkt. 770.)

11.     RIM contends that Mformation's claims for relief are barred by 28 U.S.C. § 1498 to the extent RIM's actions accused of infringement are for the United States Government and are with the authorization or consent of the United States Government.

12.     Mformation is not seeking damages for RIM's sales that are made to the U.S. Government in this action.

13.     RIM contends that Mformation is not entitled to damages for infringement for any time period for which it did not hold legal title to the '917 Patent.

14.     RIM contends that Mformation is not entitled to enhanced damages under 35 U.S.C. § 284.

15.     RIM contends that 35 U.S.C. § 288 bars any award of costs to Mformation.

16.     RIM contends that Mformation is not entitled to injunctive relief.

17.     RIM contends that this is an exceptional case entitling RIM to an award of reasonable attorneys' fees and costs (and consultants' fees and costs) incurred in connection with this action pursuant to 35 U.S.C. § 285.

18.     RIM contends that it is entitled to such other and further relief as the Court deems just and proper.

19.     RIM will likely call Julie L. Davis to refute Mformation's damages claims.

20.     RIM may call any witnesses on its witness list, including Alan Panezic and/or James Yersh, to refute Mformation's damages claims.

21.     RIM may use any of its designations of deposition testimony, including its designations of Kerry Daddato, Mark Edwards, and James Wilson, and its designations of the deposition testimony of Mformation pursuant to Federal Rule of Civil Procedure 30(b)(6), to refute Mformation's damages claims.

22.     RIM may use its counter-designations of the deposition testimony of any witness Mformation presents by deposition designation to refute Mformation's damages claims.

23.     RIM may use its cross examination of any witnesses Mformation calls at trial to refute Mformation's damages claims, as well as any documents used in those cross examinations.

24.     RIM may use one or more of Mformation's answers to interrogatories served by RIM pursuant to Federal Rule of Civil Procedure 33 to refute Mformation's damages claims.

25.     RIM may use one or more of Mformation's responses to requests for admission served by RIM pursuant to Federal Rule of Civil Procedure 36 to refute Mformation's damages claims.

26.     RIM may use one or more documents shown on RIM's Proposed List of Trial Exhibits, Mformation's Proposed List of Trial Exhibits, and/or the parties' Joint List of Trial Exhibits to refute Mformation's damages claims.

27.     RIM may use demonstrative exhibits to be prepared and identified prior to that witness' testimony to refute Mformation's damages claims.

28.     Thirty days before Jury Selection, RIM will provide updated financial information sufficient to show: (1) U.S. BlackBerry handheld device sales and revenue; (2) U.S. split between the BlackBerry Enterprise Server and BlackBerry Internet Service; and (3) U.S. software revenue for BES and Client Access Licenses.  RIM may use any updated financial information produced in this case to refute Mformation's damages claims.

**III.    A Plain And Concise Statement Of All Relevant Facts Not Reasonably Disputable, As Well As Which Facts The Parties Will Stipulate For Incorporation Into The Trial Record Without The Necessity Of Supporting Testimony Or Exhibits**

**A.    Agreed Facts**

29.     Mformation is a Delaware corporation with its headquarters in Edison, New Jersey.

30.     Research In Motion Limited is a Ontario, Canada corporation with its headquarters in Waterloo, Ontario, Canada.

31.     Research In Motion Corporation is a Delaware corporation with its headquarters in Irving, Texas.

32.     On November 29, 2005, the United States Patent and Trademark Office ("USPTO") issued the '917 Patent, entitled "System and Method for Remote Control and Management of Wireless Devices."

33.     The '917 Patent names Dr. Rakesh Kushwaha and Dr. Badri Nath as inventors and Mformation as the assignee.

34.     Venue is proper in this Court.

35.     RIM does not contest personal jurisdiction in this Court for purposes of this action.

36.     Mformation was founded in September 1999 and is a privately held company.

37.     Research In Motion Corporation is a wholly-owned subsidiary of Research In Motion Limited.

38.     RIM was founded in 1984 and is a publicly traded company.

39.     Mformation filed this lawsuit on October 31, 2008.

40.     RIM's products and Mformation's products are not mutually exclusive.

41.     RIM and Mformation entered into an ISV Alliance Agreement with an effective date of July 18, 2001.

42.     RIM and Mformation entered into a BlackBerry ISV Alliance Agreement with an effective date of November 8, 2001.

43.     RIM and Mformation entered into a BlackBerry ISV Alliance Agreement with an effective date of June 1, 2005.

44.     Mformation was a BlackBerry Alliance Program Member of RIM's ISV Alliance Program on October 31, 2008.

45.     On May 29, 2009, RIM provided notice of termination of the June 1, 2005 BlackBerry ISV Alliance Agreement to Mformation.

46.     On July 5, 2009, the June 1, 2005 BlackBerry ISV Alliance Agreement between RIM and Mformation was terminated.

47.     U.S. Provisional App. No. 60/251,034 ("the '034 application"), was filed with the USPTO on December 5, 2000.

48.     The non-provisional patent application leading to the issuance of the '917 Patent, U.S. Patent App. No. 09/925,536 ("the '536 application"), was filed with the USPTO on August 10, 2001.

49.     During prosecution before the USPTO, the patent applicants amended claim 1 of the '917 Patent to include the "without a request from the wireless device, performing the steps of:" limitation.

50.     During prosecution before the USPTO, the patent applicants amended claim 1 of the '917 Patent to include the "establishing a connection between the wireless device and the server" limitation.

51.     During prosecution before the USPTO, the patent applicants amended claim 1 of the '917 Patent  to include the "wherein the connection is established based on a threshold condition" limitation.

52.     Mformation is not seeking damages in this action for RIM's sales that are made to the United States Government.

53.     Ken LeVine was employed by RIM starting on June 18, 2001.

54.     Ken LeVine was a RIM employee from June 18, 2001 to February 19, 2004.

55.     Ken LeVine ended his employment at RIM on February 19, 2004.

56.     Ken LeVine is deceased.

**B.      RIM's Additional Proposed Undisputed Facts**

57.     The '536 application was not published prior to November 29, 2005.

58.     On November 18, 2010, this Court invalidated claims 2, 3, 9-20, and 28-48 of the '917 Patent for lack of utility and enablement under 35 U.S.C. §§ 101 and 112.

59.     On April 8, 2011, Mformation dismissed claims 7, 8, and 26 of the '917 Patent, and U.S. Patent No. 7,343,408, with prejudice.

60.     The Court has found that RIM does not directly infringe any of the Asserted Claims of the '917 Patent.

61.     The BlackBerry Configuration Databases used by RIM are all located outside the United States.

62.     A BlackBerry handheld device can be activated on an instance of the BES over a wired connection (*e.g.*, over a USB cable).

63.     Activating a BlackBerry handheld device over a wired connection (*e.g.*, over a USB cable) does not satisfy the steps of "transmitting registration information relating to the wireless device from the wireless device to the server" or "verifying the registration information at the server."   Consequently, there is no infringement of any of the Asserted Claims of the '917 Patent when a BlackBerry handheld device is activated on an instance of BES over a wired connection, even if IT administration commands or applications are sent to the device wirelessly.

64.     IT administration commands or applications can be sent from an instance of BES to a BlackBerry handheld device over a wired connection (*e.g.*, over a USB cable).

65.     Transmitting IT administration commands or applications from an instance of BES to a BlackBerry handheld device over a wired connection (*e.g.*, over a USB cable) does not satisfy the steps of "transmitting the contents of the mailbox from the server to the wireless device." Consequently, there is no infringement of any of the Asserted Claims of the '917 Patent when IT administration commands or applications are sent from an instance of BES to a BlackBerry handheld device over a wired connection, even if the BlackBerry handheld device was activated on the instance of BES wirelessly.

