**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Mformation Techs., Inc., | NO. C 08-04990 JW |
| Plaintiff, | **CLOSING INSTRUCTIONS** |
| v. | |
| Research in Motion Ltd., et al., | |
| Defendants. | |
| _____/ | |

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. Copies of these instructions have been made available for you to consult.

As I have instructed you, it is your duty to find the facts from all the evidence in the case. To those facts you must apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. In deciding the case you must not be influenced by prejudice or sympathy. This means that you must decide the case solely on the evidence before you and according to the law. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all of my instructions. You must not single out some and ignore others; they are all important.

The evidence from which you are to base your verdict consists of: the sworn testimony of witnesses, both on direct and cross-examinations, regardless of who called the witness; the exhibits which have been received into evidence; the facts

which have been admitted during pre-trial proceedings; and any facts to which the lawyers have agreed or stipulated. I have asked the parties to provide you with a written copy of their stipulation. You will find this stipulation among the exhibits, marked as Exhibit 5017.

You have received as evidence responses by a party to "Request for Admissions." All facts which are admitted in such a response must be accepted as conclusively established. You will find these admissions among the exhibits as Exhibit 5018.

The deposition testimony of one or more witnesses have been read or displayed. Deposition testimony is given under oath. You should give it the same force and effect as sworn testimony given here in trial.

You have heard answers to written interrogatories. You should give these answers the same effect as sworn testimony.

You must decide all questions of fact in this case from the evidence received in this trial and not from any other source. You must not make any independent investigation of the facts or the law or consider or discuss facts as to which there is no evidence. This means, for example, that you must not perform any research on your own or consult reference works for additional information. You must also not conduct any experiments, including experiments on any exhibits provided to the jury.

If there is a conflict between the testimony of one or more witnesses and that of other witnesses, you may have to decide which testimony to believe and which testimony not to believe. You may disbelieve all or any part of any witness' testimony. In making that decision, you should take into account a number of factors including the following:

(1)     Was the witness able to see, or hear, or know the things about which that witness testified?

(2)     How well was the witness able to recall and describe those things?

2

(3)    What was the witness' manner while testifying?

(4)    Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

(5)    How reasonable was the witness' testimony when considered in light of all the evidence in the case?

(6)    Was the witness' testimony contradicted by what that witness said or did at another time, or by the testimony of other witnesses, or by other evidence?

In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

The persuasiveness of the evidence presented by each side does not necessarily depend on the number of witnesses testifying on one side or the other. You must consider all the evidence in the case, and you may decide that the testimony of a smaller number of witnesses on one side has greater persuasiveness than that of a larger number on the other side.

You have heard testimony from individuals who, because of education or experience, have become experts in a particular field. The law permits experts to state opinions about matters in the field of their expertise and they are permitted to state the reasons for those opinions. Expert opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves. In deciding whether to believe an expert's testimony, you should consider the expert's training and experience, the facts the expert relied on, and the reasons for the expert's opinion.

Evidence may be direct or circumstantial. Direct evidence is testimony about an event by a witness who personally saw or heard or performed the event.

3

Circumstantial evidence is indirect evidence about an event; that is, it is direct evidence that one event took place from which one can infer that another event, which was not itself directly observed, took place.  You are to consider both direct and circumstantial evidence.  The law permits you to consider direct and circumstantial evidence to be of equal persuasiveness.  However, it is for you to decide how persuasive to consider any evidence.

During the trial, I have ordered that evidence be stricken from the record and instructed you to disregard the evidence.  When you are deciding the case, you must not consider evidence which I told you to disregard.  Sometimes I admitted evidence for a limited purpose.   At the time the evidence was admitted, I told you the limited purpose for which the evidence was being admitted.  You must consider that evidence for that limited purpose only.

