Linda S. DeBruin
(Admitted to this Court on September 27, 1991)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
linda.debruin@kirkland.com

Marc H. Cohen (CA Bar No. 168773)
KIRKLAND & ELLIS LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 859-7000
Facsimile: (650) 859-7500
marc.cohen@kirkland.com

Mark G. Matuschak (*pro hac vice*)
WILMERHALE
60 State Street
Boston, MA 02109
Telephone: (617) 526-6559
Facsimile: (617) 526-5000
mark.matuschak@wilmerhale.com

Seth P. Waxman (*pro hac vice* pending)
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: (202) 663-6800
Facsimile: (203) 663-6363
seth.waxman@wilmerhale.com

Andrew B. Grossman (CA Bar No. 211546)
WILMERHALE
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 443-5303
Facsimile: (213) 443-5400
andrew.grossman@wilmerhale.com

*Attorneys for Defendants and Counterclaim Plaintiffs*
RESEARCH IN MOTION LIMITED and
RESEARCH IN MOTION CORPORATION

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MFORMATION TECHNOLOGIES, INC., a Delaware corporation, | Case No. 5:08-CV-04990-JW |
| Plaintiff and Counterclaim Defendant, | Jury Trial Demanded |
| v. | **RIM'S MOTION FOR A NEW TRIAL** |
| RESEARCH IN MOTION LIMITED, a Canadian corporation AND | **HEARING REQUESTED** Date/Time: August 6, 2012 at 9:00 a.m. |
| RESEARCH IN MOTION CORPORATION, a Delaware corporation, | ██████████████████ |
| Defendants and Counterclaim Plaintiffs. | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARDS ..........................................................................................2

III.  ARGUMENT .........................................................................................................4

    A.    This Court Should Grant RIM A New Trial On Infringement. .......................4

          1.    Mformation Presented Testimony And Argument In Violation Of This Court's Claim Construction Rulings...........................................................4

          2.    RIM Was Prejudiced Due To Its Inability To Examine Witnesses Based On The Court's Final Claim Construction. ...............................................8

          3.    The Jury Verdict Is Against The Clear Weight Of The Evidence. ...................8

    B.    This Court Should Grant A New Trial On Invalidity. ...................................9

          1.    If This Court Does Not Grant JMOL, It Should Grant A New Trial Because Of The Irreconcilable Inconsistencies In The Jury Verdict On Anticipation.........................................................................................................9

          2.    Dr. Madisetti's Improper Testimony Regarding Invalidity Further Supports A New Trial On Invalidity.............................................................10

    C.    This Court Should Grant A New Trial On Damages. .................................10

          1.    An $8 Per Unit Royalty Rate Was Not Supported By The Evidence. ............11

          2.    The Jury Award Is Against The Clear Weight Of The Evidence. ..................13

          3.    This Court Improperly Excluded Evidence Relevant To Damages.................14

    D.    This Court Should Grant A New Trial Because The Issue Of Willfulness Was Not Properly Part Of The Case, And Evidence Regarding Willfulness Prejudiced And Confused The Jury. ............................................................15

    E.    This Court Should Grant A New Trial Because Mformation Prejudiced And Confused The Jury With Inflammatory Emails That Had No Relevance To Any Issue The Jury Had To Decide.............................................................17

          1.    The Prejudicial "Acquisition" Emails Should Not Have Been Admitted. ....................................................................................................18

          2.    The Prejudicial "Agent" Emails Should Not Have Been Admitted. .............19

    F.    This Court Should Grant A New Trial Because Mformation Prejudiced And Confused The Jury With Improper Testimony And Argument. ....................22

1.       Mformation Improperly Asked The Jury To "Send A Message." ..................22

2.       Mformation Improperly Argued Claim Construction In Closing. ..................23

3.       Mformation Questioned Mr. Lazaridis Regarding An Improper Topic. .........23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Acco Brands, Inc. v. ABA Locks Mfr. Co.,*
    501 F.3d 1307 (Fed. Cir. 2007)................................................................ 14

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,*
    466 F.3d 1000 (Fed. Cir. 2006)................................................................ 11

*Alejo Jimenez v Heyliger*,
    792 F. Supp. 910 (D. P.R. 1992)............................................................. 22

*Allied Chem. Corp. v. Daiflon,*
    449 U.S. 33 (1980)...................................................................................... 2

*Anglo-Am. Gen. Agents v. Jackson Nat. Life Ins. Co.,*
    83 F.R.D. 41 (N.D. Cal. 1979)............................................................ 8, 14

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
    69 F.3d 337 (9th Cir. 1995) ................................................................ 4, 22

*August Tech. Corp. v. Camtek, Ltd.,*
    655 F.3d 1278 (Fed. Cir. 2011)................................................................. 2

*Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.,*
    No. C 04-05385 JW, 2009 WL 8612367 (N.D. Cal. Sept. 23, 2009) (Ware, J.) ..................... 8

*Benna v. Reeder Flying Serv., Inc.,*
    578 F.2d 269 (9th Cir. 1978) ..................................................................... 3

*Berry v. Mission Grp. Kansas, Inc.,*
    463 Fed. Appx. 759 (10th Cir. 2012) ...................................................... 22

*Briese v. Tilley*, No. C 08-4233 MEJ,
    2010 WL 3749442 (N.D. Cal. Sept. 23, 2010) ................................. 19, 21

*Christopher v. Florida,*
    449 F.3d 1360 (11th Cir. 2006) ................................................................ 4

*Clanahan v. McFarland Unified Sch. Dist.,*
    No. CV F 05-0796, 2007 WL 2253597 (E.D. Cal. Aug. 3, 2007).................................. 22, 23

*Comaper Corp. v. Antec, Inc.,*
    596 F.3d 1343 (Fed. Cir. 2010)........................................................... 9, 10

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey,*
    95 F.3d 1422 (9th Cir. 1996) ................................................................... 11

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.,*
    818 F. Supp. 2d 1193 (E.D. Cal. 2011).............................................. 9, 10

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.,*
    No. 1:05-CV-1411-MLH-GSA, 2012 WL 604138 (E.D. Cal. Feb. 23, 2012) ......................... 9

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
　　64 F.3d 1553 (Fed. Cir. 1995) ....................................................................... 8

*Fort Howard Paper Co. v. Standard Havens, Inc.*,
　　119 F.R.D. 397 (E.D. Wis. 1988) (granting new trial),
　　*aff'd*, 901 F.2d 1373 (7th Cir. 1990) ............................................................. 3

*Freund v. Nycomed Amersham*,
　　347 F.3d 752 (9th Cir. 2003) ........................................................................ 3

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
　　318 F. Supp. 1116 (S.D.N.Y. 1970)......................................................... 14, 15

*Hanson v. Shell Oil Co.*,
　　541 F.2d 1352 (9th Cir. 1976) ............................................................. 3, 4, 15

*In re Seagate Tech.*,
　　497 F.3d 1360 (Fed. Cir. 2007) (*en banc*) .................................................. 16

*Juneau Square Corp. v. First Wis. Nat'l Bank*,
　　624 F.2d 798 (7th Cir. 1980) ........................................................................ 3

*Landes Const. Co. v. Royal Bank of Canada*,
　　833 F.2d 1365 (9th Cir. 1987) ........................................................... 3, 8, 9, 14

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*,
　　77 F. Supp. 2d 514 (D. Del. 1999)
　　*rev'd in part on other grounds*, 275 F.3d 1347 (Fed. Cir. 2001)......................... 4, 7

*Lucent Techs., Inc. v. Extreme Networks, Inc.*,
　　229 F.R.D. 459 (D. Del. 2005) ............................................................ 4, 7, 18

*Markman v. Westview Instruments, Inc.*,
　　52 F.3d 967 (Fed. Cir. 1995) (en banc),
　　*aff'd*, 517 U.S. 370 (1996) ........................................................................ 23

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
　　No. JKB-09-2657, 2011 WL 1045630 (D. Md. Mar. 17, 2011)........................... 16

*Molski v. M.J. Cable, Inc.*,
　　481 F.3d 724 (9th Cir. 2007) ........................................................................ 3

