UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MFORMATION TECHNOLOGIES, INC., | No. C-08-4990 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** |
| RESEARCH IN MOTION LIMITED, *et al.*, | **(Docket No. 1084)** |
| Defendants. | |
| _____/ | |

## I. INTRODUCTION

Mformation Technologies, Inc. brought this action against Research in Motion Limited and Research in Motion Corporation (collectively, "RIM") alleging, among other claims, infringement of claims 1, 6, 21-25, and 27 of U.S. Patent No. 6,970,917 ("the '917 Patent") by RIM's customers' use of its BlackBerry Enterprise Server ("BES") software in combination with its BlackBerry handheld devices. The '917 Patent details a method for remote management of wireless devices, one step of which requires delivering a command from a server to a wireless device by, among other sub-steps, "establishing a connection between the wireless device and the server." Mformation argued that use of RIM's BlackBerry device infringed upon this method. A trial was held before Judge Ware of this Court in June and July of this year resulting in a $147.2 million verdict in Mformation's favor, after which Judge Ware granted RIM's motion for judgment as a matter of law (JMOL). Subsequently, upon Judge Ware's resignation from this Court, the case assigned to the undersigned.

1    Mformation seeks a new trial pursuant to Rule 59 on the grounds that Judge Ware changed
2 the definition of the claim term "establishing a connection between the wireless device and the
3 server" following the trial. This change allegedly rendered the trial unfair because Mformation
4 purportedly presented its case at trial based on a different construction of the term "establishing a
5 connection" than that ultimately articulated upon by Judge Ware in granting RIM's JMOL motion.
6 RIM counters that the Court's construction of the term never changed and that RIM cannot claim
7 unfair reliance on the Court's construction.
8    For the reasons set forth below, Mformation's motion for a new trial is hereby **DENIED**.

## II.    FACTUAL & PROCEDURAL BACKGROUND

A.    Procedural Background

Prior to trial, the parties extensively litigated construction of the term "establishing a connection between a wireless device and the server," culminating in the Court's Third Claim Construction Order on May 10, 2012. *See* Mformation Brief Regarding Claim Construction of "Establishing a Connection Between the Wireless Device and the Server," Docket No. 713; RIM Brief Regarding Construction of Claim Phrase "Establishing a Connection Between the Wireless Device and the Server," Docket No. 714; Claim Construction Hearing Transcript, Docket No. 766; Third Claim Construction Order, Docket No. 800. In its Third Claim Construction Order, Judge Ware construed the term "establishing a connection between the wireless device and the server" to mean "initiating wireless communications between a wireless device and the server," and required that "the 'establishing a connection' sub-step . . . be completed before the 'transmitting the content of the mailbox' sub-step can commence." Third Claim Construction Order, Docket No. 800, at 3-6.

The case was tried to a jury from June 14, 2012 to July 6, 2012 and RIM filed a timely JMOL motion at the conclusion of Mformation's case-in-chief. *See* JMOL Mot., Docket No. 985; Second JMOL Mot., Docket No. 1003. In its closing instructions, Judge Ware instructed the jury that the "establishing a connection" sub-step means "initiating a wireless device and the server," but that "a connection must not only be initiated, but must be made by the server with the wireless device." Trial Tr., Docket No. 1014, at 2191:16-2192:10. The jury rendered a verdict in Mformation's favor, finding that RIM enterprise customers infringed on Claims 1, 6, 21-25, and 27,

and awarded Mformation $147.2 million in past damages. Third Am. Jury Verdict, Docket No. 1026.

On August 8, 2012, Judge Ware ruled in RIM's favor on its JMOL motion. Order Granting JMOL Mot., Docket No. 1074. The Court held that the '917 Patent was not infringed because the BES transmits commands without having established a connection with the Blackberry handheld device; it held its construction of the '917 Patent requires a connection be established *before* the server transmits commands. *Id.* at 7-8. In addition, the Court held that the '917 Patent was not infringed because the BES transmits commands after receiving a request from the handheld device when communication is taking place over Wifi, while its construction of the '917 Patent requires a connection be established *without* the request of a wireless device. *Id.*

Following the Court's JMOL ruling, Mformation filed this motion for new trial on September 5, 2012. Docket No. 1084. Subsequently, it filed a notice of appeal to the Federal Circuit on September 6, 2012. Docket No. 1087. The appeal has been deactivated pending the outcome of this motion for new trial and the concurrently filed motion to correct judgment. Order, Docket No. 1110; *see* Mot. to Correct Judgment, Docket No. 1085.

