Pages 1 - 27

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

MFORMATION TECHNOLOGIES, INC., a   )
Delaware corporation,              )
                                   )
  Plaintiff/Counterclaim Defendant, )
                                   )
  VS.                              ) No. C 08-04990 EMC
                                   )
RESEARCH IN MOTION Limited, a      )
Canadian corporation,              )
                                   )
  AND                              )
                                   )
RESEARCH IN MOTION CORPORATION, a  )
Delaware corporation,              )
                                   )
  Defendants/                      ) San Francisco, California
  Counterclaim Plaintiffs.         ) Friday
_____) November 2, 2012


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:          FOLEY & LARDNER
                            3579 Valley Centre Drive, Suite 300
                            San Diego, California  92130
                    **BY:  AMAR L. THAKUR, ESQUIRE**

                            FOLEY & LARDNER LLP
                            3579 Valley Centre Drive,  Suite 300
                            San Diego, California 92130
                    **BY:  SHAWN EDWARD McDONALD, ESQUIRE**


(Appearances continued on next page)

**Reported By:**       *Katherine Powell Sullivan, CSR #5812, RPR, CRR*
                       *Official Reporter - U.S. District Court*

**APPEARANCES (CONTINUED):**

For Defendant:          KIRKLAND & ELLIS LLP
                        300 North LaSalle
                        Chicago, Illinois  60654
                BY:   **LINDA S. DeBRUIN, ESQUIRE**

**For Defendants:**       Wilmer Cutler Pickering Hale and Dorr
                        250 Greenwich Street Avenue
                        New York, New York 10007
                BY:   **MARK G. MATUSCHAK, ESQUIRE**

**P R O C E E D I N G S**

**NOVEMBER 2, 2012**                                        **1:35 P.M.**

**THE CLERK:**  Calling case C 08-4990, Mformation Technologies versus Research.  Counsel, please come to the podium and state your name for the record.

**MS. DeBRUIN:**  Good morning, Your Honor.

**THE COURT:**  Good afternoon.

**MS. DeBRUIN:**  That's true.  Afternoon.

**THE COURT:**  State your appearances, please.

**MS. DeBRUIN:**  Linda DeBruin on behalf of Research in Motion.

**THE COURT:**  All right.  Thank you.

**MR. THAKUR:**  Amar Thakur with Quinn Emanuel, on behalf of Mformation Technology.

**THE COURT:**  Thank you, Mr. Thakur.

Let's address the motion for new trial, first of all. This motion is predicated on the notion that -- assertion that Mformation was dealt unfairly and surprised in terms of an alleged change in the construction of the patent at issue here.

And, unfortunately, Judge Ware is not with us to adjudicate this, so I'm having to fill in as best I can.

So it does, at the end of the day, boil down to whether there was some fundamental unfairness here.  Was there really a material shift that came as a surprise?  And the problem I have with that argument is that I'm looking at -- I'm sure you're

familiar with this -- the transcript from the JMOL motion that was brought at trial, in which there appeared to be a pretty clear concession on your part when the judge says:

"Sounds as though you are, at this point, accepting the notion that in order to practice this patent a connection does have to come into existence and has to move beyond the initiation to the point of actually having a connection.

"Your Honor, we concede that, correct.

"**THE COURT:**  And you -- do you accept that that condition of being connected has to be satisfied in the patent before the transmission?

"We do, Your Honor."

**MR. THAKUR:**  Your Honor, I -- what we conceded, at that point, was that there has to be a connection established before there is transmission, not before transmission can begin.  What we followed was what the Court's construction was.

So there's sort of three stages.  And I'll just go quickly.  The Court said in its pretrial third construction:

"Initiating wireless communication must be completed before transmission can begin."

Our expert got up on the stand and he said those words verbatim.

At the close of evidence, the Court changed the construction and said:

"A connection must be made and initiating wireless communication must be completed before transmission can begin."

