Volume 15

Pages 2352 – 2373

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES WARE, CHIEF JUDGE

------------------------------)
                              )
Mformation Technologies, Inc.,  )
                              )
                Plaintiff,    )
                              )
   vs.                        )   No. C 08–4990 (JW)
                              )
Research In Motion, Ltd.,      )
et al.,                       )
                              )   San Francisco, California
                Defendant.    )   Friday, July 13, 2012
------------------------------)

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          Foley & Lardner, LLP
                        3579 Valley Centre Drive
                        Suite 300
                        San Diego, California 92130
                   BY:  AMAR L. THAKUR
                        SHAWN E. MCDONALD

                        Rakesh Kushwaha, CTO

For Defendant:          WilmerHale
                        305 South Grand Avenue
                        Suite 2100
                        Los Angeles, California 90071
                   BY:  MARK G. MATUSCHAK
                        ANDREW B. GROSSMAN

                        Kirkland & Ellis, LLP
                        300 North LaSalle
                        Chicago, Illinois 60654
                   BY:  LINDA S. DeBRUIN

                        Ray Dikun, RIM Vice-President

Connie Kuhl, Certified Realtime Reporter
Official Reporter – USDC  (415) 431–2020

Friday, July 13, 2012

(8:30 a.m.)

(Jury deliberating)

(9:15 a.m.)

(In open court; jury not present)

THE COURT:  On the record, out of the presence of the jury.

We received a note from the jury asking, "May we please see demonstrative 1039?"

Demonstrative 1039, as I'm being reminded by the parties, is a slide which was shown during the testimony of an expert witness who displayed it as part of explaining his opinion.  The slide contains a heading, "RemoteWare Anticipates Claim 6; Transmitting Information Relating to Execution to the Server," and, it seems to me shows Claim 6, the language of Claim 6.

And then there is a photograph of Mr. Foley as well as a question and answer which is an excerpt from his deposition, and there's a notation that it is at his deposition, Page 172, lines 15 through 20.

Since it is a demonstrative exhibit, the Court takes the position, consistent with the position I have always taken, that demonstratives only go in on stipulation of the parties because they're not evidence. They're used during presentation to help the jury

understand the evidence, but since they're not admitted into evidence, they don't go into the jury room, unless the parties stipulate.

The parties have not stipulated to allow this demonstrative to go back to the jury. However, there is a request, since the substance of the demonstrative is a question and answer that was asked and answered during a deposition, to allow the jury to hear the testimony of the expert where he was asked about this very question and very answer, so that essentially would constitute a read-back of testimony given during the trial, and the Court has indicated that it will allow that to be read.

I would propose to write a note saying since the demonstrative is not in evidence, you may not see the demonstrative, but I have asked the court reporter to come into the jury room, on stipulation of the parties, to read the portion of the transcript where the evidence that is on the slide was asked and answered by a witness.

And I didn't propose to bring them to the courtroom for that purpose, but to have the court reporter go in and do that.

Let me pause and see if there are any further comments that the parties wish to make with respect to this matter.

MR. MATUSCHAK: Yes, your Honor. Mark Matuschak

for RIM.

I think we would propose that the -- two things. One is:  We would propose, since the jury has asked for this specific demonstrative, that whether or not it's sent back to them, at a minimum the jury should be allowed to view the demonstrative in the courtroom the way they saw it during the course of trial.  There could be no prejudice to the plaintiff from something like that.

We also, I think, would -- we are also in favor of sending it back there as a demonstrative with the understanding that it's not in evidence, and we're fine with that, too.  I understand there is an objection to that.

But in any event, our position is that at a minimum, the jury should be allowed to come back into the courtroom to view the demonstrative the way they did during the trial and see the entire context of the testimony.

There is one other aspect of that:  The way the Court has said that it would instruct the jury with respect to this demonstrative was that -- since it's not in evidence, I think that may be confusing to the jury because they have seen other demonstratives, so I think the jury ought to be told that it can't come back without a stipulation, and there is no stipulation.

