UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| MFORMATION TECHNOLOGIES, INC., A DELAWARE CORPORATION, | ) ) ) | C-08-04990 JW SAN JOSE, CALIFORNIA |
| PLAINTIFF, | ) ) | NOVEMBER 20, 2009 |
| VS. | ) ) | PAGES 1-179 |
| RESEARCH IN MOTION, LIMITED, A CANADIAN CORPORATION AND RESEARCH IN MOTION CORPORATION, A DELAWARE CORPORATION, | ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES WARE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:   FOLEY & LARDNER
                     BY:  AMAR L, THAKUR AND
                          SHAWN E. MCDONALD
                     11250 EL CAMINO REAL, SUITE 200
                     SAN DIEGO, CALIFORNIA  92130

                     BY:  GINA A. BIBBY
                     975 PAGE MILL ROAD
                     PALO ALTO, CALIFORNIA  94304

ALSO PRESENT:        ETHAN L. MILLER

APPEARANCES CONTINUED ON NEXT PAGE

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595

1

APPEARANCES (CONTINUED)


FOR THE DEFENDANT:   KIRKLAND & ELLIS
                     BY:  LINDA S. DEBRUIN AND
                          MEREDITH ZINANNI
                     300 NORTH LASALLE STREET
                     CHICAGO, ILLINOIS  60654

                     BY:  MARC H. COHEN
                     950 PAGE MILL ROAD
                     PALO ALTO, CALIFORNIA  94304

ALSO PRESENT:        ABDUL ZINDANI

SAN JOSE, CALIFORNIA              NOVEMBER 20, 2009

P R O C E E D I N G S

(WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

THE CLERK:  CALLING CASE NUMBER 08-4990, MFORMATION TECHNOLOGIES, INC., V. RESEARCH MOTION IN LIMITED, ON FOR CLAIM CONSTRUCTION.

COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

MR. THAKUR:  AMAR THAKUR, LEAD COUNSEL FOR THE PLAINTIFF.

THE COURT:  EXCUSE ME ONE SECOND.

(PAUSE IN PROCEEDINGS.)

THE COURT:  YES, GO AHEAD, COUNSEL.

MR. THAKUR:  YES, HI.  AMAR THAKUR, LEAD COUNSEL FOR PLAINTIFF, MFORMATION.

I'M JOINED BY MY COLLEAGUE, SHAWN MCDONALD.  WE'LL BE DIVIDING THE WORK BETWEEN US, SO HOPEFULLY YOU'LL GET A CHANCE TO SEE HIS ORAL ADVOCACY.

ALSO JOINING ME IS PROFESSOR ETHAN MILLER.  HE IS A FULL TENURED PROFESSOR AT THE UNIVERSITY OF CALIFORNIA.

FINALLY JOINING US IS MS. GINA BIBBY.  SHE'S A RECENT ADDITION TO THE TEAM, SO TODAY SHE

WILL NOT PARTICIPATE IN THE HEARING.  BUT I HOPE YOU GET A CHANCE TO SEE HER.

THE COURT:  SOMETIMES I FIND THAT THE RECENT ADDITIONS KNOW MORE, SO SHE MAY HAVE A CHANCE TO SPEAK.

BUT THANK YOU ALL FOR BEING HERE.

COUNSEL.

MS. DEBRUIN:  GOOD MORNING, YOUR HONOR. LINDA DEBRUIN ON BEHALF OF RESEARCH IN MOTION.

WITH ME AT COUNSEL TABLE IS ABDUL ZINDANI FROM RESEARCH IN MOTION; MARC COHEN --

MR. COHEN:  GOOD MORNING, YOUR HONOR.

MS. DEBRUIN:  -- AND MEREDITH ZINANNI, BOTH FROM KIRKLAND & ELLIS.

THE COURT:  GIVE ME JUST A SECOND.  I HAVE A LOGISTICAL -- YOU SEE I PUT A VIDEO RECORDER HERE TO CAPTURE -- YESTERDAY I WAS IMPRESSED THAT THIS MAY BE MORE COMPLICATED THAN I APPRECIATE IT, SO I MIGHT WISH TO REVIEW THESE PROCEEDINGS ONCE AGAIN, AND SO I HOPE YOU DON'T MIND.

I'M GOING TO BE MY OWN VIDEOGRAPHER, SO OCCASIONALLY YOU'LL SEE ME ADJUSTING THE CAMERA FOR THIS PURPOSE.

I HAVE A JURY THAT'S DELIBERATING, I DON'T KNOW IF THE CLERK OF COURT ADVISED YOU OF

4

THAT, WHICH MEANS THAT WE MIGHT HAVE TO INTERRUPT THESE PROCEEDINGS TO TAKE CARE OF THAT PROCESS.  I HOPE THAT IT WILL NOT, BUT IF IT DOES, I WANT TO GIVE THEM PRIORITY.

I HAD THE BENEFIT OF HAVING A TUTORIAL FROM YOU YESTERDAY, AND SO TODAY THESE ARE PROCEEDINGS WITH RESPECT TO THE CONSTRUCTION OF CLAIMS AND I GUESS THERE ARE TWO PATENTS AT ISSUE, '917 AND '408.

MR. THAKUR:  YES.

MS. DEBRUIN:  YES, YOUR HONOR.

THE COURT:  YOU MAY PROCEED.

MR. THAKUR:  YOUR HONOR, HOW WOULD YOU LIKE TO PROCEED?  WOULD YOU LIKE US TO DO ONE TERM AT A TIME, OR WOULD YOU LIKE ONE PARTY TO COMPLETE ITS PRESENTATION?

THE COURT:  YOU HAVE NOT TALKED ABOUT THAT?

MR. THAKUR:  WE HAVE NOT TALKED ABOUT THAT.  WE FIGURED WE'D DEFER TO YOUR JUDGMENT.

THE COURT:  I REALLY WOULDN'T HAVE A PREFERENCE.  ORDINARILY I WOULD HEAR FROM ONE SIDE WITH RESPECT -- IF THERE ARE TOO MANY TERMS, IF IT ACTUALLY STARTS TO CHANGE TO SOMETHING ACTUALLY DIFFERENT -- I'M NOT CONVERSANT ENOUGH NOW TO GIVE

YOU MUCH DIRECTION.

SO WHY DON'T YOU START, AND IF YOU SAY "NOW I'M GOING TO CHANGE TO A DIFFERENT PATENT OR A DIFFERENT KIND OF REVIEW," I'LL SEE IF THE OTHER SIDE WOULD WISH TO RESPOND BEFORE YOU PROCEED.

MR. THAKUR:  OKAY.  EXCUSE ME, YOUR HONOR.

THE COURT:  ALL RIGHT.

(PAUSE IN PROCEEDINGS.)

MR. THAKUR:  THANK YOU, YOUR HONOR.

THERE ARE TEN TERMS THAT WE ARE HOPING TO GET INTERPRETED AT THIS CLAIM CONSTRUCTION HEARING, THE FIRST ONE BEING -- THE TERM IS "MAILBOX."

WHAT YOU WILL SEE IN THE FIRST SLIDE IS THE PROPOSED MFORMATION CONSTRUCTION AND ON THE RIGHT SIDE THE PROPOSED RIM CONSTRUCTION.

WE WILL FOLLOW THIS FORMAT THROUGH THE COURSE OF OUR PRESENTATION TO DISTINGUISH WHAT THE ISSUES ARE.

THE COURT:  ALL RIGHT.

MR. THAKUR:  SO IF YOU LOOK AT THE DIFFERENT INTERPRETATIONS, THERE ARE THREE ISSUES. THE FIRST ONE IS IN MFORMATION'S CONSTRUCTION, WE ADD "STORAGE HAVING INFORMATION ABOUT A WIRELESS DEVICE."

AND THEN THERE ARE TWO ISSUES IN RIM'S PROPOSED CONSTRUCTION THAT WE DIFFER ON.

THE FIRST ONE IS THEY WANT TO HAVE -- THEY WANT TO HAVE THE COURT INTERPRET THAT THE MAILBOX NEEDS TO INTERPRET -- STORE ALL COMMANDS DELIVERED.

AND THEN THE THIRD ONE IS THEY WOULD LIKE TO HAVE A 1:1 CORRESPONDENCE BETWEEN A MAILBOX AND A DEVICE.

SO FOCUSSING ON THE FIRST ONE, YOU KNOW, IT'S NOT CLEAR TO ME THEY ARE DISPUTING THE FACT THAT A STORAGE LOCATION HAS INFORMATION ABOUT A WIRELESS DEVICE.

IT SEEMS TO APPEAR THAT THEY'RE REALLY SEEKING A DIFFERENT INTERPRETATION, BECAUSE IF YOU ACTUALLY READ THE 1:1 CORRESPONDENCE, IT WOULD NECESSARILY REQUIRE THAT THE MAILBOX HAVE INFORMATION ABOUT STORAGE DEVICE.

NUMBER TWO, IT'S INHERENT.  IF THE MAILBOX DOESN'T KNOW WHAT IT'S CORRESPONDING TO IN TERMS OF DEVICE, THE MAILBOX SERVES NO PURPOSE.

THE COURT:  WELL, LET'S START WITH THE -- THIS IS THE '917?

MR. THAKUR:  CORRECT.

THE COURT:  AND "MAILBOX" IS A TERM THAT

IS MADE UP?

MR. THAKUR:  IT IS SORT OF MADE UP, BUT AT THE SAME TIME, IT IS NOT.

IN THE REAL WORLD, WE -- IF WE WANT TO DELIVER INFORMATION TO SOMEBODY AT, YOU KNOW, A HOUSE OR A COURTROOM, THERE IS A CORRESPONDENCE BETWEEN THE MAILBOX AND THAT LOCATION.

SO --

THE COURT:  OH.  SO THE INVENTORS HERE CHOSE TO USE A REAL WORLD POST OFFICE MAILBOX TO REPRESENT SOMETHING THAT'S VIRTUAL?

MR. THAKUR:  THAT'S CORRECT, YOUR HONOR, THOUGH I WILL ARGUE THAT AT LEAST SINCE I WAS A CHILD WHEN I HEARD THE E-MAIL, I WOULD THINK TO MYSELF, "WHAT'S IN MY MAILBOX?"

SO THE TERM OF ART SEEMS TO HAVE BEEN RELATIVELY WELL ACCEPTED IN THE INDUSTRY.

THE COURT:  BUT THAT WAS AN UNDERSTANDING OF WHAT'S IN MY VIRTUAL MAILBOX, AGAIN, BORROWING FROM THE REAL WORLD OF A POSTAL MAILBOX?

MR. THAKUR:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  AND SO GIVE ME THE WHOLE SENTENCE OR PHRASE IN WHICH IT'S USED.

MR. THAKUR:  SO IT'S -- THE MAILBOX IS A STORAGE LOCATION HAVING INFORMATION ABOUT A

8

WIRELESS DEVICE.

THE COURT:  NO, I MEAN IN THE CLAIM.
WHICH CLAIM AM I IN?

MR. THAKUR:  YOUR HONOR, IT'S IN CLAIM 1
OF THE '917.

THE -- SO IT'S IN THE '917, CLAIM 1, THE
LAST ELEMENT WHERE IT SAYS, OR ONE OF THE LAST
ELEMENTS, "DELIVERING THE COMMAND FROM THE
MAILBOX."  ACTUALLY ABOVE THAT IT SAYS "PLACING A
COMMAND IN THE MAILBOX."

THE COURT:  WELL, DOESN'T IT HAVE AN
ESTABLISHING STEP?

MR. THAKUR:  IT DOES, YOUR HONOR.

SO, YOU KNOW, THE FIRST QUESTION --
THAT'S RIGHT.  SO I'M SCROLLING DOWN RATHER
QUICKLY.

THE FIRST STEP IS OBVIOUSLY THE MATTER OF
ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE.

SO AS I EXPLAINED TO YOU YESTERDAY, YOUR
HONOR, THERE IS THE OVER-THE-AIR PROVISIONING STEP
WHERE YOU JUST GET THE DEVICE AND THE SIM
ACTIVATED.

BUT THEN THERE WAS THE ENTERPRISE REMOTE
MANAGEMENT STEP WHERE THERE'S ACTUALLY A
CORRESPONDENCE BETWEEN A DEVICE AND A MAILBOX.

THE COURT: RIGHT. BUT THE FIRST USE OF THE WORD "MAILBOX" APPEARS IN ESTABLISHING -- IN THE ESTABLISHING STEP. THIS IS A METHOD CLAIM.

MR. THAKUR: THAT IS CORRECT, YOUR HONOR.

THE COURT: SO I'M ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE AT THE SERVER?

MR. THAKUR: THAT'S CORRECT, YOUR HONOR.

THE COURT: ALL RIGHT. AND SO MAILBOX WOULD HAVE THE SAME MEANING THROUGHOUT THIS CLAIM FROM WHATEVER IT IS INTERPRETED TO MEAN IN THE ESTABLISHING STEP.

MR. THAKUR: THAT'S CORRECT, YOUR HONOR.

THE COURT: ALL RIGHT. AND IS IT -- WHERE DO YOU GET YOUR DEFINITION?

MR. THAKUR: YOUR HONOR, IT'S ACTUALLY IN THE SPECIFICATION OF THE '917 PATENT ITSELF. IT'S COLUMN 6, LINES 6 THROUGH 14.

THE COURT: LINES?

MR. THAKUR: LINES 6 THROUGH 14, YOUR HONOR. SO COLUMN 6, LINES 6 THROUGH 14.

THE COURT: OKAY.

MR. THAKUR: SO WHAT YOU DO AT THAT POINT IS YOU STORE REGISTRATION INFORMATION ABOUT THE DEVICE, AND THEREFORE, YOU CREATE -- THE REGISTRATION INCLUDES THE IDENTITY OF THE DEVICE

AND THE STATE OF THE DEVICE, AND AT THAT POINT THE SERVER ESTABLISHES A MAILBOX.

SO --

THE COURT:  SO IT'S -- THE WORD IS USED, BUT IT'S NOT OTHERWISE DEFINED?

MR. THAKUR:  YOUR HONOR, I -- IT SAYS "MANAGEMENT SERVER ESTABLISH A MAILBOX FOR THE NEWLY REGISTERED REMOTELY MANAGED DEVICE," AND UP ABOVE IT DESCRIBES THE REGISTRATION AS THE CORRESPONDENCE TO THE DEVICE, THE REGISTRATION INFORMATION RELATING TO THE DEVICE.

SO THE POINT OF THIS IS TO -- THAT THE MAILBOX IS REGISTERED IN THE SERVER, BUT BEFORE YOU CAN REGISTER A MAILBOX IN THE SERVER, THERE HAS TO BE, IF YOU WILL, INFORMATION ABOUT THE DEVICE -- THE CORRESPONDENCE BETWEEN THE DEVICE AND THE MAILBOX ESTABLISHED.

THE COURT:  SO IF THIS IS SEQUENTIAL, THE REGISTRATION INFORMATION IS STORED BEFORE THE ESTABLISHMENT OF A MAILBOX?

MR. THAKUR:  YOUR HONOR, THE REASON IT'S DONE THAT WAY IS BECAUSE A DEVICE HAS TO BE PROVISIONED.  YOU ACTUALLY HAVE TO GET THE SIM CARD ACTIVATED AND KNOW WHAT THAT DEVICE IS, AND THEN YOU CAN ACTUALLY MANAGE THAT DEVICE BY CREATING A

11

MAILBOX.

THE COURT:  WELL, IT DOESN'T HAVE TO BE THAT WAY.  THAT'S THE WAY THE INVENTOR CHOSE TO DO IT.

IN OTHER WORDS, YOU CAN ESTABLISH A MAILBOX --

MR. THAKUR:  RIGHT.

THE COURT:  -- PROVISION THE DEVICE --

MR. THAKUR:  RIGHT.

THE COURT:  -- AND THERE'S NO REASON YOU HAVE TO PROVISION THE DEVICE FIRST, IS THERE?

MR. THAKUR:  THERE ALMOST IS, YOUR HONOR, BECAUSE YOU WOULDN'T KNOW WHAT DEVICE THE MAILBOX CORRESPONDS TO.  THE CORRESPONDENCE OF THE DELIVERY CAPABILITY, YOU REALLY NEED TO KNOW WHAT THE SIM IDENTIFICATION FOR THAT DEVICE IS.

THE COURT:  OKAY.  BUT YOU COULD STILL ESTABLISH A MAILBOX NOT KNOWING THE DEVICE AND THEN CORRESPOND THE DEVICE TO THE MAILBOX.

MR. THAKUR:  IF YOU PROVISIONED IT SUBSEQUENTLY, THEN YOU COULD GO BACK AND DO THAT AGAIN.  IT SEEMS LIKE A COMPLETELY UNNECESSARY STEP TO ME.

THE COURT:  BUT YOU'RE NOT SUGGESTING THAT THIS IS OR IS NOT -- WELL, ARE YOU SUGGESTING

THIS IS OR IS NOT A RECITATION BY THE INVENTOR OF A SEQUENCE?

MR. THAKUR:  YOUR HONOR, I BELIEVE IT IS, AND THAT'S WHY IT'S -- IT'S -- ONE, THAT'S THE ONLY WAY IT WAS EVER DONE AS FAR AS I'M AWARE, AND CLEARLY THE INVENTOR SPECIFICALLY STATED HOW THAT PROCESS WORKS.

THE COURT:  ALL RIGHT.  BUT OTHER THAN USING THE WORD "MAILBOX," I GUESS THE INVENTOR IS DRAWING UPON SORT OF A COMMON, ORDINARY USE OF THE TERM "COMPUTER MAILBOX."

MR. THAKUR:  CORRECT.

THE COURT:  OR "MAILBOX AT A SERVER."

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  NO OTHER SPECIALIZED DEFINITION IS GIVEN?

MR. THAKUR:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  ALL RIGHT.

MR. THAKUR:  YOUR HONOR, AND AS FAR AS I CAN TELL, IT DOESN'T SEEM TO BE THAT'S THE DISPUTE ITSELF.  IT ALMOST SEEMS SENSELESS TO HAVE A MAILBOX SITTING ON THE STREET UNLESS THERE'S A CORRESPONDENCE TO AN ADDRESS.

SO AS FAR AS I CAN TELL -- I'LL LET RESEARCH IN MOTION COMMENT, BUT AS FAR AS I CAN

13

TELL FROM THEIR POINT IS THEY DO NOT SEEM TO BE DISPUTING WHETHER THERE IS INFORMATION ABOUT THE WIRELESS DEVICE, IT'S JUST THAT THEY'RE PROPOSING A DIFFERENT DEFINITION.

THE COURT:  WELL, YES.  AND MY QUESTIONS ARE JUST TRYING TO MAKE SURE THAT WHATEVER DEFINITION I ADOPT COMES FROM THE INVENTORS AND HOW ONE WOULD READ THIS.

SO THE WAY -- THERE IS A CONCEPT OF A MAILBOX WHICH HAS A PLACE TO STORE INFORMATION FOR THE DEVICE.

HERE YOU'RE ASKING ME TO ADOPT AN INFORMATION ABOUT THE DEVICE.

MR. THAKUR:  IT HAS A -- IT KNOWS HOW TO TAKE INFORMATION FROM THE MAILBOX TO THE DEVICE, BECAUSE IF THERE'S NO CONNECTIVITY BETWEEN THE TWO, THE REST OF THE STEPS WOULD BECOME MEANINGLESS.

THE COURT:  RIGHT.  BUT WHERE DOES THE INVENTOR SET THAT OUT FOR ME?

MR. THAKUR:  YOUR HONOR, WE REALLY DO BELIEVE THAT THIS '917 -- IT SAYS THERE'S A REGISTRATION INFORMATION DONE IN DEVICE 502, AND THEN -- AND THE REGISTRATION INFORMATION INCLUDES THE IDENTITY AND THE STATE OF THE DEVICE.

SO IT REALLY HAS TO -- THAT IS DONE

14

FIRST, THEN MANAGEMENT SERVER 508 ESTABLISHES 512, THE NEWLY REGISTERED REMOTELY MANAGED DEVICE.

AGAIN, EVEN IN THAT SENTENCE, IT SAYS "FOR NEWLY REGISTERED DEVICE."

THE COURT:  BUT WHERE DOES IT SAY WHAT IT PUTS IN THE MAILBOX?

MR. THAKUR:  YOUR HONOR, AT THAT POINT IT'S NOT PUTTING ANYTHING IN THE MAILBOX.  IT'S JUST -- THE MAILBOX --

THE COURT:  WHAT IF -- IT DOESN'T EVEN PUT INFORMATION ABOUT THE DEVICE IN IT?

MR. THAKUR:  IT PUTS INFORMATION ABOUT THE LOCATION, THAT'S CORRECT.

THE COURT:  WHERE DOES IT SAY IT DOES THAT?

MR. THAKUR:  YOUR HONOR, IT DOESN'T -- THE LANGUAGE DOES NOT SAY THAT.

BUT CLEARLY ESTABLISHING A MAILBOX WOULD REQUIRE THAT THERE BE THAT INFORMATION, OR OTHERWISE THE MAILBOX WOULD JUST BE FREESTANDING, IF YOU WILL.

THE COURT:  ALL RIGHT.  SO INFERENTIALLY, I SHOULD FIND THAT WHEN YOU ESTABLISH A MAILBOX, THAT MEANS THAT YOU ARE STORING INFORMATION ABOUT THE DEVICE IN THE MAILBOX?

15

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  ALL RIGHT.  GO AHEAD.

MR. THAKUR:  AND I -- YOU KNOW, SO THE NEXT ISSUE REALLY IS THE TWO CONTROVERSIAL ISSUES, WHICH IS -- THE FIRST ONE IS IN RESEARCH IN MOTION'S CONSTRUCTION, THEY RAISE ISSUE NUMBER TWO, WHICH IS THAT THE STORAGE LOCATION THAT IT KNOWS INFORMATION ABOUT WHAT THE DEVICE IS, MUST STORE EVERY INFORMATION ABOUT THE DEVICE.

SO WHAT THEY'RE SAYING IS IT MUST BE ALL COMMANDS.

SO THERE'S A SERIES OF REASONS, YOUR HONOR, WHY I BELIEVE THAT THAT TERM CANNOT BE INCORPORATED INTO THE LANGUAGE.

FIRST, NOWHERE IN THE SPECIFICATION, NOT ONCE IN THE SPECIFICATION OF THE '917 PATENT DOES IT SAY ALL COMMANDS HAVE TO BE STORED IN THAT MAILBOX.

THERE COULD BE COMMANDS ABOUT THE DEVICE THAT ARE STORED ELSEWHERE.  IT JUST HAS TO HAVE SOME INFORMATION, SOME COMMANDS THAT ARE GOING TO BE DELIVERED TO THAT DEVICE.

THE COURT:  SO THERE WOULD HAVE TO BE TWO LOCATIONS, THEN, WITH INFORMATION ABOUT THE DEVICE?

MR. THAKUR:  THERE MAY BE -- THERE MAY

16

BE -- YOUR HONOR, THERE MAY BE MULTIPLE LOCATIONS ABOUT THE DEVICE.

THE COURT:  WELL, AT LEAST TWO, THEN.

MR. THAKUR:  AT LEAST TWO, CORRECT.

THE COURT:  AND WHAT WOULD THEY BE CALLED?

MR. THAKUR:  YOUR HONOR, IT WOULD BE MAILBOXES WITH MULTIPLE ADDRESSES.  SO YOU CAN HAVE A SCENARIO, YOUR HONOR, WHERE --

THE COURT:  WHAT WOULD THEY BE CALLED?

MR. THAKUR:  THEY WOULD STILL BE CALLED MAILBOXES, CORRESPONDENCE, BUT THE MAILBOX CAN HAVE A SINGLE CAS, WHERE IT HAS 1:1 ASSOCIATION WITH THE DEVICE, IT CAN HAVE A MULTI CAS SCENARIO WHERE YOU HAVE ALL THE VICE-PRESIDENTS AT IBM GET THIS CONNECTIVITY INFORMATION, AND THEREFORE IT WOULD BE A MULTI CAS; OR THE SCENARIO COULD BE A SINGLE MAILBOX WHERE EVERY INFORMATION -- EVERY EMPLOYEE OF IBM RECEIVES THE SAME INFORMATION AND THERE'S A SEPARATE MAILBOX GOING FROM THAT.

SO THAT'S SORT OF THE BROADCAST SCENARIO. THERE IS NOT NECESSITY TO HAVE A 1:1 CORRESPONDENCE BETWEEN THE DEVICE AND A MAILBOX.

THAT IS THE MOST COMMON WAY IT'S DONE, BUT THAT DOESN'T MEAN THAT IT'S -- THAT YOU'LL

17

NEVER HAVE THAT SCENARIO WHERE YOU'LL HAVE MORE THAN 1:1 CORRESPONDENCE.

THE COURT:  ALL RIGHT.

MR. THAKUR:  I'LL GIVE YOU AN EXAMPLE.

THE COURT:  WHERE DOES -- I UNDERSTAND WHAT YOU'RE TELLING ME, BUT WHERE DOES THE -- WHERE DO THE INVENTORS SET THAT OUT?

MR. THAKUR:  YOUR HONOR, IT'S ACTUALLY -- I THINK IN THIS CASE IT'S RELATIVELY CLEAR.

THE FIRST ONE IS, WHAT THEY'RE ASKING FOR IS NOWHERE IN THE SPECIFICATION.

NUMBER TWO, WHAT THEY'RE ASKING FOR IS THAT THE WORD "ALL COMMANDS" BE USED TO INCLUDE THE WORD "ALL" WITH "COMMANDS."

THE COURT:  IGNORE THEM FOR A MOMENT.

MR. THAKUR:  NO, NO.

THE COURT:  YOU'RE AT AN ADVERSARY LEVEL, AND I APPRECIATE THAT, BUT I START OUT AS THOUGH I'M THE PTO.  THEY'RE NOT EVEN PRESENT AT THE PTO.

MR. THAKUR:  RIGHT.

THE COURT:  AND SO WHEN THE PTO SAYS, ALL RIGHT, WHAT HAVE YOU INVENTED --

MR. THAKUR:  RIGHT.

THE COURT:  -- AND YOU'RE SAYING WHAT I'VE INVENTED IS SOMETHING THAT HAS THIS MANY TO

18

ONE RELATIONSHIP.

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  AND I SAY, WELL, SHOW ME THAT HERE IN YOUR APPLICATION.  THIS SPECIFICATION IS WHAT WAS THE ORIGINAL APPLICATION, SO SHOW ME THAT.

MR. THAKUR:  CORRECT, YOUR HONOR.

SO IN SEVERAL POINTS, THERE'S AT LEAST EIGHT CLAIMS IN THIS PATENT WHERE ALL COMMANDS ARE USED.

SO WHEN THE TERM -- WHEN YOU HAVE -- WHEN THE INVENTORS WANTED TO SAY "ALL COMMANDS," THEY USED THE WORD "ALL COMMANDS," AGAIN, AT LEAST EIGHT CLAIMS IN THIS PATENT.

THE COURT:  SO I START OUT KNOWING THERE CAN BE MULTIPLE MAILBOXES BY SAYING, WELL, THE WORD OR THE PHRASE "ALL COMMANDS" IS USED?

MR. THAKUR:  RIGHT.

THE COURT:  AND THAT MEANS?

MR. THAKUR:  IT CAN BE -- WELL, THE PHRASE -- IF -- WHEN THEY WANTED -- WHEN THE INVENTORS WANTED TO SAY ALL COMMANDS SHOULD BE PUT IN THE MAILBOX, THEY SAID ALL COMMANDS.

WHEN THEY JUST SAID SOME COMMANDS, IF YOU WILL, THEN THEY SAID -- THEY DIDN'T USE THE WORD "ALL."  THEY JUST SAID "COMMANDS."

19

THE COURT:  ALL RIGHT.  SO HOW DOES THAT TELL ME ANYTHING ABOUT THE NUMBER OF MAILBOXES?

MR. THAKUR:  YOUR HONOR, THE -- THE IDEA IS THAT -- MAYBE I CAN USE AN EXAMPLE.  THAT MIGHT BE EASIER.

SO WHAT MIGHT HAPPEN IN YOUR E-MAIL SCENARIO IN TODAY'S WORLD IS THERE MAY BE A MAILBOX SET UP FOR YOU, JUDGE WARE, WHERE ANYONE WHO WANTED TO SEND YOU AN E-MAIL COULD SEND THAT TO YOU. THAT'S ONE MAILBOX WHERE YOU'RE IDENTIFIED, IDENTITY IS SET UP.

A SECOND SCENARIO MIGHT BE IS I'M SUBMITTING BRIEFS TO THE COURT AND THERE'S ACTUALLY A SECOND MAILBOX SET UP WHERE THE MAILBOX DELIVERS TO SEVERAL MEMBERS OF THE COURTHOUSE, AND SO THERE MAY BE MULTIPLE MAILBOXES CORRESPONDING TO A SINGLE DEVICE.

THE COURT:  I UNDERSTAND THAT.  YOU'RE USING VERY RICH EXAMPLES, AND I APPRECIATE THAT.

HOW DO I KNOW THE INVENTOR CAME UP WITH THAT?  THAT'S SOMETHING YOU'RE TELLING ME.  I WANT TO SEE THAT THE INVENTOR TOLD ME THAT.

MR. THAKUR:  YOUR HONOR, AND I WOULD MAKE THE ARGUMENT THAT THE INVENTOR DID TELL YOU THAT BECAUSE WHEN HE WANTED --

20

THE COURT: WHERE? WHERE? DON'T MAKE AN ARGUMENT. THIS IS A -- THIS IS WHITE HAT INFORMATION. I WANT TO SEE IT FROM THE PAGES OF THE SPECIFICATION OR THE FILE WRAPPER.

I MEAN, YOU CAN TELL ME ANYWHERE YOU WANT, BUT DON'T SAY NOTHING.

MR. THAKUR: RIGHT, YOUR HONOR. SO IN THE -- LET ME JUST TURN YOU TO THE '917 PATENT.

THE COURT: YES.

MR. THAKUR: IT'S IN COLUMN 5.

THE COURT: THANK YOU.

MR. THAKUR: SORRY.

THE COURT: WHERE?

MR. THAKUR: SO '917, COLUMN 5, LINES 41 THROUGH 43.

THE COURT: THANK YOU.

MR. THAKUR: THERE'S TWO THINGS THAT COME FROM THAT.

ONE, THIS IS DEALING WITH A SCENARIO WHERE IT SAYS MAILBOX 314 STORES COMMANDS THAT ARE TO BE DELIVERED TO REMOTELY MANAGED DEVICES SO THAT THE DEVICES CAN RETRIEVE THE COMMANDS.

SO TWO THINGS THERE, YOUR HONOR: ONE, IT IS ABSOLUTELY CLEAR THAT THE MAILBOX STORES COMMANDS THAT ARE TO BE DELIVERED TO REMOTELY

MANAGED DEVICES, PLURAL.

SO THE ARGUMENT THAT THEY HAVE MADE --
THAT THEY MAKE THAT IT MUST BE 1:1 CORRESPONDENCE
IS CONTRADICTED BY THE EXPRESS LANGUAGE OF THE
SPECIFICATION.

YOUR HONOR, NUMBER TWO, MAILBOX STORES
COMMANDS.  NOWHERE DOES IT SAY ALL COMMANDS.

AND SEVERAL POINTS IN THE SPECIFICATION,
HOWEVER, YOUR HONOR, AND THE CLAIM, WHEN THEY WANT
ALL COMMANDS, THEY USE THE TERM "ALL COMMANDS."

AND SO BASIC PRINCIPLE OF CLAIM
DIFFERENTIATION, YOUR HONOR, IS IF THEY MEANT TO
SAY ALL COMMANDS, THEY WOULD HAVE SAID ALL COMMANDS
BECAUSE THEY CLEARLY KNOW HOW TO DO SO.

THE COURT:  ALL RIGHT.  WELL, YOU JUMPED,
BUT I UNDERSTAND THIS IS A STATEMENT THAT IS
TALKING ABOUT THE DRAWINGS AND SAYS THAT FIGURE 314
STORES COMMANDS THAT ARE TO BE DELIVERED TO
REMOTELY MANAGED DEVICES.

MR. THAKUR:  CORRECT.

THE COURT:  AND SO THAT DOES SUGGEST THAT
A SINGLE MAILBOX STORES COMMANDS THAT ARE TO BE
DELIVERED TO MULTIPLE DEVICES WHICH WOULD CREATE,
AS I UNDERSTAND IT, A CIRCUMSTANCE WHERE -- AND SO
IS THAT -- WHICH FIGURE IS THAT REFERRING TO?

FIGURE 1?

MR. THAKUR:  YOUR HONOR, THIS ONE IS REFERRING TO FIGURE 1.

ACTUALLY, I DON'T BELIEVE THAT'S CORRECT. I BELIEVE IT'S REFERRING TO FIGURE 3.

THE COURT:  I DON'T SEE IT.

MR. THAKUR:  FIGURE 3, YOUR HONOR.

THE COURT:  FIGURE 3.

MR. THAKUR:  I APOLOGIZE.

THE COURT:  SO IN THIS CASE, "MAILBOX" IS USED SYNONYMOUSLY WITH "DEVICE CONTROL BOX"?

MR. THAKUR:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  BUT THIS DRAWING DOESN'T SHOW ME THE RELATIONSHIP -- THIS IS A BLOCK DIAGRAM, BUT IT DOESN'T SHOW ME THE RELATIONSHIP OF THAT DEVICE CONTROL BOX TO THE REMOTE DEVICES.

MR. THAKUR:  YOUR HONOR, I THINK IT'S DOING THAT MORE THROUGH THE EXPLANATION BY EXPLAINING HOW THE MANAGEMENT SERVER WORKS, AND IT'S SENDING YOU INTO THE WIRELESS NETWORK, WHICH WILL EVENTUALLY BE DELIVERED, AS YOU NOTE IN FIGURE 1, TO MULTIPLE DEVICES.

SO ACTUALLY MAYBE AN EXAMPLE OF FIGURE 2 WOULD BE HELPFUL, YOUR HONOR.

THE COURT:  NOW, I WOULD -- I WOULD -- I

23

WOULD BE MISREADING THIS -- YOUR ARGUMENT WOULD BE THAT 314 COULD INCLUDE A PLURAL NUMBER OF MAILBOXES?

IN OTHER WORDS, IF IT -- 314 COULD BE MULTIPLE MAILBOXES?

MR. THAKUR:  THAT'S CORRECT.

AND THE REVERSE COULD BE TRUE WHERE A SINGLE MAILBOX MAY RELATE TO MULTIPLE DEVICES.

THE COURT:  ALL RIGHT.  THAT EXPLICIT STATEMENT IS NOT INCLUDED?

MR. THAKUR:  YOUR HONOR, THE EXPLICIT STATEMENT DEALS WITH ONE MAILBOX WITH MULTIPLE DEVICES, WHICH BASICALLY SAYS THAT THERE CANNOT BE A 1:1 CORRESPONDENCE.

