UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


| | | |
|---|---|---|
| MFORMATION TECHNOLOGIES, INC., A DELAWARE CORPORATION, | ) ) ) | C-08-04990 JW<br>SAN JOSE, CALIFORNIA |
| PLAINTIFF, | ) ) | OCTOBER 25, 2010 |
| VS. | ) ) | PAGES 1-59 |
| RESEARCH IN MOTION, LIMITED, A CANADIAN CORPORATION AND RESEARCH IN MOTION CORPORATION, A DELAWARE CORPORATION, | ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) | |


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JAMES WARE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:   FOLEY & LARDNER
                     BY:  AMAR L, THAKUR AND
                          SHAWN E. MCDONALD
                     11250 EL CAMINO REAL, SUITE 200
                     SAN DIEGO, CALIFORNIA  92130

                     BY:  GINA A. BIBBY AND
                          JUSTIN E. GRAY
                     975 PAGE MILL ROAD
                     PALO ALTO, CALIFORNIA  94304

ALSO PRESENT:        RAKESH KUSHWAHA, RICK FLORSHEIM
                     VIJAY MADISETTI, TODD DELAUGHTER

APPEARANCES CONTINUED ON NEXT PAGE

OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                         CERTIFICATE NUMBER 9595

APPEARANCES (CONTINUED)


FOR THE DEFENDANT:   KIRKLAND & ELLIS
                     BY:  LINDA S. DEBRUIN
                          MEREDITH ZINANNI AND
                          CARL J. BLICKLE
                     300 NORTH LASALLE STREET
                     CHICAGO, ILLINOIS  60654

                     BY:  MARC H. COHEN
                     950 PAGE MILL ROAD
                     PALO ALTO, CALIFORNIA  94304

ALSO PRESENT:        ABDUL ZINDANI

SAN JOSE, CALIFORNIA          OCTOBER 25, 2010

P R O C E E D I N G S

(WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS WERE HELD:)

THE CLERK:  CALLING CASE NUMBER 08-4990, MFORMATION TECHNOLOGIES, INC., VERSUS RESEARCH IN MOTION, ON FOR DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

30 MINUTES EACH SIDE FOR ALL MOTIONS.

PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

MS. DEBRUIN:  GOOD MORNING, YOUR HONOR. LINDA DEBRUIN ON BEHALF OF DEFENDANT RESEARCH IN MOTION.

WITH ME TODAY ARE MARK COHEN, MEREDITH ZINANNI, AND CARL BLICKLE.

MR. COHEN:  GOOD MORNING, YOUR HONOR.

THE COURT:  GOOD MORNING ALL.

MR. THAKUR:  GOOD MORNING, YOUR HONOR. AMARDEEP THAKUR ON BEHALF OF THE PLAINTIFF, MFORMATION TECHNOLOGIES.

WITH ME IS DR. MADISETTI, HE'S ATTENDING PROFESSOR AT GEORGIA TECH; ALSO JOINING ME ARE GINA BIBBY, SHAWN MCDONALD, AND JUSTIN GRAY.

ALSO PRESENT IN THE COURTROOM, YOUR

3

HONOR, IS DR. KUSHWAHA, WHO'S THE INVENTOR OF THE PATENT; AND TODD DELAUGHTER, WHO'S THE CEO OF MFORMATION; AND MY COLLEAGUE, RICK FLORSHEIM.

THE COURT:  ALL RIGHT.  WITH ALL THESE PEOPLE PRESENT, WE OUGHT TO BE ABLE TO SETTLE THIS CASE.

VERY WELL.  THESE ARE DEFENSE MOTIONS, SO MS. DEBRUIN.

MS. DEBRUIN:  YES, YOUR HONOR.

WE HAVE FOUR MOTIONS PENDING BEFORE THE COURT:  A MOTION FOR INVALIDITY; A MOTION FOR NONINFRINGEMENT; AND ANOTHER MOTION FOR NONINFRINGEMENT RELATED TO CERTAIN METHOD CLAIMS; AND A FOURTH MOTION FOR NO WILLFUL INFRINGEMENT.

I HAVE SOME SLIDES TO HAND UP TO THE COURT (HANDING).

YOU CAN GIVE A SET TO THE LAW CLERKS.

THE CLERK:  DO YOU HAVE EXTRAS?

MS. DEBRUIN:  WE DO.

THE COURT:  I TAKE IT THAT YOU'VE GIVEN A SET TO YOUR OPPONENT.

MR. THAKUR:  YES.

MS. DEBRUIN:  YES, SIR.

THE COURT:  ALL RIGHT.  GO AHEAD.

MS. DEBRUIN:  YOUR HONOR, I'D LIKE TO

4

START WITH THE MOTION FOR INVALIDITY.

THERE'S ONLY ONE SINGLE LEGAL QUESTION THAT NEEDS TO BE ADDRESSED.  THERE'S NO FACTUAL ISSUES, JUST ONE LEGAL QUESTION.

AND THAT QUESTION IS, DOES THE ENTIRE DELIVERING STEP NEED TO BE PERFORMED WITHOUT A REQUEST FROM THE WIRELESS DEVICE?

THE ANSWER TO THAT QUESTION IS YES.

AND THEN YOU WILL SEE THAT THE CLAIM, THE CLAIMS, ARE NONSENSICAL BECAUSE YOU CANNOT PERFORM ALL OF THE DELIVERING STEPS WITHOUT A REQUEST FROM THE WIRELESS DEVICE.

AND WHAT I'D LIKE TO DO NOW IS LOOK AT THE CLAIM, BECAUSE ALL THAT YOU HAVE TO DO IS LOOK AT THE CLAIM TO SEE THAT YOU SHOULD GRANT RIM'S MOTION.

FIRST OF ALL, WHAT WE'RE TALKING ABOUT, AND I HAVE IT HIGHLIGHTED ON THE SCREEN, WE'RE TALKING ABOUT THIS CLAIM LANGUAGE THAT BEGINS "WITHOUT A REQUEST FROM THE WIRELESS DEVICE, PERFORMING THE STEPS OF."

AND THEN IT HAS THIS LANGUAGE OF PLACING A COMMAND AND DELIVERING THE COMMAND.

NOW, AS A FIRST MATTER, THIS IS TALKING ABOUT PERFORMING THE STEPS, PLURAL, NOT SINGULAR,

STEPS.  SO YOU HAVE TO PERFORM AT LEAST TWO STEPS, PLACING AND DELIVERING.

ALSO, THE PUNCTUATION.  THERE'S A SEMICOLON BEFORE THE STATEMENT OF "WITHOUT A REQUEST FROM THE WIRELESS DEVICE," AND THEN THIS ENTIRE SECTION IS SET OFF BY ANOTHER SEMICOLON.

SO WHAT WE'RE TALKING ABOUT IS THIS "WITHOUT A REQUEST FROM THE WIRELESS DEVICE, PERFORMING" THESE STEPS, PLACING A COMMAND AND DELIVERING THE COMMAND.

NOW, PERFORMING.  THE CLAIM SAYS "WITHOUT A REQUEST FROM THE WIRELESS DEVICE, PERFORMING THE STEPS OF."  IT DOESN'T SAY "STARTING," IT DOESN'T SAY "INITIATING," IT DOESN'T SAY "TRIGGERING."  IT SAYS "PERFORMING."

THAT MEANS YOU HAVE TO DO THE STEPS.

AND TO PERFORM THE STEP OF DELIVERING THE COMMAND TO THE WIRELESS DEVICE, YOU HAVE TO DO THREE THINGS.  THERE'S THREE SUBSTEPS:  ONE, ESTABLISHING A SECTION; TWO, AND THIS IS OUR PROBLEM ONE, RECEIVING A REQUEST FOR THE CONTENTS OF THE MAILBOX FROM THE WIRELESS DEVICE; AND, THREE, TRANSMITTING THE CONTENTS OF THE MAILBOX TO THE WIRELESS DEVICE.

ALL OF THOSE HAVE TO BE DONE IN ORDER TO

6

DELIVER THE COMMAND.

SO THE CLAIM LANGUAGE REQUIRES THAT EVERYTHING IN THE DELIVERING STEP BE PERFORMED WITHOUT A REQUEST FROM THE WIRELESS DEVICE.

AND GIVEN THAT THAT'S THE CASE, THE CLAIM IS HOPELESSLY INVALID.

NOW, WHAT DOES MFORMATION SAY?

MFORMATION'S ARGUMENTS ARE ALL FLAWED BECAUSE THEY ALL DEPEND ON A MISSTATEMENT OF THIS CLAIM LANGUAGE, THIS SIMPLE CLAIM LANGUAGE.

FIRST OF ALL, MFORMATION SAYS THAT, NO, THERE'S JUST THIS TRIGGERING STEP THAT YOU HAVE TO PERFORM, AND THEN YOU DON'T HAVE TO PERFORM THE OTHER STEPS NECESSARILY WITHOUT A REQUEST FROM THE WIRELESS DEVICE.

THERE'S ABSOLUTELY NO BASIS FOR THAT IN THE CLAIM.

AND, INDEED, MFORMATION SUBMITS A DECLARATION FROM DR. KUSHWAHA WHERE DR. KUSHWAHA SAYS, CONTRARY TO WHAT THE CLAIM SAYS, THAT WHAT THE CLAIM -- WHAT HE SAYS THE CLAIM SAYS IS THAT WITHOUT A REQUEST FROM THE WIRELESS DEVICE, YOU JUST NEED TO PERFORM THIS ONE STEP.

BUT AS WE JUST LOOKED AT THE CLAIM LANGUAGE, YOUR HONOR, YOU HAVE TO PERFORM STEPS,

NOT JUST A SINGLE STEP.

AND MFORMATION BASES THEIR MOTION ON WHAT DR. KUSHWAHA, THE NAMED INVENTOR ON THE PATENT, SAYS THE CLAIMS MEAN, BUT HE GOT IT WRONG.

ANOTHER PLACE THAT HE GOT IT WRONG IS HE MISREPRESENTS THE VERY CLAIM LANGUAGE THAT CAUSES THE MIS -- THAT CAUSES THE PROBLEM.  HE MISREPRESENTS THE LANGUAGE WHERE THE CONTRADICTION COMES IN.

AND WHAT HE SAYS IS HE SAYS THAT, THAT THAT STEP WE WERE LOOKING AT IN THE DELIVERING STEP, THIS "RECEIVING A REQUEST FOR THE CONTENTS OF THE MAILBOX FROM THE WIRELESS DEVICE," HE SAYS THAT WHAT THAT STEP IS IS A NON-TRIGGERING PULL STEP OF RECEIVING CONTENTS OF A MAILBOX.

THAT'S NOT WHAT THE LANGUAGE SAYS AT ALL, YOUR HONOR.

MFORMATION AND DR. KUSHWAHA CAN'T SIMPLY ERASE THE CONTRADICTION IN THE CLAIMS BY NOT LOOKING AT THE LANGUAGE OF THE CLAIM.

MFORMATION ALSO ARGUES THAT WIRELESS DEVICES COULD BE BOTH PUSH AND PULL.

NOW, THE CLAIMS DON'T USE THE LANGUAGE "PUSH" AND "PULL," BUT WHAT A PULL DEVICE WOULD BE IS A DEVICE THAT, WITHOUT RECEIVING A REQUEST

8

FROM -- WELL, I'M SORRY.  BACKWARDS.

WHAT A PULL DEVICE WOULD BE IS A DEVICE THAT REQUESTS INFORMATION FROM THE SERVER, SO IT HAS TO ASK FOR THE INFORMATION, AND THEN THE INFORMATION IS SENT TO IT.

