1 Patrick F. Philbin (*pro hac vice* pending)
 KIRKLAND & ELLIS LLP
2 655 Fifteenth Street, N.W.
 Washington, D.C. 20005
3 Telephone: (202) 879-5000
 Facsimile: (202) 879-5200

4

5 Linda S. DeBruin
 (Admitted to this Court on September 27, 1991)
 KIRKLAND & ELLIS LLP
6 300 North LaSalle
 Chicago, IL 60654
7 Telephone: (312) 862-2000
 Facsimile: (312) 862-2200
8 linda.debruin@kirkland.com

9 Marc H. Cohen (CA Bar No. 168773)
 KIRKLAND & ELLIS LLP
10 950 Page Mill Road
 Palo Alto, CA 94304
11 Telephone: (650) 859-7000
 Facsimile: (650) 859-7500
12 marc.cohen@kirkland.com

13

14 *Attorneys for Defendants and Counterclaim Plaintiffs*
 BLACKBERRY LIMITED and
15 BLACKBERRY CORPORATION

16    **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**
17    **SAN FRANCISCO DIVISION**

18 MFORMATION TECHNOLOGIES, INC., a  Case No. 3:08-CV-04990-EMC
 Delaware corporation,

19   Plaintiff and Counterclaim Defendant,  **BLACKBERRY'S OPPOSITION TO**
    **MFORMATION SOFTWARE**
20    **TECHNOLOGIES LLC'S MOTION TO**
   v.  **SUBSTITUTE AS PLAINTIFF OR,**
    **ALTERNATIVELY, TO JOIN AS CO-**
21 BLACKBERRY LIMITED, a  **PLAINTIFF PURSUANT TO FED. R. CIV.**
 Canadian corporation AND  **P. 25(C)**
22

23 BLACKBERRY CORPORATION,
 a Delaware corporation,

24   Defendants and Counterclaim Plaintiffs.

25

26

27

28

1

## **TABLE OF CONTENTS**

2

**Page**

3

4   I.      INTRODUCTION ....................................................................................................1

5   II.     BACKGROUND ....................................................................................................4

6   III.    ARGUMENT .........................................................................................................6

7           A.      The Federal Circuit Did Not Remand For This Court To Consider A *New*
                    Motion To Substitute With *New* Supporting Materials. ................................6

8
            B.      Mformation Software's Motion And Supporting Materials Before The Federal
9                   Circuit Failed To Demonstrate That It Is A Proper Substitute Party For
                    Mformation Technologies..............................................................................8
10
                    1.      Mformation Software's Refusal To Bear Any Responsibility For This
11                          Court's Cost Award Establishes That It Is Not A Proper Substitute. ...............8

12                  2.      Mformation Software Failed To Demonstrate That It Was A Proper
                            Substitute By Failing To Show That It Had Acquired The Right To
13                          Sue For Past Infringement. ................................................................9

14          C.      Even If Newly Submitted Materials Are Considered, Mformation Software
                    Has Still Failed To Demonstrate That It Was a Proper Substitute Party....................12
15
            D.      Mformation Software's Alternative Request To Join As Co-Plaintiff Is a Red
16                  Herring. ....................................................................................................16

17  IV.     CONCLUSION....................................................................................................18

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

4
## CASES

5
*Arachnid, Inc. v. Merit Indus., Inc.*,
    939 F.2d 1574 (Fed. Cir. 1991)................................................................ passim

6

7
*Educ. Credit Mgmt. Corp. v. Bernal*,
    207 F.3d 595 (9th Cir. 2000) ................................................................ 8

8
*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998)................................................................ 11

9

10
*EpicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*,
    No. 5:07CV125 (E.D. Tex. June 26, 2008) ................................................................ 17

11
*Mars Inc. v. JCM Am. Corp.*,
    No. 05-3165 (RBK), 2007 WL 776786 (D.N.J. Mar. 9, 2007)................................ 17

12

13
*Mas-Hamilton Grp. v. LaGard, Inc.*,
    156 F.3d 1206 (Fed. Cir. 1998)................................................................ passim

14
*Smartgene, Inc. v. Advanced Biological Labs, SA*,
    No. 08-642 (BAH) (D.D.C. Nov. 23, 2011) ................................................................ 17

15

16
*Trolley Boats, LLC v. City of Holly Hill*,
    No. 6:07-CV-1027, 2009 WL 1532533 (M.D. Fla. Jun. 2, 2009) ........................... 7

17
*U.S. v. Kirschner*,
    443 F. App'x 480 (11th Cir. 2011) ................................................................ 7, 16

18

19
*United Access Technologies, LLC v. EarthLink, Inc.*,
    No. 02-272-MPT, 2012 WL 2175786 (D. Del. June 14, 2012)................................. 9

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

The motion that Mformation Software Technologies LLC ("Mformation Software") has filed fundamentally ignores the procedural posture of this case.  The Federal Circuit has two motions pending before it: Mformation Software's motion to substitute and BlackBerry Limited and BlackBerry Corporation's (collectively, "BlackBerry")[1] motion to dismiss the appeal, which is inextricably related to deficiencies underlying the motion to substitute.  The purpose of the Federal Circuit's expressly "limited remand" (Ex. A, Remand Order at 3)[2] is not to have this Court decide a *new* motion to substitute on a new record.  Instead, it is to allow this Court to address issues and make findings that will aid the Federal Circuit in resolving the motions before it.  That is why the Federal Circuit asked this Court to address questions based specifically upon the way Mformation Software framed its pending motion to substitute—and the way BlackBerry framed its opposition and motion to dismiss—before the Federal Circuit.

In its perfunctory 3-page motion to substitute itself in the Federal Circuit in place of appellant Mformation Technologies LLC ("Mformation Technologies"), Mformation Software asserted that it purchased the patent-in-suit, along with other assets, from Mformation Technologies on September 21, 2012, and that Mformation Technologies had subsequently dissolved.  (Ex. B, Fed. Cir. Substitution Mot.)  It also claimed that, while it had acquired Mformation Technologies' rights in this litigation, it had not assumed the liabilities generated by this litigation, including responsibility for a judgment for over $200,000 in costs (Dkt. No. 1115), which it supposedly left with the defunct Mformation Technologies.  But Mformation Software presented no documentation with its motion showing the actual terms of this supposed sale.  (Ex. B.)

