1  EDWARD R. REINES (Bar No. 135960)
2  *edward.reines@weil.com*
   WEIL, GOTSHAL & MANGES LLP
3  Silicon Valley Office
   201 Redwood Shores Parkway
4  Redwood Shores, CA  94065
   Telephone: (650) 802-3000
5  Facsimile: (650) 802-3100

6
   Attorney for Plaintiff
7  MFORMATION SOFTWARE TECHNOLOGIES LLC

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

11

12 | MFORMATION TECHNOLOGIES, INC., | Case No. C-08-4990 EMC |
   |---|---|
13 | | **MFORMATION SOFTWARE TECHNOLOGIES LLC'S REPLY IN SUPPORT OF ITS MOTION** |
   | Plaintiff, | **TO SUBSTITUTE AS PLAINTIFF OR,** |
14 | | **ALTERNATIVELY, TO JOIN AS CO-** |
   | v. | **PLAINTIFF PURSUANT TO FED. R. CIV. P.** |
15 | | **25(C)** |
   | RESEARCH IN MOTION LIMITED | |
16 | and RESEARCH IN MOTION CORPORATION, | |
17 | | DATE: August, 22 2013 |
   | Defendants. | TIME: 1:30 PM |
18 | | PLACE: Courtroom 5, 17th Floor, San Francisco |
   | | JUDGE: Hon. Edward M. Chen |
19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3    I.   INTRODUCTION ................................................................................................. 1

4    II.  ARGUMENT ......................................................................................................... 2

5         A.   BlackBerry's Threshold Procedural Arguments Lack Merit And Would Place
              This Court In An Unduly Awkward Position .......................................................... 2
6
         B.   BlackBerry Does Not Dispute That MST Is A Proper Successor In Interest ......... 5
7
         C.   Even If It Were Proper To Consider Blackberry's "Objections" On The
8             Merits, Those Objections Are Baseless ................................................................. 6

9              1.   The "Step Into Your Predecessor's Shoes" Principle Merely
                    Governs Proceedings *After* Substitution – It Is Not A Precondition
10                  To Substitution ....................................................................................... 6

11             2.   Under Controlling Federal Circuit Law, MST Acquired The Right
                    To Sue For Past Infringement In A Manner Sufficient To Make It A
12                  Proper Party To This Action ................................................................... 8

13        D.   The Remand Order Contemplates Joinder As An Alternative Remedy ............... 12

14   III. CONCLUSION .................................................................................................... 14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beghin-Say, Int'l v. Ole-Bendt Rasmussen,*
733 F.2d 1568 (Fed. Cir. 1984)........................................................................... 4

*Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.,*
53 F.3d 851 (7th Cir. 1995).................................................................................. 7

*Caterpillar v. Lewis,*
519 U.S. 61 (1996)............................................................................................. 11

*Corbin v. Blankenburg,*
39 F.3d 650 (6th Cir. 1994).................................................................................. 7

*ELCA Enters. v. Sisco Equip. Rental & Sales, Inc.,*
53 F.3d 186 (8th Cir. 1995)................................................................................ 11

*Grupo Dataflux v. Atlas Global Group,*
124 S. Ct. 1920 (2004)...................................................................................... 11

*In re Bernal,*
207 F.3d 595 (9th Cir. 2000)................................................................................ 7

*Mas-Hamilton Group v. LaGard,*
156 F.3d 1206 (Fed. Cir. 1998)................................................................ 9, 10, 11, 12

*PricePlay, Inc. v. Google, Inc.,*
2010 U.S. App. LEXIS 21878 (Fed. Cir. Oct. 21, 2010)...................................... 4

*Ransom v. Brennan,*
437 F.2d 513 (5th Cir. 1971)................................................................................ 7

*Reynolds v. United States,*
No. 07-CV-604, 2008 WL 4501927 (E.D. Tex. Sept. 29, 2008)......................... 3

*Schreiber Foods v. Beatrice Cheese,*
402 F.3d 1198 (Fed. Cir. 2005) ........................................................................ 11

*United Access Technologies, LLC v. EarthLink, Inc.,*
No. 02-272-MPT, 2012 WL 2175786 (D. Del. June 14, 2012)......................... 7, 8

RULES AND STATUTES

Fed. R. App. P. 1(a)(1)........................................................................................ 2

Fed. R. App. P. 43......................................................................................... 1, 3, 9

Fed. R. App. P. 43(b)..................................................................................... 2, 3, 4

Fed. R. Civ. P. 1.................................................................................................. 3

Fed. R. Civ. P. 4 ................................................................................................................. 13

Fed. R. Civ. P. 5 ................................................................................................................. 13

