UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MFORMATION TECHNOLOGIES, INC., | No. C-08-4990 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING MST'S MOTION TO JOIN AS CO-PLAINTIFF** |
| RESEARCH IN MOTION LIMITED, *et al.*, | **(Docket No. 1145)** |
| Defendants. | |
| _____/ | |

In August 2012, Judge Ware (the then-presiding judge) entered a judgment in favor of Defendants Research in Motion Ltd. and Research in Motion Corp. (collectively "RIM") and against Plaintiff Mformation Technologies, Inc. ("MT"). *See* Docket No. 1075 (judgment). MT subsequently appealed the judgment to the Federal Circuit, *see* Docket No. 1087 (notice of appeal), as did another party – namely, Mformation Software Technologies LLC ("MST") – after purportedly acquiring from MT the right to sue for past infringements. *See* Docket No. 1137 (notice of appeal). MST then moved to substitute as the plaintiff in the case. RIM opposed and moved to dismiss for lack of jurisdiction or, in the alternative, for a remand to this Court to address factual issues.

On July 18, 2013, the Federal Circuit issued an order in which it "grant[ed] a limited remand so that [this Court could] decide the motion to substitute." Reines Decl., Ex. 3 (Order at 3). MST has now filed a motion to substitute or, in the alternative, to join with this Court. RIM has opposed. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** MST's alternative request for relief, *i.e.*, for joinder.

## I. FACTUAL & PROCEDURAL BACKGROUND

On August 8, 2012, Judge Ware entered a judgment in the case at bar. *See* Docket No. 1075 (judgment).

On September 5, 2012, MT filed, *inter alia*, a motion for a new trial. *See* Docket No. 1084 (motion). The next day, on September 6, 2012, MT appealed the judgment to the Federal Circuit. *See* Docket No. 1087 (notice of appeal). This appeal was given the following case number: No. 12-1679.

According to MST, on or about September 21, 2012, MT conveyed its right to sue for past infringements to MST.

On or about September 24, 2012, MT dissolved. *See* Reines Decl., Ex. 5 (Delaware Division of Corporations information).

On September 25, 2012, the Federal Circuit deactivated MT's appeal because of the pending motion for a new trial. *See* Appeal Docket No. 2 (order).[1]

On November 15, 2012, this Court (the case having been reassigned after Judge Ware left the bench) denied the motion for a new trial. *See* Docket No. 1124 (order).

On December 17, 2012, MST (not MT) filed a notice of appeal. *See* Docket No. 1137 (notice of appeal). This appeal was given a different case number: No. 13-1123.

On December 20, 2012, MT's appeal (No. 12-1679) was reactivated. *See* Appeal Docket No. 6. That same day, MST's appeal (No. 13-1123) was consolidated with MT's appeal (No. 12-1679).

On January 3, 2013, MST filed a motion to substitute with the Federal Circuit. *See* Appeal Docket No. 22 (motion).

On January 15 and 16, 2013, RIM opposed the motion and cross-moved to dismiss for lack of standing. *See* Docket Nos. 29-30 (opposition and cross-motion). RIM argued that MST's position was flawed because it had failed to provide any evidence to support its motion, choosing instead "to keep hidden from RIM the contract under which it allegedly purchased the patent-in-

---

[1] "Appeal Docket" refers to the docket in No. 12-1679.

2

1  suit." Appeal Docket No. 30 (Opp'n at 7). In the alternative, RIM asked the Federal Circuit to
2  remand to this Court – *i.e.*, to address factual issues surrounding the alleged sale from MT to MST.
3  RIM argued:

> The district court can oversee discovery to uncover the exact terms of the alleged purchase that is the basis for [MST's] claim that it should be substituted for [MT]. And the district court is also better equipped to probe into related questions concerning a transaction that allegedly took all the assets out of [MT] and left RIM with nothing but an empty shell against which it can pursue more than $200,000 in costs awarded by the district court. For example, the district court would undoubtedly have a particular interest in determining why, if [MST] actually became the real party in interest in this litigation as of September 21, 2012, [MT] continued to file papers for more than a month after that time – and in particular why, on November 2, 2012, lawyers for [MT] (a corporation that, at that point, had allegedly sold any interest in this litigation and was dissolved) appeared before the district court to argue a motion for a new trial.

Appeal Docket No. 30 (Cross-Mot. at 13-14).