66.     Under Mformation's theory of infringement, none of the Asserted Claims of the '917 Patent are infringed without use of one of the five specific alleged threshold conditions alleged by Mformation, specifically: (1) least-cost routing; (2) a sufficient backlog of commands; (3) the exchange of encryption keys; (4) attempted delivery of a command five times; and (5) the wireless device being available.

67.     What Mformation calls least-cost routing does not automatically or necessarily occur during use of a BES in conjunction with one or more BlackBerry handheld devices.

68.     RIM's BES software can be used to reconcile e-mail, calendar entries, and address book entries between a user's messaging server and the user's BlackBerry handheld device, as well as to allow access to other enterprise resources through the use of a BlackBerry handheld device.

69.     BlackBerry handheld devices may be used to place and receive telephone calls, send and receive e-mail, and track and update calendar and address book entries, as well as to browse the Internet, play games, and play music and video files.

70.     The BlackBerry Manager, BlackBerry Administration Service, BlackBerry Configuration Database, Policy Service, BlackBerry Dispatcher, and BlackBerry Router components in RIM's BES versions 4.0 and later are all used in the process of transmitting IT administration commands of applications from an instance of BES to a BlackBerry handheld device over a wired connection (*e.g.*, over a USB cable).

71.     The BlackBerry Messaging Agent and BlackBerry Configuration Database are both used in activation of a BlackBerry handheld device over a wired connection (*e.g.*, over a USB cable) between an instance of BES and a BlackBerry handheld device.

72.     The IT Admin Queue, entries in the IT Admin Queue, and the User Config Table are contained within the BlackBerry Configuration Database component of the BES.

73.     The IT Admin Queue and User Config Table in the BlackBerry Configuration Database component of the BES are created during the initial installation of the BlackBerry Configuration Database.

74.     There is only one IT Admin Queue table in a BlackBerry Configuration Database.

75.     There is only one BlackBerry Configuration Database for each BES domain.

76.     There is only one User Config Table in a BlackBerry Configuration Database.

77.     Transmission Control Protocol ("TCP") is a connection-oriented protocol that uses an a priori connection set-up phase.

78.     The TCP connection between a BES and the RIM Relay is established at the time the BlackBerry Router is installed and that TCP connection is maintained indefinitely unless intentionally shut down or disconnected by some external force.

79.     By default, the BlackBerry Router component of the BES sends messages from the BES to the RIM Relay over the persistent TCP connection that is set up when the BlackBerry Router is installed.

80.     User Datagram Protocol ("UDP"), often called a connectionless protocol, does not use an a priori connection set-up phase.

81.     Packets sent between the RIM Relay and a BlackBerry handheld device over a cellular network use UDP.

82.     The BlackBerry Router can bypass the RIM Relay and send messages from the BES directly to a BlackBerry handheld device over a TCP connection only if the BlackBerry handheld device has requested and established a direct connection with the BES.

83.     A direct connection request may come from a BlackBerry handheld device that is connected through a wired connection or through access to a Wi-Fi network, and the BlackBerry Router does not distinguish between the two.

84.     A BlackBerry handheld device must request access to a Wi-Fi access point in order to gain access to the Wi-Fi network.

85.     RIM's BES is made up of multiple software components that can be installed across multiple physical computers.

86.     A computer on which RIM's BES resides can also be used to host applications that are unrelated to the BES software and that perform functions unrelated to RIM or any RIM hardware or software product.

87.     The IT Admin Queue as a whole is never sent from the BES to any particular BlackBerry handheld device.

88.     An individual row of the IT Admin Queue is never sent from the BES to a BlackBerry handheld device.

89.     No party directs or controls the performance of every step of any Asserted Claim of the '917 Patent by multiple parties.

90.     Mformation does not sell handheld devices or smartphones.

91.     Mformation has never made an annual profit.

92.     By the end of February 2000, 2,900 companies used the BlackBerry solution and more than 900 companies had BES installed in their organizations.

93. For the fiscal year ending March 1, 2003, RIM had 534,000 BlackBerry subscribers and approximately 10,000 organizations with BES installed.

94. Prior to introduction of BES version 4.0, RIM had approximately 1.7 million subscribers.

95. RIM and its BlackBerry solution won numerous industry awards in 1999 and 2000.

96. Between 2000 and 2009, RIM received numerous awards for its BlackBerry solution and various models of its BlackBerry devices.

97. Since 1997, RIM has invested over $3.6 billion in research and development.

98. A BlackBerry Client Access License is a software license charged for a subscriber using the BlackBerry service via a BES.

99. RIM receives revenue for BlackBerry service from carriers, not end users.

100. RIM's BlackBerry service is not an accused product in this case.

101. In the spring of 2002, RIM introduced the BlackBerry 5810, which was the first BlackBerry wireless handheld ready to support Global System for Mobile Communications ("GSM")/General Packet Radio Service ("GPRS") networks in North America.

102. The standard retail price of BES was higher for version 3.6 than for versions 4.0 and later.

103. The average price of BlackBerry devices in 2003 was higher than in 2004 and 2005.

104. Versions 3.5 and 3.6 of RIM's BES software, which are not accused of infringement in this case, included a feature allowing a BES administrator to remotely and wirelessly erase data on a BlackBerry handheld.

105. RIM provides customers with an all-in-one solution, including hardware, software, and services.

106. RIM and Mformation are not direct competitors in the market for wireless email in the United States.

107.    RIM and Mformation have not been direct competitors in the market for wireless email in the United States at any time from the date of the issuance of the '917 Patent to the present.

108.    Mformation has never competed with RIM on RIM's ability to provide an all-in-one solution.

109.    Wired use of the BES software and BlackBerry handheld devices is a non-infringing alternative to the asserted methods claimed in claims 1, 4-6, 21-25, and 27 of the '917 Patent.

110.    Installing the BES software and the BlackBerry Configuration Database on separate computers is a non-infringing alternative to the asserted methods claimed in claims 1, 4-6, 21-25, and 27 of the '917 Patent.

111.    Installing the BES software on a computer that is performing tasks other than providing resources to a wireless device is a non-infringing alternative to the asserted methods claimed in claims 1, 4-6, 21-25, and 27 of the '917 Patent.

112.    Mformation has never licensed the '917 Patent.

113.    Mformation has never licensed any patent comparable to the '917 Patent.

114.    The '917 Patent is a server-based patent.

115.    Approximately five percent of RIM's U.S. sales are to the United States Government.

116.    RIM's BES and BlackBerry handheld devices are not sold together.

117.    Mformation never provided any source code for any of its products to RIM.

118.    Mformation never notified RIM between the time the '917 Patent issued, November 29, 2005, and the date this lawsuit was filed, October 31, 2008, of the existence of the '917 Patent.

119.    Mformation never notified RIM at any time prior to filing this lawsuit that it believed RIM was infringing the '917 Patent.

120.    On January 19, 1999, RIM announced the release of the BlackBerry handheld device.

121.    On May 17, 1999, RIM announced the release of the BES.

122.    On October 7, 2002, RIM announced the release of BES version 3.5.

123.    In the first half of 2003, RIM released BES version 3.6.

124.    On November 30, 2004, RIM announced the release of BES version 4.0.

125.    On March 10, 2006, RIM announced the release of BES version 4.1.

126.    On May 4, 2009, RIM announced the release of BES version 5.0.

127.    Prior to becoming an employee at RIM, Ken LeVine was an employee at investment bank Salomon Smith Barney.

**IV.    A Plain And Concise Statement Of All Disputed Factual Issues Which Remain To Be Decided**

### A.    Mformation's Statement of Disputed Factual Issues

128.    Whether the use of RIM's BES versions 4.0 and later, in combination with RIM's BlackBerry handheld devices and Client Access Licenses, literally infringe the Asserted Claims.