During your deliberations, you will have paper copies of the documentary evidence.  Some of the exhibits were in the form of computer-generated slides or animations.  Some were received in evidence and some were not.  With respect to electronic evidence, we will provide you with a computer on which to view the exhibits.  I have directed Mr. Noble, the Deputy Clerk, to assist you in understanding how to operate the equipment.  You will also be provided with a list of all exhibits which have been received in evidence.  If you need additional equipment or supplies, you may make a request by sending a note.

The parties to this case are corporations.  All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.  Under the law, a corporation is considered to be a person and like a person, a corporation is responsible for its conduct.  A corporation acts through its employees, agents, directors, or officers.  During these instructions when I speak of the conduct of Mformation or Research in Motion Limited and Research in Motion Corporation (collectively, "RIM"), I am referring to the conduct of their respective

4

employees, agents, directors, and officers performed within the scope of their authority.

### SUMMARY OF THE CONTENTIONS

This is a patent infringement case. Mformation is the owner of the '917 Patent. Claims 1, 6, 21-25, and 27 (the "Asserted Claims") claim as an invention processes for remotely managing a wireless device over a wireless network. As I will explain in more detail later, under the patent laws, anyone who uses the patented process to remotely manage a wireless device over a wireless network without a license from the patent owner is guilty of "direct infringement" of the patent. A company directly infringes a patented process by performing each and every step of the patented process.

If, however, a company does not itself use the process, but makes a product, the only substantial use of which is to remotely manage a wireless device over a wireless network using the patented method; and the manufacturer sells the product to a customer; and the customer uses the product to remotely manage a wireless device over a wireless network under circumstances that I will describe in more detail later, or if a manufacturer actively induces the customer to use the patented process, under the United States patent laws the customer is a "direct infringer" and the manufacturer is an "indirect infringer."

In this case Mformation alleges that RIM is liable for "indirect infringement." Mformation alleges that beginning on October 27, 2008, RIM began to manufacture and sell to customers computer products that were then used by those customers to directly infringe the Asserted Claims of the '917 Patent and that RIM actively induced its customers to infringe the Asserted Claims. Mformation also accused RIM of willful infringement. However, for legal reasons the question of willfulness has been removed from your consideration.

5

As I will discuss later, the Asserted Claims of the '917 Patent do not cover every process for remotely managing a wireless device over a wireless network. RIM admits that it manufactures and sells Blackberry devices that are wireless and that it manufactures and sells Blackberry Enterprise Server software that can, among other uses, be used by its customers to remotely manage Blackberry devices over a wireless network. RIM contends that Mformation has not proved that the use of its products by its customers infringes the particular remote management process described in the Asserted Claims of the '917 Patent. In addition, RIM alleges that the Asserted Claims of the '917 Patent are invalid because the processes were already being used when Mformation filed its patent application or were obvious. Therefore, you must decide whether Mformation has proved infringement and whether RIM has proved invalidity.

### INTERPRETATION OF CLAIM

Your decisions involve a series of steps. The first step is to understand what the Court has decided is covered by the Asserted Claims of the '917 Patent.

The words used in the "claim" of a patent define and limit the scope of the patented invention. As I have previously instructed, under the law, it is the responsibility of the Judge to decide the meaning of the words and thus the scope of the asserted patent claims. The Judge reads the language of each patent claim, and other parts of the patent specification, such as the written description of the invention that is included in the application, the drawings, the file history that contains correspondence and other documents exchanged between the patent applicants and the Patent and Trademark Office, and reviews other material. Based on that information, the Judge interprets or "construes" definitions of the words and phrases used in each patent claim and before trial issues a written decision on the scope of each patent claim. This is called the "claim construction."