*Montgomery Ward & Co. v. Duncan*,
　　311 U.S. 243 (1940)..................................................................................... 3

*Murphy v. City of Long Beach*,
　　914 F.2d 183 (9th Cir. 1990) ..................................................................... 3, 8

*Oltz v. St. Peter's Cmty. Hosp.*,
　　861 F.2d 1440 (9th Cir. 1988) ............................................................ 17, 18, 19

*Oracle Am., Inc. v. Google, Inc.*,
　　No. C 10-03561 (WHA), 2012 WL 877125 (N.D. Cal Mar. 15, 2012)................... 15

*Persinger v. Norfolk & W. Ry. Co.*,
    920 F.2d 1185 (4th Cir. 1990) .................................................. 17, 18, 19

*Ruvalcaba v. City of Los Angeles*,
    64 F.3d 1323 (9th Cir. 1995) ............................................................ 15

*Sparshott v. Feld Entm't Inc.*,
    311 F.3d 425 (D.C. Cir. 2002) ........................................................... 3

*Tektronix, Inc. v. United States, et al.*,
    213 Ct. Cl. 257 (Ct. Claims 1977) .................................................... 15

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ......................................................... 10

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ........................................................ 11

## RULES

FED. R. CIV. P. 26(a)(2) ................................................................ 10

FED. R. CIV. P. 37(c)(1) ................................................................ 10

FED. R. CIV. P. 61 ........................................................................ 3

## TREATISES

11 CHARLES ALAN WRIGHT ET AL.,
    FEDERAL PRACTICE AND PROCEDURE § 2805 (3d ed. 1998) ................................. 15

JAMES WM. MOORE ET AL.,
    MOORE'S FEDERAL PRACTICE § 59.13(2)(b)(E) (3d ed. 1999)................................... 17, 18, 19

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 6, 2012 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James Ware at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, the Court will hear RIM's Motion for a New Trial.  This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; and the accompanying declaration of Meredith Zinanni.

## STATEMENT OF RELIEF REQUESTED

Research In Motion Limited and Research In Motion Corporation (collectively, "RIM") move under Federal Rule of Civil Procedure 59 for a new trial, in the alternative to RIM's Renewed Motion for Judgment as a Matter of Law ("Renewed JMOL Motion"), also filed today.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

As set forth in RIM's Renewed JMOL Motion, this Court should grant judgment as a matter of law to RIM.  However, for the reasons set forth below, in the alternative this Court should exercise its broad discretion to grant a new trial.

Throughout trial, Mformation presented evidence and argued to the jury that use of the accused products met the "establishing a connection" sub-step, and the further requirement that this "connection is established," by merely "initiating wireless communication," contravening the Court's construction of this claim limitation.  The Court clarified its construction of the "establishing a connection" sub-step in its Closing Instructions, which highlighted that Mformation's evidence was contrary to the Court's claim construction.  However, the timing of that clarification prejudiced RIM, because it did not have that clarification at its disposal when examining and cross-examining witnesses, such as Mformation's infringement expert.  Consequently, the jury was deprived of a fair basis to decide the infringement issue.  For these reasons, as well as the reasons set forth in RIM's Renewed JMOL Motion, a new trial on infringement is warranted.

A new trial on invalidity is also warranted.  The jury verdict on issues related to invalidity are irreconcilably inconsistent because the jury found that dependent claims 21-25 of the '917 patent

"existed in the use of a single system or method that predates the claimed invention," but did not find the same to be true of independent claim 1. If this verdict cannot be reconciled, this Court must grant a new trial. The jury's inconsistent verdict is likely a result of Dr. Madisetti's fractured and improper rebuttal testimony, which prevented the jury from hearing the actual evidence on the issue of invalidity.

The damages award by the jury is not supported by the evidence presented at trial, and is against the clear weight of the evidence. Moreover, evidence concerning the value of the asserted patent, which RIM would have used to rebut Mformation's damages claim, was erroneously excluded, resulting in substantial prejudice to RIM. For these reasons, as well as the reasons set forth in RIM's Renewed JMOL Motion, a new trial on infringement is warranted.

Finally, throughout the course of trial, the jury was exposed to inflammatory argument and evidence that necessarily influenced its decision-making, resulting in substantial prejudice to RIM. Mformation was permitted to argue and present evidence regarding willful infringement until this Court issued its Closing Instructions. Not only is the mere allegation of willful infringement prejudicial to RIM, but Mformation used its willful infringement claim as the basis for admitting irrelevant and improper evidence that distracted the jury from the real issues in the case. Additionally, inflammatory emails were admitted that had no relevance to any issue properly in the case because these emails did not relate to the '917 patent or product features covered by the '917 patent. These irrelevant emails and improper testimony, as well as Mformation's improper closing argument and the errors described above, permeated the proceeding and led to a trial that was unfair to RIM such that it should be granted a new trial on all issues.

## II. LEGAL STANDARDS

The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court."[1] *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980). "Appellate review of a new trial order . . . is exceedingly limited because of the broad discretion that trial judges possess in this area." *Juneau Square Corp. v. First Wis. Nat'l Bank*, 624 F.2d 798, 806

---

[1] Ninth Circuit law applies to the analysis of whether to grant a new trial. *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1281 (Fed. Cir. 2011).

(7th Cir. 1980); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003) (finding that "district court is most familiar with the context of the trial" and therefore enjoys "broad discretion with regard to a new trial motion"). A new trial may be granted where any error during trial affects the "substantial rights" of a party. FED. R. CIV. P. 61; *see Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 271 (9th Cir. 1978). "The trial judge is ultimately responsible for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a miscarriage of justice." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (affirming district court's new trial order).

On a motion for a new trial pursuant to Rule 59, the Court engages in a more searching evaluation of the trial record. The Court has "the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the jury verdict, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy*, 914 F.2d at 187; *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (same). The Court "can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). "If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial." *Id.* at 1371-72.

A new trial may be granted where the jury's verdict is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976) (internal citations omitted). Simply stated, "[i]f the district court believes that a fair trial has not been had, it is the inherent right of the court under Rule 59 to set aside a jury's verdict and order a new trial." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 119 F.R.D. 397, 407 (E.D. Wis. 1988) (granting new trial), *aff'd*, 901 F.2d 1373 (7th Cir. 1990); *see also Molski*, 481 F.3d at 729 (grounds for new trial include that "the trial was not fair to the party moving") (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)); *Sparshott v. Feld Entm't Inc.*, 311 F.3d 425, 433 (D.C. Cir. 2002) (same).

It is also well established that a new trial may be ordered as a result of improper argument by counsel, contrary to the Court's Orders. *E.g.*, *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) (affirming district court's grant of new trial based on violations of court's *in limine* rulings); *Lucent Techs., Inc. v. Extreme Networks, Inc.*, 229 F.R.D. 459, 462-63 (D. Del. 2005) (granting new trial in patent case for violations of court's rulings). Improper argument justifying a new trial includes argument contrary to the Court's rulings limiting the scope of trial. *See, e.g.*, *Christopher v. Florida*, 449 F.3d 1360, 1367 (11th Cir. 2006) (granting new trial for violations of court's summary judgment orders, "to protect the rights of [the moving party] and to *vindicate the authority of the court*").

## III.  ARGUMENT

### A.  This Court Should Grant RIM A New Trial On Infringement.

Because Mformation made misleading and improper arguments regarding the "establishing a connection" and "connection is established" limitations, and because this Court further construed claim terms after the close of evidence, a new trial on infringement is warranted. *See Hanson*, 541 F.2d at 1359.

#### 1.  Mformation Presented Testimony And Argument In Violation Of This Court's Claim Construction Rulings.

A party's improper argument and violation of court rulings at trial may undermine the fairness of the proceeding so as to warrant a new trial. *See, e.g.*, *Lucent Tech.*, 229 F.R.D. at 462-63 (granting patentee's motion for new trial on infringement where accused infringer violated court rulings); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 77 F. Supp. 2d 514, 547 (D. Del. 1999) (granting new trial on infringement where accused infringer urged jury to find non-infringement on legally erroneous basis), *rev'd in part on other grounds*, 275 F.3d 1347 (Fed. Cir. 2001). In this case, Mformation repeatedly presented testimony and argument that ignored or contradicted this Court's construction of the "establishing a connection" and "connection is established" limitations. These improper actions undermined the fairness of the proceedings, and entitle RIM to a new trial on the issue of infringement.