B.  Claim Construction of "Establishing a Connection"

As noted above, the Court and parties have articulated the claim term "establishing a connection between the wireless device and the server" at various points before, during, and after the trial.

1.  Before Trial

Before trial, the Court issued its Third Claim Construction Order on May 10, 2012, construing the term "establishing a connection between a wireless device and the server" to mean "initiating wireless communications between a wireless device and the server." Docket No. 800. The Court pointed out that "establishing a connection between a wireless device and the server" was one of three sub-steps of a "delivering the command," the other two sub-steps being "transmitting the contents of the mailbox from the server to the wireless device" and "accepting the contents of the mailbox at the wireless device." *Id.* In its Construction Order, the Court held that the "'establishing

3

1 a connection' sub-step must be completed before the 'transmitting the content of the mailbox' sub-
2 step can commence." *Id.*

### 2. During Trial

In its Opening Jury Instructions, the Court instructed the jury that "[t]he phrase 'establishing a connection between the wireless device and the server' means 'initiating wireless communication between a wireless device and the server.' The 'establishing a connection' sub-step must be completed before the 'transmitting the content of the mailbox' sub-step can commence." Opening Jury Instructions, Karson Decl., Docket No. 1092, Ex. 1, at 3 n.6.

When Mformation put on its case in chief, its expert witness, Vijay Madisetti, Ph.D., described how the "establishing a connection" sub-step was met in this case. *See* Mformation Mot. for New Trial, Docket No. 1084, at 3:7-4:11. This testimony took place on Friday, June 22, 2012 (*see* Trial Tr., Docket No. 993, at 883:3-898:7) and Tuesday, June 26, 2012 (*see* Trial Tr., Docket No. 1008, at 1109:25-1116:25). Dr. Madisetti testified that the sub-step of "initiating wireless communications" is completed after the BES creates a command with a GME header, which indicates the source and destination of the command, and chooses whether to send the command over a WiFi or cellular path. *See* Trial Tr., Docket No. 993, at 894:23-897:9. After this sub-step is completed, the contents are transmitted from the server. *See* Trial Tr., Docket No. 1008, at 1083:16-20.

The following day, on June 27, 2012, during argument on RIM's initial JMOL motion after the close of Mformation's evidence, Judge Ware discussed the meaning of the "establishing a connection" sub-step with Mformation's counsel, pointing out that "there is a difference between *initiating* a connection . . . and the connection being *established* . . . ." Trial Tr., Docket No. 1009, at 1265:8-10 (emphasis added). When asked if counsel was "at this point accepting the notion that in order to practice this patent, a connection does have to come into existence" and "[i]t has to move beyond the initiating to the point of actually having a connection," counsel for Mformation responded that "we concede that" and, later, that "[we] accept that that condition of being connected has to be satisfied in the patent before the transmission[.]" Trial Tr., Docket No. 1009, at 1265:12-

United States District Court
For the Northern District of California

4

22. Mformation did not seek to reopen its case-in-chief in order to address the Court's refinement of the "establishing a connection" sub-step.

Following argument on RIM's JMOL motion (which the Court took under submission), Mformation again called Dr. Madisetti to the witness stand on July 3, 2012, this time for rebuttal of RIM's invalidity defense. Trial Tr., Docket No. 1012, at 1976:16-2034:25. Here, Dr. Madisetti reiterated that "the Court's construction for establishing a connection was initiating a wireless connection." *See id.* at 1982:23-1983:9. He then went on to explain how this step worked, repeatedly discussing the *initiation* of wireless communication. *See id.* at 1983:12-1984:11.