In its JMOL, the Court used an entirely different standard that no one had ever -- had never been presented to the parties, which was:

"A connection must be established before transmission can begin."

And so if you look at my language, I do not disagree that a connection has to be established before there is final transmission. But, there's a difference between transmission beginning and when transmission ends.

**THE COURT:** Well, but your argument is that initiation alone was enough to constitute the connection.

**MR. THAKUR:** To -- establishing a connection, not to create the connection. The Court construed the term "establishing a connection." And that's what the Court said, initiating -- constitutes initiating wireless communication.

"Initiating wireless communication must be completed before transmission can begin."

Our expert --

**THE COURT:** Are you saying you -- in this passage you didn't understand Judge Ware to say you needed to complete the connection, not just initiate the connection?

**MR. THAKUR:** I don't believe he ever said that.

**THE COURT:** When you said, "Yes, we concede that," you didn't mean what he say it said?

**MR. THAKUR:** No, I conceded that what meant was the transmission has to occur before there was connection -- that there must be a connection before there must be transmission.

But I did not understand that to mean that transmission must begin before the entire connection is established.

**THE COURT:** I'm not sure I understand the distinction. It seems to me the argument that you're making here is precisely what you conceded at the JMOL. And then you put your witness back on the stand. You recalled him for rebuttal purposes, and you had a chance to elucidate or at least make the argument. You also had a chance to object to Judge Ware's construction in the course of this JMOL. You were still in the middle of trial. You could have asked to reopen the case and put the doctor back on the stand. I didn't see that.

**MR. THAKUR:** So, one, in rebuttal, Your Honor, we were limited to validity because it was not -- the infringement issue had been litigated.

So our expert that came back on rebuttal was limited to the issues of validity, not --

**THE COURT:** You could have asked for reopening in light of the nuanced or the clarification or, you say, the shift or whatever it is that became, certainly, apparent by the time, seems to me, of the JMOL discussion.

**MR. THAKUR:**  Your Honor, perhaps that's where the difference is.  It did not -- the Court never changed the construction that "initiating wireless communication," because we were still working off the Court's claim construction.

The Court's third claim construction said there must be "establishing a connection."  Establishing a connection means initiating wireless communication.

The Court's third claim construction said:

"Initiating wireless communication must be completed before transmission begins."

That was what the Court had expressly told us to do.  In our direct case, that is what we presented verbatim.

**THE COURT:**  Well, I mean, that's your view of what was presented.  I -- you know.

**MR. THAKUR:**  Well, no, Your Honor, that's the transcript.  Our expert on the stand expressly said that the initiating wireless communication is completed before transmission begins.  The requirement that a connection be made was not added until the closing construction.

And, Your Honor, I may add one --

**THE COURT:**  What do you mean by "the closing construction"?

**MR. THAKUR:**  The Court issued closing instructions to --

**THE COURT:**  Oh, closing instructions?

**MR. THAKUR:**  Sorry, yes.

And in the Court's closing instruction, the Court changed that to say that a connection must be made in addition.

And if I may quote RIM, RIM filed its own motion for a new trial on July 27, 2009.  RIM argued, the Court issued its final constructions after the closing of evidence, and the Court should grant a new trial on infringement so that the case can be tried from beginning to end based on the Court's final construction.

So RIM, in its own pleadings, requested Judge Ware to issue a new trial based on the change of constructions.  And yet only when it prevailed on JMOL, it now argues that the Court did not change it.

**MS. DeBRUIN:**  Your Honor, may I respond?

**THE COURT:**  Well, before you do, I'm trying to understand.  You're saying that the instruction to the jury --

**MR. THAKUR:**  Right.

**THE COURT:**  -- differs from what I just read, the colloquy between you and Judge Ware during the JMOL?

**MR. THAKUR:**  No.  The colloquy to the JMOL occurred after we had presented our case-in-chief.

**THE COURT:**  Yes, okay.  So, but you would concede that what he -- his statement of his understanding of the patent at the JMOL, at that point, is consistent with the ultimate instruction to the jury several days later?