THE COURT:  Very well.

MR. McDONALD:  Shawn McDonald for Mformation.  We believe the jury should not be informed that Mformation refused to stipulate.

THE COURT:  I wouldn't call a name of the party.

MR. McDONALD:  Fantastic.

And, your Honor, we note for the record that the question and answer to be read is from Page 1592 of the trial transcript, lines 5 through 11.  We have no objection to the Court's ruling.

MR. MATUSCHAK:  We would object and say that testimony only gives them the actual question and answer that was asked on the slide, but it takes it out of context.  And we would propose that the jury, be read back to them the beginning of the portion -- it starts just about two questions before:

"Q  Is it your opinion that RemoteWare anticipates Claim 6 of the '917 patent?

"A  Yes.

"Q  Could you please tell us -- first, what does Claim 6 require.

The answer:  "Claim 6 requires transmitting information concerning the executing of the command from the client back to the server.  I've paraphrased, but that's what the claim involves.

And then we have the question that begins at Line 5, on Page 1592.

So I'd ask that the portion that I just read, which starts at 1591 at line -- actually, probably at line 18, through 1592 at the end of the question we've talked about, line 11, that would also include Miss DeBruin's statement before she asked at that first question:  "If I could please have demonstrative 1039."

THE COURT:  Very welt.  I won't read, unless the jury requests, any other aspects of the testimony, because once I do that, then I might need to get into the cross-examination and all kinds of things having to do with the subject matter.

What I will do is read it, and I'll ask the jury to send us further requests if they have any with respect to this matter.

But given the nature of the objections, I think I won't accept the stipulation of the parties to have the court reporter do it -- I'll bring the jury out. Therefore, everybody can hear what is done.  And they can see your smiling faces.

MR. MATUSCHAK:  Thank you, your Honor.

MR. McDONALD:  Thank you, your Honor.

(Off the record)

THE COURT:  Summon the jury.

DEPUTY CLERK:  All rise.

(The jury enters the courtroom)

THE COURT:  Please be seated.

Members of the jury, I asked you back in the courtroom because we received a note:  "May we please see demonstrative 1039?"

And I thought it would be best to explain the Court's process, and then to see if we can satisfy your concern.

Demonstrative 1039 is not in evidence.  And demonstrative exhibits are marked so we can keep track of them for many purposes, so that during the course of the trial we'll know what you saw and -- but since they're not in evidence, they normally don't go back into the jury room.  Some demonstratives are in evidence by stipulation, but this was not one of them.  And therefore it is not available for you to see.

However, the demonstrative that you asked for -- in fact, I have it here in front of me, and it contains, in addition to some graphics that talk about why the material is being shown, it contains a question and an answer that was asked during the deposition of Mr. Foley who testified as a witness.  The question itself and the answer itself was used, as I have come to understand it, by Dr. Acampora as part of the explanation of his opinion

testimony.  Since the question and the answer were actually included in Dr. Acampora's testimony, it is permissible for you to hear that testimony again.  So you would hear the question that was put to Mr. Foley and the answer that Mr. Foley gave as part of the testimony that was given by Dr. Acampora.

And so I'm going to now have the court reporter read the question and the answer given by Dr. Acampora, which includes the statements made by Mr. Foley as part of his sworn testimony at his deposition.

The question isn't directly, Please tell us what Mr. Foley said.  As you'll hear the question, it was on the topic that was under examination.

And so, after you hear this material, if you have further requests of us, please don't hesitate to send out a further note, because we can have read back more of the testimony of Dr. Acampora, or the testimony of Mr. Foley, whatever you want.  It's just that we cannot give you this demonstrative, but we can give you the testimony.

And so I'm going to have the court reporter go off of our record now and read back the testimony of Dr. Acampora.

(Record read:  Page 1592, lines 5 – 11.)