THE REVERSE, AGAIN, IS PROVING THE NEGATIVE.

THE COURT:  VERY WELL.  ALL RIGHT.  I UNDERSTAND THAT POINT.  GO AHEAD.

MR. THAKUR:  OKAY.  YOUR HONOR, SO AS I -- I WANTED TO JUST USE AN EXAMPLE IS TO SIMPLY SAY THAT IN TODAY'S WORLD, AS I MENTIONED, THERE ARE MULTIPLE SCENARIOS WHERE YOU MAY HAVE A SINGLE MAILBOX FOR WHICH YOU ARE WORKING WITH MULTIPLE DEVICES AS I EXPLAINED DELIVERING PAPERS TO THE CHAMBERS, AND YOU CAN HAVE A REVERSE SCENARIO WHERE

24

YOU CAN HAVE MULTIPLE MAILBOXES DEALING WITH A SINGLE DEVICE WHERE I'M GETTING INFORMATION FROM, FROM ONE AND ONE CORRESPONDENCE OR A MULTI CAS SCENARIO, AND THAT'S REALLY OLD LINE TELECOMMUNICATIONS METHOD OF DELIVERING MESSAGES.

SO --

THE COURT:  BUT MY, MY MAILBOXES --

MR. THAKUR:  RIGHT.

THE COURT:  -- WOULD ALL SHOW UP TO ME.

HOW WOULD THEY KNOW HOW TO GET TO ME?  I WOULD HAVE -- HOW WOULD THEY BE COMBINED SO THAT THEY GET TO ME?

MR. THAKUR:  THAT'S WHY I -- THE FIRST POINT I MADE WAS THAT THE STORAGE DEVICE IN EACH MAILBOX KNOWS WHERE THE DESTINATION IS.

IF THEY DON'T KNOW WHERE THE DESTINATION IS, THEY SIMPLY FAIL TO SERVE AS MAILBOXES.

THE COURT:  SO A SINGLE DEVICE COULD HAVE MULTIPLE MAILBOXES THAT WOULD SEND INFORMATION TO THAT SINGLE DEVICE?

MR. THAKUR:  CORRECT.

THE COURT:  ALL RIGHT.  I UNDERSTAND.

GO ON TO OTHER POINTS.

MR. THAKUR:  OKAY, YOUR HONOR.

SO MOVING NOW TO CLAIM ELEMENT -- CLAIM

25

TERM 2 THAT NEEDS TO BE INTERPRETED, YOUR HONOR, THE QUESTION REALLY IS -- IT'S VIRTUALLY IDENTICAL TO THE FIRST ONE.  THE CLAIM LANGUAGE SAYS THE "CONTENTS OF THE MAILBOX."

AND THE DIFFERENCE REALLY BETWEEN THE PARTIES IS --

THE COURT:  WHERE DOES THIS SHOW UP IN THE CLAIM?

MR. THAKUR:  IT'S -- CONTENTS IN THE MAILBOX IS IN CLAIM -- '917, CLAIM 1, IN CONNECTION WITH -- SO IT'S IN THE DELIVERING THE COMMAND FROM THE MAILBOX AT THE SERVER TO THE WIRELESS DEVICE BY ESTABLISHING A CONNECTION BETWEEN THE WIRELESS DEVICE AND THE SERVER, TRANSMITTING THE CONTENTS OF THE MAILBOX.

THE COURT:  ALL RIGHT.

MR. THAKUR:  AND YOUR HONOR, THOSE CONTENTS ARE THE COMMANDS THAT ARE BEING PUT IN THE MAILBOX, BECAUSE WE'RE NOT DEALING WITH THE ACTUAL MESSAGES THAT ARE BEING DELIVERED, WE'RE DEALING WITH THE MANAGEMENT PROTOCOLS, NOT THE -- MANAGEMENT ISSUES, SO THIS IS REALLY MANAGEMENT COMMANDS, NOT INFORMATION ABOUT, YOU KNOW, LET'S GET TOGETHER THIS EVENING.  IT'S ABOUT, LET ME UPDATE YOUR CALENDAR.

THE COURT:  SO THE CONTENTS ARE -- IS A COMMAND.

MR. THAKUR:  CORRECT.

THE COURT:  ALL RIGHT.  I GOT THAT.

MR. THAKUR:  ALL RIGHT.  AND SO THE DIFFERENCE BETWEEN THE PARTIES IS WE SAY IT'S ONE OR MORE COMMANDS TO -- IN THE MAILBOX, AND THEY ARE TAKING THE POSITION THAT IT'S ALL THINGS IN THE MAILBOX.

AND THE REASONING IS VIRTUALLY IDENTICAL FROM WHAT I EXPLAINED BEFORE.  ONE, NUMEROUS TIMES IN THIS PATENT, THEY EXPLAIN DELIVERING THE CONTENTS, AND SO THEY DON'T SAY ALL CONTENTS.

BUT NUMEROUS TIMES IN THIS PATENT, THEY SAY DELIVERY OF ALL CONTENTS.  SO THESE INVENTORS OBVIOUSLY, WHEN THEY MEANT TO SAY ALL CONTENTS, THEY SAID ALL CONTENTS.

NUMBER TWO, YOUR HONOR --

THE COURT:  SO REALLY I NEED A GOOD DEFINITION OF COMMAND, DON'T I?

MR. THAKUR:  YOUR HONOR, YES.  THE COMMAND IS A SUBSEQUENT TERM AND THAT'S COMING --

THE COURT:  OH, ALL RIGHT.

MR. THAKUR:  -- DOWN THE LINE.

THE COURT:  OH.

27

MR. THAKUR:  JUST TO GIVE YOU A PREVIEW, WE HAVE ACTUALLY A PROPOSED DEFINITION OF A COMMAND, AND THEY ARE ACTUALLY PROPOSING THAT THE COMMAND BE NOT DEFINED.

BUT WE'LL -- WHEN I GET TO THAT, I'LL EXPLAIN FOR THE VERY REASON, YOUR HONOR, THAT A COMMAND LEFT UNDEFINED IN THE CONTEXT OF THIS PATENT IS A VERY BROAD TERM.  IT DEALS WITH COMMANDS FOR REMOTE MANAGEMENT ISSUES.  CLEARLY THAT'S WHAT THIS PATENT IS ABOUT.

THE COURT:  SO YOU THINK THE PREAMBLE IS LIMITING?

MR. THAKUR:  YOUR HONOR, I DO, CORRECT.

IT IS -- THIS IS -- THIS PATENT IS RELATING TO REMOTE MANAGEMENT DEVICES, ABSOLUTELY.

AND PRIOR ART WITH RESPECT TO OVER-THE-AIR PROVISIONING WAS EXPRESSLY CITED IN THIS PATENT AND, NUMBER TWO, MUST HAVE BEEN KNOWN TO THE EXAMINER.

AS I EXPLAINED, BY THAT TIME, VIRTUALLY EVERY CELL PHONE WAS PROVISIONED OVER-THE-AIR.

SO THE COMMAND REALLY DOES RELATE TO REMOTE MANAGEMENT AND NOT TO OVER-THE-AIR PROVISIONING.

THE COURT:  IS THERE ANY PLACE -- WELL, I

28

WON'T -- I'LL LET YOU GET TO COMMAND BECAUSE THAT'S CAPTURED MY ATTENTION AT THIS POINT.

SO I UNDERSTAND WHAT YOU'RE SAYING ABOUT CONTENTS.  LET'S MOVE ON.

MR. THAKUR:  GREAT.  SO BOTTOM LINE, YOUR HONOR, IS THERE -- FROM A PRINCIPLE CLAIM DIFFERENTIATION -- AND EVEN RESEARCH IN MOTION HAS NUMEROUS PATENTS OUT THERE WHERE THE WORD "ALL COMMANDS" IS USED.

AND IN EVERY ONE OF THEIR OWN PATENTS THEY USE THE WORD "ALL CONTENTS," THEY USE THE WORD "COMPLETE CONTENTS," OR THEY USE THE WORD "ENTIRE CONTENTS."

WHAT I WOULD ARGUE TO YOU, YOUR HONOR, IS THAT ANY PARTY, WHEN THEY WANT TO SAY ALL, THEY SAY ALL.  IF THEY DON'T MEAN ALL, THEY SAY -- YOU KNOW, THEY SAY "GIVE ME X WITHOUT SAYING GIVE ME ALL OF X."

THE COURT:  GO ON.

MR. THAKUR:  OKAY.  SO SINCE THE WORD "COMMAND" CAUGHT YOUR INTEREST, I'M GOING TO SWITCH TO COMMAND.

SO THIS IS CLEARLY A PRETTY CRITICAL ASPECT OF THIS INVENTION.  AS YOU NOTICE IN THE WORD -- CLAIM 1 OF THE '917 PATENT, THE WORD

29

"COMMAND" IS USED.

SO AS I EXPLAINED, THE FIRST STEP YOU DO IS YOU CREATE A MAILBOX CORRESPONDING TO THE DEVICE.

AND THE NEXT THING IS YOU PUT A COMMAND IN THE WIRELESS DEVICE, SO THIS COULD BE ANY TYPE OF REMOTE MANAGEMENT COMMAND.

AS I EXPLAINED, IT COULD BE A SECURITY CLEARED DEVICE.  IF IT'S THE FIRST COMMAND MORE LIKELY THAN NOT, YOUR HONOR, IT'S PROBABLY AN I.T. POLICY THAT SAYS THIS IBM EXECUTIVE HAS JUST JOINED THE COMPANY --

THE COURT:  WELL, LET'S DO IT IN STEPS. SO FIRST THE WORD "COMMAND" DOES SHOW UP.

MR. THAKUR:  CORRECT.

THE COURT:  IT ACTUALLY SHOWS UP IN THE STEPS.  IT'S NOT IN THE PREAMBLE.

MR. THAKUR:  THAT'S CORRECT.  I DO BELIEVE I MISSTATED THAT.

THE QUESTION, I THINK, WE WERE TRYING TO STRUGGLE WITH WAS WHAT DOES THE WORD -- WHAT ARE THESE COMMANDS THAT ARE BEING PLACED IN THE MAILBOX?

THE COURT:  EXACTLY.  NOW, DOES THE SPECIFICATION DEFINE IT?

MR. THAKUR: YOUR HONOR, ABSOLUTELY. SO THERE'S THREE THINGS THAT CLEARLY MAKE IT VERY CLEAR THAT THE COMMAND HAS TO BE RELATED TO REMOTE MANAGEMENT.

THE COURT: WHERE DO I FIND THAT?

MR. THAKUR: SO FIRST LET ME START WITH THE TITLE OF THE PATENTS THEMSELVES.

THE '917 SAYS "SYSTEM AND METHOD FOR REMOTE CONTROL AND MANAGEMENT OF WIRELESS DEVICES."

THIS PATENT IS DIRECTED -- I'M NOT SAYING THIS IS MY EXCLUSIVE ARGUMENT, YOUR HONOR, I'M JUST POINTING OUT THAT FROM THE GET-GO, THEY MAKE IT ABSOLUTELY CLEAR THAT THIS IS ABOUT DEVICE MANAGEMENT FROM THE SERVER SIDE. THAT'S WHAT THE '917 PATENT IS ABOUT.

NUMBER TWO, IN THE SPECIFICATION, THERE ARE NUMEROUS EXAMPLES OF THE COMMANDS THAT ARE BEING PLACED IN THIS MAILBOX.

THERE IS NOT A SINGLE EXAMPLE WHERE A COMMAND IS PLACED IN THIS MAILBOX THAT DOES NOT RELATE TO REMOTE MANAGEMENT.

THE COURT: SO PROVE THAT.

MR. THAKUR: OKAY. WELL, YOUR HONOR, I GUESS THE WAY TO PROVE IT IS BY SAYING IF YOU TAKE A LOOK AT THE FIRST -- EVERY SCENARIO WHERE THE

31

WORD "COMMAND" IS USED, IT'S IN MANAGEMENT.

SO PROBABLY THE BEST WAY TO DO THAT IS TO, ONE, TAKE A LOOK AT FIGURE 4, AND IT DEALS WITH THE MANAGEMENT SERVER PUT COMMANDS IN DCB, WHICH IS THE MAILBOX, YOUR HONOR.

AND THEN GOING INTO THE SPECIFICATION, IN -- LET ME JUST POINT OUT, COLUMN 6, LINE 19 THROUGH 30.

THE COURT:  LINE 19 THROUGH 30?

MR. THAKUR:  YES, SIR, COLUMN 6.

SO MANAGEMENT SERVER ALSO TRANSMITS A MESSAGE ACKNOWLEDGING SUCCESSFUL REGISTRATION OF THE REMOTELY MANAGING DEVICE.

THE COURT:  WHAT LINE ARE YOU ON?

MR. THAKUR:  I'M SORRY.  I'M ON LINE 16.

SO THE -- AND I'M GOING TO READ THROUGH IT, 16 AND 17, BUT FIRST FOCUSSING ON LINE 16.

YOUR HONOR, REPEATEDLY THROUGH THIS PATENT THE TERM "REMOTELY MANAGED DEVICE" IS USED. SO IT'S TO MAKE CLEAR THAT THIS DEVICE AND THIS TECHNOLOGY AT ISSUE IS REMOTE MANAGEMENT, NOT JUST SOME GENERAL PROVISION.

AND THEN IT GOES VERY SPECIFICALLY.  "IN STEP 406 MANAGEMENT SERVER 508 PLACES COMMANDS INTENDED FOR REMOTELY MANAGED DEVICE.  SUCH

32

COMMANDS MAY INCLUDE, FOR EXAMPLE, ENABLING DISABLING ACCESS," THIS IS THE LOCK AND WIPE I MENTIONED, YOUR HONOR, "ENABLING AND DISABLING APPLICATIONS," THIS IS THE APPLICATION UPGRADE AS I EXPLAINED YESTERDAY IN THE TUTORIAL, "ERASING ALL OR PART OF THE DEVICE CONTENTS."

AGAIN, A SCENARIO WHERE WE DEAL WITH SECURITY AND THERE'S A LOCK AND WIPE INVOLVED.

NEXT ONE, "TRANSMITTING NEW PROGRAMS," SO INSTEAD OF JUST AN UPGRADE TO THE DEVICE, YOU'RE TRANSMITTING THE NEW APPLICATION.

YOUR HONOR, THERE'S AN EXAMPLE OF APPLICATION.

BUT EVERY SINGLE ONE OF THOSE COMMANDS IS SPECIFICALLY LIMITED TO A REMOTELY MANAGED DEVICE AND THOSE COMMANDS ARE SIMPLY LIMITED TO REMOTE MANAGEMENT TASKS.

AND TO LEAVE IT UNINTERPRETED, YOUR HONOR, IS -- THE IMPACT OF THAT SIMPLY IS THAT OVER-THE-AIR PROVISIONING PRIOR ART AND COMMANDS RELATED TO THAT WILL REMAIN AS A VIABLE OPTION.

THE COURT:  THE ONE EXAMPLE THAT YOU'RE ON NOW SAYS TRANSMITTING NEW PROGRAMS AND DATA.

IS THERE A DIFFERENCE BETWEEN A COMMAND AND DATA?

MR. THAKUR: YOUR HONOR, DATA IS IN THE -- COMMAND -- EVERYTHING IN THE WORLD IS IN THE FORM OF DATA, BUT IN PATENT APPLICATION AND THIS SCENARIO, USUALLY THE INFORMATION DATA IS PRESUMED TO DEAL WITH THE E-MAIL DATA, FOR EXAMPLE.

SO IT'S -- IT'S INFORMATION THAT'S NOT RELATING TO MANAGEMENT. IT'S INFORMATION THAT IS THE DATA.

SO BY WAY --

THE COURT: SO IS A COMMAND, THEN, COULD THE -- IS A COMMAND THE SAME AS AN INSTRUCTION?

MR. THAKUR: IT IS, EFFECTIVELY, CORRECT.

THE COURT: AND IS DATA AN INSTRUCTION?

MR. THAKUR: THE INSTRUCTION WILL BE IN THE FORM OF A DATA, YOUR HONOR. DATA IS A MORE GENERIC TERM TO DESCRIBE 1'S AND 0'S THAT WE LIVE IN IN THE DIGITAL WORLD.

THE COURT: SO AN INSTRUCTION IS A KIND OF DATA?

MR. THAKUR: CORRECT.

THE COURT: BUT NOT ALL DATA FOR THIS DEVICE ARE INSTRUCTIONS?

MR. THAKUR: YOUR HONOR, IT'S -- IT'S -- IT'S THE COMMAND THAT SAYS TRANSMIT THE DATA, FOR EXAMPLE.

SO IT'S THE INSTRUCTION -- COMMAND -- YOU CAN USE THE WORD "INSTRUCTION."  IT IS THE SAME THING.

THE INSTRUCTION IN THE FORM OF A DATA HAS TO BE DELIVERED TO THE DEVICE, AND SO WHAT THIS IS DEALING WITH ACTUALLY IS SAYING TRANSMITTING NEW PROGRAMS AND DATA TO A DEVICE.

AN EXAMPLE OF THAT MIGHT BE THE CALENDAR ITSELF, OR THE UPDATED CALENDAR WITH THE DATA INCLUDED IN THERE TO DO THAT.

THE COURT:  ALL RIGHT.  THIS PROBABLY GOES BACK TO THE TUTORIAL, THEN.  YOU'RE TRYING TO DISTINGUISH -- YOU'RE TRYING TO TEACH ME TO DISTINGUISH BETWEEN THE COMMANDS, AS YOU'RE CALLING THEM, THAT HAVE TO DO WITH HOW THE REMOTE DEVICE OPERATES, AND THE INFORMATION THAT IT DISPLAYS THAT IT'S OPERATING ON.

MR. THAKUR:  CORRECT.

THE COURT:  NOW, WHERE -- IS THERE ANY PLACE IN THE SPECIFICATION WHERE THE INVENTOR HIGHLIGHTS THAT DISTINCTION?

MR. THAKUR:  YOUR HONOR, I THINK THE WAY TO HIGHLIGHT THAT IS THE, THE -- EVERY SINGLE PLACE IN THIS PATENT THEY REFER TO THE REMOTE MANAGEMENT DEVICE AND THE MANAGEMENT TASKS THAT ARE DONE.

35

THE COURT:  BUT DO THEY EVER TALK ABOUT THE MESSAGE OR THE THING THAT'S BEING OPERATED ON TO SHOW A DISTINCTION BETWEEN THE TWO?

MR. THAKUR:  THEY DO NOT SHOW THE DISTINCTION BETWEEN THE TWO BECAUSE THEY DON'T DEAL WITH THE DATA, THE INFORMATION ITSELF THAT'S BEING DELIVERED.

THE COURT:  SO IN THE BACKGROUND OF THE INVENTION, THEY TALK ABOUT THIS AS BEING SOMETHING THAT IS TO BE DISTINGUISHED FROM THOSE PROGRAMS OR METHODS THAT DEAL WITH THE TRANSMISSION OF MESSAGES OR DATA?

MR. THAKUR:  YES, YOUR HONOR, IN THE WAY THAT THEY SAY "THE PRESENT INVENTION RELATES TO A SYSTEM AND METHOD FOR MANAGING, CONTROLLING AND RECONFIGURING WIRELESS DEVICES REMOTELY OVER THE WIRELESS NETWORK."  THAT'S THE FIELD OF THE INVENTION.

AND IT GOES -- THEY DO THE SAME THING IN THE BACKGROUND OF THE INVENTION.  THEY REPEATEDLY THROUGH THE PATENT MAKE IT ABUNDANTLY CLEAR THAT THIS PATENT IS ABOUT DEVICE MANAGEMENT AND CONTROLLING AND RECONFIGURING THOSE DEVICES.

IT'S NOT ABOUT THE ACTUAL CONTENTS OF THE E-MAIL THAT YOU MAY BE RECEIVING PURSUANT TO THAT

36

TECHNOLOGY.

AND I THINK THE REASON THE DEFENDANT IS SEEKING TO HAVE IT OPEN IS BECAUSE THE COMMAND AT ISSUE THAT THEY WOULD LIKE TO USE AS PRIOR ART IS OVER-THE-AIR PROVISIONING, AND THOSE PATENTS, ONE RECITED IN THE PRIOR ART AND THE APPLICATION AND THE PROSECUTION HISTORY AND QUICKLY DISMISSED, AND I WOULD ARGUE, YOUR HONOR, ANYONE IN THE FIELD AT THAT TIME WOULD HAVE KNOWN THAT DEVICES WERE OVER-THE-AIR PROVISIONED AND COMMANDS RELATING TO THAT ARE NOT WHAT ARE CONTEMPLATED HERE.

THE COURT:  ALL RIGHT.  SAY THAT ONE AGAIN.

MR. THAKUR:  SO THE REASON THAT THE COMMAND -- THAT I BELIEVE THAT THE WORD -- THEY WOULD PREFER THAT THE WORD "COMMAND" NOT BE INTERPRETED TO DEAL WITH REMOTE MANAGEMENT IS BECAUSE THEY WANT TO USE PRIOR ART WHERE COMMANDS RELATING TO PROVISIONING, FOR EXAMPLE, ARE POTENTIALLY -- THEY COULD HAVE SIMILAR CLAIMS WHERE COMMANDS RELATING TO PROVISIONING COULD SATISFY THIS ELEMENT AND THEREFORE AS A POTENTIAL BE INVALIDATING PRIOR ART.

AND WHAT I -- WHAT I'M ARGUING, YOUR HONOR, IS IF THIS TERM IS LEFT UNINTERPRETED, THE

37

IMPACT WILL BE -- IS THAT WE'LL BE BACK HERE MOST LIKELY AT SOME POINT DEALING WITH THE VALIDITY ISSUE OF THE PATENT, BECAUSE THE COMMAND -- DOES THE COMMAND RELATE TO PROVISIONING, OR DOES THE COMMAND RELATE TO REMOTE MANAGEMENT?

THE COURT:  I SEE.  SO THIS IS POST-PROVISIONING?

MR. THAKUR:  RIGHT.

THE COURT:  COMMAND TAKES ON A DIFFERENT MEANING.

MR. THAKUR:  ABSOLUTELY.

THE COURT:  THAN AFTER PROVISIONING?

MR. THAKUR:  THAT'S CORRECT.  AND --

THE COURT:  ALL RIGHT.  GO ON.

MR. THAKUR:  YOUR HONOR, THEY DO CITE A CASE, W.E. HALL, TO SUPPORT THEIR ARGUMENT THAT THAT'S THE CASE.

BUT I JUST WANT TO JUST SIMPLY SAY, YOUR HONOR, THE CASE THAT THEY CITE IS CLEARLY INAPPOSITE TO THIS CASE, BECAUSE IN THAT CASE, YOUR HONOR, THE PATENT PRIOR -- THE PROSECUTION HISTORY MADE IT ABSOLUTELY CLEAR THAT THE CONSTRUCTION AFFORDED IT HAD TO BE SPECIFIC TO THE WAY IT WAS DESCRIBED.

SO LET ME JUST TURN TO WHAT THEY -- WHAT

THAT CASE DEALT WITH.

IN THAT CASE, THE PATENT TERM, CLAIM TERM THAT WAS BEING INTERPRETED DEALT WITH A SINGLE PIECE CONSTRUCTION.

IF YOU USE THE TERM "SINGLE PIECE CONSTRUCTION," CERTAINLY IT'S INAPPOSITE TO INTERPRET THAT TO HAVE MULTIPLE PIECE CONSTRUCTION.

SO IT SEEMS --

THE COURT:  WHAT'S YOUR BACKGROUND? BECAUSE YOU'RE USING INAPPOSITE.  I USE INAPPOSITE. IT'S SORT OF LIKE EITHER, EITHER, NEITHER, NEITHER.

MR. THAKUR:  I'M ACTUALLY A BRITISH GUAMANIAN.

THE COURT:  AND THEY SAY INAPPOSITE?

MR. THAKUR:  THEY SAY INAPPOSITE.

THE COURT:  THANK YOU.  I'VE HEARD THAT BEFORE.  BUT I ALWAYS HAVE TO TRAIN MY EAR A LITTLE BIT.

MR. THAKUR:  NO PROBLEM.  I ACTUALLY HAD TO WORK HARD TO LIMIT MY ENGLISH ACCENT SO IT'S EASIER TO UNDERSTAND.

SO IN ANY CASE, AS I WAS ARGUING, YOUR HONOR, THAT REALLY THEIR ENTIRE ARGUMENT IN THAT CASE IS BASED ON A CASE WHERE JUST READING THE CLAIM TERM IS SO SELF-EXPLANATORY.

WHEN YOU SAY "SINGLE PIECE CONSTRUCTION," YOU CAN'T GO TO THE COURT AND SAY THAT COULD BE MULTIPLE PIECES.

AND SO IN THAT CASE WHEN THE COURT RULED TO SAY THE CLAIM TERM IS SPECIFICALLY LIMITED TO AS SPECIFIED, THE COURT WAS ABSOLUTELY CORRECT IN THAT SCENARIO.

THE COURT:  ALL RIGHT.  I UNDERSTAND THE DISTINCTION YOU'RE ASKING ME TO MAKE BETWEEN COMMANDS AND THE PROVISIONING PROCESS.

GO ON.

MR. THAKUR:  THANK YOU, YOUR HONOR.  AND THAT IS THE ISSUE WITH THE COMMAND.

SO LET ME MOVE ON TO THE NEXT CLAIM TERM.

SO THE NEXT CLAIM TERM IS "PLACING A COMMAND FOR THE WIRELESS DEVICE IN THE MAILBOX."

CLEARLY, AS WE HAVE DISCUSSED UP ABOVE, THE WORD "COMMAND" AND THE MAILBOX --

THE COURT:  LET ME SEE.  WHERE DO YOU GET THAT?  THAT'S IN THE PLACING STEP?

MR. THAKUR:  THAT'S CORRECT.  THAT'S THE PLACING STEP IN THE '917, CLAIM 1.

AND SO AS I THINK IF YOU UNDERSTAND -- IF YOU HAVE DEFINED THE WORD "COMMAND" AND YOU HAVE DEFINED THE WORD "MAILBOX," THEN AT THAT POINT,

40

PLACING THE COMMAND IS PLAIN ENGLISH AND ARGUING --
INTERPRETING THAT FURTHER CAN ONLY SERVE TO CONFUSE
THE JURY.

THE COURT:  NOW, I NOTICE THAT YOUR SLIDE
SHOWS ARTICLE A OR THE ARTICLE B BY MAILBOX, AND SO
THE LANGUAGE IN CLAIM 1 IS "THE MAILBOX."  RIGHT?

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  AND YOU'RE PUTTING "A
MAILBOX" TO HIGHLIGHT YOUR ARGUMENT THAT IT DOESN'T
HAVE TO BE A SINGLE MAILBOX?

MR. THAKUR:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  GO AHEAD.

MR. THAKUR:  SO, AGAIN, IF YOU TAKE THE
DEFINITION OF A COMMAND FOR REMOTELY MANAGED
DEVICES AND THE MAILBOX AS HAVING INFORMATION ABOUT
WHERE TO, IF YOU WILL, THE DESTINATION ADDRESS,
THEN AT THAT POINT, PLACING THE COMMAND IN THE
MAILBOX IS SUFFICIENT TO SATISFY, TO UNDERSTAND.

THEY GO ONE STEP FURTHER, YOUR HONOR.
THEY INTERPRET INTO THE LANGUAGE THAT THE COMMAND
THAT IS BEING PLACED MUST BE DELIVERED.  IT --
QUOTE, THE LANGUAGE USES "THAT WILL BE DELIVERED TO
THE WIRELESS DEVICE."

SO THE ISSUE REALLY BEFORE THE COURT IS
EVEN THOUGH THAT LANGUAGE DOES NOT EXIST IN THE

CLAIM TERM, WHAT THEY'RE SAYING IS ONCE THAT MAILBOX IS ESTABLISHED AND KNOWING THE DESTINATION, AND THEN A COMMAND IS PLACED INTO THAT MAILBOX, THAT COMMAND CANNOT BE CANCELLED.  IT MUST GO TO THE WIRELESS DEVICE.

AND AT NO POINT IN THE SPECIFICATION ONCE IS THAT MENTIONED, THAT THE COMMAND THAT IS PLACED IN THE MAILBOX MUST GO TO THE DESTINATION.

THERE IS ONE POINT IN THE DEFERENCE IN THE SPECIFICATION WHERE THERE'S AN EMBODIMENT.

CLEARLY THAT'S THE PURPOSE OF WHY YOU WOULD PUT COMMANDS THERE, SO I'M NOT ARGUING THAT YOU WILL -- THAT YOU WOULD PUT COMMANDS IN THE MAILBOX TO SAY UPDATE THE APPLICATION ON THESE DEVICES OR THIS DEVICE, AND THEN THAT COMMAND WILL BE IMPLEMENTED.

BUT THERE IS NOWHERE THAT SAYS IT MUST BE IMPLEMENTED.

SO THAT'S, THAT'S THE ISSUE.

THE COURT:  WELL, THE DELIVERING STEP IS WHEN YOU'RE -- IN OTHER WORDS, PLACING IT INTO THE MAILBOX --

MR. THAKUR:  RIGHT.

THE COURT:  -- YOU ASSERT SHOULD BE READ AS DIFFERENT THAN ACTUALLY DELIVERING THE COMMAND

42

TO THE DEVICE?

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  NOW, IN THE SPECIFICATION, DOES THE INVENTOR TALK ABOUT THAT?

MR. THAKUR:  YOUR HONOR, WHAT THE INVENTOR DOES IS SIMPLY SAYS PUTTING THE COMMAND.

AT NO POINT DO THEY SAY THE COMMAND MUST BE DELIVERED.

AND I'LL GIVE YOU -- AGAIN, YOU KNOW, YOU HAVE TO LOOK AT SOME SORT OF COMMONSENSICAL APPLICATION TO SAY WHY WOULD THAT REQUIREMENT BE?

SO IF I MAY GIVE YOU AN EXAMPLE, SINCE I CONTINUE TO USE IBM, I'LL JUST USE THAT AGAIN.

LET'S ASSUME IBM HAS 50,000 EMPLOYEES AND WHAT THEY WANT TO DO IS UPDATE THE CLOCK AS TIME CHANGES TO FALL BACK, THEY WANT EVERYONE'S CLOCK ON THEIR BLACKBERRY TO GO BACK AN HOUR.  SO THEY'LL PUT THAT COMMAND IN THE SERVER.

THE IDEA THAT THAT COMMAND MUST BE DELIVERED TO EVERYONE IS NOT CORRECT.  THAT ASSUMES THAT THE SERVER IS DUMB, WHICH IS NOT THE CASE.

THE WHOLE -- THE SERVER MAY HAVE VARYING LEVELS OF INTELLIGENCE.

SO LET ME GIVE YOU AN EXAMPLE WHY YOU WOULDN'T DELIVER.

43

SO IN ARIZONA, THEY DON'T CHANGE TIME. SO WHEN WE DELIVER THAT COMMAND THAT SAYS IT'S 2:00 A.M. IN THE MORNING, LET'S GO AHEAD AND UPDATE EVERYONE'S CLOCK, THE SERVER CAN THEN SAY, BUT I HAVE SOME INTELLIGENCE TO KNOW THAT AT LEAST ONE STATE, ARIZONA, DOES NOT UPDATE THE TIME. SO FOR ALL THOSE DEVICES THAT ARE IN NETWORK THAT ARE IN ARIZONA, DON'T SEND THAT COMMAND.

THE COURT: THAT'S PART OF THE COMMAND, ISN'T IT?

MR. THAKUR: THAT'S CORRECT.

WELL, IT COULD BE IN THE COMMAND, OR IT COULD BE IN THE INTELLIGENCE OF THE SERVER ITSELF.

THE COURT: BUT THAT MAKES IT PART OF THE COMMAND.

MR. THAKUR: EFFECTIVELY, CORRECT, YES. IT'S FOR REMOTE MANAGEMENT.

THE COURT: THAT DOESN'T GIVE ME A GOOD EXAMPLE, THEN, OF A COMMAND THAT'S NOT SENT. IT JUST SENDS A COMMAND THAT'S CONDITIONED ON GPS LOCATION OR SOMETHING.

MR. THAKUR: YOUR HONOR, BUT WHAT I'M SAYING IS THAT UNDER YOUR SCENARIO, YOU'RE ASSUMING THE I.T. ADMINISTRATOR IS SENDING A SOPHISTICATED COMMAND THAT SAYS UPDATE THE TIME, BUT DON'T UPDATE

44

IN ARIZONA.

THE COURT:  THAT COULD BE A COMMAND.

MR. THAKUR:  THAT COULD BE A COMMAND.

THE COURT:  ALL RIGHT.

MR. THAKUR:  BUT I'M SAYING THERE COULD BE AN ALTERNATIVE COMMAND THAT SAYS UPDATE THE TIME, SEND IT TO THE SERVER, AND THEN THE SERVER HAS INTELLIGENCE OF ITS OWN THAT SAYS EVERY SIX MONTHS, OR HOWEVER FREQUENTLY THE TIME IS UPDATED, I WILL GET THIS COMMAND, AND IF I GET THIS COMMAND, I'M NOT GOING TO DELIVER IT TO STATES THAT DON'T, THAT DON'T CHANGE TIME.

THE COURT:  I SEE.  SO THERE'S AN INSTRUCTION, BUT THE INSTRUCTION IS NOT IN THE MAILBOX.

MR. THAKUR:  RIGHT.

THE COURT:  IT'S WHAT GOES -- IT'S -- IT'S A -- BECAUSE I DON'T BELIEVE IN SMART SERVERS. I BELIEVE SERVERS OPERATE ACCORDING TO INSTRUCTIONS.

MR. THAKUR:  RIGHT.

THE COURT:  AND SO IT CAN'T DO THAT WITHOUT AN INSTRUCTION --

MR. THAKUR:  CORRECT.

THE COURT:  -- IN MY UNDERSTANDING OF HOW

45

SERVERS WORK.

MR. THAKUR:  THAT'S RIGHT.

BUT, YOUR HONOR, THAT -- THAT IS ABSOLUTELY CORRECT.  AT THE END OF THE DAY, IT'S SOFTWARE SITTING WITHIN THE SERVER THAT MANAGES THE SERVER.

SO THE SERVERS AREN'T ENTIRELY DUMB IS WHAT I'M SAYING.  THESE SERVERS ARE INTELLIGENT SERVERS.

THE COURT:  BUT THEN THE COMMAND WOULD NOT HAVE BEEN PLACED IN THE MAILBOX IN THE FIRST PLACE.

MR. THAKUR:  THE COMMAND IS SENT ON A ONE OFF BASIS.

WHAT I'M SAYING IS THE COMMAND CAN BE SENT OFF IN A ONE OFF BASIS TO SAY DO X, BUT ASSUMES THAT THE SERVER, BECAUSE IT'S DONE REPEATEDLY, INCLUDES WITHIN IT A PROCESSING CAPABILITY TO SAY SOME OF THESE COMMANDS SHOULD NOT BE DELIVERED.