THAT'S THE LANGUAGE WE HAVE IN THE CLAIM OF "RECEIVING A REQUEST FOR THE CONTENTS OF THE MAILBOX FROM THE WIRELESS DEVICE."  THE SERVER RECEIVES A REQUEST FOR THE CONTENTS FROM THE WIRELESS DEVICE.

A PUSH DEVICE, ON THE OTHER HAND, MUST RECEIVE -- MUST GET INFORMATION WITHOUT GIVING A REQUEST.

SO HERE, WITHOUT A REQUEST FROM THE WIRELESS DEVICE -- LET'S IGNORE THIS PROBLEM STATEMENT -- BUT IF YOU SIMPLY HAVE, "WITHOUT A REQUEST FROM THE WIRELESS DEVICE," TRANSMITTING THE CONTENTS OF THE MAILBOX TO THE WIRELESS DEVICE, THEN THAT WOULD BE A PUSH SITUATION BECAUSE THE WIRELESS DEVICE WOULDN'T HAVE ASKED FOR INFORMATION, BUT THE INFORMATION WOULD BE SENT TO IT.

HERE WE HAVE A HOPELESSLY CONTRADICTORY CLAIM BECAUSE ON THE ONE HAND, THIS HAS TO BE DONE WITHOUT A REQUEST; BUT WITHIN HERE, THERE'S BEEN

9

INSERTED LANGUAGE THAT HAS THIS CONTRADICTORY PULL OR RECEIVING A REQUEST LIMITATION.

NOW, MFORMATION ARGUES THAT YOU COULD BUILD A DEVICE THAT COULD BE BOTH PUSH AND PULL.

BUT THAT MISSES THE QUESTION, YOUR HONOR.

THE QUESTION HERE IS WHETHER YOU COULD BUILD A DEVICE THAT ACTUALLY PRACTICES THIS CLAIM, AND YOU CAN'T BECAUSE OF THE CONTRADICTORY LIMITATION.

IF YOU MISREAD THE CLAIM, AS MFORMATION IS DOING, PERHAPS YOU COULD BUILD A DEVICE.

BUT IF YOU READ THE CLAIM AS IT'S WRITTEN, YOU CAN'T BUILD A DEVICE THAT PRACTICES IT BECAUSE THIS IS HOPELESSLY CONTRADICTORY.

FINALLY, MFORMATION CANNOT AVOID SUMMARY JUDGMENT BY BLAMING IT ON THE PATENT OFFICE.  IF THAT WERE THE CASE, IF THE CASE WERE IF THE PATENT OFFICE DIDN'T CATCH A MISTAKE IN A PATENT, THAT WAS THE PATENT OFFICE'S FAULT, THEN YOUR HONOR COULD NEVER INVALIDATE ANY CLAIMS UNDER SECTION 101 OR 112.  THAT SIMPLY ISN'T THE LAW.

AND YOU MIGHT WONDER, LOOKING AT THIS CLAIM, HOW IT GOT TO BE THE WAY THAT IT IS.  WHY WOULD SOMEONE DRAFT A CLAIM THAT HAS THESE OBVIOUSLY CONTRADICTORY LIMITATIONS?

10

WE SET OUT IN OUR OPENING BRIEF AND EXPLAINED HOW THIS CLAIM CAME TO BE, AND I THINK IT'S HELPFUL TO BRIEFLY STEP THROUGH THAT.

IN THE SPECIFICATION, THERE'S LANGUAGE THAT TALKS ABOUT PUSH AND THERE'S LANGUAGE THAT TALKS ABOUT PULL.

AND WE HAVE A SLIDE FOR THAT RIGHT NOW UP ON THE BOARD.

AND WHAT WE'VE DONE THROUGHOUT THIS SLIDE, YOU'LL SEE, IS WE'VE USED YELLOW TO HIGHLIGHT PULL AND WE'VE USED BLUE TO TALK ABOUT PUSH.

SO THE PATENT SPECIFICATION EXPLAINS THAT THIS COULD APPLY TO A PULL DEVICE OR TO A PUSH DEVICE.

IMPORTANTLY, THE PATENT SPEC NEVER SAYS THAT YOU COULD HAVE A SYSTEM THAT WAS BOTH.  IT TALKS ABOUT EITHER A PULL OR A PUSH, BUT NOT BOTH.

NOW, IN THE ORIGINAL CLAIMS, AS THEY WERE DRAFTED IN THE APPLICATION THAT WAS FILED, WE HAVE ORIGINAL CLAIM 12, AND ORIGINAL CLAIM 12 WAS DRAFTED WITHOUT ANY PUSH OR PULL LIMITATIONS.  IT DOESN'T HAVE THE PROBLEM THAT'S AT ISSUE HERE ON THE SUMMARY JUDGMENT MOTION.

HOWEVER, THAT CAME ABOUT IN THE NEXT

OFFICE ACTION.  THERE WERE DEPENDENT CLAIMS TO CLAIM 12.  THERE WAS A CLAIM 13 AND A CLAIM 16.  CLAIM 13 WAS A PULL CLAIM AND CLAIM 16 WAS A PUSH CLAIM.

WHAT HAPPENED IN THE RESPONSE TO THE FIRST OFFICE ACTION IS THAT THE -- MFORMATION HAD TO ADD LANGUAGE TO THE INDEPENDENT CLAIMS.  THEY NEEDED TO GET AROUND PRIOR ART THAT THE EXAMINER HAD CITED, AND WHAT THEY DID IS THEY ADDED THE PUSH LIMITATION THAT SAYS, "WITHOUT A REQUEST FROM THE WIRELESS DEVICE, PERFORMING THE STEPS OF."

THEY ADDED THAT LANGUAGE TO ALL THE INDEPENDENT CLAIMS.

AND WE HAVE A SLIDE WITH FIRST AMENDED CLAIM 12 SHOWING THAT LANGUAGE.

THAT CLAIM STILL DOESN'T SUFFER FROM THE PROBLEM THAT WE HAVE HERE.

WHERE THE PROBLEM COMES UP IS MFORMATION FAILED TO CANCEL DEPENDENT CLAIM 13, WHICH WAS THE PULL CLAIM.

SO NOW DEPENDENT CLAIM 13 HAS BOTH THE PUSH REQUIREMENT, THE BLUE, AND THE YELLOW.

THE MATTER GETS WORSE AFTER THE RESPONSE TO THE SECOND OFFICE ACTION BECAUSE, AGAIN, IN RESPONSE TO ADDITIONAL PRIOR ART REJECTIONS FROM

12

THE EXAMINER, MFORMATION INCORPORATES THE LANGUAGE FROM THE DEPENDENT CLAIM, CLAIM 13, INTO CLAIM 12.

AND NOW WE HAVE INDEPENDENT CLAIM 12, IT'S NOW BEEN ISSUED AS, ULTIMATELY AS 9, BUT INDEPENDENT CLAIM 12 HAS BOTH A PUSH AND A PULL REQUIREMENT.

AND THAT SIMPLY DOESN'T WORK.  YOU CAN'T DO BOTH AT THE SAME TIME.

THE COURT:  LET ME INTERRUPT YOUR ARGUMENT AND HEAR FROM YOUR OPPONENT.

MR. THAKUR:  YOUR HONOR, MY COLLEAGUE, SHAWN MCDONALD, IS GOING TO ADDRESS THIS.

THE COURT:  VERY WELL.

MR. MCDONALD:  GOOD MORNING, YOUR HONOR. SHAWN MCDONALD FOR PLAINTIFF.

I HAVE SOME OVERHEAD SLIDES FOR THE COURT.  MAY I APPROACH?

THE COURT:  CERTAINLY.

MR. MCDONALD:  (HANDING.)

ONE MORE COPY?

SO, YOUR HONOR, MS. DEBRUIN HAS URGED THIS COURT THAT ALL YOU HAVE TO DO IS LOOK AT THE CLAIMS.

MFORMATION HARDLY AGREES, AND THAT'S WHAT THE PATENT OFFICE DID THREE TIMES.

BUT TO SORT OF TAKE MS. DEBRUIN'S ORDER, TO ADDRESS HER ARGUMENTS IN REVERSE ORDER, THE PROCEEDINGS BEFORE THE PATENT OFFICE, RIM'S DESCRIPTION OF THEM, IT'S LIKE LISTENING TO A BAD MOVIE REVIEW OF A SPY THRILLER.  THIS IS PURE SPECULATION ON RIM'S PART.  I CAN TELL YOU, AND MFORMATION HAS SHOWN IN ITS BRIEFING, THAT IS NOT WHAT HAPPENED.

WHAT HAPPENED WAS, IF YOU LOOK -- THE PTO CONSIDERED THIS LANGUAGE A TOTAL OF THREE TIMES. THERE WAS AN EXAMINER INTERVIEW IN JANUARY OF 2005 WHERE THE EXAMINER, INVENTORS DR. KUSHWAHA AND MR. NATH, ALONG WITH THE PATENT ATTORNEY REPRESENTING MFORMATION, MET WITH THE EXAMINER IN PERSON AND PROPOSED ADDING THE LIMITATION "WITHOUT RECEIVING THE REQUEST FROM THE WIRELESS DEVICE." AGREEMENT WAS REACHED THAT THAT AMENDMENT WOULD BE ADDED TO THE CLAIMS.

MFORMATION DID THAT ON JANUARY 12TH, 2005.  THEY SUBMITTED THEIR AMENDMENT.  THIS IS EXHIBIT C TO RIM'S MOTION.

CONTRARY TO WHAT RIM IS URGING THE COURT TO BELIEVE, THE INCLUSION OF THIS PUSH LANGUAGE, WHAT HAS BEEN DESCRIBED AS PUSH LANGUAGE, WAS NOT THE BASIS OF ALLOWING THE CLAIMS.

14

WHAT THE PTO DID WAS AN ADDITIONAL SEARCH IN THE PRIOR ART AND CAME BACK TO PLAINTIFFS, MFORMATION, AND SAID THESE CLAIMS ARE NOT ALLOWED UNLESS THEY INCLUDE THE LIMITATION, "WHEREIN THE CONNECTION IS BASED ON A THRESHOLD CONDITION."

SO WHAT DOES MFORMATION DO?  ON JULY 6TH, THEY AMEND THEIR CLAIMS ADDING THAT LIMITATION TO ALL INDEPENDENT CLAIMS.

NOW, WHY THIS IS IMPORTANT IS BECAUSE AT EACH OF THESE STEPS, THE PTO LOOKED AT THE LANGUAGE OF THE CLAIMS AND SAW NO PROBLEM WITH THEM.

RIM WOULD HAVE YOU BELIEVE THAT A PTO EXAMINER, ONE OF AT LEAST ORDINARY SKILL IN THE ART LOOKING AT THESE CLAIMS, SOMEHOW MISSED THE FACT THAT THEY WERE COMPLETELY INCOMPREHENSIBLE AND IMPOSSIBLE.

BUT, NO, THE PTO CONSIDERED THESE CLAIMS A TOTAL OF THREE TIMES AND ALLOWED THEM TO ISSUE.

THE COURT:  IF -- IS THIS A CLAIM CONSTRUCTION ISSUE?  IT SEEMS TO ME THAT WHAT DIVIDES THE TWO SIDES IS THE MEANING OF THE DELIVERING STEP; NAMELY, WHETHER OR NOT THE DELIVERING STEP IS THE ENTIRE PARAGRAPH OR ONLY THE FIRST CLAUSE OF THE DELIVERING PARAGRAPH.  IS THAT A CLAIM CONSTRUCTION ISSUE?  OR DO YOU --

15

MR. MCDONALD:  THAT WOULD BE -- I'M SORRY, YOUR HONOR.