BlackBerry opposed that motion because Mformation Software had not demonstrated that the

---

[1] Until recently, BlackBerry Limited was known as Research In Motion Limited and BlackBerry Corporation was known as Research In Motion Corporation.  (*See* Dkt. No. 1153.)

[2] Exhibits cited in this brief as "Ex. __" can all be found in the Declaration of Michael D. Karson in Support of BlackBerry's Opposition to Mformation Software Technologies LLC's Motion to Substitute as Plaintiff or, Alternatively, to Join as Co-Plaintiff Pursuant to Fed. R. Civ. P. 25(c), filed and submitted herewith.

1   September sale had transferred the right to sue for past infringements, and because, rather than

2   stepping into the shoes of Mformation Technologies, Mformation Software purported to take over

3   solely rights in this litigation without taking over liabilities. (Ex. D, Opp'n to Fed. Cir. Substitution

4   Mot. & Mot. to Dismiss; Ex. H, BlackBerry's Reply ISO Mot. to Dismiss.)   BlackBerry

5   simultaneously moved to dismiss the appeal in its entirety.   Blackberry explained that Mformation

6   Software's failure to show that it had acquired the right to sue for past infringements not only

7   foreclosed its motion to substitute, it also demonstrated that Mformation Software lacked standing

8   when it had filed its Notice of Appeal.   Since Mformation Technologies had not even appeared to

9   pursue a separate Notice of Appeal it had filed, the entire appeal should be dismissed.   (Ex. D;

10  Ex. H.)  Thus, whether or not there is any case remaining to go forward in the Federal Circuit hinges

11  critically upon a key issue underpinning both Mformation Software's motion to substitute and

12  Blackberry's motion to dismiss: namely, whether Mformation Software established that it had

13  acquired the right to sue for past infringement in the September 2012 sale.

14      As alternative relief, BlackBerry asked the Federal Circuit to remand so that this Court could

15  address factual issues raised by the motion to substitute, such as: (1) the terms of Mformation

16  Software's alleged purchase of the patent-in-suit in September 2012; (2) whether and when

17  Mformation Software gained the right to sue for past infringement; and (3) the terms of an alleged

18  sale that supposedly transferred all the potential benefits of this litigation to Mformation Software

19  but left the liabilities, including a cost award of more than $200,000, with the defunct and penniless

20  Mformation Technologies.  (Ex. D at 12–14.)

21      The Federal Circuit granted BlackBerry's alternative request for a remand and framed

22  specific questions for this Court to consider based upon the presentation Mformation Software made

23  to the Federal Circuit including, for example, whether the failure to provide the Federal Circuit with

24  the September sale contract foreclosed the motion to substitute.  (Ex. A.)  This procedural history

25  and the questions the Federal Circuit posed make clear that this "limited remand" is designed to aid

26  the Federal Circuit in resolving the substitution motion and motion to dismiss *before it*, not for

27  Mformation Software to present an entirely new motion requesting new relief and with new

28  supporting materials.   Clarity on issues affecting those motions will aid the Federal Circuit in

1   deciding what is now the threshold question before all others in this litigation—namely, whether the

2   appeal should be dismissed, ending this litigation entirely and leaving the final judgment of this

3   Court in place.

4         As explained below, in addressing the Federal Circuit's questions, this Court should find that

5   Mformation Software's motion to substitute is fatally flawed for at least two reasons. First, the

6   effort to substitute is improper because Mformation Software claims that it could secure rights in this

7   litigation while simultaneously disclaiming liability for this Court's cost award. Second,

8   Mformation Software's failure to provide documentation to the Federal Circuit showing that it

9   acquired the right to sue for past infringement in the September 2012 sale meant that, as of the time

10   it filed the motion to substitute (and as of the time it filed its Notice of Appeal), it was not a proper

11   substitute because it had not acquired the rights necessary to proceed in this litigation. If the Court

12   considers the new documents Mformation Software has attached to its motion before this Court—

13   material it refused to provide to the Federal Circuit—the Court should find that those documents *still*

14   fail to show that Mformation Software was a proper substitute party at the time it attempted to

15   proceed in the Federal Circuit because they do not show an express transfer of the right to sue for

16   past infringement until *after* Mformation Software had filed its Notice of Appeal. In addition, the

17   new documents do nothing to remove the independent bar to substitution raised by Mformation

18   Software's improper insistence that it can acquire rights in this litigation without assuming liabilities

19   in the form of the Court's cost award.

20         Finally, Mformation Software's request in the alternative to be joined as a plaintiff should be

21   rejected. It is both outside the scope of the limited remand ordered by the Federal Circuit and

22   irrelevant given the procedural posture of the case. An order from this Court joining Mformation

23   Software as a plaintiff based on a presentation in August 2013 can do nothing to alter Mformation

24   Software's standing as of December 2012 when it filed its Notice of Appeal.

25

26

27

28

## II.      BACKGROUND

On September 6, 2012, Mformation Technologies filed a Notice of Appeal in this case.  (Dkt. No. 1087.)  In response, the Federal Circuit docketed Case No. 2012-1679 on September 25, 2012, but, because Mformation Technologies' Motion for a New Trial was still outstanding on this Court's docket, the Federal Circuit immediately deactivated the appeal.  (Dkt. No. 1110 (citing Fed. R. App. P. 4(a)(4)).)

On December 17, 2012, Mformation Software filed a Notice of Appeal.  (Dkt. No. 1137.)  That notice caused the Federal Circuit to docket Case No. 2013-1123, reactivate the earlier docketed Case No. 2012-1679, and consolidate the two appeals.  (Ex. I, Order Consolidating Appeals.)