Fed. R. Civ. P. 25 ......................................................................................................... 12, 13

Fed. R. Civ. P. 25(a)(3) ..................................................................................................... 13

Fed. R. Civ. P. 25(c) ..................................................................................................... *passim*

**OTHER AUTHORITIES**

6-25 James Wm. Moore et al., Moore's Federal Practice § 25.36 (3d ed. 1999) ....................... 7, 8

## I.      INTRODUCTION

BlackBerry Limited and BlackBerry Corporation's (collectively, "BlackBerry") opposition attempts to create as much complication as it can to a relatively straightforward issue. The Federal Circuit remand authorized Mformation Software Technologies LLC ("MST") to file its substitution motion with this Court. MST is unquestionably the successor in interest deserving of substitution so the appeal from the $147 million jury verdict can go forward. The documentation establishes this conclusively.

BlackBerry's argument that this Court was somehow supposed to adjudicate the FRAP 43 substitution motion pending in the Federal Circuit or to answer questions posed by the Federal Circuit defies law and logic. Motions in front of this Court need to be authorized by the FRCP, not the FRAP. The remand order specified that MST was granted a remand to file a substitution motion with this Court. The Federal Circuit identified two non-limiting considerations for this Court to evaluate – it did not create interrogatories for this Court to answer. This substitution motion is authorized by the Federal Circuit order.

Next, Blackberry attempts to complicate this matter by presenting its standing arguments and conflating them with the substitution issue. But BlackBerry's motion to dismiss based on the supposed lack of standing is still pending before the Federal Circuit and was not within the scope of the remand. It makes no sense for this Court to decide appellate standing issues and BlackBerry's attempt to put this Court in the position of doing so should be rejected.

Finally, BlackBerry's opposition on the true issue of substitution essentially boils down to a complaint that two new documents were submitted by MST. There are two problems with this argument. First, BlackBerry successfully sought a remand from the Federal Circuit precisely to allow these documents to be considered by this Court. Now that they have been included to avoid this satellite dispute, Blackberry complains that they are in the record and should not be. Second, BlackBerry never explains why these two documents are required to establish that substitution is proper. There is no reason. MST submitted them because BlackBerry complained they were not in the record and their inclusion removes this distracting non-issue.

1    The substitution motion should be granted.

2    **II.      ARGUMENT**

3          **A.      BlackBerry's Threshold Procedural Arguments Lack Merit And Would Place
4                This Court In An Unduly Awkward Position**

5          To attempt to avoid an appeal on the merits of the jury's $147 million verdict, Blackberry

6    misdescribes the Federal Circuit's remand order regarding party substitution.   Blackberry's

7    reading not only lacks basis, but it would unnecessarily place this Court in an unduly awkward

8    position.   Blackberry contends that the purpose of the remand order is to allow this Court to

9    decide "the motion that had been presented to the Federal Circuit."  D.I. 1155 [Blackberry's Opp.

10   to MST's Substitution Mtn. (hereinafter "Blackberry Opp.")] at 6:11-15 ("the Federal Circuit

11   explained that it was remanding because the 'better course' was to have this Court 'decide the

12   motion to substitute'—that is, the motion that had been presented to the Federal Circuit.").

13         In other places, Blackberry suggests that this Court should "answer" questions posed by

14   the Federal Circuit as though the motion panel had formulated certified questions for this Court to

15   answer.  *See*, *e.g.*, Blackberry Opp. at 7:5-7 ("The specific questions the Federal Circuit framed

16   are critical because the Federal Circuit expressly retained jurisdiction except to the limited extent

17   it remanded for this Court to address particular issues.").

18         Put simply, this is all an attempt to confuse the straightforward.   The remand order

19   authorized MST to file a substitution motion in this Court and this Court should resolve that

20   motion on the merits.   Specifically, in its remand order, the Federal Circuit expressly granted

21   MST "leave to file its motion to substitute *in the district court*."[1]  Reines Decl., Ex. 1 [Remand

22   Order] at 3.  Because MST was to move for substitution in a district court, it would not have

23   made sense to simply re-file in this Court its appellate substitution motion originally filed in the

24   Federal Circuit under FRAP 43(b), as BlackBerry argues it should have.  Rather, because it was

25   filing in district court, it was proper for MST to move pursuant to FRCP 25(c), which governs

26   substitution in this Court.  *Compare* FRAP 1(a)(1) ("These rules govern procedure in the United

27

28   _____

[1] Emphasis supplied unless otherwise noted.

1   States courts of appeals.") *with* FRCP 1 ("These rules govern the procedure in all civil actions and

2   proceedings in the United States district courts . . . ."); *see also Reynolds v. United States*, No.