In its reply in support of the motion to substitute, MST provided copies of documents it claimed evidenced transfer of the necessary rights for it to pursue the appeal. In particular, MST provided two documents: (1) a Bill of Sale, dated September 21, 2012, and (2) a Confirmation Agreement, executed on January 24, 2013. MST did not, however, provide to the Federal Circuit copies of: (1) a Secured Party Sale Agreement, dated September 21, 2012 (to which the Bill of Sale was attached as Exhibit A); and (2) an Intellectual Property Security Agreement, dated March 7, 2011. These latter two documents were only provided for the first time in conjunction with the motion to substituted filed with this Court on July 29, 2013.

On July 18, 2013, the Federal Circuit issued its remand order in which it stated, in relevant part, as follows:

> We deem the better course to grant a limited remand so that the district court to decide the motion to substitute. The district court may give due consideration, inter alia, to whether:
>
> a) it is legally proper for a party to be substituted for another party to a litigation as distinct from being added to the litigation where the party asking for substitution denies responsibility for financial obligations imposed upon it by the district court's judgment, and,

3

          b) whether, because Mformation Technologies, Inc. has not provided the court with the September 21, 2012 Secured Party Sale Agreement, it has failed to demonstrate that mFormation Software Technologies, Inc. owns the right to sue and recover for infringement of the patents in suit.

We otherwise retain jurisdiction over the appeal at this time.

Accordingly,

IT IS ORDERED THAT:

          (1) RIM's motion to remand is granted to the extent that we grant a limited remand for the purpose of allowing mFormation Software Technologies, Inc. leave to file its motion to substitute in the district court. We otherwise retain jurisdiction over the appeal.

          (2) The motion to dismiss and the motion to substitute are held in abeyance.

Appeal Docket No. 47 (Order at 3).

## II. DISCUSSION

### A. Scope of Remand

As preliminary matter, the Court should take note that the parties have a dispute over the scope of the Federal Circuit's remand. RIM takes the position that this Court is essentially restricted to considering the exact motion to substitute that MST filed with the Federal Circuit – in other words, the Court should not consider the new motion filed with this Court which makes new arguments (*e.g.*, an alternative request for joinder if no substitution is granted) and presents new evidence (*i.e.*, the Secured Party Sale Agreement and the Intellectual Property Security Agreement). MST appears to have presented those arguments and evidence largely because of the issues pinpointed by the Federal Circuit in its remand order – *i.e.*, asking (1) whether it is appropriate to substitute when the party seeking substitution denies responsibility for financial obligations imposed by the district court's judgment and (2) whether there is insufficient evidence that MST owns the right to sue for past infringements because of the failure to provide the Secured Party Sale Agreement.

According to RIM, the Federal Circuit must have intended for the Court to consider only the motion to substitute that was actually filed with the Federal Circuit (and not a new motion) or it

would not have made reference, in its remand order, to "*the* motion to substitute" and "*its* [*i.e.*, MST's] motion to substitute." Reines Decl., Ex. 3 (Order at 3) (stating that "[w]e deem the better course to grant a limited remand so that the district court [may] decide *the* motion to substitute" and that "we grant a limited remand for the purpose of allowing [MSG] leave to file *its* motion to substitute in the district court") (emphasis added).

      While RIM's position is not without any support, the Court ultimately finds it unpersuasive. First, in its remand order, the Federal Circuit essentially instructed MST to file a new motion with this Court because the motion that had been filed with the Federal Circuit was being held in abeyance. Second, the Federal Circuit never indicated that it was putting any restrictions on the motion to be filed with this Court. If the Federal Circuit had wanted to foreclose the possibility of a "cure" by MST with respect to the specific issues identified by the appellate court, then it would have made that point more explicitly (particularly since Federal Rule of Civil Procedure 25(c) on its face allows for joinder in lieu of substitution). And if the Federal Circuit was in fact foreclosing any cure by MST, then it seems unlikely that it would have remanded in the first place – *i.e.*, the Federal Circuit could simply have ruled on the issues itself as they would at that point be pure questions of law. Third, the Federal Circuit's decision to remand was based on RIM's alternative request for a remand so that "[t]he district court can oversee discovery to uncover the exact terms of the alleged purchase that is the basis for [MST's] claim that it should be substituted for [MT]." Appeal Docket No. 30 (Cross-Mot. at 13-14). If RIM was asking for a remand so that the issue of transfer could be explored, it would make no sense for the Federal Circuit to order a remand but preclude any development of the transfer issue. Finally, there is no policy or other logical reason to prohibit this Court from considering the full range of remedies expressly afforded by Rule 25(c). Contrary to what RIM has suggested, permitting MST to be joined as a party to the consolidated appeal would not prevent the Federal Circuit from addressing the standing issue in ruling on the motion to dismiss still pending before it.