129.    Whether any differences between the use of the BES versions 4.0 and later, in combination with RIM's BlackBerry handheld devices and Client Access Licenses, and the Asserted Claims are not substantial, and thus infringing under the doctrine of equivalents.

130.    Whether RIM contributes to the infringement of the Asserted Claims.

131.    Whether RIM induces infringement of the Asserted Claims.

132.    Whether RIM's infringement of the '917 Patent is willful.

133.    Whether RIM can sustain its burden to prove the Asserted Claims are invalid by clear and convincing evidence.

134.    If one or more of the Asserted Claims are found to be infringed by RIM and not invalid, the dollar amount of damages up to the time of judgment adequate to compensate Mformation for RIM's infringement of the '917 Patent, but in no event less than a reasonable royalty for use of the claimed inventions.

135.   If one or more of the Asserted Claims are found to be infringed by RIM and not invalid, the amount of prejudgment interest and costs to which Mformation may be entitled.

136.   If one or more of the Asserted Claims are found to be willfully infringed by RIM and not invalid, whether damages awarded to Mformation should be enhanced up to three times under 35 U.S.C. § 284.

137.   If one or more of the Asserted Claims are found to be infringed by RIM and not invalid, whether this is an exceptional case pursuant to 35 U.S.C. § 285 and whether Mformation is entitled to an award of its attorneys' fees.

138.   If one or more of the Asserted Claims are found to be infringed by RIM and not invalid, whether Mformation is entitled to permanent injunctive relief and, if so, the scope of such relief.

### B.   RIM's Statement of Disputed Factual Issues

139.   Whether Mformation has proven by a preponderance of the evidence that anyone directly infringes, or has directly infringed, any of the Asserted Claims of the '917 Patent using RIM's accused technology.

140.   Whether Mformation has proven by a preponderance of the evidence that anyone has performed all the steps of any of the Asserted Claims of the '917 Patent using RIM's accused technology.

141.   Whether Mformation has proven by a preponderance of the evidence that RIM contributed to the infringement of any of the Asserted Claims of the '917 Patent.

142.   Whether Mformation has proven by a preponderance of the evidence that RIM induced infringement of any of the Asserted Claims of the '917 Patent.

143.   The level of ordinary skill in the art to which the subject matter of any of the Asserted Claims of the '917 Patent pertains.

144.   Whether the '917 Patent is entitled to claim priority to U.S. Provisional Patent App. No. 60/251,034.

145.   Whether the inventions recited in the Asserted Claims of the '917 Patent were disclosed in the following printed publications or systems, in public use and/or on sale or offered for sale by the makers and/or customers of the following systems, within the meaning of 35 U.S.C. § 102, the function and operation of which has been described by various documents and through witness testimony:

A.   U.S. Patent No. 5,734,820 to Howard, *et. al.* ("the Howard patent"),

B.   XcelleNet's RemoteWare, including Sterling Commerce's CONNECT:Manage (also known as Afaria) (collectively, "the RemoteWare system") (*see* Appendix A at 1),

C.   the Mobitex telecommunications network and system operated in the United States by, for example, RAM Mobile Data and BellSouth Wireless Data, including RIM's products that operated on the Mobitex network and system ("the Mobitex system") (*see* Appendix A at 2),

D.   CA Technologies' Unicenter, including Unicenter TNG (collectively, "the Unicenter TNG system") (*see* Appendix A at 3), and

E.   Mformation's July 24, 2000 public use, sale or offer for sale of its prototype (*see* Appendix A at 3).

146.   Whether the Asserted Claims of the '917 Patent are invalid as obvious by a combination of the Howard patent, the RemoteWare system, the Mobitex system, the Unicenter TNG system or Mformation's July 24, 2000 public use, sale or offer for sale of its prototype with one another and/or one or more of the prior art references identified in Appendix B and/or the knowledge of one of ordinary skill in the art at the time of the alleged invention.

147.   Whether secondary considerations of nonobviousness support a finding that the Asserted Claims of the '917 Patent would not have been obvious to one of ordinary skill in the art at the time of alleged invention.

148. Whether there is a nexus between the Asserted Claims of the '917 Patent and any alleged evidence of secondary considerations of nonobviousness of the Asserted Claims of the '917 Patent.

149. Whether the '917 Patent fails to meet the enablement requirement of 35 U.S.C. § 112, ¶ 1, for the inventions recited in the Asserted Claims.

150. Whether the '917 Patent fails to meet the written description requirement of 35 U.S.C. § 112, ¶ 1, for the inventions recited in the Asserted Claims.

151. Whether the '917 Patent is invalid under 35 U.S.C. § 102(f) because Gurinder Johar was not named as a joint inventor of the '917 Patent.

152. Whether Mformation has legal title to the '917 Patent.

153. The amount of reasonable royalty damages, if any, Mformation has proven by a preponderance of the evidence if any of the Asserted Claims of the '917 Patent is found infringed and not invalid.

154. Whether Mformation is entitled to a permanent injunction if any of the Asserted Claims of the '917 Patent is found infringed and not invalid.

155. Whether RIM had knowledge of the '917 Patent before the date this lawsuit was filed.

156. Whether Mformation has proven by clear and convincing evidence that RIM willfully infringed any of the Asserted Claims of the '917 Patent.

157. Whether Mformation is entitled to enhanced damages if willful infringement is found.

158. Whether Mformation is entitled to pre-judgment and post-judgment interest, and, if so, the dollar amount of pre-judgment and post-judgment interest.

159. Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 entitling RIM to an award of attorneys' and consultants' fees and costs.

**V.    A Statement Assessing Whether All Or Part Of The Action May Be Presented Upon An Agreed Statement Of Facts**

160.    The parties do not believe that this action may be presented to the jury upon an agreed statement of facts at this time.

161.    The parties agree that all facts set forth in Section III.A above may be presented in an agreed statement of facts.

**VI.    A Statement Of Stipulations Requested Or Proposed For Pretrial Or Trial Purposes**

162.    This Court provided the following constructions for the '917 Patent in its First Claim Construction Order (Dkt. 127) and its December 19, 2011 Order (Dkt. 691).  Mformation and RIM agree that these constructions will control the trial of this case, while reserving their rights to challenge such constructions on appeal:

A.    the phrase "remotely managing a wireless device over a wireless network" was construed to mean "[u]sing the server that is physically separate from the wireless device to wirelessly control the functionality of the wireless device;"

B.    the term "server" was construed to mean "[a] device or computer in a network that is dedicated to providing resources to the wireless device;"

C.    the phrase "establishing a mailbox for the wireless device at the server" was construed to mean "[c]reating an address in memory of the server that can store information intended for delivery to the wireless device;"

D.    the phrase "placing a command for the wireless device in the mailbox at the server" was construed to mean "[s]toring at the server in the mailbox associated with the wireless device a code or signal that is intended to cause the wireless device to take or cease an action with respect to its functionality and other data for use by the wireless device;"

E.    the phrase "delivering the command from the mailbox at the server to the wireless device by . . . transmitting the contents of the mailbox from the server to the wireless device" was construed to mean "[w]irelessly sending

from the server to the wireless device the contents of the mailbox;"

F.   the phrase "establishing a connection between the wireless device and the server . . . wherein the connection is established based on a threshold condition" was construed to mean "[e]stablishing a connection between the wireless device and the server based on a predefined state of the server or the wireless device other than solely the elapsing of time;" and

G.   the phrase "without a request from the wireless device, performing the steps of:" was construed to mean "[p]erforming an enumerated step without the transmission from the wireless device of a code, signal or any other form of request that initiates the commencement of the performance of the step."