There are rules that govern claim construction. The Judge must construe the meaning of the words and phrases of a patent from the viewpoint of what a person of

6

United States District Court

For the Northern District of California

ordinary skill in the art at the time of the invention would understand the inventors meant based on what the inventors stated in the documents that were filed with the Patent and Trademark Office.  Thus, the meaning that the Court gave to the asserted claims in this case are based on what a person of ordinary skill in the art would understand the words and phrases of the patent to mean as of the effective filing date of the '917 Patent Application.  Now sometimes in the claim language, the inventors will use commonly used words.  In that case, the Court must construe the words to have their ordinary and customary meanings.  Sometimes the inventors will use technical words and phrases.  The Court must construe technical words according to the meaning a person of ordinary skill in the field would give to those words as of the effective filing date of the invention.  Finally, sometimes the inventors will coin a word or phrase, and in so doing expressly define the word or phrase differently than a person of ordinary skill in the art would understand it to have.  The Court must construe any coined phrases to have the meaning given to them by the inventors.  Since the words and phrases define the scope of the patent as a matter of law, and since it is the responsibility of the Court to state the law that is applicable to this case, in deciding if a patent claim has been directly or indirectly infringed or is invalid, you the jury must do so based on the Court's definition of the words and phrases in the patent claim.

Any expert witness must also accept the Court's interpretations as correct.

The Court's interpretation of what is covered by the Asserted Claims should not be taken by you as an indication that the Court has a view regarding whether Mformation has proved that RIM had indirectly infringed the Asserted Claims or whether RIM has proved that the Asserted Claims are invalid.  Indeed, when the Court issues its claim construction, it does not review the accused process.

During the trial, I gave you instructions regarding the meaning of certain words and phrases used in the Asserted Claims.  I will now give to you instructions on the

7

meaning of the words and phrases in the asserted claims that you must follow in deciding the questions that are being submitted to you.  If you wish, you may use the copy of the patent that was given to you to follow along with this portion of the Court's instruction.

## Claim 1[1]

The Claims of the '917 Patent begin with: "What is claimed is:"  The introductory language beginning with: "A method for. . ." and ending with, "comprising the steps of:" is called the preamble.  The language of the preamble imposes limitations on the scope of the claim.  The preamble to Claim 1 of the '917 Patent claims: "A method for remotely managing a wireless device over a wireless network comprising a server and the wireless device. . . ."

Claim 1 recites "a method."  The United States patent laws recognize several types of patents.  One type of patent claims as an invention a machine, apparatus or device.  The type of patent that is involved in this case is for a "process or method."

---

[1] **Claim 1:**
A method for remotely managing a wireless device over a wireless network comprising a server and the wireless device, the wireless network operable to communicatively connect the server and the wireless device, the method comprising the steps of:

transmitting registration information relating to the wireless device from the wireless device to the server;

verifying the registration information at the server; and

without a request from the wireless device, performing the steps of:
establishing a mailbox for the wireless device at the server,
placing a command for the wireless device in the mailbox at the server,
delivering the command from the mailbox at the server to the wireless device by establishing a connection between the wireless device and the server, transmitting the contents of the mailbox from the server to the wireless device, and accepting the contents of the mailbox at the wireless device, and
executing the command at the wireless device;

wherein the connection is established based on a threshold condition

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

In general, a "process or method" patent does not claim the invention of a new machine. A process or method patent claims as an invention new acts or manipulative "steps" that are performed upon a "thing" and that transform the "thing" to a different state. A method patent may recite that it uses a particular machine to perform a recited step. In so doing, the inventors may use devices that are already known and that are already being used for some other process. The essence of the method patent, however, is a claim to a series of novel and nonobvious steps that are performed on a workpiece, that when performed together transform the workpiece.

A "wireless device" is a device that is capable of sending and receiving radio waves.

The word "server" means "a device or computer in a network that is dedicated to providing resources to the wireless device," over a wireless network.

The preamble to Claim 1 further recites: "the wireless network operable to communicatively connect the server and the wireless device."

The phrase "remotely managing a wireless device over a wireless network" means "using the server that is physically separate from the wireless device to wirelessly control the functionality of the wireless device."

The preamble further recites, " the method comprising the steps of. . ." The phrase, "comprising the steps of," means that the recited steps are "essential," meaning they tell what the invention is. Each recited step must be performed in the recited manner and, if the Court so determines, in the recited sequence. Those who use the method might perform additional steps, but the recited steps must be performed to perform the patented process.