Prior to trial, this Court construed the term "establishing a connection between the wireless

device and the server" to mean "initiating wireless communication between a wireless device and the server." (Dkt. 800 at 4.) This Court further found that the order of performing the steps in claim 1 is important, holding that "the 'establishing a connection' sub-step must be completed before the 'transmitting the content[s] of the mailbox' sub-step can commence." (*Id.* at 6.) Throughout trial, Mformation presented evidence and argued to the jury that use of the accused products met the "establishing a connection" sub-step by merely "initiating wireless communication," disregarding the Court's construction that wireless communication must be initiated ***between the wireless device and the server*** before the "transmitting the contents of the mailbox" sub-step may begin. Indeed, Mformation even asked this Court to ignore its own claim construction regarding the order of steps in claim 1. (Tr. 126:25-128:8.)

Mformation's theory was that the accused products satisfy the "establishing a connection" sub-step when they: (1) prepare a GME message in the policy service portion of the Blackberry Enterprise Server ("BES"); and (2) determine in the router portion of the BES how to transmit the GME message (e.g., using a WiFi or cellular path):

> Q. All right. Now, let's talk a little bit more about what you say establishes a connection. You point to two things, I think, that you say establishes a connection. One is, you talk about packaging the command in the GME protocol, correct?
> A. Yes.
> Q. Okay. And that's done in the Policy Service or the dispatch or some combination of the two, correct?
> A. Yes.
> Q. And the second is when the router chooses WiFi or -- 4101 or 3101, right?
> A. Yes, sir.

(Tr. 1085:18-1086:4; *see also* Tr. 894:23-896:13.) Both of these actions occur entirely and exclusively within the BES. (*See, e.g.*, Tr. 1507:3-1508:22.) When these two actions are completed, no wireless communication between the server and the wireless device has occurred. (Tr. 1506:5-1508:22.)

On cross-examination, Mformation's expert, Dr. Madisetti, testified that the Court's construction only required "***initiating*** wireless communication" in order to complete the "establishing a connection" sub-step:

> Q. I'm just asking you, using the Court's construction, do you not have to complete the establishing step before -- ***doesn't completion of the establishing step require you to establish a connection?***

A.   **No, sir**.  The Court's construction requires that establishing a connection is initiating wireless communications.  ***The key is initiating***.  And that initiating step has to be completed before transmitting can commence.   And that is His Honor's construction.

(Tr. 1006:12-21 (emphasis added).)   Indeed, Dr. Madisetti testified that the "establishing a connection" limitation can be satisfied with a device that does not even exist, such as one that is broken into thousands of pieces at the bottom of the Grand Canyon:

Q.   So you believe you can establish a connection with a device that doesn't exist; is that right?
A.   ***Yes***, as per the Court's construction, your [sic] initiating wireless communications -- ***the key word is "initiating."***

(Tr. 1092:4-1093:16 (emphasis added).)

The Court's final constructions confirmed Mformation's "initiating" theory was meritless.  In its closing instructions, the Court instructed the jury that the "wherein the connection is established" requirement is a "further limitation" on the "establishing a connection" sub-step.  (Dkt. 1017 at 11.)  In particular, the Court decided as a matter of law that "[t]he use of the phrase 'connection is established' means that a connection ***must not only be initiated, but must be made*** by the server with the wireless device."  (*Id.* at 12 (emphasis added).)   Finally, the Court reiterated that the "establishing a connection" sub-step must be completed before the "transmitting the contents of the mailbox" sub-step can commence.  (*Id.*)   In other words, "under the Court's construction, a connection between the server and the wireless device ***must be established before*** transmission of a command is commenced."  (Dkt. 1032 at 2 (emphasis added).)

Dr. Madisetti's testimony at trial was directly contrary to the Court's final instructions that a "connection must be made."   However, even after the jury was charged with the Court's closing instructions, Mformation continued to argue a theory completely contrary to the Court's construction.   For example, Mformation argued at length in its closing argument that the accused RIM products perform the "establishing a connection" limitation merely because wireless communication is "initiated:"

An IT administrator places the "kill" command in the box. The "kill" command is just one of hundreds of commands, but obviously an important one.  The "kill" command is polled by the BlackBerry Policy Service and is packaged into a GME packet.  ***The moment polling is done, initiating wireless communication has begun***.

The GME packet is then compressed and encrypted.

Then the BES selects the cheapest communication path, least cost, either WiFi or BES, those are threshold conditions.

**The initiation is complete. The transmission can begin.** And when transmission begins, it goes over the WiFi or the cellular network.

(Tr. 2225:6-19 (emphasis added).) This was not a fleeting point, but one of Mformation's central themes. Indeed, Mformation's closing argument on its "initiating" theory spans over ten pages of the trial transcript. (Tr. 2216:22-2227:4.) Mformation persisted in distorting the Court's final claim constructions by making the misleading argument that "initiating" was all that was required to meet the "establishing a connection" limitation, and that the connection may be established *after* transmission has begun:

Remember what we talked about, how the device and the connection works. You enter the command, once the command is polled and the GME packaging begins, you have initiated the connection. ***Once you've checked the threshold conditions, you have completed initiating. That is establishing the connection step. That is not wherein the connection is established.*** What happens? You may use any networking technology and protocol. ***Then, transmission is completed. That is when the connection is established. That is what the Court instructed you.***

(Tr. 2300:13-24 (emphasis added).) Mformation went so far as to argue that the Court's closing instructions—requiring that a connection "must be made by the server with the wireless device" before transmitting—"doesn't matter." (Tr. 2301:5-13.) Mformation made this argument despite conceding during trial that there must be a connection established before transmission can occur. (Tr. 1265:19-22 ("THE COURT: And you -- do you accept that that condition of being connected has to be satisfied in the patent before the transmission? MR. THAKUR: We do, your Honor.").)

Not once, in all of its expert testimony or closing argument, did Mformation ever claim that a connection is actually made by the server with the wireless device in the accused RIM products, which is plainly required under the Court's construction. Instead, Mformation misleadingly suggested that mere initiation of a connection is enough to complete the "establishing" step, even though the Court rejected that idea as a matter of law. Mformation thus repeatedly offered testimony and argument that was distorted and directly contradicted the Court's claim construction rulings. This warrants a new trial on the issue of infringement. *See Lucent Tech.*, 229 F.R.D. at 462-63; *LNP Eng'g Plastics*, 77 F. Supp. 2d at 547.

## 2. RIM Was Prejudiced Due To Its Inability To Examine Witnesses Based On The Court's Final Claim Construction.

The Court issued its final constructions—which confirmed that Mformation was ignoring and distorting the relevant claim limitations—until after the close of evidence.  (Dkt. 1017 at 6-13.) Because RIM did not have the Court's final constructions at its disposal to examine witnesses, particularly Mformation's expert witness, the trial record is incomplete and the jury did not have the opportunity to fairly consider the issue of infringement.  This timing prejudiced RIM because it allowed Dr. Madisetti to maintain his subsequently-rejected theory that "the key is initiating" a connection, rather than making one.  As a result, at a minimum, the Court should grant a new trial on infringement so that the case can be tried from beginning to end based on the Court's final constructions.  *See Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C 04-05385 JW, 2009 WL 8612367, at *4-5 (N.D. Cal. Sept. 23, 2009) (Ware, J.) (granting motion for a new trial where "deficiencies or modifications [to claim constructions] deprived the jury of a fair basis for deciding the infringement issue") (citing *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1560 (Fed. Cir. 1995)).