On July 5, 2012, in the parties' discussion of the draft jury instructions prepared by the Court, they addressed the meaning of the "establishing a connection" sub-step at length. *See* Trial Tr., Docket No. 1013, at 2087:3-102:21. Although the draft jury instructions are not a part of the record, based on the parties' discussion, it is clear that the Court referred to possible language that "a connection must not only be initiated, but must be made by the server with the wireless device." *See id.* Judge Ware proposed that he would "try the language that [he] just mouthed for [himself], even though sometimes what goes through [his] brain never makes it to paper; hence, the objections you might have after that." *Id.* at 2102:18-21. The next day on July 6, 2012, RIM filed responses and objections to the Court's draft closing instructions, indicating that the Court issued draft closing instructions at 6:00pm on July 5, 2012. *See* RIM's Resps. and Objs. to the Ct.'s Draft Closing Instructions, Docket No. 1005, at 2:1-2; Notice of Electronic Filing, Docket No. 1005. Mformation, on the other hand, did *not* file objections to the Court's draft closing instructions.

In its closing jury instructions on July 6, 2012, Judge Ware instructed the jury that "'establishing a connection between the wireless device and the server'" means "'initiating wireless communication between a wireless device and the server.'" Trial Tr., Docket No. 1014, at 2191:16-19. The Court went on to note that "[t]he use of the phrase 'connection is established' means that a connection must not only be initiated, but must be made by the server with the wireless device." Trial Tr., Docket No. 1014, at 2192:7-10. Again, Mformation voiced no objection. Notwithstanding this instruction, the jury found in Mformation's favor on July 13, 2012. *See* Third Am. Jury Verdict, Docket No. 1026.

5

3. <u>After Trial</u>

Following the jury's return of its verdict, Judge Ware requested further briefing on RIM's JMOL motion on July 17, 2012. The Court specifically asked the parties to point to evidence showing that a command is transmitted from the BES to the BlackBerry handheld device *after* a connection has been established, and stated that, "a connection must be made by the server with the wireless device" before transmission of a command is commenced. Order Requesting Further Briefing, Docket No. 1032.

Judge Ware granted RIM's JMOL motion on August 8, 2012, finding that Dr. Madisetti's opinions regarding the "establishing a connection" sub-step were irreconcilable with both the plain language of the claim and the Court's construction of the claim. Order Granting JMOL, Docket No. 1074, at 5. The Court held that "the connection had to be established before the commencement of transmission of a command from the server to the wireless device" and rejected both "the legal conclusion expressed by Dr. Madisetti and advocated by Mformation that no connection needs to be established between the server and the wireless device" and "the argument that initiating of a communication alone is sufficient to establish a connection." *Id.* at 4-6. As the undisputed evidence demonstrated that the BES sends commands through a cellular port *without having a connection* between the BES and a Blackberry handheld device, the Court ruled against Mformation on the issue of infringement. *Id.* at 6. The Court went on to also rule against Mformation on the issue of infringement with respect to establishing a connection over WiFi without a request from the wireless device. *See id.* at 6-8.

Mformation's motion for new trial ensued and was assigned to the undersigned.

### III. DISCUSSION

A. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 59(a), "[a] court may, on motion, grant a new trial to all or some of the issues – and to any party – . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). On motions for new trial in patent infringement claims, the law of the regional circuit governs. *Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1323 (Fed. Cir. 2003). The

1 Ninth Circuit has specifically delineated the grounds on which a motion for new trial may be
2 granted, holding that

> Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Rather, the court is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving. [The Ninth Circuit has] held that the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal citations, quotation marks, and alterations omitted). "'Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)).

Here, Plaintiff argues that the Court changed its construction of the "establishing a connection" sub-step after Plaintiff had already presented its case-in-chief, prejudicing Plaintiff by depriving it of the ability to present evidence, including fact and expert testimony, to prove that it met the Court's final construction. Mformation argues that the change in construction was unfair, and thus it is entitled to a new trial. However, Plaintiff does not contest the merits of the Court's final construction.

While case law does not specifically define "fairness" pursuant to *Molski*, it does illustrate fact patterns in which courts have and have not found a new trial to be merited based on unfairness to a party. For example, in *Exxon v. Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1560 (Fed. Cir. 1995), the Federal Circuit held that a new trial was not merited where, despite the trial court having issued an incorrect claim construction after the close of evidence, the party seeking a new trial had notice of the correct claim construction, as the opposing party had sought a similar construction throughout trial; yet the party seeking relief chose not to argue or seek to prove that it met the correct construction. On the other hand, this court held in *Avago Techs. Gen. IP PTE Ltd. V. Elan Microelectronics Corp.*, No. 04-5385 JW, 2009 WL 8612367 at *4 (N.D. Cal. Sept. 23, 2009), that a new trial was justified where "the number and significance of the claim terms undefined,

1  defined after key testimony, and . . . poorly defined allowed prejudicial error to creep into the trial
2  process such that substantial justice was not done."