**MR. THAKUR:**  To the jury, correct, but not what he used in the JMOL.  What he construed to the jury was a connection must be made.  And the jury ruled in our favor.

So this -- what Judge Ware did was three things.  He issued a third claim construction.  He changed the jury instruction to a closing constructions.  And we prevailed.  The jury ruled, after seven days that we met those closing constructions.  What the Court granted a JMOL on is an entirely different standard.

**THE COURT:**  Okay.  So you're saying the closing -- the instructions to the jury are inconsistent with his reasoning in granting RIM's JMOL?

**MR. THAKUR:**  Because he's issued a third standard for claim construction, which is that a connection must be established before transmission may begin.

**MS. DeBRUIN:**  Your Honor, there's no difference between "a connection must be made" and "a connection must be established."

The closing instructions, which are consistent with Judge Ware's construction all along, said the connection must be made.  In other words, the connection must be established.  That's set forth in the plain language of the claim, which provides that:

"Wherein the connection must be established based on a threshold condition."

**THE COURT:** Well, all right. Let's break it down between the alleged second and third construction. I don't see the difference.

The instruction says the use of the term, the phrase "connection is established" means that the connection must not only be initiated but must be made by the server with the wireless device.

So what's the difference between "established" and "made"?

**MR. THAKUR:** The difference between "established" and "made" is, a connection can be made from -- in a -- in a wireless communication world by actually identifying the destination address, the sender address, and the PIN which will get you there.

A connection established actually requires the other side to look at that packet and recognize it as a packet from which information can be accepted. So, if you will, it's a lock-and-key structure.

**MS. DeBRUIN:** Your Honor, there's no technical basis for what counsel just said. None --

**THE COURT:** Well, I don't understand. Now we have three distinctions: established, initiated, and made. You're saying those are all three different things?

**MR. THAKUR:** Absolutely. Initiated is initiating. Made is when you make a connection. But that doesn't require that it must be established. I mean, those are three different

words in the English language.  To somehow equate them as identical is simply wrong.  They are different words in the English language.

Our expert stood on the stand and satisfied the requirement of what the Court -- the words the Court used.

It is fundamentally unfair to ask us to now say, you didn't use that word, but you should have used the word that I now want to use after the close of construction.  And this is exactly what Judge Ware did in the Avallo (phonetic) case.

So the last patent case Judge Ware tried was the Avallo case.  And in that case he did the same exact thing.  He changed the construction in the middle of trial.  He himself recognized that he made a change in construction and it would be fundamentally fair to have --

THE COURT:  I would suggest when he really does need it, he recognizes it, and when he doesn't, he doesn't.  Which way does that cut?

MR. THAKUR:  Well, what I'm saying is --

THE COURT:  He drew a distinction, obviously, in his own mind.

MR. THAKUR:  Right, but I'm saying, unfortunately, we don't have Judge Ware, we have you --

THE COURT:  Well, you have him there -- you know, you argued the post trial JMOL motion, I'm sure.

MR. THAKUR:  Right, we did.  But, Your Honor -- but

what he didn't -- the JMOL motion was based around whether we could meet the requirement of "established."  It was not based around the fact whether we should get a new trial because the claim construction has changed.

What, I guess, our fundamental basis is, there's a difference between the word "initiated" -- there's a difference in the word "initiated" and "made."  And there's a difference between the word "made" and "established."  And we never got the benefit of either of those two subsequent constructions before we put our case-in-chief.

**THE COURT:**  All right.  What's your comment?

**MS. DeBRUIN:**  Your Honor, you're already hit on the points that we were going to make.  First of all, Judge Ware never changed his construction.

What he did is confirm what his understanding was of the construction, and what our understanding of the construction was throughout the trial.  And he did that, as you pointed out, at the JMOL hearing following the close of plaintiff's case.

They can't claim to be surprised now.  If they had additional evidence or other things that they needed to put in the record, they should have opened it up and done so then.  But, indeed, they don't have any additional evidence.