THE COURT:  That's somewhat confusing.  As I listen to what the court reporter read back, the witness

did not quote verbatim from the deposition testimony, and he interjected his own words as he was explaining his opinion.

At this point, I think what I'll have the parties do is to block out everything else on the demonstrative except for the deposition testimony of Mr. Foley, since that was the basis of the witness's testimony, and I'm going to have the court reporter reread the transcript with the actual redacted portion of the material -- and let me just kind of block what I want to block.  Because I want you to have the benefit of hearing the witness's testimony because he was looking at the document at the time that he was testifying.

(Pause in proceedings)

THE COURT:  So now, with just the testimony redacted out -- with just the testimony shown, I'll have the court reporter read the transcript.

(Record read:  Q and A from Demonstrative 1039.)

THE COURT:  Actually, I wanted the court reporter to reread the testimony of Dr. Acampora.

(Record read:  Page 1592, lines 5 - 11.)

THE COURT:  So now you've heard the testimony of Dr. Acampora read.  You've seen what was displayed, at least without the added material other than the deposition.  If there's any further requests you have for

us, let us know, and I'll have you now retire and reconvene your deliberations.

DEPUTY CLERK:  All rise.

(The jury exits the courtroom)

THE COURT:  Very well.  I apologize for doing that to you on the fly, but I didn't know it would be as complicated as it was to display from the Elmo.

Any further requests from the parties?

MR. McDONALD:  Just one quick comment, your Honor.  Mformation objected to presenting the hearsay testimony of Christopher Foley.  We understood that the transcript of Dr. Acampora's testimony would be read back. But we did object to this hearsay testimony being presented to the jury, and we just wanted to make a record of that.

THE COURT:  Very well.  All right.  So we'll stand in recess, pending further deliberations of the jury.

DEPUTY CLERK:  All rise.

(Recess)

DEPUTY CLERK:  Remain seated; come to order.

THE COURT:  We're on the record, out of the presence of the jury.  Please be seated.

I've received a note that the jury has reached a unanimous verdict.  Let me explain to you the process that

the Court follows.  First, I need to know whether or not the parties would stipulate with respect to the exhibits whether Mr. Noble can return those to the parties and you keep them safe pending any post trial proceedings.  That would relieve him of the obligation of storing them someplace, and so both sides stipulate?

MR. MATUSCHAK:  Yes, your Honor.

MR. THAKUR:  Yes, your Honor.

THE COURT:  I'll leave it to you to work out who cares for which.

Once the jury comes in, I'll inspect the verdict form, and if it appears from my inspection to be in conformance with the Instructions that are contained within the verdict form itself, I will have the Clerk of the Court read the verdict -- you should have a copy of it.  Because my instructions to him would be simply to read the question number and then an answer, unless the question itself needs to have -- for those charts, have that read.  In other words, he will say, In answer to, for example, Question Number 2, since that is all Claim 1, transmitting, yes, no; verifying, yes, no, so that we follow through to get what was answered to that particular question.

And if there's no response, he'll simply indicate -- he'll go to four, no response; five, no

response, just so we can keep track of whether or not they've skipped a question or not, reached a decision with respect to a particular question.

It is the practice of the Court to allow the parties to ask that the jury be polled. If you wish the jury be polled, I will ask, and the Clerk of Court would call the juror number: Juror Number 1, is this your verdict? And to have each juror answer verbally, yes or no. I'll explain that they should answer yes or no only if they agree with everything about it, and if there's any part they don't agree with, to say no.

After that, the jury will be discharged.

I should set now the date for post verdict proceedings. There are a number of motions that have been submitted to the Court. And given my calendar, I'll set that at 10 o'clock on August 6th, for post verdict proceedings.

Any questions by the parties?

MR. MATUSCHAK: No, your Honor.

MR. THAKUR: No.

THE COURT: Very well. Summon the jury.

DEPUTY CLERK: All rise.