THE COURT:  BUT WHAT -- DOES -- I'M TRYING TO UNDERSTAND FROM THE HYPOTHETICAL YOU'RE GIVING ME WHETHER IT IS A DECISION BY THE SERVER NOT TO PLACE IT IN THE MAILBOX BECAUSE --

MR. THAKUR:  RIGHT.

46

THE COURT:  -- THE PERSON, THE DEVICE IS LOCATED IN ARIZONA.

MR. THAKUR:  RIGHT.

THE COURT:  THAT DOESN'T HELP ME TO UNDERSTAND THE POSITION THAT YOU ARE ASKING ME TO USE IN SAYING THAT ONCE THE COMMAND IS PLACED IN THE MAILBOX, IT IS NOT INEVITABLY DELIVERED --

MR. THAKUR:  LET ME GIVE YOU DIFFERENT EXAMPLE.

THE COURT:  -- TO THE SERVER, TO THE DEVICE.

MR. THAKUR:  LET ME GIVE YOU A DIFFERENT EXAMPLE.

I THINK I SPOKE YESTERDAY ABOUT A COMMAND THAT IS PLACED IN AN I.T. POLICY THAT SAYS LET'S UPGRADE THE CALENDAR, BUT ONLY UPGRADE THE CALENDAR WITH DEVICES THAT HAVE SUFFICIENT BATTERY AND ARE NOT ROAMING.

IF THE DEVICE -- SO THIS ACTUALLY GOES MORE ANALOGOUS TO THE SCENARIO YOU'RE PROPOSING WHERE THE COMMAND IS COMING IN A COMPLETE FORM WITHOUT ACTUALLY THE SERVER MODIFYING THE COMMAND.

SO THE COMMAND IS BEING DELIVERED TO THE MAILBOX IN ITS ENTIRETY, BUT THE COMMAND INCLUDES EXCLUSIONS FOR NOT ENOUGH BATTERY, OR NOT ENOUGH

47

ROAMING TIME, WHICH WOULD COST.

SO IN THAT SCENARIO, THE DEVICE IS BEING CONTACTED AND WHEN THERE'S NOT SUFFICIENT BATTERY OR WHEN THERE'S NOT SUFFICIENT ROAMING, THEY'RE NOT IN NETWORK, THAT DEVICE WILL NOT BE -- THAT COMMAND WILL NOT BE GIVEN.

SO UNDER THAT SCENARIO, CLEARLY THAT COMMAND WILL NOT BE DELIVERED.

THE COURT:  WELL, NO.  WHAT'S HAPPENING THERE IS THE COMMAND IS BEING DELIVERED AND IT'S BEING DELIVERED PERFECTLY BECAUSE THE DEVICE COMMUNICATES ITS BATTERY LEVEL AND SAYS I'M NOT READY.

BUT THE COMMAND HAS BEEN DELIVERED.  IT'S JUST FOLLOWING THE COMMAND.  DON'T TAKE THIS IF YOUR BATTERY IS LOW.

MR. THAKUR:  ACTUALLY, THAT'S NOT HOW THE COMMAND IS GIVEN.

THE COMMAND IS GIVEN WHERE THEY FIRST PING THE DEVICE AND SAY WHAT'S YOUR BATTERY LEVEL AND ARE YOU IN NETWORK?

THE COURT:  ALL RIGHT.

MR. THAKUR:  AND THE DEVICE SAYS --

THE COURT:  THAT'S A DIFFERENT COMMAND.

MR. THAKUR:  RIGHT.  SO IN THAT

48

PARTICULAR SCENARIO, THE PARTICULAR COMMAND ABOUT ACTUALLY DELIVERING THE APPLICATION IS NOT GIVEN, BECAUSE IN THIS ABSTRACT, WE'RE JUST DEALING WITH ONE COMMAND.

THE REALITY IS THERE CAN BE A SERIES OF COMMANDS.

THE COURT:  ALL RIGHT.

MR. THAKUR:  SO THE FIRST COMMAND IS VERIFY WHETHER THE DEVICE HAS ENOUGH BATTERY AND VERIFY WHETHER THE DEVICE IS ROAMING.

IN THAT PARTICULAR SCENARIO, YES, I'LL CONCEDE THAT ALL THOSE COMMANDS ARE GIVEN.

BUT IF THE ANSWER COMES BACK NO, THEN DON'T DELIVER IT, AND IN THAT SCENARIO, THE COMMAND ISN'T BEING DELIVERED.

THE COURT:  WELL, WE CAN ARGUE BACK AND FORTH ON THIS.  IT JUST SEEMS TO ME THAT FOR EVERY SITUATION YOU'VE GIVEN ME, I NEED TO SEE HOW THE INSTRUCTIONS ARE WRITTEN TO KNOW WHETHER OR NOT IT IS A COMMAND WHICH ULTIMATELY IS NOT DELIVERED.

I CAN CONCEIVE --

MR. THAKUR:  RIGHT.

THE COURT:  -- OF A STEP IF YOU TELL ME THE INVENTORS CONCEIVED OF A STEP --

MR. THAKUR:  RIGHT.

49

THE COURT: -- LIKE IN THE MILITARY, THEY USED TO GIVE ME AN ORDER AND THEY SAY DELAY THAT ORDER.

AND SO THAT WOULD MEAN I'VE GOTTEN THE ORDER, BUT DON'T FOLLOW IT NOW. I'VE ACTUALLY RECEIVED TWO ORDERS, THE FIRST ORDER TO EXECUTE, THE SECOND ORDER, DON'T EXECUTE MY PREVIOUS ORDER.

MR. THAKUR: RIGHT.

THE COURT: IN BOTH INSTANCES I'VE GOTTEN A COMMAND THAT WAS DELIVERED.

MR. THAKUR: RIGHT.

THE COURT: AND I FOLLOWED BOTH.

SO IT DOES SEEM TO ME THAT I NEED -- BEFORE I DEFINE THESE TERMS, IF IT'S IMPORTANT FOR THIS LITIGATION TO UNDERSTAND WHETHER PLACING A COMMAND LEAVES OPEN THE POSSIBILITY THAT THE COMMAND WOULD NOT BE DELIVERED, I NEED TO SEE WHERE THE INVENTORS CONTEMPLATED THAT AND PROVIDED A PROCESS FOR DOING THAT.

IF I -- ON THE OTHER HAND, I'M SURE I'LL HEAR THIS FROM YOUR OPPONENT, IF THEY TAKE THE POSITION THAT ONCE A COMMAND IS PLACED IN, IT MUST BE DELIVERED --

MR. THAKUR: RIGHT.

THE COURT: -- THEN I NEED TO SEE WHERE

THE INVENTORS SET UP THEIR PATENT SO THAT IT BECOMES AN AUTOMATIC RELATIONSHIP.

SO RIGHT NOW I SEE PLACING A DEMAND -- A COMMAND IS CLEARLY SOMETHING I CAN DEFINE.  IT'S PUTTING IT THERE.

I SHOULDN'T WORRY ABOUT WHAT HAPPENS TO IT AFTER IT'S THERE IF I'M DOING THE PLACING STEP --

MR. THAKUR:  CORRECT.

THE COURT:  -- BEFORE THE WIRELESS DEVICE TELLS ME THE PURPOSE OF PUTTING IT THERE, AND SO NOT WHAT'S GOING TO HAPPEN TO IT AFTER IT'S THERE.

IT'S A DESCRIPTION OF THE TYPE OF COMMAND, AND THIS IS A COMMAND FOR THE WIRELESS DEVICE, AS OPPOSED TO A COMMAND FOR ANYTHING ELSE.

AND SO LET'S MOVE ON.

MR. THAKUR:  YOUR HONOR, SO TO SUM IT UP, YOU'RE SPOT ON WITH YOUR ANALYSIS.  THE CLAIM TERM SAYS PLACING IT.  IT DOESN'T SAY WHAT WILL HAPPEN ONCE IT'S PLACED.

THE COURT:  ALL RIGHT.  SO MOVING TO --

MS. DEBRUIN:  YOUR HONOR, IS NOW A GOOD TIME TO BREAK AND GO TO RIM'S POSITION?

THE COURT:  MAYBE, BUT LET'S KEEP GOING AT THIS POINT.

ARE YOU -- ARE YOU -- BECAUSE I HAVEN'T SENSED THAT WE'RE ABOUT TO CHANGE ANYTHING AT THIS POINT.

WE'RE STILL GOING THROUGH CLAIM 1; RIGHT?

MR. THAKUR:  WE'RE GOING THROUGH CLAIM 1, BUT ALMOST ALL OF THE TERMS ARE IN CLAIM 1.

THE COURT:  OKAY.  GO AHEAD.

MR. THAKUR:  SO THE NEXT TWO TERMS ARE SORT OF TIED TOGETHER.

THE FIRST TERM IS BASICALLY -- IF YOU LOOK IN CLAIM 1, YOUR HONOR, OF THE '917, SO WHAT -- YOU HAVE PLACED THE COMMAND IN THE MAILBOX.

THE COURT:  RIGHT.

MR. THAKUR:  AND IN MY HYPOTHETICAL IT WAS AN UPDATE OF THE CALENDAR.

THE DEVICE HAS FORMED A -- THE MAILBOX HAS FORMED A CONNECTION WITH THE DEVICE/DEVICES, SO -- AND THE WIRELESS DEVICE SAYS I'M AVAILABLE, I HAVE BATTERY.  THERE IS AN EXECUTION OF THE COMMAND.

BUT WHAT THEY'RE SAYING IN THE TERM IS THAT EXECUTION HAS TO BE BASED ON A THRESHOLD CONDITION.  THERE HAS TO BE SOMETHING THAT TRIGGERS THAT SCENARIO.

AND I -- IT CAN'T JUST SIMPLY BE I PUT A

COMMAND IN THERE AND THEN THE COMMAND AUTOMATICALLY GETS EXECUTED.

THE COURT:  ALL RIGHT.  SO WHERE IN THE CLAIM AM I IN NOW?

MR. THAKUR:  SO YOU ARE IN THE VERY LAST LINE OF CLAIM 1.

THE COURT:  WHEREIN?

MR. THAKUR:  WHEREIN THE CONNECTION IS ESTABLISHED BASED ON A THRESHOLD CONDITION.

THE COURT:  ALL RIGHT.  SO WHAT CONNECTION AM I TALKING ABOUT?

MR. THAKUR:  THIS IS A CONNECTION FROM THE SERVER TO THE DEVICE TO START SENDING THAT APPLICATION.

THE COURT:  HOW DO I KNOW THAT?

MR. THAKUR:  YOUR HONOR, BECAUSE WHAT IT'S SAYING IS FIRST YOU PLACE THE COMMAND IN THE MAILBOX, OKAY, AND THEN THE NEXT STEP IS YOU DELIVER THE COMMAND FROM THE MAILBOX TO THE SERVER -- AT THE SERVER TO THE WIRELESS DEVICE BY CREATING A CONNECTION.

SO OBVIOUSLY ONCE I'VE SENT -- PUT A COMMAND IN THE MAILBOX THAT SAYS UPDATE THIS APPLICATION, THEN THERE HAS TO BE -- THERE HAS TO BE A CONNECTION ESTABLISHED BETWEEN THE MAILBOX AND

53

THE DEVICE.

AND, AGAIN, I'LL -- FOR SIMPLICITY'S SAKE I'LL USE THE WORD "DEVICE" RATHER THAN "DEVICES" BECAUSE THAT'S THE MOST COMMON TERM.

SO THERE'S A CONNECTION THAT'S BEEN ESTABLISHED WITH THE MAILBOX AND THAT ONE DEVICE.

BUT IT DOESN'T AUTOMATICALLY JUST GET SENT.  IT CAN ONLY BE SENT IF A CERTAIN THRESHOLD CONDITION IS MET.

THE COURT:  WELL, THIS DOESN'T -- THIS TALKS ABOUT THE CONNECTION IS ESTABLISHED.  SO THIS IS A THRESHOLD CONDITION THAT, THAT AFFECTS THE CONNECTION, THE ESTABLISHMENT OF THE CONNECTION.

MR. THAKUR:  THAT'S CORRECT.  IT'S A LITTLE ODD IN THE WAY IT'S BEEN WRITTEN, BUT WHAT THEY'RE SAYING IS THEY DELIVER IT AFTER A CONNECTION HAS BEEN ESTABLISHED, AND THEN THEY GO BACK A LITTLE BIT LATER IN THE CLAIM TO SAY, BECAUSE IT WAS DONE IN THE PROSECUTION HISTORY AT THE LAST MINUTE, THE ADDITIONAL ELEMENT WAS ADDED AT THE END THAT SAYS THAT CONNECTION THAT WE TALKED ABOUT UP ABOVE, IT CAN ONLY BE SET UP IF THERE IS A THRESHOLD CONDITION THAT'S MET.

THE COURT:  WELL, DELIVERING HAS TWO STEPS, RIGHT?  DELIVERING IT BY ESTABLISHING A

54

CONNECTION, AND THEN TRANSMITTING.

MR. THAKUR:  CORRECT.

THE COURT:  SO THE ESTABLISHING A CONNECTION, YOU'RE ASKING ME TO READ IT IN RELATIONSHIP TO THE WHEREIN CLAUSE, AND THAT SPEAKS TO THRESHOLD CONDITIONS.

MR. THAKUR:  CORRECT.

THE COURT:  AND THEN WHAT IS IT THAT SAYS THE TRANSMISSION IS ALSO BASED ON THOSE THRESHOLD CONDITIONS?

MR. THAKUR:  YOUR HONOR, BECAUSE IT -- UP ABOVE IT'S SAYING DELIVERING THE COMMAND FROM THE MAILBOX AT THE SERVER TO THE DEVICE.

SO YOU DELIVER IT BY ESTABLISHING A CONNECTION BETWEEN THE DEVICE AND THE SERVER.

THE COURT:  WELL, THAT'S NOT DELIVERY. THAT'S ESTABLISHING A CONNECTION, UNLESS DELIVERY IS AUTOMATICALLY DONE AT THE ESTABLISHMENT OF A CONNECTION.

MR. THAKUR:  IT BASICALLY IS SAYING THAT, WHICH IS DELIVERING THE COMMAND FROM THE MAILBOX TO THE SERVER TO THE WIRELESS DEVICE --

THE COURT:  WELL, THEN I WOULDN'T NEED A TRANSMITTING STEP IF IT WAS DONE AUTOMATICALLY, WOULD I?

55

MR. THAKUR:  YOUR HONOR, WHAT IT'S SAYING IS ACTUALLY -- THAT'S CORRECT.

SO THE FIRST THING IT DOES IS THE SERVER MAILBOX SAYS I'M READY TO SEND YOU THIS APPLICATION AND A RELATIONSHIP, IF YOU WILL, A PIPE IS SET UP WITH THE DEVICE TO DELIVER IT.

THE COURT:  RIGHT.  SO THAT CONNECTION DOESN'T DELIVER ANYTHING.

MR. THAKUR:  THAT CONNECTION DOES NOT DELIVER ANYTHING, UNLESS --

THE COURT:  ALL RIGHT.

MR. THAKUR:  THE TRANSMISSION WILL ONLY TAKE PLACE IN THAT CONNECTION -- ACTUALLY, I'M SORRY.

THE DELIVERY -- THE STEP OF CREATING THAT CONNECTION BETWEEN THE SERVER AND THE WIRELESS DEVICE MUST BE BASED ON SOME SORT OF A THRESHOLD CONDITION.

THE COURT:  I UNDERSTAND.

BUT THAT'S NOT DELIVERING BASED ON THE CONDITION.  THAT'S ESTABLISHING A CONNECTION BASED ON THE CONDITION.

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  IN OTHER WORDS, IT COULD BE THAT IT'S BEYOND MY DISTANCE --

MR. THAKUR:  RIGHT.

THE COURT:  -- PROTOCOL OR PARAMETER AND, THEREFORE, I DON'T ESTABLISH A CONNECTION TO THOSE THAT ARE IN THAT -- BUT ONCE I ESTABLISH A CONNECTION --

MR. THAKUR:  RIGHT.

THE COURT:  -- I'M NOW TALKING TO THE REMOTE DEVICE.

MR. THAKUR:  RIGHT.

THE COURT:  AND THAT DOESN'T DELIVER ANYTHING UNTIL I TRANSMIT.

MR. THAKUR:  CORRECT.

THE COURT:  NOW -- BUT YOU HAVE A STEP HERE WHICH IS A SINGLE STEP.

MR. THAKUR:  RIGHT.

THE COURT:  SO DO THE INVENTORS TALK ABOUT THIS AS TWO STEPS OR ONE?

MR. THAKUR:  YOUR HONOR, IT'S EFFECTIVELY ONE STEP IN MY MIND FROM A PRACTICAL STANDPOINT.

THE COURT:  I DIDN'T ASK IN YOUR MIND.  I ASKED, DO THE INVENTORS TALK ABOUT THIS?

MR. THAKUR:  YOUR HONOR, THE ANSWER IS IT APPEARS TO BE THAT'S THE CASE, BECAUSE IF YOU SIMPLY PUT -- UNDER THIS OLD SCENARIO, WHICH WOULD BE CLEAR IN THE PROSECUTION HISTORY AND I WAS GOING

TO GO TO A SLIDE THAT CLARIFIES THAT, IF YOU SIMPLY PUT A COMMAND IN THE MAILBOX AND EVERY SINGLE MAIL COMMAND BASED ON EVERY 30 MINUTES MADE A CONNECTION WITH THE DEVICE AND SENT IT OUT, THAT WAS EFFECTIVELY KNOWN IN THE PRIOR ART.

SO DURING THE PROSECUTION HISTORY, THEY SAID CONNECTION TO SET UP, FIRST SETTING UP THE CONNECTION, AND THEN STEP TWO, TRANSMITTING THE INFORMATION, IT MUST BE BASED ON A CONDITION, AND THAT CONDITION CANNOT BE SIMPLY A TIME THAT IT WILL HAPPEN.  IT CANNOT SIMPLY BE EVERY 30 MINUTES YOU SET UP A CONNECTION AND THEN YOU SEND IT.

THE COURT:  WHY?

MR. THAKUR:  BECAUSE EFFECTIVELY THAT WAS KNOWN IN THE PRIOR ART, BECAUSE REALLY YOU'RE NOT COMING UP WITH ANYTHING CREATIVE.  YOU'RE PUTTING UP THE REMOTE DEVICE MANAGEMENT -- YOU'RE CREATING REMOTE DEVICE MANAGEMENT --

THE COURT:  SO WAS THERE SOME MODIFICATION OF THE CLAIM TERM DURING THE PROSECUTION TO SHOW THAT THE THRESHOLD CONDITION WAS SOMETHING OTHER THAN A CLOCK CYCLE?

MR. THAKUR:  THAT'S CORRECT, YOUR HONOR, AND IT'S EXPRESSLY STATED IN THE PROSECUTION HISTORY.

IF YOU WOULD LOOK AT THE NEXT SLIDE, THEY ACTUALLY DEFINED THAT VERY CLEARLY.  THEY SAID "THE COMMUNICATION BETWEEN THE WIRELESS" --

THE COURT:  WHERE?  WHERE IS THAT DEFINED?

MR. THAKUR:  IT'S DEFINED, YOUR HONOR, IN COLUMN 6 --

THE COURT:  YES.

MR. THAKUR:  COLUMN 6, LINES 35 TO 40, WHICH IS DEALING WITH THE ESTABLISHMENT OF THE CONNECTION AND THAT TRANSMISSION AS WE DISCUSSED.

AND THEN IN THE PROSECUTION HISTORY, THE PTO REJECTS THAT CLAIM ARGUING THAT SIMPLY TRANSMITTING THAT ON A PERIODIC BASIS WOULD NOT BE NOVEL.

SO AT THAT POINT IN THE RESPONSIVE ACTION, THE -- MFORMATION'S COUNSEL WRITES WHAT MAKES IT VERY CLEAR, WHICH SAYS "THE COMMUNICATION FROM THE WIRELESS DEVICE TO THE SERVER SHOULD BE GOVERNED BY A POLICY, THRESHOLD CONDITION, THAT MAY BE BASED ON COST, DISTANCE, COVERAGE," ET CETERA.

AND SO I CAN HIGHLIGHT EXAMPLES, I THINK I DID OVER THE COURSE OF YESTERDAY.  COST SCENARIOS IS IF YOU ARE ROAMING -- IF YOU COULD GO BACK, PLEASE -- IF YOU ARE ROAMING, THEN OBVIOUSLY YOU'RE

59

PAYING A LOT MORE COST, SO THAT WOULD BE A SCENARIO WHERE YOU WANTED TO MAKE SURE THAT YOU'RE NOT DOING THAT.  SO THAT WOULD BE ONE THRESHOLD CONDITION BEFORE YOU DID IT.

A SCENARIO MIGHT BE IF YOUR COVERAGE IS LIMITED BECAUSE YOU'RE DISTANT FROM A BASE STATION AND THE APPLICATION MAY BREAK HALFWAY IN THE MIDDLE, THAT MIGHT BE A SCENARIO WHERE YOU WOULDN'T DO IT.

COVERAGE IS ESSENTIALLY THE SAME THING.  DO YOU HAVE COVERAGE IN THE -- YOU'RE ROAMING OR YOU'RE IN NETWORK, OUT OF NETWORK.

THE WORD "COST" UP ABOVE PICKS UP MANY SCENARIOS, YOUR HONOR, FOR EXAMPLE, BATTERY LIFE.  THE LAST THING YOU WANT TO DO IS DELIVER AN APPLICATION AND HAVE IT BREAK HALFWAY BECAUSE THE BATTERY WAS INADEQUATE.

SO IN THE PROSECUTION HISTORY, THEY MADE IT ABSOLUTELY CLEAR THAT THAT THRESHOLD CONDITION IS BASED ON A POLICY AND THAT POLICY MAY BE BASED ON COST, POSITION, ET CETERA, BUT NOT TIME.

THE COURT:  ALL RIGHT.  I UNDERSTAND YOUR POSITION.

IT DOES SEEM TO ME, THOUGH, THAT I HAVE TO BE CAREFUL ABOUT THE LANGUAGE OF THE CLAIM

60

BECAUSE THE CLAIM SAYS THAT THE CONNECTION IS ESTABLISHED BASED ON THIS CONDITION, AND WHAT YOU'RE TELLING ME IS THE TRANSMISSION IS MADE BASED ON THESE CONDITIONS.

MR. THAKUR:  NO, YOUR HONOR.  I AM SAYING IT'S THE CONNECTION SATISFYING THE POLICY.  IT'S NOT THE TRANSMISSION.

IT'S THE -- THERE'S TWO STEPS.  ONE IS TO CONNECT; STEP TWO IS TO TRANSMIT.

THE FIRST STEP IS THE CONNECTION --

THE COURT:  BUT IS THERE A COST ASSOCIATED WITH CONNECTING?

MR. THAKUR:  YOUR HONOR, IN, IN, IN TERMS OF ACTUALLY CORRESPONDENCE, I GUESS THE ANSWER WOULD BE THERE WOULD BE A MINIMAL COST IN TERMS OF SIMPLY PINGING A DEVICE AND SAYING ARE YOU IN NETWORK?

THE COURT:  BUT HOW WOULD YOU KNOW THAT THE CONDITION IS, IS EXISTENT IF YOU DON'T ESTABLISH A CONNECTION?

MR. THAKUR:  THERE COULD BE A SINGLE COMMAND, YOUR HONOR, THAT SAYS MR., JUDGE, YOU KNOW, YOUR HONOR, I NEED TO CONNECT TO YOUR DEVICE AND SEND THIS APPLICATION.  DOES IT HAVE ENOUGH BATTERY?

61

AND THAT CONNECTION WILL ONLY BE ESTABLISHED IF THERE'S ENOUGH BATTERY. AND SO THE CONNECTION AND THE THRESHOLD --

THE COURT: BUT DON'T YOU NEED TO CONNECT TO ASK THE QUESTION?

MR. THAKUR: THAT'S CORRECT.

THE COURT: SO I DON'T UNDERSTAND WHAT THRESHOLD CONDITION IS BEING APPLIED TO THE CONNECTION.

MR. THAKUR: YOU -- YOU DON'T -- BECAUSE YOU'RE ASKING THE QUESTION -- YOU'RE NOT GOING ON SAYING IT'S BEEN 30 MINUTES SINCE I CONNECTED TO YOUR HONOR'S BLACKBERRY, LET ME TRANSMIT IT.

YOU'RE SAYING, I'VE GOT THIS APPLICATION TO DELIVER. CHECK WITH JUDGE WARE AS TO WHETHER THAT BLACKBERRY IS IN NETWORK.

THE COURT: SO THAT'S NOT CALLED A CONNECTION?

MR. THAKUR: IT'S PINGING THE CONNECTION BASED ON THE THRESHOLD CONDITION. IT'S -- THE CONDITION AND THOSE TWO WORK HAND-IN-HAND.

THE COURT: I'M ASKING, IS THAT A CONNECTION? WHEN I COMMUNICATE WITH A DEVICE TO DETERMINE WHETHER OR NOT IT IS OR IS NOT IN POLICY --

62

MR. THAKUR:  RIGHT.

THE COURT:  -- IS THAT A CONNECTION?

MR. THAKUR:  YES, IT IS.

THE COURT:  ALL RIGHT.  SO I'M NOT CONNECTING BASED ON A THRESHOLD CONDITION.  I'M CONNECTING TO DETERMINE WHETHER OR NOT I'M WITHIN A THRESHOLD CONDITION?

MR. THAKUR:  CORRECT.

THE COURT:  ALL RIGHT.  AND THEN ONCE I'M WITHIN THE THRESHOLD CONDITION OR NOT, THEN I AM ABLE TO MAKE A DETERMINATION WHETHER TO TRANSMIT?

MR. THAKUR:  CORRECT.

THE COURT:  AND I'M SUPPOSED TO READ THAT FROM THIS DELIVERING STEP AND THE WHEREIN STEP?

MR. THAKUR:  CORRECT.

THE COURT:  AND I CAN FIND THAT EXPLANATION BETTER IN THE PROSECUTION HISTORY WHERE THE INVENTOR IS COMMUNICATING WITH THE PTO ABOUT TIME BEING --

MR. THAKUR:  RIGHT.

THE COURT:  -- AN IMPROPER WAY TO DO IT, AT LEAST PREDEFINED TIME INTERVALS.

MR. THAKUR:  CORRECT.

THE COURT:  AND SO THE -- USING THE SAME WORDS, THE PTO ALLOWS THE CLAIM BASED UPON THIS

EXPLANATION THAT IT'S SOMETHING OTHER THAN TIME INTERVALS?

MR. THAKUR:  CORRECT.  AND THEY USED -- THE EXAMPLES WERE COST, DISTANCE, OR COVERAGE.

BUT A VERY CRITICAL WORD THERE IS "ET CETERA."  SO EFFECTIVELY ANYTHING OTHER THAN TIME.

THE COURT:  AND THAT'S THE DEFINITION OF A THRESHOLD CONDITION?

MR. THAKUR:  THAT'S CORRECT.

THE COURT:  ALL RIGHT.  ANYTHING ELSE ON CLAIM 1?

MR. THAKUR:  YOUR HONOR, THE NEXT TERM --

MR. MCDONALD:  THERE'S MORE ON THRESHOLD.

MR. THAKUR:  I'M SORRY?

MR. MCDONALD:  THERE'S A BIT MORE ON THRESHOLD.

MR. THAKUR:  OH.

SO THE NEXT, IT'S ESSENTIALLY A RELATED TERM.

WHAT THEY ARE SAYING IS THAT THE THRESHOLD CONDITION, AS -- SHOULD NOT JUST SIMPLY SATISFY A POLICY AS IT WAS IN THE PROSECUTION HISTORY.  IT MUST ACTUALLY MEET A PREDEFINED LIMIT

64

OF A PARAMETER.

AND ONE PARAMETER IS USUALLY A NUMERICAL NUMBER, AND IN ALMOST EVERY INSTANCE, THE THRESHOLD CONDITION, IN PRACTICALITY, IS MORE OFTEN A QUALITATIVE CONDITION THAN ACTUALLY A FORMULA, OR A PARTICULAR NUMBER.

SO BY WAY OF EXAMPLE, DO YOU HAVE ENOUGH BATTERY?  THAT'S A YES OR NO.  IT'S NOT A PARAMETER WITH A LIMIT UP OR DOWN.

DO YOU HAVE --

THE COURT:  ALL OF THIS IS BINARY CODE, ISN'T IT?  IT'S ALL NUMBERS.

MR. THAKUR:  RIGHT.  BUT THE ANSWER COULD BE YES OR NO RATHER THAN BEING A SPECIFIC -- BECAUSE WHAT THEY WANT TO DO IS IT HAD TO BE ABOVE OR BELOW A CERTAIN NUMBER, OR A PARTICULAR THRESHOLD CONDITION.

THE COURT:  BUT DOESN'T THE NUMBER DECIDE WHETHER THE ANSWER IS YES OR NO?

MR. THAKUR:  YOUR HONOR, THE NUMBER COULD SIMPLY BE A YES -- OF COURSE IT'S BINARY DATA, BUT THE DATA WILL NOT BE DEFINED IN THE CONTEXT OF BEING ABOVE OR BELOW.

IT'S SIMPLY THAT THE ANSWER WILL BE TRANSLATED THROUGH CODE TO SAY, YES, ENOUGH

65

BATTERY.

THE COURT:  IT JUST SEEMS TO ME THAT PARAMETER -- ONE, I WOULD WORRY ABOUT SAYING A PARAMETER HAS TO BE A NUMBER BECAUSE I THINK IT'S A BROAD ENOUGH TERM THAT IT CAN INCLUDE MANY QUALITIES OTHER THAN NUMERICAL QUANTITIES.

AND I -- IS THAT YOUR POINT?

MR. THAKUR:  THAT -- YOUR HONOR, THE WORD "PARAMETER" LEADS ONE TO THINK THAT THERE IS SOME THRESHOLD, SOME LINEAR NUMBER AT WHICH YOU HAVE TO EITHER BE ABOVE OR NOT, VERSUS, I THINK, THE TERM, YOU KNOW, "POLICY" WAS SPECIFICALLY ONE USED IN THE PROSECUTION HISTORY.

THE COURT:  WELL, "THRESHOLD" IS SOMETHING ABOVE OR BELOW.  IT COULD BE --

MR. THAKUR:  RIGHT.

THE COURT:  -- KIND OF LIKE AN ENTRY POINT.

"PARAMETER" DOESN'T SUGGEST WHERE YOU ARE.  IT JUST MEANS THAT IT'S SOME WAY OF MEASURING.

MR. THAKUR:  YES, THOUGH I WOULD ARGUE, YOUR HONOR, I WOULD NOT --

THE COURT:  I MIGHT NOT USE IT, BUT I'M JUST SAYING I DON'T HEAR IN PARAMETER ANY THRESHOLD

66

OR --

MR. THAKUR: A BETTER EXAMPLE OF WHAT -- HOW THINGS REALLY WORK, YOUR HONOR, IS IT'S AN ALGORITHMIC PROCESS. A FORMULA OR ALGORITHM MIGHT ACTUALLY BE A LITTLE CLEARER TERM.

THE WORD "POLICY" IS WHAT WE WOULD HAVE RECOMMENDED BECAUSE IT WAS SPECIFICALLY USED IN THE PROSECUTION HISTORY.

BUT IF YOU WERE TO USE TERMS LIKE A FORMULA OR AN ALGORITHM, THEN THAT MAKES SENSE.

THE WORD "PARAMETER" IS -- IT MAY BE, YOU KNOW, MY ENGINEERING BACKGROUND COMING BACK TO ME. I THINK OF THE WORD "PARAMETER" IN A MORE NUMERICAL SENSE.

I THINK OF AN ALGORITHM AND A POLICY IS REALLY A DECISION TREE. DO THEY HAVE ENOUGH BATTERY? YES. DO THEY HAVE ENOUGH -- ARE THEY IN NETWORK? YES.

OBVIOUSLY WE WOULD LIMIT OURSELVES FOR PURPOSES OF THIS DISCUSSION TO THE PRETEXT.

THE COURT: IS THE WORD "POLICY" USED BY THE INVENTOR TO DESCRIBE THRESHOLD CONDITION?

MR. THAKUR: YES, IT IS, YOUR HONOR. IT'S IN THE FILE HISTORY.

THE COURT: WHERE?

67

MS. DEBRUIN:  IN THE FILE HISTORY.

THE COURT:  OH, I SEE.  NOT IN THE SPECIFICATION?

MR. THAKUR:  YOUR HONOR, BUT, I MEAN, IN THE FILE HISTORY -- WHEN THEY WERE NEGOTIATING THIS VERY PROVISION, SO THE IDEA THAT THEY PROVIDED CLEAR -- YOU KNOW, I GUESS WHAT I WOULD SAY IS THIS TERM WAS NOT CLARIFIED IN THE SPECIFICATION AND BECAME A PRETTY CRITICAL ISSUE IN THE PROSECUTION HISTORY, IF NOT THE CRITICAL ISSUE, AND VERY SPECIFIC LANGUAGE WAS USED.

THE COURT:  ALL RIGHT.

MR. THAKUR:  SO LET'S GO TO THE NEXT ONE.

AND IN THE -- JUST -- FINALLY THE SAME THING.

IF YOU LOOK AT THE BRIEFING PROVIDED BY RIM, THEY USED THE WORD "PARAMETER" IN A VERY NUMERICAL SENSE OF THE WORD.  IT'S ABOVE OR BELOW RATHER THAN A YES OR NO ALGORITHM TREE SYSTEM.

SO IF YOUR INTERPRETATION OF WHAT PARAMETER IS IS IT COULD BE ANYTHING, IT COULD BE A YES/NO ANSWER, IT COULD BE A DECISION TREE, CERTAINLY THE WORD "PARAMETER" IS NOT OBJECTIONABLE.

BUT FROM THEIR, FROM THEIR BRIEFING IT'S

APPARENTLY VERY CLEAR THAT THEY VIEW THE WORD "PARAMETER" IN A MORE NUMERICAL SENSE.

THE COURT:  WHAT'S WRONG WITH "CONDITION," WHICH IS THE WORD THAT THE INVENTOR USED IN THE CLAIM?

MR. THAKUR:  YOUR HONOR, I DON'T HAVE ANY OBJECTION TO THAT.

THE COURT:  WELL, I'M NOT SAYING THAT MY JURY WOULD UNDERSTAND IT.  I ALWAYS THINK ABOUT THESE THINGS IN TERMS OF WHAT I'M GOING TO EXPLAIN TO THE JURY ABOUT THE MEANING.

THRESHOLD CONDITION.  WELL, "THRESHOLD" PROBABLY CARRIES WITH IT THE NOTION THAT IT'S EITHER/OR.