THE COURT:  OR DO YOU CONTEND THAT IT'S CLEAR AS TO WHAT THAT DELIVERING STEP CONSISTS OF?

MR. MCDONALD:  I CONTEND THAT IT'S VERY CLEAR WHAT THAT DELIVERING STEP CONSISTS OF.

IF YOU LOOK AT THE LANGUAGE OF THE CLAIM, AS MS. DEBRUIN STATED, THE "WITHOUT A REQUEST FROM THE WIRELESS DEVICE" DOES ADDRESS THESE TWO STEPS.

BUT WITHIN THE DELIVERING STEP, YOU DELIVER THE COMMAND TO THE WIRELESS DEVICE FROM THE SERVER BY FIRST ESTABLISHING A CONNECTION WITH THE WIRELESS DEVICE.

THE ADDITIONAL REQUEST IS FOR CONTENTS OF THE MAILBOX, WHICH IS HAPPENING RIGHT HERE.

THE DEVICE IS NEVER REQUESTING THAT YOU PERFORM BOTH STEPS.  ALL THE DEVICE REQUESTS IS THAT WHATEVER IS IN THE MAILBOX, THAT COMMAND, GETS SENT TO THE DEVICE.

THE COURT:  WELL, WHAT'S THE TRANSMITTING STEP?  OR SUBSTEP?

MR. MCDONALD:  SURE.

THE COURT:  WHAT HAPPENS THERE?

MR. MCDONALD:  SURE.  SO ONCE YOU HAVE THE CONNECTION AND THE DEVICE HAS REQUESTED FROM

16

THE SERVER THE COMMAND, THEN THE TRANSMITTING SUBSTEP OCCURS AND THAT'S WHERE THE COMMAND IS SENT TO THE DEVICE.

THE COURT: SO IS THE TRANSMITTING SUBSTEP NECESSARY TO PERFORM THE DELIVERING STEP?

MR. MCDONALD: WELL, YES, BECAUSE THE COMMAND WOULDN'T BE DELIVERED WITHOUT TRANSMISSION.

THE COURT: AND SO IS THE RECEIVING SUBSTEP NECESSARY TO PERFORM THE DELIVERING STEP?

MR. MCDONALD: YES, IT IS, YOUR HONOR.

THE COURT: SO IN ORDER TO PERFORM THE DELIVERING STEP, YOU NEED TO -- THE "BY" MEANS YOU HAVE TO -- BY ESTABLISHING A CONNECTION, RECEIVING THE REQUEST, AND TRANSMITTING THE CONTENTS, ALL THREE ARE NECESSARY BEFORE THE DELIVERING STEP IS PERFORMED?

MR. MCDONALD: BEFORE IT IS COMPLETED, YOUR HONOR, THAT'S TRUE.

THE COURT: WELL, COMPLETE THE PERFORMANCE.

NOW, SO WHY IS -- HOW DO I RECONCILE RECEIVING A REQUEST WITH THE PREAMBLE WITHOUT A REQUEST?

MR. MCDONALD: SURE. BECAUSE ONE OF SKILL IN THE ART WOULD CLEARLY DISCERN THAT THIS

17

REQUEST --

THE COURT:  YES.

MR. MCDONALD:  -- IS A VERY NARROW REQUEST.  IT'S SPECIFICALLY A REQUEST FOR CONTENTS OF THE MAILBOX.

IT IS NOT A REQUEST THAT THESE TWO STEPS OCCUR.

THAT IS WHAT HAS BEEN SPECIFIED AS BEING PERFORMED WITHOUT ANY REQUEST.

THE COURT:  WELL, THAT'S WHY I ASKED WHETHER IT'S NECESSARY.

IN OTHER WORDS, THE DELIVERING STEP CAN BE PERFORMED WITHOUT THAT SUBSTEP OF RECEIVING A REQUEST?

MR. MCDONALD:  NOT IN CLAIM 9.

THE COURT:  SAY AGAIN.

MR. MCDONALD:  IT CANNOT BE PERFORMED TO COMPLETION IN CLAIM 9 WITHOUT A RECEIVING REQUEST.

THE COURT:  WELL, WHAT DOES IT MATTER AS TO HOW SPECIFIC IT IS, THEN?  IF IT MUST BE PERFORMED, IT MUST BE PERFORMED.

MR. MCDONALD:  WELL --

THE COURT:  AND IF IT MUST BE PERFORMED, THEN THE JOB OF THE COURT IN CONSTRUING THE CLAIM IS TO FIGURE OUT WHETHER OR NOT THAT REQUEST IS

18

INCONSISTENT WITHOUT -- WITH THE PREAMBLE OF WITHOUT A REQUEST.

AND SO THAT'S WHAT I'M TRYING TO UNDERSTAND IS HOW DO I RECONCILE THE TWO?

MR. MCDONALD:  SURE.  SO THE CASE LAW IS VERY CLEAR THAT WHEN YOU HAVE A TERM USED IN SEVERAL PLACES WITHIN A CLAIM, YOU LOOK TO THE SURROUNDING CONTEXT OF THE CLAIM.

AND HERE THERE'S NO QUALIFICATION ON "REQUEST."  IT'S REFERRING -- THE QUALIFICATION REALLY IS THAT THERE'S NO REQUEST FROM THE WIRELESS DEVICE TO PERFORM PLACING A COMMAND --

THE COURT:  IT DOESN'T SAY "TO PERFORM." IT SAYS WITHOUT A REQUEST, I PLACE A COMMAND. RIGHT?

MR. MCDONALD:  CORRECT.

THE COURT:  WITHOUT A REQUEST, I DELIVER THE COMMAND.  RIGHT?

MR. MCDONALD:  WHAT ONE OF SKILL IN THE ART -- AND YOU HAVE TO THINK IN TERMS OF THE PUSH AND PULL.  THIS IS REFERRING TO A COMMAND FOR REMOTE MANAGEMENT.

THE COURT:  YES.

MR. MCDONALD:  ONE OF SKILL IN THE ART WOULD UNDERSTAND THAT YOU DON'T HAVE A REQUEST FROM

19

THE WIRELESS DEVICE TO PERFORM REMOTE MANAGEMENT.

THE COURT:  YOU DON'T NECESSARILY NEED IT, BUT YOU COULD USE IT.

IN OTHER WORDS, THE INVENTOR COULD SAY, "ALL RIGHT.  CLAIM 1, I DON'T DO ANY OF THIS.  CLAIM 9, I DO THIS."  BECAUSE CLAIM 1 ESSENTIALLY PARALLELS THAT SAME STRUCTURE, BUT DOESN'T HAVE A RECEIVE AND REQUEST; CORRECT?

MR. MCDONALD:  THAT'S EXACTLY CORRECT, YOUR HONOR.

AND THAT EVEN FURTHER VALIDATES THE PRESUMPTION OF VALIDITY BECAUSE THE PTO EXAMINER SAW THAT CLAIM 1 HAS EVERYTHING EXCEPT FOR THE LANGUAGE AT ISSUE HERE ON THIS MOTION AND STILL ALLOWED ALL OF THE CLAIMS TO ISSUE.

THE COURT:  I DON'T UNDERSTAND HOW THAT CONCLUSION FOLLOWS.  IN OTHER WORDS, CLAIM 1 DEMONSTRATES THAT THE INVENTOR CONCEIVED OF A WAY TO DO ALL OF THIS WITH NO REQUEST FROM THE WIRELESS DEVICE.

MR. MCDONALD:  THAT'S CORRECT.

THE COURT:  NONE.  AND CLAIM 9 DOES OR DOES NOT INVOLVE A REQUEST FROM THE -- IT CAN OR CANNOT BE PERFORMED WITHOUT A REQUEST?

MR. MCDONALD:  SO DR. KUSHWAHA, IN HIS

DECLARATION, POINTED OUT A GREAT REAL WORLD EXAMPLE OF WHAT THIS TYPE OF INVENTION WOULD BE.

SAY THE DEVICE IS OUT OF SERVICE, IT'S TURNED OFF OR SOMETHING AND IT'S NOT COMMUNICATING WITH THE SERVER.

THIS CLAIM WOULD OCCUR UP TO THE POINT OF ESTABLISHING A CONNECTION.  THE SERVER, WITHOUT A REQUEST FROM THE WIRELESS DEVICE, WOULD PLACE A COMMAND FOR THE WIRELESS DEVICE IN A MAILBOX AT THE SERVER.

THEN THE SERVER WOULD ATTEMPT TO CONTACT THE DEVICE.  IT WOULD NOT BE SUCCESSFUL BECAUSE THE DEVICE IS OUT OF COVERAGE OR TURNED OFF.

AS SOON AS THE DEVICE -- OR AT SOME POINT AFTER THE DEVICE COMES BACK INTO THE COVERAGE, THERE WOULD BE A CONNECTION BETWEEN THE SERVER AND THE DEVICE, AND THEN THE DEVICE WOULD ISSUE A REQUEST FOR WHATEVER IS PENDING IN THE MAILBOX.

SO AT THAT POINT IT WOULD SAY TO THE SERVER, "WHATEVER YOU HAVE THAT YOU'RE TRYING TO SEND ME, PLEASE SEND IT TO ME."

THE COURT:  NOT ONLY WOULD IT, IT MUST; RIGHT?  AS I READ THIS LANGUAGE, THE DEVICE MUST DO THIS.

MR. MCDONALD:  PER THIS CLAIM, THAT'S

21

CORRECT, YOUR HONOR.

THE COURT: OKAY. SO IF IT MUST DO IT, HOW DOES IT DO IT WITHOUT A REQUEST?

MR. MCDONALD: THERE WOULD BE -- WITHOUT A REQUEST APPLIES TO THE PLACING OF THE COMMAND IN THE MAILBOX.

I THINK THE CRITICAL POINT IS THAT THIS REQUEST IS NOT THE SAME AS THIS REQUEST. THIS REQUEST REFERS TO PLACING A COMMAND, THE WHOLE PROCESS OF DELIVERING A COMMAND. THESE STEPS ARE INITIATED WITHOUT A REQUEST FROM THE DEVICE.

ONLY WHEN YOU HAVE A CONNECTION IS THE REQUEST ISSUED FROM THE DEVICE TO THE SERVER.

THE COURT: BUT HOW DO YOU DELIVER WITHOUT THE TRANSMITTING?

MR. MCDONALD: THE TRANSMITTING IS PART OF DELIVERY.

BUT THAT IS KEYED UPON RECEIVING A REQUEST FOR THE CONTENTS OF THE MAILBOX.

WHAT REALLY SHOULD OCCUR IS WE SHOULD HAVE QUOTATION MARKS AROUND THIS ENTIRE PHRASE, "REQUEST FOR CONTENTS OF THE MAILBOX," BECAUSE THAT IS NOT THE SAME REQUEST AS IS BEING REFERRED TO HERE.

THE COURT: WHY? WHAT IS THAT REQUEST?

22

MR. MCDONALD:  THIS IS A REQUEST TO PERFORM THE REMOTE MANAGEMENT FUNCTIONALITY OF PLACING A COMMAND THAT'S INTENDED FOR THE WIRELESS DEVICE IN THE MAILBOX AND THEN AT SOME POINT DELIVERING IT.