On January 3, 2013, Mformation Software filed a Motion to Substitute Parties in the Federal Circuit.  (Ex. B.)  Mformation Software asserted that it "has been, and now is, the lawful holder and owner of U.S. Patent No[]. 6,970,917 . . . and all claims and causes of action at issue in the underlying litigation."  (*Id.* at 2.)  But it failed to present ***any*** documentation in support of that conclusory assertion.  Instead, it submitted merely a declaration, with no evidentiary support, that the sale had conveyed rights "including the claims and causes of action at issue" in the case, but that failed to quote any operative terms from the actual sale documents.  (Ex. C, Jan. 3, 2013 Mehrotra Aff. at 2.)  In addition, while proclaiming that it had acquired the benefits of owning U.S. Patent No. 6,970,917 ("the '917 patent"), Mformation Software disclaimed any of the attendant obligations—including liability for this Court's October 16, 2012, cost award of more than $200,000 in favor of BlackBerry.  (*See id.*)

On January 14, 2013, BlackBerry pointed out that the motion to substitute was deficient and moved to dismiss the consolidated appeal.  (Ex. D.)  BlackBerry explained that Mformation Software had failed to demonstrate that it was a proper substitute for Mformation Technologies because it failed to present any proof that it acquired all of the rights necessary to continue the litigation in Mformation Technologies' place.  (*Id.* at 6–11.)  In addition, Mformation Software's attempt to take on rights in the case while leaving all liabilities with Mformation Technologies (including responsibility for the more than $200,000 in costs awarded to BlackBerry) meant that Mformation Software was not seeking to step into Mformation Technologies' shoes and was not a

1    proper substitute party.  (*Id.*)  Since Mformation Software lacked standing and since Mformation

2    Technologies had not even appeared to pursue its appeal, BlackBerry explained that the entire appeal

3    should be dismissed.  BlackBerry asked in the alternative for a remand for this Court to resolve

4    factual issues surrounding the purported transfer of interest in the patent-in-suit.  (*Id.* at 11–14.)

5         In response to the motion to dismiss, Mformation Software produced a "Bill of Sale" from

6    the September 2012 transaction that purported to transfer title to the '917 patent.  (Ex. F, Sept. 21,

7    2012 Bill of Sale.)  That Bill of Sale did not, however, contain any language expressly transferring

8    the right to sue for past infringement.  Mformation Software made no other attempt to show that

9    contemporaneous documents from the September 2012 transaction had transferred the right to sue

10   for past infringement.  Instead, recognizing that its failure to acquire that right would result in

11   dismissal of its appeal for lack of standing, Mformation Software created and submitted a *new*

12   agreement, a euphemistically titled "Confirmation Agreement" that had been executed on

13   January 24, 2013, ten days *after* BlackBerry had filed its motion to dismiss.  (Ex. G, Jan. 24, 2013

14   Confirmation Agreement.)  In this newly minted "Confirmation Agreement," Mformation Software

15   purported to acquire the right to sue for past infringement of the '917 patent, effective *nunc pro tunc*

16   back to the time of the September 2012 sale.  (*Id.*)  Mformation Software still refused to produce any

17   original sale documents beyond the Bill of Sale.

18        The briefing on the merits in the Federal Circuit has been stayed pending resolution of

19   BlackBerry's Motion to Dismiss.  (Ex. J, Order Staying Briefing at 2; Fed. Cir. R. 31(c) ("When a

20   motion is filed that, if granted, would terminate the appeal, the time to serve and file the next brief

21   due is suspended.").)  BlackBerry's motion, moreover, is inextricably intertwined with Mformation

22   Software's failure to demonstrate that it is a proper substitute party, and the Federal Circuit's

23   resolution of BlackBerry's motion will determine whether any part of the consolidated appeal will

24   go forward.

25        That is the context in which the Federal Circuit granted BlackBerry's alternative request for a

26   limited remand to this Court.  Conscious of the questions BlackBerry raised about the alleged

27   transfer of interest in the patent-in-suit, the Federal Circuit asked this Court to consider whether:

28

a) it is legally proper for a party to be substituted for another party to a litigation as distinct from being added to the litigation where the party asking for substitution denies responsibility for financial obligations imposed upon it by the district court's judgment, and

b) whether, because Mformation Technologies, Inc. has not provided the court with the September 21, 2012 Secured Party Sale Agreement, it has failed to demonstrate that mFormation Software Technologies, Inc. owns the right to sue and recover for infringement of the patents in suit.

(Ex. A at 3.)

## III.   ARGUMENT

### A.   The Federal Circuit Did Not Remand For This Court To Consider A *New* Motion To Substitute With *New* Supporting Materials.

The Federal Circuit did not remand for this Court to entertain an entirely *new* motion to substitute based on a *new* record.  Instead, the Federal Circuit explained that it was remanding because the "better course" was to have this Court "decide *the* motion to substitute"—that is, the motion that had been presented to the Federal Circuit.  (Ex. A at 3 (emphasis added); *see also id.* (granting Mformation Software "leave to file *its* motion to substitute in the district court" (emphasis added)).)  The remand is thus designed to secure the benefit of this Court's findings on issues raised by the motion to substitute filed in the Federal Circuit—findings that will also assist the Federal Circuit in deciding BlackBerry's Motion to Dismiss.  And the order makes it clear that the Federal Circuit sought this Court's assistance in assessing the record as it was presented to the Federal Circuit.  (*Id.*)

The Federal Circuit specifically asked this Court to "give due consideration" to two issues, both of which specifically address the way Mformation Software framed its motion before the Federal Circuit.  (*Id.*)  First, the Federal Circuit asked this Court to consider the propriety of a party substituting in litigation while simultaneously disclaiming responsibility for the Court's judgment.  Second it asked this Court to consider whether Mformation Software "*has failed* to demonstrate"—in the past tense—that it owns the right to sue for past infringement because it (again in the past tense) "*has not provided* the court with the September 21, 2012" sales agreement.  (*Id.*)  Those questions would make no sense if the Federal Circuit intended that Mformation Software could simply file new documents in this Court.  The Federal Circuit did not ask this Court to consider

1   whether Mformation Software could *cure* any deficiency in its motion by presenting the missing

2   sales agreement for the first time.  Instead, it asked this Court to examine the rights that Mformation

3   Software had demonstrated based on the documents it presented to the Federal Circuit, nothing

4   more.[3]

5          The specific questions the Federal Circuit framed are critical because the Federal Circuit

6   expressly retained jurisdiction except to the limited extent it remanded for this Court to address

7   particular issues.  (*Id.* at 3.)  This Court's jurisdiction is thus restricted to addressing issues framed

8   by the remand.  *See, e.g.*, *U.S. v. Kirschner*, 443 F. App'x 480, 482 (11th Cir. 2011) (noting that the

9   district court "lacked jurisdiction to do anything more" than what was included in the circuit court's

10  mandate); *Trolley Boats, LLC v. City of Holly Hill*, No. 6:07-CV-1027, 2009 WL 1532533, at *1–2

11  (M.D. Fla. Jun. 2, 2009) (where court of appeals issued "a limited remand in which it retains

12  jurisdiction over the appeal and directs the district court to make limited findings or clarify the

13  record in some way," the district court's jurisdiction is "limited to acting in the manner directed").