3   07-CV-604, 2008 WL 4501927 (E.D. Tex. Sept. 29, 2008) ("the rules of appellate procedure

4   govern procedure in the United States courts of appeals, not the district courts").   Substitution in

5   the district courts is governed by a different procedural rule than that in the circuit courts.   The

6   Remand Order necessarily contemplated that MST would file a new substitution motion.   Nothing

7   in the Remand Order purports to deputize the district court with authority to decide a FRAP 43

8   substitution motion,[2] and BlackBerry's contrary suggestion ignores the elementary principle that

9   different procedural rules govern the different tribunals in the United States federal courts.[3]

10      In any event, neither the substance of MST's motion, nor its evidentiary support, has

11   wavered since it moved the Federal Circuit for substitution in January 2013.   Its basis for

12   substitution then—as now—is that, because it obtained from the original plaintiff all right, title

13   and interest in the patent-in-suit, including the claims and causes of actions at issue in this

14   litigation, it is a "transfer[ee] of interest in the . . . property involved in the suit" and, thus, should

15   be made a party to the litigation pursuant to the governing rules of procedure.   *Compare* Reines

16   Decl., Ex. 2 [Brief ISO MST's Motion to Substitute Pursuant to FRAP 43(b)] *with* D.I. 1154

17   [MST's Brief ISO of Motion to Substitute].   Likewise, MST's documentation demonstrating that

18   transfer has remained unchanged.   As MST explained to the Federal Circuit, it acquired all

19   necessary rights to this litigation via a September 21, 2012 UCC public sale auction in which

20   MST placed the winning bid for substantially all of Mformation Technologies, Inc.'s

21   ("Mformation") assets.   Pursuant to that auction, Mformation executed a September 21, 2012 Bill

22   of Sale and also a Confirmation Agreement that transferred to MST the patent-in-suit, "together

---

[2] If both this Court and BlackBerry were to agree that this Court is somehow authorized to render a substitution decision under the Federal Rules of Appellate Procedure, MST is prepared to submit such a motion and welcomes discussion of that process at the hearing.

[3] Nor would it make sense for this Court to answer interrogatories based on the Federal Circuit remand order, as Blackberry suggests.   The first act ordered is leave for MST to file a substitution motion in this Court.    The two "consideration[s]" identified by the motion panel are just that: considerations.   *See* Reines Decl., Ex. 1 [Remand Order] at 3.   Indeed, the use of the phrase "inter alia" makes clear that they are not at all exhaustive considerations.   Nowhere does the motion panel ask or order this Court to answer any questions.

1    with and including all rights to sue and recover for past, present or future infringement." Reines

2    Decl., Ex. 3 [Confirmation Agreement]. As documented in both MST's opening brief and its

3    appellate substitution papers, these were the only documents necessary to demonstrate that MST

4    is a proper substitute party.

5        BlackBerry does not dispute that these key documents were before the Federal Circuit.

6    Instead, it criticizes MST for *also* submitting in support of this motion a September 21, 2012

7    Secured Party Sale Agreement (the "Sale Agreement") and the incorporated-by-reference

8    Intellectual Property Security Agreement. Blackberry's tactics are obvious. It originally

9    complained in the Federal Circuit that these documents were not included for full and fair

10    adjudication of the substitution question and now it complains that they are included. The fact

11    that this is the very documentation that BlackBerry demanded was necessary to complete the

12    record resolves the matter.

13        Although BlackBerry now contends that the substitution motion should be decided on a

14    closed record, the entire basis for its remand request was to obtain "discovery to uncover the

15    exact terms of the alleged purchase that is the basis for mFormation Software's claim that it

16    should be substituted for Mformation Technologies." *See* Reines Decl., Ex. 4 [BlackBerry's Opp.

17    to MST's Fed. Cir. Substitution Mtn.] at 14. To obviate the need for costly discovery and

18    eliminate this satellite dispute, MST produced the documentation that BlackBerry insisted it

19    would need to seek on remand. BlackBerry should not now be heard to validly complain that

20    MST somehow improperly expanded the record by submitting the very documents BlackBerry

21    insisted would need to be added to the substitution record on remand.[4]