B.    <u>Substitution v. Joinder</u>

      Having concluded that the Court may entertain the motion to substitute filed in *this* Court by MST, it now turns to the merits of the motion. Rule 25(c) provides that, "[i]f an interest is

transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). The purpose of the rule is "to allow an action to continue unabated when an interest in a lawsuit changes hands, without initiating an entirely new suit." 6-25 Moore's Fed. Prac. – Civ. § 25.30; *see also In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (stating that "'Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands'").

> "The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation."

*Id.* (quoting Wright treatise).

There is a strong argument that whether there is inaction, substitution, or joinder, successor liability still obtains. *See United Access Technologies, LLC v. Earthlink, Inc.*, No. 02-272-MPT, 2012 WL 2175786, at *5 (D. Del. June 14, 2012) (noting that "[a]ny judgment resulting from an action binds the successor, even if the successor is not named in the lawsuit"; thus, even where there is a substitution, and not a joinder, the substituted party can still be held liable for costs incurred *before* the substitution). Nonetheless, given that MT owes costs in the amount of $206,363.28, *see* Docket No. 1115 (costs taxed), and the Secured Party Sale Agreement between MT and MST provides that MST "shall not assume or in any manner whatsoever be liable or responsible for any liabilities or obligations . . . of or related to [MT]." Reines Decl., Ex. 1 (Secured Party Sale Agreement § 2.3), the Court concludes that joinder is the most appropriate course of action. *See, e.g.*, *Roxane Labs., Inc. v. Abbott Labs.*, No. 2:12-cv-312, 2012 U.S. Dist. LEXIS 162626, at *4, 6-7 (S.D. Ohio Nov. 14, 2012) (taking into account plaintiff's contention that defendant should remain a party because it was potentially liable for attorney's fees and it was not clear that the full interest in suit had been transferred to the new party such that it would in fact be liable for fees and costs; ultimately finding in favor of joinder instead of substitution because it was not clear from the record

whether the new party had assumed all of the defendant's potential liabilities in connection with the case).

RIM argues that joinder of MST would be pointless because MST lacks standing. It further argues that joinder is permissible only where a functioning entity remains in the case (and not a dissolved company such as MT). *See* Opp'n at 18 n.8. The latter argument is without any merit. RIM cites no authority to support its contention that joinder is *barred* absent the continued presence of a functioning entity. In fact, Rule 25(c) on its face contains no such limitation.

As for the first argument, the issue of standing is not one for this Court to decide because the Federal Circuit reserved that issue for itself. As MST contends in its reply, if the Federal Circuit had wanted this Court to address the issue of standing, then the Federal Circuit would have asked this Court to rule on not only MST's motion to substitute but also RIM's motion to dismiss. Granting joinder will not preclude the Federal Circuit from deciding the standing question. In fact, it assures that the Federal Circuit will have before it all parties which potentially have standing.

C. <u>Purported Transfer of the Right to Sue for Past Infringement</u>

While the Court does not resolve the standing issue now pending before the Federal Circuit, it summarizes the evidence now in the record in order to facilitate the appellate court's resolution of the issue.

On January 24, 2013, MT and MST signed the Confirmation Agreement. *See* Reines Decl., Ex. 4 (Confirmation Agreement). Although the Confirmation Agreement was not signed until January 24, 2013, it purports to confirm that MT transferred the right to sue for past infringement to MST as of September 21, 2012, *i.e.*, as part of the Bill of Sale (which is Exhibit A to the Secured Party Sale Agreement). The Confirmation Agreement provides in relevant part as follows:

> [MT] confirms that pursuant to Section 2.1 of the Secured Party Sale Agreement and simultaneously executed Bill of Sale, at the Closing and *effective as of the Effective Date*, [MT] has transferred, conveyed and assigned to [MST] [MT's] right, title and interest in the Transferred Assets, *together with and including all rights to sue and recover for past, present or future infringement of any of the Transferred Assets*. To the extent necessary to give effect to the transfer, conveyance and assignment in the preceding sentence, [MT] hereby transfers, conveys and assigns to the Secured Party, *effective as of the Effective Date*, [MT's] right, title and interest in the Transferred

7

> Assets, *together with and including all rights to sue and recover for past, present, or future infringement of any of the Transferred Assets*.