163.   Mformation and RIM have requested that this Court construe the phrase "establishing a connection between the wireless device and the server."  Mformation and RIM similarly agree that this Court's construction of that phrase will control the trial of this case, while reserving their rights to challenge this construction on appeal.

164.   No fact or expert witness can opine or comment on the credibility of another fact witness or expert witness at trial.

165.   Mformation and RIM stipulate to the authenticity of any document created and produced by a party in this case.  However, the producing party reserves the right to raise good faith objections to the authenticity of documents produced by, but not necessarily created by, that party.  In that instance the producing party has the burden to demonstrate why the document in question is not authentic.  This stipulation shall not be deemed or interpreted to be a stipulation that any document is admissible in evidence.

166.   Mformation and RIM agree that either side may attempt to use any exhibit identified by the other side but that doing so does not waive any objections to the admissibility of an exhibit by the other side.

167.   The parties stipulate that copies of documents may be used at trial in lieu of originals and shall not be deemed inadmissible solely on the basis that they are copies.

168.    Each expert witness's opinions are limited by the Court's Orders dated November 18, 2010, December 19, 2011, and March 29, 2012.

169.    The parties stipulate that claims and issues resolved by this Court on Summary Judgment are excluded from trial.

170.    No later than 7 p.m. three calendar days before any witness testifies on direct examination or by deposition designation, the identity of that witness and the exhibits to be used in that examination will be disclosed to designated counsel for the opposing side.  The opposing side will then have 24 hours to object to such designations.  If objections are raised, Mformation and RIM agree to meet and confer to try and resolve any remaining differences.

171.    The parties anticipate using demonstrative exhibits, including graphic or audiovisual presentations using the Court's video monitors, to illustrate arguments and witness testimony and aid the Court and the jury's understanding of same.  The parties anticipate revising and improving such demonstratives until at least before trial.  The parties agree to provide any such demonstrative material to the other party no later than 7 p.m. PDT three calendar days before it is presented to the Court or jury, to give the other party time to evaluate it and raise any objections with the Court without interrupting the other party's case.  The opposing side will then have 24 hours to object to such designations.  If objections are raised, Mformation and RIM agree to meet and confer to try and resolve any remaining differences

172.    Twenty-two days before Jury Selection, Mr. Weinstein will provide an updated supplement to the Expert Report of Roy Weinstein dated March 4, 2011.  This updated supplement shall be based solely on the updated financial information provided by RIM on February 29, 2012 and thirty days prior to trial, and shall be limited as required by the Court's Orders relating to damages, dated December 19, 2011 and March 29, 2012, and Mformation's agreement that it is not seeking damages in this action for RIM's sales to the U.S. government.  In his supplement, Mr. Weinstein may not present new damages theories that were not raised prior to or at his deposition in this case.

173.    Fourteen days before Jury Selection, Julie L. Davis will provide an updated supplement to the Rebuttal Expert Report and Disclosure of Julie L. Davis dated March 25, 2011, based solely on the updated financial information provided by RIM on February 29, 2012 and thirty days prior to trial, and shall be limited as required by the Court's Orders relating to damages, dated December 19, 2011 and March 29, 2012, and Mformation's agreement that it is not seeking damages in this action for RIM's sales to the U.S. government.  In her supplement, Ms. Davis may not present new damages theories that were not raised prior to or at her deposition in this case.

174.    Each expert witness shall be precluded from testifying about any opinions not disclosed prior to or at the expert's deposition or disclosed later pursuant to a specific order by this Court.  (*See* Dkt. 359 at 4-5.)  By so stipulating, the parties do not agree that opinions disclosed prior to or at the expert's deposition are admissible.

175.    Each expert witness shall be precluded from testifying about any actions that occurred or took place and that were not disclosed prior to or at the expert's deposition or disclosed later pursuant to a specific order by this Court.  (*See* Dkt. 359 at 4-5.)  By so stipulating, the parties do not agree that actions that were disclosed prior to or at the expert's deposition are admissible.

176.    The parties stipulate, pursuant to ¶ 25 of the Court's Preliminary Pretrial Conference Scheduling Order (Dkt. 700), that each party's corporate representative may attend the entirety of the trial.

177.    The parties stipulate that by offering jury instructions they are not waiving the right to appeal any pretrial legal ruling by the court, including the court's rulings on claim construction and summary judgment.

178.    The parties make these stipulations for the limited purpose of simplifying the issues for trial.  *See* Fed. R. Civ. P. 16(c)(2)(A).  The parties reserve the right, however, to appeal the Court's prior Orders that form the subject or basis for the above stipulations.

179.   The parties will continue to meet and confer regarding additional stipulations that may be requested or proposed to streamline the trial of this matter.  In particular, the parties will continue to discuss potential stipulations regarding: (1) authenticity of exhibits not already the subject of a stipulation, (2) admissibility of exhibits, and (3) procedures for closing the courtroom, if necessary, for reasons of confidentiality.  If the parties are unable to reach agreement regarding the procedures for closing the courtroom due to confidentiality concerns, they intend to raise this issue during the Final Pre-trial Conference on June 4, 2012.

## VII.   Without Extended Legal Argument, A Concise Statement Of Each Disputed Point Of Law Concerning Liability Or Relief, Citing Supporting Statutes And Decisions

### A.   Mformation's Statement of Disputed Points of Law

180.   Mformation contends the parties have raised issues of law in their motions for summary judgment and will do so in their motions in limine and in connection with the jury instruction.  While other issues of law may develop over the course of trial, no other legal issues need to be resolved at the pretrial conference.

### B.   RIM's Statement of Disputed Points of Law

181.   RIM contends that it cannot be liable for contributory infringement under 35 U.S.C. § 271(c) because the accused products, product components, and functions have substantial noninfringing uses.  "The existence of substantial non-infringing uses … defeats a claim for contributory infringement as a matter of law," even when it is undisputed that a product may be used to directly infringe a patent.  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327–28 (Fed. Cir. 2009). "[N]on-infringing uses are substantial when they are not unusual, farfetched, illusory, impractical, occasional, aberrant, or experimental." *Id.* at 1327.

182.   RIM contends that Mformation may not use Mformation's own acts or acts of third parties undertaken at Mformation's direction as proof of direct infringement by third parties.  35 U.S.C. § 271(a); *DeForest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927) ("***Any language*** used by the owner of the patent or ***any conduct on his part*** exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in . . . using

1    it . . . upon which the other acts, constitutes a license . . . ." (emphasis added)); *see Aro Mfg. Co. v.*

2    *Convertible Top Replacement Co.*, 377 U.S. 476, 497–98 (1964).

3           183.    RIM contends that "establishing a connection between the wireless device and the

4    server" in the context of the Asserted Claims of the '917 Patent should be construed to require

5    setting up a communication link between the wireless device and the server over which the

6    contents of the mailbox may be transmitted, prior to transmitting the contents of the mailbox.

7    (Dkt. 714.)

8           184.    RIM contends that, to the extent any of the Asserted Claims of the '917 Patent are

9    deemed to cover a mailbox that can contain commands for multiple devices, the '917 Patent must

10   provide an enabling disclosure of selecting and transmitting commands intended for delivery to

11   only a single device from a mailbox that could also contain commands for other devices to meet

12   the enablement requirement of 35 U.S.C. § 112, ¶ 1, for those claims.

13          185.    RIM contends that, to the extent any of the Asserted Claims of the '917 Patent are

14   deemed to cover a mailbox that can contain commands for multiple devices, the '917 Patent must

15   provide a written description of selecting and transmitting commands intended for delivery to only

16   a single device from a mailbox that could also contain commands for other devices to meet the

17   written description requirement of 35 U.S.C. § 112, ¶ 1, for those claims.