Following the preamble is the "body" of the claim. Claim 1 recites six steps. Each step is defined by words that, in conjunction with the words and phrases in the other steps, define what is done, what machine does the step, upon what work-product

the step is performed and when the step is performed in relationship to the other steps. For ease of reference, I will refer to each step as follows:

Step One: the "transmitting registration information" step;

Step Two: the "verifying the registration information" step;

Step Three: the "establishing a mailbox" step;

Step Four: the "placing a command" step;

Step Five: the "delivering the command" step; and

Step Six: the "executing the command" step.

I will instruct you on the meaning of the words and phrases used in these steps.

## Step One: "transmitting registration information"

Step One recites, "transmitting registration information relating to the wireless device from the wireless device to the server." Claim 1 does not claim a process for composing registration information. The process starts with transmitting "registration information relating to the wireless device" from the wireless device to the server. Therefore, Step One must be completed before Step Two can be performed.

## Step Two: "verifying the registration information"

Step Two recites, "verifying the registration information at the server." To verify means to authenticate as authorized. Claim 1 does not claim as part of the invention any process for how the server knows the registration information.

## Preamble to Steps Three, Four and Five

Steps Three, Four and Five are preceded by a preamble: namely, "without a request from the wireless device. . ." to the server. Therefore, Steps Three, Four and Five must be performed "without the transmission from the wireless device to the server of a code, signal or any other form of request that initiates the commencement of the performance of the step."

## Step Three: "establishing a mailbox"

10

Step Three recites, "without a request from the wireless device. . . establishing a mailbox for the wireless device at the server."  The phrase "establishing a mailbox for the wireless device at the server" means "creating an address in memory of the server that can store information intended for delivery to the wireless device."  "The wireless device" means one verified in Step Two.

### Step Four: "placing a command"

Step Four recites, "without a request from the wireless device. . .placing a command for the wireless device in the mailbox at the server."   The phrase "placing a command for the wireless device in the mailbox at the server" means "storing at the server in the mailbox associated with the wireless device a code or signal that is intended to cause the wireless device to take or cease an action with respect to its functionality and other data for use by the wireless device."  Therefore, Step Three must be completed before Step Four can be performed.

### Step Five: "delivering the command"

Step Five recites, "without a request from the wireless device. . . delivering the command from the mailbox at the server to the wireless device."  Therefore, Step Four must be completed before Step Five can be performed.

Step Five recites that delivering is performed "by" doing three recited steps.  I will refer to these as sub-steps.  Performance of each sub-step according to its limitations is essential.  I will give you the Court's construction of the words and phrases that limit the sub-steps.

### Delivering sub-step A: "establishing a connection"

The first sub-step is:  "establishing a connection between the wireless device and the server."  This means "initiating wireless communication between a wireless device and the server."  Since the "delivering step" must be performed without a request from the wireless device, the "establishing a connection" sub-step must be initiated at the server.   There is a further limitation on this sub-step later in Claim 1.

11

**United States District Court**
For the Northern District of California

The last limitation of Claim 1 recites: "wherein the connection is established based on a threshold condition."  A "threshold condition" means "a predefined state of the server or the wireless device other than solely the elapsing of time."  Since the determination of whether a threshold condition is met or not met also must be done without a request from the wireless device, that determination must be made at the server before a connection between the server and the wireless device is established. The use of the phrase "connection is established" means that a connection must not only be initiated, but must be made by the server with the wireless device.  As the jury, it will be your responsibility to decide if the accused process involves a connection between the server that uses the RIM software and a Blackberry handheld device.

**Delivering sub-step B: "transmitting the contents of the mailbox"**

The phrase "transmitting the contents of the mailbox from the server to the wireless device" means "wirelessly sending from the server to the wireless device the contents of the mailbox."  The "establishing a connection" sub-step must be completed before the "transmitting the contents of the mailbox" sub-step can commence.