## 3. The Jury Verdict Is Against The Clear Weight Of The Evidence.

The Court may order a new trial when it is left with the firm conviction that a mistake has been made or the verdict is against the clear weight of the evidence.  *Landes Const.*, 833 F.2d at 1371; *Murphy*, 914 F.2d at 187.  As set forth in Sections II.A and II.B of RIM's Renewed JMOL Motion and in RIM's Brief in Response to the Court's July 17, 2002 Order Requesting Further Briefing, the jury's verdict of infringement is not supported by substantial evidence in view of the properly construed claim limitations, and RIM should be granted judgment of non-infringement as a matter of law.  If this Court denies RIM's Renewed JMOL Motion, however, the Court may grant a motion for a new trial for the reasons set forth in RIM's Renewed JMOL Motion because the standard for granting a new trial is less stringent than that for granting JMOL.  *See Landes Const.*, 833 F.2d at 1371 (substantial evidence preventing court from granting JMOL "does not, however, prevent the court from granting a motion for a new trial"); *Anglo-Am. Gen. Agents v. Jackson Nat. Life Ins. Co.*, 83 F.R.D. 41, 43 (N.D. Cal. 1979) (the standard for granting a new trial under FED. R.

CIV. P. 59 "is not as strict as that for granting" judgment as a matter of law under FED. R. CIV. P. 50(b)). For all the reasons set forth in RIM's Renewed JMOL Motion, incorporated herein by reference, this Court should, in the alternative, grant RIM a new trial on infringement.

**B.      This Court Should Grant A New Trial On Invalidity.**

The evidence shows the jury made a mistake on the issue of invalidity, and thus a new trial is warranted. *Landes*, 833 F.2d at 1371-72 (if "the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.") (citations and internal quotations omitted).

**1.      If This Court Does Not Grant JMOL, It Should Grant A New Trial Because Of The Irreconcilable Inconsistencies In The Jury Verdict On Anticipation.**

The jury accepted RIM's contention on the "scope and content of the prior art," and found that dependent claims 21-25 of the '917 patent "existed in the use of a single system or method that predates the claimed invention," but did not find the same to be true of independent claim 1, from which claims 21-25 depend. (Dkt. 1026 at 7 and 9.) The verdict is irreconcilably inconsistent because independent claim 1 cannot be found valid while dependent claims 21-25 are invalid. *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1212 (E.D. Cal. 2011). For the reasons set forth in RIM's Renewed JMOL Motion on this ground and RIM's Brief in Response to the Court's July 17, 2012 Order Requesting Further Briefing, this Court should resolve the inconsistency in the jury's verdict by finding claim 1 invalid as a matter of law, in accordance with the weight of the evidence presented at trial. If, however, the Court finds that it cannot resolve the jury's inconsistent verdict by granting RIM's Renewed JMOL that claim 1 is invalid, then a new trial on invalidity is required. *See id.* at 1231; *see also Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05-CV-1411-MLH-GSA, 2012 WL 604138, at *14 (E.D. Cal. Feb. 23, 2012) (holding on re-trial on issues of invalidity by anticipation that the independent claim and five dependent claims were invalid as anticipated); *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1354-55 (Fed. Cir. 2010). Indeed, if the Court finds that a post-verdict JMOL—that could resolve inconsistencies in the jury's verdict—is denied because the evidence could support both inconsistent verdicts, the Court

"***must*** order a new trial."[2]  *Comaper*, 596 F.3d at 1350 (emphasis added).

### 2. Dr. Madisetti's Improper Testimony Regarding Invalidity Further Supports A New Trial On Invalidity.

Mformation repeatedly tried to elicit improper testimony from Dr. Madisetti regarding his invalidity opinions.  For example, Dr. Madisetti opined at trial that the "verifying the registration information at the server" limitation of claim 1 was performed by an administrator, not the server, in the RemoteWare system.  (Tr. 1995:11-14.)  But this was a brand new opinion, never before disclosed to RIM, and it should have been excluded on that basis.  FED. R. CIV. P. 26(a)(2); FED. R. CIV. P. 37(c)(1).  Dr. Madisetti repeatedly attempted to offer new opinions to rebut RIM's invalidity arguments on other claim limitations as well.  (*See* Tr. 1996:8-1998:16, 1998:17-2000:19, 2000:20-2002:6, 2005:1-2006:5, 2008:19-2010:22.)  While these opinions were excluded, the jury was still improperly exposed to opinions beyond the scope of Dr. Madisetti's expert report.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (improper expert testimony "cannot help but skew" the jury's factual findings).  This improper expert testimony, which likely skewed the jury's findings regarding whether the claims of the '917 patent "existed in the use of a single system or method that predates the claimed invention," is yet another reason to grant RIM a new trial on invalidity.  *Cf. id.* at 1321 (finding no abuse of discretion in granting a conditional new trial).

### C. This Court Should Grant A New Trial On Damages.

Under Ninth Circuit law governing motions for new trial, the Court may grant a new trial if the jury's damages verdict "is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."  *Del Monte Dunes at Monterey, Ltd. v. City of*

---

[2] In *Duhn Oil*, the jury found certain dependent claims invalid while simultaneously finding the underlying independent claim valid. 818 F. Supp. 2d at 1212.  The court stated that, because of this inconsistency, a new trial on invalidity (whether obviousness or anticipation) was warranted to the extent judgment as a matter of law on the issue is not granted.  *Id.* at 1221.  Similarly, in *Comaper*, the jury found three dependent claims obvious but did not find the underlying independent claims obvious.  596 F.3d at 1350.  The Federal Circuit held that the jury's verdict was irreconcilably inconsistent and granted a new trial.  *See id.* at 1355.  "[W]hen faced with inconsistent verdicts and the evidence would support either of the inconsistent verdicts, the district court must order a new trial."  *Id.* at 1350.

*Monterey,* 95 F.3d 1422, 1435 (9th Cir. 1996) (citations omitted). Because the damages verdict is not supported by the evidence, is based on speculation or guesswork, and is grossly excessive, this Court should grant a new trial on damages.[3] *See, e.g.,* *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.,* 609 F.3d 1308, 1322 (Fed. Cir. 2010) (granting a new trial on damages).

### 1. An $8 Per Unit Royalty Rate Was Not Supported By The Evidence.

The jury's $8.00 per unit royalty rate and $147 million damages award was not supported by the evidence. As a result, that rate is excessive and speculative and this Court should grant a new trial on damages.

*First*, none of the license agreements admitted into evidence at trial support an $8.00 per unit royalty rate or a total damages award of $147.2 million. RIM's agreements presented royalty rates ranging from ███████████████████████████████████████████████████ ███████████████████████ (DX4295, DX4303, DX4316, DX4317, DX4325, Tr. 1907:4-16, 1908:20-1909:8.) Many of the RIM agreements with ████████████████████████████████████ ██████████████████████████████████████████████████████████ (*Id.*; Tr. 1905:18-1906:25.) Once these agreements are appropriately adjusted to account for economic and technological differences, these agreements demonstrate that the royalty rate for a naked patent license, such as the patent license at issue in the hypothetical negotiation, would necessarily be much lower than ████████████████ (or lower) royalty rates presented in the RIM agreements.

Most of Mformation's agreements that had customer volumes comparable to RIM's also included much more than just a license to the '917 patent—they included fully functioning software, documentation and rights to more than just the '917 patent—yet presented royalty rates ranging from $0.20-$0.75 per unit and total license amounts in the range of $5.65 million - $7.415 million

---

[3] When reviewing damages in patent cases, the Federal Circuit applies regional circuit law to procedural issues and Federal Circuit law to substantive and procedural issues "pertaining to patent law." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1016 (Fed. Cir. 2006).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

($9.8 million to $13.1 million including maintenance and support).[4] (DX4256-57, DX4282, PX2201, PX2202.) Mformation's low volume software agreements, which also include software, documentation and broad intellectual property rights, present overall contract amounts from $2,400 to $198,041, not hundreds of millions of dollars.[5] (PX2196, PX2197, PX2198, PX2199, PX2200.) Such a low volume of customers would not be representative of the number of potential customers at issue in the hypothetical license between RIM and Mformation. None of these software agreements support an overall damages award of $147.2 million. And Mformation's damages expert testified that that there were no comparable license agreements relevant to his damages analysis (Tr. 1142:22-25), meaning the license agreements not only do not support the jury's high royalty rate, but also do not support Mformation's damages claim.