B. Construction of "Establishing a Connection"

Despite the Court's refinement of the construction of the term "establishing a connection" during and after trial subsequent to its Third Claim Construction Order, the core construction of that term did not substantially change between the Third Claim Construction Order and its grant of JMOL after the trial.

As noted above, the Court's May 10, 2012 Third Claim Construction Order construed the term "establishing a connection" to mean "initiating wireless communications between a wireless device and the server." *See* Third Claim Construction Order, Docket No. 800. That construction was expansive enough to encompass the Court's later elaboration "reject[ing] the argument that *initiating* of a communication alone is sufficient . . . ." Order Granting JMOL, Docket No. 1074 (emphasis added). The definitions were not inconsistent.

The Court so concludes for several reasons. First, the Third Claim Construction Order defined the term "establishing a connection between a wireless device and the server" to mean "initiating wireless communications *between* a wireless device and the server," which must take place *before* "transmitting the content of the mailbox." Third Claim Construction Order, Docket No. 800 (emphasis added). Use of the word "between" the wireless device and the server implies the connection must be established or made rather than merely initiated. The interpretation urged by Mformation would be more consonant with a claim construction defining "establishing a connection" as "initiating wireless communications *from* the server *to* a wireless device." But the Third Claim Construction Order did not render such a construction. Moreover, the fact that the connection sub-step must take place *before* "transmitting the content of the mailbox" according to the Order also tends to suggest that connection between both the server and the wireless device must be made or completed before transmission takes place.

Thus, on its face, the Court's initial claim construction and its later elaboration of the term "establishing a connection" in granting JMOL were not clearly inconsistent with and did not constitute a reversal in the Court's ultimate construction of the term.

8

C.    Concession of Court's Clarification at and After Trial

That the initial and later articulations of the construction were consonant is underscored by the fact that Mformation conceded to the Court's later construction at trial. Following Mformation's case-in-chief, and the day after Mformation's expert witness testified as to the "establishing a connection" sub-step, the Court took pains to clarify that "there is a difference between initiating a connection . . . and the connection being established" and that "in order to practice this patent, a connection does have to come into existence" and "[i]t has to move beyond the initiating to the point of actually having a connection . . . ." Trial Tr., Docket No. 1009, at 1265:8-10, 1265:13-16. As noted above, counsel for Mformation admitted that "we concede that" and it did "accept that that condition of being connected has to be satisfied in the patent before the transmission."[1] *Id.* at 1265:17, 1265:19-22.

Faced with the transcript containing counsel's own words, Mformation now argues that its counsel's admissions were, in fact, not admissions at all, but rather were premised on the assumption that completion of the "establishing a connection" sub-step only required completion of "initiating wireless communication between a wireless device and the server." Yet, this characterization squarely contradicts counsel's clear concession at trial when counsel agreed that the connection has to move *beyond initiating* to the point of actually having a connection. *See id.* at 1265:13-17.

Furthermore, when the Court submitted its draft closing instructions on July 5, 2012, the day before closing instructions were to be read to the jury, Mformation did not file any objections, despite the fact that these closing instructions stated that "[t]he use of the phrase 'connection is established' means that a connection must not only be initiated, but must be made by the server with the wireless device." Trial Tr., Docket No. 1014, at 2192:7-10. Mformation had the opportunity to file objections, as RIM did on the morning of July 6, 2012, but it failed to do so. Nor did it voice any objections when the instruction was read to the jury. Furthermore, even in opposing RIM's

---

[1] Conversely, Mformation argues that RIM conceded that the meaning of the claim had changed over time in its own motion for a new trial. Mformation's Reply Brief in Support of Its Mot. for a New Trial, Docket No. 1104, at 1-2. However, RIM's argument is not that the claim construction changed, but rather that it did not have the Court's clarifying language with which to examine witnesses, in particular Mformation's expert witness, thereby rendering the trial unfair. *See* RIM's Mot. for a New Trial, Docket No. 1043, at 8.