And Judge Ware concluded, as a matter of law, that RIM's product does not perform the claim steps.  And plaintiff's counsel even conceded that it was undisputed how the product

operated.

Judge Ware asked plaintiff's counsel, at the August 6 hearing, whether there was any dispute about how RIM's product operated, and counsel said no.

And Judge Ware said, so then I can rule as a matter of law based on that undisputed operation of the product?

Plaintiff's counsel said, yes.

**MR. THAKUR:**  Your Honor, if I may respond to that. That's based on -- the issue wasn't whether I said there's no dispute as to whether the product operates.  There is no dispute as to how the product operates.  The dispute is, does the product meet the term "established" versus "initiated"?

**THE COURT:**  Versus "made."

**MR. THAKUR:**  Versus "made."

But, frankly, we should prevail under either of those two circumstances.  We should only have had to prove "initiated." A jury considered -- heard this case for three weeks, considered it for one week.  Right of fundamental fairness requires that we should be given that chance to meet that additional element.

And, again, I emphasize, RIM's words today are different than when they filed their own motion for new trial.  When they filed their motion for new trial, they said the Court issued its final constructions after the close of evidence, and the Court should grant a new trial of infringement so the case can

be tried from beginning to end based on the Court's final constructions.

Those are RIM's words, and they are now changing their words because the verdict has now gone the opposite direction.

THE COURT:  Why isn't this a case where, perhaps, there was some ambiguity in the original claim construction pretrial?

You took one stance, knowing, it seems to me, that there's a risk that your expert's interpretation of the interpretation might not prevail.  In other words, you weren't precluded from presenting alternative evidence, from presenting a range of evidence saying, well, connection -- if establishing connection means initiating, we've got this; if it means actually having been made or completed, it means we have this evidence.

MR. THAKUR:  We did exactly that.  In fact --

THE COURT:  Then you weren't prejudiced.

MR. THAKUR:  No --

THE COURT:  My point is, the cases you cite are ones where not only was somebody misled but actually precluded from presenting certain evidence consistent with the construction that was perhaps later changed.  That's one thing.

But if there was -- inevitably, in every *Markman* hearing, there's going to be questions about what the construction of construction really meant.  I mean, that happens a lot.  These are all words.

And so you -- there's going to be some ambiguity that often happens, even once a *Markman* ruling is made.  And, you know, that's a matter of trial strategy, at that point, whether you want to put all your eggs in one basket or whether you want to split into two different baskets.

**MR. THAKUR:**  Your Honor, we -- our expert used the Court's word that a wire- -- initiation must be completed for transmission.  There can be no ambiguity.  The Court's words were what he used.  The Court subsequently changed it to say that connection must be made, after the close -- after we had presented our case-in-chief.

**THE COURT:**  Well, remember, also, establishing a connection -- a connection subset must be completed for a transmission.  One could say, notwithstanding your emphasis on initiation, on the -- what establishing a connection means, that that certainly opens the door or implies that there's got to be something more than just initiation.

**MS. DeBRUIN:**  Your Honor, that's exactly what we said.  That's what we were saying throughout the trial.

**THE COURT:**  I'm not saying whether you're right or wrong.  I'm saying, knowing that there was a chance --

**MR. THAKUR:**  Right.

**THE COURT:**  -- that that interpretation could prevail --

**MR. THAKUR:**  Right.

**THE COURT:**  -- or the jury could interpret it, so even without a further clarification from the judge, a further refinement, the jury could -- you took the chance.

**MR. THAKUR:**  We didn't, because the Court said, okay, we're going to change at the end of the evidence, and we're going to take "connection must be made."

What we're forgetting in all this is the jury gave us the verdict.  The jury ruled for the plaintiff.

What has changed is from the "made" to "established."  So now we're being asked to prove something that we could not even -- you're asking us to speculate what the Court could possibly have meant.