(The jury enters the courtroom)

THE COURT: Please be seated. Members of the jury, I asked you back into the courtroom because we

received a note signed by your foreperson that you had reached a unanimous verdict. Is that true, the jury has reached a verdict?

JURY FOREPERSON: Yes, your Honor.

THE COURT: Would you please give the verdict form to the Clerk of Court, who will give it to me for inspection.

Now, notice I haven't opened it yet because I want to make some comments. And I've found over the years that if I wait until after the verdict is read to make my comments, people are not interested in my comments, because the verdict is perhaps the most important part of our process, and that is as it should be. So let me make some comments before I do that.

I will anticipate there won't be any need to send you out to do anything more and that at the end of this process, I will be discharging you as a jury.

First of all, I want to thank you for your time to your nation. This is a process, as I told you at the very beginning, that's important to our Democratic form of government. We chose a form of government that's not easy. It requires us to do it. We picked the nation that is not like the sleepy pyramids. This is our generation; it's our time to take up the cause of democracy, and I really, really want to thank you for doing it.

This has been a complex case, well-tried by competent lawyers.  But without you, we could not have done it.  So I really want to thank you for taking the time out of your busy lives to do it.

As I said before, we learn about democracy from others.  To be honest, I would hope the one thing you would tell others is:  This was worthwhile.  I came to the aid of my country.  The parties are not the only beneficiaries are this kind of process, we all are, and I want to thank you for that.

This is an ad hoc process, as far as you're concerned.  Once I discharge you as jurors, you're free to go.  You are not required to discuss your verdict or your deliberations with anyone.  But you're permitted to do so.  Once you're discharged, you can discuss this case with the lawyers, with anyone else, because you fulfilled your responsibility.

Now, in order for the lawyers to know whether or not you would wish to talk with them or not, what I usually recommend to you is that you come back into the courtroom, so that the lawyers will know that if you come into the courtroom, you're willing to chat with them.  If you go on your way, that's a sign that you don't wish to be bothered.  And if anyone should bother you in a harassing way, all you have to do is call Mr. Noble, let

me know, and we'll make sure that you have your peace, because you've done your work as jurors.

There is a process where after the verdict is read where the parties, one or both, can ask that you be polled. That is, to assure that we have a unanimous verdict, each juror number will be called and you'll be asked: Is this your verdict? So that if you say yes, that means you agree with everything on it; if you say no, there's some part of it you don't agree with, you say no, and that would let us know whether or not we have a unanimous verdict.

I'll have the Clerk of Court read the verdict.

DEPUTY CLERK: Ladies and gentlemen of the jury listen to your verdict as it will stand recorded.

In the United States District Court for the Northern District of California, San Francisco Division. Number c 08-4990 (JW);

Mformation Techs, Inc, vs. Research In Motion limited, et al.

Third Amended Verdict.

We, the jury, in the above-entitled case unanimously find as follows:

Direct Infringement by Customers.

Question Number 1. Answer: Yes.

Question Number 2.

Do you find that the process used by RIM enterprise customers practiced the following steps or substeps of Claim 1 of the '917 patent?

Transmitting registration information:  Yes.

Verifying the registration information:  Yes.

Establishing a mailbox:  Yes.

Placing a command:  Yes.

Delivering the command by:  No answer.

Substep A, establishing a connection:  Yes.

Substep B, transmitting the contents of the mailbox:  Yes.

Substep C, accepting the contents:  Yes.

Executing the command:  Yes.

Question Number 3.

As to each dependent claim, please indicate which Claim or Claims you find are directly infringed by RIM enterprise customers.

Claim 6:  Yes.

Claim 21:  Yes.

Claim 22:  Yes.

Claim 23:  Yes.

Claim 24:  Yes.

Claim 25:  Yes.

Claim 27:  Yes.

Contributory Infringement.

Question Number 4.

Answer:  Yes.

Question Number 5.

Answer:  Yes.

Question Number 6.