"CONDITION," WHY SHOULD I REDEFINE CONDITION?  I JUST NEED TO DEFINE IT, YOU'RE TELLING ME, BECAUSE IN THE PROSECUTION, THAT CLAIM LIMITATION WAS QUESTIONED.

MR. THAKUR:  RIGHT.

THE COURT:  AND THEY QUESTIONED THE ENTIRE CLAIM BASED UPON THAT ONE LIMITATION.

MR. THAKUR:  BECAUSE IF IT WAS SIMPLY PERIODIC, THE ARGUMENT WAS MADE THAT IT WAS EITHER OBVIOUS --

THE COURT:  SO I -- I CAN SAY OTHER THAN

69

A PERIODIC TIME INTERVAL?

MR. THAKUR:  YES.

THE COURT:  AND I'M OKAY?

MR. THAKUR:  YOU'RE OKAY, THAT'S CORRECT, YOUR HONOR.

THE COURT:  AND I BELIEVE YOUR OPPONENT WILL AGREE WITH THAT?

MR. THAKUR:  YOUR HONOR, I DON'T BELIEVE SO BECAUSE THEY'RE VERY MUCH HOPING TO GET THIS IN A NUMERICAL FORM, WHICH IS NOT HOW THE WORLD OPERATES.

THE COURT:  I SEE.  ALL RIGHT.

MR. THAKUR:  I WISH THEY WOULD.  IF THEY WOULD, CERTAINLY I THINK -- IF THEY WOULD AGREE THE WORD "PARAMETER" MEANS A YES/NO ANSWER, IT'S A FORMULA, ALGORITHM, OR A TREE, I HAVE NO OBJECTION TO THE WORD "PARAMETER."

I JUST THINK IT WOULD BE CONFUSING TO THE ORDINARY INDIVIDUAL JUST -- YOU KNOW, THIS IS NORTHERN DISTRICT OF CALIFORNIA, YOUR HONOR.  YOU GET A LOT OF JURY POOLS THAT ARE HIGHLY EDUCATED AND THEY MAY THINK OF THE WORD "PARAMETER" IN A NUMERICAL SENSE.

THE COURT:  ALL RIGHT.  NOW, YOU'VE GOT ABOUT 15 MINUTES LEFT BY MY KIND OF ROUGH

70

CALCULATION OF HALF OF THE TIME, SO TAKE ME FURTHER IF YOU WISH.

MR. THAKUR:  OKAY.  WE'LL -- LET'S GO TO THE NEXT TERM REAL QUICK.

MR. MCDONALD:  THIS IS IT.

MR. THAKUR:  SO I'M GOING TO EXCUSE MYSELF AND I'M GOING TO LET MY COLLEAGUE --

MR. MCDONALD:  NO, NO, THIS IS FOR YOU, AMAR.

MR. THAKUR:  OH, SORRY.

THE LAST ELEMENT, AND IT'S REALLY PART OF THE WHOLE THRESHOLD CONDITION, IS THE CONNECTION IS ESTABLISHED BASED ON A THRESHOLD CONDITION.

SO AS WE EXPLAINED, THERE HAS TO BE A THRESHOLD CONDITION, SO THERE'S A COMMAND PUT IN THE MAILBOX, THE MAILBOX SAYS GO AHEAD AND UPDATE THIS APPLICATION, AND THEN THE APPLICATION MUST BE IN A THRESHOLD CONDITION TO VERIFY THAT THEY HAVE ENOUGH BATTERY, AND THEN IT SAYS ESTABLISHED A CONNECTION.

I THINK THE WORD "ESTABLISHED A CONNECTION," IF YOU DEFINE WHAT "THRESHOLD CONDITION" MEANS, IS PLAIN ENGLISH AND REQUIRES NO FURTHER INTERPRETATION.

THEY USE THE WORD -- AND IN FACT, YOUR

71

HONOR, THIS IS A PERFECT EXAMPLE OF WHAT I WAS ARGUING THAT THEY ARE INTERPRETING THE TERM IN A -- THEY'RE OFFERING A CONSTRUCTION THAT INHERENTLY MAKES THE TERM IMPLAUSIBLE IN THE MODERN WORLD.

THEY SAY "WHEREIN THE CONNECTION IS CREATED IN RESPONSE TO EXCEEDING OR FALLING BELOW" A PREDETERMINED PARAMETER.

AND I WAS EXPLAINING TO YOU EARLIER, YOUR HONOR, ALMOST IN MOST INSTANCES THE WORLD DOESN'T ACTUALLY DEAL WITH EXCEEDING ABOVE OR BELOW.

IT'S ACTUALLY AN ALGORITHM TREE PROCESS WHERE YOU GO, DO YOU HAVE ENOUGH BATTERY?  YES OR NO.  DO YOU HAVE ROAMING OR NOT?

SO THE DEFINITION THAT IS EXCEEDING OR FALLING BELOW, IT'S JUST NOT HOW ANY DEVICE THAT MANAGES -- FRANKLY EVEN IN THE NETWORKING WORLD IN COMPUTERS, YOU WON'T USE IT IN EXCEEDING OR BELOW. IT'S A YES OR NO ANSWER.

AND SO WHAT I WOULD ARGUE IS THEIR PROPOSAL IS JUST DESIGNED TO CREATE A NONINFRINGEMENT POSITION KNOWING THAT IN THE REAL WORLD THAT'S NOT HOW IT WORKS.

THE COURT:  VERY WELL.  I UNDERSTAND YOUR POINT.  I GUESS MAYBE AFTER I'VE HEARD THE OTHER

SIDE I'LL HAVE A BETTER FEEL FOR WHY THIS IS IMPORTANT.

MR. THAKUR:  YOUR HONOR, SO I'VE GOT A HANDFUL OF TERMS LEFT AND I PROMISED THAT YOU WOULD GET TO SEE THE SUPERIOR ORAL ADVOCACY OF MY COLLEAGUE, SO I'LL GIVE HIM A CHANCE.

THE COURT:  SO RATHER THAN SWITCH TO THE OTHER SIDE, LET'S FINISH THAT.  IT SOUNDS LIKE IT'S WITHIN REACH, AND THEREFORE I'LL ALLOW YOU TO RESPOND TO ALL OF THIS.

MS. DEBRUIN:  THANK YOU, YOUR HONOR.

THE COURT:  GO AHEAD.

MR. MCDONALD:  THANK YOU, YOUR HONOR. SHAWN MCDONALD FROM FOLEY & LARDNER FOR THE PLAINTIFF, MFORMATION TECHNOLOGIES.

THE FIRST TERM I'D LIKE TO DISCUSS IS "SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK."

THIS IS FOUND IN THE '408 PATENT, CLAIM 1, THE SECOND CLAUSE, PART OF THE ESTABLISHING LIMITATION, "ESTABLISHING FROM THE SERVER TO THE WIRELESS DEVICE A COMMUNICATIVE CONNECTION BETWEEN THE SERVER AND THE WIRELESS DEVICE OVER A SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK."

THE COURT:  WHICH CLAIM?

73

MR. MCDONALD:  THAT'S CLAIM 1 OF THE '408 PATENT, THE SECOND LIMITATION.

I'M SORRY.  THE FIRST LIMITATION, AROUND LINE 38.

NOW, THE FIRST ISSUE IS BOTH SIDES AGREE THAT THE SIGNALING CHANNEL IS ABLE TO TRANSMIT CONTROL INFORMATION, AND IF YOU LOOK AT OUR PROPOSED CONSTRUCTION, WE THINK IT SIMPLY SHOULD BE CONSTRUED AS A CHANNEL OF THE TELECOMMUNICATIONS NETWORK CAPABLE OF TRANSMITTING CONTROL INFORMATION.

NEXT SLIDE.

THE DISPUTE COMES IN -- RIM BELIEVES IT SHOULD BE CONSTRUED AS A DEDICATED CHANNEL, AND THEY ALSO BELIEVE -- NEXT SLIDE -- THAT THAT CHANNEL NEEDS TO BE SEPARATE FROM THE TRAFFIC CHANNEL.

NOW, THERE'S NO BASIS FOR THESE REQUIREMENTS IN INTRINSIC EVIDENCE OR EXTRINSIC EVIDENCE.

RIM BASICALLY RELIES UPON CERTAIN DISCLOSED EMBODIMENTS IN THE SPECIFICATION, BUT I'D LIKE TO WALK THROUGH THOSE IN DETAIL.

NEXT SLIDE.

NOW, THE FIRST -- THE FIRST ADDITIONAL

LIMITATION RIM SEEKS TO IMPOSE IS THAT THE CHANNEL BE DEDICATED.

THIS WOULD EXCLUDE THE PREFERRED EMBODIMENT.  THE PREFERRED EMBODIMENT SHOWN IN THE '408 PATENT IS THAT THE SIGNALING CHANNEL BE THE SMS CHANNEL, AND RIM'S EXPERT DESCRIBED YESTERDAY SMS AS TEXT MESSAGES, MESSAGES LIMITED TO 160 CHARACTERS THAT CAN BE SENT TO THE USER.

NOW, THEY'RE -- THAT'S OBVIOUSLY THE MAIN USE OF SMS.

BUT IT CAN ALSO BE USED TO TRANSMIT CONTROL INFORMATION SO THAT YOU CAN AFFECT A CHANGE, A REMOTE MANAGEMENT CHANGE ON A DEVICE USING THE SMS CHANNEL.

RIM'S DEDICATED CONSTRUCTION WOULD EXCLUDE SMS BECAUSE RIM WANTS THE SIGNALING CHANNEL TO BE CONSTRUED AS A DEDICATED CHANNEL.

NEXT SLIDE.

AND, YOU KNOW, THE CASE LAW IS CRYSTAL CLEAR ON THIS.  THERE HAS TO BE AIR TIGHT SUPPORT IN THE INTRINSIC EVIDENCE AND EXPRESS ADMISSION OF THE LIMITATION OF CLAIM SCOPE, SOMETHING THAT YOU CAN RELY UPON IF YOU'RE TRYING TO EXCLUDE THE PREFERRED EMBODIMENT, AND THAT'S JUST NOT THE CASE HERE.

NEXT SLIDE.

NOW, RIM EVEN DENIES THAT DEDICATED MEANS USED FOR ONE PURPOSE.

NEXT SLIDE.

THIS IS FROM RIM'S BRIEF.  THEY STATE, OH, NO, WE DON'T MEAN DEDICATED SUCH THAT THE CHANNEL WOULD BE ONLY FOR CONTROL INFORMATION.  WE SOMEHOW MEAN DEDICATED IN THE SENSE THAT IT CAN DO ANYTHING EXCEPT PROVIDE TRAFFIC FOR DATA.

IT DOES CONTROL AND ANYTHING ELSE.

NEXT SLIDE.

BUT THIS POSITION ISN'T EVEN CONSISTENT, BECAUSE IF DEDICATED MEANS WHAT RIM ARGUES, THEY WOULDN'T NEED THE ADDITIONAL LANGUAGE THEY'RE PROPOSING SEPARATE FROM THE TRAFFIC CHANNEL.  THAT WOULD BE INHERENT IN THEIR DEFINITION OF DEDICATED.

THE COURT:  WELL, ARE THESE WORDS, SIGNALING CHANNEL, TRAFFIC CHANNEL, ARE THESE DRAWN FROM SOMETHING THAT'S COMMON IN THIS ART?

MR. MCDONALD:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  WHERE DO I FIND THAT?

MR. MCDONALD:  OKAY.  LET'S GO -- HERE WE GO.  THE '408 PATENT -- BACK UP, PLEASE -- THE '408 PATENT AT COLUMN 5, LINE 65 THROUGH COLUMN 6, LINE

6.  SO THE BOTTOM OF COLUMN 5 TO THE TOP OF COLUMN 6.

THIS IS WHAT RIM'S EXPERT YESTERDAY WAS REFERRING TO AS IN-BAND VERSUS OUT-OF-BAND.

NOW -- NEXT SLIDE.  AND NEXT SLIDE.

THE COURT:  SO SIGNALING CHANNEL HAS A MEANING?

MR. MCDONALD:  THAT'S EXACTLY CORRECT, YOUR HONOR.

THE COURT:  AND THESE INVENTORS WERE ATTEMPTING TO USE THAT UNDERSTOOD MEANING?

MR. MCDONALD:  THAT ACTUALLY COMES IN PLAY WITH THE SIGNALING NETWORK LIMITATION, YOUR HONOR.

SO IF WE COULD ADVANCE TO THE NEXT SLIDE.

THE COURT:  NO, I'M STUCK WITH SIGNALING CHANNEL.

NOW, THERE -- I SEE LOTS OF WORDS MODIFIED BY SIGNALING.  I SEE SIGNALING SYSTEM.

MR. MCDONALD:  UM-HUM.

THE COURT:  AND CHANNEL SIGNALING SYSTEMS.

MR. MCDONALD:  SO, YOUR HONOR, IF I COULD --

THE COURT:  SIGNAL CONNECTION CONTROL.

77

SO --

MR. MCDONALD:  I THINK --

THE COURT:  WHAT I WAS TRYING TO DO WAS TO GET A FEEL FOR WHERE I COULD LOOK TO EDUCATE MYSELF ON WHAT WAS THE USE, IF ANY, IN THE ART OF SIGNALING CHANNEL.

MR. MCDONALD:  SO, YOUR HONOR, WITHIN THE '408 PATENT AT COLUMN 6, STARTING AT LINE 38 --

THE COURT:  YES.

MR. MCDONALD:  -- THERE'S A PARAGRAPH DESCRIBING THE SIGNALING NETWORK, AND THAT INCLUDES SIGNALING CHANNELS.

IF YOU LOOK AT LINE 39, IT REFERS TO SIGNALING POINTS AND IT STARTS "THE PHYSICAL COMMUNICATION CHANNELS OF A SIGNALING NETWORK, SUCH AS SS7."

NOW, YOU MAY REMEMBER FROM YESTERDAY'S PRESENTATION, RIM'S EXPERT, DR. ANTHONY ACAMPORA, YOU ASKED HIM, IS SIGNALING SYSTEM 7 A TERM KNOWN IN THE ART?  AND I WROTE THIS DOWN.

NEXT SLIDE, PLEASE.

HE ACTUALLY ANSWERED YES, SIGNALING SYSTEM 7 IS A WELL-KNOWN TERM OF ART THAT HAD A WELL UNDERSTOOD MEANING.

HE SAID THAT RIGHT OVER THERE.

78

IT'S UNDERSTOOD BY THOSE OF SKILL IN THE ART, SIGNALING SYSTEM 7 IS THE SYSTEM OF TOWERS, CHANNELS USED TO TRANSMIT TEXT MESSAGES, AND THAT'S WHAT THE PATENTEES DISCLOSED IN THEIR SPECIFICATION AS JUST ONE EXAMPLE OF A SIGNALING NETWORK.

THE COURT:  WELL, OKAY.  SO LET ME SEE IF I UNDERSTAND WHAT YOU'RE TELLING ME.

SO THE PHYSICAL COMMUNICATION CHANNELS OF A SIGNALING NETWORK, SUCH AS SS7, INCLUDE SIGNALING POINTS WHICH ARE INTERCONNECTED BY SIGNALING LINKS.

NOW, THE CLAIM TERM IS SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK.

WHAT IS THAT?

MR. MCDONALD:  SO THE SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK IS JUST THE PARTICULAR CHANNEL THAT'S USED TO RELAY THE SIGNAL COMMANDS WITHIN THE NETWORK.

THE COURT:  ALL RIGHT.  SO THIS INVENTION IS DOING SOMETHING, A METHOD FOR REMOTELY MANAGING A WIRELESS DEVICE OVER A TELECOMMUNICATIONS NETWORK.

MR. MCDONALD:  CORRECT.

THE COURT:  AND SO ESTABLISHING OVER A SIGNALING CHANNEL.

SO IT DOESN'T -- THE SIGNALING CHANNEL

ALREADY EXISTS?

MR. MCDONALD:  IT'S SORT OF LIKE A TELEVISION CHANNEL, YOUR HONOR.  IT'S JUST A CERTAIN FREQUENCY WITHIN THE ELECTROMAGNETIC SPECTRUM, OR HOW YOU WOULD TUNE YOUR CAR RADIO TO GET TO A PARTICULAR CHANNEL.  THAT'S THE CHANNEL ITSELF.

THE NETWORK IS ALL OF THE EQUIPMENT THAT'S USED TO BROADCAST ON THAT CHANNEL.

THE COURT:  RIGHT.  BUT THIS IS A METHOD THAT USES THE SIGNALING CHANNEL THAT ALREADY EXISTS IN THE TELECOMMUNICATIONS NETWORK.

MR. MCDONALD:  AS ONE EXAMPLE.  THAT'S A NON-LIMITING EXAMPLE, YOUR HONOR.

IT TALKS ABOUT USING A CHANNEL TO SEND SIGNALS, AND WHAT THE PATENTEES DISCLOSED IN COLUMN 6, WHICH IS ONE EXAMPLE OF SUCH A SIGNALING CHANNEL.

THE COURT:  RIGHT.  BUT TAKE ME IN CHUNKS.

MR. MCDONALD:  SURE.

THE COURT:  SO THIS IS A METHOD FOR USING SOMETHING THAT ALREADY EXISTS?  THIS IS NOT A DEVICE WHERE I'M INVENTING A TELECOMMUNICATION NETWORK.  I'M USING -- THIS IS A METHOD FOR USING

SOMETHING THAT'S OUT THERE.

MR. MCDONALD:  THAT'S CORRECT, YOUR HONOR.  THE INVENTION IS NOT A NEW TELECOMMUNICATIONS NETWORK.

THE COURT:  ALL RIGHT.  SO I'M USING THAT DEVICE -- I'M USING THE TELECOMMUNICATIONS NETWORK.

SO WHATEVER THAT IS, I'M GOING TO USE IT, AND I'M GOING TO ESTABLISH SOMETHING FROM THE SERVER IN MY METHOD BECAUSE THAT IS ALREADY OUT THERE IN THE COMMUNICATION NETWORK, AND A WIRELESS DEVICE, I'M GOING TO ESTABLISH BETWEEN THOSE A CONNECTION, AND I'M GOING TO ESTABLISH THAT CONNECTION OVER A SIGNALING CHANNEL IN THAT NETWORK.

SO THAT SIGNALING CHANNEL IS NOT SOMETHING I'M CREATING, IT ALREADY EXISTS, AND WHAT I'M DOING IS I'M USING IT TO ESTABLISH A CONNECTION BETWEEN THE SERVER AND THE -- MY INVENTION IS USING IT TO ESTABLISH A CONNECTION BETWEEN THE SERVER AND A WIRELESS DEVICE.  RIGHT?

MR. MCDONALD:  I BELIEVE EVERYTHING YOU SAID IS CORRECT, SIR.

THE COURT:  ALL RIGHT.  NOW, SO I'VE GOT TO FIGURE OUT, WHAT IS IT THAT I'M USING?  I'M USING THE SIGNALING CHANNEL.

SO I GO BACK OVER TO COLUMN 6, AND I'M EDUCATED ABOUT WHAT IS THE SIGNALING CHANNEL, OR AN EXAMPLE OF A SIGNALING CHANNEL.

MR. MCDONALD:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  ALL RIGHT.  AND SS7, YOU'RE TELLING ME, IS AN EXAMPLE OF A SIGNALING CHANNEL?

MR. MCDONALD:  THAT'S, IN FACT, THE REFERRED EMBODIMENT.  THAT'S WHAT THE INVENTORS THOUGHT WAS THE BEST WAY TO DO IT.

THE COURT:  OKAY.  SO WHEN I DEFINE IT, I'VE GOT TO DEFINE SOMETHING WOULD INCLUDE SS7, BUT YOU'RE SAYING IT SHOULD BE BROADER?

MR. MCDONALD:  THAT'S EXACTLY CORRECT, YOUR HONOR, BECAUSE THERE'S NO BASIS IN THE PATENT OR ANY OF THE OTHER EVIDENCE JUST TO LIMIT IT TO SS7.

THE COURT:  AND WHAT LANGUAGE DO YOU WANT ME TO USE TO DEFINE SIGNALING CHANNEL?

MR. THAKUR:  SIGNALING CHANNEL -- IT'S SHOWN THERE ON THE SCREEN, YOUR HONOR.  "CHANNEL OF THE TELECOMMUNICATIONS NETWORK CAPABLE OF TRANSMITTING CONTROL INFORMATION."

SO IF THERE'S A --

THE COURT:  WHY SHOULDN'T I STOP AT

82

CHANNEL OF THE TELECOMMUNICATIONS NETWORK?

MR. THAKUR:  I WOULD BE VERY HAPPY FOR YOU TO DO SO, SIR.

THE COURT:  WELL, WHY DOES -- BUT IT'S GOT TO BE SOMETHING OTHER THAN A CHANNEL OF THE TELECOMMUNICATION NETWORK, BECAUSE I PRESUME THAT A SIGNALING CHANNEL MAY BE DIFFERENT FROM OTHER CHANNELS OF THE TELECOMMUNICATION NETWORK. OTHERWISE THE WORD "SIGNALING" WOULDN'T BE THERE.

SO WHAT IS IT ABOUT A SIGNALING CHANNEL THAT'S DIFFERENT FROM OTHER CHANNELS?

MR. MCDONALD:  OKAY.  SO THE PATENT DOES DISTINGUISH THE SIGNALING CHANNEL FROM A CHANNEL THAT'S USED FOR VOICE COMMUNICATIONS.

THE COURT:  ALL RIGHT.

MR. MCDONALD:  AND THIS IS SOMETHING THAT WE TALKED ABOUT YESTERDAY.

THE COURT:  WELL, IS THAT THE DISTINCTION?  SIGNALING CHANNELS ARE FOR -- IS A CHANNEL FOR THE COMMUNICATION OF SOMETHING OTHER THAN VOICE.

MR. MCDONALD:  IT MAY BE USED -- I SHOULD EXPLAIN, YOUR HONOR.

A PARTICULAR CHANNEL CAN BE USED FOR VOICE AND CAN BE USED FOR SIGNALS.

BUT THE PATENT TEACHES NOT TO DO SO SIMULTANEOUSLY, BECAUSE IF YOU HAVE A VOICE SIGNAL GOING THROUGH AND THEN YOU TRY TO OVERLAY ON TOP OF THAT A SIGNALING SIGNAL, YOU'RE GOING TO GET INTERFERENCE BETWEEN THE TWO.

THE COURT:  SO REALLY IT'S THE DEFINITION OF SIGNALING, BECAUSE VOICE IS A SIGNAL, IT'S JUST CALLED VOICE BECAUSE IT'S A KIND OF SIGNAL.

SO A SIGNALING CHANNEL, THE DISTINCTION YOU'RE ASKING ME TO MAKE, IT SEEMS TO ME I'VE GOT TO DEFINE WHAT IT MEANS TO BE A SIGNALING CHANNEL. I CAN'T JUST USE VOICE BECAUSE AREN'T I THEN JUST DESCRIBING SOMETHING THAT IS ALSO A SIGNAL?

MR. MCDONALD:  VOICE IS A SIGNAL IN THE SENSE THAT IT'S TYPICALLY AN ANALOG SIGNAL, AND THE PATENT DISTINGUISHES --

THE COURT:  WELL, WHEN VOICE GOES OVER A DATA CHANNEL, IT'S CONVERTED TO 1'S AND 0'S. RIGHT?

MR. MCDONALD:  IF IT'S A DIGITAL COMMUNICATION CHANNEL, YES, YOUR HONOR.

THE COURT:  ARE THESE ANALOG SYSTEMS UNDER THIS CLAIM AS WELL?

MR. MCDONALD:  THE CLAIM IS NOT LIMITED TO DIGITAL SYSTEMS.

84

THE COURT:  OKAY.

MR. MCDONALD:  BUT FOR THE PURPOSES OF THIS CASE, THE SIGNALING CHANNEL, IT SENDS IT IN A DIGITAL FORMAT.  SO THE SIGNALS ARE DIGITAL.

THE COURT:  RIGHT.  AND I NEED TO FIGURE OUT WHAT THE INVENTOR MEANT BY A SIGNALING CHANNEL.

SO THIS WAS SOMEHOW BROKEN OUT FROM ALL OTHER CHANNELS, AND IF YOU TELL ME IT WAS COMMONLY KNOWN THAT THIS CHANNEL IS CALLED SIGNALING AND THIS CHANNEL IS CALLED SOMETHING ELSE, THAT HELPS ME.

AND THE ONE YOU STARTED WITH WAS VOICE.

MR. MCDONALD:  CORRECT, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO VOICE CHANNELS WERE DISTINGUISHED IN THE ART FROM SIGNALING CHANNELS?

MR. MCDONALD:  THAT'S EXACTLY CORRECT.

THE COURT:  VOICE CHANNELS CARRY VOICE. SIGNALING CHANNELS CARRY?

MR. MCDONALD:  SIGNALS, DIGITAL DATA.

THE ISSUE THERE IS IN THE PRIOR ART THEY TRIED TO DO SIGNALS ALONG WITH VOICE IN THE VOICE CHANNEL, AND THERE WERE CONCERNS WITH DEGRADATION OF QUALITY OF THE VOICE SIGNAL, AND ALSO THE FACT THAT SECURITY WAS COMPROMISED.

THE COURT:  SO IT HAS TO DO WITH TELECOMMUNICATIONS.  RIGHT?  THE TELECOMMUNICATIONS NETWORK IS A PARTICULAR KIND OF NETWORK WHERE VOICE HAD A SPECIAL MEANING.

MR. MCDONALD:  CORRECT.

THE COURT:  OKAY.  I SEE.  ALL RIGHT.

MR. MCDONALD:  AND JUST TO BE CLEAR, YOUR HONOR, THE PATENT DOES DISTINGUISH VOICE -- THE PATENT TEACHES NOT TO SEND SIGNALING SIGNALS -- LET ME CLARIFY.  THE PATENT TEACHES NOT TO SEND SIGNALS ALONG WITH VOICE BECAUSE YOU HAVE A DEGRADATION OF QUALITY.

IT NOWHERE -- IT NOWHERE TEACHES KEEPING SIGNALS AND DATA SEPARATE BECAUSE DIGITAL SIGNALS AND DIGITAL DATA, THERE'S NO DEGRADATION OF QUALITY IF THEY PASS ALONG THE SAME CHANNEL.

THE COURT:  ALL RIGHT.  SO WE NEED A BETTER WORD FOR SIGNALS, BECAUSE IF WE USE SIGNALS TO DEFINE SIGNALING CHANNEL, IT'S GOING TO BE SOMEWHAT CONFUSING.

SO HOW YOU'RE USING SIGNALS IS WHAT?

MR. MCDONALD:  WE SAY IT'S A VERY SIMPLE CONSTRUCTION, YOUR HONOR.  IT'S JUST A CHANNEL OF THE TELECOMMUNICATIONS NETWORK CAPABLE OF TRANSMITTING CONTROL INFORMATION .

86

NOW, THE PATENT TEACHES THAT IT'S NOT PREFERRED TO DO THAT ON THE VOICE CHANNEL, BUT IT IS POSSIBLE TO DO IT.

THE COURT:  WELL, THE CAPABILITY IS NOT SO MUCH -- IN OTHER WORDS, BOTH WOULD BE CAPABLE OF DOING IT, IT SOUNDS LIKE, BUT YOU PREFER NOT TO FOR REASONS HAVING TO DO WITH DEGRADATION OF THE QUALITY.  THAT DOESN'T HAVE TO DO WITH ITS CAPABILITY.

WHY WOULDN'T "DEDICATED" BE APPROPRIATE THERE?  IN OTHER WORDS, THE REASON YOU'RE DOING IT OVER HERE IS YOU HAVE -- YOU WANT TO -- YOU WANT TO PRESERVE THE INTEGRITY OF YOUR DATA OR OF YOUR COMMANDS OR WHATEVER YOU'RE SENDING, SO YOU ESTABLISH SOMETHING FOR THE PURPOSE OF CARRYING SIGNALS OTHER THAN VOICE.

MR. MCDONALD:  I UNDERSTAND WHAT YOU'RE SAYING, I THINK, SIR.

THE REASON "DEDICATED" IS WHOLLY IMPROPER IS BECAUSE THE PREFERRED EMBODIMENT DISCLOSED WAS SS7.

THAT IS NOT DEDICATED TO CONTROL SIGNALS. THAT CAN BE USED FOR CONTROL SIGNALS, TEXT MESSAGES.  IT HAS VARIOUS USES.

SO IF YOU WERE TO CONSTRUE THIS TO

87

REQUIRE A DEDICATED CHANNEL, IT WOULD EXCLUDE THE

PATENTEE'S PREFERRED EMBODIMENT.

THE COURT:  RIGHT.  SO "DEDICATED" IS

BAD.

BUT "ESTABLISHED FOR THAT PURPOSE" IS

SOMETHING LESS THAN "DEDICATED"?

MR. MCDONALD:  PERHAPS WE SHOULD TALK

ABOUT THE SECOND LIMITATION -- THE SECOND

REQUIREMENT RIM IS SEEKING TO IMPOSE, THAT IT BE

SEPARATE FROM THE TRAFFIC CHANNEL, BECAUSE I THINK

THAT'S KIND OF WHAT YOU'RE GETTING AT.

THE COURT:  SEPARATE FROM THE VOICE

CHANNEL, CLEARLY.

MR. MCDONALD:  THEIR -- THEY WANT IT TO

BE SEPARATE FROM ANY OTHER DATA, NOT JUST VOICE.

THE COURT:  ALL RIGHT.  ANY OTHER TERMS

THAT YOU HAVE UNDER YOUR --

MR. MCDONALD:  YES, YOUR HONOR.

THE COURT:  WHAT ARE THOSE?

MR. MCDONALD:  NEXT SLIDE WOULD BE

REMOTELY MANAGING A WIRELESS DEVICE.

THE COURT:  OKAY.

MR. MCDONALD:  THIS APPEARS IN THE

PREAMBLE OF BOTH THE '917 AND THE '408 PATENT, AND

THE CRITICAL QUESTION HERE IS, SHOULD THE PREAMBLE

EVEN BE CONSTRUED?  SHOULD IT BE CONSTRUED AS A LIMITATION?

IN THIS CASE IT SHOULD BECAUSE IT PROVIDES ANTECEDENT BASIS FOR THE CLAIM TERM "WIRELESS DEVICE."

IF WE LOOK AT CLAIM 1 OF EITHER PATENT, THE PREAMBLE STATES "A METHOD FOR REMOTELY MANAGING A WIRELESS DEVICE."  THAT'S WHERE WE GET THE TERM "REMOTELY MANAGING A WIRELESS DEVICE."  THAT'S THE ANTECEDENT BASIS FOR "WIRELESS DEVICE" WHICH APPEARS THROUGHOUT THE CLAIMS.

NEXT SLIDE.

AND THE CASE LAW IS CLEAR THAT WHEN THE LIMITATIONS IN THE BODY OF THE CLAIM RELY UPON AND DERIVE ANTECEDENT BASIS FROM THE PREAMBLE, THEN THAT PREAMBLE MAY ACT AS A NECESSARY COMPONENT OF THE CLAIMED INVENTION.

THAT'S A POSITION THAT RESEARCH IN MOTION THEMSELVES SOUGHT TO HAVE THE FEDERAL CIRCUIT TAKE AND THE FEDERAL CIRCUIT AGREED.

NEXT SLIDE.

THIS IS A VERY GOOD STATEMENT OF THE LAW. UNDER THE LAW, A PREAMBLE SHOULD BE DISREGARDED AS A SOURCE OF LIMITATIONS TO THE CLAIM ONLY IF, AFTER CONSIDERING THE PATENT AS A WHOLE, THE COURT FINDS

89

THAT THE BODY OF THE CLAIM FULLY AND INTRINSICALLY SETS FORTH THE COMPLETE INVENTION.

SO THIS, YOU KNOW, SPECIFIES THAT CONSTRUING THE PREAMBLE IS NOT UNUSUAL AND, IN FACT, IT SHOULD BE DISREGARDED ONLY IF THE PATENTEE -- THE OTHER PORTION OF THE CLAIM IS FREESTANDING AND PROVIDES A FULLY AND INTRINSICALLY SETS FORTH THE COMPLETE INVENTION.

AND WHERE DID WE GET THIS STATEMENT? WELL, THIS IS FROM RIM'S MARKMAN BRIEF IN THE NTP CASE BEFORE THE EASTERN DISTRICT OF VIRGINIA.

THE COURT: WELL, THOSE ARE GENERAL PROPOSITIONS AND I BELIEVE THEM.

BUT WHAT YOU'RE ASKING ME TO USE THE PREAMBLE FOR IS TO ACT AS A LIMITATION AND DEFINE "WIRELESS DEVICE"?

MR. MCDONALD: YES, YOUR HONOR, BECAUSE IN THIS CASE -- WE SPOKE ABOUT YESTERDAY PROVISIONING WAS VERY MUCH IN THE PRIOR ART, AND THAT REMOTE MANAGEMENT MAY NOT NECESSARILY REQUIRE WIRELESS REMOTE MANAGEMENT.

IF YOU HAVE A COMPUTER -- AND DR. ACAMPORA, RIM'S EXPERT, SHOWED THIS ON THE SCREEN -- IF YOU HAVE A COMPUTER THOUSANDS OF MILES AWAY AND IT'S THROUGH A HARD WIRED INTERCONNECTION

TO THE INTERNET BEING MANAGED, THAT IS, IN FACT, REMOTE MANAGEMENT, BUT IT'S NOT WIRELESS REMOTE MANAGEMENT.

THIS PATENT SPECIFICATION, THE FILE HISTORY, EVERYTHING WAS RELATED TO WIRELESS MANAGEMENT.

AND BY CONSTRUING THE PREAMBLE -- IT ALREADY SAYS A WIRELESS DEVICE.  SO CONSTRUING THE PREAMBLE TO MEAN REMOTELY AND WIRELESSLY MANAGING A PROVISIONED DEVICE, YOU WOULD ACCOMPLISH TWO THINGS.

ONE, YOU WOULD LIMIT THE CLAIM TO WIRELESSLY MANAGING THE DEVICE, WHICH IS, IN FACT, THE PROPER SCOPE OF THE CLAIMED INVENTION AS SHOWN THROUGH THE SPECIFICATION AND THE FILE HISTORY, AND YOU WOULD ALSO LIMIT IT TO A DEVICE THAT HAD ALREADY BEEN PROVISIONED.

WHEN THIS PATENT APPLICATION WAS WORKING ITS WAY THROUGH THE PATENT OFFICE, THE EXAMINER CLEARLY KNEW ABOUT THE PRIOR ART OF WIRELESSLY PROVISIONING A DEVICE.

WHAT WAS NEW AND THE POINT OF NOVELTY WAS WIRELESSLY REMOTELY MANAGING THE DEVICE AFTER IT HAD BEEN PROVISIONED, AND IT'S THOSE PORTIONS OF THE PREAMBLE THAT BREATHE LIFE INTO THE CLAIMS AND

THAT'S WHY IT SHOULD BE CONSTRUED.