THE COURT:  AH.  IS THERE A CLAIM WHERE THE CLAIM REQUIRES A REQUEST FROM THE WIRELESS DEVICE TO THE -- TO PLACE THE COMMAND?

MR. MCDONALD:  NO, BECAUSE IN THE REAL WORLD, YOUR HONOR, THE POINT OF REMOTE MANAGEMENT IS THAT YOU HAVE CENTRALIZED CONTROL.  SOMEONE IS SITTING AT A COMPUTER AND THEY CAN CONTROL DEVICES OUT IN THE FIELD.

THE COURT:  THEN I DON'T UNDERSTAND. IF -- IS THERE A -- IS THERE A CLAIM WHERE THESE INVENTORS CONTEMPLATED WITHOUT A REQUEST FROM THE WIRELESS DEVICE TRANSMITTING THE CONTENTS?

MR. MCDONALD:  THAT WOULD BE CLAIM 1.

THE COURT:  SO WHAT DOES -- WHY IS THIS CLAIM DIFFERENT?

MR. MCDONALD:  WHAT THIS CLAIM GOES TO IS A PULL DEVICE FUNCTIONALITY, SO TO SPEAK.

SO THE DEVICE IS NOT REQUESTING THAT YOU REMOTE MANAGE IT.  THAT'S CONTROLLED AT THE CENTRAL CONTROL STATION.

23

THE COURT:  ALL RIGHT.  LET ME ASK IT THIS WAY.

MR. MCDONALD:  OKAY.

THE COURT:  LET'S SAY I ELIMINATE "WITHOUT A REQUEST FROM THE WIRELESS DEVICE" FROM THE LANGUAGE.

WOULD THAT CHANGE THE MEANING OF CLAIM 9?

MR. MCDONALD:  ARE YOU SAYING IF YOU STRIKE THIS LANGUAGE?

THE COURT:  YES.

MR. MCDONALD:  IT WOULD BROADEN THE CLAIM OBVIOUSLY.  THEN THE DEVICE ITSELF COULD REQUEST THAT YOU PLACE A COMMAND.

AND, YOUR HONOR, IT MIGHT BE HELPFUL IF I POINT OUT SOME CASE LAW WHERE THE FEDERAL CIRCUIT HAS CLEARLY ESTABLISHED THAT YOU HAVE TO LOOK AT THE LANGUAGE OF THE CLAIMS THAT SURROUND THAT LANGUAGE THAT'S AT ISSUE.

THE COURT:  OH, I -- IT JUST SEEMS TO ME THAT IF I DESIGN THE REQUEST DIFFERENTLY, AND I HEAR YOUR ARGUMENT ABOUT THAT, THAT MAYBE I'LL COME TO A DIFFERENT OUTCOME.

BUT THE -- THE INVENTORS COULD HAVE SAID, "WITHOUT A REQUEST FOR THE DEVICE TO INITIATE THE PERFORMANCE," OR SOMETHING OF THAT KIND, AND THAT

24

WOULD GIVE ME A WAY OF READING THIS IN A DIFFERENT WAY.

I'M AFRAID THAT THE WAY YOU'RE ASKING ME TO DO IT NOW, I WOULD HAVE TO ACTUALLY IGNORE THAT LANGUAGE, THE "RECEIVING A REQUEST."

IN OTHER WORDS, IF THAT LANGUAGE WERE NOT THERE, WHAT -- OR THERE -- WHAT WOULD BE THE DIFFERENCE?  I DON'T UNDERSTAND WHAT WOULD BE THE DIFFERENCE.

AND IT SEEMS TO ME THAT I NEED TO READ THAT LANGUAGE OUT IN ORDER FOR IT TO NOT CONTRADICT THE PREAMBLE "WITHOUT A REQUEST."

MR. MCDONALD:  WITH RESPECT, YOUR HONOR, THERE'S NO NEED TO IGNORE ANY LANGUAGE IN THE CLAIM, AND WE'VE CITED CASE LAW ON THIS SLIDE, SUCH AS BANYAN LICENSING -- THIS IS IN THE BRIEFING -- WHERE UNLIKE THIS CASE, THERE WAS AN ERROR IN THE LANGUAGE OF THE CLAIMS.

AND UNDER THE CASE LAW, THE LANGUAGE OF THE CLAIMS DOES NOT HAVE TO BE PERFECTLY CORRECT.  SO LONG AS ONE OF SKILL IN THE ART, UPON READING ALL OF THE SPEC, CAN UNDERSTAND WHAT'S BEING CLAIMED, THAT'S SUFFICIENT.

AND IN THIS CLAIM, ONE OF SKILL IN THE ART WOULD UNDERSTAND, WHEN YOU SAY "WITHOUT A

25

REQUEST FROM THE WIRELESS DEVICE PERFORMING THE STEPS," WHAT THEY'RE SAYING IS WITHOUT A REQUEST FROM THE WIRELESS DEVICE TO PERFORM THE STEPS OF PLACING AND DELIVERING.

THE REQUEST REFERRED TO HERE ONLY GOES TO THE CONTENTS OF THE MAILBOX.  THIS IS A VERY SIMPLE, NARROW REQUEST.  IT'S LIKE --

THE COURT:  BUT YOU -- MY PROBLEM IS THAT AS I READ IT, I HAVE TO FIGURE OUT HOW DO I GET TO THE TRANSMITTING STEP.

MR. MCDONALD:  OKAY.

THE COURT:  IN OTHER WORDS, YOUR POSITION IS ONE SKILLED IN THE ART WOULD READ "DELIVERING" AS ESTABLISHING A CONNECTION AND TRANSMITTING, SKIPPING OVER THE RECEIVING SUBSTEP, THAT YOU DON'T NEED THAT AND YOU CAN SKIP IT?

MR. MCDONALD:  NO.  I'M SORRY, YOUR HONOR.  IF I SAID THAT, I MISSPOKE.

WHAT I'M TRYING TO SAY IS ONE OF SKILL IN THE ART WOULD CLEARLY UNDERSTAND THESE ARE TWO DIFFERENT REQUESTS BEING REFERRED TO.

THE "WITHOUT A REQUEST FROM THE WIRELESS DEVICE" HERE IS REFERRING TO THESE TWO MAIN STEPS.

THE COURT:  I UNDERSTAND THAT.

MR. MCDONALD:  OKAY.

THE COURT: I'VE GOT THAT.

MR. MCDONALD: OKAY.

THE COURT: WITHOUT A REQUEST, I CAN PERFORM THE STEPS OF PLACING AND DELIVERING, SO I SHOULDN'T RECEIVE A REQUEST TO PLACE. I SHOULDN'T RECEIVE A REQUEST TO DELIVER; RIGHT?

MR. MCDONALD: NO. WHAT I WOULD SAY IS IN ORDER FOR RIM'S MOTION TO BE GRANTED, THE PATENT WOULD HAVE TO LACK THIS LANGUAGE, "FOR CONTENTS OF THE MAILBOX."

THEN THE CLAIM WOULD CLEARLY BE DIFFICULT TO UNDERSTAND BECAUSE YOU WOULD BE SAYING WITHOUT A REQUEST FROM THE WIRELESS DEVICE AND THEN RECEIVING A REQUEST.

THAT'S NOT THE CLAIM AT ISSUE HERE, BUT THAT'S THE CLAIM THAT RIM IS URGING YOU TO THINK IS AT ISSUE.

THIS REQUEST LANGUAGE WAS MODIFIED BY "FOR CONTENTS OF THE MAILBOX."

AND THE CASE LAW IS CLEAR FROM THE FEDERAL CIRCUIT, YOU HAVE TO LOOK AT THE CONTEXTUAL LANGUAGE SURROUNDING -- YOU CAN'T JUST HONE IN ON --

THE COURT: WELL, WHAT IS THE CONTENTS OF THE MAILBOX?

27

MR. MCDONALD:  GREAT.  SO THE CONTENTS OF THE MAILBOX IS THE COMMAND.

THE COURT:  SO WHAT AM I RECEIVING A REQUEST FOR?

MR. MCDONALD:  JUST THAT YOU SEND THE DEVICE THE COMMAND.

THE COURT:  SO I HAVE A REQUEST TO SEND THE COMMAND?

MR. MCDONALD:  CORRECT.

THE COURT:  SO YOU ACKNOWLEDGE THAT THIS IS NOT PERFORMED -- THAT STEP IS NOT PERFORMED WITHOUT A REQUEST FROM THE WIRELESS DEVICE?

MR. MCDONALD:  FOR CONTENTS OF THE MAILBOX AS CLEARLY STATED IN THE CLAIM.

THE COURT:  THAT IS NOT PERFORMED WITHOUT A REQUEST FROM THE WIRELESS DEVICE; CORRECT?

MR. MCDONALD:  FOR CONTENTS OF THE MAILBOX.

THE COURT:  I DIDN'T HEAR AN ANSWER CORRECT OR INCORRECT.

MR. MCDONALD:  CORRECT, YOUR HONOR.

THE COURT:  OKAY.  AND WHAT IS TRANSMITTED?

MR. MCDONALD:  TRANSMITTING IS ONCE THE SERVER HAS RECEIVED THIS REQUEST FOR CONTENTS OF

THE MAILBOX, THE SERVER ANSWERS THAT REQUEST BY TRANSMITTING THE CONTENTS OF THE MAILBOX.

THAT'S ALL IT IS.  THESE SUBSTEPS ARE VERY SIMPLE RELATIVE TO PLACING A COMMAND.

THESE -- THE TWO MAIN STEPS OF PLACING A COMMAND AND DELIVERING THAT COMMAND, THAT'S WHAT REMOTE MANAGEMENT IS ALL ABOUT.

THESE SUBSTEPS OF RECEIVING A REQUEST FOR CONTENTS OF THE WIRELESS DEVICE, THAT'S JUST SIMPLE PULL FUNCTIONALITY WHERE THE DEVICE COMES BACK ON LINE AND SAYS, "HEY, SEND ME WHATEVER YOU'VE GOT.

THE COURT:  BUT HAVEN'T -- AREN'T WHAT YOU'RE CALLING SUBSTEPS THE DEFINITION OF DELIVERING, BECAUSE IT SAYS "BY"?  IN OTHER WORDS, THAT'S HOW YOU DELIVER?

MR. MCDONALD:  YES, YOUR HONOR.

THE COURT:  SO THESE -- THAT -- I COULD ACTUALLY SUBSTITUTE THOSE STEPS FOR DELIVERING?

MR. MCDONALD:  I THINK THESE SUBSTEPS ARE DELIVERING.

THE COURT:  YES.  SO IT WOULD BE WITHOUT A REQUEST, PLACING THE COMMAND, AND THEN ESTABLISHING A CONNECTION, RECEIVING A REQUEST, AND TRANSMITTING?  CORRECT?

MR. MCDONALD:  YES, YOUR HONOR.

29

THE COURT: ALL RIGHT. SO THE ONLY THING THAT'S LEFT TO ME IS TO DECIDE WHETHER OR NOT THAT VIOLATES THE UTILITY STANDARD BECAUSE IT'S INHERENTLY INCONSISTENT.

I UNDERSTAND THAT ARGUMENT. SO LET'S GO ON TO SOMETHING ELSE.

WHAT'S THE OTHER PART OF YOUR MOTION?

MS. DEBRUIN: MOVING, YOUR HONOR, TO THE NONINFRINGEMENT OF THE '917 PATENT, AND THIS IS THE, THE MOTION THAT GOES THROUGH THE CLAIM LIMITATIONS FOR THE '917 PATENT, WHAT I'D LIKE TO FOCUS ON FOR TODAY, THE CLAIMS, OTHER THAN INDEPENDENT CLAIM 1 AND CERTAIN OF ITS INDEPENDENT CLAIMS, ARE INVALID BASED ON OUR INVALIDITY MOTION.