14  For the reasons above, the remand contemplates that this Court should address matters that assist the

15  Federal Circuit in addressing the issues *before the Federal Circuit*.

16         In addition, given the procedural context, it would be an irrelevant academic exercise—and

17  likely result in an impermissible advisory opinion—for this Court to address a new motion to

18  substitute based on new materials as if it were proceeding on a clean slate. Whether Mformation

19  Software could now put together a new motion with new materials showing that it is a proper

20  substitute party today is irrelevant to the questions before the Federal Circuit.  If it were really open

21

22  [3] The remand order asks this Court to consider those questions "*inter alia*."  But where the Federal
    Circuit has directed this Court to consider "*the* motion to substitute," (Ex. A at 3 (emphasis added)),
23  and has framed specific questions based on the record developed in the Federal Circuit, a reference
    to considering "other things" must be understood in context to refer to things *of the same type*—that
24  is, other issues equally aimed at deciding whether the motion filed in the Federal Circuit should
    succeed.  Certainly, "*inter alia*" cannot be read so broadly as to allow this Court to consider
25  questions that would make the specific inquiries set by the Federal Circuit irrelevant.  And
    considering whether Mformation Software could cure any deficiencies in its presentation to the
26  Federal Circuit with new documents would have precisely that impermissible effect.  "*Inter alia*" is
    too small a tail to wag the entire dog here by completely reframing the scope of the remand.
27

28

1    to Mformation Software to take that approach, Mformation Software could now execute yet another

2    transfer of rights and claim that this new transfer definitively makes it a proper substitute party.  But

3    making that showing would be utterly irrelevant to the issues before the Federal Circuit.   The

4    important question in this case—and the question on which the Federal Circuit has sought this

5    Court's assistance—is whether Mformation Software's theory that it could acquire the benefits but

6    not the burdens of litigation, and the materials it presented to the Federal Circuit, demonstrated that,

7    as of the time of its motion to substitute (and as of the time it filed its Notice of Appeal), it was a

8    proper substitute party.  That question should be the focus of this remand.

9         **B.    Mformation Software's Motion And Supporting Materials Before The Federal
              Circuit Failed To Demonstrate That It Is A Proper Substitute Party For
10             Mformation Technologies.**

11           The motion to substitute and supporting materials filed in the Federal Circuit failed to show

12    that Mformation Software was a proper substitute party.  *First*, Mformation Software asserted that it

13    acquired rights in the '917 patent and this litigation, but that it did "not assum[e] or in any manner

14    whatsoever becom[e] liable or responsible for any liabilities or obligations of or related to

15    Mformation Technologies, Inc."  (Ex. B.)  That position cannot be reconciled with the requirement

16    that one who substitutes for another must step into his predecessor's procedural shoes.  *Second*,

17    Mformation Software did not acquire the right to sue for past infringement until it entered into the

18    January 24, 2013 "Confirmation Agreement"—three weeks after it had filed its January 3 motion to

19    substitute and more than one month ***after*** it had filed a Notice of Appeal.  (*See* Ex. G.)

20        **1.    Mformation Software's Refusal To Bear Any Responsibility For This
              Court's Cost Award Establishes That It Is Not A Proper Substitute.**
21

22           The Federal Circuit first asked this Court to consider whether Mformation Software was a

23    proper substitute party given that it had denied responsibility for this Court's judgment awarding

24    costs.  The answer is clearly "no."  Substitution in the district court under Federal Rule of Civil

25    Procedure 25 is analogous to substitution in the circuit court under Federal Rule of Appellate

26    Procedure 43.  *E.g.*, Fed. R. App. P. 43, 1967 Advisory Committee Note.  Both rules require "the

27    new party [to] step[] into the procedural position of the original party."  James Wm. Moore et al.,

28    Moore's Federal Practice ¶ 25.36 (3d ed. 1999); *see Educ. Credit Mgmt. Corp. v. Bernal*, 207 F.3d

595, 598–99 (9th Cir. 2000).  The procedural position in this case is that BlackBerry prevailed in the litigation and costs have been taxed against Mformation Technologies.   (Dkt. No. 1121; Dkt. No. 1115; Dkt. No. 1075.)  Mformation Software, however, maintains that it may continue *in this litigation* in Mformation Technologies' place and yet not be burdened with the costs the Court awarded *in this litigation*.  That position is inconsistent with the settled rule that "the substituted party is bound by any actions already taken by the predecessor and by any orders in the case." Moore et al., Moore's Federal Practice ¶ 25.36.  In other words, the substituting party must step into the shoes of the original party, for good or for ill.  Mformation Software is not attempting to step into the shoes of Mformation Technologies.  It is attempting to slice and dice the risks and rewards of litigation in a way that is inconsistent with being a proper substitute party.

In *United Access Technologies, LLC v. EarthLink, Inc.*, No. 02-272-MPT, 2012 WL 2175786 (D. Del. June 14, 2012), the District of Delaware encountered a nearly identical situation.  There, the purported successor-in-interest acquired rights while the case was on appeal and asserted that "it did not assume responsibility for . . . costs when it purchased the patents-at-issue from the original plaintiffs." *Id.* at *1.  The court rejected that argument, explaining that the court would not allow the substituted party "to elude its responsibility as the losing party, while reaping the benefits if successful [on appeal], rendering prior litigation efforts and decisions a nullity." *Id.* at *5.  As the court put it: a substituted party "cannot limit its liability . . . to only costs incurred after substitution. Litigation is a two-way street.  Once it is entered it must be traveled the full length . . . . There is no escape route." *Id.* (quotation marks and footnotes omitted).

Because Mformation Software based its motion to substitute here on the impermissible theory that it can be a substitute party while avoiding the costs awarded against Mformation Technologies, it cannot be a proper substitute party.

### 2. Mformation Software Failed To Demonstrate That It Was A Proper Substitute By Failing To Show That It Had Acquired The Right To Sue For Past Infringement.

The second question the Federal Circuit asked this Court to consider is whether, given that Mformation Software "has not provided the court" with the September 2012 sales agreement, it "has failed to demonstrate" that it "owns the right to sue and recover for infringement of the patents in

1   suit." (Ex. A, Fed. Cir. Limited Remand Order at 3.)  The answer to that question is clearly "yes."