---

22   [4] Setting aside BlackBerry's opportunistic flip-flops, nothing in the Federal Circuit's Remand
23   Order dictates that the substitution motion should be decided on a closed record. Nor is there any
    basis in logic or law for doing so. On the contrary, that the Federal Circuit deemed it the "better
24   course" to remand the substitution issue in the face of Blackberry's request for new documents
    suggests that the record need not be limited to the transactional documents before the appeals
25   court. Were the record so limited, there would have been no need for remand. Where, as here, all
    relevant jurisdictional facts are contained within documents of record, appellate courts are readily
26   equipped to (and do) make substitution determinations without remand and routinely do so. *See,*
    *e.g., Beghin-Say, Int'l v. Ole-Bendt Rasmussen*, 733 F.2d 1568 (Fed. Cir. 1984) (substitution of
27   subsidiary for parent permitted under FRAP 43(b) when patents at issue had been assigned to
    subsidiary); *PricePlay, Inc. v. Google, Inc.*, 2010 U.S. App. LEXIS 21878 (Fed. Cir. Oct. 21,
28   2010) (granting Performance Pricing, Inc.'s motion to substitute for PricePlay, Inc. pursuant to
    FRAP 43(b) due to transfer in interest).

In all events, the Sale Agreement and incorporated Intellectual Property Security Agreement are not necessary to the substitution issue.[5]   For all these reasons, BlackBerry's complaint regarding the additional documents in the record is nothing more than a distraction to attempt to complicate resolution of the substitution issue.

### B.      BlackBerry Does Not Dispute That MST Is A Proper Successor In Interest

On the merits, it is important to appreciate that BlackBerry concedes that MST has obtained all rights in the patent-in-suit, including the right to sue for past infringement.  It is undisputed that MST is a proper successor-in-interest.  *See* Blackberry Opp. at 8:17-19 (acknowledging that MST "acquire[d] the right to sue for past infringement"). Instead, BlackBerry opposes substitution on grounds that the *timing* of MST's acquisition of those rights renders appellate *standing* defective.

As discussed above, however, appellate standing is not an issue before this Court.  BlackBerry's motion to dismiss based on the supposed lack of standing is still pending before the Federal Circuit.  It was not within the scope of the remand and was expressly held "in abeyance" for later resolution by the Federal Circuit.  *See* Reines Decl., Ex. 1 at 3 (granting a "limited remand for the purpose of allowing" MST "leave to file its motion to substitute in the district" court, "otherwise retaining jurisdiction over the appeal," and holding "in abeyance" the "motion to dismiss").   The sole "purpose" of this remand is to allow MST to file a district court substitution motion.  *See id.*

FRCP 25(c) governs substitution of transferees of interest in the district courts.  Consistent with the Federal Circuit's retention of the standing motion, the purpose of Rule 25(c) is to ensure "all the proper parties" are heard in an action – it is not a mechanism for definitively addressing standing challenges, which are properly raised via a motion to dismiss. *Mars, Inc. v. JCM Am.*

---

[5]  As explained in MST's opening brief, the Bill of Sale and contemporaneously effective Confirmatory Agreement were the operative documents that effected the conveyance of the relevant rights from Mformation to MST.  *See* D.I. 1145 at 6 n.3.  The recital in the Sale Agreement and Intellectual Property Security Agreement of all "patents, patent applications and like protections . . . including without limitation the patents and patent applications set forth on Exhibit B attached hereto [including the patent-in-suit] . . . [and any] and all claims for damages by way of past, present and future infringements [thereof]" simply reaffirms the parties' intent to transfer the right to sue for past infringement.

1   *Corp.*, No. 05-3165, 2007 WL 776786 at *2 (D.N.J. Mar. 9, 2007) (granting joinder under Rule

2   25(c) notwithstanding "uncertainty" regarding "the rights and interests" in the asserted patents,

3   and noting that any standing challenge should be raised via a "separate motion").

4       In sum, the Federal Circuit has retained jurisdiction over the ultimate appellate standing

5   question. Because MST is indisputably a successor in interest to the patent-in-suit, including the

6   right to sue for past infringement, it is a proper party to this action and that ends the substitution

7   inquiry. BlackBerry's standing objections are not material to that determination and should be

8   rejected.

9       For completeness, MST addresses BlackBerry's objections in the following section. As

10  demonstrated below, both objections are legally unsupported in any event.

11      **C.      Even If It Were Proper To Consider Blackberry's "Objections" On The
               Merits, Those Objections Are Baseless**

12

13      BlackBerry raises two objections to MST's substitution. Neither is legally supported.

14  First, BlackBerry asserts that, as a prerequisite for substitution, "one who substitutes for another

15  must step into his predecessor's procedural shoes." BlackBerry Opp. at 8. Second, BlackBerry

16  contends that, because MST did not demonstrate "that it had acquired the right to sue for past

17  infringement *at the time it filed its Notice of Appeal*," substitution is improper. *Id.* at 12

18  (emphasis in original). Neither objection withstands scrutiny.