Reines Decl., Ex. 4 (Confirmation Agreement § 1) (emphasis added).[2]

As for the Bill of Sale (dated September 21, 2012), it states in relevant part as follows:

> Pursuant to that certain "Secured Party Sale Agreement" dated of even date herewith and between the parties hereto, [MT], for valuable consideration received to [its] full satisfaction, does hereby cause to be conveyed unto [MST] all right, title and interest of [MT] in and to the assets identified on Schedule 1 and Schedule 2 attached hereto (collectively, the "Transferred Assets"). Capitalized terms used herein but not defined herein shall have the same meaning ascribed to such terms in the Secured Party Sale Agreement.

Reines Decl., Ex. 1 (Bill of Sale).

Schedule 2 attached to the Bill of Sale identifies various patents and applications, including the patents in suit (*i.e.*, the '917 and '408 patents). It does not make reference, however, to the right to sue for past infringement.

Schedule 1 attached to the Bill of Sale identifies the following assets:

> All right, title and interest of [MT] in and to the property described in the Senior Loan Documents as "Collateral" and all right, title and interest of [MT] in and to the property described and defined in the Term Loan Documents as "Collateral," and excluding the Excluded Assets . . . .

Reines Decl., Ex. 1 (Bill of Sale). According to MST, included in the Collateral under the Senior Loan Documents is the right to sue for past infringement. MST's position hinges on the Intellectual Property Security Agreement (dated March 7, 2011) being a Senior Loan Document referenced in the Bill of Sale. The Intellectual Property Security Agreement provides that intellectual property collateral includes "[a]ny and all claims for damages by way of past, present, and future infringements of any of the rights included above," including patents. Reines Decl., Ex. 15 (Intellectual Property Security Agreement ¶ 7).

Because the term "Senior Loan Documents" is not defined in the Bill of Sale, its meaning must be derived from the Secured Party Sale Agreement (as the Bill of Sale instructs). *See* Reines

---

[2] Whether the Confirmation Agreement should be given retroactive effect is not an issue for this Court to decide. As noted above, standing is an issue that the Federal Circuit reserved for itself.

8

Decl., Ex. 1 (Bill of Sale) (stating that "[c]apitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Secured Party Sale Agreement). The Secured Party Agreement defines "Senior Loan Documents" in the Recitals section. Per the Recitals section, "Senior Loan Documents" refers to a Loan and Security Agreement, dated April 23, 2008, between MT and Silicon Valley Bank, along with "certain related documents evidencing the loans made pursuant thereto and security interests granted to secure such loans." Reines Decl., Ex. 1 (Secured Party Sale Agreement, Recitals, at 1).

Although, the Secured Party Agreement does not expressly state whether the Intellectual Property Security Agreement is a "Senior Loan Document," the Intellectual Property Security Agreement clearly is a "security interest[] granted to secure" the Loan and Security Agreement between MT and Silicon Valley Bank. Reines Decl., Ex. 1 (Secured Party Sale Agreement, Recitals, at 1). Like the Loan and Security Agreement, the Intellectual Property Security Agreement is a contract between MT and Silicon Valley Bank. In the Recitals section of the Intellectual Property Sale Agreement, the parties make specific reference to the Loan and Security Agreement between them, as well as the modifications of that agreement subsequently entered into by the parties. The Recitals section then states: "[Silicon Valley] Bank is willing to make the Loans to [MT], but only upon the condition, among others, that [MT] shall grant to [Silicon Valley] Bank a security interest in its Copyrights, Trademarks, Patents, and Mask Works (as each term is described below) to secure the obligations of [MT] under the Loan [and Security] Agreement." Reines Decl., Ex. 15 (Intellectual Property Security Agreement, Recitals ¶ A).[3]

///
///
///
///

---

[3] The Court, however, makes no conclusions as to the merits of RIM's argument that the cross-referencing in the various agreeements is "simply too winding and weaving an approach to meet the requirement that the right [to sue for past infringement] must be conveyed in express terms." Opp'n at 16. Again, that is a legal question which informs the standing issue the Federal Circuit has reserved.

### III. CONCLUSION

For the foregoing reasons, the Court grants MST's alternative request for relief – *i.e.*, for joinder. The Court further summarizes the record as it relates to the purported transfer of the right to sue for past infringement in order to facilitate the Federal Circuit's review.

This order disposes of Docket No. 1145.

IT IS SO ORDERED.

Dated: August 29, 2013

_____
EDWARD M. CHEN
United States District Judge