18          186.    RIM contends that the '917 Patent must provide an enabling disclosure of

19   implementing and/or establishing a mailbox for the wireless device at the server to meet the

20   enablement requirement of 35 U.S.C. § 112, ¶ 1, for the Asserted Claims.

21          187.    RIM contends that the '917 Patent must provide a written description of

22   implementing and/or establishing a mailbox for the wireless device at the server to meet the

23   written description requirement of 35 U.S.C. § 112, ¶ 1, for the Asserted Claims.

24          188.    RIM contends that, to the extent that claims 5, 21, and 22 of the '917 Patent are

25   deemed to cover a command for "enabling or disabling" or "enabling and disabling" access of the

26   wireless device to the server and a command for "enabling or disabling" or "enabling and

27   disabling" applications that may run on the wireless device, the '917 Patent must provide an

28

1    enabling disclosure of such commands to meet the enablement requirement of 35 U.S.C. § 112,

2    ¶ 1, for those claims.

3        189.   RIM contends that, to the extent that claims 5, 21, and 22 of the '917 Patent are

4    deemed to cover a command for "enabling or disabling" or "enabling and disabling" access of the

5    wireless device to the server and a command for "enabling or disabling" or "enabling and

6    disabling" applications that may run on the wireless device, the '917 Patent must provide a written

7    description of such commands to meet the written description requirement of 35 U.S.C. § 112, ¶ 1,

8    for those claims.

9        190.   RIM contends that Mformation is not entitled to an injunction against RIM.  *See,*

10   *e.g., eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

11       191.   RIM contends that Mformation should be precluded from arguing willful

12   infringement because Mformation cannot present clear and convincing evidence that RIM acted

13   despite an objectively high likelihood that its acts constituted infringement of a valid patent.

14   Under the objective standard articulated in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir.

15   2007) (*en banc*), "both legitimate defenses to infringement claims and credible invalidity

16   arguments demonstrate the lack of an objectively high likelihood that a party took actions

17   constituting infringement of a valid patent."  *Black & Decker, Inc. v. Robert Bosch Tool Corp.*,

18   260 F. App'x 284, 291 (Fed. Cir. 2008); *Cordance Corp. v. Amazon.com, Inc.*, 639 F. Supp. 2d

19   406, 413 (D. Del. 2009); *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 699, 728

20   (E.D. Va. 2010).

21       192.   RIM contends that Mformation should be precluded from arguing willful

22   infringement unless it can establish RIM had actual knowledge of the '917 Patent prior to this

23   lawsuit.  *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990)

24   ("[A] party cannot be found to have "willfully" infringed a patent of which the party had no

25   knowledge.");  *Conopco, Inc. v. May Dept. Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994)

26   ("Although these [pre-patent-issuance] activities may have been undertaken with knowledge that a

27   patent application covering the relaunched lotion formulation was pending (in view of the 'patent

28

1  pending' notice affixed to the relaunched product), that is insufficient to support a finding of

2  willfulness." (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)).

3  RIM's alleged knowledge of the patent application that led to the '917 Patent is insufficient,

4  standing alone, to support Mformation's willfulness allegation.  *See Conopco*, 46 F.3d at 1562;

5  *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008 WL 63233, at *2 ("While

6  defendants knew of plaintiff's patent application, this knowledge alone is not enough to

7  demonstrate willfulness.").

8       193.    RIM contends that Mformation may not present evidence of secondary

9  considerations of nonobviousness until it introduces sufficient evidence from which the jury could

10  reasonably conclude that the disputed nexus exists between the claimed inventions of the Asserted

11  Claims of the '917 Patent and the secondary consideration.  *See, e.g.*, *Ormco Corp. v. Align Tech.,

12  Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006); *Oracle America, Inc. v. Google, Inc.*, 10-cv-03561-

13  WHA, Dkt. 676 at 4 (N.D. Cal. Jan. 4, 2012).

14       194.    RIM contends that Mr. Weinstein may not testify that any commercial success of

15  RIM's accused products is evidence of secondary considerations of nonobviousness because this

16  Court has already held that Mr. Weinstein "did not adequately attribute all of Defendants'

17  customer demand to use of the Patent-In-Suit."  (*See* Dkt. 770 at 9.)  Therefore, Mr. Weinstein has

18  also not established that RIM's accused products are co-extensive with the '917 Patent.  *See, e.g.*,

19  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006); *Rambus, Inc. v. Hynix

20  Semiconductor, Inc.*, 254 F.R.D. 597, 602 (N.D. Cal. 2008).

21       195.    RIM contends that Mformation may not seek money damages for infringement for

22  any time period for which it did not hold legal title to the '917 Patent.  *See, e.g.*, *Arachnid, Inc. v.

23  Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The general rule is that one seeking to

24  recover money damages for infringement of a United States patent (an action 'at law') must have

25  held the legal title to the patent during the time of the infringement.") (citing *Crown Die & Tool

26  Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40 (1923)); *California Inst. of Computer Assisted

27  Surgery, Inc. v. Med-Surgical Services, Inc.*, C-10-05067-CW, 2011 WL 672709 (N.D. Cal. Feb.

28

16, 2011) (J. Wilken)); *Lantiq N. Am., Inc. v. Ralink Tech. Corp.*, CV 11-00234 EJD, 2011 WL 2600747 (N.D. Cal. June 30, 2011) (J. Davila); *Morrow v. Microsoft Corp.*, C 03-4739 CW, 2004 WL 1781010 (N.D. Cal. Aug. 10, 2004) (J. Wilken).

196.    If the Court finds that RIM infringes any valid asserted claim of the '917 Patent, the reasonable royalty must compensate for the infringing features, but not for the non-infringing features.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Oracle America, Inc. v. Google Inc.*, No. 3:10-cv-03561-WHA, Dkt. 891 at 3 (N.D. Cal. Apr. 10, 2012).

197.    RIM contends that "[e]vidence relying on the 25 percent rule of thumb is thus inadmissible under Daubert and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base[line] to the facts of the case at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).

198.    RIM contends that any reasonable royalty must be tied to the facts of the case.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.").

199.    RIM contends that documents and testimony regarding prior, unrelated litigations, including settlement agreements RIM entered into to resolve those unrelated litigations, are inadmissible as both irrelevant and prejudicial.  *See, e.g., Fenner Investments, Ltd. v. Hewlett Packard Co.*, No. 6:08-CV-273, 2010 WL 1727916, at *2 (E.D. Tex. Apr. 28, 2010) ("District courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially outweigh whatever probative value they may have.").

200.    RIM contends that summary judgment of noninfringement is appropriate in light of the Court's construction of the claim phrase "without a request from the wireless device, performing the steps of" because the undisputed evidence demonstrates that all communications with a BlackBerry handheld device involve "performing an enumerated step without the transmission from the wireless device of a code, signal or any other form of request that initiates the commencement of the performance of the step."  (Dkt. 691 at 10.)

201.   RIM contends that, when this Court construes the claim limitation "establishing a connection between the wireless device and the server," the Court's construction may provide an additional basis for summary judgment of noninfringement in favor of RIM.

## VIII.   A List Of All Witnesses Likely To Be Called At Trial

### A.   **Mformation**

202.   Mformation provides the following list of witnesses who may be called at trial, other than solely for impeachment or rebuttal of the witnesses called by RIM.   Mformation reserves the right to call additional witnesses in rebuttal or to call as an adverse witness any witness listed on RIM's witness list who is not at trial, either live or by deposition.   By listing these witnesses, Mformation does not commit to calling them at trial or to otherwise make them available to testify.   Mformation reserves the right to call any witnesses that RIM may identify on its witness list.