**Delivering sub-step C: "accepting the contents"**

The third sub-step of the delivering step is "accepting the contents of the mailbox at the wireless device."  As it is recited in the claim, this sub-step is subject to the limitation of being performed "without a request from the wireless device." However, because the Court has defined a request as one from the wireless device to the server and because this sub-step does not involve the server, the Court construes the "without a request from the wireless device" limitation as inapplicable to the "accepting" sub-step.  The "transmitting the contents of the mailbox " sub-step must be commenced before the "accepting the contents" sub-step can commence.

**Step Six: "executing the command"**

12

Step Six recites, "executing the command at the wireless device." As it is recited in the claim, this step is subject to the limitation of being performed "without a request from the wireless device." The "without a request from the wireless device" limitation to be inapplicable to the "executing" step.

**Claim 6:**

The method of claim 1, further comprising the step of:

      transmitting information relating to execution of the command at the

      wireless device from the wireless device to the server.

This is an additional step. All of the steps of Claim 1 must be performed before Claim 6 can be performed. As to the other dependent claims,[2] there are no other words or phrases that have been construed by the Court.

### BURDEN OF PROOF

---

[2] **Claim 21:**
The method of claim 1, wherein the command comprises enabling/disabling access of the wireless device to the server.

**Claim 22:**
The method of claim 1, wherein the command comprises enabling/disabling applications that may run on the wireless device.

**Claim 23:**
The method of claim 1, wherein the command comprises erasing all or part of contents of the wireless device.

**Claim 24:**
The method of claim 1, wherein the command comprises transmitting new programs and data to the wireless device.

**Claim 25:**
The method of claim 1, wherein the command comprises querying a current state of the wireless device.

**Claim 27:**
The method of claim 1, wherein the command comprises monitoring a location of the wireless device in the wireless network.

United States District Court

For the Northern District of California

Unless otherwise indicated below as to the defenses raised by RIM, Mformation has the burden of establishing that RIM induced or contributed to infringement by another company by a preponderance of the evidence. This means that Mformation has to produce evidence which, considered in light of all the facts, leads you to believe that what Mformation claims is more likely true than not true. To put it differently, if you were to imagine that the persuasiveness of evidence could be weighed on scales, and you could put evidence tending to prove, for example, the likelihood that RIM induced or contributed to infringement on one side of a scales and evidence tending to prove the likelihood that RIM did not induce or contribute to infringement on the other side of the scales, the evidence on the "likelihood of inducing infringement" side would have to make the scale tip in Mformation's favor. If you evaluate the evidence and you find that the evidence is evenly balanced between the two sides, your decision on inducing infringement must be in favor of RIM. If you evaluate the evidence and you decide that what Mformation claims is more likely true than not true, in other words, if the scale tips to Mformation's side–even slightly, then your decision should be in favor of Mformation.

## INFRINGEMENT

Based on what is covered by the Asserted Claims, the next series of steps involve your deciding whether Mformation has proved that RIM is liable to Mformation for contributory infringement or for inducing infringement.

As stated previously, Mformation alleges that RIM customers who use its Blackberry Enterprise Service software with Blackberry wireless devices infringe the Asserted Claims of the '917 Patent. Mformation alleges that RIM induces and contributes to its customer infringement by selling the Blackberry Enterprise Service software and Blackberry wire devices software. I will now give you instructions as to each of these theories of infringement.

United States District Court

For the Northern District of California

# CONTRIBUTORY PATENT INFRINGEMENT

Mformation contends that RIM has contributed to infringement by another. Contributory infringement may arise when someone supplies something that is used to infringe one or more of the patent claims.

In order for there to be contributory infringement by RIM, someone other than RIM must directly infringe the Asserted Claims of the '917 Patent; if there is no direct infringement by anyone, there can be no contributory infringement.