*Second*, the alleged invention of the '917 patent is simply one of many features found in the BlackBerry products. Mformation's own damages expert conceded that there were many valuable features in the BES and BlackBerry handhelds, including wireless email which he agreed was "very important." (Tr. 1196:7-1200:20, PX383, DX4172.) The wireless activation functionality that came out in BES v 4.0 that Mformation focused on is done only once when the BlackBerry is initially activated. (Tr. 1204:8-13.) Moreover, Mformation never presented any evidence showing that the value of RIM's products was driven by the technology in the '917 patent[6] or how RIM valued the technology compared to all of the other features in the products. In fact, this Court precluded Mr. Weinstein from doing so because he had not shown that the alleged technology in the '917

---

[4] To the extent Mformation attempts to rely on the Cingular software agreement (DX4281), such an agreement fails to present substantial evidence since it was neither executed by the parties nor presented a completed statement of work. (*Id.* at M3630043-44; Tr. 1955:13-1956:21.) Regardless, a single software agreement, which is different from a naked patent license, fails to present substantial evidence to support a jury verdict damages award.

[5] The GTSI agreement is a software agreement involving government customers. (PX2197.) The royalty rate for this agreement is grossly out of proportion with the royalty rate that would be at issue in the hypothetical negotiation. Furthermore, government sales are appropriately excluded from the royalty base, and thus government contracts are likewise irrelevant to the royalty rate determination. (Tr. 1913:18-1914:9.)

[6] The only evidence that Mformation did present was that customers were interested in certain wireless functionality, but those features had already been included in BES versions 3.5 and 3.6, which were not accused of infringement at trial. (DX4172.)

patent drove demand for RIM's products. (Dkt. 770 at 9.) Indeed, if RIM had to pay $8 per unit for each and every one of the features found in the RIM products, let alone the standards essential patents, the BlackBerry devices would be sold for tens of thousands of dollars. Therefore, the relative value of the technology does not support the jury's high royalty rate.

*Third*, Mr. Weinstein's $12.00 per unit royalty rate was based on unfounded assumptions about PX113.[7] (Tr. 1163:8-16, 1167:16-1168:1, 1168:24-25.) Mr. Weinstein assumed that the dollar amounts shown on page 8 of PX113 reflected the relative values of the listed technologies to RIM, and based his royalty calculation on the relative amount shown for the line that read "Mformation" as compared to the total amount shown. (Tr. 1159:9-1162:2, 1160:17-19.) But the author of the PX113 pricing chart testified that he did not prepare an exhaustive or accurate list of every component involved in BlackBerry Enterprise Software in creating this chart (Tr. 1853:15-21), the chart reflected what he understood companies were charging for their software in 2001 and not the value of the software to RIM (Tr. 1853:22-25), and he never verified that this chart accurately reflected any dollar amounts received by companies for their software (Tr. 1854:1-4). Additionally, this chart was prepared four years before the '917 patent issued, and by 2002 the author of PX113 realized his "pricing example [in PX113] was far removed from reality." (Tr. 1855:17-25)

### 2. The Jury Award Is Against The Clear Weight Of The Evidence.

The jury's damages verdict is against the clear weight of the evidence, at least in part because the jury found five claims were found in the prior art and two claims were not. Mformation offered no evidence of damages addressing this scenario, where fewer than all claims of the patent were found valid and infringed. As a result, the damages award was purely speculative as to the value of just claims 1 and 6.[8] Such a speculative award cannot stand and provides yet another basis for

---

[7] For a more detailed discussion of this issue, please see Section II.E of RIM's Renewed JMOL, incorporated herein by reference.

[8] Notably, this Court recognized that there was no evidence that would allow the jury to apportion damages with respect to the dependent claims:

> [T]here was never any apportion[ment] of damages between the dependent claim[s] such that the jury would have a way of deciding whether or not Claim 6 stands on its own as a—there was no expert testimony that says, Well assuming you do this, then let's give you a damage figure as to Claim 6. It would be pure speculation as to what,

(Continued…)

granting a new trial on damages. *See, e.g.*, *Acco Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007) (recognizing that a court set aside a damages verdict where there was no apportionment based on the type of accused product).

Additionally, RIM has moved for JMOL on the issue of damages because the evidence does not support the jury's $8.00 per unit damages award, Mformation did not present substantial evidence of use that would support the damages award, and Mformation failed to properly limit its damages calculation to account for indirect infringement only. For all the reasons set forth in RIM's Renewed JMOL Motion, incorporated herein by reference, this Court should, in the alternative, grant RIM a new trial on damages. *See Landes Const.*, 833 F.2d at 1371 (substantial evidence preventing court from granting JMOL "does not, however, prevent the court from granting a motion for a new trial"); *Anglo-Am. Gen. Agents*, 83 F.R.D. at 43.

### 3. This Court Improperly Excluded Evidence Relevant To Damages.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████ (DX848 at 1-2; DX943 at i-ii.) ██████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████ (DX943 at 16; DX955 at M1962195.) ████████████████████████████
██████████████████████████████████ (DX958, DX959, DX960.) Mformation moved *in limine* to exclude all evidence of these third-party valuations and the Court granted that motion. (Dkt. 797; Dkt. 903 at 7-8.) However, the Mesirow valuation, which is far below the amount the jury awarded to Mformation, is relevant to at least *Georgia-Pacific* factors 11 ("any evidence probative of the value of . . . use") and 15. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Moreover, to be relevant, the valuation does not need to assume that the patent has

if any, royalty would be paid as to a dependent claim. Unless your argument is that all claims are equal. And I don't believe there was any evidence that would allow the jury to come to that determination . . . it seems to me that it would be better to wait and see whether or not that inconsistency shows up before trying to deal with it.

(Tr. 2342:1-14.) Now that the jury has found less than all the claims valid and infringed, the inconsistency has arisen and should be cured by granting a new trial on damages.

been found to be valid and infringed, and may be performed after the alleged infringement began. *Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 (WHA), 2012 WL 877125, at \*3 (N.D. Cal Mar. 15, 2012) (recognizing that a valuation of the patent-in-suit dated four years after the hypothetical negotiation "can shed light on the reasonableness of the royalty estimates by the parties' experts").

Additionally, RIM sought to introduce DX853, a document that was created by Dr. Rakesh Kushwaha ████████████████████████████████████████████, during the direct examination of its damages expert Julie Davis. (Tr. 1872:25-1876:18; DX853.) The Court sustained Mformation's objection and excluded the document from trial. (*Id.*) However, DX853 shows that ████████████████████████████████████. Such research and/or development expenses are relevant to the *Georgia-Pacific* analysis. *Georgia-Pacific*, 318 F. Supp. at 1120; *see also Tektronix, Inc. v. United States, et al.*, 213 Ct. Cl. 257, 304-305 (Ct. Claims 1977) (research and engineering expenses are relevant to the reasonable royalty analysis).

RIM would have used this evidence to rebut Mformation's damages claim, and this evidence supports a much lower damages verdict. These evidentiary rulings were erroneous and caused substantial prejudice to RIM. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). RIM is therefore entitled to a new trial.

> **D.    This Court Should Grant A New Trial Because The Issue Of Willfulness Was Not Properly Part Of The Case, And Evidence Regarding Willfulness Prejudiced And Confused The Jury.**

The Court did not exclude Mformation's claim of willful infringement from the presentation of evidence, which permitted Mformation to present emotionally charged arguments and evidence. These arguments and evidence provide further grounds for a new trial. *See Ruvalcaba*, 64 F.3d at 1328; 11 Charles Alan Wright et al., Federal Practice and Procedure § 2805 (3d ed. 1998) (noting bases for new trial including "admission or rejection of evidence"). In light of the substantial prejudice to RIM, a new trial is warranted in order to prevent a "miscarriage of justice." *Hanson*, 541 F.2d at 1359 (internal citation omitted).