1  post-trial motion for JMOL, Mformation did not argue that the closing instructions were erroneous.
2  *See* Mformation's Brief in Resp. to Issues Raised During Aug. 6, 2012 Hearing, Docket No. 1073, at
3  2-4.
4      At the hearing in the instant motion, counsel for Mformation abandoned its argument that the
5  Court changed its claim construction by requiring that the connection be "established" rather than
6  merely "initiated," as the Court indicated in discussing RIM's JMOL motion at trial and in
7  instructing the jury. Instead, Mformation now argues that the Court changed the definition in
8  granting the JMOL *after* trial by requiring that the connection be "made" rather than "established."
9  Not only is this argument newly raised, as it was not advanced in its brief in support of the instant
10 motion (*see* Mot. for New Trial, Docket No. 1084, at 4-7; Mformation's Reply Br., Docket No.
11 1104, at 3:3-16), Mformation fails to explain the material difference between "made" and
12 "established." The gist of both words in this context conveys the central point of Judge Ware's
13 ruling that the "establishing a connection" sub-step must be *completed* (*i.e.*, made or connected)
14 before the "transmitting the content of the mailbox" sub-step takes place. *See* Trial Tr., Docket No.
15 989, at 127:23-128:8.

16 D.    <u>Not Misled</u>

17     Even if this Court were to conclude Judge Ware's ultimate elaboration of "establishing a
18 connection" did in fact materially differ from the Third Claim Construction Order, Mformation was
19 not misled. Instead, Mformation chose to bet on *its* interpretation of the Third Claim Construction
20 Order which permitted mere initiation of a connection between the server and the mobile device to
21 satisfy the connection sub-step. For the reasons stated above, this interpretation is not the only
22 permissible or reasonable interpretation of the construction set forth in the Third Claim Construction
23 Order; that construction was broad enough to encompass the refinement articulated by the Court
24 during and after trial. Hence, any prejudice suffered by Mformation was of its own making – it
25 relied on its expert's narrow reading of the Court's Third Claim Construction Order. *Cf. Exxon,*
26 *supra,* 64 F.3d at 1560 (assigned party had sufficient notice of differing claim construction.
27 Mformation could have, but chose not to, present its case in a manner which would have accounted
28

for the possible alternative interpretation ultimately provided by the Court in instructing the jury and in granting the JMOL.

This case stands in contrast to *Avago Techs. Gen. IP PTE Ltd. V. Elan Microelectronics Corp.*, No. 04-5385 JW, 2009 WL 8612367 (N.D. Cal. Sept. 23, 2009), where the court granted plaintiff's motion for a new trial. In *Avago*, a pre-trial claim construction order defined one of the claims at issue as "a device that executes an algorithm which determines a surface shape by plotting the multiple correlation values and that blocks the transmission of motion data to the computer system if the result of the algorithm is that the surface shape is not a suitable curvature." *Id.* at *2. Over the course of the trial, the court determined that its construction was misleading, and thus modified it in its closing jury instructions by substituting "calculating" for "plotting" and "suitable curvature" for "selected curvature." *Id.* In its opinion granting plaintiff's motion for a new trial, the court discussed not only these changes in claim construction, but also a number of other ill-defined claim terms, concluding that "the number and significance of the claim terms undefined, defined after key testimony, and that were poorly defined allowed prejudicial error to creep into the trial process such that substantial justice was not done." *Avago*, 2009 WL 8612367 at *2-4. The court found that "modifications to its claim construction deprived Plaintiffs of an ability to offer evidence of infringement and made the trial unfair." *Id.* at *3. In the instant case, unlike in *Avago*, Mformation was not effectively prevented from presenting relevant evidence to the jury by the Court's action.

Indeed, following argument on RIM's initial JMOL motion at trial, in which the Court refined its construction of the "establishing a connection" sub-step, as previously noted, Mformation did not request to re-open its case-in-chief to present additional evidence in line with the Court's clarification. In fact, it presented the same expert witness that had testified as to the "establishing a connection" sub-step in its case in chief, Dr. Madisetti, in rebuttal to RIM's invalidity defense. Rather than attempting to respond to the Court's refinement of the construction, Mformation doubled down on its narrow interpretation of the court's claim construction; its expert witness repeatedly used the term "initiating a connection," ignoring the Court's clarification that the connection must be completed. *See* Trial Tr., Docket No. 1012, at 1976:16-2034:25.