We used the Court's words.  We used the Court's words in the direct case-in-chief.  We used the Court's word in closing argument, and the jury ruled for us.

And RIM agreed that there should be a motion for new trial when it was convenient for them based on the change in constructions.  And today they stand here and say there was no change in construction.

**MS. DeBRUIN:**  Your Honor, we're not saying that -- we were never saying that there was a change in construction.

What happened is, Judge Ware confirmed our understanding of what the claim construction was.  If he had made that confirmation earlier, we would have been able to use the Court's words in questioning Mformation's expert.  Instead, we

were forced to argue our position of what the construction meant.  We didn't have the force of the Court's words behind us.

We didn't say it changed.  It didn't change.  And you can tell that from the passage that you read from the JMOL hearing at the close of Mformation's case.

Judge Ware was quite clear.  He put Mformation on notice. He gave them a warning of what they had to prove and where their proof was failing.  And they failed to come forward with that proof, so in the end he granted JMOL.

**THE COURT:**  Let me ask you this, Mr. Thakur.  You say in your brief you would have done things differently, at pages 6 and 7.

**MR. THAKUR:**  Correct.

**THE COURT:**  Would have produced evidence that before any command is transmitted to a device, connection is established by -- the server with the Blackberry device by, among other things, packaging the command in a payload, creating a header for that payload, using information received by the Blackberry device during the wireless registration?

And also would have put on testimony that the header information in the package command, which includes information about the destination, leaves the server prior to the command itself leaving.

How does that any more establish your interp-  -- now your

interpretation of Judge Ware's interpretation that there was a connection established, that that satisfies what you claim to be, now, the third construction?

**MR. THAKUR:**  Right.  So the question is:  What would our proffer of evidence be, and should our expert -- hopefully, we would ask for an expert report, to be able to further clarify.

**THE COURT:**  Well, what you have here, you made sort of a proffer in your brief at pages 6 and 7.  I want to know, how does that now satisfy what you are asserting to be the third construction?

**MR. THAKUR:**  Right.  So, the way it -- wireless communication, a connection is established, is you have -- there's two kinds of communication.  One's called "push."  The other is called "pull."

Push is just sending information with sufficient information to get there.  What someone has described to me, it's like the United States Postal Service.  You take a package, you put the destination, the sender, and then you send it.  At that point, you have established sufficient information to get to the other side.  Then you get on a truck and the transmission takes you there.  If the house is there, it will get it.  If, unfortunately, it has been the victim of a storm and the house no longer exists, it won't be accepted.  So there's three steps.

**THE COURT:** So no connection can be established when a house is not there.

**MR. THAKUR:** Right. And the standard is when the connection is established based on a threshold condition. And the threshold condition would be the existence of the house.

And that's what we were saying was, we never got a chance to present that the registration information is what would help establish the connection and push communications.

What they were describing was TCP. If you go into the '917 patent specification itself -- and they have their own expert on the stand saying it, that any transmission protocol may be used. It uses the word "push" and "pull" as an alternative. And it uses the words that it may be any network protocol -- I'm sorry, been a while since I've looked at the patent -- that any communication, whether it is -- excuse me. "Any networking technology and protocol such as ethernet (unintelligible) transmission control and IP."

Some of these are what are called non- -- connectionless protocols. And there was evidence presented during trial about what these protocols do.

And to establish a requirement that some two-way connection be established, which is like taking us back into the '50s, that would be reading out what is in the express language of the patent itself.

**MS. DeBRUIN:** Your Honor --

**THE COURT:** Let me ask you whether what I just read about -- that's sort of the proffer that was made.

**MS. DeBRUIN:** Right.

**THE COURT:** -- would have established the, quote, third construction, alleged construction.

**MS. DeBRUIN:** It would not have, Your Honor. In fact, Mformation presented that very evidence at trial. That was not something new. That was not something they held back. They came forward with all that evidence at trial. None of that is new. They talked about everything --

**THE COURT:** Let me stop you right there.

Is that true that -- what I read about the packaging, the command, et cetera, et cetera, the header, was that introduced at trial?