Answer:  Yes.

Question Number 7.

Answer:  Yes.

Inducing Infringement.

Question Number 8:

Yes.

Question Number 9:

Yes.

Question Number 10:

Yes.

Defenses.

Question Number 11.

Answer:  Yes.

Question Number 12.

Answer:  No.

Question Number 13.

No answer.

Question Number 14.

RIM's contention.

Question Number 15.

RIM's contention.

Question Number 16.

Mformation's contention.

Question Number 17.

Which of the following factors has been established by the evidence with respect to the claimed invention?

THE COURT:  You might indicate which are unchecked, since I noticed that there are a number of them unchecked.

DEPUTY CLERK:  Yes, sir.

Commercial success of a product due to the merits of the claim invention:  Checked.

A long felt need for the solution provided by the claimed invention:  Checked.

Unsuccessful attempts by others to find the solution provided by the claimed invention:  Checked.

Coping of the claimed invention by others:  Unchecked.

Unexpected and superior results from the claimed invention:  Unchecked.

Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention:  Checked.

Other evidence tending to show nonobviousness:

Checked.

Independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it:  Unchecked.

Other evidence tending to show obviousness:  Unchecked.

Question Number 18.

With respect to Claims 1, 6, and 21 through 25, did RIM prove by clear and convincing evidence that all of the requirements of the '917 patent existed in the single use -- correction, existed in the use of a single system or method that predates the claimed invention or were described in a single previous publication or patent that predates the effective date by more than one year the claimed invention.

Claim 1:  No.

Claim 6:  No.

Claim 21:  Yes.

Claim 22:  Yes.

Claim 23:  Yes.

Claim 24:  Yes.

Claim 25:  Yes.

Damages.

Question Number 19.

What rate for the reasonable royalty per unit

sold did Mformation prove with a reasonable certainty?

$8.00 rate per unit.

Question Number 20.

For how many units did Mformation prove with reasonable certainty that it is entitled to the rate established above?

18.4 million number of units.

Total:  $147.2 million.

Dated July 13th, 2012.

Signed, Theresa H. Lowe Chan, Presiding Juror.

THE COURT:  Does either party wish to have the jury polled?

MR. THAKUR:  No, your Honor.

MR. MATUSCHAK:  Yes, your Honor.

THE COURT:  Very well.  The Clerk will poll the jury.

DEPUTY CLERK:  Juror Number 1, is this your verdict?

JUROR NO. 1:  Yes.

DEPUTY CLERK:  Juror Number 2, is this your verdict?

JUROR NO. 2:  Yes.

DEPUTY CLERK:  Juror Number 3, is this your verdict?

JUROR NO. 3:  Yes.

DEPUTY CLERK:  Juror Number 4, is this your verdict?

JUROR NO. 4:  Yes.

DEPUTY CLERK:  Juror Number 5, is this your verdict?

JUROR NO. 5:  Yes.

DEPUTY CLERK:  Juror Number 6, is this your verdict?

JUROR NO. 6:  Yes.

DEPUTY CLERK:  Juror Number 7, is this your verdict?

JURY FOREPERSON:  Yes.

DEPUTY CLERK:  Juror Number 8, is this your verdict?

JUROR NO. 8:  Yes.

DEPUTY CLERK:  Your Honor, the verdict is unanimous.

THE COURT:  Very well.  The verdict will stand as a unanimous verdict.

Any side know of any legal cause why this jury may not be discharged?

MR. THAKUR:  No, your Honor.

MR. MATUSCHAK:  No, your Honor.

THE COURT:  Very well.  Members of the jury, with the thanks of the Court, you are discharged.

We'll stand adjourned.

DEPUTY CLERK:  All rise.

(The jurors exit the courtroom)

(Trial adjourned)

oOo

CERTIFICATE OF REPORTER

I, Connie Kuhl, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into written form.

_____

Connie Kuhl, RMR, CRR
Friday, July 13, 2012