THE COURT:  SO YOU WOULD HAVE ME READ "REMOTELY MANAGING" AS "WIRELESSLY MANAGING"?

MR. MCDONALD:  THAT'S CORRECT, YOUR HONOR.

THE COURT:  AND DOES THE -- DOES THE SPECIFICATION SUPPORT THAT?

MR. MCDONALD:  IT DOES, YOUR HONOR.

AND, IN FACT, DURING PROSECUTION, THE EXAMINER IS PRESUMED TO KNOW ABOUT ALL THE REMOTE MANAGEMENT WIRE ART THAT DR. ACAMPORA SHOWED YESTERDAY WHERE YOU HAD BELL LABS CONTROLLING COMPUTERS REMOTELY THROUGH A HARD WIRE CONNECTION.

THE ENTIRE FOCUS OF THIS PATENT IS WIRELESSLY CONTROLLING A DEVICE.

AND THE CLAIMS THEMSELVES ALWAYS SPECIFY A WIRELESS DEVICE.  THEY NEVER SPECIFY A WIRED DEVICE.

THE COURT:  WELL, WHAT I WAS HEARING YESTERDAY IN THE TUTORIAL, THOUGH, IS THAT FOR SOME OF THESE DEVICES, THERE IS A COMBINATION OF WIRELESS AND WIRED CONNECTIONS.

MR. MCDONALD:  THERE CERTAINLY CAN BE.

THE COURT:  AND SO DOES -- IF I ADOPT YOUR DEFINITION AND I HAVE A WIRELESS MANAGEMENT,

MAY I ALSO HAVE A WIRED MANAGEMENT IN COMBINATION, OR MUST IT BE TOTALLY WIRELESS?

MR. MCDONALD:  THERE'S NO REASON THAT IT WOULD EXCLUDE WIRED.

THE COURT:  WELL, AM I WIRELESSLY MANAGING IF I USE WIRES TO MANAGE?

MR. MCDONALD:  NO, YOU'RE NOT.

BUT THE SAME DEVICE COULD BE BOTH WIRELESSLY MANAGED AND WIRED MANAGED AT THE USER'S CHOICE.

THE COURT:  AH.  SO THIS, THOUGH, YOU WOULD ASK ME TO READ AS A CLAIM THAT TALKS ABOUT PURE WIRELESS MANAGEMENT, AND IF THERE'S WIRED MANAGEMENT, IT'S NOT COVERED BY THE CLAIM.

MR. MCDONALD:  THE DEVICE WOULD STILL BE INFRINGING, BUT THE USE WITH THE WIRED MANAGEMENT WOULD NOT BE THE INFRINGING ASPECT.

THE COURT:  I SEE.  YOU'RE AWAY ON THE INFRINGEMENT SIDE.

OKAY.  I UNDERSTAND WHAT YOU'RE ASKING ME TO DO.

MR. MCDONALD:  AND JUST -- I'M SORRY, SIR, JUST TO ANSWER YOUR QUESTION.  IF YOU DID HAVE A DEVICE WHERE ALL MANAGEMENT WAS WIRED, THERE WAS NO WIRELESS MANAGEMENT, THIS CLAIM WOULD NOT APPLY

93

TO THAT.

THE COURT:  RIGHT.  BUT WHAT I WAS TRYING TO ESTABLISH, WHICH I THOUGHT YOU ANSWERED, IS IF I HAVE A DEVICE, THE METHOD OF WHICH IS -- DEPENDS UPON THERE BEING A WIRED PORTION FOR MANAGEMENT, AM I INFRINGING A CLAIM THAT CLAIMS A METHOD OF MANAGING THAT'S WIRELESS?

MR. MCDONALD:  OKAY.  SO THESE CLAIMS ARE -- THEY'RE ALL COMPRISING, THEY'RE OPEN CLAIMS.

SO LONG AS ALL THE LIMITATIONS ARE MET, IF YOU HAVE A DEVICE THAT MEETS ALL THE LIMITATIONS WIRELESSLY, IT IS INFRINGING.

IF YOU HAVE SOME PART OF IT WHERE YOU HAVE A FUNCTION THAT'S ESTABLISHED THROUGH A WIRE, THAT'S NOT ENOUGH TO AVOID INFRINGEMENT.

THE COURT:  ALL RIGHT.  SO THAT -- BUT THAT'S WAY OVER ON THE INFRINGEMENT SIDE, SO I HAVE TO BE CAREFUL ABOUT -- WHAT YOU'RE TEACHING ME IS I HAVE TO BE CAREFUL ABOUT HOW I DEFINE MANAGEMENT REMOTELY, AND IT NEEDS TO BE WIRELESSLY, AND I NEED TO BE CAREFUL ABOUT WHAT PORTION OF IT IS WIRELESSLY MANAGED BECAUSE IT HAS ELEMENTS THAT SPEAK TO WIRELESS, SO WHEN THOSE PARTICULAR ELEMENTS ARE DONE WITH A WIRE, THAT WOULD CREATE A PROBLEM?

MR. MCDONALD:  AH.  I SEE WHAT YOU'RE SAYING, YOUR HONOR.  I'M SORRY.  I DIDN'T GET IT AT FIRST.

THERE ARE CERTAIN PORTIONS OF THE CLAIM, SUCH AS THE COMMUNICATION BETWEEN A SERVER AND A MAILBOX, THAT DO NOT INVOLVE THE DEVICE.  THOSE DO NOT HAVE TO BE WIRELESS.

THE COURT:  I'M NOT TALKING ABOUT THOSE.

I'M TALKING ABOUT NON-EXAMPLES.  I'M TALKING ABOUT I GAVE YOU AN ELEMENT WHICH REQUIRES THAT IT BE DONE WIRELESSLY, BUT IF THAT'S DONE WIRED, THEN THE SO-CALLED INFRINGING DEVICE DOESN'T PRACTICE THE ELEMENT.

MR. MCDONALD:  NOT LITERALLY, YOUR HONOR.

THE COURT:  OKAY.  WE'RE WAY OUT THERE NOW TO OTHERS.

OKAY.  I UNDERSTAND.  THANK YOU.

MR. MCDONALD:  AND MY FINAL TERM, YOUR HONOR --

THE COURT:  OKAY, FINAL.  I WAS GOING TO BRING YOU TO AN END, BUT FINAL ALWAYS GETS MORE TIME.

MR. MCDONALD:  THE FINAL TERM, YOUR HONOR, IS "SERVER."

THE COURT:  AH.

MR. MCDONALD:  AND THAT APPEARS IN BOTH PATENTS.

IN THE '408 PATENT, CLAIM 1, THE FIRST INSTANCE OF SERVER IS IN THE PREAMBLE AT LINE 34 OF COLUMN 10 IN THE '408 PATENT.

THE SECOND INSTANCE IS AT LINE 36 IN THE FIRST LIMITATION.

NOW, THERE'S REALLY -- THE PARTIES ARE FAIRLY CLOSE ON THE CONSTRUCTION OF SERVER.

THE KEY ISSUE IS THAT THE PATENT EXPRESSLY DISCLOSES THAT THE SERVER MAY BE AN INTERCONNECTED NETWORK OF SEVERAL COMPUTERS.

YOU DON'T HAVE TO HAVE A SINGLE BOX THAT YOU POINT TO AND SAY THAT'S THE SERVER.

AND THAT'S IN THE PATENT, THE '408 PATENT AT COLUMN 8, LINES 7 TO 12.

THE COURT:  OKAY.

MR. MCDONALD:  IT STATES THAT IT "MAY BE IMPLEMENTED AS A PLURALITY OF NETWORKED COMPUTER SYSTEMS."

NOW, RIM'S CONSTRUCTION IS INAPPROPRIATE AND IMPROPER BECAUSE IT WOULD REQUIRE A COMPUTER OR PROGRAM DEDICATED TO PROVIDING INFORMATION IN RESPONSE TO EXTERNAL REQUESTS.

THERE'S SEVERAL PROBLEMS HERE.  THEY

96

WOULD ONLY ALLOW IT TO BE ONE COMPUTER.

IF THE SERVER IS DISTRIBUTED AS DISCLOSED IN THE PATENT, IT WOULD NOT BE INFRINGING UNDER RIM'S CONSTRUCTION BECAUSE IT'S ON MORE THAN ONE BOX, MORE THAN ONE COMPUTER.

THEY WOULD ALSO REQUIRE THAT IT BE DEDICATED TO PROVIDING INFORMATION IN RESPONSE TO EXTERNAL REQUESTS.

UNDER RIM'S CONSTRUCTION, THAT'S THE ONLY THING THAT THE SERVER IS ALLOWED TO DO.

WHAT THIS DOES, IT CREATES AN ESCAPE HATCH FOR AN INFRINGER.  IF THEY HAVE A DEVICE THAT MEETS ALL THE LIMITATIONS OF THE CLAIM AND THEY PUT SOME OTHER FUNCTIONALITY ON THE SERVER, THEY JUST DO A LITTLE ADD-ON, THEY WOULD ESCAPE INFRINGEMENT UNDER THIS BECAUSE THAT SERVER WOULD NO LONGER BE DEDICATED TO PROVIDING INFORMATION IN RESPONSE TO AN EXTERNAL REQUEST.

IT'S A NAKED ATTEMPT TO CREATE AN ESCAPE HATCH FOR AN INFRINGING SYSTEM.

AND MOST IMPORTANTLY, THERE'S NO SUPPORT IN THE SPECIFICATION FOR ANY OF THIS DEDICATED TO PROVIDING INFORMATION IN RESPONSE TO EXTERNAL REQUESTS.  THAT'S LANGUAGE THAT RIM TAKES -- THEY MAKE IT UP FROM WHOLE CLOTH, YOUR HONOR.

97

THE COURT:  WELL, DOES THE INVENTOR DEFINE "SERVER"?

MR. MCDONALD:  THE BASIS OF OUR CONSTRUCTION IS THE DISCLOSURE IN THE SPEC THAT I CITED, THE '408 PATENT, COLUMN 8, LINES 7 TO 12, WHERE HE EXPRESSLY SAYS "THE SERVER 114 IS IMPLEMENTED AS A PLURALITY OF NETWORKED COMPUTER SYSTEMS."

AND THAT'S, THAT'S WHAT INFORMS OUR PROPOSED CONSTRUCTION.

THE COURT:  SO THEY'RE TALKING ABOUT AN EMBODIMENT.

MR. MCDONALD:  THAT'S ONE EXEMPLARY EMBODIMENT, YOUR HONOR.

THE COURT:  RIGHT.  BUT THAT'S THE ONLY PLACE WHERE SERVER 114 IS DISCUSSED?  I SEE 114 DISCUSSED LATER ON IN THAT SAME COLUMN, SO I SHOULD STUDY THIS TO FIGURE OUT HOW THE INVENTOR IS USING -- MANAGEMENT SERVER 114 IS KIND OF WHAT THIS IS TALKING ABOUT.

MR. MCDONALD:  THAT'S CORRECT, YOUR HONOR.  AND JUST A COUPLE MORE QUICK POINTS.

NEXT SLIDE.

RIM WOULD REQUIRE A DEDICATED SERVER.

NEXT SLIDE.  OH.  OKAY.  THAT'S FINE.

THERE'S NO BASIS FOR THAT, AND THE DEFINITIONS IN THE ART FOR DEDICATED ARE THAT IT CAN BE ONLY USED FOR ONE PURPOSE, BUT I BELIEVE I'VE ALREADY GONE OVER THAT, YOUR HONOR.

AND I'M HAPPY TO ANSWER ANY QUESTIONS YOU MAY HAVE, SIR.

THE COURT:  VERY WELL.

ALL RIGHT.  WE STARTED A LITTLE LATE, BUT I THINK I UNDERSTAND THIS.

CAN WE JUST TAKE A QUICK BREAK?  IT'S -- ABOUT FIVE MINUTES IS ALL WE NEED SO THE OTHER SIDE CAN SET UP AND OUR COURT REPORTER CAN TAKE A LITTLE BIT OF A BREAK.  WE'LL COME BACK AT ABOUT A QUARTER TO THE HOUR.

(WHEREUPON, A RECESS WAS TAKEN.)

MS. DEBRUIN:  I'M GOING TO PRESENT FROM OVER HERE, YOUR HONOR.

THE COURT:  THANK YOU.

MS. DEBRUIN:  MAY I HAND UP OUR PRESENTATION MATERIALS, PLEASE?

THE COURT:  THANK YOU.  YOU MAY PROCEED.

MS. DEBRUIN:  GOOD MORNING, YOUR HONOR. LINDA DEBRUIN ON BEHALF OF RESEARCH IN MOTION.

AS YOU KNOW, WE'RE TALKING ABOUT THE '917 AND THE '408 PATENTS.

99

THERE'S ONE IMPORTANT PIECE OF THE PUZZLE, THOUGH, WE HAVEN'T TALKED ABOUT, AND NOTHING WAS SAID DURING MFORMATION'S PRESENTATION, AND THAT IS THAT THE '917 AND '408 PATENTS COME FROM A PROVISIONAL APPLICATION.

THAT PROVISIONAL APPLICATION WAS FILED IN ORDER TO CLAIM AN EARLY PRIORITY DATE, AND MFORMATION HAS TOLD US THAT THEY CLAIM PRIORITY FOR ALL OF THE CLAIMS OF THE '917 PATENT BASED ON THAT PROVISIONAL APPLICATION.

AND YOU'RE GOING TO SEE IN A MOMENT, WITH RESPECT TO MAILBOX, THAT THAT'S IMPORTANT.

IF CLAIMS CLAIM PRIORITY BASED ON A PROVISIONAL APPLICATION, THAT APPLICATION MUST ENABLE THE CLAIMS AND MUST PROVIDE A WRITTEN DESCRIPTION.

NEXT SLIDE, PLEASE.

WE'VE GROUPED OUR PRESENTATION INTO FOUR CATEGORIES.  FIRST ARE THE MAILBOX TERMS; SECOND, THE SIGNALING CHANNEL TERMS; THIRD, THRESHOLD CONDITION TERMS; AND FINALLY, A FOURTH BUCKET OF TERMS THAT WE'VE LABELED AS COMMONLY UNDERSTOOD TERMS.

THESE ARE TERMS THAT MFORMATION HAS UNNECESSARILY AND IMPROPERLY NARROWED.

I'D LIKE TO START WITH THE MAILBOX TERMS AND THE THREE TERMS WITHIN THAT CATEGORY:  MAILBOX; THE CONTENTS OF MAILBOX; AND PLACING A COMMAND FOR THE WIRELESS DEVICE IN THE MAILBOX.

THE MAILBOX IN PARTICULAR IS FOCUSSED ON THE '917 PATENT, ALTHOUGH THIS SAME CONCEPT IS USED IN THE '408, BUT ONLY IN DEPENDENT CLAIMS.

THE CONCEPT OF A MAILBOX THROUGHOUT THE PATENTS IS LIKE YOUR HOME MAILBOX, THE MAILBOX OUT IN FRONT OF YOUR HOUSE.

THERE'S ONE MAILBOX PER HOUSE.  THERE'S ONE HOUSE ASSOCIATED WITH A MAILBOX.  THE MAIL PERSON DELIVERS THE MAIL INTO YOUR MAILBOX.  YOU COME OUT AFTER WORK, YOU GATHER THE CONTENTS OF THE MAILBOX, AND YOU TAKE IT INSIDE.

THE TERM "MAILBOX" AND THE RELATED TERMS ARE USED THROUGHOUT THE PATENTS CONSISTENT WITH THAT COMMON, ORDINARY MEANING OF MAILBOX.

THE COURT:  WELL, THEY DO MIX IT UP A LITTLE BIT HERE BECAUSE HERE, INSTEAD OF BEING AT THE HOUSE, IT'S AT THE SERVER.

SO DOES THAT WORK?

MS. DEBRUIN:  IT DOES WORK.  IT'S LIKE A POST OFFICE BOX, FOR EXAMPLE.  YOU HAVE AN ASSIGNED POST OFFICE BOX.  PERHAPS YOU DON'T GET MAIL AT

HOME, BUT YOU GET IT THROUGH A POST OFFICE BOX.

THAT POST OFFICE BOX IS ASSIGNED TO YOU. YOU HAVE A KEY FOR IT.  YOU GO TO VISIT THE POST OFFICE AND YOU PICK UP THE CONTENTS OF THE MAILBOX, OF THE POST OFFICE BOX.

THE COURT:  THAT'S CLOSER THAN THE HOUSE IF IT'S AT THE SERVER, THEN, ISN'T IT?

MS. DEBRUIN:  SAME IDEA.  THE SAME THING APPLIES.

AGAIN, IT'S THE 1:1 RELATIONSHIP AND THE FACT THAT WHEN YOU REMOVE THINGS, YOU CAN REMOVE THE CONTENTS AND THAT'S EVERYTHING IN THE BOX.

THAT'S WHAT WE NORMALLY DO.  WE NORMALLY DON'T SORT THROUGH OUR MAIL WHEN WE GO OUT TO OUR MAILBOX OR WHEN WE GO TO OUR POST OFFICE BOX.

THAT'S THE NORMAL UNDERSTANDING OF THE TERM "MAILBOX."

THE WAY IT'S USED IN THE PATENT IS CONSISTENT.  AS I SAID, WE'RE TALKING ABOUT THE '917 PATENT, AND I HAVE THE '917 PATENT UP ON THE BOARD HERE SO WE CAN REFER TO IT.

ONE THING THAT YOU FOCUSSED ON DURING PLAINTIFF'S PRESENTATION IS WE ESTABLISH A MAILBOX FOR THE WIRELESS DEVICE AT THE SERVER.  THAT'S A VERY IMPORTANT STEP, AND THAT SUPPORTS RIM'S

CONSTRUCTION, WHICH IS 1:1.

NEXT SLIDE, PLEASE.

RIM'S CONSTRUCTION IS A REPOSITORY THAT STORES ALL COMMANDS TO BE DELIVERED TO A PARTICULAR WIRELESS DEVICE, WHERE EACH REPOSITORY STORES COMMANDS FOR ONLY ONE WIRELESS DEVICE.

THAT CONSTRUCTION PROPERLY GETS AT THE 1:1 RELATIONSHIP THAT YOU WILL SEE IS CALLED FOR IN THE PATENTS-IN-SUIT.

NOW, PLAINTIFF'S COUNSEL CHALLENGED US FOR THE USE OF "ALL." WE'RE JUST TRYING TO BE CLEAR. WHEN WE SAY THAT IT STORES ALL COMMANDS TO BE DELIVERED TO A PARTICULAR WIRELESS DEVICE, ALL THAT WE'RE SAYING IS THAT EACH WIRELESS DEVICE HAS A MAILBOX.

WHERE WE SAY "WHERE EACH REPOSITORY STORES COMMANDS FOR ONLY ONE WIRELESS DEVICE," WE'RE SAYING THERE'S JUST ONE WIRELESS DEVICE ASSOCIATED WITH EACH MAILBOX, THE 1:1 RELATIONSHIP.

MFORMATION'S CONSTRUCTION PROVIDES NO HELP FOR THE JURY. IT'S SIMPLY A "STORAGE LOCATION HAVING INFORMATION ABOUT A WIRELESS DEVICE."

AS YOU NOTED, THE MAILBOX DOES NOT STORE INFORMATION ABOUT A WIRELESS DEVICE. IT STORES COMMANDS.

MFORMATION'S COUNSEL POINTED YOU TO A SECTION IN THE PATENT THAT TALKED ABOUT PUTTING INFORMATION -- THAT TALKED ABOUT STORING REGISTRATION INFORMATION.

THAT INFORMATION IS NOT STORED IN THE MAILBOX.  IT'S STORED IN ANOTHER PLACE LABELED AS MANAGEMENT DATA 312 IN THE PATENT.

MFORMATION'S CONSTRUCTION OF A "STORAGE LOCATION HAVING INFORMATION ABOUT A WIRELESS DEVICE," ONE, IS VAGUE; TWO, IGNORES EVEN THE PURPOSE OF MAILBOX AND PROVIDES FOR THE MAILBOX TO STORE SOMETHING, INFORMATION ABOUT A WIRELESS DEVICE THAT IS NOT SET FORTH OR DESCRIBED IN THE PATENTS.

NOW, WHAT DID THE INVENTORS SAY ABOUT WHAT A MAILBOX WAS?  THAT'S WHAT'S IMPORTANT.

YOU HEARD FROM MFORMATION'S COUNSEL THAT MAILBOX IS SOMETHING THAT THE INVENTORS DEFINED IN THEIR FILING.  IT'S NOT A TERM OF ART THAT WE CAN LOOK TO A DEFINITION OUTSIDE OF THE PATENT OTHER THAN TO LOOK TO THE NORMALLY UNDERSTOOD MEANING OF MAILBOX.

WHAT DID THE INVENTORS SAY IN THEIR INITIAL FILING, THEIR FIRST WORD ON WHAT THEY THOUGHT THEIR INVENTION WAS?

104

THEY SAID THAT THE SERVER -- AND THIS IS FROM THE PROVISIONAL APPLICATION, WHICH IS EXHIBIT C TO RIM'S BRIEF -- "THE SERVER MAINTAINS A MAILBOX FOR EACH CLIENT, WHICH CAN BE ACCESSED BY CLIENT EITHER ON DEMAND OR PERIODICALLY."

SO THAT'S YOUR POST OFFICE BOX.  AND THE PROVISIONAL APPLICATION SAYS THAT THE SERVER MAINTAINS A MAILBOX, A POST OFFICE BOX, FOR EACH CLIENT.  IN OTHER WORDS, THE 1:1.

YOU HAVE ONE POST OFFICE BOX AND THAT POST OFFICE BOX IS ONLY FOR YOU.

THAT'S THE SAME THING THAT THE INVENTORS SAID -- THAT THE INVENTORS SET OUT IN THE PROVISIONAL APPLICATION.

THE PROVISIONAL APPLICATION HAS TO ENABLE ALL OF THE CLAIMS OF THE '917 PATENT.

THE COURT:  NOW, WHAT I HEARD FROM YOUR OPPONENT IS THE PROSPECT THAT I COULD DIVIDE THE INDIVIDUAL MAILBOXES INTO A GROUP SO THAT IF I WANT TO DELIVER INFORMATION TO ALL THE MAILBOXES OF PEOPLE WHO ARE PHYSICALLY LOCATED IN CALIFORNIA, OR WHO HAVE EXECUTIVE STATUS, OR WHO MEET SOME OTHER CRITERIA, I COULD GROUP THOSE MAILBOXES INTO A MAILBOX AND THAT MAILBOX WOULD DISTRIBUTE TO THE INDIVIDUAL MAILBOXES SO THAT THERE COULD BE

MULTIPLE MAILBOXES.

THAT DOESN'T NECESSARILY QUARREL WITH YOUR NOTION THAT AT SOME POINT THERE IS A MAILBOX ASSOCIATED WITH THE DEVICE.

THE QUESTION IS, MAY THERE BE MULTIPLE MAILBOXES THAT WOULD OTHERWISE ULTIMATELY DELIVER INFORMATION TO THAT DEVICE?

MS. DEBRUIN:  NOT AS PROVIDED BY THE PATENT.  THE EXAMPLE THAT COUNSEL GAVE IS NOWHERE PROVIDED FOR IN THE PATENT SPECIFICATION, IN THE PROVISIONAL, OR EVEN IN ANY OF THE CLAIMS.

THE COURT:  WELL, IF -- SO THE QUESTION BECOMES, IS THE ARTICLE "A MAILBOX" THEN FOR THE WIRELESS DEVICE LIMITING TO THE POINT WHERE THERE -- WHERE THAT MEANS THAT YOU CAN'T CREATE A MAILBOX FOR THE DEVICE THAT IS NOT DIRECTLY CONNECTED TO THAT DEVICE, BUT CONNECTED TO A MAILBOX FOR THE DEVICE?

MS. DEBRUIN:  YOU'RE -- IF I UNDERSTAND YOUR QUESTION, YOUR HONOR, THERE'S NOTHING PROVIDED FOR IN THE PATENT THAT WOULD DO THAT.

THE PATENT PROVIDES THAT THERE'S A MAILBOX FOR EACH WIRELESS DEVICE.

THE COURT:  IT DOESN'T SAY "EACH" IN THE CLAIM, THOUGH.

106

MS. DEBRUIN:  WHAT IT --

THE COURT:  BUT --

MS. DEBRUIN:  WHAT IT DOES SAY IN THE CLAIMS IS THAT IT ESTABLISHES -- "ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE AT THE SERVER."

THAT GETS AT -- IN PARTICULAR, AN IMPORTANT PIECE OF THIS IS THE RELATIONSHIP BETWEEN A MAILBOX AND ITS ASSOCIATED WIRELESS DEVICE.

THAT IS EXPRESSLY COMING FROM THE SPEC, FROM THE PROVISIONAL APPLICATION, AND FROM THIS LANGUAGE IN THE CLAIM, "ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE AT THE SERVER."

THERE'S NO EXPLANATION ANYWHERE IN THE PATENT --

THE COURT:  AND I UNDERSTAND YOUR POSITION.  IN OTHER WORDS, IF I'M GOING TO BROADCAST TO A -- TO EVERYTHING AS OPPOSED TO DELIVERING INFORMATION TO INDIVIDUAL BEINGS, I WOULDN'T NEED A MAILBOX STRUCTURE.

THE MAILBOX STRUCTURE MUST BE THERE FOR A PARTICULAR PURPOSE, OTHERWISE I'M JUST BROADCASTING AND ANYONE WITH AN ANTENNA CAN PICK IT UP.

BUT BY USING A MAILBOX STRUCTURE, I MUST BE INTENDING A RELATIONSHIP.

MS. DEBRUIN:  CORRECT.

THE COURT:  SO THAT I CAN CONTROL TO WHOM THE INFORMATION IS BEING SENT, AND I -- THE MAILBOX IS A WAYPOINT IN THE COMMUNICATIONS TO ESTABLISH THAT I'M SENDING THE INFORMATION TO A PARTICULAR LOCATION AS OPPOSED TO ALL LOCATIONS.

MS. DEBRUIN:  CORRECT.  AND THE MAILBOX MAY BE EMPTY.

THE MAILBOX CAN BE CHECKED TO SEE IF THERE'S ANYTHING -- I CAN CHECK MY MAILBOX TO SEE IF THERE'S ANYTHING IN THERE FOR ME.

THE MAILBOX EXISTS INDEPENDENT OF HAVING SOMETHING IN IT.

THE COURT:  BUT NOW -- CAN'T I HAVE IT BOTH WAYS?  CAN'T I HAVE A MAILBOX THAT HAS INFORMATION FOR THE DEVICE, AND CAN'T I ALSO PUT AN ADDRESS ON THE MAILBOX WHICH WOULD BE THEN INFORMATION ABOUT THE DEVICE?

MS. DEBRUIN:  YOU CERTAINLY COULD PUT AN ADDRESS -- YOU CAN ASSOCIATE AN ADDRESS WITH A MAILBOX.

THE COURT:  BUT THAT WOULD BE INFORMATION -- I'M NOT SURE HOW ADDRESS WORKS IN THIS CONTEXT, BUT IT DOES SEEM TO ME THAT HAVING INFORMATION ABOUT THE DEVICE CAN BE PART OF WHAT'S IN THE MAILBOX, AS WELL AS INFORMATION FOR THE

DEVICE.

OTHERWISE I'VE GOT TO HAVE A DIFFERENT DEVICE THAT TELLS ME INFORMATION ABOUT THE DEVICES.

MS. DEBRUIN:  I WOULD SAY THAT THERE'S NO REQUIREMENT THAT THERE BE INFORMATION STORED, AND THERE'S NOTHING TAUGHT IN THE PATENT ABOUT STORING THIS ADDRESS INFORMATION IN THE MAILBOX, AND PERHAPS IT'S A MATTER OF SEMANTICS.

INSTEAD WHAT YOU HAVE IS YOU HAVE INFORMATION THAT IS ASSOCIATED -- YOU HAVE AN ADDRESS ASSOCIATED WITH THE MAILBOX SO THAT THE SERVER KNOWS INTO WHOM'S MAILBOX TO PLACE INFORMATION.

BUT THERE'S NOT INFORMATION ABOUT THE WIRELESS DEVICE IN THE MAILBOX.

THINK OF YOUR HOME MAILBOX -- OR TAKE THE POST OFFICE BOX.  THERE'S A PLAQUE ON THE FRONT OF THE POST OFFICE BOX THAT GIVES YOU THE POST OFFICE BOX NUMBER.  THERE'S NOTHING IN YOUR POST OFFICE BOX ABOUT YOU.  IT'S AN EMPTY BOX.  THE IDENTIFICATION OR ADDRESS IS ON THE OUTSIDE.

THE COURT:  RIGHT.  BUT I'M NOT DEFINING THE CONTENTS OF THE MAILBOX, I'M DEFINING THE MAILBOX, AND SO THAT'S WHAT I WORRY ABOUT IS I NEED A DEFINITION OF THE MAILBOX, AND I WONDER WHETHER

109

OR NOT HAVING A DEFINITION THAT ALLOWS ME TO DEFINE THE MAILBOX, BY ITS RELATIONSHIP WITH THE DEVICE, IS -- RUNS AFOUL TO WHAT THE INVENTOR HERE MEANT BY MAILBOX, NOT BY CONTENTS OF MAILBOX.

INDEED, IF "CONTENTS OF MAILBOX" MEANT THE SAME AS "MAILBOX," I WOULDN'T NEED TO SAY "CONTENTS OF MAILBOX."

MS. DEBRUIN:  IT'S NOT THAT THE INVENTOR MEANT THE SAME THING AS CONTENTS OF A MAILBOX, BUT JUST THAT MFORMATION'S COUNSEL SEEKS TO DEFINE MAILBOX BY SAYING THAT THE MAILBOX STORES INFORMATION ABOUT THE WIRELESS DEVICE.

THAT'S WRONG AND THAT'S NOT WHAT THE PATENT PROVIDES.  THE PATENT PROVIDES THAT THE MAILBOX STORES COMMANDS.

THE COURT:  ALL RIGHT.  I UNDERSTAND YOUR POSITION.

MS. DEBRUIN:  LET'S MOVE ON, THEN, TO THE NEXT TERM, WHICH IS "THE CONTENTS OF THE MAILBOX."

RIM'S CONSTRUCTION IS ALL THINGS STORED IN THE MAILBOX.

MFORMATION'S CONSTRUCTION IS THAT IT'S ONE OR MORE THINGS STORED IN THE MAILBOX.

NEXT SLIDE, PLEASE.

THROUGHOUT THE PATENT, THERE'S NO MENTION

OF ANYTHING LESS THAN ALL OF THE COMMANDS.  IT TALKS ABOUT THE CONTENTS OF THE MAILBOX.  IT TALKS ABOUT -- IT NEVER TALKS ABOUT ALL THE CONTENTS OF THE MAILBOX.

WHAT I HEARD COUNSEL FOR MFORMATION SAY IS SOMEWHERE IN THE PATENT THERE'S A PLACE WHERE THE PATENT TALKS ABOUT ALL OF THE CONTENTS OF THE MAILBOX, AND THEY'RE RELYING ON THAT TO SOMEHOW SAY THAT CONTENTS DOES NOT MEAN EVERYTHING.

THERE'S SIMPLY NOTHING LIKE THAT IN THE PATENT.

AGAIN, "CONTENTS" IS SOMETHING THAT HAS A COMMONLY UNDERSTOOD MEANING.  WHEN I ENTERED THE COURTHOUSE TODAY, IF THE FEDERAL MARSHALS HAD ASKED ME TO EMPTY THE CONTENTS OF MY POCKETS, I WOULD HAVE UNDERSTOOD THEY WANTED EVERYTHING THAT WAS CONTAINED IN MY POCKETS TAKEN OUT OF THEM.

I WOULD NOT HAVE HAD TO ASK, DO YOU MEAN ALL OR DO YOU MEAN PART?  I WOULD HAVE UNDERSTOOD THAT THE CONTENTS MEANS EVERYTHING IN MY POCKETS.

THAT'S THE MEANING THAT THE TERM IS GIVEN IN THE PATENT, AND THAT'S THE ONLY MEANING THAT CAN WORK WITH HOW THE PATENT, PATENTEE EXPLAINED THE INVENTION AND HOW THE CLAIM IS SET UP, AND LET ME SHOW YOU WHY.

I'D LIKE TO APPROACH THE BOARD FOR THE '917 PATENT, CLAIM 1.

YOU ESTABLISH A MAILBOX FOR THE WIRELESS DEVICE, PLACE A COMMAND FOR THE DEVICE IN THE MAILBOX, THEN WE GET TO THE STEP OF DELIVERING THE COMMAND.

AND HOW DO WE DO THAT?  WE DELIVER THE COMMAND BY ESTABLISHING A CONNECTION, AND THEN BY TRANSMITTING NOT THE COMMAND, BUT THE CONTENTS OF THE MAILBOX FROM THE SERVER TO THE WIRELESS DEVICE.

FOR THIS CLAIM TO HAVE MEANING, "CONTENTS" MUST MEAN EVERYTHING SO THAT IT ENCOMPASSES THE COMMAND THAT YOU PUT IN THE MAILBOX.

THE COURT:  YES, I AGREE WITH THAT.

IN OTHER WORDS, IT IS -- I JUST NOTICED THAT, BUT YOU PROBABLY HAVE LOOKED AT IT BEFORE, THAT THEY USE A DIFFERENT TERM, THE INVENTORS, IN THAT STEP THAN THE COMMAND TERM.

SO I'M -- WHAT -- ARE YOU TRYING TO ASK ME TO DRAW SIGNIFICANCE BETWEEN CONTENTS OF THE MAILBOX AND COMMAND, OR SAY THEY'RE SYNONYMOUS?

MS. DEBRUIN:  I'M SAYING THAT THE WAY THAT THE INVENTORS -- THE WAY THAT THE PATENTEE DRAFTED THE CLAIM REQUIRES THAT CONTENTS BE

EVERYTHING IN THE MAILBOX BECAUSE OF THAT DISPARITY IN HOW THEY DESCRIBE WHAT WAS PUT IN THE MAILBOX AND WHAT MUST BE SENT.  THIS STEP IS TO DELIVER THE COMMAND FROM THE MAILBOX TO THE WIRELESS DEVICE.

SO IN ORDER TO DO THAT, THE COMMAND HAS TO BE WITHIN THE CONTENTS OF THE MAILBOX.

THE COURT:  I UNDERSTAND THAT.  IN OTHER WORDS, THIS IS A PROCESS OF DELIVERING THE COMMAND, AND HOW YOU DELIVER THE COMMAND IS BY TRANSMITTING THE CONTENTS?

MS. DEBRUIN:  CORRECT, YOUR HONOR.  IT'S LIKE WHEN YOU GO OUT TO GET YOUR MAIL AND YOU BRING IN EVERYTHING FROM THE MAILBOX.  YOU BRING IN THE CONTENTS OF THE MAILBOX.

THE COURT:  VERY WELL.  AND SO THE TERM I'M ASKED TO DEFINE IS "CONTENTS OF THE MAILBOX."