I'D LIKE TO STEP THROUGH WITH YOU A WAY TO END THIS CASE AND FIND THAT CLAIM 1 IS NOT INFRINGED, AND IF CLAIM 1 IS NOT INFRINGED, ITS DEPENDENT CLAIMS ARE NOT INFRINGED AS WELL.

THAT, IN COMBINATION WITH RIM'S MOTION OF INVALIDITY, PUTS AN END TO THE '917 PATENT AND PUTS AN END TO THIS CASE.

NOW, RIM, IN ITS BRIEFING, PROVIDED A NUMBER OF WAYS THAT YOU COULD FIND NONINFRINGEMENT.

YOU ONLY HAVE TO FIND ONE THOUGH. AND I'D LIKE TO STEP THROUGH WHAT THAT ONE COULD BE

30

THAT WOULD FIND NONINFRINGEMENT FOR CLAIM 1 OF THE '917 PATENT.

NOW, FIRST OF ALL, THE ACCUSED RIM PRODUCTS DO NOT INFRINGE ANY CLAIM OF THE '917 PATENT.  THEY OPERATE IN A FUNDAMENTALLY DIFFERENT WAY THAN THAT OF THE '917 PATENT AND THEY USE PROPRIETARY TECHNOLOGY THAT WAS DEVELOPED BY RIM, WHO WAS AN INNOVATOR IN THE FIELD OF WIRELESS COMMUNICATION.

BY FOCUSSING ON CLAIM 1, I JUST WANT TO FOCUS YOUR ATTENTION SINCE WE HAVE A LOT OF DIFFERENT CLAIMS AT ISSUE AND DIFFERENT INFRINGEMENT THEORIES FROM THE PLAINTIFF.

ONE OF THE WAYS TO FIND NONINFRINGEMENT OF CLAIM 1 IS BASED ON THE MAILBOX LIMITATION, AND THROUGH THE BRIEFING, MFORMATION HAS CONCEDED THAT SOME OF ITS MAILBOXES -- ITS THEORIES FOR MAILBOX DON'T APPLY.

AND THEY'RE LEFT WITH THREE THEORIES FOR MAILBOX:  ONE, THEY'RE LEFT WITH THE THEORY THAT THE I.T. ADMIN QUEUE IN THE RIM BLACKBERRY ENTERPRISE SERVER IS A MAILBOX; AND IF THAT DOESN'T WORK, THEY'VE ALSO ADDED TWO MORE IN THEIR BRIEFING ON SUMMARY JUDGMENT -- THEY HADN'T GIVEN THESE TO US BEFORE IN THEIR INFRINGEMENT CONTENTIONS, BUT IN

31

THEIR BRIEFING THEY ADDED TWO ADDITIONAL THEORIES, AND THAT IS THAT AN INDIVIDUAL ENTRY IN THE I.T. ADMIN QUEUE IS A MAILBOX, OR AN INDIVIDUAL ENTRY IN ANOTHER TABLE CALLED THE USER CONFIG TABLE IS A MAILBOX.

AND, NOW, LET'S LOOK AT THOSE.  FIRST LET'S LOOK FOR A MOMENT AT THE I.T. ADMIN QUEUE JUST TO UNDERSTAND WHAT IS THAT.

THE I.T. ADMIN QUEUE, AND I HAVE UP SLIDE -- I'M JUST LOOKING FOR THE NUMBER.

THE COURT:  I'M FOLLOWING YOU.  KEEP GOING.

MS. DEBRUIN:  OKAY.  THE I.T. ADMIN QUEUE IS A BIG TABLE IN THE BLACKBERRY ENTERPRISE SERVER. THERE'S JUST ONE SUCH TABLE FOR BLACKBERRY ENTERPRISE SERVER, ONE TABLE THAT CONTAINS INFORMATION RELATING TO ALL THE DEVICES THAT HAVE ACTIVATED ON THAT BLACKBERRY ENTERPRISE SERVER.

WHAT IT IS IS WHEN AN I.T. ADMINISTRATOR SITS DOWN AND SAYS THAT THEY WANT TO PERFORM A CERTAIN COMMAND FOR A WIRELESS DEVICE, THAT THEY WANT TO MAKE A WIRELESS DEVICE DO SOMETHING, THEY ENTER SOMETHING AT THEIR TERMINAL, AND WHAT HAPPENS IS A TASK GETS ADDED TO THIS I.T. ADMIN QUEUE.

YOU CAN THINK ABOUT THE I.T. ADMIN QUEUE

32

AS THE BLACKBERRY POLICY SERVICE, WHICH IS THE

SERVICE THAT'S DOING THIS WORK, YOU CAN THINK ABOUT

IT AS ITS TO DO LIST.

SO THE I.T. ADMIN QUEUE HAS A LIST OF

TASKS, MUCH AS YOU MIGHT WRITE OUT A TO DO LIST, DO

THIS, DO THAT, AND LET'S SAY, FOR EXAMPLE, AN I.T.

ADMINISTRATOR WANTS TO SEND A SET PASSWORD COMMAND

TO A DEVICE INSTRUCTING IT TO SET A NEW PASSWORD.

WHAT THEY WOULD DO IS ENTER A COMMAND AND

IT WOULD END UP WITH AN ENTRY BEING ADDED TO THE

I.T. ADMIN QUEUE.

NOW, THAT ENTRY WOULD CORRESPOND TO A

COMMAND THAT NEEDS TO BE PERFORMED AT THE WIRELESS

DEVICE, BUT IT'S AN ENTRY, A TASK THAT'S TELLING

THIS BLACKBERRY POLICY SERVICE WHAT IT HAS TO DO.

IT'S ITS TO DO LIST.

AND THIS TO DO LIST IS NOT ORGANIZED IN

ANY WAY ACCORDING TO DEVICE.  IT'S NOT AS IF

THERE'S A FIRST CHUNK THAT RELATES TO -- WE HAVE A

RED DEVICE AND A GREEN DEVICE AND A BLUE DEVICE IN

OUR SLIDES, AND YOU'LL SEE THE INFORMATION IS

SCATTERED THROUGHOUT THE TABLE.  IT'S A JUMBLE.

THERE'S NOT A SECTION WHERE YOU PUT THE RED

DEVICE'S INFORMATION AND A SECTION WHERE YOU PUT

THE BLUE OR THE GREEN.

33

THIS IS A TABLE THAT RELATES TO THE ENTIRE BLACKBERRY ENTERPRISE SERVER.  IT'S NOT A TABLE FOR ANY PARTICULAR BLACKBERRY DEVICE.

THE COURT:  DOES IT HAVE TO BE?

MS. DEBRUIN:  IT DOES HAVE TO BE, YOUR HONOR.  THAT'S HOW THE SYSTEM IS DESIGNED.  THIS IS A TABLE --

THE COURT:  NO.  I MEAN DOES IT HAVE TO BE TO INFRINGE THE PATENT?

MS. DEBRUIN:  IT DOES HAVE TO BE.

THE COURT:  WHY?

MS. DEBRUIN:  AND HERE'S WHY:  IN -- DURING THE CLAIM CONSTRUCTION -- AND THIS WAS ADDRESSED DURING CLAIM CONSTRUCTION -- DURING THE CLAIM CONSTRUCTION, YOU SAID IN YOUR CLAIM CONSTRUCTION ORDER THAT CLAIM 1, IT INCLUDES THIS ESTABLISHING STEP, YOU SAID THAT CLAIM 1 RECITES ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE. THUS, A PERSON OF ORDINARY SKILL IN THE ART WOULD UNDERSTAND THAT THE METHOD OF CLAIM 1 REQUIRES A MAILBOX TO BE ESTABLISHED FOR EACH WIRELESS DEVICE.

THE COURT:  NO.  DID I SAY THAT?

MS. DEBRUIN:  YOU SAID THAT.

THE COURT:  EACH?

MS. DEBRUIN:  EACH.

34

THE COURT:  WHERE?

MS. DEBRUIN:  AND YOU SAID --

THE COURT:  WHERE DID THE WORD "EACH" COME INTO MY ORDER?  THAT'S -- THAT WAS THE WORD I WAS LOOKING FOR, SO WHERE IS THAT IN MY ORDER?

MS. DEBRUIN:  IT'S AT PAGE 12 OF YOUR ORDER.

(PAUSE IN PROCEEDINGS.)

MS. DEBRUIN:  DO YOU HAVE IT THERE, YOUR HONOR?  OR WE CAN HAND IT UP.

THE COURT:  WELL, MAYBE I'M MISSING IT. MY CONSTRUCTION IS "CREATING AN ADDRESS IN MEMORY OF THE SERVER THAT CAN STORE INFORMATION INTENDED FOR DELIVERY TO THE WIRELESS DEVICE."

WHERE IS "EACH"?

MS. DEBRUIN:  IN YOUR COMMENT ABOVE THAT, "MOREOVER, CLAIM 1 RECITES ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE.  THUS, A PERSON OF ORDINARY SKILL IN THE ART WOULD UNDERSTAND THAT THE METHOD OF CLAIM 1 REQUIRES A MAILBOX TO BE ESTABLISHED FOR EACH WIRELESS DEVICE."

AND THAT IS CONSISTENT AND ILLUSTRATIVE OF YOUR CONSTRUCTION OF CREATING AN ADDRESS.

THE COURT:  WELL, I FOLLOW THAT WITH "HOWEVER."  "HOWEVER" IS ONE OF THOSE WORDS WHERE I

35

SAY ONE THING, BUT MY "HOWEVER" IS KIND OF LIKE, BUT I DON'T BELIEVE IT, OR IT'S NOT UNIVERSALLY TRUE.

SO I HAVE TO BE CAREFUL.  THAT'S WHY I PUT THE CONSTRUCTION IN BOLD, BECAUSE I'LL SAY LOTS OF THINGS THAT GO THROUGH MY MIND IN TRYING TO COME TO THE CONSTRUCTION.

BUT WHAT YOU HAVE TO ARGUE IS THAT BASED UPON MY CONSTRUCTION THAT THE WORD "EACH" IS REQUIRED, AND THAT WOULD CAUSE ME TO GO BACK AND TAKE A LOOK, BECAUSE AS I READ THE CLAIMS, I DON'T SEE THE LANGUAGE, EVEN AS I LOOK AT IT NOW, THAT WOULD REQUIRE THAT THE MAILBOX FOR THE WIRELESS DEVICE BE A SEPARATE MAILBOX FOR EACH WIRELESS DEVICE, WHICH IS WHAT I UNDERSTAND YOUR ARGUMENT TO BE.

MS. DEBRUIN:  WELL, I THINK YOUR LANGUAGE -- I READ YOUR LANGUAGE OF ESTABLISHING A MAILBOX FOR THE WIRELESS DEVICE AT A SERVER TO DO JUST THAT.

A STEP MUST BE PERFORMED OF, ACCORDING TO YOUR CONSTRUCTION, CREATING AN ADDRESS IN THE MEMORY -- IN MEMORY OF THE SERVER THAT CAN STORE INFORMATION INTENDED FOR DELIVERY TO THE WIRELESS DEVICE.

36

THE COURT: WELL, BUT IN A SYSTEM WHERE THERE'S ONLY ONE, THAT WORKS.

BUT IF YOU'VE GOT THREE, WHY CAN'T YOU USE THE SAME MAILBOX TO SEND SOMETHING TO ALL THREE?