2   Mformation Software never provided any documentation showing that, as of the time it filed its

3   Notice of Appeal and Motion to Substitute, it had acquired the right to sue for past infringement.  In

4   its initial motion to substitute, Mformation Software provided no documentation from the sale at all.

5   After BlackBerry pointed out that deficiency through its Motion to Dismiss, Mformation Software

6   presented two documents with its reply brief: (i) a September 21, 2012 "Bill of Sale" (Ex. F); and

7   (ii) a January 24, 2013 "Confirmation Agreement" (Ex. G).  But those documents actually confirm

8   that Mformation Software did not secure the right to sue for past infringement until January 24,

9   2013, long after it had purported to file its Notice of Appeal and its Motion to Substitute.   As

10  BlackBerry explained, because Mformation Software lacked sufficient rights in the '917 patent at

11  that time, it had no basis for seeking to substitute itself in the case.[4]  (Ex. D.)

12          The September 21, 2012 "Bill of Sale" purports to convey "all right, title and interest of

13  [Mformation Technologies] in and to the assets identified on Schedule 1 and Schedule 2 attached

14  hereto (collectively, the 'Transferred Assets')."  (Ex. F at 1.)  "Schedule 1" relates to property

15  described and defined as "Collateral" in certain loan documents[5] (*id.* at Schedule 1), while

16  "Schedule 2" is a list of patents and patent applications that includes the '917 patent (*id.* at

17  Schedule 2).  It was the reference to the '917 patent in Schedule 2 on which Mformation Software

18  relied.  (Ex. E, Reply ISO Substitution Mot. at 6.)  By its terms, the "Bill of Sale" does not expressly

19  convey the right to pursue claims for past infringement of the '917 patent.  But it is settled law that

20  the right to pursue claims for past infringement must be conveyed in express terms and "can not be

21  inferred from an assignment of the patent itself."  *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574,

22  1579 n.7 (Fed. Cir. 1991); *see Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1210 (Fed. Cir.

23  1998).  The "Bill of Sale" on its face was thus insufficient to convey the right to sue for past

24

25  [4] BlackBerry also explained that because Mformation Software did not have sufficient rights in the
    '917 patent when it filed its Notice of Appeal, it lacked standing and that document was a nullity.
26  (Ex. D.)

27  [5] The underlying loan documents were not produced to the Federal Circuit.

28

1    infringement and to give Mformation Software a right to proceed in this case.

2              Apparently recognizing that deficiency, Mformation Software and Mformation Technologies

3    responded to BlackBerry's Motion to Dismiss by entering into a "Confirmation Agreement" on

4    January 24, 2013.   (Ex. G.)   This euphemistically named agreement—entered into long after

5    Mformation Software's December 17, 2012 Notice of Appeal—conveyed the right to sue for past

6    infringement of the '917 patent to Mformation Software and attempted to make that conveyance

7    retroactive to September 21, 2012.   (*Id.*)   Such "*nunc pro tunc* assignments," however, "are not

8    sufficient to confer retroactive standing."   *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090,

9    1093 (Fed. Cir. 1998).   Thus, Mformation Software did not have the right to sue for past

10   infringement until the date of the Confirmation Agreement—January 24, 2013.  That date is critical

11   for the issues currently pending before the Federal Circuit, because it means that when Mformation

12   Software purported to file a Notice of Appeal on December 17, 2012 (Dkt. No. 1137), it had no

13   standing to do so.

14             In the Federal Circuit, Mformation Software relied heavily upon the case *Mas-Hamilton

15   Group v. LaGard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998), in support of its motion to substitute.  In

16   *Mas-Hamilton*, the original patent owner, La Gard, filed its notice of appeal on August 22, 1997.

17   Notice of Appeal, *Mas-Hamilton Group v. LaGard, Inc.*, No. 94-cv-00349 (E.D. Ky. Aug. 22, 1997),

18   ECF No. 221.   Two months later, on October 21, 1997, La Gard conveyed the patent-in-suit to

19   Masco, but neglected to convey the right to sue for past infringement.  *Mas-Hamilton*, 156 F.3d at

20   1210.   More than seven months later, on June 1, 1998, La Gard conveyed *nunc pro tunc* the right to

21   sue for past infringement to Masco. *Id.* at 1210–11.  The Federal Circuit held that, because standing

22   had not been deficient when La Gard filed its notice of appeal—the party filing the notice of appeal,

23   La Gard, owned both the patent and the right to sue for past infringement at the time the notice was

24   filed—the purported *nunc pro tunc* assignment of the right to sue for past infringement was not

25   being used to cure deficient appellate standing and the transferee could proceed based merely on the

26   later transfer of rights.  *Id.* at 1211.

27             *Mas-Hamilton* provides no support for Mformation Software's position here.   In *Mas-

28   Hamilton*, the same party (La Gard) owned both the patent and the right to sue for past infringement

BlackBerry's Opposition to Mformation Software's          -11-                    Case No. 3:08-CV-04990-EMC
Motion to Substitute or Join Pursuant to Rule 25(c)

1    at the time the notice of appeal was filed.   In this case, when Mformation Software filed its

2    December 17, 2012 Notice of Appeal (Dkt. No. 1137), it owned only the '917 patent—it did not own

3    the right to sue for past infringement until January 24, 2013, when the "Confirmation Agreement"

4    was executed.  *See Mas-Hamilton*, 156 F.3d at 1211; *Enzo*, 134 F.3d at 1093.