19      **1.      The "Step Into Your Predecessor's Shoes" Principle Merely Governs
               Proceedings *After* Substitution – It Is Not A Precondition To
               Substitution**

20

21      BlackBerry asserts that both the appellate and district court substitution procedures

22  "require 'the new party [to] step[] into the procedural position of the original party," citing only

23  *Moore's Federal Practice*. *See* BlackBerry Opp. at 8 (alterations supplied by BlackBerry). This

24  argument is legally and factually flawed.

25      As a threshold matter, *Moore's* establishes no such "requirement." Rather, by its express

26  terms, the passage relied upon by BlackBerry describes the process that the author believes

27  applies *after* the Court has already granted substitution or joinder. In its entirety, the passage

28  takes the conditional form and states that:

> *If the court decides to order substitution or joinder*, the new party steps into the procedural position of the original party. The litigation continues from that point, and the substituted party is bound by any actions already taken by the predecessor and by any orders in the case.  The nature of the action, and the relief sought and possible defenses, remain the same regardless of the substitution.

6-25 James Wm. Moore et al., *Moore's Federal Practice* § 25.36 (3d ed. 1999).  Thus, contrary to BlackBerry's contention, the passage does not even purport to set forth a precondition or "requirement" for substitution.  Indeed, BlackBerry was only able to create the appearance of a requirement by omitting the conditional clause "If the court decides to order substitution or joiner" and altering the text of the remainder of that sentence.  *See* BlackBerry Opp. at 8 ("Both rules require 'the new party [to] step[] into the procedural position of the original party.'") (alterations supplied by BlackBerry).

Consistent with the actual text of *Moore's*, every decision cited in that treatise confirms that this principle governs the rights and obligations of the new party *after* substitution or joinder – it is not some sort of precondition that must be met before substitution occurs.  *See Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971) (granting substitution and deeming the new action a "continuance of the original action"); *Corbin v. Blankenburg*, 39 F.3d 650, 654 (6th Cir. 1994) (reversing dismissal for lack of standing because the district court should have granted the pending substitution motion and allowed the successor to step into the shoes of its predecessor, which would have cured the standing defect); *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir. 1995) (granting substitution and noting that the predecessor's consent to jurisdiction of magistrate judge was binding on the substitute party); *In re Bernal*, 207 F.3d 595 (9th Cir. 2000) (holding that assignee of the loan should have moved to substitute, but that the substitute party would have been bound by original party's procedural default).

Although BlackBerry relies heavily on *United Access Technologies, LLC v. EarthLink, Inc.*, No. 02-272-MPT, 2012 WL 2175786 (D. Del. June 14, 2012), that case, too, confirms that the "step into your predecessor's shoes" principle governs the proceedings *following* substitution. There, Magistrate Judge Thynge did *not* deny substitution based on the transferee's stance

1    regarding its liability for a judgment against its predecessor. *See id*. On the contrary, she granted

2    substitution and simply applied the principle to determine the parties' respective rights and

3    obligations *as a result* of the substitution. *See id*. at *5.

4         Thus, contrary to BlackBerry's assertion, this principle becomes relevant only *after* this

5    Court substitutes or joins MST. At that time, MST shall step "into the procedural position of the

6    original party." 6-25 James Wm. Moore et al., Moore's Federal Practice § 25.36 (3d ed. 1999).

7    Should BlackBerry move to enforce the cost judgment against MST, that principle may well

8    guide the Court's resolution of that motion. It is not, however, a prerequisite to substitution and,

9    thus, has no bearing on the instant motion.

10        Beyond the legal pitfalls in BlackBerry's argument, its factual underpinnings are also

11    flawed. Specifically, BlackBerry's argument is predicated on MST's alleged refusal to be bound

12    by this Court's cost judgment against Mformation. But this argument is premised on a

13    mischaracterization of MST's position with respect to liabilities arising out of this litigation.

14    Significantly, while MST has represented that, *by the terms of the transaction* between it and

15    Mformation, it "expressly" did not assume "any liabilities or obligations of or related to

16    Mformation Technologies, Inc.," MST has taken no position with respect to whether, after

17    substitution, this Court may impose the cost judgment against it. *See* Reines Decl., Ex. 2 [Federal

18    Circuit Substitution Mtn.] at 2. On the contrary, MST has acknowledged that such liability is an

19    issue for this Court to decide on motion for enforcement of the cost award. *See* Reines Decl., Ex.

20    6 at 2 n.3 (stating that "RIM may seek appropriate relief" on costs "by moving for enforcement of

21    the cost award in the district court").