- Dr. Rakesh Kushwaha (will call)
- Upal Basu (will call)
- Dr. Vijay Madisetti (will call)
- Roy Weinstein (will call)
- Gabe Beltramino (may call)
- Kerry Daddato (may call)
- Rob Dalgety (may call)
- Mark Edwards (may call)
- Don Gobin (may call)
- Mark Hatcher (may call)
- Harish Magam (may call)
- Dr. Badri Nath (may call)
- Saran Sahni (may call)
- Amit Shah (may call)
- James Wilson (may call)

- Matthew Wilson (may call)

**B.   RIM**

203.    RIM provides the following list of witnesses who may be called at trial, other than solely for impeachment or rebuttal of the witnesses called by Mformation.  RIM reserves the right to call additional witnesses in rebuttal or to call as an adverse witness any witness listed on Mformation's witness list who is not at trial, either live or by deposition.   By listing these witnesses, RIM does not commit to calling them at trial or to otherwise make them available to testify.  RIM reserves the right to call any witnesses that Mformation may identify on its witness list.

RIM will call the following witnesses:

- Anthony Acampora, Ph.D (live);
- David Castell (live);
- Julie Davis (live);
- Christopher Foley (live);
- Rakesh Kushwaha (live or by deposition); and
- Mihal Lazaridis (live).

RIM may call the following witnesses either live or by deposition:

- Nicholas Alfano;
- Jim Balsillie;
- Upal Basu;
- Gabe Beltramino;
- Carl Cherry;
- Kerry Daddato;
- Mark Edwards;
- Don Gobin;
- Gurinder Johar;
- Salvatore Lazzaro;

- Tyler Lessard;
- Allan Lewis;
- Gaelle Martin-Cocher;
- Badri Nath;
- Joe Owen;
- Alan Panezic;
- Rudy Rawlins;
- Graham Russell;
- Amit Shah;
- James Wilson;
- Craig Wolfson;
- David Yach; and
- James Yersh.

**IX.    A List Of Evidence The Parties Intend To Present At Trial Through Use Of Excerpts From Depositions, From Interrogatory Answers, Or From Responses To Requests For Admission**

204.    The parties have exchanged lists of proposed exhibits, and are meeting and conferring in an effort to minimize the disputes between the parties regarding the exhibits to be filed on June 4, 2012 per this Court's Order.  (Dkt. 700 at 6, 9.)  The parties agree that their lists of proposed exhibits include only documents "each party intends to offer in evidence as a part of its case-in-chief" per this Court's statement.  (Dkt. 700 at 6.)  Documents used for cross-examination, for purposes of impeachment or to refresh recollection are not necessarily listed on a party's list of proposed exhibits.

205.    The parties will continue to meet and confer regarding the parties' Proposed Deposition Designations and procedures for playing deposition designations in an effort to minimize the disputes before the Final Pretrial Conference on June 4, 2012.

**B.    Mformation**

206.    *See* Exhibit A, Mformation's Proposed Deposition Designations.

207.    Mformation does not currently expect to use at trial any of RIM's Responses to Mformation's Interrogatories.

**C.    RIM**

208.    *See* Exhibit B, RIM's Proposed Deposition Designations.

209.    RIM reserves the right to use any deposition testimony designated by RIM either affirmatively or as a counter-designation or rebuttal to deposition testimony designated by Mformation.

210.    Pursuant to Federal Rule of Civil Procedure 33, Mformation provided the following answers to interrogatories served by RIM:

A.    Mformation's March 9, 2009 Response to Interrogatory No. 3;

B.    Mformation's March 9, 2009 Response to Interrogatory No. 4;

C.    Mformation's March 9, 2009 Response to Interrogatory No. 6;

D.    Mformation's May 27, 2009 Response and Supplemental Response to Interrogatory No. 6;

E.    Mformation's June 13, 2009 Response and Supplemental Response to Interrogatory No. 6;

F.    Mformation's July 24, 2009 Response and Supplemental Response to Interrogatory No. 6;

G.    Mformation's November 6, 2009 Response, Supplemental Response, and Second Supplemental Response to Interrogatory No. 6;

H.    Mformation's December 10, 2009 Response, Supplemental Response, Second Supplemental Response, and Third Supplemental Response to Interrogatory No. 6;

I.    Mformation's February 8, 2010 Response, Supplemental Response, Second Supplemental Response, Third Supplemental Response, and Fourth Supplemental Response to Interrogatory No. 6;

J.    Mformation's April 19, 2010 Response, Supplemental Response, Second

Supplemental Response, Third Supplemental Response, and [Amended] Fourth Supplemental Response to Interrogatory No. 6;

K. Mformation's January 24, 2011 Response, Supplemental Response, Second Supplemental Response, [Amended] Third Supplemental Response, and [Second Amended] Fourth Supplemental Response to Interrogatory No. 6;

L. Mformation's February 18, 2011 Response to Interrogatory No. 21;

M. Mformation's February 22, 2011 Response and Third Supplemental Response to Interrogatory No. 4;

N. Mformation's May 13, 2011 Response and Third Supplemental Response to Interrogatory No. 4; and

O. Mformation's May 13, 2011 Response, Supplemental Response, Second Supplemental Response, [Amended] Third Supplemental Response, and [Second Amended] Fourth Supplemental Response to Interrogatory No. 6.

211. Pursuant to Federal Rule of Civil Procedure 36, Mformation admitted to the truth of the following statements, subject to and without waiving Mformation's general and specific objections stated in Mformation's Responses to RIM's First, Second, and Third Sets of Requests for Admission dated March 5, 2010, March 14, 2011, and May 13, 2011, respectively:

A. "by early 1999 full-sized computers could be remotely managed (*i.e.*, managed from a distance) through an associated hard-wired network." (Mformation's RFA Response No. 22.)

B. "it was well known in the art before the conception of the inventions claimed in the '917 Patent to create an address or addresses in memory that could store information intended for delivery to one or several hard-wired devices." (Mformation's RFA Response No. 23.)

C. "RIM and Mformation are not direct competitors in the market for wireless email in the United States." (Mformation RFA Response No. 988.)

D. "RIM and Mformation have not been direct competitors in the market for

wireless email in the United States at any time from the date of the issuance of the '917 Patent to the present."  (Mformation RFA Response No. 989.)

E.   "Mformation is a provider of mobile device management technology, software, and services."  (Mformation RFA Response No. 990.)

F.   "There have been multiple providers of mobile device management software in the United States since the date of the issuance of the '917 Patent."  (Mformation RFA Response No. 1003.)

G.   "Mformation has not received any requests to license the '917 Patent." (Mformation RFA Response No. 1400.)

H.   "Mformation has not established any parameters it considers in deciding whether to enter into a patent license agreement with another company." (Mformation RFA Response No. 1410.)

I.   "Mformation does not have a formal policy regarding licensing its intellectual property."  (Mformation RFA Response No. 1411.)

J.   "Dr. Rakesh Kushwaha and Dr. Badri Nath were not the first to invent a server."  (Mformation's RFA Response No. 1416.)

K.   "Dr. Kushwaha and Dr. Nath were not the first to invent a wireless device." (Mformation's RFA Response No. 1417.)

L.   "Dr. Kushwaha and Dr. Nath were not the first to invent a smart phone." (Mformation's RFA Response No. 1418.)

M.   "Dr. Kushwaha and Dr. Nath were not the first to invent registering a wireless device with a server."  (Mformation's RFA Response No. 1424.)

N.   "Dr. Kushwaha and Dr. Nath were not the first to invent transmitting software from a server to a wireless device."  (Mformation's RFA Response No. 1430.)