In order for you to find that RIM is liable for contributory infringement of one or more of the asserted claims of the '917 Patent, you must find that Mformation has proved by a preponderance of the evidence each of the following:

1.     On and after October 27, 2008, RIM manufactured and sold Blackberry Enterprise Server software and Blackberry wireless devices to one or more enterprise customers in the United States or imported and sold those products to one or more enterprise customers in the United States;

2.     On and after October 27, 2008, RIM enterprise customers directly infringed the asserted claim;

3.     The products supplied by RIM contained important components used in the infringing process;

4.     The components supplied by RIM are not common components suitable for non-infringing use;

5.     RIM supplied the components with knowledge of the '917 Patent and knowledge that the components were especially made or adapted for use in an infringing manner.

A company directly infringes a patented process by performing each and every step of the patented process. In deciding whether a company performs each step, you must compare the process used by the company with the process claimed in the Asserted Claim, using the Court's construction of the scope of the patent claim. If so,

United States District Court

For the Northern District of California

the accused method infringes the Asserted Claims.  If, however, the accused method does not have every requirement in the Asserted Claims, the accused method does not infringe the Asserted Claims.  Infringement is not avoided because it is possible to operate an accused method sometimes in a non-infringing mode.

A "common component suitable for non-infringing use" is a component that has uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

### INDUCING PATENT INFRINGEMENT

As an additional basis for liability, Mformation alleges that RIM is liable to it for actively inducing patent infringement.  In order for there to be inducement of infringement by RIM, someone other than RIM must directly infringe an asserted claim of the '917 Patent.  If there is no direct infringement by anyone, there can be no inducement.

In order for you to find that RIM is liable to Mformation for actively inducing infringement of one or more of the asserted claims of the '917 Patent, you must find that Mformation has proved by a preponderance of the evidence each of the following:

1. That on or after October 27, 2008, in the United States another company directly infringed the Asserted Claims, that is, the company used the process covered by the asserted claim;

2. That RIM intentionally took an action or series of actions that actually induced the direct infringement by the other company;

3. That at the time it acted, RIM was aware of the '917 Patent; and

4. That RIM knew or should have known that its actions would cause direct infringement by the other company.

If RIM did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it

16

took intentional acts to avoid learning the truth.  It is not enough that RIM was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that RIM took a risk that was substantial and unjustified.

If you find that RIM was aware of the patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, RIM cannot be liable for inducement.

**DEFENSES**

As I have previously stated, RIM contends that because its customers do not directly infringe the Asserted Claims, it does not contributorily infringe nor does it actively induce infringement.  In addition, RIM contends that even if its customers directly infringe an Asserted Claim, it is not liable to Mformation because the Asserted Claims are invalid.  I will give you instructions as to each defense.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to these defenses.  To prove invalidity of any patent claim, RIM must persuade you by clear and convincing evidence that the claim is invalid.

**STATUTORY BAR**

A patent claim is invalid if the patent application was not filed within the time required by law.  This is called a "statutory bar."  For a patent claim to be invalid by a statutory bar, all of its requirements must have been present in one prior art reference dated more than one year before the effective filing date.  Here is a list of ways RIM can show that the patent application was not timely filed:

1. If the claimed invention was already patented or described in a printed publication anywhere in the world before one year before the effective filing date.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

2. If the claimed invention was already being openly used in the United States before one year before the effective filing date and that use was

not primarily an experimental use (a) controlled by the inventor, and (b) to test whether the invention worked for its intended purpose;

3.    If a device or method using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before one year before the effective filing date.

For a claim to be invalid because of a statutory bar, all of the claimed requirements must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in a reference to one skilled in the field, or (3) must have been present in the reference, whether or not that was understood at the time. The disclosure in a reference does not have to be in the same words as the claim, but all the requirements must be there, either described in enough detail or necessarily implied, to enable someone of ordinary skill in the field of wireless device remote management looking at the reference to make and use the claimed invention.

### EFFECTIVE FILING DATE

The parties dispute the effective filing date, or what is also referred to as the priority date, in this case. Mformation filed a "provisional" patent application on December 5, 2000. You must determine whether one or more of the asserted claims of the '917 patent are sufficiently supported by the provisional application. Mformation contends that the asserted claims of the '917 patent are entitled to the filing date of the provisional application, while RIM contends that the asserted claims are not. Instead, RIM contends that the '917 patent should have a priority date of August 10, 2001, the date that the particular application that issued as the '917 patent was filed.