RIM made numerous attempts to resolve the willful infringement inquiry in RIM's favor before trial. (Dkt. 287, 794, 959, 985; Tr. 131:10-136:5.) In particular, RIM moved *in limine* to

preclude Mformation from arguing that RIM willfully infringed the '917 patent because those allegations would be prejudicial to RIM at trial and RIM's successful defenses demonstrated that it did not act despite an objectively high likelihood that its actions constituted infringement of a valid patent. (Dkt. 794 at 3; Dkt. 833 at 1-2.) RIM's motion was denied, and Mformation presented argument and evidence regarding willful infringement. (Dkt. 903 at 12-13.) However, the Court ultimately agreed with RIM's arguments and granted RIM's motion for judgment as a matter of law. (Dkt. 1017; Tr. 2056:23-24.) The bases for the Court's ruling all existed prior to trial. (*See* Tr. 2058:7-20.) RIM's motion *in limine* therefore should have been granted.

The admission of Mformation's arguments and evidence on willfulness was not harmless. While the Court eventually granted RIM's motion for judgment as a matter of law on willfulness after the close of evidence (*see generally* Tr. 2056:23-24; Dkt. 1017), the jury was exposed to inflammatory argument and evidence relating to willful infringement throughout trial that necessarily influenced its decision-making, resulting in substantial prejudice to RIM. The mere allegation that RIM willfully infringed is prejudicial because it accuses RIM of acting recklessly, and it likely affected the jury's consideration of other evidence at trial. *See In re Seagate Tech.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*) (willfulness "requires at least a showing of objective recklessness"); *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. JKB-09-2657, 2011 WL 1045630, at *3 (D. Md. Mar. 17, 2011) ("[A] jury that has been exposed to evidence and arguments that Defendants behaved badly may be less objective in deciding the issue of infringement.").

Additionally, allowing Mformation's baseless willfulness allegations to remain in the case resulted in the admission of prejudicial evidence and argument. As discussed further below, exhibits were shown to the jury that would not otherwise have been admitted, as the Court ruled that they were relevant solely to the issue of willfulness. (*See* Dkt. 903 at 11.) Mformation used its willful infringement allegations as the basis for eliciting other irrelevant and prejudicial testimony. (Tr. 1822:10-1825:25.) And Mformation put forth argument that was only relevant to willfulness, such as telling the jury during opening: "But you will see something else in this case. You will see Research In Motion's communications behind the scenes. You will see what they were doing and

what their intent was with respect to Mformation's product." (Tr. 181:15-18.) The Court's closing instructions about willfulness were not enough to alleviate the prejudice to RIM.[9] (Dkt. 1017 at 5.) The admission of such evidence and argument necessarily prejudiced RIM, and warrants granting RIM a new trial. *See Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1451-52 (9th Cir. 1988) (affirming district's court grant of new trial on damages where evidence proffered at trial was subsequently determined to have been misleading, if not outright false, and may have led to juror confusion); *Persinger v. Norfolk & W. Ry. Co.,* 920 F.2d 1185, 1189 (4th Cir. 1990) (affirming district court's decision to grant a new trial because of the prejudicial effect of evidence that it later determined had been improperly admitted during the trial); JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.13(2)(b)(E) (3d ed. 1999) ("The improper admission of evidence at trial may warrant the grant of a motion for new trial, particularly when the evidence improperly admitted is found to be prejudicial.").

### E. This Court Should Grant A New Trial Because Mformation Prejudiced And Confused The Jury With Inflammatory Emails That Had No Relevance To Any Issue The Jury Had To Decide.

Mformation relied on a series of inflammatory and irrelevant emails (PX185, PX328, PX329, PX331, PX332 and PX362) to distract the jury from the real issues in the case—whether RIM infringed the '917 patent and whether that patent is valid. Indeed, Mformation's counsel presented the jury with PX185, an email from RIM's CEO regarding Mformation's agent, during opening statements before he even introduced himself. (Tr. 161:22-163:12.) RIM repeatedly objected to these documents throughout discovery and trial, anticipating that Mformation would try to misuse these emails, and also sought to bifurcate the case so as to leave any issues involving the emails for after the jury's decision on infringement. (Dkt. 697, 788, 790.) Mformation convinced this Court that it did not seek to use the emails for an improper purpose, and the Court admitted them for limited use at trial. (Dkt. 903 at 11.) Over the course of the trial, however, it because clear that

---

[9] Even ***after*** the Court granted RIM's motion for judgment as a matter of law and excluded willfulness, Mformation's counsel continued to raise willfulness. (Tr. 2298:2-3 ("And I said: 'You may conclude that they willfully infringed, but that is not our burden.'"); Tr. 2212:5-7 (discussing PX362, previously found admissible solely on the issue of willfulness, stating "You saw RIM's senior executives, CEOs, write about the fact that they needed this invention").)

these emails were ***not*** relevant to any issue properly part of the case, and should not have been admitted. *See Oltz*, 861 F.2d at 1451-52; *Persinger,* 920 F.2d at 1189 (affirming district court's decision to grant a new trial because of the prejudicial effect of evidence that it later determined had been improperly admitted during the trial); MOORE'S FEDERAL PRACTICE § 59.13(2)(b)(E).

### 1. The Prejudicial "Acquisition" Emails Should Not Have Been Admitted.

RIM moved in its motion *in limine* #3 to exclude two email chains (PX328, PX329 and PX362) regarding a short-lived internal RIM discussion about possibly acquiring the entirety of Mformation because they are prejudicial and misleading. (Dkt. 790 at 2.) The Court agreed with RIM that these email chains "cannot constitute evidence of the obviousness or non-obviousness of the patent at issue" and "are not relevant to the issue of damages." (Dkt. 903 at 11.) However, the Court found they "may be relevant to the issue of willfulness, and thus finds that [Mformation] should be permitted to introduce them ***for that limited purpose***." (*Id.* (emphasis added).)

The Court ultimately granted RIM's motion for judgment as a matter of law on willfulness after the close of evidence, confirming that these exhibits had no relevance to the case (to the extent they were ever relevant to the issue of willfulness, a point RIM disputes). But the bell had already been rung. Mformation's counsel used PX362 in his opening, arguing that it evidenced what RIM thought of Mformation's product.[10] (Tr. 182:12-17 ("This e-mail shows you not only what they thought of Mformation's product. Remember I told you there's evidence that they needed it. Well, you heard from the words, from the mouth of the chief executive officer of the company, this critical requirement from our customer base."); Ex. 1,[11] Mformation's Opening Dems. at 91-95.) Once Mformation raised this argument, RIM was faced with a Catch-22: question Mr. Lazaridis, RIM's former co-CEO, about PX362 in its case in chief, or ignore it and risk having the jury consider it without an explanation from RIM. Understandably, RIM asked Mr. Lazaridis about it. (Tr. 1785:2-

---

[10] This was directly contrary to the Court's ruling, which stated "the emails do not speak to any of [Mformation's] products or inventions in particular." (Dkt. 903 at 11.) This is yet another reason to grant RIM a new trial. *See Lucent Tech.*, 229 F.R.D. at 462–63 (granting patentee's motion for new trial on infringement where accused infringer repeatedly violated court rulings).

[11] Exhibits cited in this brief as "Ex. __" can all be found in the Declaration Of Meredith Zinanni in Support of RIM's Motion for a New Trial, filed and submitted herewith.

1789:10.)  Mr. Lazaridis explained that PX362 was about Mformation's management team and engineers, not its product.  (Tr. 1786:14-1788:20.)  Mformation continued to try and obfuscate the issue in its cross-examination of Mr. Lazaridis about this document, however.  (Tr. 1802:15-1803:1.)  This Court's closing instruction regarding willful infringement was insufficient to cure the damage that had already been done by Mformation's presentation of PX362, an exhibit that never should have been admitted.  *See Briese v. Tilley*, No. C 08-4233 MEJ, 2010 WL 3749442, at *4 (N.D. Cal. Sept. 23, 2010) (noting that advantage of a motion *in limine* is to "avoid the obviously futile attempt to unring the bell").  RIM should be granted a new trial because of the prejudicial nature of these emails that should not have been admitted.  *See Oltz*, 861 F.2d at 1451-52; *Persinger*, 920 F.2d at 1189; MOORE'S FEDERAL PRACTICE § 59.13(2)(b)(E).