11

E.     No Prejudice

More fundamentally, even if there were a material change in construction, Mformation has not identified any substantial new evidence it would have elicited at trial had it been presented with Judge Ware's ultimate construction before completing its case-in-chief. It therefore suffered no prejudice. The parties agree that the way in which the accused products operate is undisputed.

Indeed, following trial, in the hearing on RIM's renewed JMOL motion, Mformation asserted the evidence it presented at trial satisfied the Court's claim construction given to the jury. In particular, it had presented trial evidence that a "command is . . . placed into a header using the GME protocol," that "[t]here is a destination address; there's a sender address; and there is the payload," and that "[t]he wireless communication is in fact initiating between the BlackBerry and the BES before the transmitting the contents of the mailbox takes place." Hearing Tr., Docket No. 1071, at 25:9-19, 26:15-17. In a brief submitted following oral argument, Mformation further argued that, "[b]y packaging the command with the end-to-end GME protocol, which includes in its header information about the source and destination of the command, and the payload (the command), the server makes a connection with the device. After this packaging is completed and the BES has selected a communication path, the server has made the connection with the wireless device before transmission commences." Mformation's Brief in Resp. to Issues Raised During Aug. 6, 2012 Hearing, Docket No. 1073, at 3:8-12. Mformation confirmed that there was no dispute regarding how the device operates. Hearing Tr., Docket No. 1071, at 32:6-17, 33:5-12.

Mformation now argues that, if afforded a new trial, it would submit "additional testimony" that "a connection is established by the BES with a BlackBerry device by, among other steps, the BES packaging the command in a payload, creating a header for that payload . . . and checking one or more threshold conditions" and that "the header information in the packaged command, which includes information about the destination of the command, leaves the BES prior to the command itself leaving the BES." Mformation Mot. for New Trial, Docket No. 1084, at 6:25-7:6. However, this testimony is substantially similar to the testimony Mformation concedes was presented at trial and previously highlighted in its argument before Judge Ware.

Indeed, at the hearing herein, Mformation conceded the evidence it now asserts it would present in a new trial was in fact presented at the first trial. Instead, Mformation now contends it would have presented a more nuanced characterization of that evidence. But that is argument, not evidence, and in any event, would have made no difference. The jury found in *favor* of Mformation. It was Judge Ware who rejected Mformation's argument in granting the JMOL; yet Mformation does not contend it was not able to articulate its position before Judge Ware. It did, but to no avail.

In sum, Mformation has failed to establish a "miscarriage of justice," required to warrant a new trial. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (stating grounds for new trial, including unfairness and miscarriage of justice). Like in *Exxon v. Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1560 (Fed. Cir. 1995), Plaintiff was on fair notice of the meaning of the Court's claim construction throughout trial, given the breadth of the Court's initial construction and its opportunity to object to the Court's subsequent elaboration on that construction. Mformation was not denied by the Court the opportunity to present relevant evidence. *See also Mobile Hi-Tech Wheels v. CIA Wheel Group*, 514 F. Supp. 2d 1172, 1189-90 (C.D. Cal. 2007) (delay in claim construction did not constitute error warranting a new trial, because defendant, "failed to show that substantial rights were violated because no prejudice resulted from the delay in claim construction.").

*Fort Howard Paper Co. v. Standard Havens, Inc.*, 119 F.R.D. 397, 407 (E.D. Wis. 1988), cited by Mformation, is inapposite. There, the court granted a new trial pursuant to Rule 59 on the basis that special verdict questions on hindrance and misuse were improperly pled by the defendant, and thus improperly placed before the jury. The court determined that "the trial proceeded with [defendant] relying on their use, [plaintiff] scurrying to meet their presentation, and the Court sitting in befuddlement as to what issues were actually in dispute." *Id.* Here, unlike in *Fort Howard*, the case does not involve entire defenses that were improperly placed before the jury, but rather a claim construction clarification that did not prejudice Mformation or prevent it from prevailing in front of the jury.

///

///

## IV. CONCLUSION

For the foregoing reasons, Mformation's motion for new trial is **DENIED**. This order disposes of Docket No. 1084.

IT IS SO ORDERED.

Dated: November 15, 2012

_____
EDWARD M. CHEN
United States District Judge