**MR. THAKUR:** The evidence that packaging exists and the fact there are communication protocols. But the fact that that would have established a connection, no, our expert never opined that, because he had no reason to think --

**THE COURT:** All right. That's the conclusion. That's almost a legal argument.

**MR. THAKUR:** Right.

**THE COURT:** The factual matter was presented in terms of how it works, right?

**MR. THAKUR:** The factual matter -- I would say -- I mean, the question is, you know, how do we present it in a

fully comprehensible way as to how registration occurs, the packaging occurs, and the header is delivered, in that sort of precise, intelligent, you know, comprehensible way?  No, it was not.

Were these facts that there were communication protocols existing?  Of course, they were.

**MS. DeBRUIN:**  Your Honor, those facts were all presented.  Judge Ware had all those facts.

Counsel made the very same argument that he just stood here and made, about taking something from the specification and saying that that part of the specification must necessarily be covered by the claims.  And Judge Ware rejected that.

**THE COURT:**  All right.  What about -- what about the argument that the established nature of the connection was satisfied by the fact that the server packaged the command in a payload, creating a header for that payload using the information received from a Blackberry device during wireless registration, was that introduced?

**MS. DeBRUIN:**  That was all introduced at trial, Your Honor.  That's how the system works.  That's the undisputed operation of the system.

Mformation's expert testified about that.  They introduced testimony from RIM witnesses about that.  And that was the undisputed operation of the system that Judge Ware concluded as a matter of law did not infringe the patent.

**THE COURT:** Well, so the argument is that, although the information was there, the evidence was there, the argumentation was not available to Mformation because of the construction that they believed that they were laboring under. That's essentially --

**MR. THAKUR:** Your Honor, the analogy is the dictionary was there, the sentence was never put together.

**THE COURT:** But all the -- the way -- what I just read in terms of the packaging, the payload information, the header, that was all in evidence?

**MR. THAKUR:** I would say -- for me, just thinking off the top of my head, the fact that wireless registration occurs, yes, that was.  Whether -- I would -- Each one of those individual components, I will concede, were in evidence.

Were they put together to create established connection? Absolutely not.  Those words were never uttered in trial.

**MS. DeBRUIN:** But they were --

**THE COURT:** But the evidence would be the same.  It's not the change of evidence.  It's really the characterization and your argumentation and implications of that evidence.

**MR. THAKUR:** Your Honor, for me to say I have a piece of paper and I have a glue, that doesn't equal a Post-It. Someone has to understand how the two work together.

**THE COURT:** I assume you made that argument in opposition to RIM's JMOL motion.

**MR. THAKUR:**  Your Honor, at opposition to JMOL, we did not say -- we were not asking for a new trial.  We were asking for the JMOL.  We were saying this evidence is sufficient.

Unfortunately, we were stuck with the scenario where our expert had expressly stood on the stand and said establishing a connection includes initiating wireless communication, which was the Court's third claim construction.

So he -- we were stuck with evidence based on -- because, ultimately, in a patent case it comes down to the expert testimony as forming the basis of the opinion.  And his express words were what the Court's third claim construction were.  And, unfortunately, his express words would seem to contradict the Court's final construction.  And that's why we were prejudiced.

**THE COURT:**  Okay.

**MS. DeBRUIN:**  Your Honor, Counsel made the very same argument he just made to Judge Ware at the JMOL hearing.  They've made this argument repeatedly.  They filed repeated briefs.  We filed a brief in support of our JMOL at the close of their case.  They filed a brief in response to that.

We filed a brief in support of our JMOL at the close of the evidence.  They filed a brief in opposition to that.  The Court had briefing at the posttrial conference.

The Court held a hearing on August 6th.  Counsel presented all of these arguments, and he's admitted that the facts were

in the record.  Judge Ware considered all of that and he ruled in RIM's favor that judgment should be entered as a matter of law of no infringement.