MS. DEBRUIN:  WITH A SLIGHT CLARIFICATION.  THE TERM THAT YOU'RE ASKED TO DEFINE AND WHAT'S IN OUR 403 STATEMENT IS "THE CONTENTS OF THE MAILBOX."

THE COURT:  RIGHT, OKAY.  AND IS THERE SOMETHING MORE THAN THE COMMAND IN THE MAILBOX?

MS. DEBRUIN:  THERE COULD BE MULTIPLE COMMANDS IN THE MAILBOX.

THE COURT:  IS THERE SOMETHING MORE THAN

113

A COMMAND OR MULTIPLE COMMANDS IN THE MAILBOX?

MS. DEBRUIN:  THE PATENT DOESN'T DESCRIBE ANYTHING ELSE BEING IN THE MAILBOX.  THE MAILBOX IS THE PLACE WHERE THE COMMANDS ARE PLACED AND DELIVERED TO THE WIRELESS DEVICE.

THE COURT:  VERY WELL.

MS. DEBRUIN:  NOW, MFORMATION SAYS THERE'S A CLAIM DIFFERENTIATION ARGUMENT, AND I JUST WANT TO QUICKLY DISMISS THAT.

THE TERM HERE THAT WE'RE CONSTRUING IS "THE CONTENTS OF THE MAILBOX."

YOU HEARD COUNSEL FOR MFORMATION SAY THAT THROUGHOUT VARIOUS CLAIMS, THE PATENTEE REFERRED TO ALL OR PART OF CONTENTS, AND I BELIEVE HE EVEN SAID ALL OR PART OF THE CONTENTS OF THE MAILBOX.

THAT NEVER HAPPENED, AND MFORMATION'S CLAIM DIFFERENTIATION ARGUMENT RELIES ON CLAIMS SUCH AS, FOR EXAMPLE, CLAIM 30 WHICH ARE TALKING ABOUT SOMETHING COMPLETELY DIFFERENT.  THEY DON'T PROVIDE A BASIS FOR A CLAIM DIFFERENTIATION ARGUMENT.

CLAIM 30 IS TALKING ABOUT ERASING ALL OR PART OF THE CONTENTS OF THE WIRELESS DEVICE.

NOW, THAT'S TALKING ABOUT THE WIPING OF THE WIRELESS DEVICE THAT YOU HEARD ABOUT A LITTLE

114

BIT DURING THE DISCUSSION YESTERDAY.

THIS IS NOT TALKING AT ALL ABOUT THE CONTENTS OF THE MAILBOX.  THROUGHOUT THE PATENT, THERE'S NO QUALIFICATION OF THE CONTENTS OF THE MAILBOX.  IT'S ALWAYS THE ENTIRE, EVERYTHING IN THE MAILBOX.

NOW -- SO HERE THE CLAIM DIFFERENTIATION ARGUMENT IS SIMPLY NOT A CLAIM DIFFERENTIATION ARGUMENT AND ONLY GOES TO SHOW THAT RIM'S CONSTRUCTION IS CORRECT IN THAT WHEN "CONTENTS" IS USED, THE PATENTEE, IF THEY WANTED TO SAY THAT IT WAS EITHER ALL OR PART, THEY CLARIFIED THAT.

MFORMATION'S CONSTRUCTION IS THAT "CONTENTS" IS ALL OR PART.

THE COURT:  WHERE -- IS THERE A CLAIM THAT TALKS ABOUT ALL OR PART OF THE CONTENTS?  THAT CERTAINLY -- I SEE YOUR CLAIM 30 WHICH DEPENDS FROM 9 AND LIMITS WHAT KIND OF COMMAND IS BEING DELIVERED, AND I DIDN'T STUDY 9 TOTALLY, BUT IS THERE A PLACE WHERE ALL OR PART IS USED IN A METHOD?

MS. DEBRUIN:  THERE'S NO PLACE IN THE PATENT DURING ANY -- THERE'S NO PLACE IN THE PATENT OR IN ANY OF THE CLAIMS WHERE ALL OR PART IS USED TO QUALIFY THE CONTENTS OF THE MAILBOX.

115

THE COURT:  ALL RIGHT.  GO ON.

MS. DEBRUIN:  OUR THIRD TERM WITHIN THE MAILBOX GROUPING IS "PLACING A COMMAND FOR THE WIRELESS DEVICE IN THE MAILBOX."

HERE WE'RE MERELY TRYING TO BE HELPFUL TO THE JURY.  WE WANT TO MAKE CLEAR THAT WHAT IS PLACED IN THE MAILBOX IS WHAT IS GOING TO BE DELIVERED TO THE WIRELESS DEVICE.

RIM'S CONSTRUCTION IS THAT PLACING -- IS "PLACING A COMMAND THAT WILL BE DELIVERED TO THE WIRELESS DEVICE IN THE MAILBOX."

MOVING TO THE CLAIM FOR A MOMENT, THAT'S EXACTLY WHAT HAPPENS, PLACING A COMMAND FOR THE WIRELESS DEVICE IN THE MAILBOX AT THE SERVER, DELIVERING THE COMMAND, THAT COMMAND THAT YOU PLACED IN THE MAILBOX, DELIVERING THE COMMAND FROM THE MAILBOX AT THE SERVER, AND THEN WE TALK THROUGH HOW THAT'S DONE.

ALL THAT -- ALL THAT WE'RE TRYING TO DO IS CLARIFY --

THE COURT:  YEAH, BUT "WILL BE DELIVERED" HAS GOT TO BE QUALIFIED, DOESN'T IT, BY THE WHEREIN CLAUSE?

MS. DEBRUIN:  THE WHEREIN CLAUSE IS RELATED TO ESTABLISHING THE CONNECTION, WHEREIN THE

116

CONNECTION IS ESTABLISHED BASED ON A THRESHOLD CONDITION.

THE WHEREIN CLAUSE DOES NOT QUALIFY THE DELIVERING STEP, BUT RATHER -- AND THIS WAS SOMETHING I WANT TO CLARIFY WHEN WE GET TO THRESHOLD CONDITION, BUT WE'LL PREVIEW IT NOW -- THE WHEREIN CLAUSE, WHEREIN THE CONNECTION IS ESTABLISHED, THIS IS QUALIFYING THIS PART, DELIVERING THE COMMAND BY ESTABLISHING A CONNECTION BETWEEN THE WIRELESS DEVICE AND THE SERVER.

THAT'S JUST ONE OF THE STEPS THAT NEEDS TO BE PERFORMED TO DELIVER THE COMMAND.

THE COURT:  RIGHT.

MS. DEBRUIN:  YOU NOTED THAT DURING COUNSEL --

THE COURT:  BUT THE REASON I RAISE IT NOW IS IF A COMMAND IS PLACED IN THE MAILBOX AND IF A THRESHOLD CONDITION IS NOT ESTABLISHED, WHAT HAPPENS TO THE COMMAND?  DOES IT GET DELIVERED NEVERTHELESS?

MS. DEBRUIN:  IT ONLY GETS -- IT WILL ONLY GET DELIVERED WHEN A THRESHOLD CONDITION IS MET, YOU'RE RIGHT.

THE COURT:  OR IF A THRESHOLD CONDITION IS MET.

SO THE "IF" MEANS THAT I DON'T HAVE AN INEVITABLE DELIVERY, AND SO I CAN'T SIMPLY SAY THAT THIS INVENTOR CONTEMPLATED, BY PLACING A COMMAND IN, IT WILL BE DELIVERED, BECAUSE THEY CREATED A CONDITION.

MS. DEBRUIN:  PERHAPS A BETTER WAY TO PHRASE OUR CONSTRUCTION, AND EQUIVALENT TO WHAT WE'RE GETTING AT, IS TO SAY THAT IT'S PLACING A COMMAND TO BE DELIVERED TO THE WIRELESS DEVICE IN THE MAILBOX.

WHAT WE'RE TRYING TO GET AT IS THAT THIS COMMAND, WHAT IS PLACED IN THE MAILBOX, IS THE THING THAT WILL ACTUALLY GET TRANSMITTED TO THE WIRELESS DEVICE.

THE COURT:  WELL, I DON'T KNOW WHETHER THE WORDS "PLACING THE COMMAND FOR THE WIRELESS DEVICE" NEEDS ANY FURTHER CONSTRUCTION IF THAT'S THE POINT.

IN OTHER WORDS, YOU WANT TO IDENTIFY THAT THE COMMAND THAT IS IN THE MAILBOX IS ONE INTENDED FOR THE WIRELESS DEVICE.

MS. DEBRUIN:  CORRECT.

THE COURT:  IT MAY NOT ACTUALLY GET THERE BECAUSE OF OTHER STEPS, BUT AT LEAST THAT'S WHAT IT IS.

118

MS. DEBRUIN:  CORRECT.  AND THAT IF -- IF THE WHEREIN CLAUSE IS TRIGGERED AND IF THE COMMUNICATION, THE -- IF THE CONNECTION IS ESTABLISHED, THEN THAT COMMAND THAT WAS PLACED IN THAT MAILBOX IS THE ONE TO BE DELIVERED.

THE COURT:  RIGHT.  WELL, AGAIN, SIMPLICITY SPEAKS TO ME WHENEVER I COME TO THIS, BECAUSE THE MORE I SAY, THE MORE THE CIRCUIT CAN CRITICIZE.  SO THE LESS I SAY, THE BETTER AS FAR AS I'M CONCERNED.

SO IF I NEED NOT CONSTRUE THESE ANY FURTHER, I'D LEAVE IT ALONE.

SO -- BUT IF THERE'S SOMETHING ABOUT "PLACING THE COMMAND IN THE WIRELESS DEVICE" THAT I THINK NEEDS CONSTRUCTION, AND THE WORD "WILL BE DELIVERED" DOES CREATE THE NOTION THAT IT'S MANDATORY, SO I WORRY ABOUT USING THAT.

AND SO YOUR, YOUR OFFER TO WORD IT IN A WAY THAT TAKES INTO ACCOUNT THESE OTHER STEPS IS SOMETHING I'M VERY INTERESTED IN.

BUT MAYBE WE'LL WAIT UNTIL WE GET DOWN THERE TO SEE WHAT WE NEED TO DO WITH THAT STEP TO ACCOUNT FOR THAT.

MS. DEBRUIN:  THANK YOU, YOUR HONOR.

LET'S SUM UP FOR THE MAILBOX TERMS.

WE'VE COMPLETED ALL THE MAILBOX TERMS.

RIM'S CONSTRUCTIONS ARE CONSISTENT WITH THE PROVISIONAL APPLICATION, WITH THE CLAIMS, AND WITH THE SPEC.

RIM'S CONSTRUCTION IS ALSO CONSISTENT WITH, AS WE DISCUSSED, THE COMMONLY UNDERSTOOD MEANING OF THE TERMS.

MFORMATION'S CONSTRUCTIONS, IN PARTICULAR FOR "MAILBOX" AND "THE CONTENTS OF THE MAILBOX," SEEKS TO BROADEN THE MEANING OF THE TERMS BEYOND WHAT'S TAUGHT BY THE PATENTS.

THE NEXT SET OF TERMS THAT I'D LIKE TO MOVE TO IS THE SIGNALING CHANNEL TERMS, AND I'M GOING TO PLACE THE '408 PATENT, CLAIM 1, UP ON THE BOARD.

THERE ARE TWO TERMS WITHIN THE SIGNALING CHANNEL CATEGORY:  ONE, SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK; AND, TWO, SIGNALING NETWORK.

THESE TERMS ONLY APPLY TO THE '408 PATENT.  YOU CAN SEE ON CLAIM 1 OF THE '408 PATENT, WE ESTABLISH A CONNECTION OVER A SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK, AND THE NEXT STEP IS TRANSMITTING A COMMAND FROM THE SERVER TO THE WIRELESS DEVICE OVER THE SIGNALING NETWORK.

SO LET'S TALK ABOUT WHAT THOSE TWO TERMS MEAN.

RIM'S CONSTRUCTION:  "DEDICATED CHANNEL, SEPARATE FROM THE TRAFFIC CHANNEL, FOR THE TRANSMISSION OF CONTROL INFORMATION."

RIM'S CONSTRUCTION PROPERLY GETS AT THE OUT-OF-BAND NATURE OF THE TERM "SIGNALING CHANNEL."

BY DEFINITION, SIGNALING CHANNEL IS PART OF AN OUT-OF-BAND SYSTEM.  YOU'LL RECALL DURING THE TUTORIAL YESTERDAY, DR. ACAMPORA TALKED ABOUT AN OUT-OF-BAND SYSTEM.

THIS IS WHAT RIM'S CONSTRUCTION IS GETTING AT, A SIGNALING CHANNEL IS SEPARATE FROM THE TRAFFIC CHANNEL.

AND DESIGNED -- THE SIGNALING CHANNEL IN PARTICULAR IS DESIGNED FOR THE TRANSMISSION OF CONTROL INFORMATION.  THAT'S WHY IT'S CALLED A SIGNALING CHANNEL.  IT'S DESIGNED FOR THE TRANSMISSION OF CONTROL INFORMATION.

MFORMATION'S CONSTRUCTION IGNORES THE OUT-OF-BAND NATURE OF THE TERM "SIGNALING CHANNEL," AND I BELIEVE COUNSEL FOR MFORMATION SAID THAT WHEN YOU ASKED DR. ACAMPORA -- THAT YOU ASKED DR. ACAMPORA A QUESTION YESTERDAY, AND I KNOW WE DON'T HAVE A TRANSCRIPT, I BELIEVE THAT WHAT YOU

ASKED DR. ACAMPORA WAS WHETHER THE TERM "SIGNALING CHANNEL" OR "SIGNALING NETWORK" WAS SOMETHING THAT WAS A TERM OF ART, AND HE SAID THAT IT WAS, AND RIM'S CONSTRUCTION IS CONSISTENT WITH THAT, AS WE'LL SEE.

NEXT SLIDE, PLEASE.

NOW, MFORMATION'S CONSTRUCTION IGNORES THE OUT-OF-BAND NATURE OF THIS TERM AND WOULD READ ON ANY CHANNEL.

I'VE SHOWN ON THE BOARD A SLIDE WE HAD FROM THE TUTORIAL SHOWING IN-BAND SIGNALING.  THERE SIGNALING INFORMATION, OR CONTROL INFORMATION, IS TRANSMITTED ALONG WITH USER TRAFFIC ON THE SAME CHANNEL.

NEXT SLIDE, PLEASE.

THAT'S NOT WHAT THE '408 PATENT IS ABOUT. THE '408 PATENT IS DIRECTED TO AN OUT-OF-BAND SYSTEM, SUCH AS WHAT I'VE DEPICTED IN SLIDE 21.

SIGNALING CHANNEL, SEPARATE AND APART FROM THE TRAFFIC CHANNEL.

THE COURT:  NOW, THIS MAY BE A SITUATION WHERE I NEED EXTRINSIC EVIDENCE, BECAUSE DO YOU AGREE WITH -- MY READING OF THIS IS THAT THE TELECOMMUNICATION NETWORK AND THESE CHANNELS WERE SOMETHING THAT ALREADY EXISTED AND THIS METHOD WAS

122

SEEKING TO USE.

MS. DEBRUIN:  ABSOLUTELY.

THE COURT:  SO WHAT YOU'RE TELLING ME IS THAT THESE TERMS, SIGNALING CHANNEL, OUT-OF-BAND, ALL OF THESE WERE WELL UNDERSTOOD TERMS AND THAT THE INVENTOR WANTED TO USE THAT ESTABLISHED COMMUNICATION NETWORK TO OPERATE THE INVENTION.

WHERE DO I FIND THAT ACKNOWLEDGMENT THAT THERE WAS THIS SEPARATE CHANNEL DEDICATED FOR THIS PURPOSE THAT I WOULD LIKE TO USE FOR THIS PURPOSE?

MS. DEBRUIN:  LET'S LOOK AT THAT.

FIRST, LET'S LOOK AT THE SPEC.  THE SPEC INDICATES, AS DR. ACAMPORA DESCRIBED IN THE TUTORIAL YESTERDAY, THAT NEWER SIGNALING SYSTEMS ARE OUT-OF-BAND.

THE COURT:  WHERE IS THAT?

MS. DEBRUIN:  THIS IS AT THE '408 PATENT, COLUMN 6, LINES 1 THROUGH 9.

THE COURT:  ALL RIGHT.

MS. DEBRUIN:  IT FURTHER PROVIDES THAT ONE EXAMPLE OF AN OUT-OF-BAND SIGNALING NETWORK IS SS7.

NEXT SLIDE, PLEASE.

THEN WE LOOK AT THE FIELD OF THE INVENTION.  THIS IS A SECTION THAT IS NOT JUST

DESCRIBING AN EMBODIMENT OF THE PATENT.  THIS SECTION IS DESCRIBING WHAT THE PRESENT INVENTION -- THAT'S HOW THE SECTION STARTS, "THE PRESENT INVENTION."  IT'S TELLING WHAT THE PRESENT INVENTION IS.

IT SAYS THAT "THE PRESENT INVENTION RELATES TO A SYSTEM AND METHOD FOR PROVIDING REMOTE OVER-THE-AIR MANAGEMENT OF WIRELESS DATA TERMINALS OVER," SS7, THAT'S COMMON CHANNEL SIGNALING SYSTEM 7.

THAT'S WHAT THE INVENTORS SAID THEIR INVENTION WAS, THE PRESENT INVENTION, NOT JUST ONE EXAMPLE.

AND THE ASPECT OF SS7 THAT FLOWS THROUGH THE '408 PATENT IS ITS OUT-OF-BAND NATURE.  THAT'S WHAT SS7 PROVIDED.  IT PROVIDED THIS SEPARATE SIGNALING CHANNEL FROM THE TRAFFIC CHANNEL, SEPARATE CONTROL INFORMATION FROM TRAFFIC OR USER TRAFFIC.

NEXT SLIDE, PLEASE.

WE CAN SEE THAT FROM FIGURE 2A OF THE '408 PATENT.  FIGURE 2A SHOWS A TRAFFIC CHANNEL AND A SIGNALING CHANNEL.

ALL COMMUNICATION IN THE '408 PATENT IS OVER THE SIGNALING CHANNEL, ESTABLISHED FROM THE

124

SERVER TO THE WIRELESS DEVICE A COMMUNICATIVE CONNECTION BETWEEN THE SERVER AND THE DEVICE OVER A SIGNALING CHANNEL.

THAT'S WHAT'S SHOWN HERE, THE CONNECTION FROM THE SERVER TO THE WIRELESS DEVICE OVER THIS SIGNALING CHANNEL.

AND THEN THE COMMANDS FROM THE MAILBOX WILL BE SENT TO THE DEVICE OVER THAT COMMUNICATION LINK.

SEPARATE SIGNALING CHANNEL FROM TRAFFIC CHANNEL. THE PATENT SPECIFICATION FURTHER DESCRIBES THAT. "TELECOMMUNICATIONS NETWORK 102 INCLUDES A TRAFFIC CHANNEL 204 AND A SIGNALING CHANNEL 206."

AND I'M READING FROM '408 PATENT, COLUMN 5, LINES 23 TO 30. IT FURTHER EXPLAINS THAT "TRAFFIC CHANNEL" -- AND THIS IS AN IMPORTANT POINT BECAUSE MFORMATION'S COUNSEL WAS SAYING THAT ONLY VOICE HAD TO BE SEPARATE FROM THE SIGNALING CHANNEL.

THAT'S NOT WHAT THE PATENT SAYS, AND THAT'S NOT THE COMMONLY UNDERSTOOD MEANING OF "SIGNALING CHANNEL" AND "TRAFFIC CHANNEL."

AND THE PATENT MAKES THAT CLEAR AT THIS PORTION OF THE '408 SPEC. "TRAFFIC CHANNEL 204

125

CARRIES TELECOMMUNICATIONS TRAFFIC," IN OTHER WORDS, USER TRAFFIC, "SUCH AS TELEPHONE VOICE AND DATA CALLS."

IN CONTRAST, "SIGNALING NETWORK," OR THE SIGNALING CHANNEL, "CARRIES SIGNALING DATA RELATING TO THE TELECOMMUNICATIONS TRAFFIC."

SO IT'S CARRYING SIGNALING DATA OR CONTROL INFORMATION RELATING TO THE TELECOMMUNICATIONS TRAFFIC AND THE CONFIGURATION OF THE TELECOMMUNICATIONS NETWORK.

NEXT SLIDE, PLEASE.

AS TO MFORMATION'S CONTENTION THAT ONLY VOICE HAS TO BE SEPARATE FROM SIGNALING, THAT'S JUST NOT WHAT THE PATENT SAYS.

HERE'S ANOTHER EXAMPLE FROM THE '408 PATENT, COLUMN 7, LINES 10 TO 17, PROVIDING THAT -- TALKING ABOUT SHORT MESSAGING AND SAYING THAT "VOICE, DATA AND FAX CALLS TAKE OVER A DEDICATED RADIO CHANNEL" -- "TAKE OVER A DEDICATED RADIO CHANNEL FOR THE DURATION OF THE CALL, SHORT MESSAGES," WHICH YOU'LL RECALL THE SMS, WHICH TRAVELS OVER THE SIGNALING CHANNEL, "SHORT MESSAGES TRAVEL OVER AND ABOVE THE RADIO CHANNEL USING THE SIGNALING PATH."

SO NOT JUST VOICE INFORMATION IS SEPARATE

FROM SIGNALING.  THE USER TRAFFIC INFORMATION IS SEPARATE FROM THE SIGNALING OR CONTROL INFORMATION THAT'S CARRIED ON THE SIGNALING CHANNEL.

THE COURT:  WELL, THIS -- ISN'T THIS, THOUGH, A DIFFERENT TECHNOLOGY HERE WHERE IT'S NOT NECESSARILY A SEPARATE CHANNEL, BUT WITHIN THE RADIO SIGNAL, YOU CAN HAVE, AT VARIOUS FREQUENCIES, A SIGNALING PATH THAT MAKES YOUR -- THAT CARRIES THE SIGNAL, AND WITHIN THE SIGNAL ITSELF YOU CARRY THE DATA?

I'M NOT SURE -- I UNDERSTAND YOUR POINT, BUT IS THIS THE SAME THING AS THE SEPARATE SIGNALING CHANNEL FROM A TRAFFIC CHANNEL?

MS. DEBRUIN:  IT IS THE SAME THING, YOUR HONOR.

WHAT I THINK YOU'RE SAYING IS THIS WOULDN'T NECESSARILY HAVE TO BE OVER A DIFFERENT PAIR OF WIRES.  I THINK WHAT YOU'RE SAYING -- OR DIFFERENT IF WE'RE TALKING ABOUT OVER-THE-AIR.

THIS IS SEPARATE.  YOU CAN TELL THAT THIS IS SEPARATE FROM THIS, THIS THING (INDICATING).

THE COURT:  YES, I UNDERSTAND THAT.  THAT ILLUSTRATES THE SIGNALING CHANNEL PERHAPS AS A SEPARATE RADIO FREQUENCY SEPARATE FROM THE SIGNALING CHANNEL AT A DIFFERENT RADIO FREQUENCY.

THIS, THOUGH, I THOUGHT WHEN IT TALKS ABOUT USING THE SIGNALING PATH --

MS. DEBRUIN:  THIS IS USING THE SIGNALING PATH TO REFER TO THE SIGNALING CHANNEL OR SIGNALING NETWORK.

THE COURT:  AH.

MS. DEBRUIN:  YOU'LL SEE WHEN WE GET TO SIGNALING NETWORK THAT THESE TERMS ARE USED SOMEWHAT -- ARE USED INTERCHANGEABLY IN THE PATENT.

THE COURT:  OKAY.  THANK YOU.  THANK YOU.

MS. DEBRUIN:  NOW, MFORMATION CHALLENGED RIM'S CONSTRUCTION FOR THE USE OF "DEDICATED," AND IF WE LOOK AT WHAT 'DEDICATED' MEANS -- AND THIS IS ONE OF THE DEFINITIONS FROM MFORMATION'S DICTIONARY, THEY HAD IT UP ON THEIR SLIDE THAT THEY PRESENTED TO YOU TODAY -- "DEDICATED" MEANS "DESIGNED FOR A PARTICULAR USE OR FUNCTION."

THAT'S EXACTLY HOW RIM IS USING "DEDICATED" IN ITS CONSTRUCTION.

IF WE COULD TURN BACK FOR A MOMENT TO THE CONSTRUCTION.

"DEDICATED CHANNEL," AND I'M SKIPPING THE PART IN BETWEEN COMMAS, "DEDICATED CHANNEL FOR THE TRANSMISSION OF CONTROL INFORMATION."

IN OTHER WORDS, A CHANNEL DESIGNED FOR

TRANSMISSION OF CONTROL INFORMATION.

RIM DOESN'T SAY ONLY THE TRANSMISSION OF CONTROL INFORMATION.  RIM IS NOT EXCLUDING ANYTHING BY DOING THIS, BUT MERELY REFLECTING THAT THE SIGNALING CHANNEL IS A CHANNEL THAT WAS DESIGNED FOR THE TRANSMISSION OF CONTROL INFORMATION.

THE COURT:  DO YOU THINK THAT IN THIS CONTEXT "DESIGNATED" IS THE SAME AS "DEDICATED"?

MS. DEBRUIN:  IT'S DEDICATED -- DEDICATED -- THAT WOULD BE --

THE COURT:  BECAUSE I CAN UNDERSTAND A DESIGNATED CHANNEL AS BEING WHAT YOU'RE NOW TELLING ME ABOUT.  IT HAS A PURPOSE.

BUT "DEDICATED" SOUNDS LIKE IT IS EXCLUSIVE.

MS. DEBRUIN:  IF WE HAD A CONSTRUCTION OF "DESIGNATED CHANNEL SEPARATE FROM THE TRAFFIC CHANNEL FOR THE TRANSMISSION OF CONTROL INFORMATION," THAT WOULD BE AN ACCEPTABLE CONSTRUCTION.

THE COURT:  WELL, I'M NOT GOING ALL THE WAY.  I'M JUST TRYING TO MAKE SURE THE WORDS THAT I'M USING HAVE MEANING, AND SO I -- IT DOES SEEM TO ME THAT THERE IS A DIFFERENCE BETWEEN KIND OF WHAT IS IN THE CONNOTATION OF DEDICATED TO SOMETHING

129

THAT IS DESIGNATED FOR A PARTICULAR PURPOSE, AND --

BECAUSE TRAFFIC IS DESIGNATED FOR TRAFFIC, BUT YOU

CAN SEND OTHER THINGS OVER IT.  IT'S JUST THAT'S --

WHEN THE CHANNEL WAS CREATED, AND NOT BY THESE

INVENTORS, BY SOMEBODY --

MS. DEBRUIN:  CORRECT.

THE COURT:  -- THEY DESIGNATED AS HAVING

A PURPOSE.

NOW, PEOPLE CAN USE IT FOR ANOTHER

PURPOSE, WHICH WOULD BE INEFFICIENT, PERHAPS.

I DON'T KNOW THAT THE OPERATORS OF THESE

NETWORKS CAN PREVENT IT.  THEY'RE IN THE AIR.

BUT IT IS FOR A PURPOSE.  I GOT THAT.

THE QUESTION THAT I WORRY ABOUT IS TRYING

TO WORRY ABOUT THAT EXCLUSIVITY.

OKAY.  GO AHEAD.

MS. DEBRUIN:  AND WHAT WE'RE TRYING TO

GET AT IS WHAT YOU JUST DESCRIBED AS DESIGNATED,

AND WHAT WE'RE NOT TRYING TO DO IS WE'RE NOT TRYING

TO READ OUT SMS.

MFORMATION ARGUED WE WERE TRYING TO READ

OUT SHORT MESSAGE SERVICE, BUT SHORT MESSAGE

SERVICE -- AND GOING WITH YOUR DESCRIPTION OF

DESIGNATED FOR A PARTICULAR USE OR FUNCTION -- THE

SIGNALING CHANNEL WAS DESIGNATED TO BE USED FOR

CARRYING CONTROL INFORMATION.

THE OPERATORS OF THE NETWORK RECOGNIZED THAT THEY HAD SPARE CAPACITY -- DR. ACAMPORA TALKED ABOUT THIS YESTERDAY -- AND THEY DECIDED TO TAKE ADVANTAGE OF THAT SPARE CAPACITY IN THAT CHANNEL THAT HAD BEEN DESIGNATED OR DESIGNED FOR THE PURPOSE OF CARRYING CONTROL INFORMATION AND THEY DECIDED TO CARRY SOME OTHER INFORMATION, SMS MESSAGES, OR TEXT MESSAGES.

THE COURT:  I UNDERSTAND THAT.  MOVE ON.

MS. DEBRUIN:  MFORMATION'S CONSTRUCTION COMPLETELY IGNORES THE OUT-OF-BAND NATURE OF THE SIGNALING CHANNEL.  MFORMATION'S CONSTRUCTION SEEKS TO COVER ANY CHANNEL IN THE TELECOMMUNICATIONS NETWORK THAT CARRIES CONTROL INFORMATION.  THAT WOULD INCLUDE A CHANNEL IN AN IN-BAND TELECOMMUNICATIONS NETWORK.

NEXT SLIDE, PLEASE.

THE SECOND TERM IN THE SIGNALING CHANNEL GROUPING IS "SIGNALING NETWORK."

HERE RIM'S CONSTRUCTION FOLLOWS FROM WHAT THE PATENTEE DID IN THE PROSECUTION, AND LET ME EXPLAIN WHAT I MEAN BY THAT.

RIM'S CONSTRUCTION, YOU'LL SEE IT SET OUT HERE, IS THE IDENTICAL CONSTRUCTION THAT RIM

131

PROVIDED FOR SIGNALING CHANNEL OF A TELECOMMUNICATIONS NETWORK, AND YOU MIGHT ASK ME THE QUESTION OF, WELL, THEY'RE DIFFERENT TERMS. WHY SHOULD THEY HAVE THE SAME CONSTRUCTION?

AND HERE'S WHY.  THROUGHOUT THE SPECIFICATION, THE PATENT INTERCHANGEABLY USES THE TERM "SIGNALING CHANNEL" AND "SIGNALING NETWORK."

FOR EXAMPLE, '408 PATENT, COLUMN 5, LINES 23 TO 30.  IT TALKS ABOUT A SIGNALING CHANNEL 206, AND THEN IT IMMEDIATELY, TWO SENTENCES DOWN, IS TALKING ABOUT SIGNALING NETWORK 206, AND THEN IT FLIPS BACK TO SIGNALING CHANNEL 206.

COMPLETELY INTERCHANGEABLE AND, IMPORTANTLY, HAVING THE SAME NUMBER, 206.  IT DOESN'T SAY SIGNALING CHANNEL 206 AND SIGNALING NETWORK 207.  IT REPEATEDLY REFERS TO SIGNALING CHANNEL 206 AND SIGNALING NETWORK 206.  SAME NUMBER, USED INTERCHANGEABLY.

NEXT SLIDE, PLEASE.

THE CLAIMS THEMSELVES MAKE IT IMPOSSIBLE TO IGNORE THIS INTERCHANGEABLE USE OF THE TERMS "SIGNALING CHANNEL" AND "SIGNALING NETWORK," AND LET'S LOOK AT THAT FOR A MOMENT.

HERE WE HAVE IN '408 PATENT, CLAIM 1, WE HAVE ESTABLISHING A CONNECTION BETWEEN THE SERVER

132

AND THE WIRELESS DEVICE OVER A SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK.

THAT'S WHAT WE WERE JUST TALKING ABOUT. THAT'S THIS, SIGNALING CHANNEL (INDICATING).

THEN WE GO ON TO THE NEXT CLAIM ELEMENT AND IT TALKS ABOUT "TRANSMITTING A COMMAND FROM THE SERVER TO THE WIRELESS DEVICE OVER THE," SO IT MUST BE SOMETHING WE'VE DEFINED BEFORE FOR IT TO HAVE AN ANTECEDENT BASIS, "THE SIGNALING NETWORK."

BUT IF WE LOOK AT THE CLAIM, THERE'S NOWHERE THAT "SIGNALING NETWORK" IS USED BEFORE IT'S INTRODUCED HERE AS THE SIGNALING NETWORK.

SO EITHER -- AND THIS ISN'T JUST IN CLAIM 1, THIS IS IN ALL OF THE INDEPENDENT CLAIMS OF THE '408 PATENT -- EITHER THESE CLAIMS ARE INVALID BECAUSE THIS TERM LACKS AN ANTECEDENT BASIS, THERE'S NO ANTECEDENT BASIS FOR THE SIGNALING NETWORK, OR COURTS ARE NOT INCLINED TO INVALIDATE THE PATENTS ON THAT BASIS.

AND WE HAVE TO LOOK FOR IT, THE IMPLICIT ANTECEDENT BASIS FOR THE SIGNALING NETWORK.

GIVEN THE INTERCHANGEABLE USE OF "THE SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK" AND "THE SIGNALING NETWORK," THE ONLY POSSIBLE CANDIDATE IS THAT THE ANTECEDENT BASIS FOR

THE SIGNALING NETWORK IS A SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK, AND THEY MUST BE GIVEN THE SAME CONSTRUCTION JUST AS THEY'RE INTERCHANGEABLY USED IN THE PATENT.

AND THAT JUST MAKES SENSE, BECAUSE THE FIRST STEP ESTABLISHES A CONNECTION BETWEEN THE SERVER AND THE WIRELESS DEVICE.  IF YOU WENT TO THE TROUBLE OF ESTABLISHING A CONNECTION, IT ONLY MAKES SENSE THAT YOU'RE THEN GOING TO TRANSMIT SOMETHING OVER THAT CONNECTION.

SO HAVING SIGNALING NETWORK READ TO BE THE SAME AS THE SIGNALING CHANNEL OF THE TELECOMMUNICATIONS NETWORK IS THE ONLY THING THAT MAKES SENSE, AND THAT WOULD MEAN THAT YOU TRANSMIT A COMMAND OVER THE CONNECTION THAT YOU ESTABLISHED.

THE COURT:  RESERVING THAT SOMETHING COULD HAPPEN TO CAUSE ME TO CHANGE MY MIND, I AGREE WITH YOUR ANALYSIS OF THAT, SO MOVE ON TO OTHER MATTERS.

MS. DEBRUIN:  YES, YOUR HONOR.

JUST TO SUM UP ON THE SIGNALING CHANNEL TERMS, RIM'S SIGNALING CHANNEL PROPOSED CONSTRUCTION IS CONSISTENT WITH THE '408 PATENT'S TEACHING OF AN OUT-OF-BAND SYSTEM.

WE TALKED ABOUT THE SIGNALING NETWORK.

134

THAT ALSO IS CONSISTENT WITH THE INTERCHANGEABLE USE.

MFORMATION'S CONSTRUCTION COMPLETELY IGNORES THE FIELD OF THE INVENTION OF THE '408, WHAT THE INVENTORS SAID THEIR PRESENT INVENTION WAS, AND THE ONLY EMBODIMENT DESCRIBED, WHICH IS AN OUT-OF-BAND SYSTEM.