MS. DEBRUIN: BECAUSE THEN YOU WOULDN'T KNOW -- IT WOULDN'T BE INFORMATION TO BE SENT TO THE WIRELESS DEVICE.

AND THEN YOU HAVE A PROBLEM BECAUSE WHAT ARE YOU DOING -- THEN I HAVE CLAIM 1 UP HERE ON THE BOARD.

YOU'RE NOT -- IF THE MAILBOX IS THE WHOLE BOX, OKAY, SO IT'S THE WHOLE I.T. ADMIN QUEUE, AND THERE'S ONE LITTLE THING IN IT FOR YOU AND THERE'S SOMETHING ELSE FOR ME AND EVERYBODY ELSE IN THE ROOM HAS MAYBE SOMETHING IN THEIR MAILBOX, THAT CAN'T BE FOR -- IT CAN'T BE THE MAILBOX HERE THAT'S ESTABLISHED FOR THE WIRELESS DEVICE AT THE SERVER, BECAUSE LOOK WHAT YOU'RE GOING TO HAVE TO DO.

PLACE A COMMAND FOR THE WIRELESS DEVICE IN THE MAILBOX -- OKAY, YOU COULD PUT YOUR MAIL IN THIS BIG BOX.

BUT LOOK WHAT'S GOING TO HAPPEN.

DELIVERING THE COMMAND FROM THE MAILBOX BY ESTABLISHING A CONNECTION AND THEN TRANSMITTING

37

NOT THE COMMAND, NOT THE ONE FOR YOU, BUT THE CONTENTS OF THE MAILBOX FROM THE SERVER TO THE WIRELESS DEVICE.

THE COURT:  WELL, WHOEVER WROTE THIS PATENT CONTEMPLATED TO WRITE IT AS A SINGLE WIRELESS DEVICE AND A SINGLE SERVER, SO I WOULD HAVE TO, OF COURSE, CONCEIVE OF A CIRCUMSTANCE WHERE THERE WOULD BE MORE THAN ONE, AND THAT MIGHT OPERATE IN A DIFFERENT WAY THAN IF IT'S WRITTEN THE WAY IT IS.

AND THERE MAY BE CLAIMS WHERE THERE ARE MULTIPLE DEVICES.

BUT I DON'T UNDERSTAND WHY IT NECESSARILY FOLLOWS THAT IF I'M ESTABLISHING IT AS A SINGULAR SERVER AND A SINGULAR WIRELESS DEVICE WHERE I CAN'T USE THAT LANGUAGE IN A PERFECTLY LEGITIMATE WAY.

AND WHAT YOUR ARGUMENT IS, THAT IF I WERE TO READ THIS SAME LANGUAGE WITH MULTIPLE DEVICES, I MIGHT HAVE TO READ IT DIFFERENTLY.

MS. DEBRUIN:  AND THAT'S -- THAT'S THE ISSUE.  IN THE SINGLE DEVICE CASE THAT YOU DISCUSS, THERE IS JUST ONE MAILBOX FOR THAT DEVICE.

THE COURT:  YES.  BUT IN A MULTIPLE DEVICE, WHY DOES IT NECESSARILY REQUIRE THAT YOU HAVE SEPARATE MAILBOXES, ESPECIALLY FOR ENTERPRISE

MANAGEMENT?

IN OTHER WORDS, THIS IS NOT THE MAIL.
THIS IS SOMETHING THAT IS MANAGING THE ENTERPRISE.

NOW, YOU ARE CORRECT THAT I DON'T WANT
ALL MY MAIL GOING TO EVERYBODY, BUT THAT'S
DIFFERENT THAN WHAT'S GOING ON HERE, ISN'T IT?

MS. DEBRUIN:  NO.  THAT'S EXACTLY WHAT'S
GOING ON HERE.

WHAT'S GOING ON HERE IS THAT IF YOU HAVE
THIS BIG MAILBOX THAT YOU TALKED ABOUT WHERE ALL OF
OUR MAIL IS PUT INTO IT, IT SIMPLY DOESN'T WORK
WITH THIS PATENT CLAIM.

THE COURT:  BUT IS THIS A CLAIM FOR
DELIVERING MAIL?

MS. DEBRUIN:  THIS IS A CLAIM FOR
DELIVERING A COMMAND.

THE COURT:  YES, BUT NOT MAIL.

MS. DEBRUIN:  BUT THE SAME THING AS MAIL.

THE COURT:  IT COULD BE.  BUT IT'S --
HERE WE'RE TALKING ABOUT A COMMAND.

MS. DEBRUIN:  BUT A COMMAND IS DIRECTED
TO A PARTICULAR WIRELESS DEVICE.

THE COURT:  NOT NECESSARILY.  IT COULD BE
DIRECTED TO ALL OF THEM.

MS. DEBRUIN:  NO, IT'S NOT, NOT ACCORDING

TO THIS CLAIM LANGUAGE, YOUR HONOR.

THE COURT: WHY? WHERE DO YOU SEE THAT IT CAN'T BE?

MS. DEBRUIN: PLACING A COMMAND FOR THE WIRELESS DEVICE --

THE COURT: YES.

MS. DEBRUIN: -- IN THE MAILBOX AT THE SERVER.

THE COURT: YES. WHY CAN'T THAT BE FOR ALL OF THE WIRELESS DEVICES IF I HAVE MULTIPLES?

MS. DEBRUIN: BECAUSE IT'S FOR THE WIRELESS DEVICE AND YOU'RE GOING TO --

THE COURT: WHERE DOES IT SAY I'VE GOT MORE THAN ONE THEN?

MS. DEBRUIN: IT SAYS FOR THE WIRELESS DEVICE.

THE COURT: I KNOW. BUT WHERE DOES IT SAY I'VE GOT MORE THAN ONE?

MS. DEBRUIN: WHERE YOU HAVE MORE THAN ONE IN THIS CLAIM?

THE COURT: YES.

MS. DEBRUIN: WHERE YOU HAVE MORE THAN ONE IN THIS CLAIM IS IF YOU'RE TREATING THE MAILBOX TO BE FOR MORE THAN ONE.

I DON'T THINK THE CLAIM ITSELF SAYS THAT

40

IT IS FOR MORE THAN ONE.

WHAT THE CLAIM SAYS IS YOU ESTABLISH A MAILBOX FOR A DEVICE, AND THEN YOU USE THAT MAILBOX TO COMMUNICATE WITH THAT WIRELESS DEVICE.

THE COURT:  WELL, THE WORDS "SINGULAR" OR "SOLE" OR "ONLY" ARE NOT THERE; RIGHT?  I'D HAVE TO READ THAT IN?

MS. DEBRUIN:  WELL, FROM THE DISCUSSION AND THE WAY THAT THE PATENT DESCRIBES THE MAILBOX, AND FROM THE CLAIM LANGUAGE ITSELF, ESPECIALLY "TRANSMITTING THE CONTENTS OF THE MAILBOX," THAT REQUIRES THAT WHAT'S IN THERE BE FOR THAT PARTICULAR WIRELESS DEVICE.

THE COURT:  OR ALL OF THEM.

MS. DEBRUIN:  BUT THEN YOU'D GET EVERYBODY'S MAIL.

THE COURT:  WELL, THAT'S WHAT I'M -- I THINK THAT THAT'S THE FUNDAMENTAL QUESTION.

IN OTHER WORDS, IF YOU TELL ME CLAIM 1 IS A REMOTE MAIL DELIVERY SYSTEM, AS OPPOSED TO A MANAGEMENT SYSTEM -- MANAGEMENT IS NOT MAIL SO FAR AS THE COURT -- MAYBE I HAVEN'T CONSTRUED THAT TERM CLEARLY ENOUGH.

IT'S FOR REMOTELY MANAGING, NOT FOR REMOTELY DELIVERING MAIL.

41

MS. DEBRUIN:  EXCEPT THE ONLY THING DESCRIBED IN THE '917 PATENT IS A SYSTEM THAT REMOTELY MANAGES ONE DEVICE AT A TIME.

IT DOESN'T DESCRIBE SENDING -- IT DOESN'T DESCRIBE DOING THIS BULK APPROACH THAT YOU'RE PROPOSING.

THE COURT:  WELL, THAT'S THE STYLE -- YOU'RE RIGHT, THAT'S THE STYLE THAT IT'S WRITTEN IN.

BUT I -- I SEE SO MANY PATENTS THAT ARE WRITTEN FOR SYSTEMS WHERE THEY DESCRIBE THE SERVER WHEN THERE COULD BE MULTIPLE SERVERS AND THE DEVICE WHEN THERE COULD BE MULTIPLE DEVICES.

AND SO THE COURT HAS TO CONSTRUE THE CLAIMS IN A FASHION THAT MAKE IT VALID TO OPERATE IN A SYSTEM OF MULTIPLE SERVERS OR DEVICES UNLESS THE INVENTORS SUGGEST THIS IS JUST FOR ONE, AND I DON'T READ THAT.

WAS THAT YOUR BEST ONE?

MS. DEBRUIN:  WE HAVE MORE.

THE COURT:  I SAW THE OTHERS.  IT JUST SEEMS TO ME THAT THIS IS A CASE WHERE THE DEFENSE HAS THE BETTER SIDE OF THE ARGUMENT WITH RESPECT TO THE INVALIDITY ARGUMENT ON CLAIM 9, AND THOSE -- BECAUSE I SEE CLAIM 13 HAS THE SAME PROBLEM; AND

42

THE PLAINTIFF HAS THE BETTER SIDE OF THE ARGUMENT WITH RESPECT TO WHETHER OR NOT THERE ARE ISSUES ON THE OTHERS.

I DID WANT TO STUDY THE EXPERT REPORTS BETTER TO SEE WHETHER OR NOT THERE WERE ASPECTS OF THESE CLAIMS THAT DID NOT READ ON THE, ON THE ACCUSED DEVICE SINCE THERE WERE MULTIPLE PARTS OF IT.

DO YOU WANT TO SPEAK FURTHER TO THIS ISSUE?

MS. DEBRUIN:  YOUR HONOR, WHY DON'T WE MOVE OFF OF MAILBOX FOR A MOMENT AND TALK ABOUT --

THE COURT:  WELL, I WAS GOING TO GIVE YOUR OPPONENT A CHANCE.

MS. DEBRUIN:  OH, I'M SORRY.

THE COURT:  HE'S PROBABLY GOING TO SAY, "NO, I DON'T WANT TO TALK."

MR. THAKUR:  YOUR HONOR, I SHOULDN'T TALK.  I SHOULD MAKE ONE POINT.

WE ACTUALLY DISCUSSED THIS MAILBOX ISSUE AD NAUSEAM AT THE CLAIM CONSTRUCTION, I BELIEVE IT WAS ACTUALLY THE MOST AMOUNT OF TIME DEVOTED WAS TO THIS ISSUE, AND I THOUGHT WHAT WE HAD WAS THERE WAS ONE -- YOU ASKED ME WHETHER ONE MAILBOX COULD MANAGE MULTIPLE DEVICES, AND YOU ASKED ME THAT

43

SPECIFIC QUESTION, AND YOU SAID SHOW ME A POINT IN THE SPEC.

AND, YOUR HONOR, I ACTUALLY CITED YOU A SPECIFIC LANGUAGE FROM THE SPECIFICATION, AND I'M JUST GOING TO READ IT OUT.

"MAILBOX STORES COMMANDS THAT ARE TO BE DELIVERED TO REMOTELY MANAGED DEVICES SO THAT DEVICES CAN RETRIEVE COMMANDS."