5            The critical question here for assisting the Federal Circuit is whether Mformation Software

6    showed that it had acquired the right to sue for past infringement *at the time it filed its Notice of*

7    *Appeal* on December 17, 2012.  This Court should expressly find that the materials presented to the

8    Federal Circuit were insufficient to show that Mformation Software had acquired that right either at

9    the time it filed its Notice of Appeal or at the time it filed its Motion to Substitute.  As a result, the

10   Motion to Substitute should be denied.

11       **C.    Even If Newly Submitted Materials Are Considered, Mformation Software Has
             Still Failed To Demonstrate That It Was a Proper Substitute Party.**

12

13           Even if this Court considers the new documents Mformation Software presents on this

14   remand, Mformation Software has still not shown that it acquired sufficient rights in the '917 patent

15   to be a substitute party as of the time it filed its Notice of Appeal on December 17, 2012 or its

16   Motion to Substitute on January 3, 2013..  In this Court, Mformation Software now claims that it

17   obtained the right to sue for past infringement on September 21, 2012, through a chain of definitions

18   and opaque cross references that begin in a newly produced "Secured Party Sale Agreement" and

19   end in a newly produced "Intellectual Property Security Agreement"—both documents that

20   Mformation Software could have provided to the Federal Circuit, but refused to.   But this new

21   explanation does not get Mformation Software any closer to its goal.   The analysis is

22   straightforward:  do these newly-produced documents demonstrate the right to sue for past

23   infringement was conveyed from Mformation Technologies to Mformation Software in express

24   terms in an effective assignment before Mformation Software filed its Notice of Appeal?  *Arachnid*,

25   939 F.2d at 1579 n.7.  Here, the answer is no.

26           *First*, the very fact that Mformation Software cannot muster a consistent explanation as to

27   exactly how and when it acquired the right to sue for past infringement undermines the credibility of

28   its latest convoluted theory.   When BlackBerry pointed out that Mformation Software's initial

1  motion to substitute in the Federal Circuit was deficient because it provided no evidence that
2  Mformation Software had acquired the necessary rights to substitute for Mformation Technologies—
3  including the right to sue for past infringement—Mformation Software's response was not to show
4  that the September 2012 transaction documents expressly conveyed the right to sue for past
5  infringement.  Its primary response was to execute a *new* document on January 24, 2013 that
6  purported to convey the right to sue for past infringement *retroactively* to September 2012.  (Ex. E at
7  7.)  As explained above, such retroactive, *nunc pro tunc* assignments are insufficient.  Now,
8  Mformation Software presents a different theory based on (1) a September 21, 2012 "Secured Party
9  Sale Agreement," (Dkt. No. 1147, Ex. 1), and (2) a March 7, 2011 "Intellectual Property Security
10 Agreement" (Dkt. No. 1147, Ex. 15).  The shift in explanations raises the obvious question, if
11 Mformation Software actually thought that the September 2012 sale documents conveyed the critical
12 right to sue for past infringement, why would it affirmatively *undermine* that position by executing a
13 *new* transfer that purported to operate *nunc pro tunc*?  The obvious answer is that, in January 2013,
14 not even Mformation Software's lawyers thought that they could cobble together enough cross
15 references to jury rig a credible theory that the September sale documents actually conveyed the
16 right to sue for past infringement in express terms.[6]

17         *Second*, the right to sue for past infringement must be conveyed in express terms, but
18 Mformation Software does not have any document that predates its Notice of Appeal with an express
19 conveyance of this right.  *See, e.g.*, *Arachnid*, 939 F.2d at 1579 n.7; *Mas-Hamilton*, 156 F.3d at
20 1210.  Here, Mformation Software has argued that the Bill of Sale is the operative document that
21 actually conveyed an interest in the patent in suit to Mformation Software.  (Dkt. No. 1145 at 6 n.3.).
22 As explained above, however, the Bill of Sale contains no express terms conveying the right to sue
23 for past infringement—it conveys merely "all right, title and interest" to assets identified on two

24 ---
25 [6] Indeed, even now, Mformation Software cannot maintain a consistent position regarding the
26 supposed importance of the "Secured Party Sale Agreement."  On the one hand, it is the critical link
   providing a definition that, according to Mformation Software, shows that the Bill of Sale
   supposedly transferred the right to sue for past infringement.  On the other hand, Mformation
27 Software insists that it did not provide the "Secured Party Sale Agreement" to the Federal Circuit
   because it is "relative[ly] immaterial[]."  (Dkt. No. 1145 at 6 n.3.)

28

1    schedules, one of which includes the '917 patent.  (Ex. F.)  That does not amount to an express

2    conveyance of the right to sue for past infringement.  *Arachnid*, 939 F.2d at 1579 n.7; *see Mas-*

3    *Hamilton*, 156 F.3d at 1210.

4              To find language that even refers to the right to sue for past infringement, Mformation

5    Software must resort to a definition of "Transferred Assets" in the "Secured Party Sale Agreement,"

6    which in turn refers to "Collateral" as defined in either the Senior Loan Documents or the Term

7    Loan Documents, and then presume that the "Intellectual Property Security Agreement" is a Senior

8    or Term Loan Document.  (*See* Dkt. No. 1145 at 7 n.4.)  But its supposed chain of cross references

9    breaks down at the very first step.  The Bill of Sale does not, as Mformation Software's chain of

10   reasoning implies, depend upon the definition of "Transferred Assets" from the "Secured Party Sale

11   Agreement."  The Bill of Sale uses definitions from the "Secured Party Sale Agreement" only for

12   terms "not defined herein."  (Ex. F, Sept. 21, 2012 Bill of Sale.)  And the Bill of Sale expressly

13   provides its own definition of "Transferred Assets" as it conveys "all right, title and interest of the

14   Company in and to the assets identified on Schedule 1 and Schedule 2 attached hereto (collectively,

15   the 'Transferred Assets')."  (*Id.*)  Mformation Software itself acknowledges that the '917 patent is

16   covered by the Bill of Sale because it is expressly listed on Schedule 2.  (Dkt. No. 1145 at 7 n.4.)

17   There is thus no need to look outside the Bill of Sale to see that the '917 patent was transferred and

18   the operative terms defining the scope of the rights conveyed.

19             Indeed, even Mformation Software does not squarely assert that the definitions in the

20   "Secured Party Sale Agreement" are necessary to determine the operation of the Bill of Sale.

21   Instead, Mformation Software takes two approaches.  First, it pretends that the language in the Bill

22   of Sale conveying "all right, title and interest" in the patent is sufficient to convey the right to sue for

23   past infringement.  (Dkt. No. 1145 at 7.)  That simply misstates the law.  *Arachnid*, 939 F.2d at 1579

24   n.7 ("The authorities are uniform that the [assignment of the right of action for past infringements]

25   must be express, and can not be inferred from an assignment of the patent itself.");  *see Mas-*

26   *Hamilton*, 156 F.3d at 1210.  Second, it vaguely asserts that "[c]onsistent with" the listing of the

27   '917 patent on Schedule 2 to the Bill of Sale, the '917 patent (and the right to sue for past

28   infringement) is also within the definition of "Transferred Assets" in the "Secured Party Sale

1    Agreement." (Dkt. No. 1145 at 7 n.4.) But whether it is "consistent" with the Bill of Sale that the

2    '917 patent may also have come within a different definition of "Transferred Assets," in another

3    contract, is not relevant here. The relevant question is whether the Bill of Sale by its express terms

4    conveyed the right to sue for past infringement. That can be determined from within the four corners

5    of the Bill of Sale, and the Bill of Sale contains no such express terms.