22        In short, both the legal and factual predicates to BlackBerry's argument are fatally flawed.

23                  **2.    Under Controlling Federal Circuit Law, MST Acquired The Right To
                            Sue For Past Infringement In A Manner Sufficient To Make It A
24                          Proper Party To This Action**

25        BlackBerry's second objection is based on MST's alleged failure to obtain the right to sue

26    for past infringement in a timely way. But this argument ignores that, under controlling Federal

27    Circuit precedent, the very manner in which MST obtained its rights is legally sufficient to render

28    MST a proper party to this action. BlackBerry's refusal to squarely take on this precedent is

1   particularly curious given that it was at the heart of the parties' briefing at the Federal Circuit.

2   Only by studiously avoiding this precedent, and framing a legally erroneous "critical question," is

3   BlackBerry free to suggest that MST did not properly obtain the right to sue for past

4   infringement.

5       BlackBerry does not dispute that, pursuant to the September 21, 2012 Bill of Sale,

6   Mformation transferred to MST "all right, title and interest in and to" the patent-in-suit.  It is

7   likewise undisputed that in a January 24, 2013 Confirmatory Agreement, the parties restated that,

8   pursuant to that Bill of Sale, and effective as of September 21, 2012, Mformation "has

9   transferred, conveyed and assigned to" MST all "right, title and interest" in the patent-in-suit,

10  "together with and including all rights to sue and recover for past, present or future infringement."

11  Reines Decl., Ex. 3 [Confirmation Agreement].  The sole dispute is whether the Confirmatory

12  Agreement acknowledges the conveyance of that right in a manner sufficient to render MST a

13  proper substitute party.[6]

14      As MST explained in its Federal Circuit papers, that issue is entirely controlled by the

15  Federal Circuit's decision in *Mas-Hamilton Group v. LaGard*, 156 F.3d 1206 (Fed. Cir. 1998).

16  There, when faced with materially identical facts, the Federal Circuit confirmed that a party in

17  MST's posture is a proper substitute party.  Just as here, the original plaintiff in *LaGard* assigned

18  the patent-in-suit after filing its appeal.  *Id*. at 1210.  Based on the assignment, Masco, the

19  successor-in-interest, substituted in place of LaGard as Defendant-Appellant.  *Mas-Hamilton*

20  *Group*, Nos. 97-1530, 97-1546, Dkt. No. 11 (Fed. Cir.).  In response, Mas-Hamilton, the

21  appellee-accused infringer sought to dismiss for lack of jurisdiction on grounds that "LaGard

22  [lacked] standing to pursue the appeal because it no longer retain[ed] an interest in the '656

23  patent, and Masco lack[ed] standing because, although it own[ed] title to the '656 patent, it did

24

---

25  [6] Notwithstanding BlackBerry's cheap shot that MST "simply misstates the law" regarding the
    right to sue for past infringement, s*ee* BlackBerry Opp. at 14, the parties agree that the right must

26  be expressly conveyed.   Contrary to BlackBerry's suggestion, MST has consistently
    acknowledged that such conveyance must be express.  *See, e.g.*, Reines Decl., Ex. 5 [MST's

27  Reply ISO Its FRAP 43 Substitution Mtn.] at 8 (explaining the significance of Masco's
    supplementary assignment expressly confirming the transfer of the right to sue for past

28  infringement).

1    not have title at the time the alleged infringement took place because LaGard did." *Id*. at 1210.

2            The Federal Circuit began its analysis by reviewing the series of agreements between the

3    parties, which included a "supplementary assignment in which [LaGard] confirmed *nunc pro*

4    *tunc*, that Masco had the right to sue for past infringement." *Id.* at 1211.  In view of the series of

5    agreements, and the fact that "standing was not deficient at the time the suit was filed, nor at the

6    time that the appeal was filed," the Federal Circuit confirmed that Appellant Masco had standing

7    to pursue the appeal.  *Id.*

8            Essentially the same sequence of events occurred here.  It is undisputed that, when

9    Mformation filed its notice of appeal on September 6, 2012, it had yet to transfer any rights in the

10   patents-in-suit.  Thus, at the time of the notice of appeal, standing was indisputably proper.  After

11   filing its appeal, Mformation – like LaGard – assigned title of the patents-in-suit to a separate

12   entity, MST, and executed a supplementary document confirming that the assignee possessed

13   both title and the right to sue for past infringements.  *See* Reines Decl., Ex. 3 [Confirmation

14   Agreement].  Thus, just as substitute appellant Masco had standing based on its acquisition of title

15   and the right to sue for past infringement, standing is proper as to MST based on its acquisition of

16   those rights from Mformation.