O.   "Dr. Kushwaha and Dr. Nath were not the first to invent transmitting signals from a server to a wireless device."  (Mformation's RFA Response

No. 1434.)

P.   "Dr. Kushwaha and Dr. Nath were not the first to invent transmitting information from a server to a wireless device."   (Mformation's RFA Response No. 1436.)

Q.   "Dr. Kushwaha and Dr. Nath were not the first to invent creating an address in memory at a server."  (Mformation's RFA Response No. 1438.)

R.   "Dr. Kushwaha and Dr. Nath were not the first to invent establishing a connection between a server and a wireless device."  (Mformation's RFA Response No. 1440.)

S.   "Dr. Kushwaha and Dr. Nath were not the first to invent connecting a server and a wireless device."  (Mformation's RFA Response No. 1442.)

T.   "not later than November 3, 2009 Mformation's counsel received from Mformation the provsys prototype source code and confirmation that it was source code to be produced to be produced for RIM's inspection." (Mformation's RFA Response No. 38 Pursuant to the Court's January 31, 2012 Order.)

U.   "RIM requested full production of Mformation's source code at least 10 times before Dr. Kushwaha was deposed in December 2010." (Mformation's RFA Response No. 42 Pursuant to the Court's January 31, 2012 Order.)

V.   "from November 3, 2009 to January 2011, Mformation had in its possession the provsys prototype source code."  (Mformation's RFA Response No. 45 Pursuant to the Court's January 31, 2012 Order.)

**X.   Any Other Subjects Relevant To The Trial Of The Action, Or Material To Its Just Speedy And Inexpensive Determination**

212.   On January 31, 2012, this Court found good cause to construe the term "establishing a connection between the wireless device and the server."   (Dkt. 700.)   On

1   February 10, 2012, the parties filed simultaneous briefs regarding the construction of that term.

2   (Dkt. 713; Dkt. 714.)  On March 12, 2012, the Court heard argument on this issue.  (Dkt. 767.)

3         213.    RIM objects to the use of the Federal Judicial Center's "An Introduction to the

4   Patent System" video in this matter.

7   DATED:  May 4, 2012                    FOLEY & LARDNER LLP

                                                Respectfully submitted,

9                                               */s/ Shawn E. McDonald*

                                            Shawn E. McDonald

11                                               Amar L. Thakur (CA Bar No. 194025)

                                            Shawn E. McDonald (CA Bar No. 237580)

                                            Justin E. Gray (*pro hac vice*)

12                                               FOLEY & LARDNER LLP

                                            3579 Valley Centre Drive Suite 300

13                                               San Diego, California 92130

                                            Telephone:    (858) 847-6700

14                                               Facsimile:     (858) 792-6773

                                            Email: athakur@foley.com

15                                               Email: semcdonald@foley.com

                                            Email: jegray@foley.com

17                                               *Attorneys for Plaintiff and Counterclaim Defendant*

                                            MFORMATION TECHNOLOGIES, INC.

19         By her signature below, and pursuant to General Order No. 45, Section X(B) regarding

20   signatures, counsel for RIM attests that counsel for Mformation, whose electronic signature is

21   provided, has concurred in this filing.

DATED:  May 4, 2012

KIRKLAND & ELLIS LLP

Respectfully submitted,


/s/ *Meredith Zinanni*
Meredith Zinanni

Linda S. DeBruin
(Admitted to this Court on September 27, 1991)
Aaron D. Charfoos (*pro hac vice*)
Meredith Zinanni (*pro hac vice*)
Maria A. Maras (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email: linda.debruin@kirkland.com
Email: aaron.charfoos@kirkland.com
Email: meredith.zinanni@kirkland.com
Email: maria.maras@kirkland.com

Marc H. Cohen (CA Bar No. 168773)
KIRKLAND & ELLIS LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:     (650) 859-7000
Facsimile:     (650) 859-7500
Email: marc.cohen@kirkland.com


*Attorneys for Defendants and Counterclaim Defendants*
Research In Motion Limited and Research In Motion
Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 4th day of May that a copy of the foregoing was filed electronically and served to registered ECF recipients via electronic service.

DATED:  May 4, 2012     KIRKLAND & ELLIS LLP

           Respectfully submitted,


           <u>/s/ *John Kanive*</u>
           John Kanive
           Intellectual Property Legal Assistant

           Linda S. DeBruin
           (Admitted to this Court on September 27, 1991)
           Aaron D. Charfoos (*pro hac vice*)
           Meredith Zinanni (*pro hac vice*)
           Maria A. Maras (*pro hac vice*)
           KIRKLAND & ELLIS LLP
           300 North LaSalle
           Chicago, Illinois  60654
           Telephone: (312) 862-2000
           Facsimile: (312) 862-2200
           Email: linda.debruin@kirkland.com
           Email: aaron.charfoos@kirkland.com
           Email: meredith.zinanni@kirkland.com
           Email: maria.maras@kirkland.com

           Marc H. Cohen (CA Bar No. 168773)
           KIRKLAND & ELLIS LLP
           950 Page Mill Road
           Palo Alto, CA 94304
           Telephone: (650) 859-7000
           Facsimile: (650) 859-7500
           Email: marc.cohen@kirkland.com

           *Attorneys for Defendants and Counterclaim Defendants*
           Research In Motion Limited and Research In Motion Corporation

**APPENDIX A**

| The RemoteWare System |
| --- |

- March 31, 2010 Deposition of Joe Owen;
- January 26, 2011 Deposition of Christopher Foley;
- WO 96/19064—filed November 21, 1995 and published on June 20, 1996—Dennis M. Crumpler, Robert B. Estes and Bryan Kirby, Jr.;
- RemoteWare Server for Windows NT, Administrator's Guide v3.0 (1996);
- RemoteWare Server for Windows NT, Reference Manual v3.0 (1996);
- RemoteWare Windows Client, User's Guide v3.1 (1996);
- RemoteWare Client for Windows NT and Windows 95, User's Guide v3.1 (1996);
- RemoteWare Server for Windows NT, Administrator's Guide v3.1 (1996);
- RemoteWare Server for Windows NT, Reference Manual v3.1 (1996);
- Afaria Release History (4/27/2009);
- CONNECT:Manage, Channel Viewer, User's Guide v3.0 (1999);
- CONNECT:Manage, Document Manager, Administrator's Guide v3.0 (1999);
- CONNECT:Manage, Installation Guide v3.0 (1999);
- CONNECT:Manage, Inventory Manager, Administrator's Guide v3.0 (1999);
- CONNECT:Manage, Server, Administrator's Guide v3.0 (1999);
- CONNECT:Manage, Session Manager, Administrator's Guide v3.0 (1999);
- CONNECT:Manage, Software Manager, Administrator's Guide v3.0 (1999);
- CONNECT:Manage, Software Manager Capture, Administrator's Guide v2.0 (Oct. 1999);
- CONNECT:Manage, 3.0 Frequently Asked Questions (Oct. 13, 1999);
- CONNECT:Manage, 3.0, October 1999 CD (Oct. 13, 1999);
- McCaw's Wireless Data Division Forms Strategic Alliance With XcelleNet To Bring New Applications to Mobile Workers Using XcelleNet RemoteWare, and McCaw's AirData Will Be Able To Remotely Query Databases, Check Inventories, Update Entries and Execute Orders in a Single Session (March 14, 1995);
- XcelleNet Launches Afaria^TM for the Microsoft Windows-powered Pocket PC Platform (May 22, 2000);
- XcelleNet Expands Services and Consulting Offerings for Handheld Management (August 30, 2000); and
- XcelleNet Expands the Reach of Afaria's Mobile Resource Management to the RIM BlackBerry (October 11, 2000).