You must decide to which priority date you believe Mformation's patent claims are entitled. You must decide whether the disclosure of the provisional application reasonably conveys to one of ordinary skill in the field of technology of the '917 patent that the inventor had possession of the invention claimed in the '917 patent at

18

the time of filing the provisional application.  Mformation may rely on the filing date of its provisional application to establish the priority date if it proves that the application describes the invention, and does so in sufficient detail so that one skilled in the art can conclude that the inventor invented the claimed invention as of the filing date sought.  Adequate detail requires more than a generic statement of an invention's boundaries.  The provisional application must disclose all of the limitations of the asserted claims of the '917 patent in order for the '917 patent to have a priority date of December 5, 2000.

Mformation bears the burden of producing evidence that the '917 Patent is entitled to a priority date of December 5, 2000.  If you find that Mformation has produced such evidence, then RIM must prove to you by clear and convincing evidence that Mformation is not entitled to that priority date.

## ANTICIPATION

During this case, RIM has submitted prior art that was not considered by the Patent and Trademark Office during the prosecution of the '917 Patent.  RIM contends that such prior art invalidates certain claims of the '917 Patent.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the Patent and Trademark Office when it issued the '917 Patent.  Prior art that differs from the prior art considered by the Patent and Trademark Office may carry more weight than the prior art that was considered, and may make RIM's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

A patent claim is invalid if the claimed invention is not new. For the claim to be invalid because it is not new, all of its requirements must have existed in the use of a single system or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these systems, methods, publications or patents are called

"prior art references." If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of remote management of wireless devices looking at that one reference would be able to make and use the claimed invention.

In particular, RIM can show that a patent claim was not new if the claimed invention was already publicly known or publicly used by others in the United States before the effective filing to which you determine Mformation is entitled.

Public use includes any public use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.  To prevail on this defense, RIM must prove by clear and convincing evidence that the public demonstration met each of the limitations of the Asserted Claims and thus was an embodiment of the claimed invention.

### OBVIOUSNESS

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time of the effective filing date.  The Court, however, is charged with the responsibility of making the determination as to whether a patent claim was obvious based upon your determination of several factual questions.  In particular, a patent claim may be obvious if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the effective filing date.

First, you must decide the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

20

(1)    The levels of education and experience of persons working in the field;

(2)    The types of problems encountered in the field; and

(3)    The sophistication of the technology.

Second, you must decide the scope and content of the prior art.  Mformation and RIM disagree as to whether the Havinis Patent in combination with RemoteWare should be included in the prior art you use to decide the validity of the Asserted Claims of the '917 Patent.  In order to be considered as prior art to the '917 Patent, these references must be reasonably related to the claimed invention of that patent.  A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you must determine which, if any, of the following factors have been established by the evidence:

(1)    Commercial success of a product due to the merits of the claimed invention;

(2)    A long felt need for the solution provided by the claimed invention;

(3)    Unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)    Copying of the claimed invention by others;

(5)    Unexpected and superior results from the claimed invention;

(6)    Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)    Other evidence tending to show nonobviousness;

(8)    Independent invention of the claimed invention by others before or at

United States District Court

For the Northern District of California

1        about the same time as the named inventor thought of it, and;

2        (9)     Other evidence tending to show obviousness.

3        Although you should consider any evidence of these factors, the relevance and

4    importance of any of them to your decision on whether the claimed invention would

5    have been obvious is up to you.

6        As I have already instructed you, clear and convincing evidence means that if

7    you were to put the evidence on opposite sides of the scales, RIM, who has the burden

8    of proof to prevail on these defenses by clear and convincing evidence.