### 2. The Prejudicial "Agent" Emails Should Not Have Been Admitted.

RIM moved in its motion *in limine* #2 to exclude certain emails (PX185, PX331 and PX332) regarding Mformation's "agent" software because they are prejudicial and misleading.  (Dkt. 788 at 2.)  The Court denied RIM's motion, finding that the emails were relevant to secondary considerations of non-obviousness to the extent they included praise for the utility of the '917 patent and may be relevant to the issue of willfulness.  (Dkt. 903 at 10.)  However, the Court ultimately agreed that willfulness was not properly a part of this case (Dkt. 1017 at 5; Tr. 2056:23-24) and that PX185 did not have a nexus to any secondary consideration of non-obviousness (Tr. 1972:8-1974:12).[12]  By the time the Court made these rulings—which demonstrated that these prejudicial exhibits had no relevance to any issue properly in the case—it was too late to prevent prejudice to RIM because they had all been presented to the jury.  *See Briese*, 2010 WL 3749442, at *4 (noting that advantage of a motion *in limine* is to "avoid the obviously futile attempt to unring the bell").

Mformation repeatedly and misleadingly relied on these emails ostensibly (and, unfortunately, successfully) to unfairly prejudice and confuse the jury into believing RIM needed and used Mformation's patented technology.  Mformation began its case by telling the jury:  "In this case you will see evidence like this," and proceeded to present the jury with PX185.  (Tr. 161:24-25;

---

[12] Mformation did not even try to raise PX331 or PX332 (which is duplicative of PX185) in its rebuttal case regarding secondary considerations of non-obviousness.  (Tr. 1972:8-1974:12.)

Ex. 1, Mformation's Opening Dems. at 2-6.) Mformation then immediately proceeded to discuss PX185 in detail—all before even introducing himself or his client. (Tr. 161:24-163:12.) Mformation told the jury these emails showed that RIM was "interested in Mformation's invention; they wanted Mformation's invention; … when negotiations broke down, they included it in their products anyway." (Tr. 181:5-9.) But not once during this entire discussion did Mformation explain to the jury that the "agent" discussed in PX185, and for which the parties negotiated a potential license agreement, was not at issue in the case and was not the subject of Mformation's patent. Compounding this misdirection, Mformation went so far as to state that when the negotiations regarding the "agent" fell through, "[RIM] included the invention in their product, and they did it without obtaining a license from Mformation. ***That is why we are here today*.**" (Tr. 165:7-11 (emphasis added); *see also* Tr. 164:19-165:6.) Thus, from the very beginning of this case, Mformation used PX185 to focus on the "agent" instead of the '917 patent and whether or not it was valid and infringed, raising the serious possibility of juror confusion and prejudice to RIM.

On the second day of trial, this Court itself expressed unease with respect to how Mformation was focusing on the agent in its case-in-chief:

> [T]his should not be a case about RIM's use of technology other than the patent that is involved here, which is a method patent. It is not the agent, as I understand it, and I have found myself wondering why this jury should be taken through the story of the development of these companies and the sharing of technologies, and particularly of the agent, because as I understand it, the agent wasn't patented. It is not the subject of the patent.

(Tr. 352:20-353:4). The Court admonished Mformation that it must tie these emails and discussions about the "agent" back to the patent. (Tr. 353:5-21.) While Mformation told the Court it would do so (*see* Tr. 353:23-24), it never did (Tr. 1972:8-1974:12).

After raising PX185 in its opening statement, Mformation made no attempt to explain or have any witness explain how these emails were evidence of willful infringement or secondary considerations. RIM was presented with a dilemma in its case in chief as a result of Mformation's actions—affirmatively present testimony regarding an exhibit it believed had no relevance to the case, or allow Mformation's representations about PX185 to stand unrebutted. Not surprisingly, RIM chose to present testimony regarding PX185. (Tr. 1789:11-1791:15.) Mr. Lazaridis explained

that the "agent" was software that ran on a device, not a server like the patent describes, and that Mformation was considering letting RIM take control of its agent software as part of a licensing negotiation. (*Id.*) But during its cross-examination of Mr. Lazaridis, Mformation continued to focus on PX185's irrelevant discussion of Mformation's "agent": "At that time your intention was to ***take Mformation's agent*** and put it on the RIM system and call it RIM's over-the-air API?" (Tr. 1806:25-1807:4 (emphasis added).) Mformation's purpose in doing so was undoubtedly to repeat its improper implication that RIM stole Mformation's "agent," and was therefore liable to Mformation for patent infringement.

By the time of closing argument, this Court had resolved the issue of willful infringement (Tr. 2056:23-24) and sustained RIM's objection to using PX185 as evidence of any secondary consideration of non-obviousness (Tr. 1972:8-1974:12). Nonetheless, Mformation continued to reference PX185 in its closing argument. (Tr. 2237:20-2238:1 ("Senior most executives, including the former chief executive officer who you heard testify at trial, was writing e-mails about it. What were they saying? Mformation's approach is better than others. Mr. Lazaridis was instructing his employees to take control of Mformation's agent.").) Again, RIM was faced with a dilemma: the emails were no longer relevant and admissible evidence, but Mformation had just relied upon them as proof of RIM's liability. RIM had no option but to address the emails in its closing statement. (Tr. 2257:11-2258:7).

There can be no reasonable dispute that Mformation's reliance and portrayal of these emails was prejudicial and misleading. RIM's pretrial concerns about the damaging nature of the emails became a reality when the jury returned its verdict in favor of Mformation. *See Briese*, 2010 WL 3749442, at *4 (noting that advantage of a motion *in limine* is to "avoid the obviously futile attempt to unring the bell"). Mformation's ploy had worked; the jury undoubtedly used the emails to support its findings considering that, as other sections of this motion for new trial demonstrate, Mformation had introduced no other evidence to support the verdict. And yet, this Court had repeatedly recognized that the emails could **not** support an infringement finding. (Tr. 352:8-353:21, 354:5-12, 487:16-25, 489:5-10, 489:12-490:1.) For this reason alone, RIM should be granted a new trial, during which the emails are excluded from evidence. *See Clanahan v. McFarland Unified Sch.*

*Dist.*, No. CV F 05-0796, 2007 WL 2253597, at *5 (E.D. Cal. Aug. 3, 2007) ("A party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party thereby unfairly influencing its verdict.") (internal citations omitted); *see also Berry v. Mission Grp. Kansas, Inc.*, 463 Fed. Appx. 759, 769 (10th Cir. 2012) (unpublished) (agreeing with district court's concern that prejudicial emails with limited probative value could lead to juror confusion); *Alejo Jimenez v Heyliger*, 792 F. Supp. 910, 919-20 (D. P.R. 1992) (granting new trial where there had been an improper injection of irrelevant allegations about opposing party).

### F. This Court Should Grant A New Trial Because Mformation Prejudiced And Confused The Jury With Improper Testimony And Argument.

The record of this case includes numerous instances where Mformation presented attorney argument or elicited testimony that was improper. While each of these instances may be independent grounds for granting RIM a new trial, their cumulative effect further supports granting RIM a new trial. These improper actions "permeate[d] the proceeding," prejudicing RIM and misleading the jury such that a new trial is warranted. *See Anheuser-Busch, Inc.*, 69 F.3d at 346 (stating jury is "necessarily prejudiced" by improper conduct when it "permeates the proceeding").

#### 1. Mformation Improperly Asked The Jury To "Send A Message."

During his rebuttal closing argument, Mformation counsel improperly instructed the jury to "send a message" with a large damages award:

> But in this case, it's not just about Dr. Kushwaha and me. This is also about you. In this case, let's talk about what we all know. This is a big, significant patent case. And when you issue an award of $199 million, there will be reports across the country. And there will be other business companies that will hear this news. And you will have a chance to make a difference. Not make a difference just to Dr. Kushwaha's life but make a difference in the lives of those others whose patents are about to be infringed by those big companies. You can stop them and make them think twice before they do what they did to him.