THE COURT:  All right.  I'll take the matter under submission.

Let me ask you about the motion to correct the judgment. I'm not sure what the difference -- well, I understand -- I think I know what one difference is.

But is there a problem with saying, for instance, that the defendant's remaining counterclaims were dismissed without prejudice as moot?

MS. DeBRUIN:  No, Your Honor.

THE COURT:  And is there an objection to the last sentence, that plaintiff's claims of infringement of claims 4 and 5 not being present are dismissed with prejudice?  I don't know why you would object to that.

MS. DeBRUIN:  No, Your Honor.  Our only issue is with the willful infringement.

THE COURT:  Okay.  That's what I thought.  And having, again, reviewed the transcript, it's pretty clear that Judge Ware indicated that he intended not to instruct on willfulness.

There was this colloquy about the subjective prong and the objective prong, and you don't get the subjective prong unless you find the objective prong is satisfied.

And although he did say he was going to elucidate in a follow-up order, that wasn't forthcoming, but I think his intent pretty clear.

Then, when he finally instructed the jury he says:

"Mformation also accused RIM of willful infringement; however, for legal reasons, the question of willfulness has been removed from your consideration."

The only thing I can infer from that was he found the objective prong was met and, therefore, the jury was not going to have to rule or adjudicate, make findings on the subjective prong.  So it certainly does appear that he ruled on the merits of the willfulness claim.

MR. THAKUR:  Your Honor, I'm going to ask my partner to respond to that.

THE COURT:  Sure.

MR. McDONALD:  Good afternoon, Your Honor, Sean McDonald of Foley & Lardner for plaintiff Mformation.

THE COURT:  Great.  Thank you.

MR. McDONALD:  As we stated in the brief, all we have from Judge Ware is his statement that he would issue a subsequent order ruling on plaintiff's claim for willfulness.  And that was the last he said on it.

So I would submit to the Court that the willfulness claim stands as not yet ruled upon.

**MS. DeBRUIN:**  Your Honor, he ruled on the claim.  He said that he was expecting to write something to explain his reasoning, but he did rule on the willfulness claim and he did grant, as he said he was going to, RIM's JMOL on willful infringement.

**THE COURT:**  Well, it seems to me, again, in instructions to the jury he had to decide one way or the other whether to put it to the jury or not.  And he consciously and expressly told the jury he was taking it away from the jury.

So to say that's moot, sounds to me the only way he could have done that is to find that it didn't rise to the level of being submitted to the jury on the merits.  How could he have not submitted to the jury for any other reason?

**MR. McDONALD:**  I would love to be able to ask Judge Ware that very question.  I don't have a good answer for you, Your Honor.  All I know is he did not rule.  He stated that he was going to issue a subsequent order.  He never did. And that's where the claim stands.

**THE COURT:**  Okay.  Well, obviously, would have been nice to have a ruling, but -- a written ruling, but it does seem to me that -- especially his comments, given the context and the reasoning and the back-and-forth with counsel, and then his final word to the jury indicates that he did rule on the merits.

**MR. McDONALD:**  Well, Your Honor, I would submit that

the fact that he granted JMOL of non-infringement deems it moot.  He does not have to pick up the willfulness claim, and this Court does not have to rule on the willfulness claim now because it is, in deed, moot now that the judgment of non-infringement has been entered.

MS. DeBRUIN:  Your Honor, the judge already took the willfulness claim away from the jury before addressing the issue of JMOL of no infringement.  So it's wrong for it to spring back into life just because Judge Ware granted our JMOL of no infringement as well.

THE COURT:  All right.  I'll take that under submission as well.

MR. McDONALD:  Thank you.

MS. DeBRUIN:  Thank you.

THE COURT:  Appreciate it.  Thank you.

(At 2:06 p.m. the proceedings were adjourned.)

- - - -

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Wednesday, November 21, 2012

_____

Katherine Powell Sullivan, CSR #5812, RPR, CRR
U.S. Court Reporter