THE NEXT GROUP OF TERMS THAT I'D LIKE TO TURN TO ARE THE THRESHOLD CONDITION TERMS.  THERE'S TWO TERMS:  THRESHOLD CONDITION --

THANK YOU, MS. ZINANNI.

THE THRESHOLD CONDITION TERMS, THERE'S TWO TERMS:  THRESHOLD CONDITION; AND WHEREIN THE CONNECTION IS ESTABLISHED BASED ON A THRESHOLD CONDITION.

FIRST, LET'S TALK A LITTLE BIT ABOUT HOW -- WHAT A THRESHOLD CONDITION WOULD BE UNDERSTOOD TO BE.

YOU CAN -- YOU SEE ON SLIDE 39 THAT WE SHOW A THERMOMETER AND AN AIR CONDITIONER UNIT.

A THRESHOLD CONDITION IN THIS CONTEXT -- AND THIS IS A COMMONLY UNDERSTOOD CONTEXT -- IF YOU SET YOUR THERMOSTAT FOR YOUR AIR CONDITIONER TO A CERTAIN TEMPERATURE, LET'S SAY YOU SET IT TO 75 DEGREES, THAT WOULD BE A THRESHOLD CONDITION.  YOU

HAVE A PARAMETER AND THAT'S TEMPERATURE AND THAT'S GOING TO VARY.

AND IF THAT PARAMETER OF TEMPERATURE VARIES SUCH THAT, AS WE'VE SHOWN IN SLIDE 39, IT'S BELOW THE THRESHOLD CONDITION AND THEN IT EXCEEDS THE THRESHOLD CONDITION, SOMETHING HAPPENS.  THE AIR CONDITIONER TURNS ON.

THAT'S THE COMMONLY UNDERSTOOD MEANING OF "THRESHOLD CONDITION."

IF WE COULD GO BACK, PLEASE, TO THE '917 PATENT, CLAIM 1.

NOW, "THRESHOLD CONDITION" IS A VERY IMPORTANT TERM WITH RESPECT TO BOTH THE '917 PATENT AND '408 PATENT.

AS YOU'LL SEE, WE HAVE CLAIM 1 OF THE '917 PATENT ON THE SCREEN, AND I HAVE IT UP ON THE BOARD.

"THRESHOLD CONDITION" SHOWS UP IN THE VERY LAST LINE OF THE PATENT CLAIM, BUT IT'S BY NO MEANS AN AFTERTHOUGHT.

IT WAS REQUIRED TO BE ADDED IN ORDER TO OBTAIN ALLOWANCE OF THE '917 PATENT AND THE '408 PATENT.

NEXT SLIDE, PLEASE.

THE PATENT CLAIMS WERE REJECTED UNTIL

THIS LANGUAGE WAS ADDED, SO THIS IS SOMETHING IMPORTANT AND SOMETHING THAT MUST GIVE MEANING TO THE, TO THE CLAIMS.

THE PATENTEE HAD TO ADD IT IN ORDER TO GET THE PATENT CLAIMS ALLOWED.

NOW, TURNING TO WHAT RIM'S CONSTRUCTION IS, RIM CONSTRUES "THRESHOLD CONDITION" TO BE "A PREDEFINED LIMIT OF A PARAMETER."

THERE'S ACTUALLY THREE PIECES TO RIM'S CONSTRUCTION:  FIRST, THE COMMONLY UNDERSTOOD PIECE OF WHAT IS A THRESHOLD CONDITION, THAT IS, PREDEFINED LIMIT OF A PARAMETER.

THINK ABOUT OUR THERMOSTAT EXAMPLE, THE LIMIT OF 75 DEGREES FOR THE PARAMETER OF TEMPERATURE.

RIM'S CONSTRUCTION CONTAINS TWO OTHER PIECES:  ONE PROVIDES WHAT A THRESHOLD CONDITION CAN BE -- AND THESE AREN'T RIM'S WORDS.  THESE ARE WORDS TAKEN FROM THE PATENTEE -- SUCH AS COST, DISTANCE, OR COVERAGE.

RIM'S CONSTRUCTION FURTHER PROVIDES WHAT THE THRESHOLD CONDITION MAY NOT BE, AND THESE, AGAIN, CAME FROM WHAT HAPPENED DURING THE PROSECUTION OF THE PATENT AND THINGS THAT THE PATENTEE GAVE UP.

137

A THRESHOLD CONDITION, BASED ON WHAT THE PATENTEE GAVE UP, MAY NOT BE TIME INTERVALS OR MERE AVAILABILITY OF DATA TO DELIVER.

MFORMATION'S CONSTRUCTION IGNORES THAT. IT SIMPLY SAYS "A CONDITION SATISFYING A POLICY." THAT CONSTRUCTION IS MORE CONFUSING THAN THE TERM "THRESHOLD CONDITION."

NEXT SLIDE, PLEASE.

NOW, RIM'S CONSTRUCTION IS CONSISTENT, AND IN PARTICULAR THE FIRST PIECE, THE PREDEFINED LIMIT OF A PARAMETER IS CONSISTENT WITH THE DICTIONARY DEFINITION PROPOSED BY MFORMATION.

THAT DICTIONARY DEFINITION IS SHOWN ON SLIDE 41.  IT'S EXHIBIT Y TO RIM'S RESPONSE BRIEF. IT PROVIDES "THRESHOLD...IN NETWORK MANAGEMENT.  AN ATTRIBUTE VALUE THAT IS USED AS A CUTOFF POINT BETWEEN SIGNIFICANT (OR CRITICAL) AND NON-SIGNIFICANT EVENTS."

SO THRESHOLD BEING OUR 75 DEGREES, THAT'S OUR CUTOFF.  WHEN YOUR AIR CONDITIONER PASSES 75 DEGREES, WHEN IT EXCEEDS 75 DEGREES, YOUR AIR CONDITIONER TURNS ON.

WHEN IT FALLS BELOW 75, YOUR AIR CONDITIONER TURNS OFF.

NEXT SLIDE, PLEASE.

138

THE COURT:  I GUESS TO FOCUS YOUR PRESENTATION, THE QUESTION IS, IS THRESHOLD A POINT, OR CAN'T A THRESHOLD BE BROAD ENOUGH TO BE A FIELD?  HOW -- HOW NARROW MAY THE THRESHOLD BE AND STILL BE A THRESHOLD?

MS. DEBRUIN:  THE THRESHOLD NEEDS TO HAVE --

IF WE COULD GO BACK TO THE DICTIONARY DEFINITION, PLEASE.

THRESHOLD NEEDS TO HAVE AN ASPECT OF A CUTOFF POINT AND THE ABILITY TO VARY THROUGH THAT CUTOFF POINT.  IT'S NOT SIMPLY A CONDITION --

THE COURT:  WHAT'S A DEMILITARIZED ZONE? IS THAT -- WHERE ARE YOU ON THE THRESHOLD IF YOU'RE ON THE CENTER OF THE DEMILITARIZED ZONE?

MS. DEBRUIN:  THAT WOULDN'T BE A THRESHOLD OR A THRESHOLD CONDITION.

THE COURT:  I SEE.  SO IF THERE'S A BROAD BARRIER BETWEEN TWO CONDITIONS, THAT DOES NOT SATISFY THE DEFINITION OF A THRESHOLD CONDITION?

MS. DEBRUIN:  CORRECT.

THE COURT:  IT MUST BE A SHARP DEMARCATION IS YOUR ARGUMENT.

MS. DEBRUIN:  I SEE.  I DIDN'T UNDERSTAND HOW YOU WERE USING THE DMZ EXAMPLE.

THE COURT:  SORRY.

MS. DEBRUIN:  I'M SORRY.  SO YOU'RE SAYING --

THE COURT:  I WAS AT THE BERLIN WALL AND THEY HAD THIS HUGE EXPANSE OF LAND BETWEEN THE WALL AND WHERE ACTUALLY PEOPLE LIVED, AND I -- BUT IT WAS ON THE EASTERN SIDE.

THE WALL WAS REALLY THE THRESHOLD POINT, BUT THERE WAS THIS HUGE AREA WHERE THEY WOULDN'T EVEN LET ANYBODY APPROACH THE WALL ON THE EAST SIDE.

ON THE WEST SIDE, YOU COULD WALK RIGHT UP TO THE WALL AND PUT YOUR HANDS ON IT.

THAT'S NOT QUITE A DEMILITARIZED ZONE SO FAR AS I'M CONCERNED.  IT'S SORT OF LIKE -- WELL, I DON'T KNOW.  IS THERE SUCH A THING AS THE BARRIER BETWEEN NORTH AND SOUTH KOREA?  THERE IS THIS AREA, NO MAN'S LAND, AS IT WOULD BE CALLED.

DOES THAT SATISFY THE DEFINITION OF A THRESHOLD?

MS. DEBRUIN:  I'M STRUGGLING TO GET MY MIND AROUND HOW IT WOULD BECAUSE THE THRESHOLD WOULD VARY AND CROSS -- THERE WOULD BE THIS LIMIT.

IF THE LIMIT -- THE LIMIT MIGHT BE A LITTLE FUZZY IN THAT IT COULD ENCOMPASS MORE THAN

140

A, JUST A LINE, BUT HAVE SOME THICKNESS TO IT.  I THINK THAT'S WHAT YOU'RE GETTING AT.

THE COURT:  YEAH, THAT'S MY QUESTION.  SO DOES IT HAVE TO BE A SHARP POINT, OR MAY IT BE BROAD ENOUGH TO HAVE A, TO HAVE A CRESCENDO EFFECT AND AT THAT POINT YOU'RE THERE?

MS. DEBRUIN:  IT COULD HAVE -- IT COULD HAVE A RANGE.  I MEAN, IT COULD BE -- TO TAKE MY THERMOMETER, MY AIR CONDITIONER EXAMPLE, MAYBE YOU HAVE THE THRESHOLD -- I'M HAVING A HARD TIME THINKING HOW THIS WOULD WORK, BUT IF YOU VARY -- IF YOU CONSIDER 3 DEGREES AS YOUR THRESHOLD CONDITION AND WHEN YOU PASSED THROUGH THAT OR BY THAT --

THE COURT:  WELL, THE REASON I WORRY ABOUT IT HAS TO DO WITH THE BATTERY CONDITION EXAMPLE THAT YOUR OPPONENT USED.

IN OTHER WORDS, A BATTERY DRAINS AND IT COULD BE THAT THE THRESHOLD IS IN TERMS OF WHETHER OR NOT IT HAS SUFFICIENT STRENGTH TO SERVE THE PURPOSE OF ALLOWING THE DELIVERY.

WELL, THAT COULD VARY DEPENDING UPON THE AMOUNT OF INFORMATION THAT'S BEING DELIVERED.  IF YOUR BATTERY IS 30 PERCENT, BUT WHAT YOU'RE GOING TO SEND IS ONLY GOING TO TAKE 20 PERCENT OR 10 PERCENT, YOU MIGHT GO AHEAD AND DELIVER.

BUT IF WHAT YOU HAVE TO DELIVER IS 50 PERCENT, YOU WOULDN'T DELIVER.

SO A THRESHOLD WOULD KIND OF BE SOMETHING THAT CAN BE DEFINED IN A WAY THAT HAS NOT ONLY TO DO WITH THE CONDITION ON ONE SIDE, BUT THE CONDITION ON THE OTHER.

MS. DEBRUIN:  IT SEEMS LIKE THE EASY -- THE BATTERY POWER CAN EASILY BE SEEN AS BEING A THRESHOLD, AND WHEN IT PASSES A CERTAIN LEVEL, THEN THAT THRESHOLD IS MET OR EXCEEDED OR DROPPED BELOW.

THE COURT:  BUT IN ALL OF YOUR HYPOTHETICALS, YOU KEEP COMING BACK TO IT'S GOT TO BE A POINT.

MS. DEBRUIN:  YOU KNOW, I'M GOING TO GIVE SOME THOUGHT TO YOUR, YOUR DMZ.

SO WE HAVE THAT PIECE OF THRESHOLD WHICH IS GENERALLY WHAT A THRESHOLD CONDITION IS.

MOVING ON, WHAT'S IMPORTANT IS WHAT HAS BEEN GIVEN UP, AND I HEARD MFORMATION'S COUNSEL TODAY CONCEDE THAT THEY DID GIVE UP TIME INTERVALS. SO AT THE VERY LEAST, THE CONSTRUCTION SHOULD CARVE OUT THOSE TIME INTERVALS.

MFORMATION'S CONSTRUCTION DOESN'T DO THAT.

142

THERE'S SOMETHING ELSE THAT THEY GAVE UP, AND THAT IS THIS IDEA OF HAVING MERE AVAILABILITY OF DATA TO DELIVER.

THAT IS NOT A THRESHOLD BASED ON STATEMENTS THAT THE APPLICANT MADE DURING PROSECUTION.

THEY WERE TALKING ABOUT THE EXAMPLE WHERE A THRESHOLD IS BEING LOOKED AT FOR THE WIRELESS DEVICE TO SEND SOMETHING BACK TO THE SERVER.

IN THIS -- IN THESE PARTICULAR CLAIMS, THE WIRELESS DEVICE IS ASKED TO EXECUTE A COMMAND AND THEN TRANSMIT INFORMATION ABOUT THE COMMAND BACK TO THE SERVER, AGAIN BASED ON A THRESHOLD CONDITION, SO SIMILAR TO THE LANGUAGE WE'RE LOOKING AT HERE WHERE A CONNECTION IS ESTABLISHED BASED ON A THRESHOLD CONDITION.

IN THIS CASE, THE WIRELESS DEVICE IS GOING TO TRANSMIT INFORMATION ABOUT A COMMAND IT'S EXECUTED BASED ON A THRESHOLD CONDITION.

THE COURT:  I WAS FASCINATED THAT THERE WAS NO CHANGE IN THE LANGUAGE, SO PERHAPS WHAT THE PTO WAS CONVINCED IS THAT THE DEFINITION OF "THRESHOLD CONDITION" DOES NOT INTRINSICALLY SUPPORT TIME INTERVALS, THAT "THRESHOLD" SOMEHOW IS SOMETHING OTHER THAN TIME.

143

AND YOU'RE -- IF ALSO AVAILABILITY FOR DELIVERY IS, IS THERE, THAT ALSO IS NOT A THRESHOLD CONDITION BY DEFINITION.

MS. DEBRUIN:  RIGHT.

THE COURT:  SO WE'RE TRYING TO -- WE'RE SAYING, "BUT NOT" -- WE MAY NOT NEED TO SAY "BUT NOT," BECAUSE THEY DON'T -- THEY DON'T GET INTO THE DEFINITION IN THE FIRST PLACE.

BUT LET'S ASSUME THAT SOMEHOW THEY DO AND WE HAVE TO WORRY ABOUT THAT.

MS. DEBRUIN:  AND HERE WE DO BECAUSE THIS IS SOMETHING THAT MFORMATION GAVE UP IN ITS ARGUMENT TO THE PATENT OFFICE IN ORDER TO OBTAIN THE ALLOWANCE.

THEY GAVE UP THIS BEING A PERIODIC TIME INTERVAL.  THEY GAVE UP --

THE COURT:  BUT THEY GAVE IT UP BY ADDING "THRESHOLD CONDITION," YOU'RE TELLING ME.

IN OTHER WORDS, THAT WASN'T THERE, AND THE PTO SAID, WELL, TIME COULD PRACTICE THIS, AND THAT -- THAT DOESN'T -- THAT'S INVALID OVER THE PRIOR ART.

SO THEY ADDED "THRESHOLD CONDITION" TO SAY THAT'S SOMETHING DIFFERENT THAN TIME OR AVAILABILITY FOR DELIVERY.

144

MS. DEBRUIN:  AND THEY -- THEY EXPLAINED THAT IN DOING THAT, THEY WERE GIVING UP IT BEING TIME, AND THAT'S WHY WE BELIEVE IT'S IMPORTANT AND HELPFUL TO THE JURY TO MAKE SURE THAT MFORMATION IS KEPT TO THE DEAL THAT THEY MADE WITH THE PATENT OFFICE TO GIVE THAT UP, AND ALSO KEPT TO THE DEAL THAT THEY MADE TO GIVE UP THE MERE AVAILABILITY OF DATA TO DELIVER, AND THAT WAS BASED ON THEIR EXPLANATION OF WHAT A THRESHOLD CONDITION WAS, THAT IT IS NOT SENT AS SOON AS THE COMMAND IS EXECUTED.

IN OTHER WORDS, AS SOON AS THE WIRELESS DEVICE -- BECAUSE WE'RE TALKING ABOUT COMMUNICATION IN THE OTHER DIRECTION -- AS SOON AS THE WIRELESS DEVICE HAS DATA TO DELIVER.

THE COURT:  ALL RIGHT.

MS. DEBRUIN:  NEXT SLIDE, PLEASE.

AND THIS SLIDE, SLIDE 45, IS JUST THE POINT THAT WE WERE TALKING ABOUT, THAT MFORMATION'S CONSTRUCTION SEEKS TO RECAPTURE WHAT THEY'VE ALREADY GIVEN UP, AND THAT IS NOT PROPER.

NEXT SLIDE, PLEASE.

WE'RE GOING TO MOVE ON NOW TO THE SECOND OF THE THRESHOLD CONDITION TERMS, AND THIS IS THE PHRASE "WHEREIN THE CONNECTION IS ESTABLISHED BASED ON A THRESHOLD CONDITION."

RIM'S CONSTRUCTION, AND MFORMATION SAYS THERE'S UNNECESSARY, BUT RIM'S CONSTRUCTION HELPS TO EXPLAIN THE MEANING OF HOW SOMETHING HAPPENS BASED ON A THRESHOLD CONDITION.

WE'RE TRYING TO BE HELPFUL HERE TO THE JURY.

AND WE CAN THINK ABOUT THE AIR CONDITIONER EXAMPLE.  "WHEREIN THE CONNECTION IS ESTABLISHED" -- IF WE COULD HAVE -- I'M SORRY.  I JUMPED AHEAD BY SAYING THAT.

"WRITTEN THE CONNECTION IS CREATED IN RESPONSE TO EXCEEDING OR FALLING BELOW A THRESHOLD CONDITION."

SO THIS GETS AT THE NATURE OF A THRESHOLD CONDITION AND THE IDEA OF MOVING THROUGH A RANGE OF VALUES AND EITHER EXCEEDING OR FALLING BELOW A PREDEFINED, PREDETERMINED LIMIT.

NEXT SLIDE, PLEASE.

THAT'S WHAT WE TALKED ABOUT WITH RESPECT TO THE AIR CONDITIONER EXAMPLE.

THE COURT:  AM I READING THIS TOO CLOSELY, THE QUESTIONS I'VE PUT TO YOUR OPPONENT, BECAUSE THIS TALKS AS THOUGH IT IS A THRESHOLD CONDITION THAT MUST BE ESTABLISHED BEFORE THE CONNECTION IS ESTABLISHED.

HOW DO YOU KNOW WHETHER OR NOT THE THRESHOLD CONDITION IS OR IS NOT PRESENT OR NOT PRESENT WITHOUT ESTABLISHING A CONNECTION?

MS. DEBRUIN:  THE THRESHOLD CONDITION -- I THINK YOU HIT ON A VERY GOOD POINT, AND I'D LIKE TO MOVE OVER TO THE BOARD FOR A MOMENT.

THIS IS BEING PERFORMED AT THE, AT THE SERVER, DELIVERING THE COMMAND FROM THE MAILBOX TO THE WIRELESS DEVICE BY ESTABLISHING A CONNECTION.

WHATEVER THIS THRESHOLD CONDITION IS HAS TO BE SOMETHING THAT THE SERVER KNOWS ABOUT.  IT'S NOT SOMETHING THAT THE SERVER IS GOING TO BE GOING OUT AND ASKING THE WIRELESS DEVICE ABOUT, BUT SOME SOMETHING -- AND MFORMATION DOESN'T GIVE ANY EXAMPLES IN THE SPECIFICATION OF WHAT THAT THRESHOLD CONDITION WOULD BE -- BUT IT MUST BE SOMETHING THAT THE SERVER HAS INFORMATION ABOUT.

BECAUSE YOU'RE ABSOLUTELY RIGHT.  WHAT THIS IS SAYING IS YOU ESTABLISH THE CONNECTION BASED ON THAT THRESHOLD CONDITION.

THE COURT:  BUT IT DOESN'T SAY THE THRESHOLD CONDITION OF THE SERVER OR OF THE WIRELESS DEVICE.

IT JUST -- THE CONNECTION IS ESTABLISHED,

147

AND THAT IS BETWEEN THE SERVER AND THE WIRELESS DEVICE BASED ON A THRESHOLD CONDITION.

BUT THE INVENTOR DOESN'T SPECIFY WHETHER THE THRESHOLD CONDITION EXISTED AT THE SERVER OR THE THRESHOLD CONDITION EXISTED AT THE WIRELESS DEVICE.

MY CONCERN ABOUT IT EXISTING AT WIRELESS DEVICE IS THAT THE SERVER WOULDN'T KNOW THAT --

MS. DEBRUIN:  CORRECT.

THE COURT:  -- UNLESS THERE WAS A CONNECTION.

NOW, PERHAPS THE THRESHOLD CONDITION AT THE WIRELESS DEVICE NEED NOT BE KNOWN TO THE SERVER.  IT JUST SAYS THE CONNECTION IS ESTABLISHED BASED ON IT, AND SO WHO NEEDS TO KNOW?

MS. DEBRUIN:  I THINK THE SERVER NEEDS TO KNOW.

AND THE REASON WHY GETS INTO SOMETHING THAT'S NOT AN ISSUE HERE AT CLAIM CONSTRUCTION, BUT SOMETHING THAT WE'LL BE DEALING WITH LATER IN THE CASE.

THESE STEPS ARE TO BE PERFORMED WITHOUT A REQUEST FROM THE WIRELESS DEVICE.

SO THE MAILBOX -- THE SERVER ESTABLISHES A MAILBOX FOR THE WIRELESS DEVICE AT THE SERVER,

148

PLACES A COMMAND FOR THE WIRELESS DEVICE IN THE

MAILBOX, AND DELIVERS THAT COMMAND FROM THE MAILBOX

AT THE SERVER BY ESTABLISHING A CONNECTION.

AND THIS HAS TO BE WITHOUT A REQUEST FROM

THE WIRELESS DEVICE.

SO IT CAN'T BE THE WIRELESS DEVICE THAT'S

ESTABLISHING THE CONNECTION.  IT HAS TO BE THE

SERVER THAT'S ESTABLISHING THE CONNECTION.

AND, AGAIN, THIS IS LANGUAGE -- AGAIN,

THIS IS OUTSIDE OF THE SCOPE OF THIS CLAIM

CONSTRUCTION HEARING -- BUT THIS IS LANGUAGE ALSO

THAT WAS ADDED, THAT WAS REQUIRED TO BE ADDED IN

ORDER TO OBTAIN ALLOWANCE OF THE CLAIMS, "THE

WITHOUT A REQUEST FROM THE WIRELESS DEVICE" THAT

HAD TO BE PRESENT IN ALL THE CLAIMS.

THE COURT:  BUT I'M CONCERNED THAT NONE

OF THIS ANSWERS MY CONCERN, WHICH, AS I ADMIT, MAY

BE A LACK OF STUDY OF THIS, BUT THE CONNECTION THAT

IS BEING ESTABLISHED IS BASED ON A THRESHOLD

CONDITION.

THE DELIVERY IS PART OF THAT, BUT THE

CONNECTION IS ESTABLISHED BASED ON THE THRESHOLD

CONDITION, NOT THE DELIVERY.

MS. DEBRUIN:  CORRECT.  IT'S THE

CONNECTION.  IT'S THIS INTERIM STEP --

149

THE COURT:  NOT THE TRANSMISSION, I GUESS, WOULD BE THE BETTER WAY OF SAYING IT.

MS. DEBRUIN:  UM-HUM, RIGHT.  IT'S THE FIRST STEP THAT IS -- THE CLAIM DESCRIBES HOW YOU DELIVER THE COMMAND FROM THE MAILBOX AT THE SERVER TO THE WIRELESS DEVICE, AND THE FIRST THING THAT IT DOES IN DELIVERING IT IS ESTABLISHES A CONNECTION.

THAT HAS TO BE ESTABLISHED BASED ON A THRESHOLD CONDITION, THAT CONNECTION.

THE COURT:  THEN DOESN'T THAT NECESSARILY MEAN IT'S GOT TO BE A THRESHOLD CONDITION OF THE SERVER?

MS. DEBRUIN:  THAT'S HOW I WOULD READ IT. THRESHOLD CONDITION WOULD BE SOMETHING KNOWN TO THE SERVER.

THE COURT:  KNOWN TO THE SERVER.

BUT IT'S -- IT DOESN'T HAVE TO BE OF THE SERVER?

BECAUSE OTHERWISE DON'T YOU HAVE TO HAVE A CONNECTION BETWEEN THE TWO TO KNOW THE CONDITION OF THE WIRELESS DEVICE?

MS. DEBRUIN:  I SUPPOSE YOU MIGHT HAVE COLLECTED INFORMATION PREVIOUSLY AND STORED INFORMATION.

THE COURT:  WELL, THEN, IT WOULD BE KNOWN

TO THE SERVER.

MS. DEBRUIN:  THAT'S WHAT I WAS TRYING TO ADDRESS THERE.

THE COURT:  I SEE.

MS. DEBRUIN:  BUT IT HAS TO BE SOMETHING DEFINITELY AVAILABLE TO THE SERVER, EITHER THAT IT'S GAINED EARLIER AND STORED SOMEWHERE --

THE COURT:  OKAY.  ANY -- IS THERE ANY PLACE IN THE SPECIFICATION WHERE THEY TALK ABOUT THAT?

MS. DEBRUIN:  NO, NOT AT ALL.

THE COURT:  OKAY.  GO AHEAD.

MS. DEBRUIN:  THANK YOU, YOUR HONOR.

TO SUM UP ON THE THRESHOLD CONDITION TERMS, RIM'S CONSTRUCTION IS CONSISTENT WITH THE SPEC AND WITH THE DISCLAIMERS THAT THE PATENTEE MADE DURING PROSECUTION.  RIM'S CONSTRUCTIONS HELP THE JURY TO UNDERSTAND THE TERMS.

MFORMATION'S CONSTRUCTION, "A CONDITION BASED ON A POLICY," IS SO VAGUE THAT IT'S MORE CONFUSING THAN HELPFUL.

NEXT, YOUR HONOR, I WOULD LIKE TO MOVE TO OUR LAST SET OF TERMS.  THESE TERMS DON'T SHARE A COMMON MEANING, BUT THEY SHARE COMMON TREATMENT.

THESE ARE ALL TERMS THAT WE BELIEVE ARE

151

COMMONLY UNDERSTOOD TERMS AND THEY'RE USED THAT WAY IN THE PATENTS.  THERE'S NO NEED TO GIVE THEM A MEANING.

AND THEY'RE ALSO GROUPED TOGETHER BECAUSE MFORMATION SEEKS TO IMPROPERLY NARROW THESE TERMS.

THE FIRST ONE I'D LIKE TO START WITH IS "SERVER."

RIM DID OFFER A CONSTRUCTION FOR "SERVER," AND RIM'S CONSTRUCTION WAS STRICTLY OUT OF THE DICTIONARY.

RIM WOULD PROPOSE ITS CONSTRUCTION, OR JUST THAT THE SERVER -- THAT "SERVER" BE GIVEN ITS PLAIN AND ORDINARY MEANING.  IT'S NOT A TERM THAT, THAT NEEDS TO BE CONSTRUED.

MFORMATION ADDS INFORMATION INTO THE "SERVER" CONSTRUCTION THAT IS NOT WHAT'S COMMONLY UNDERSTOOD BY THE WORD "SERVER" AND WHICH IS NOT SOMETHING THAT WAS TAUGHT ABOUT THE PATENT.  THE PATENT DIDN'T GIVE A SPECIAL MEANING TO "SERVER."

INSTEAD, THE PATENT USED THE WORD "SERVER" REPEATEDLY WITHOUT ANY QUALIFICATION.

NEXT SLIDE, PLEASE.

THE COURT:  ONE SECOND.

(PAUSE IN PROCEEDINGS.)

THE COURT:  IT'LL TAKE -- WE'RE GOING TO

GO OFF THIS RECORD AND ON THE RECORD OF THE CRIMINAL CASE JUST MOMENTARILY.

IT'LL TAKE THE PARTIES A LITTLE BIT OF TIME TO COME TOGETHER, BUT I WOULD EXPECT THAT WHEN THEY ARE TOGETHER, WE'LL NEED TO INTERRUPT THESE PROCEEDINGS TO TAKE THE VERDICT AS IT HAS BEEN COMPILED, AND SO I'LL DIRECT THE CLERK OF COURT TO GATHER THE PARTIES TOGETHER.

IF YOU WOULD DO ME THE COURTESY OF MOVING OUT OF THE WELL OF THE COURT.  I HESITATE -- I HESITATE TO DO THAT SINCE YOU'RE ALL SO WELL ESTABLISHED, BUT I THINK THE JURY WOULD EXPECT TO HAVE THE PARTIES SEATED AS THEY RETURN.

MS. DEBRUIN:  CERTAINLY, YOUR HONOR.

THE COURT:  THANK YOU.  SO YOU CAN LEAVE YOUR DEVICE, YOUR PLACARDS UP.  YOU DON'T HAVE TO REMOVE ALL OF THEM.

(WHEREUPON, A RECESS WAS TAKEN.)

THE COURT:  VERY WELL.  MOVING BACK TO MY CIVIL HAT.

I REALLY APPRECIATE YOUR INTERRUPTING YOUR PRESENTATION FOR THAT PURPOSE.  YOU CAN UNDERSTAND HOW -- THIS IS A CASE THAT WAS TRIED OVER A MATTER OF SOME TWO OR THREE, THREE WEEKS, AND THE DELIBERATIONS TOOK THE BETTER PART OF A

153

WEEK, SO I WANTED TO MAKE SURE THE JURY WAS FREE TO GO AS SOON AS I HAD AN INDICATION THAT THEY HAD COME TO AN IMPASSE AND AT LEAST REACHED A DECISION ON SOME MATTERS.

SO -- BUT LET'S -- I'VE NOW GOT TO CHANGE MY MIND BACK, BUT I'M SURE YOU CAN HELP ME.

MS. DEBRUIN:  WELL, WHEN WE TOOK OUR BREAK, YOUR HONOR, WE WERE SPEAKING ABOUT CONSTRUCTION OF "SERVER," AND I MENTIONED THAT RIM'S CONSTRUCTION CAME STRAIGHT OUT OF THE DICTIONARY, CONTRARY TO WHAT MFORMATION'S COUNSEL SAID ABOUT RIM'S CONSTRUCTION, WHICH WAS THAT WE MADE IT UP OUT OF WHOLE CLOTH.

WE DIDN'T.  WE WENT TO THE DICTIONARY DEFINITION, AND WE THINK THIS DEFINITION COULD BE USED, OR PERHAPS EVEN MORE PREFERABLY, JUST THE PLAIN AND ORDINARY MEANING, NO CONSTRUCTION NEEDED.

WHAT'S WRONG WITH MFORMATION'S CONSTRUCTION IS THAT THEY TRY TO READ TOO MUCH INTO THE TERM "SERVER," AND I HAVE ON SLIDE 52 FIGURE 1 OF THE '917 PATENT.

THIS SHOWS THE WIRELESS NETWORK 102 AND VARIOUS THINGS CONNECTED TO IT.

FOR EXAMPLE, IT SHOWS 114, MANAGEMENT SERVER.

154

IT SHOWS OTHER BLOCKS OF 112, SERVERS, FOR EXAMPLE.

WHEN THE PATENTEE WANTED TO SAY "MANAGEMENT SERVER," THEY KNEW HOW TO SAY IT, AND THEY SAY IT RIGHT HERE.

THEY OTHERWISE REFER TO THINGS AS "SERVERS."  THEY -- IF THEY WANTED TO SAY "MANAGEMENT SERVER" IN THE CLAIMS, THEY SHOULD HAVE SAID IT.

THE PATENTEE DID NOT PROVIDE THAT THE TERM "SERVER" SHOULD BE GIVEN THE CONSTRUCTION "MANAGEMENT SERVER."

THERE'S NO BASIS TO DO THAT IN THE CLAIMS.

THE COURT:  THE MANAGEMENT SERVER IS A SERVER, BUT NOT ALL SERVERS ARE MANAGEMENT SERVERS?

MS. DEBRUIN:  CORRECT.

MOVING ON TO "COMMAND," WE HAVE MORE OF THE SAME.

RIM'S CONSTRUCTION FOR "COMMAND" IS THAT IT SHOULD HAVE ITS PLAIN AND ORDINARY MEANING.

DURING MFORMATION COUNSEL'S ARGUMENT, YOU ASKED WHETHER "COMMAND" WAS AN INSTRUCTION.

CERTAINLY IT IS.  "COMMAND" SEEMS AS UNDERSTANDABLE AS "INSTRUCTION," BUT IF "COMMAND"

155

WERE TO BE CONSTRUED AS "INSTRUCTION," WE'D CERTAINLY HAVE NO DISPUTE THERE.

WHAT WE DO HAVE A DISPUTE WITH IS MFORMATION'S CONTINUED ATTEMPT TO READ SOMETHING INTO THESE COMMONLY UNDERSTOOD TERMS, AND WE HAVE THIS AGAIN WITH "COMMAND."

THEIR CONSTRUCTION IS "A DIRECTIVE TO CARRY OUT A REMOTE MANAGEMENT TASK."

THERE'S NOTHING IN THE TERM "COMMAND" THAT REQUIRES THAT.  THERE'S NOWHERE IN THE PATENT THAT THE PATENTEE SAID THAT MUST BE REQUIRED.

AND YOU CHALLENGED MFORMATION'S COUNSEL TO PROVE THAT THERE WAS NOWHERE IN THE PATENT THAT "COMMAND" WAS USED OTHER THAN AS A MANAGEMENT COMMAND, AND HE TOLD YOU THAT THAT WAS TRUE, THERE WAS NOWHERE IN THE PATENT THAT THE WORD "COMMAND" WAS USED OTHER THAN TO REFER TO A MANAGEMENT COMMAND.

THAT'S SIMPLY NOT TRUE.

FOR EXAMPLE, I HAVE ON THE BOARD IN SLIDE 54 A CITE FROM THE '408 PATENT, COLUMN 5, LINES 4 TO 10.

THERE'S SIMILAR LANGUAGE IN THE '917 PATENT.

AND THIS TALKS ABOUT -- IT'S DESCRIBING A

156

TOUCH-TONE RESPONSE UNIT OR A VOICE RESPONSE UNIT, AND IN EXPLAINING WHAT THOSE UNITS ARE AND HOW THEY OPERATE, JUST EXPLAINING THE PHYSICAL EQUIPMENT, IT SAYS THEY ACCEPT TOUCH-TONE OR VOICE COMMANDS.