SO I THOUGHT IT WAS ABSOLUTELY ABUNDANTLY CLEAR, BASED ON YOUR CLAIM CONSTRUCTION ORDER, BECAUSE THEY HAD ASKED FOR ONE-TO-ONE CORRESPONDENCE WITH SPECIFICITY.

THE COURT:  THE PART OF YOUR SIDE OF THIS MOTION THAT CAUGHT MY ATTENTION WAS WHETHER OR NOT I NEEDED TO GO BACK AND DEFINE "CONNECTION."

MR. THAKUR:  YOUR HONOR, I -- THE ANSWER I THINK ON THAT ISSUE IS THEY HAD ACTUALLY, DURING THE COURSE OF THE RULE 4-2 DISCLOSURES, IDENTIFIED 17 TERMS AND THEY EXPRESSLY STATED THAT THERE WAS NO NEED TO CONSTRUE THAT TERM.

ONLY AFTER THE CLAIM CONSTRUCTION ORDER FOR THE VERY FIRST TIME THE WORD "CONNECTION" WAS MENTIONED.

AND JUST A QUICK EXPLANATION OF THE WAY THE CONNECTION WORKS.  THERE ARE SEVERAL LAYERS OF

44

PROTOCOLS, AND THE FIRST PROTOCOL LAYER FOR A CONNECTION IS THE TCP/UDP OPTIONS THAT ARE MENTIONED HERE.

AND THE ONLY DIFFERENCE -- THEY WORK VIRTUALLY IDENTICAL.  THE ONLY DIFFERENCE BETWEEN A TCP PROTOCOL AND THE UDP PROTOCOL IS IN THE TCP PROTOCOL, YOU NOTIFY THE DEVICE, "ARE YOU THERE?" AND THE DEVICE RAISES ITS HAND AND SAYS "I'M HERE" AND THEN THERE'S NO -- AND THEN YOU START TO DELIVER.

IN THE UDP PROTOCOL, YOU EFFECTIVELY DELIVER, AND THE REASON YOU DON'T HAVE TO WORRY ABOUT IT GETTING TO THE PLACE IS BECAUSE THERE'S AN ACKNOWLEDGMENT THAT GETS SENT BACK FROM THE DEVICE THAT SAYS "I GOT IT."

AND SO WHEN YOU'RE SENDING THESE RELATIVELY SMALL COMMANDS TO CONNECT TO THE DEVICE AND COMMUNICATE WITH IT, YOU DON'T WORRY ABOUT IT.

I GUESS WHAT I'M SAYING IS IF YOU LOOK AT THE SPEC, THERE ARE SPECIFIC DISCLOSURES ABOUT USING CELL PHONES, MULTIPLE NETWORKING PROTOCOLS. IT COULD NOT BE MORE ABUNDANTLY CLEAR.

THE COURT:  I SAW THE REFERENCE IN THE SPECIFICATION, BUT THEN THE WORD "CONNECTION" SUGGESTS TO ME THAT -- WELL, I GUESS THAT WAS WHY

IT RAISED THE CLAIM CONSTRUCTION ISSUE FOR ME.

IS THERE AN ORDER?  IN OTHER WORDS, DO YOU HAVE TO ESTABLISH THE CONNECTION FIRST?

THOSE ARE THINGS THAT I HADN'T THOUGHT ABOUT BECAUSE THE PARTIES DIDN'T ASK ME TO THE FIRST TIME AROUND, AND IT DOES SEEM TO ME THAT PART OF YOUR MOTION REQUIRES THAT I CONSTRUE THAT TERM.

MR. THAKUR:  YOUR HONOR, I THINK BASICALLY WHAT YOU'RE ASKING IS TO HAVE YOU ADD A PROTOCOL LIMITATION THAT'S NEVER USED IN THE WORD "CONNECTION."

BOTH THESE ARE POINT-TO-POINT COMMUNICATIONS WHERE DATA PACKETS ARE CONNECTED TO TRANSMIT.

THE PACKET INCLUDES THE SENDER/SERVER INFORMATION, THE RECEIVING DEVICE INFORMATION, THE PORT INFORMATION, AND WHEN IT'S CONNECTING TO, AND THEN THE DATA.

SO THE CONNECTION AND TRANSMISSION DO OCCUR IN A PACKET, BUT THEY'RE SEPARATE STEPS.

AND SO THE IDEA THAT THEY NEED TO BE DONE IN THE ORDER OR CAN'T BE DONE CONCURRENTLY, LOGIC WOULD ACTUALLY SUGGEST, YOUR HONOR, IF I RECEIVED A PACKET WITH A HEADER OF INFORMATION SAYING IT'S FROM THE SERVER, I'M GOING TO FIRST READ THE HEADER

46

BEFORE I'M GOING TO CHECK THE PARITY BIT, BEFORE I'M GOING TO ACCEPT THE COMMAND.

SO IT DOES ACTUALLY HAPPEN IN THE SEQUENCE THAT'S IN THE CLAIM.

THE COURT:  WELL, I MIGHT DEFINE "ESTABLISHING A CONNECTION" BROADLY ENOUGH TO COVER ALL OF THIS, BUT IT DID OCCUR TO ME THAT I NEED TO DEFINE -- YOUR ARGUMENT IS "ESTABLISHING A CONNECTION" IS A STEP THAT HAS TO BE PERFORMED BEFORE THE CONTENT IS TRANSMITTED.

MS. DEBRUIN:  CORRECT, YOUR HONOR.  OUR ARGUMENT IS THAT YOU -- IT'S TWO STEPS IN THE PATENT CLAIM.  YOU HAVE TO ESTABLISH THE CONNECTION AND THEN TRANSMIT USING THAT CONNECTION.

THE COURT:  BUT WHAT'S A CONNECTION?

MS. DEBRUIN:  A CONNECTION IS, FOR EXAMPLE, TCP IP.

A CONNECTION, YOU CAN THINK OF A CONNECTION LIKE MAKING A TELEPHONE CALL.  I CALL YOU AND THEN WE CAN COMMUNICATE.  THEN WE CAN TRANSMIT INFORMATION.

THE COURT:  WELL, THOSE ARE -- THOSE ARE EXAMPLES OF CONNECTIONS, I GUESS.

SO I HAVE TO FIGURE OUT HOW TO DEFINE "CONNECTION" SO THAT IT WOULD SUPPORT THE CLAIM.

47

THAT'S WHY I WONDER, WHAT IS A CONNECTION?

IN OTHER WORDS, A CONNECTION IS A PROTOCOL?

MS. DEBRUIN:  WE'RE NOT REQUIRING THAT THE CONNECTION BE ANY PARTICULAR PROTOCOL.

WHAT WE'RE REQUIRING IS THAT THIS STEP OF SETTING UP A CONNECTION BE DONE BEFORE YOU TRANSMIT INFORMATION.

SO WE'RE SAYING THAT THIS, THESE STEPS WOULD APPLY TO SETTING UP A PHONE CALL RIGHT --

THE COURT:  BUT ISN'T THERE ALWAYS A CONNECTION IN THIS NETWORK?

MS. DEBRUIN:  NO.  FOR EXAMPLE, THINK ABOUT MAILING A LETTER, BECAUSE THAT'S VERY MUCH LIKE WHAT UDP DOES.

I TRANSMIT -- I SEND A LETTER TO YOU, SO I'M TRANSMITTING INFORMATION TO YOU.

YOU RECEIVE MY LETTER, YOU GET THE INFORMATION THAT I WANTED TO SEND.

BUT WE DIDN'T HAVE TO AGREE ON ANY CONNECTION.  WE DIDN'T HAVE TO ESTABLISH ANY CONNECTION BEFOREHAND.  ALL I DID IS PUT MY LETTER IN THE MAILBOX AND IT WENT OFF TO YOU.

THE COURT:  BUT ONCE THE DEVICE IS CREATED AND REGISTERED, ISN'T THERE ALWAYS A

CONNECTION?

MS. DEBRUIN: THE CONNECTION -- THERE'S NOT ALWAYS A CONNECTION.

IT WOULD BE TRUE THAT YOU COULD SAY YOU COULD COMMUNICATE WITH THE DEVICE.

BUT AT THE HEART OF THE ISSUE, YOUR HONOR, IS THAT THE ABILITY TO COMMUNICATE IS NOT THE SAME AS ESTABLISHING A CONNECTION, AND I THINK THAT'S WHERE WE'RE GETTING INTO TROUBLE.

THE COURT: WELL, I HATE USING ANALOGIES, SO THE MAIL EXAMPLE DOESN'T WORK FOR ME, BECAUSE ACTUALLY YOU COULD THINK OF IN THE WORLD THAT AS LONG AS I HAVE AN ADDRESS, WE ALREADY HAVE A CONNECTION. YOU CAN'T SEND IT TO ME IF I DON'T HAVE AN ADDRESS, SO WE ALREADY HAVE A CONNECTION.

IT'S JUST THAT WE AREN'T USING THE COMMUNICATION CHANNEL AT THE POINT UNTIL YOU WRITE A LETTER.

SO WHAT DOES "ESTABLISHING A CONNECTION" ADD TO THIS CLAIM IF YOU'VE ALREADY REGISTERED THE DEVICE?

MR. THAKUR: YOUR HONOR, THE -- WHAT YOU DID IN CLAIM CONSTRUCTION I THOUGHT WAS THE BEST POINT, WHICH IS WHAT DOES THE PATENT SAY?

SO I'D LIKE TO PASS OUT A COUPLE SLIDES,

49

BECAUSE THE KEY TO THIS POINT IS --

THE COURT:  THAT LOOKS LIKE MORE THAN A COUPLE.

MR. THAKUR:  LET ME PASS THESE OUT REAL QUICK.

THE COURT:  WHICH PAGE?

MR. THAKUR:  JUST ONE PAGE I WANT TO TURN YOU TO, YOUR HONOR, PAGE 24.

MS. DEBRUIN:  DO WE HAVE A COPY?

MR. THAKUR:  OH, SORRY (HANDING).

PAGE 24 AND 25 DEAL WITH THE EVIDENCE THAT YOU HAVE BEFORE YOU, YOUR HONOR, WITH RESPECT TO BOTH THE INTRINSIC AND THE EXTRINSIC EVIDENCE IN THIS CASE.

THEY DID NOT, IN THEIR BRIEF, POINT TO A SINGLE POINT IN THE PATENT SPECIFICATION OF INTRINSIC EVIDENCE TO SUPPORT THEIR NARROWING.

WHAT I WOULD LIKE YOUR HONOR TO LOOK AT IS LOOK AT THE CLAIM.  THE CLAIM SAYS THE '917 PATENT MAY UTILIZE ANY NETWORKING TECHNOLOGY PROTOCOL.

WHY IS THERE ANY RESTRICTION -- WHAT DOES THE WORD "PROTOCOL" MEAN?  IT MEANS DIFFERENT WAYS OF DELIVERING.

YOUR HONOR, BASICALLY THERE'S ONLY TWO

MAIN ONES THAT ARE USED FOR END-TO-END

COMMUNICATION, TCP AND UDP.

TCP IS USED WHERE YOU REALLY WANT

RELIABILITY.  THAT'S BASICALLY IT.  I'M CONCERNED

THAT IT'S NOT GOING TO GET TO YOU.  IF YOU WILL,

IT'S LIKE INSURANCE IN THE MAILBOX WORLD.