6         In any event, there are also further gaps in Mformation Software's convoluted chain of cross

7    references. The "Secured Party Sale Agreement" defines "Transferred Assets" as, among other

8    things, the property defined as "Collateral" in (i) the Senior Loan Documents, and (ii) the Term Loan

9    Documents. (Dkt. No. 1147, Ex. 1, Secured Party Sale Agreement § 1.1(d).) Mformation Software

10   claims that the definition of "Collateral" in the "Intellectual Property Security Agreement" is

11   relevant because that document is one of the "Senior Loan Documents" or "Term Loan

12   Documents"—although it does not specify which. (Dkt. No. 1145 at 7 n.4 (citing Dkt. No. 1147,

13   Ex. 1, Secured Party Sale Agreement at Recitals ¶ 1).) But nothing in the "Secured Party Sale

14   Agreement" itself describes the "Intellectual Property Security Agreement" as one of the "Senior

15   Loan Documents" or "Term Loan Documents." Certain dated documents are referenced to define

16   "Senior Loan Documents" and "Term Loan Documents," but the "Intellectual Property Security

17   Agreement" is not among them. (Dkt. No. 1147, Ex. 1, Secured Party Sale Agreement at

18   Recitals ¶ 1.) Nor does Mformation Software identify any other evidence that the March 7, 2011

19   "Intellectual Property Security Agreement" is one of the "Senior Loan Documents" or "Term Loan

20   Documents." In essence, Mformation Software asks the Court to take Mformation Software's word

21   for that proposition without demonstrating it through the documents themselves. Especially given

22   Mformation Software's ever-shifting explanations concerning how it supposedly acquired the right

23   to sue for past infringement, that is simply not sufficient.

24        Finally, even if the "Intellectual Property Security Agreement" were one of the "Senior Loan

25   Documents" or "Term Loan Documents," cobbling together cross references from the "Bill of Sale"

26   to the "Secured Property Sale Agreement" to the "Intellectual Property Security Agreement" cannot

27   create express terms transferring the right to sue for past infringement of the '917 patent. In the

28   "Intellectual Property Security Agreement," Mformation Technologies merely granted a security

1    interest in certain collateral, including the '917 patent and the right to sue for past infringement

2    thereof.  But trying to convert terms defining a security interest into a transfer of the right to sue for

3    past infringement by means of a cross reference in a later document is simply too winding and

4    weaving an approach to meet the requirement that the right must be conveyed in express terms.

5    *Arachnid*, 939 F.2d at 1579 n.7; *see Mas-Hamilton*, 156 F.3d at 1210.  Mformation Software's

6    arguments are a cobbled-together edifice that simply cannot stand.

### D.    Mformation Software's Alternative Request To Join As Co-Plaintiff Is a Red Herring.

9            Mformation Software's alternative request to be joined as a co-plaintiff is a red herring.  As

10   an initial matter, it is outside the scope of the remand.  As explained above, the Remand Order

11   directs a limited inquiry into the motion to substitute filed before the Federal Circuit.  Neither the

12   Remand Order nor the motion to substitute that Mformation Software filed in the Federal Circuit

13   contemplated a motion for Mformation Software to join this litigation as a co-plaintiff.  (*See* Ex. A;

14   Ex. B).  This Court is strictly limited to entertaining the issues identified in the Federal Circuit's

15   remand, and a motion to join is not among them.[7]  *See, e.g.*, *U.S. v. Kirschner,* 443 F. App'x at 482.

16          In addition, given the posture of the case, Mformation Software's alternative motion to join

17   as a co-plaintiff is irrelevant at this juncture.  It can do nothing to help the Federal Circuit resolve the

18   Motion to Substitute and Motion to Dismiss pending before it.  Those motions must be decided on

19   the record presented when they were filed and on the facts as they stood as of that time.  Those

20   motions will determine whether there is any continuing litigation for Mformation Software to join

21   here or if the entire appeal will be dismissed.  Mformation Software argues that it seeks to be joined

---

[7] Mformation Software claims that the alternative of joining the litigation is contemplated by one of the questions the Federal Circuit framed for this Court.  That is not correct.  The Federal Circuit asked this Court to consider whether it is proper for a party to seek substitution "as distinct from being added to the litigation" where, as here, the party claims that it takes on no liability for judgments against its predecessor.  (Ex. A at 3.)  By noting the possibility that different standards might apply to a party seeking merely to be *added* to the litigation, the Federal Circuit in no way suggested that on this "limited remand" Mformation Software could reframe its motion and seek joinder instead of substitution.  To the contrary, the terms of the Remand Order are clear that Mformation Software was granted leave to file "its motion to substitute," nothing else.  (*Id.*)

1  as a party so that it can pursue its interest in restoring the jury's infringement verdict at the Federal

2  Circuit. But a new motion now to be joined as a plaintiff before this Court cannot do anything to

3  retroactively cure deficiencies in Mformation Software's standing to pursue the appeal.

4          Indeed, the rationale that Mformation Software provides for granting its alternative motion

5  only highlights the mismatch between Mformation Software's theory and the posture of the case.