17           Rather than address *LaGard* head on, BlackBerry relies on two sleights of hand.  First,

18   citing *Enzo*, BlackBerry argues that the Confirmatory Agreement is ineffective because "[s]uch

19   *nunc pro tunc* assignments" are "not sufficient to confer retroactive standing."  BlackBerry Opp.

20   at 11.  BlackBerry fails to acknowledge, however, that this very argument was rejected by the

21   Federal Circuit in *LaGard*.  Specifically, in response to this argument, the Federal Circuit

22   distinguished *Enzo* as a case involving the more common scenario where a party lacked standing

23   when it filed its complaint.  *See LaGard*, 156 F.3d at 1210.  Under such circumstances, it is well

24   established that a *nunc pro tunc* transfer of title cannot retroactively cure the standing defect.

25   Because the original plaintiff in *LaGard* had standing when it filed its complaint, however,

26   "operation of the supplemental assignment specifying the grant of the right to sue for past

27   infringement [wa]s not being used to cure deficient standing."  *Id.* at 1211.  Here, too, it is

28   undisputed that the original plaintiff had standing when it filed its complaint.  Consequently,

1    under *LaGard*, the Confirmatory Agreement was not an improper attempt to cure deficient

2    standing. *Id.*

3         Further, although the *LaGard* decision notes that standing was "not deficient" at

4    either the "time of suit," or "at the time that the appeal was filed," it did not purport to establish a

5    new rule that standing must be assessed at the time that a notice of appeal is filed.  Nor could

6    it have, given the long-standing principle that, where jurisdiction is proper when the complaint

7    is filed, jurisdictional defects that arise during the course of the litigation may be cured before

8    judgment. *See Caterpillar v. Lewis*, 519 U.S. 61 at 70, 73 (1996) (lack of complete diversity

9    for removal jurisdiction "was not satisfied at the time of removal," but "the jurisdictional defect

10   was cured" by the dismissal of the non-diverse party); *Grupo Dataflux v. Atlas Global*

11   *Group*, 124 S. Ct. 1920 at 1925 (2004) (confirming the holding in Caterpillar that the

12   "postsettlement dismissal of the diversity-destroying defendant [in Caterpillar] cured the

13   jurisdictional defect" because "the less-than-complete diversity which had subsisted

14   throughout the action had been converted to complete diversity between the remaining

15   parties to the final judgment"); *Schreiber Foods v. Beatrice Cheese*, 402 F.3d 1198 at

16   1204 (Fed. Cir. 2005) (where standing is proper as of filing of the complaint, a temporary loss of

17   standing during patent litigation can be cured before entry of judgment); *ELCA Enters. v. Sisco*

18   *Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190-91 (8th Cir. 1995) (ordering the substitution of

19   the transferee of the real property in suit, and holding that such substitution cured any potential

20   jurisdictional defect arising from the transfer of the property during litigation).   Thus, any

21   standing defect that arose after the district court entered its August 8, 2012 final judgment is

22   immaterial because, at the very latest, that defect was cured on January 24, 2013, when

23   MST and Mformation executed the Confirmatory Agreement – well before the Federal Circuit

24   stood to enter a final judgment.

25        Moreover, even if there were a requirement that standing be proper when a notice of

26   appeal is filed, there can be no dispute that Mformation had standing when it filed its

27   September 6, 2012 notice of appeal because it indisputably owned all rights in the patents-in-suit

28   until September 21, 2012. Just as LaGard, Mformation possessed both title to the patent-in-suit

1    and the right to sue for past infringement when it filed its appeal.  Thus, the appeal arising out of

2    this notice (No. 2012-1679) would meet even this additional requirement.

3         In a second sleight of hand, BlackBerry makes no attempt to address this first notice of

4    appeal and, instead, artificially limits the "critical question" to whether MST "showed that it had

5    acquired the right to sue for past infringement" when MST filed an amended notice of appeal on

6    December 17, 2012.  BlackBerry Opp. at 12.  Yet, BlackBerry provides no authority for its

7    assertion that the filing of MST's amended notice of appeal is a "critical" date for standing

8    purposes.  And, even assuming arguendo that the amended notice of appeal was somehow

9    improper,[7] the original appeal is not subject to challenge.  Because it artificially narrowed the

10   inquiry, BlackBerry does *not* contest that, based on the first notice of appeal, MST is a proper

11   substitute appellant under *LaGard*.  Because substitution is indisputably proper under *LaGard*,

12   BlackBerry's second objection must also be rejected.

13        **D.    The Remand Order Contemplates Joinder As An Alternative Remedy**

14        BlackBerry's objection to MST's alternative joinder request loses sight of the purpose of

15   the remand.  As BlackBerry acknowledges, the remand is limited in nature.  By its express terms,

16   it is for the "purpose of allowing [MST] leave to file its motion to substitute in the district court."