APPENDIX A

| The Mobitex System |
|---|
| • September 15, 2010 Deposition of David Castell; |
| • U.S. Patent No. 6,636,489—filed November 3, 1997 and issued October 21, 2003—to Howard Fingerhut; |
| • Development Tools Facilitate Wireless Data Communications (11/14/1994); |
| • BlackBerry, Technical White Paper, v1.0 - Draft (1998); |
| • BlackBerry, Technical White Paper, v0.1 - Draft (1998); |
| • Hugh Hind, Service Book (02/10/1999); |
| • Gary Mousseau, Payload Development Guide (09/29/1999); |
| • BlackBerry Enterprise Server Software, Installation & Getting Stated Guide, v1.6 SP1 (11/11/1999); |
| • BlackBerry, Programmer's Guide, Secure Wireless Server SDK v1.0 (12/09/1999); |
| • Apostolis K. Salkintzis and Christodoulos Chamzas, Mobile Packet Data Technology: An Insight into MOBITEX Architecture 10-18 (Feb. 1997); |
| • Mobile Data Communication Guide to Mobitex, Edition 1 (March 1993); |
| • Mobitex User's Handbook For the Mobidem AT, Version 1.0 (April 1993); |
| • An Overview of the RAM Mobile Data, Inc. Mobitex Packet Radio Networks Including a Summary of Radio/Modem and Terminal Design Requirements and Guidelines for Application Specific Software Design, Issue 2 (August 1990); |
| • Internal Information Functional Specification, Support for Over the Air Activation (August 28, 1997); |
| • Hugh Hind and Allan Lewis, RIM Message Routing (June 11, 1998); |
| • Kourosh Parsa, The Mobitex* Packet-Switched Radio Data System 534-38 (1992); |
| • General Binder Overview, Mobitex Interface Specification (October 26, 1992); |
| • Dale Brubacher-Cressman, Wireless Access to the Internet - Preliminary Functional Specification (08/10/1994); |
| • RIM Radio, Configuration Tool, Installation & User's Guide, v2.0 (12/14/1995); |
| • RAD-I/O Connectivity Tools, Developer's Guide, v2.51 (02/22/1996); |
| • RAD-I/O Connectivity Tools, Technical Reference, v2.5 (07/27/1995); |
| • RAD-I/O Connectivity Tools, User's Guide & Technical Reference, v3.00 (04/24/1997); |
| • Cantel Mobitex, Mobitex Terminal Specification (1989); |
| • BellSouth Wireless Data, Network Operator Information (June 1, 1998); |
| • Cantel Mobitex, Technical Brief (01/01/1990); |
| • Bryan D. Taylor, Nemesis Project Proposal (04/19/1994); |
| • System Overview R14, MRS6000 Mobitex Product Catalogue (March 1993); and |
| • Mobitex API, A Mobitex Application Programmer's Interface, Preliminary Proposal for v1.0 (08/1990). |

## APPENDIX A

| **The Unicenter TNG System** |
|---|
| <ul><li>January 6, 2011 Deposition of Salvatore Lazzaro;</li><li>Unicenter TNG Framework, ManagedPC OEM Kit (1998);</li><li>Unicenter TNG Framework, Administrator Guide v2.1 (1997);</li><li>Rick Sturm, Working with Unicenter TNG (1998);</li><li>CA-Unicenter, Integrated Client/Server Systems Management Software for the HP-UX Environment, Administrator Guide, Release 1.1 (1994);</li><li>CA-Unicenter, Integrated Client/Server Systems Management Software for the HP-UX Environment, Integrating HP OpenView Network Node Manager and CA-Unicenter, Release 1.1 (1995);</li><li>CA-Unicenter AgentWorks, Enterprise View, User's Guide, Release 2.0.0 (1995);</li><li>CA-Unicenter for OpenView, Integrated Client/Server Network and Systems Management Software for the HP-UX Environment, Integration Guide, Release 1.0 (1995);</li><li>CA-Unicenter/STAR, Integrated Client/Server Systems Management Software for the MVS Environment, Administrator Guide, Release 1.0 (1994);</li><li>CA-Unicenter/Systems Alert, Integrated Client/Server Systems Management Software for the Solaris Environment, Administrator Guide, Release 1.1 (1995);</li><li>Unicenter TNG, Getting Started v2.2 (1999);</li><li>Unicenter TNG, Administrator Guide, Release v2.1 (1997);</li><li>Computer Associates to Offer Highly Manageable Wireless Application Infrastructure By Leveraging Alliances with 3Com and PageNet (July 26, 1999);</li><li>Riverbed Technologies and CA Partner to Extend Management of Handheld Computing Devices in the Enterprise (July 19, 1999);</li><li>Products, partnerships extend enterprise to mobile devices 22-24 (September 1999);</li><li>3Com and Computer Associates Team to Integrate Enterprise Management with the Palm Computing® Platform (July 19, 1999);</li><li>New IT development can help you manage your fleet (August 9, 1999);</li><li>Computer Associates Announces UniFleet, Automotive Industry's Most Advanced Fleet Management Solution (March 1, 1999);</li><li>Computer Associates Helps Put the West McLaren Mercedes Team in the Winner's Circle (November 13, 1998); and</li><li>Look What Unicenter Is Managing Now (1999).</li></ul> |
| **Mformation's July 24, 2000 Public Use, Sale Or Offer For Sale Of Its Prototype** |
| <ul><li>April 20, 2010 Rule 30(b)(6) Deposition of Dr. Rakesh Kushwaha;</li><li>December 9, 2010 Rule 30(b)(6) Deposition of Dr. Rakesh Kushwaha;</li><li>Wireless Data Management System (June 12, 2000); and</li><li>E-mail from G. S. Johar to H. Magam, S. Sahni, and G. Beltramino (Jul. 24, 2000, 3:43 p.m.).</li></ul> |

**APPENDIX B**

| **Prior Art References** |
|---|
| • U.S. Patent No. 6,088,457;<br>• AirMobile: Wireless Software for Lotus cc:Mail, User Guide v1.0 (1995);<br>• U.S. Patent No. 6,363,421;<br>• U.S. Patent No. 5,758,088;<br>• U.S. Patent No. 6,055,442;<br>• EP 0 998 155;<br>• Location registration procedures (ETSI GSM 03.12 v7.0.0 Rel. 1998, Pub. Aug, 1999);<br>• U.S. Patent No. 5,418,524;<br>• U.S. Patent No. 5,870,685;<br>• WO 00/59225;<br>• U.S. Patent No. 5,887,254;<br>• U.S. Patent No. 5,852,722;<br>• U.S. Patent No. 6,295,454;<br>• U.S. Patent App. No. 2001/0046854;<br>• U.S. Patent No. 5,748,084;<br>• U.S. Patent No. 6,195,546;<br>• U.S. Patent No. 6,012,088;<br>• U.S. Patent No. 5,956,636;<br>• U.S. Patent No. 6,144,849;<br>• U.S. Patent No. 5,864,757;<br>• U.S. Patent No. 6,021,433;<br>• U.S. Patent No. 6,885,862;<br>• U.S. Patent No. 5,978,566;<br>• U.S. Patent No. 6,367,014;<br>• U.S. Patent No. 6,047,071;<br>• WO 99/16263<br>• TIA/EIA/IS-683-A, Over-the-Air Service Provisioning of Mobile Stations in Spread Spectrum Systems (May 1998);<br>• U.S. Patent No. 6,381,454;<br>• U.S. Patent No. 5,867,714;<br>• U.S. Patent No. 5,850,517; and<br>• U.S. Patent No. 5,878,339. |