9                                   **DAMAGES**

10       I will instruct you about the measure of damages.  By instructing you on

11   damages I am not suggesting which party should win on any issue.  If you find that

12   RIM infringed any valid claim of the Asserted Claims of the '917 Patent, you must

13   then determine the amount of money damages to be awarded to Mformation to

14   compensate it for the infringement.

15       The amount of damages must be adequate to compensate Mformation for the

16   infringement.  A damages award should put Mformation in approximately the

17   financial position it would have been in had the infringement not occurred, but in no

18   event may the damages award be less than a reasonable royalty.  You should keep in

19   mind that the damages you award are meant to compensate the patent holder and not

20   to punish the infringer.

21       Mformation has the burden to persuade you of the amount of its damages.  You

22   should award only those damages that Mformation more likely than not suffered.

23   While Mformation is not required to prove its damages with mathematical precision, it

24   must prove them with reasonable certainty.  Mformation is not entitled to damages

25   that are remote or speculative.

26       Damages that Mformation may be awarded by you commence on October 27,

27   2008.

28                                       22

**REASONABLE ROYALTY**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between Mformation and RIM taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that Mformation and RIM would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

A royalty can be calculated in several different ways and it is for you to determine which way is the most appropriate based on the evidence you have heard. One way to calculate a royalty is to determine what is called an "ongoing royalty."  To calculate an ongoing royalty, you must first determine the "base," that is, the product on which the infringer is to pay. You then need to multiply the number of products by the "rate" that you find would have resulted from the hypothetical negotiation.  For example, if the rate is $1 per device, and the licensee sold 200 devices that are found to have infringed, then the royalty would be $200.

It is up to you, based on the evidence, to decide what type of royalty is appropriate in this case.

23

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CALCULATING DAMAGES IN CASES OF INDUCEMENT
OR CONTRIBUTORY INFRINGEMENT**

In order to recover damages for induced infringement, Mformation must either prove that the Blackberry Enterprise Service software versions 4.0 and higher, when used with Blackberry devices, necessarily infringe the Asserted Claims, or prove acts of direct infringement by others that were induced by RIM.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, Mformation must further prove the number of direct acts of infringement of the Asserted Claims, for example, by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.

In order to recover damages for contributory infringement, Mformation must either prove that the Blackberry Enterprise Service software versions 4.0 and higher, when used with Blackberry devices, necessarily infringe the Asserted Claims, or prove acts of direct infringement by others to which RIM made a substantial contribution.  Because the amount of damages for contributory infringement is limited by the number of instances of direct infringement, Mformation must further prove the number of direct acts of infringement of the Asserted Claims, for example, either by showing individual acts of direct infringement or by showing that a particular class of uses directly infringes.

**ARGUMENT OF COUNSEL**

I will now permit counsel for the parties to make their closing arguments.  Counsel for Mformation will make a closing argument, followed by the closing argument by counsel for RIM.  If Mformation's counsel does not use all the allotted time, counsel for Mformation will be permitted a rebuttal argument, after which I will have some brief additional instructions for you with respect to the conduct of your deliberations.  Remember, statements of the attorneys are not evidence.

[FOLLOWING CLOSING ARGUMENT]

## DUTY TO DELIBERATE

When you retire, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

During the course of your deliberations, you may take rest breaks or lunch breaks as you wish.  Since we will be standing by pending your deliberations, please send us a note as to what your schedule will be.  During any break, do not deliberate further upon the case.  Cease all deliberations until your foreperson has brought you back into session with all of you present.

## RETURN OF VERDICT

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form that will be given to you, sign and date it and advise the Courtroom Deputy or the marshal outside your door that you are ready to return to the courtroom.

**United States District Court**
For the Northern District of California

1

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you will find a form for that purpose included in the material sent into the jury room.  Any one of you may communicate with me by filling out the form.  Give the form to the Courtroom Deputy or the marshal outside your door and they will get it to me.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or orally here in open court.  Remember that you are not to tell anyone—including me— how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

Dated: July 6, 2012

_____
JAMES WARE
United States District Chief Judge