(Tr. 2308:21-2309:7.) The Court's admonishment and instruction to the jury following this improper appeal was insufficient to cure the prejudice to RIM. (*See* Tr. 2309:21-2310:5.) RIM could not unring the bell of Mformation's improper argument to the jury, and thus should get a new trial. *See Clanahan*, 2007 WL 2253597, at *5 ("A party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party thereby unfairly influencing its verdict.").

## 2.  Mformation Improperly Argued Claim Construction In Closing.

During closing argument, Mformation referenced language from the '917 patent specification, suggesting that the specification can trump the claims or the Court's construction.

> The initiation is complete. The transmission can begin.  And when transmission begins, it goes over the WiFi or the cellular network. ***The patent expressly says you may utilize any networking technology and protocol***. I've shown you the cellular network.  Put the Relay in if it makes them feel better.  You can throw the mobile switching networks in.  There's billions of dollars of hardware that stand in the way going from the cellular port to the device.
> ***But the patent expressly says you may utilize any networking technology and protocol.  RIM misdirects you by saying that doesn't mean it satisfies Claim 1.*** Where in Claim 1 does it say you have to use a particular protocol?  Where in the Court's claim construction does the word "protocol" come into play?
> . . . .
> It is a three-step process, from the BES to the BlackBerry.  ***You may utilize any networking technology and protocol along the way***.

(Tr. 2225:17-2226:15 (emphasis added).)   Mformation repeated this improper line of argument numerous times during its closing.  (Tr. 2224:2, 2226:18-21, 2226:23-2227:4, 2299:25-2300:5, 2300:20-21.)  The Court allowed this line of argument provided Mformation did not "ask the jury to do anything unlawful."  (Tr. 2175:8-2176:4.)

Mformation's argument divested this Court of its exclusive responsibility to construe claim language.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  Indeed, Mformation relied upon ***the exact same material*** from the '917 patent specification during claim construction as it did in its closing argument.  (*See, e.g.*, Dkt. 713 at 5-6, 8.)  In violation of the Court's order (Tr. 2175:8-2176:4), Mformation suggested to the jury that it should eschew this Court's constructions in favor of a vague statement taken out of context from the '917 specification.  RIM was prejudiced by Mformation's improper argument to the jury, and should get a new trial.  *See Clanahan*, 2007 WL 2253597, at *5.

## 3.  Mformation Questioned Mr. Lazaridis Regarding An Improper Topic.

Mformation knowingly injected severe prejudice into the record by putting before the jury a highly prejudicial and entirely irrelevant settlement agreement.  During the cross-examination of Mr. Lazaridis, Mformation inquired into a settlement agreement RIM and Mr. Lazaridis entered into with the Ontario Securities Commission regarding RIM's practices regarding stock options.  (Tr. 1824:14-21.)   Mformation's intent in offering evidence of this settlement agreement was to

challenge the credibility of Mr. Lazaridis by showing he had been untruthful. (Tr. 1822:10-1823:7.) RIM objected to this line of questioning. (*Id.*) After the Court granted leave to establish a foundation, the Court requested a tender that Mformation's questioning would result in a statement that the witness had admittedly made a false statement in the past:

> THE COURT: Well, I'll allow you to ask the question as long as you tender to the Court you had a good faith belief in asking the question, that it bears on his making a statement under oath that he admits was wrong or words to that effect. So go ahead, if you believe in good faith that that is the tenor of the disclosure that you're about to ask him about.

(Tr. 1824:5-12.) However, Mformation did not elicit any testimony establishing that Mr. Lazaridis was untruthful or that there was any admission of wrongdoing. (Tr. 1824:14-1825:8.) The Court struck the testimony, but only after the jury had already heard it.

> MR. MATUSCHAK: I'm going to move to strike. This established what the Court was worried about. There was nothing that establishes untruthful - there was no statement that he establishes that he made that was incorrect. There was none of the foundation that your Honor just asked counsel to make.
> THE COURT: Well, sometimes settlements are made without admitting any -- you know, you settle. So I was expecting that he would ask a question where in the settlement he acknowledged untruthfulness. I didn't hear that. So the motion to strike is granted. The jury will disregard the testimony. But if you believe you can go back and establish that --
> MR. THAKUR: Your Honor, we'll let the evidence in the case speak for itself. But thank you.

(Tr. 1825:10-25.) Mformation knowingly and improperly raised in the jury's mind the prospect that Mr. Lazaridis had been untruthful, when it knew that the evidence would not bear that out. A new trial, in which Mformation is not permitted to wrongfully attempt to undermine the truthfulness and credibility of Mr. Lazaridis, is warranted.

## III. CONCLUSION

For the foregoing reasons, RIM respectfully requests that this Court GRANT RIM's Motion for a New Trial.

DATED: July 27, 2012

KIRKLAND & ELLIS LLP
Respectfully submitted,

/s/ *Linda S. DeBruin*
Linda S. DeBruin

Linda S. DeBruin
(Admitted to this Court on September 27, 1991)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
linda.debruin@kirkland.com

Marc H. Cohen (CA Bar No. 168773)
KIRKLAND & ELLIS LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone:     (650) 859-7000
Facsimile:     (650) 859-7500
marc.cohen@kirkland.com

Mark G. Matuschak (*pro hac vice*)
WILMERHALE
60 State Street
Boston, MA 02109
Telephone:     (617) 526-6559
Facsimile:     (617) 526-5000
mark.matuschak@wilmerhale.com

Seth P. Waxman (*pro hac vice* pending)
WILMERHALE
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone:  (202) 663-6800
Facsimile:   (203) 663-6363
seth.waxman@wilmerhale.com

Andrew B. Grossman (CA Bar No. 211546)
WILMERHALE
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone:     (213) 443-5303
Facsimile:     (213) 443-5400
andrew.grossman@wilmerhale.com

*Attorneys for Defendants and Counterclaim Plaintiffs*
Research In Motion Limited and Research In Motion Corporation

# CERTIFICATE OF SERVICE

I hereby certify on this July 27, 2012 that a copy of the foregoing was filed electronically through the Court's CM/ECF system, with notice of case activity automatically generated and sent electronically to all parties.


DATED: July 27, 2012                          KIRKLAND & ELLIS LLP
                                              Respectfully submitted,

                                              /s/ Kathleen Cawley
                                              Kathleen Cawley
                                              Legal Assistant

Linda S. DeBruin                              Mark G. Matuschak (*pro hac vice*)
(Admitted to this Court on September 27, 1991) WILMERHALE
KIRKLAND & ELLIS LLP                          60 State Street
300 North LaSalle                             Boston, MA  02109
Chicago, IL  60654                            Telephone:    (617) 526-6559
Telephone:    (312) 862-2000                  Facsimile:    (617) 526-5000
Facsimile:    (312) 862-2200                  mark.matuschak@wilmerhale.com
linda.debruin@kirkland.com

Marc H. Cohen (CA Bar No. 168773)             Seth P. Waxman (*pro hac vice* pending)
KIRKLAND & ELLIS LLP                          WILMERHALE
950 Page Mill Road                            1875 Pennsylvania Avenue, N.W.
Palo Alto, CA  94304                          Washington, DC  20006
Telephone:    (650) 859-7000                  Telephone:  (202) 663-6800
Facsimile:    (650) 859-7500                  Facsimile:  (203) 663-6363
marc.cohen@kirkland.com                       seth.waxman@wilmerhale.com

                                              Andrew B. Grossman (CA Bar No. 211546)
                                              WILMERHALE
                                              350 South Grand Avenue, Suite 2100
                                              Los Angeles, CA  90071
                                              Telephone:    (213) 443-5303
                                              Facsimile:    (213) 443-5400
                                              andrew.grossman@wilmerhale.com

*Attorneys for Defendants and Counterclaim Plaintiffs*
Research In Motion Limited and Research In Motion Corporation