THERE'S NOTHING IN THAT THAT'S REFERRING TO A MANAGEMENT COMMAND.  IT HAS NOTHING TO DO WITH A MANAGEMENT COMMAND.

THE LANGUAGE OF THE CLAIM SHOULD BRING IN ANY REQUIREMENT OF A MANAGEMENT COMMAND.  THERE ARE EXAMPLES GIVEN IN THE CLAIMS.

BUT YOU CANNOT READ INTO THE SIMPLE TERM "COMMAND" THE LANGUAGE THAT MFORMATION IS SEEKING TO ADD TO THAT SIMPLE, COMMONLY UNDERSTOOD TERM.

THE COURT:  WELL, YOU -- I DID USE INSTRUCTION, A COMMAND IS AN INSTRUCTION, BUT PERHAPS NOT ALL INSTRUCTIONS ARE COMMANDS.

A COMMAND SEEMS TO ME TYPICALLY WOULD BE UNDERSTOOD BY SKILLED ARTISANS TO BE A KIND OF INSTRUCTION WHICH REQUIRES EXECUTION, THAT SOMETHING MUST BE DONE IN RELATIONSHIP RATHER THAN JUST RECEIVE IT, SOMETHING HAS TO HAPPEN.

MS. DEBRUIN:  THAT SEEMS FAIR, YOUR HONOR.

BUT, AGAIN, IT'S JUST THE PLAIN AND ORDINARY MEANING, THE COMMON UNDERSTANDING OF THE

157

TERM, THE TERM "COMMAND."

NOW, WHEN MFORMATION'S COUNSEL WAS ADDRESSING THIS TERM, THEY INDICATED THAT THEY WERE TRYING TO DISTINGUISH WHAT THEY REFER TO AS MANAGEMENT COMMANDS FROM PROVISIONING COMMANDS, AND YOU'LL RECALL THROUGHOUT THE DISCUSSION YESTERDAY IN THE TUTORIAL, WE HAD MFORMATION'S COUNSEL SAYING THAT PROVISIONING IS NOT REMOTE MANAGEMENT.

I'M GOING TO MOVE ON FROM THE ISSUE OF "COMMAND," BUT I JUST WANTED TO RAISE THAT ISSUE BECAUSE I'M GOING TO ADDRESS THE PROVISIONING ISSUE ALTOGETHER WITH THE REMOTE MANAGEMENT OF A WIRELESS DEVICE PIECE.

SO I'D LIKE TO MOVE NEXT TO THAT TERM.

NEXT TERM IS "REMOTELY MANAGING A WIRELESS DEVICE."

THAT'S IN THE PREAMBLE OF ALL THE CLAIM TERMS.

RIM BELIEVES THAT NO CONSTRUCTION IS NEEDED.

MFORMATION, AGAIN, IS TRYING TO READ WORDS INTO THIS SIMPLE LANGUAGE.  THEY AGREED WITH YOU WHEN YOU ASKED IF THEY WERE INTERPRETING "REMOTELY" TO BE REMOTELY AND WIRELESSLY.  THEY SAID THEY WERE.

THERE'S SIMPLY NO SUPPORT FOR THAT.

AND HERE AGAIN THEY'RE BRINGING IN THE IDEA OF REMOTE MANAGEMENT IS NOT ABOUT PROVISIONING.  THEIR CONSTRUCTION IS "REMOTELY AND WIRELESSLY MANAGING A PROVISIONED DEVICE."

FIRST, WITH RESPECT TO "REMOTELY," "REMOTELY" DOES NOT MEAN WIRELESS -- "REMOTELY" DOES NOT MEAN REMOTELY AND WIRELESSLY, AND IT WAS NOT USED IN THE PATENT TO MEAN REMOTELY AND WIRELESSLY.

FOR EXAMPLE, I HAVE A QUOTE ON SLIDE 56 FROM THE PROVISIONAL APPLICATION, THAT THE -- THE PROVISIONAL IS EXHIBIT C TO RIM'S BRIEF.

THIS DESCRIBES THAT THERE ARE VARIOUS PROTOCOLS.  IT'S TALKING ABOUT THE PRIOR ART, THAT "THERE ARE VARIOUS PROTOCOLS TO MANAGE, CONTROL AND RECONFIGURE COMPUTER SYSTEMS REMOTELY," SO THIS IS REMOTE MANAGEMENT, "REMOTELY VIA A CENTRAL CONSOLE."

AND IT GOES ON AND SAYS, "SUCH PROTOCOLS ARE DESIGNED FOR THE ENVIRONMENT WHERE THE SYSTEMS ARE HARDWIRED."

NO WIRELESS TO SPEAK OF.  "REMOTELY" DOES NOT MEAN REMOTE LY AND WIRELESSLY.  IT SIMPLY MEANS REMOTELY.

159

NEXT SLIDE, PLEASE.

THE COURT:  BUT YOU WOULD AGREE, HOWEVER, THAT A WIRELESS SYSTEM CAN BE A REMOTE SYSTEM?

MS. DEBRUIN:  CORRECT.

THE COURT:  ALL RIGHT.  BUT THAT YOUR POINT IS THAT THE WORD "REMOTELY" DOESN'T ALWAYS MEAN THAT IT IS A WIRELESS SYSTEM?

MS. DEBRUIN:  CORRECT.

THE COURT:  OKAY.

MS. DEBRUIN:  NOW, THE OTHER PIECE OF THE LANGUAGE THAT MFORMATION SEEKS TO INSERT INTO THESE SIMPLE WORDS IS THAT THE CLAIM SHOULD NOT -- THE CLAIM -- THAT THE LANGUAGE SHOULD BE READ TO MEAN WIRELESSLY MANAGING A PROVISIONED DEVICE.

NOW, FIRST, WITH RESPECT TO THE '917 PATENT, THERE'S ABSOLUTELY NO USE OF THE WORD "PROVISIONED."

NOTHING IS SAID IN THE '917 PATENT ABOUT PROVISIONING.  THERE'S NO EXCLUSION OF PROVISIONING A DEVICE, NO STATEMENT THAT REMOTE MANAGEMENT IS NOT PROVISIONING.

IN THE '408 PATENT, AGAIN, THERE'S NO EXCLUSION, NO STATEMENT THAT REMOTE MANAGEMENT IS NOT PROVISIONING.

THERE'S A SIMPLE MENTION OF PROVISIONING

160

IN THE PRIOR ART WHERE IT SAYS THAT "SIGNALING NETWORKS IN WIRELESS TELECOMMUNICATIONS HAVE BEEN USED FOR DEVICE ACTIVATION/PROVISIONS."  AND THAT'S AT '408 PATENT, COLUMN 1, LINES 59 TO 60.

THAT DOESN'T SAY THAT PROVISIONS -- PROVISIONING COULD NOT BE DEVICE MANAGEMENT WITHIN THE SCOPE OF THIS INVENTION.

WHAT THAT SAYS IS THAT SIGNALING NETWORKS HAVE BEEN USED FOR DEVICE ACTIVATION AND PROVISIONING, OR PROVISIONS.

"SIGNALING NETWORKS" IS USED IN THE CLAIM.  IT'S NOT SOMEHOW EXCLUDED FROM BEING IN THE CLAIM JUST SIMPLY BECAUSE IT EXISTED IN THE PRIOR ART.

AS YOUR HONOR RECOGNIZED, THE SIGNALING NETWORK THAT WAS BEING USED WAS SOMETHING THAT EXISTED.  THE INVENTORS DIDN'T INVENT IT.  THEY MADE CLAIMS THAT USED IT, BUT THE SIGNALING NETWORK ALREADY EXISTED.

SO DID PROVISIONING.  THAT DOESN'T EXCLUDE IT FROM THE SCOPE OF THE CLAIMS.

NOW, YOU HEARD A LOT YESTERDAY -- YOU HEARD A LOT OF ATTORNEY ARGUMENT YESTERDAY THAT PROVISIONING IS NOT REMOTE MANAGEMENT OF DEVICES .

YOU HEARD A LOT OF ARGUMENT YESTERDAY

THAT THESE PATENTS SOMEHOW ONLY APPLY TO ENTERPRISE RATHER THAN CARRIER APPLICATIONS.

I THINK THE REASON FOR THAT ARGUMENT WAS THAT CARRIER APPLICATIONS WOULD BE WHERE PROVISIONING WOULD OCCUR.

ONE, WE WONDERED WHY MFORMATION WOULD SAY THAT THESE INVENTIONS WERE NOT DIRECTED TO CARRIER APPLICATIONS; AND, YET, IN THEIR OPENING BRIEF, AND I'M GOING TO PUT SOMETHING ON THE ELMO --

SO MFORMATION HAS SAID THAT THESE PATENTS AREN'T ABOUT PROVISIONING.  THIS LANGUAGE THAT SAYS NOTHING ABOUT PROVISIONING CANNOT INCLUDE PROVISIONING OF THE DEVICE.

AND THEY'VE SAID THAT -- CAN YOU READ THAT OKAY, YOUR HONOR?

THE COURT:  SURE.

MS. DEBRUIN:  AND THEY SAID THAT THESE PATENTS APPLIED TO ENTERPRISE APPLICATIONS AND NOT TO CARRIER APPLICATIONS.

I WENT BACK AND LOOKED AT MFORMATION'S OPENING BRIEF IN THIS CLAIM CONSTRUCTION MATTER, AND IN THAT BRIEF, IN TALKING ABOUT THE INVENTIONS OF THE ASSERTED PATENTS, THEY DESCRIBED THE WORK BY THE NAMED INVENTORS AND THEY SAID THAT IT RESULTED, THAT THEIR COLLABORATION RESULTED IN A SUCCESSFUL

REMOTE MANAGEMENT SOFTWARE PRODUCT, AND THEY GO ON AND DESCRIBE THEM, AND THEY SAY THAT THEY ARE ADOPTED BY OVER 40 OF THE WORLD'S MOST FORWARD-THINKING MOBILE NETWORK OPERATORS, AND JUST SO THERE'S NO DISPUTE ON THE TRANSCRIPT, A CARRIER IS A MOBILE NETWORK OPERATORS, AND THEY GIVE THREE EXAMPLE, INCLUDING SPRINT, T-MOBILE, AND AT&T.

NOW, THIS MADE US GO BACK AND LOOK AT MFORMATION'S WEB SITE.  YOU HEARD WHAT MFORMATION'S COUNSEL SAID YESTERDAY.

WELL, WE WENT BACK AND LOOKED AT WHAT MFORMATION SAID ON ITS WEB SITE ABOUT THIS, AND WE FOUND, INDEED, THAT THAT COMMENT ABOUT 40 OF THE WORLD'S MOST FORWARD-THINKING MOBILE OPERATORS, THAT ACTUALLY CAME DIRECTLY FROM MFORMATION'S WEB SITE.

AND WHEN WE LOOKED A LITTLE FURTHER, WE SAW -- HERE YOU CAN JUST SEE SOME EXAMPLES OF THE VARIOUS CARRIERS, TELEFONICA, SPRINT, T-MOBILE, ET CETERA.

AND I'LL HAND UP COPIES OF THESE PAPERS IN A MOMENT TO THE COURT.

WE LOOKED AT ANOTHER PIECE OF THE WEB SITE AND HERE'S WHAT WE SAW.  WE SAW THAT MFORMATION SAID THAT IT WAS A LEADING PROVIDER OF

163

SOLUTIONS THAT ADDRESS ALL THE DEVICE MANAGEMENT NEEDS OF MOBILE OPERATORS.

SO CLEARLY MFORMATION BELIEVES THAT ITS PRODUCTS WORK FOR MOBILE OPERATORS.

THEY DESCRIBE ONE, AND THAT IS THE MFORMATION SERVICE MANAGER.  THEY SAY THAT'S THE MOST COMPREHENSIVE MOBILE DEVICE MANAGEMENT SOFTWARE AVAILABLE TODAY.

THEY ALSO TALK ABOUT HOW THEY ACTIVATE AND CONFIGURE CDMA HANDSETS.  THEY SAY THAT THIS CAN BE A COMPLICATED PROCESS, BUT MFORMATION'S DEVICE MANAGEMENT SOLUTION, WHICH IS BASED ON THE OPEN MOBILE ALLIANCE DATA MANAGEMENT, OR OMA DM STANDARD, CAN HANDLE THESE TASKS.

IN OTHER WORDS, MFORMATION SYSTEMS CAN DO PROVISIONING.

AND IF WE COULD HAVE THE -- I'M GOING TO GO BACK TO THE COMPUTER FOR JUST A MOMENT, IF WE COULD HAVE THE OMA SLIDE, IN SLIDE 58, AND WE POINTED THIS OUT IN OUR RESPONSE BRIEF, OMA DM, THE STANDARDS ORGANIZATION WHICH MFORMATION AGREES IT COMPLIES WITH, IT'S PART OF THIS GROUP, THIS GROUP SAYS ALSO, "DEVICE MANAGEMENT, WHICH INCLUDES BOTH INITIAL AND CONTINUOUS PROVISIONING."

SO YOU MIGHT WANT TO ASK ME, YOUR HONOR,

164

WELL, YOU'RE TALKING ABOUT MFORMATION'S PRODUCTS AND WHAT WE'RE HERE TO TALK ABOUT TODAY IS MFORMATION'S CLAIMS, AND THAT'S A FAIR QUESTION.

I'D LIKE TO HAND UP TO YOUR HONOR THE MATERIALS I JUST USED AND TWO ADDITIONAL DOCUMENTS. I'VE MARKED THESE FOR IDENTIFICATION AS EXHIBITS II THROUGH EXHIBITS LL, AND I'M HANDING A COPY TO PLAINTIFF'S COUNSEL (HANDING).

THE COURT:  WHAT AM I TO MAKE OF THIS? WHAT'S THE BOTTOM LINE?

MS. DEBRUIN:  THE BOTTOM LINE GOES TO THE ISSUE OF WHETHER THE TERMS "REMOTELY MANAGING A WIRELESS DEVICE" AND "COMMAND" SHOULD SOMEHOW BE LIMITED TO ALREADY PROVISIONED WIRELESS DEVICES, IN OTHER WORDS, THAT THE CLAIMS CANNOT APPLY TO PROVISIONING A WIRELESS DEVICE.

AND HOW THIS CONNECTS WITH THE PATENT IS AS FOLLOWS:  WE CAN SEE FROM WHAT I'VE ALREADY SHOWED YOU, WHICH I'VE MARKED FOR IDENTIFICATION AS EXHIBITS II AND JJ, NEXT I'D LIKE TO SHOW YOU EXHIBIT KK.

NOW, THIS EXHIBIT IS A PRESS RELEASE FROM MFORMATION.  WHAT'S IT A PRESS RELEASE ABOUT?  IT'S A PRESS RELEASE ABOUT A PATENT.  MFORMATION ANNOUNCES PATENT FOR REMOTE CONTROL AND MANAGEMENT

OF WIRELESS DEVICES.

WHAT'S THE PATENT?  THE PATENT IS THE '917 PATENT, ONE OF THE PATENTS AT ISSUE HERE TODAY.

LET ME JUST GET MY THINGS TOGETHER HERE.

SO THIS IS A PRESS RELEASE FROM MFORMATION ABOUT THEIR '917 PATENT.

AND WHAT DO THEY SAY?  THEY SAY, IN TALKING ABOUT THEIR PATENT, THAT MFORMATION'S COMPREHENSIVE SUITE OF MOBILE DEVICE MANAGEMENT SOFTWARE IS PROTECTED BY THE PATENT.

AND IN PARTICULAR, THEY SAY THIS INCLUDES THE MFORMATION SERVICE MANAGER SUITE.

WHAT DOES THAT DO?  IT'S A FULLY INTEGRATED MOBILE DEVICE MANAGEMENT PLATFORM THAT ENABLES MOBILE OPERATORS, THAT IS, CARRIERS, TO CONFIGURE, UPDATE, AND SO ON, MOBILE DEVICES OVER THEIR ENTIRE LIFECYCLE.

NOW, INTERESTINGLY, IN THE SECTION ABOUT MFORMATION, IN THIS PRESS RELEASE ABOUT THE '917 PATENT, MFORMATION SAYS -- THIS IS THE COMPANY SPEAKING, THIS ISN'T THEIR LAWYERS ARGUING, THIS IS THE COMPANY SPEAKING IN A PRESS RELEASE ABOUT THEIR PATENT -- AND THEY SAY THAT THE "MFORMATION SERVICE MANAGER," THE PRODUCT THAT THEY SAID WAS COVERED BY

166

THIS PATENT, "PROVIDES SOLUTIONS FOR OMA DM-BASED PROVISIONING AND CONFIGURATION."

IN OTHER WORDS, THE PATENT COVERS PROVISIONING.  PROVISIONING IS NOT EXCLUDED FROM THE PATENT, AS YOU WERE TOLD BY COUNSEL FOR MFORMATION DURING ARGUMENT YESTERDAY.

WE CAN SEE THE SAME THING IN EXHIBIT LL. THIS EXHIBIT, AS YOU MIGHT GUESS, IS ABOUT THE '408 PATENT.

THIS ACTUALLY ANNOUNCED TWO PATENTS, ONE BEING THE '408 AND THE OTHER BEING A EUROPEAN PATENT.

AGAIN, JUST AS THEY DID WITH THE '917 PATENT PRESS RELEASE, THEY SAY, "MFORMATION'S EXTENSIVE RANGE OF DEVICE MANAGEMENT SOLUTIONS IS COVERED BY THESE PATENTS.  THIS INCLUDES INFORMATION'S SERVICE MANAGER."

ONCE AGAIN, THEY SAY, WHAT IS THE MFORMATION SERVICE MANAGER?  IT "PROVIDES SOLUTIONS FOR OMA DM-BASED PROVISIONING AND CONFIGURATION."

SO IN THE PRESS RELEASES BY MFORMATION ABOUT WHAT THEIR '917 AND '408 PATENTS COVER, THEY EXPRESSLY SAY THAT THESE PATENTS COVER PROVISIONING, THAT THESE PATENTS CAN APPLY TO CARRIER SYSTEMS FOR PROVISIONING.

THIS DIRECTLY CONTRACTS -- THIS DIRECTLY CONTRADICTS WHAT MFORMATION'S COUNSEL TOLD THIS COURT YESTERDAY.  YOU'LL RECALL THAT NO ONE FROM MFORMATION WAS PRESENT YESTERDAY.

BUT THIS DIRECTLY CONTRADICTS WHAT MFORMATION SAID YESTERDAY IN THE TUTORIAL, AND THIS DIRECTLY CONTRADICTS MFORMATION'S ARGUMENT THAT "COMMAND" AND "REMOTELY MANAGING A WIRELESS DEVICE" SHOULD BE SOMEHOW LIMITED TO EXCLUDE PROVISIONING.

THE COURT:  I UNDERSTAND THE ISSUE, AND I REALLY APPRECIATE THAT THERE MAY BE EXTRINSIC INFORMATION THAT'LL HELP ME TO DO THIS, BUT I OFTEN FIND THAT I SHOULD IGNORE THAT INFORMATION UNTIL I'M READY TO SAY, OKAY, I NEED HELP BEYOND THE FILE HISTORY, BECAUSE NONE OF THAT WAS IN PLACE AT THE POINT WHERE THE INVENTORS CAME UP WITH THIS, AS I PRESUME.

AND IT'S JUST THE DISCIPLINE THAT I IMPOSE SO AS TO MAKE CLEAR WHEN I LEFT THE INTRINSIC EVIDENCE AND HAVE GONE TO EXTRINSIC INFORMATION, AND I ALWAYS WANT TO MAKE SURE THAT THE RECORD AND MY ORDER WOULD REFLECT THAT.

I SEE IN CLAIM 1 OF '917 THIS REGISTRATION PROCESS.

IS THAT -- IS THAT SOMEHOW DIFFERENT FROM

PROVISIONING IN YOUR VIEW?

MS. DEBRUIN:  NOT NECESSARILY.

THE COURT:  ALL RIGHT.  SO IT COULD BE PROVISIONING, BUT IT COULD BE SOMETHING ELSE?

MS. DEBRUIN:  CORRECT.  IT COULD BE -- IT COULD BE PROVISIONING -- IF I MAY APPROACH THE BOARD?

IT COULD BE PROVISIONING, AND THIS WOULD BE THE STEP OF THE WIRELESS DEVICE TRANSMITTING ITS INFORMATION TO THE CARRIER'S SERVER FOR THE FIRST TIME.

IT COULD ALSO BE THAT THE WIRELESS DEVICE IS ALREADY PROVISIONED AND IT'S REGISTERING WITH SOME OTHER SERVER.

BUT THERE'S ABSOLUTELY NOTHING IN THE PATENTS THAT SAY THAT THIS CANNOT BE PROVISIONING, OR THAT PROVISIONING CANNOT -- THAT THESE CLAIMS COULD NOT READ ON PROVISIONING A WIRELESS DEVICE.

THE COURT:  AND THAT IS GOING TO BE IMPORTANT, I PRESUME, LATER ON, AND TO SUPPORT THAT, THE NOTION OF PROVISIONING, WHICH IS SOME -- IF THAT WORD WERE USED, I'D HAVE TO DEFINE IT.

I'M NOT CALLED UPON TO DEFINE "PROVISIONING," AS I LOOK AT IT, IN THIS CLAIM.

MAYBE THERE ARE OTHERS.

BUT IN THIS CLAIM, I'M NOT REQUIRED TO DECIDE THAT.

BUT YOU'RE ASKING ME TO CONSTRUE "COMMAND" OR "REMOTELY MANAGING" IN A WAY THAT WOULD NOT EXCLUDE PROVISIONING.

MS. DEBRUIN:  CORRECT.  I'M JUST ASKING THAT THEY BE GIVEN THEIR PLAIN AND ORDINARY MEANING AND POINTING OUT THAT IT'S INAPPROPRIATE, MFORMATION'S CONSTRUCTION IS INAPPROPRIATE IN THAT IT EXCLUDES PROVISIONING.

THE COURT:  VERY WELL.  I UNDERSTAND.

MS. DEBRUIN:  IF WE COULD JUST SUM UP FOR THE COMMONLY UNDERSTOOD TERMS.

RIM'S POSITION IS THAT THESE TERMS DO NOT REQUIRE CONSTRUCTION.  THEY HAVE A COMMONLY UNDERSTOOD MEANING IN THE ART.

MFORMATION IS SEEKING TO IMPROPERLY LIMIT THESE THREE TERMS, "COMMAND," "SERVER," AND "REMOTELY MANAGING A WIRELESS DEVICE."

THEIR CONSTRUCTIONS ARE NOT SUPPORTED BY THE INTRINSIC OR THE EXTRINSIC EVIDENCE.  THERE'S NO BASIS IN THE CLAIMS FOR THIS LIMITATION, AND NO BASIS IN THE PATENT SPECIFICATION.

AND, INDEED, MFORMATION'S ATTEMPTS TO DO

THIS ARE CONTRADICTED DIRECTLY BY MFORMATION, THE COMPANY'S, OWN STATEMENTS.

I'D ASK TO MAKE AN ORAL MOTION TO SUPPLEMENT THE CLAIM CONSTRUCTION RECORD TO ADD EXHIBITS JJ THROUGH LL.  I WOULD FOLLOW UP WITH A WRITTEN SUBMISSION ON THAT, YOUR HONOR.

THE COURT:  VERY WELL.  SINCE THAT'S NEW, LET ME SEE WHAT YOUR OPPONENT SAYS ABOUT MY USING THESE ADDITIONAL EXHIBITS.

MS. DEBRUIN:  THANK YOU, YOUR HONOR.

MR. THAKUR:  YOUR HONOR, THOSE ARE FABULOUS DOCUMENTS.  I WOULD LIKE YOU TO REVIEW THEM CAREFULLY IF YOU WOULD.

THE COURT:  ALL RIGHT.  SO NO OBJECTION?

MR. THAKUR:  NONE WHATSOEVER.

THE COURT:  ALL RIGHT.

MR. THAKUR:  MAY I JUST SPEAK -- I PROMISE TO BE VERY BRIEF.  JUST A FEW COMMENTS.

THE COURT:  OKAY, TWO MINUTES.

MR. THAKUR:  TWO MINUTES.

THE COURT:  JOE MONTANA USED TO DO WONDERS IN TWO MINUTES.

MR. THAKUR:  I HOPE I LIVE UP TO THAT EXPECTATION.

FIRST OF ALL, THE DOCUMENTS WITH RESPECT

171

TO MFORMATION'S PRODUCT LINE ARE FANTASTIC.

WHAT HAPPENED IN THE BACKGROUND IN 2004, THEY WERE FOCUSSED ON THE RESEARCH IN MOTION DEVICE.

IF ANYONE WANTED TO DO IT, THEY WOULD BUY THIS MFORMATION SOFTWARE SEPARATELY, AND THEN RESEARCH IN MOTION WOULD SELL THE PRODUCT.

RESEARCH IN MOTION GOT -- THE CEO'S LOOKED AT OUR PRODUCT, LOOKED AT OUR SPECIFICATION, LOOKED AT OUR SOURCE CODE, AND THEN THEY SENT E-MAILS TO EACH OTHER SAYING, LET'S BUY THE COMPANY, TAKE CONTROL OF THE AGENT, IT'S A CRITICAL CUSTOMER APPOINTMENT, AND WE SHOULD -- AND WE'LL CONTROL THE CORPORATE MARKET.

WELL, THEY DID ALL OF THAT AND THEN THEY PREVAILED.

WHAT HAPPENED AFTER THAT WAS THE RIM MARKET, NO ONE USED THE RIM DEVICE, HAD TO COME TO US TO LICENSE DEVICE MANAGEMENT.

SO WHAT COULD THE COMPANY DO?  THE COMPANY WENT TO THE INDIVIDUAL PROVIDERS, THE CARRIERS, AND THE MOST PRESTIGIOUS CARRIERS IN THE WORLD, VERIZON WIRELESS, T-MOBILE.

WHAT THEY SAID WAS, YES, WE WILL TAKE YOUR SOFTWARE AND WE'LL LICENSE IT AND PROVIDE IT

AS AN ADD-ON TO PEOPLE.

SO THE POINT IS WE'VE MANAGED TO SURVIVE DESPITE THE FACT THAT THE ENTERPRISE MARKET WAS COMPLETELY ROBBED FROM US.

NUMBER TWO -- MY TWO MINUTES -- NUMBER TWO, THE IDEA THAT OVER-THE-AIR PROVISIONING IS SOMETHING TO PROMOTE MANAGEMENT, THE ANSWER IS I2001.  EVERY DEVICE IN THE WORLD WAS OVER-THE-AIR PROVISIONING AND THE EXAMINER MUST HAVE KNOWN THAT.

THE DIFFERENCE WAS WE PROVIDE A PRODUCT, AND OUR PRODUCT INCLUDES OVER-THE-AIR PROVISIONING AND THE REMOTE MANAGEMENT.  IT'S A BROAD CAPABILITY.

WHY SHOULD I MAKE MY EMPLOYEES PROVISION THE DEVICE AND THEN COME IN TO OUR I.T. PERSON AND DO THE REMOTE MANAGEMENT?  WHY DON'T I GIVE IT TO MY I.T. PERSON IN A SINGLE SOFTWARE REVISION?  IT'S REMOTE MANAGEMENT.  SO I THINK THAT'S ONE.

THE SINGLE MOST IMPORTANT COMMENT I THINK I WANT TO MAKE IS MS. DEBRUIN SAID THE WORD ALL AND THE 1:1 RELATIONSHIP TOGETHER IN THE MAILBOX IS CRITICAL TO THEIR INTERPRETATION.

I'M SWITCHING TO THE MAILBOX DEFINITION.

THE ANSWER IS THE COMMENT MADE WAS THAT IT'S INCONSISTENT WITH THE LANGUAGE OF THE

173

SPECIFICATION.

AND I BELIEVE EARLIER IN THE RECORD I READ THE LANGUAGE THAT SPECIFICALLY IN THE SPECIFICATION SAYS THERE DOES NOT NEED TO BE A 1:1 CORRESPONDENCE BETWEEN THE MAILBOX AND THE DEVICES, AND I'LL READ THAT FOR THE DEVICE -- FOR THE RECORD. "MAILBOX 314 STORES COMMANDS THAT ARE TO BE DELIVERED TO REMOTELY MANAGED DEVICES SO THAT THE DEVICES CAN RETRIEVE COMMANDS."

ACCEPTING RIM'S PROPOSED CONSTRUCTION WOULD VIOLATE THE EXPRESS LANGUAGE IN, IN THE SPECIFICATION.

FINALLY, THE NEXT COMMENT WAS MADE --

THE COURT:  I OFTEN FIND THAT I CAN VIOLATE THE LANGUAGE OF A WRITTEN DESCRIPTION, BUT IT'S VIOLATING THE LANGUAGE OF THE CLAIM THAT I SHOULDN'T DO, AND IF I DO INTERPRET THE CLAIMS IN A WAY THAT AN EMBODIMENT CANNOT PERFORM IT, THAT I HAVE TO WORRY ABOUT.

AND SO I -- THOSE ARE, THOSE ARE PRACTICAL CONSIDERATIONS THAT I DO HAVE IN MIND.

MR. THAKUR:  OKAY.  WELL, THANK YOU, YOUR HONOR.

THE POINT BEING IS THAT THAT WAS EXPRESSLY IN THE SPECIFICATION.

174

THE OTHER COMMENT THAT WAS MADE WAS THAT ALL THE CONTENTS OF THE MAILBOX NEED TO BE REMOVED, AND I APPRECIATE COUNSEL'S COLLOQUIAL COMMENT THAT WHEN, YOU KNOW, WHEN THE U.S. MARSHAL ASKS US TO DUMP THE CONTENTS, SHE WOULD EXPECT TO DO ALL.

THAT IS COMMONLY THE CASE.  I DON'T DISAGREE WITH THAT.

BUT TO IMPORT THAT RESTRICTION INTO THE CLAIM REQUIRES YOU TO VIOLATE THE PRINCIPLE OF CLAIM DIFFERENTIATION WHEN EIGHT CLAIMS IN THE PATENT EXPRESSLY USE THE WORD "ALL" IN MANY INSTANCES.

IN RIM'S OWN PATENTS, WHEN THEY WANT TO SAY "ALL CONTENTS," THEY SAY "ALL CONTENTS," "ENTIRE CONTENTS," "COMPLETE CONTENTS."  THEY DON'T JUST SAY "CONTENTS."

SO TO INTERPRET THE WORD "CONTENTS" TO MEAN ALL CONTENTS WOULD REQUIRE YOU TO VIOLATE THE PRINCIPLE OF CLAIM CONSTRUCTION AND WOULD REQUIRE YOU TO IGNORE RIM'S OWN PATENTS ON THE SUBJECT MATTER WITH RESPECT TO THE CONTENT.

THE COURT:  I INTEND TO IGNORE RIM'S OWN PATENTS WITH RESPECT TO THESE.

MR. THAKUR:  OKAY.  AND SO THE OTHER FINAL QUESTION WAS, YOU KNOW, THEY DISCUSSED WITH

175

RESPECT TO THE SIGNALING CHANNEL ABOUT WHETHER IT COULD BE DEDICATED OR DESIGNATED.

YOUR HONOR, WE'RE FINE WITH THE WORD "DESIGNATED."  THE ISSUE IS NOT ABOUT "DESIGNATED" VERSUS "DEDICATED."

THE ISSUE IS IT CANNOT BE EXCLUSIVE.  IT CAN BE DESIGNATED FOR THE PURPOSES OF A COMMUNICATION.  IT'S A MAY, NOT A MUST.

AND SO IF THEY ARE WILLING TO ACCEPT "DESIGNATED" FOR THE PURPOSES OF, OF DELIVERING DATA AND VOICE, THAT'S PERFECTLY FINE WITH US, YOUR HONOR.

THE COURT:  THANK YOU.

I HOPE THAT MY COMMENTS ARE NOT TAKEN AS FINAL, BECAUSE I OFTEN WILL SPEAK DURING THE COURSE OF THESE PROCEEDINGS ABOUT THINGS THAT OCCUR TO ME WITHOUT HAVING GIVEN THEM THE KIND OF THOUGHT THAT -- AND DISCIPLINE AS I TRY TO OBSERVE WHEN I CAME TO CLAIM CONSTRUCTION ITSELF.

I REALLY APPRECIATE YOU ALL TAKING THIS TIME.  I APOLOGIZE AGAIN THAT I COULDN'T GIVE YOU -- THAT I HAD TO INTERRUPT YOU, BUT OTHERWISE I THINK I HAVE A HANDLE ON THIS.

THESE ARE MATTERS THAT SHOULD BE PURSUANT TO A SCHEDULE WE'VE ALREADY GIVEN YOU.  UNLESS I

HEAR FROM YOU OTHERWISE, I EXPECT THAT IN DUE COURSE I'LL TAKE MY FIRST SHOT AT GIVING YOU SOME DEFINITIONS.  I DON'T KNOW THAT I'LL GET TO ALL OF THEM.

BUT YOU'VE ACTUALLY DONE A VERY GOOD JOB, I WANT TO COMMEND BOTH SIDES, OF PACKAGING THE QUESTIONS SO THAT I UNDERSTAND THE OPTIONS THAT YOU SUGGEST THAT I SHOULD TAKE BETWEEN YOUR TWO SIDES AND THE RELATIONSHIPS BETWEEN THE CLAIM TERMS. THAT'S VERY HELPFUL.

AND SO IT DOES SEEM TO ME THAT YOU'VE MADE MY JOB SOMEWHAT EASIER.

I REALLY APPRECIATE THE SLIDES AND THE ANALYSIS THAT GOES BEHIND THOSE SLIDES.

I KNOW THAT ALTHOUGH YOU'RE THE LAWYERS HERE SPEAKING IN COURT, YOU ARE SUPPORTED BY A STAFF OF PEOPLE WHO ASSIST YOU IN DOING THAT, AND I WANT YOU TO CARRY MY COMMENTS BACK TO YOUR STAFFS ABOUT HOW MUCH THE COURT APPRECIATES THIS.

I'VE ACTUALLY WORKED BEHIND THE SCENES DOING THE COPYING, DOING THE KINDS OF THINGS THAT PEOPLE DO THAT OFTEN THEY DON'T UNDERSTAND HOW IMPORTANT IT IS TO THE FINAL PRODUCT, AND I WANT YOU TO CARRY THAT BACK TO THEM SO THAT THEY SHARE THE COURT'S APPRECIATION.

UNLESS THERE'S SOMETHING ELSE, WE'LL ADJOURN.

MR. THAKUR:  NO.  THANK YOU.

THE COURT:  THANK YOU VERY MUCH.

MR. COHEN:  THANK YOU YOUR HONOR.

MS. DEBRUIN:  THANK YOU, YOUR HONOR.

(WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

178

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED:  NOVEMBER 25, 2009