THE UDP IS WELL-KNOWN.  IT'S A WAY OF

JUST DELIVERING A COMMAND.  IT'S EFFECTIVELY, IF

YOU WILL, RELYING ON THE POST OFFICE TO GET IT.  IT

IS SO CONFIDENT.

AND YOU DON'T WORRY ABOUT IT BECAUSE ON

YOUR WAY BACK, YOU'RE GOING TO GET AN

ACKNOWLEDGMENT.  AND IF YOU DON'T GET AN

ACKNOWLEDGEMENT, IT'S THE DATA, YOU RESEND IT.

THEY'RE BOTH PROTOCOL.

AND THEN THE SPECIFICATION TEACHES THAT

CELLULAR TELEPHONES CAN BE REMOTELY MANAGED BY THE

INVENTION.

YOUR HONOR, ALMOST EXCLUSIVELY UDP

PROTOCOLS ARE USED FOR THE DELIVERY OF COMMANDS.

AND SO, YOU KNOW, I GUESS MY POINT IS

IT'S WELL KNOWN, IT'S -- YOU KNOW, I MEAN, ANY

ENGINEER WHO BASICALLY UNDERSTANDS TRANSPORT

PROTOCOL WOULD UNDERSTAND THESE ARE THE TWO PRIMARY

ONES, THEY USE THE WORD "PROTOCOL," AND THEY DON'T

HAVE A SINGLE CITATION TO THE INTRINSIC EVIDENCE TO SUPPORT THE CONTRARY.

AND THEN ON THE NEXT PAGE, YOUR HONOR, I LOOKED AT THE EXTRINSIC EVIDENCE.

WE HAVE, YOUR HONOR, DR. MADISETTI, WHO'S OUR EXPERT, WROTE A DECLARATION EXPLAINING IT'S ONE OF MANY PROTOCOLS.

THEY HAVE NO EXPERT TESTIMONY.  THEY CITED A DICTIONARY REFERENCE WHERE THE VERY NEXT LINE USED THE WORD "CONNECTION."

YOUR HONOR RECITED NUMEROUS RIM DOCUMENTS THAT USED THE WORD "CONNECTION" BOTH FOR UDP AND FOR TCP.

THEIR OWN 30(B)(6) WITNESS TESTIFIED THAT "CONNECTIONS" COULD BE PERSISTENT OR INTERMITTENT, AND THE PERSISTENT ONES WOULD BE UDP AND THE INTERMITTENT ONES WOULD BE TCP.

SO, YOUR HONOR, THE SIMPLE ANSWER IS IN TERMS OF EVIDENCE, GIVEN THE FACT THAT THIS IS A SUMMARY JUDGMENT MOTION FOR NONINFRINGEMENT, GIVEN THE EVIDENCE, IT IS ABSOLUTELY UNREBUTTED THAT THE INTRINSIC EVIDENCE IS -- SUPPORTS THE BREADTH OF INCLUDING BOTH TYPES OF PROTOCOLS AND THE EXTRINSIC EVIDENCE IS ESSENTIALLY ONE-SIDED.

MS. DEBRUIN:  YOUR HONOR, MAY I RESPOND?

THE COURT:  CERTAINLY.

MS. DEBRUIN:  MUCH OF WHAT COUNSEL SAID IS INACCURATE AND INCORRECT AND IS NOT SUPPORTED BY ANY OF THE EVIDENCE IN THE RECORD OR ANYTHING IN THE PATENT.

AND IN PARTICULAR, I'D JUST LIKE TO FOCUS ON THE POINT HE MADE ABOUT RIM'S WITNESS.

WHAT RIM'S WITNESS SAID ACTUALLY SUPPORTS RIM'S POSITION.  RIM'S WITNESS SAID THAT A CONNECTION IS SOMETHING THAT YOU CAN ESTABLISH AND YOU CAN DISCONNECT.  YOU CAN CONNECT AND DISCONNECT.

SO IT CAN BE EITHER PERSISTENT, YOU COULD MAKE A CONNECTION AND KEEP IT UP FOREVER; OR YOU COULD HAVE IT BE INTERMITTENT IN THAT YOU COULD ESTABLISH IT AND THEN TAKE IT DOWN.

HE NEVER SAID THAT ONE OF THOSE WAS UDP AND ONE OF THOSE WAS TCP.

INDEED, WHAT HE DESCRIBED WAS EXACTLY WHAT THE PATENT REQUIRES.  YOU HAVE TO DO TWO STEPS.  YOU HAVE TO ESTABLISH A CONNECTION AND THEN TRANSMIT.

YOU CAN'T COLLAPSE THOSE TWO STEPS INTO A SINGLE STEP OF TRANSMITTING.  THAT'S NOT WHAT THE PATENT PROVIDED FOR.

53

UDP COULD BE USED, FOR EXAMPLE, IF YOU BUILT ON TOP OF IT, TO WORK ON SOME KIND OF A HANDSHAKE ARRANGEMENT ON TOP OF THAT UNDERLYING PROTOCOL.

BUT THAT'S NOT WHAT WE'VE DONE.  THAT'S NOT WHAT MFORMATION ACCUSES US OF DOING.

SO THEY CAN'T POINT TO ANY CONNECTION THAT'S ESTABLISHED.

WE'RE NOT SAYING, AND IT'S WRONG TO SAY, THAT "CONNECTION" EQUALS "PROTOCOL."

YOU COULD USE DIFFERENT PROTOCOLS TO ESTABLISH A CONNECTION.  WE'RE NOT SAYING THAT CONNECTION IS LIMITED TO SOME PARTICULAR PROTOCOL.

BUT WHAT WE ARE SAYING IS THAT YOU HAVE TO DO BOTH STEPS:  ESTABLISH A CONNECTION AND TRANSMIT; AND THAT THE STEPS HAVE TO BE DONE IN THAT ORDER AS YOU, AS YOU NOTED.

MR. THAKUR:  YOUR HONOR, MAY I RESPOND REAL QUICK?

THE COURT:  QUICKLY.

MR. THAKUR:  WHAT THEY'RE SAYING IS THEY'RE NOT LOOKING FOR -- THE WORD "CONNECTION" INCLUDES BOTH UDP AND TCP.

THE POINT THEY'RE DEALING WITH IS, ARE THESE TWO SEPARATE STEPS?

54

AND, YOUR HONOR, I WANT TO REEMPHASIZE, THIS IS A PACKET DELIVERY SYSTEM.  THERE IS A HEADER AND THE TRANSMISSION OF THE COMMAND.  THOSE ARE TWO STEPS THAT ARE DONE IN A PRACTICAL TIME AT THE SAME TIME AS THE UDP.

THE COURT:  WHY DOES THE PACKET METHOD OF DELIVERY MAKE A DIFFERENCE?  WHY DOES THAT MAKE A DIFFERENCE?

MR. THAKUR:  YOUR HONOR, THE REASON IT MAKES A DIFFERENCE IS IN A PACKET METHOD OF DELIVERY, THE CONNECTION AND THE TRANSMISSION STEP EFFECTIVE HAPPENS IN ONE STEP IN TERMS OF THE DELIVERY.

BUT IF YOU READ THE DEVICE, YOU'RE DELIVERING THE COMMAND, SO YOU DELIVER THE COMMAND NOT IN THE -- IGNORING THE VALIDITY ISSUE -- YOU DELIVER THE COMMAND AND YOU INCLUDE BOTH THE CONNECTION COMPONENT AND YOU INCLUDE THE TRANSMISSION OF THE COMMAND COMPONENT.

AND SO THOSE TWO STEPS ARE HAPPENING CONCURRENTLY.

THE COURT:  SO IT CAN HAPPEN SIMULTANEOUSLY?

MR. THAKUR:  IT DOESN'T ACTUALLY HAPPEN TECHNICALLY SIMULTANEOUSLY, YOUR HONOR, BECAUSE THE

PACKET INCLUDES SERVER, ADDRESS, DESTINATION.

THE SERVER ACTUALLY RECEIVES --

THE COURT:  WELL, I THOUGHT "CONCURRENT" AND "SIMULTANEOUS" WERE SYNONYMOUS, SO IF YOU TELL ME IT CAN HAPPEN CONCURRENTLY, I SAY IT HAPPENS SIMULTANEOUSLY, YOU SAY NO, IT'S NOT THE SAME.

MR. THAKUR:  NO.  WHAT I'M SAYING, YOUR HONOR, IS IT IS ACTUALLY HAPPENING CONCURRENTLY.

BUT WHEN I USE THE WORD "SIMULTANEOUSLY," IT'S IN TERMS FROM AN ENGINEERING PERSPECTIVE AND IT HAPPENS EXACTLY AT THE SAME TIME.

THE COURT:  SO ONE HAS TO PRECEDE THE OTHER?

MR. THAKUR:  YOUR HONOR, IT DOES NOT HAVE TO PRECEDE THE OTHER.

BUT IT DOES, IN PRACTICAL TERMS, PRECEDE THE OTHER.

THE COURT:  SO ONE HAS TO PRECEDE -- I DON'T UNDERSTAND THE -- I DON'T UNDERSTAND HOW BOTH THINGS CAN BE TRUE.

CAN YOU -- CAN YOU ACCEPT THE CONTENTS WITHOUT A CONNECTION?

MR. THAKUR:  NO, YOUR HONOR.

THE COURT:  BUT YOU CAN TRANSMIT THE CONTENTS WITHOUT THERE BEING A CONNECTION?

56

MR. THAKUR:  THAT'S OUR OPPOSITION.

HOWEVER, WE DON'T THINK THAT'S WHAT THE ACCUSED DEVICES DO.

BUT ABSOLUTELY, YES, YOU CAN TRANSMIT WITHOUT HAVING THE CONNECTION ESTABLISHED FIRST.

THE COURT:  ALL RIGHT.

MS. DEBRUIN:  YOUR HONOR, IF I COULD INTERRUPT FOR JUST ONE MOMENT?

THE COURT:  CERTAINLY.

MS. DEBRUIN:  BECAUSE COUNSEL IS TALKING ABOUT THIS PACKET HEADER AND SUCH, AND THERE'S ABSOLUTELY NO EVIDENCE OF THIS IN THE RECORD. THERE'S NO SUPPORT FOR WHAT HE'S SAYING.

THIS IS SIMPLY ATTORNEY ARGUMENT.  I JUST WANT TO NOTE THAT.

THE COURT:  WELL, I MEAN, I SHOULD -- I SHOULD GO BACK TO WHAT I SAID TO BOTH OF YOU.

I THINK THAT YOU HAVE THE BETTER PART OF THE ARGUMENT ON THE CLAIM 9 ISSUE AND THOSE THAT ARE RELATED; AND THE PLAINTIFF HAS THE BETTER PART OF THE ARGUMENT THAT THERE'S A LOT MORE TO DO BEFORE THE COURT CAN FIND SUMMARY JUDGMENT OF NONINFRINGEMENT.

SO THAT'S WHERE I'LL COME DOWN ON MY ORDER.  OF COURSE I'LL SAY MORE ABOUT IT.

MY STAFF REMINDED ME THAT THIS WOULD BE AN APPROPRIATE TIME TO TALK ABOUT WHERE YOU ARE IN YOUR WORK.

WHERE ARE YOU IN YOUR WORK?  WE CAN SORT OF CONVERT THIS TO A CASE MANAGEMENT CONFERENCE AND GO OFF THE RECORD.

(DISCUSSION OFF THE RECORD.)

(WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
LEE-ANNE SHORTRIDGE, CSR, CRR
CERTIFICATE NUMBER 9595

DATED:  NOVEMBER 4, 2010