6  Mformation Software cites a series of unpublished district court decisions for the proposition that it

7  is permissible for a court to grant joinder where the rights of parties are unclear or where there is

8  "confusion" concerning what rights in a patent an entity has acquired. (Dkt. No. 1145 at 9.) But

9  granting Mformation Software's motion on that theory would be pointless. As noted above, granting

10 such a motion could not affect Mformation Software's standing in the Federal Circuit—that must be

11 determined based upon the facts as they stood when Mformation Software filed its Notice of Appeal

12 last December. Moreover, granting a motion to join on that basis would defeat the whole purpose of

13 the remand, which was for this Court to *establish clarity* on issues that would assist the Federal

14 Circuit in deciding the motions before it—issues such as when Mformation Software acquired the

15 right to sue for past infringement. In the cases Mformation Software cites, granting joinder is

16 essentially used as a method for postponing any definitive decision on the rights each party has and

17 leaving that to be determined when it is necessary to resolve another issue, such as standing. *E.g.*,

18 Order at 2–3, *Smartgene, Inc. v. Advanced Biological Labs, SA*, No. 08-642 (BAH) (D.D.C. Nov. 23,

19 2011) (Dkt. No. 1147, Ex. 8); Order at 8–9, *EpicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*,

20 No. 5:07CV125 (E.D. Tex. June 26, 2008) (Dkt. No. 1147, Ex. 10); *Mars Inc. v. JCM Am. Corp.*,

21 No. 05-3165 (RBK), 2007 WL 776786, at *2 (D.N.J. Mar. 9, 2007). But that solution makes no

22 sense here, because this case has already reached the point where there is a motion to dismiss based

23 on lack of standing in the Federal Circuit. It is vital to know exactly what rights Mformation

24 Software acquired and when it acquired them, because that information is critical for determining

25 whether there is any case to go forward at all. Kicking the can down the road by simply adding

26 parties on the theory that their rights are unclear is not an option.

27          Because Mformation Software's alternative motion to join as co-plaintiff does not bear upon

28

1   any issues identified by the Federal Circuit, resolving it would be both improper and unnecessary.[8]

2   It will become necessary to address the possibility of joinder only if this case is eventually remanded

3   in its entirety, or if joinder is needed for BlackBerry to execute upon its judgment for costs.

4   **IV.   CONCLUSION**

5           For the foregoing reasons, BlackBerry respectfully requests that this Court deny Mformation

6   Software Technologies LLC's Motion to Substitute as Plaintiff or, Alternatively, to Join as Co-

7   Plaintiff Pursuant to Fed. R. Civ. P. 25(c).

8           Specifically, to address the questions framed by the Federal Circuit and provide assistance

9   that Court sought through this remand, the Court should enter the following express holdings:

10          1.      Because it is not legally permissible for Mformation Software to be substituted for

11                  Mformation Technologies as a party to this litigation while denying responsibility for

12                  judgments entered against Mformation Technologies in this litigation, Mformation

13                  Software may not be substituted as a party.

14          2.      Considering the documents presented to the Federal Circuit, Mformation Software

15                  failed to establish that it had acquired the right to sue for past infringement of the

16                  '917 patent either at the time it filed its Notice of Appeal on December 17, 2012, or at

17                  the time it filed its Motion To Substitute on January 3, 2013.

18          3.      Even if the new documents Mformation Software has presented on this remand are

19                  considered, Mformation Software still has not shown that, as of the time it filed its

20

21  [8] If the Court nonetheless entertains the motion for joinder, it should be denied.  Mformation
    Software seeks to be joined as plaintiff on terms that allow it to pursue rights in the litigation, but
22  that leave all liabilities for the past judgment with Mformation Technologies -- a defunct corporation
    without assets.  (*See* Dkt. No. 1145 at 10 (asserting that joinder would preserve BlackBerry's ability
23  to "enforce the cost award against Mformation [Technologies]").)  That form of "joinder" is no
    different from Mformation Software's improper theory that it can take only rights and not liabilities
24  as a substitute party.  None of Mformation Software's cases on joinder suggest that a new party may
    join for purposes of pursuing rights in a case while leaving liabilities with a judgment-proof shell
25  from which it just acquired its rights.  That approach to "joinder" would simply be an end run around
    the rule barring Mformation Software from achieving the same result through a substitution in which
26  it acquired only rights and not liabilities.  Instead, in joinder cases the new party is joined with a
    functioning entity that remains in the case.
27

28

1   Notice of Appeal on December 17, 2012, or its Motion to Substitute on January 3,

2   2013, it had acquired the right to sue for past infringement of the '917 patent.

3   4.   Mformation Software did not have the right to sue for past infringement until the

4   Confirmation Agreement was entered into on January 24, 2013.

5   5.   Because Mformation Software lacked the right to sue for past infringement as of

6   January 3, 2013, it was not a proper substitute party at that time.

7   6.   Mformation Software's motion in the alternative for joinder is denied.

8

9   DATED:  August 9, 2013                           KIRKLAND & ELLIS LLP
                                                      Respectfully submitted,
10

11                                                   */s/ Meredith Zinanni*
                                                     Meredith Zinanni
12
                                                     Patrick F. Philbin (*pro hac vice* pending)
13                                                   KIRKLAND & ELLIS LLP
                                                     655 Fifteenth Street, N.W.
14                                                   Washington, D.C.  20005
                                                     Telephone:    (202) 879-5000
15                                                   Facsimile:    (202) 879-5200

16                                                   Linda S. DeBruin
                                                     (Admitted to this Court on September 27, 1991)
17                                                   KIRKLAND & ELLIS LLP
                                                     300 North LaSalle
18                                                   Chicago, IL  60654
                                                     Telephone:    (312) 862-2000
19                                                   Facsimile:    (312) 862-2200
                                                     linda.debruin@kirkland.com
20
                                                     Marc H. Cohen (CA Bar No. 168773)
21                                                   KIRKLAND & ELLIS LLP
                                                     950 Page Mill Road
22                                                   Palo Alto, CA  94304
                                                     Telephone:    (650) 859-7000
23                                                   Facsimile:    (650) 859-7500
                                                     marc.cohen@kirkland.com
24
                                                     *Attorneys for Defendants and Counterclaim*
25                                                   *Plaintiffs BlackBerry Limited and BlackBerry*
                                                     *Corporation*
26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify on 9th day of August, 2013, that a copy of the foregoing was filed electronically through the Court's CM/ECF system, with notice of case activity automatically generated and sent electronically to all parties.

DATED: August 9, 2013

KIRKLAND & ELLIS LLP
Respectfully submitted,

*/s/ Cassandra Milleville*
Legal Assistant

Patrick F. Philbin (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone:     (202) 879-5000
Facsimile:      (202) 879-5200

Linda S. DeBruin
(Admitted to this Court on September 27, 1991)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
linda.debruin@kirkland.com

Marc H. Cohen (CA Bar No. 168773)
KIRKLAND & ELLIS LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:     (650) 859-7000
Facsimile:      (650) 859-7500
marc.cohen@kirkland.com

*Attorneys for Defendants and Counterclaim Plaintiffs BlackBerry Limited and BlackBerry Corporation*