17   Reines Decl., Ex. 1 [Remand Order] at 3.  Consequently, the issue to be decided by this Court is

18   whether, under the governing substitution procedures, MST should be made a party to this

19   litigation.

20        Rule 25, entitled "Substitution of Parties," governs substitution in the district courts.  *See*

21   Fed. R. Civ. P. 25.  Subsection (c), in turn, which applies to transfers of interest, expressly

22   authorizes courts to join a successor in interest in response to a substitution motion.  *See* Fed. R.

23   Civ. P. 25(c) ("If an interest is transferred, the action may be continued by or against the original

24   party unless the court, on motion, orders the transferee to be substituted in the action ***or joined***

25

---

26   [7] As explained in MST's response to BlackBerry's motion to dismiss, the scope of the appeal
     would remain unaltered even if the amended notice of appeal were deemed ineffective.  *See*
27   Reines Decl., Ex. 6 [MST's Resp. to BlackBerry's Mtn. to Dismiss] at 5-6.  However, because the
     Federal Circuit expressly retained jurisdiction over, and held in abeyance, BlackBerry's dismissal
28   motion, that issue is not currently before the Court.

---

1  *with the original party*.").

2  Attempting to avoid the possibility of joinder, BlackBerry attempts to draw a semantic

3  distinction, arguing that "a motion to join" is not among the "issues" this Court is to decide.

4  BlackBerry Opp. at 16.  But BlackBerry's argument fails to acknowledge that joinder is but one

5  among several types of relief a court may order on a Rule 25 motion to substitute – it does not

6  require the filing of a separate "motion to join."  As noted above, subsection (c) expressly

7  authorizes courts to "order[] the transferee to be . . . joined with the original party." Fed. R. Civ.

8  P. 25(c).  That this is merely a form of relief available on a motion for substitution (and does not

9  require the filing of a separate joinder motion) is confirmed not only by the title of the Rule

10  ("Substitution of Parties"), but also by the express reference in subsection (c) to the service

11  requirements of Rule 25(a)(3).  Specifically, the reference to Rule 25(a)(3) in subsection (c)

12  makes clear that the same motion on which a court may "order[] the transferee to be . . . joined,"

13  Fed. R. Civ. P. 25(c), is "A motion to substitute," which must meet the service requirements of

14  Rules 4 and 5.  *See* Fed. R. Civ. P. 25(a)(3).

15  BlackBerry's appeal to the "procedural posture" of the case is similarly unavailing.

16  According to BlackBerry, granting joinder "would defeat the whole purpose of the remand, which

17  was for this Court to *establish clarity* on issues that would assist the Federal Circuit in deciding

18  the motions before it."  BlackBerry Opp. at 17 (emphasis supplied by BlackBerry).  Curiously,

19  BlackBerry provides no citation for this supposed "purpose" of the remand, or for the notion that

20  this Court is to assist the Federal Circuit in deciding the motions before it.  In any event, contrary

21  to BlackBerry's asserted "purpose," the express terms of the Remand Order dictate that this

22  "limited remand" is "for the purpose of allowing" MST "leave to file its substitution motion in

23  the district court" and nothing more.  Reines Decl., Ex. 1 at 3.  Moreover, the Federal Circuit

24  expressly retained jurisdiction over all other pending motions, including BlackBerry's standing

25  motion.  Had the Federal Circuit intended for this Court to definitively resolve the standing issue,

26  it would not have remand for the "limited" purpose of resolving substitution, while retaining

27  jurisdiction over BlackBerry's motion to dismiss.  Given the expressly stated purpose of this

28  remand, joinder would in no way "defeat the whole purpose of the remand."  On the contrary, the

1   Federal Circuit granted this remand for MST to file a substitution motion in this Court, and the

2   Federal Rules of Civil Procedure expressly authorize courts to order joinder on such motion.

**III.     CONCLUSION**

4          MST respectfully requests that the Court grant its motion to substitute as plaintiff or, in

5   the alternative, to join Mformation as co-plaintiff.

7   Dated: August 12, 2013                    Respectfully submitted,

9                                             By: _____*/s/ Edward R. Reines*_____
                                                      Edward R. Reines

11                                            WEIL, GOTSHAL & MANGES LLP
                                              201 Redwood Shores Parkway
12                                            Redwood Shores, CA 94065
                                              (650) 802-3000
13                                            *Attorney for Mformation Software*
                                              *Technologies LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28